# EXHIBIT 8



## AGREEMENT OF ASSIGNMENT AND
## LICENSE OF INTELLECTUAL PROPERTY RIGHTS

This Agreement of Assignment and License of Intellectual Property Rights is made this 30th day of June, 1992 between Applied Biosystems, Inc., a California corporation ("ABI"), and Lynx Therapeutics Incorporated, a Delaware corporation ("Lynx").

WHEREAS, ABI has formed Lynx, initially as a wholly-owned subsidiary, to pursue the oligonucleotide therapeutics business that had previously been conducted by and with Seller.

WHEREAS, ABI has contributed certain inventory, equipment and other physical assets relating to this business to Lynx pursuant to the Bill of Sale dated as of June 30, 1992 (the "Bill of Sale"). a copy of which is attached hereto as Exhibit A.

WHEREAS, in order to enable Lynx to pursue this business, the parties have agreed to the assignments and licenses of certain intellectual property and rights thereto as specified in this Agreement.

NOW THEREFORE, in consideration of the mutual covenants and promises herein contained and on the terms and subject to the conditions herein set forth, the parties hereby agree as follows:

1.    Assignment of License Agreements

ABI hereby transfers and assigns to Lynx, and Lynx hereby assumes, all of its rights and obligations under the following license agreements:

    a.    The License Agreement dated September 1, 1988, between the National Institutes of Health and ABI, relating to phosphorothioate oligonucleotide compositions used to control expression of foreign nucleic acids.

    b.    The License Agreement dated April 2, 1990, between ABI and MD Anderson, relating to United States Patent No. 5,087,617, issued February 11, 1992, and United States Patent Application No. 805,210, filed December 9, 1991.

    c.    The License Agreement dated as of April 6, 1992 between ABI and Temple University, relating to certain cancer targets (bcr-abl, c-myb and c-kit).

    d.    The Research Funding Agreement dated May 13, 1991, by and between ABI and the University of Nebraska and Patrick L. Iversen for the period June 1, 1991 to May 31, 1993.

1.

CONFIDENTIAL

2.    Assignment of Patents

Subject to the reservation of the licenses specified in Paragraph 4 below, ABI hereby assigns to Lynx all its rights, title and interest in and to the following patent applications and the inventions described therein:

a.    United States Patent Application No. 740,435, filed August 5, 1991, and entitled "P-Chiral Oligonucleotide Phosphorothioates"; and United States Patent Application No. 826,929, filed January 23, 1992, and Application No. 883,622, filed May 12, 1992, both entitled "Method and Compounds for Solid Phase Synthesis of Oligonucleotides and Oligonucleotide Analogs" [chiral synthesis of oligonucleotides].

b.    United States Patent Application No. 687,773, filed April 19, 1991, and entitled "Polyalkyl and Alkenyl Phosphates and Their Thiophosphate and Selenophosphate Derivatives as Antiviral Agents" [Polyalkyl-thioate oligonucleotides].

c.    United States Patent Application No. 779,012, filed October 18, 1991 [Ion-exchange analysis/purification].

d.    United States Patent Application No. 512,644, filed April 20, 1990, and entitled "Method of Synthesizing Sulphurized Oligonucleotide Analogs." [S-tetra]

e.    United States Patent No. 4,816,571, issued March 28, 1989, and entitled "Chemical Capping by Phosphitylation during Oligonucleotide Synthesis" [Capping patent].

3.    ABI Grant of Licenses to Lynx

ABI hereby grants to Lynx the following:

a.    A royalty free, world wide, nonexclusive license (with the right to grant sublicenses) under United States Patent Nos. 4,401,796 and 4,373,071, both entitled "Solid Phase Synthesis of Polynucleotides" [polystyrene patent (Itakura)] to make, have made, use and sell oligonucleotides in the Therapeutics Field. The "Therapeutics Field" is defined as the treatment or prevention of a disease or condition in humans.

b.    A royalty free, world wide, sole license (with the right to grant sublicenses) under United States Patent Application No. 558,747, filed July 27, 1990, entitled "Automated System for Polynucleotide Synthesis" and Patent No. 5,047,524, issued September 10, 1991, entitled "Automated System for Polynucleotide Synthesis" [polystyrene support] to make, have made, use and sell oligonucleotides in the Therapeutics Field.

20482230
081092

2.

CONFIDENTIAL

ILL000846

c.   A royalty free, world wide, sole license (with the right to grant sublicenses) under United States Patent Application No. 464,182, filed January 12, 1990, and entitled "Method of Synthesizing Sulphurized Oligonucleotide Analogs "[Sulphurizing with thiuram disulfides] to make, have made, use and sell oligonucleotides in the Therapeutics Field.

d.   A royalty free, world wide, sole license (with the right to grant sublicenses) under United States Patent Application No. 729,492, filed July 12, 1991 and entitled "Method and Composition for RNA Synthesis," to make and use RNA synthesis monomers and to make, have made, use and sell oligonucleotides in the Therapeutics Field.

e.   A royalty free, world wide, non-exclusive sublicense (with no right to grant sublicenses) under United States Patent No. 4,458,066, issued July 3, 1984 and entitled "Process for Preparing Polynucleotides" and United States Patent No. 4,415,732, issued November 15, 1983 and entitled "Phosphoramidite Compounds and Processes" to make and use phosphoramidite monomers and to make, use and sell oligonucleotides in the Therapeutics Field.

f.   A royalty free, world wide, nonexclusive license (without the right to grant sublicenses) to all trade secrets and know how of ABI developed at any time prior to June 30, 1995, relating to the manufacture of phosphoramidites, to manufacture phosphoramidites for internal use in the production of oligonucleotides for use in the Therapeutics Field.

g.   A royalty free, world wide, sole license (with the right to grant sublicenses) to make, have made, use and sell oligonucleotides in the Therapeutics Field under all inventions, trade secrets, know how or other intellectual property not otherwise assigned or licensed to Lynx under this Agreement that have been developed by ABI as a part of its therapeutics program at any time prior to the date of this Agreement.

h.   A royalty free, world wide, nonexclusive license (with the right to grant sublicenses) in the Therapeutics Field under any patent issued or issuing in respect of any invention reduced to practice by ABI at any time prior to June 30, 1995, to make, have made, use and sell oligonucleotides in the Therapeutics Field.

i.   A royalty free, world wide, nonexclusive license (without the right to grant sublicenses) under any trade secrets and know how of ABI developed at any time prior to June 30, 1995, relating to the synthesis of oligonucleotides, for use in the Therapeutics Field.

20482230
081092

3.

CONFIDENTIAL

ILL000847

j.    As a companion to each of the foregoing licenses, a royalty free, world wide, nonexclusive license for use in the conduct by Lynx, alone or in collaboration with others, of research directed to the development of oligonucleotides for use in the Therapeutics Field.

With respect to the foregoing licenses that are sole licenses, the term "sole" shall mean that ABI may not expressly grant such a license to any other party but shall not restrict the right of ABI or its sublicensees the right to grant purchasers of their synthesis products such licenses as are normally implied in connection with such purchases. In each of the foregoing licenses where Lynx is granted the right to grant sublicenses, such right shall be limited to sublicenses that are granted by Lynx in connection with the grant of the right to manufacture a human therapeutic product that has been developed by Lynx. With respect to the foregoing licenses that include trade secrets and know how, ABI shall at mutually convenient times between execution of this Agreement and June 30, 1995, disclose to Lynx information regarding same (a) that ABI believes in good faith to be pertinent to the Therapeutics Field or (b) that ABI can provide to Lynx without undue effort in response to inquiries by Lynx.

4.    Reservation of Licenses

ABI hereby reserves, and Lynx hereby grants to ABI, royalty free, world wide, exclusive licenses (with the right to grant sublicenses) to make, have made, use and sell products outside the Therapeutics Field under the following patent applications and the inventions described therein:

a.    United States Patent Application No. 740,435, filed August 5, 1991, and entitled "P-Chiral Oligonucleotide Phosphorothioates"; and United States Patent Application No. 826,929, filed January 23, 1992, and Application No. 883,622, filed May 12, 1992, both entitled "Method and Compounds for Solid Phase Synthesis of Oligonucleotides and Oligonucleotide Analogs" [chiral synthesis of oligonucleotides].

b.    United States Patent Application No. 779,012, filed October 18, 1991 [Ion-exchange analysis/purification].

c.    United States Patent No. 4,816,571, issued March 28, 1989, and entitled "Chemical Capping by Phosphitylation during Oligonucleotide Synthesis" [Capping patent].

In the exercise of the rights reserved hereby, ABI and its sublicensees shall not be obligated hereby to impose contractual obligations on its customers of products for use outside the Therapeutics Field, but shall be obligated to mark any products sold hereunder in accordance with 35 U.S.C. §287 and a notice that no license in the Therapeutics Field is granted or implied by the sale of such products. ABI shall not induce or contribute to the infringement of Lynx's

20482230
081092

4.

CONFIDENTIAL                                                            ILL000848

patent rights in violation of 35 U.S.C. §271 and shall promptly notify Lynx of any suspected infringement thereof.

5.    Rights to Technology

a.    Lynx hereby grants ABI a royalty-free, world wide license (with the right to grant sublicenses) under any patent issued or issuing on any invention reduced to practice by Lynx prior to June 30, 1995, to make, have made, use and sell products in and for the Research Field, provided that such license shall not extend to patents on specific oligonucleotide sequences. The "Research Field" shall mean the making, using or selling of a product for conducting scientific research and shall not include any Therapeutics Field use or any use which includes the detection of a disease condition, or the predisposition or susceptibility thereto, or the clinical progress thereof. ABI and its sublicensees shall not be obligated hereby to impose contractual obligations on its customers of products for use in the Research Field, but shall be obligated to mark any products sold hereunder in accordance with 35 U.S.C. §287 and a notice that no license outside the Research Field is granted or implied by the sale of such products. ABI shall not induce or contribute to the infringement of Lynx's patent rights in violation of 35 U.S.C. §271 and shall promptly notify Lynx of any suspected infringement thereof.

b.    With respect to any patentable invention of Lynx reduced to practice after June 30, 1992, that falls within the scope of an ABI patent (not including any patent that has been assigned by ABI to Lynx pursuant to Paragraph 2 above), Lynx hereby grants to ABI an option, to acquire an exclusive, world wide license to such invention for use outside the Therapeutics Field. Lynx will retain the right to practice its own invention (but not including any ABI rights not otherwise licensed hereunder) (i) in connection with its own research and (ii) to develop and commercialize products solely for use in monitoring the treatment of an indication for which Lynx (itself, not a third party) is selling a product in the Therapeutics Field. Any such license shall bear a reasonable royalty to be agreed upon by the parties. The option granted hereunder shall expire upon expiration of the last-to-expire of the United States patents licensed or assigned to Lynx pursuant to this Agreement.

c.    With respect to uses of any patentable invention of Lynx not covered by 5.a and any patentable invention of Lynx not covered by 5.b above, ABI shall have the first right to negotiate for a license to such invention for use outside the Therapeutics Field on the terms hereinafter set forth. In the event that Lynx proposes to offer such invention for licensing to any third parties prior to (but not after ) December 31, 1999, Lynx will first provide ABI with the opportunity to consider and negotiate with Lynx in good faith the terms of such a license for a period of up to three (3) months. Thereafter, if agreement on the terms of a

20482230
081092

5.

license has not been reached, Lynx may at any time grant such a license to any third party on such terms as it may agree to, without reference to any terms that were discussed with ABI in the initial negotiation and without any further obligation to negotiate with ABI. Lynx shall not have any obligation hereunder to actually grant such a license as the parties expressly understand that Lynx may in its sole discretion elect to retain all rights to any such invention for its own use and commercialization or to grant licenses to third parties in preference to ABI.

d.  Lynx hereby grants to ABI a royalty free, world wide, nonexclusive license (without the right to grant sublicenses) under any trade secrets and know how of Lynx developed at any time prior to June 30, 1995, relating to the synthesis of oligonucleotides, for use outside the Therapeutics Field.

6.  Infringement of Patent Rights

a.  In the event that Lynx believes that any of the patents assigned or exclusively licensed to Lynx hereunder is being infringed by a third party by activities within the Therapeutics Field, Lynx shall have the right at its own expense to attempt to remove such infringement by appropriate steps including suit. In such event, ABI will provide any reasonable assistance that may be requested by Lynx, at Lynx' expense. Any amount recovered as a result of any action taken by Lynx shall be for the account of Lynx.

b.  In the event that ABI believes that any of the patents assigned or exclusively licensed to Lynx hereunder is being infringed by a third party by activities outside the Therapeutics Field, ABI shall have the right at its own expense to attempt to remove such infringement by appropriate steps including suit. In such event, Lynx will provide any reasonable assistance that may be requested by ABI, at ABI's expense. Any amount recovered as a result of any action taken by ABI shall be for the account of ABI.

c.  The parties shall keep each other reasonably informed of their respective patent enforcement activities. In the event a third party's infringement activities are both within and outside the Therapeutics Field, and both Lynx and ABI desire to take steps to remove such infringement, ABI and Lynx shall coordinate their activities and may bring suit jointly on such basis as may be agreed to in the circumstances.

7.  Representations and Warranties of ABI

ABI represents and warrants that:

a.  ABI is a corporation duly organized, validly existing and in good standing under the laws of the State of California and has all requisite corporate power and

20482230
081092

6.

CONFIDENTIAL

ILL000850

authority to own, operate and lease its properties and carry on its business as now conducted.

b.  ABI has full corporate power and authority to execute, deliver and perform its obligations under this Agreement, and all corporate action of ABI necessary for such execution, delivery and performance has been duly taken.

c.  The execution and delivery by ABI of this Agreement do not, and the performance and consummation by ABI of the transactions contemplated by this Agreement will not, result in any conflict with, breach or violation of or default, termination or forfeiture under (or upon the failure to give notice or the lapse of time, or both, result in any conflict with, breach or violation of or default, termination or forfeiture under) any terms or provisions of ABI's Articles of Incorporation, or Bylaws, each as amended.

d.  This Agreement and the Bill of Sale are legal, valid and binding obligations of ABI, enforceable against ABI in accordance with their respective terms, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally, limited by applicable law, and subject to general equity principles and to limitations on availability of equitable relief, including specific performance.

Except for the representations and warranties made by ABI in this Section 7, there are no other representations and warranties made in regard to the rights and assets being transferred to Lynx.

8.  <u>Representations and Warranties of Lynx</u>

Lynx represents and warrants that:

a.  Lynx is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware and has all requisite corporate power and authority to own, operate and lease its properties and carry on its business as now conducted.

b.  Lynx has full corporate power and authority to execute, deliver and perform its obligations under this Agreement, and all corporate action of Lynx necessary for such execution, delivery and performance has been duly taken.

c.  The execution and delivery by Lynx of this Agreement do not, and the performance and consummation by Lynx of the transactions contemplated by this Agreement will not, result in any conflict with, breach or violation of or default, termination, forfeiture or lien under (or upon the failure to give notice or the lapse of time, or both, result in any conflict with, breach or violation of or

CONFIDENTIAL                                                    ILL000851

default, termination, forfeiture or lien under) any terms or provisions of Lynx's Certificate of Incorporation or Bylaws, each as amended, or any material statute, rule, regulation, judicial or governmental decree, order or judgment, agreement, lease or other instrument to which Lynx is a party or to which it or its assets are subject.

d.    No consent, approval, authorization, order, registration, qualification or filing of or with any court or any regulatory authority or any other governmental body, where failure to obtain such consent, approval, authorization, order, registration, qualification or filing has or is likely to have a material adverse effect, is required for the consummation by Lynx of the transactions contemplated by this Agreement.

e.    This Agreement and the Bill of Sale are legal, valid and binding obligations of Lynx, enforceable against Lynx in accordance with their respective terms, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally, limited by applicable law, and subject to general equity principles and to limitations on availability of equitable relief, including specific performance.

9.    <u>Definition of Patent</u>

As used herein, the terms "patent application" and "patent" shall be deemed to include as appropriate in the context any divisions, continuations and continuations-in-part of an application, any patent issuing in respect thereof and all foreign counterparts, reissues and renewals of a patent.

10.    <u>Further Documents and Assistance</u>

ABI agrees that it will, upon the request of Lynx, execute and deliver after the date hereof such further agreements, assignments, transfers and other documents as may be reasonably necessary to properly and effectively implement this Agreement and the Bill of Sale. To the extent that any third party consent required as a condition precedent of any assignment or grant hereunder has not been obtained prior to the date hereof, ABI shall take any and all actions reasonably necessary to obtain such third party consents and, until such assignment or grant has been effectuated, shall hold such rights in trust for the benefit of Lynx.

CONFIDENTIAL                                                                      ILL000852

11.    <u>Notices</u>

Any notice or other communication required, permitted or desirable hereunder shall be sufficiently given and sent by certified U.S. mail, postage prepaid, addressed as follows:

To ABI:          Applied Biosystems, Inc.
                 850 Lincoln Centre Drive
                 Foster City, CA  94404
                 Attention:  President

To Lynx:         Lynx Therapeutics Incorporated
                 400 Lincoln Centre Drive
                 Foster City, CA  94404
                 Attention:  President

12.    <u>Governing Law</u>

The Agreement shall be governed by and construed in accordance with the laws of the State of California as applied to contracts between California residents made and to be performed entirely within the State of California.

13.    <u>Entire Agreement</u>

This Agreement constitutes the entire agreement between the parties hereto and may not be changed or canceled except by a writing signed by all the parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

APPLIED BIOSYSTEMS, INC.

By _____
      André Marion
      President

LYNX THERAPEUTICS INCORPORATED

By _____
      Sam Eletr
      President

Exhibit A:  Form of Bill of Sale

20482230
081092

9.

CONFIDENTIAL

ILL000853