# EXHIBIT 3

```
 1      UNITED STATES DISTRICT COURT
 2      NORTHERN DISTRICT OF CALIFORNIA
        SAN FRANCISCO DIVISION
 3      APPLERA CORPORATION - APPLIED
        BIOSYSTEMS GROUP, a Delaware
 4      corporation,
        Plaintiff,
 5      vs.                                No. 07-CV-02845 WHA
        ILLUMINA, INC., a Delaware
 6      corporation, SOLEXA, INC.,
        a Delaware corporation, and
 7      STEPHEN C. MACEVICZ, an
        individual,
 8      Defendants.
        _____/
 9      Deposition of
        STEPHEN C. MACEVICZ
10      November 28, 2007
        Reported by:
11      KELLIE A. ZOLLARS, CSR, RPR, CRR
        License No. 5735
12      SHARI MOSS & ASSOCIATES
        Certified Shorthand Reporters
13      877 Cowan Road, Suite A
        Burlingame, California 94010
14      Tel:  (650) 692-8900
        25
15
16
17
18
19
20
21
22
23
24
25
```

```
1   Q.   Starting when?
2   A.   I'm not sure the precise time.
3   Q.   Are there any communications that you've had
4        with Mr. Flowers or anybody else at the Marshall,
5        Gerstein firm that you would not consider to be
6        privileged communications?
7   A.   I can't answer that question. I don't know.
8   Q.   Well, we'll go through some of those
9        communications today so we can talk about it then.
10       Do you have any kind of an engagement letter with the
11       Marshall, Gerstein firm?
12  A.   No, I do not.
13  Q.   Do you have any kind of indemnification
14       agreement with Illumina?
15  A.   I have an indemnification agreement with Lynx
16       Therapeutics.
17  Q.   What is that indemnification agreement that
18       you've got with Lynx Therapeutics?
19  A.   I'd have to see the document to identify it
20       further. I'm not sure how I answer your question.
21  Q.   What is the approximate date of that
22       indemnity agreement?
23  A.   I believe it's dated in 1995.
24  Q.   All right. So it's not something more recent
25       than 1995, in other words?
```

```
 1    A.    No, it isn't.
 2    Q.    Are you paying legal fees to the Marshall,
 3          Gerstein firm?
 4    A.    No, I am not.
 5    Q.    Is somebody else paying legal fees to the
 6          Marshall, Gerstein firm on your behalf?
 7    A.    I do not know.
 8    Q.    Now, you're also -- have you received any
 9          legal bills, any bills for legal fees from the
10          Marshall, Gerstein firm?
11    A.    No, I have not.
12    Q.    And Mr. Fthenakis is representing you as well
13          today; is that correct?
14    A.    That's correct.
15    Q.    And he's represented you since the inception
16          of this action?
17    A.    I believe so, yes.
18    Q.    Have you been paying Mr. Fthenakis's legal
19          fees?
20    A.    Yes.
21    Q.    Is anybody indemnifying you for those legal
22          fees?
23    A.    Yes.
24    Q.    Who's indemnifying you for those legal fees?
25    A.    As far as I know, it's Lynx Therapeutics or
```

```
1            Illumina.
2     Q.     And when did you come to learn that Lynx
3            would be indemnifying you for your legal fees?
4     A.     I believe it was in the early 2007 when
5            searching for documents in response to a document
6            request.
7     Q.     So you were searching for documents?
8     A.     I believe so. That's the event that caused
9            me to find it.
10    Q.     To find what?
11    A.     The indemnity agreement.
12    Q.     And then what happened next? How did that
13           lead to the indemnification of your legal fees?
14    A.     I gave the document to Mr. Fthenakis, and we
15           discussed it. And I believe that he presented it to
16           the Illumina attorneys.
17    Q.     And you believe that was early 2007?
18    A.     I believe so, yes.
19    Q.     Did you have any communications with the
20           Illumina attorneys at that time?
21    A.     No, I did not.
22    Q.     Have you had any communications in writing
23           with the Illumina attorneys about the indemnification
24           of legal fees?
25    A.     No, I have not.
```

| | | |
|---|---|---|
| 1 | | your knowledge after May 1, 1995, that would not fall |
| 2 | | within the scope of the indemnity agreement? |
| 3 | A. | I can think of no such activities. |
| 4 | Q. | Does the indemnity that Illumina has agreed |
| 5 | | to provide to you, to your knowledge, include |
| 6 | | indemnity for liabilities associated with the |
| 7 | | assignment of your patent applications to Lynx? |
| 8 | A. | I couldn't answer that without further study |
| 9 | | of the document. |
| 10 | Q. | Is it something you've thought about at all? |
| 11 | A. | I haven't thought about it specifically, no. |
| 12 | Q. | How about divorcing it from the date a little |
| 13 | | bit? Is it your understanding that Illumina is |
| 14 | | indemnifying you for any liabilities incurred in |
| 15 | | connection with the matters raised in this lawsuit? |
| 16 | A. | It's my understanding that Illumina is |
| 17 | | indemnifying me against damages incurred in |
| 18 | | connection with this lawsuit. |
| 19 | Q. | Does their agreement to indemnify you for |
| 20 | | activities in connection with or that are raised in |
| 21 | | this lawsuit include both legal fees and liabilities? |
| 22 | A. | Again, I'd have to look at the agreement and |
| 23 | | try to understand it to answer that question. |
| 24 | Q. | Is it something you've discussed with |
| 25 | | Illumina at all? |

| | | |
|---|---|---|
| 1 | A. | No, I have not discussed that. |
| 2 | Q. | Just so we're clear on it, though, because I |
| 3 | | may not have been completely clear. As far as you |
| 4 | | understand it today, Illumina is indemnifying you for |
| 5 | | legal fees and liabilities associated with the |
| 6 | | matters raised in this action; is that correct? |
| 7 | A. | Yes, that's my understanding. |
| 8 | Q. | Before Illumina agreed to indemnify you from |
| 9 | | your fees, did anybody from Illumina interview you? |
| 10 | A. | Yes. There was the interview December, about |
| 11 | | one year ago, that we had at Mr. Fthenakis's office. |
| 12 | Q. | That's the one that I attended as well? |
| 13 | A. | That's correct. |
| 14 | Q. | Other than that, have you had any |
| 15 | | conversations with anybody from Illumina? |
| 16 | A. | Can you be more precise. |
| 17 | Q. | Other than Dr. Eletr, the conversation you |
| 18 | | mentioned with Eletr, and other than the meeting that |
| 19 | | we had at Mr. Fthenakis's office, have you had any |
| 20 | | conversations with anybody at Illumina about matters |
| 21 | | raised in this lawsuit? |
| 22 | A. | There was a meeting with Kevin Cochran before |
| 23 | | the meeting that we had at Mr. Fthenakis's office. |
| 24 | | And then there was a meeting with you last summer a |
| 25 | | year ago. |

1               MR. FTHENAKIS: Join.

2               THE WITNESS: That's my understanding, yes.

3               BY MR. WILSON:

4     Q.   Now, as you mentioned, we had a meeting

5          several months ago that was attended by Mr. Fthenakis

6          and Dr. Flowers and a few other attorneys of

7          Mr. Fthenakis's office. Do you recall that meeting?

8     A.   Yes.

9     Q.   At that meeting you did not disclose to me

10         that you were being represented or indemnified by

11         Illumina, did you?

12    A.   I don't believe I did disclose that.

13    Q.   And you recall it also was attended by Kurtis

14         McFerrin, who was a in-house counsel at AB. I think

15         you know him, right?

16    A.   I believe, yes.

17    Q.   Did you disclose to him at this meeting that

18         you were being indemnified and represented by

19         Illumina and its counsel?

20              DR. FLOWERS: Objection as to form.

21              THE WITNESS: Well, you're asking more now. The

22         fact is I didn't know I had the indemnity until after

23         that meeting. So that's why I didn't disclose it.

24              BY MR. WILSON:

25    Q.   Did you disclose that you were being