Exhibit J

Solexa/Inc · DEF 14A · For 5/13/97, On 4/4/97
Document 1 of 1 · DEF 14A · Notice of Meeting and Proxy Statement

SCHEDULE 14A INFORMATION
PROXY STATEMENT PURSUANT TO SECTION 14(A) OF THE
SECURITIES EXCHANGE ACT OF 1934
(Amendment No. _____)

Filed by the Registrant    /X/
Filed by a party other than the Registrant    / /

Check the appropriate box:
/ /  Preliminary proxy statement
/ /  Confidential, for use of the Commission only (as permitted by
     Rule 14a-6(e)(2))
/X/  Definitive proxy statement
/ /  Definitive additional materials
/ /  Soliciting material pursuant to Sec. 240.14a-11(c) or Sec. 240.14a-12

                    Lynx Therapeutics, Inc.
        ------------------------------------------------
        (Name of Registrant as Specified in Its Charter)

  ----------------------------------------------------------------------
   (Name of Person(s) Filing Proxy Statement, if other than the Registrant)

Payment of filing fee (Check the appropriate box):

/ /  $125 per Exchange Act Rules 0-11(c)(1)(ii), 14a-6(i)(1), 14a-6(i)(2)
     or Item 22(a)(2) or Schedule 14A

/ /  $500 per each party to the controversy pursuant to Exchange Act Rule
     14a-6(i)(3).

/ /  Fee computed on table below per Exchange Act Rules 14a-6(i)(4) and 0-11.

(1)  Title of each class of securities to which transactions applies:

----------------------------------------------------------------------------

(2)  Aggregate number of securities to which transactions applies:

----------------------------------------------------------------------------

(3)  Per unit price or other underlying value of transaction computed
pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing
fee is calculated and state how it was determined):

----------------------------------------------------------------------------

(4)  Proposed maximum aggregate value of transaction:

----------------------------------------------------------------------------

(5)  Total fee paid:

----------------------------------------------------------------------------

/ /   Fee paid previously with preliminary materials.
/ /   Check box if any part of the fee is offset as provided by Exchange Act
      Rule 0-11(a)(2) and identify the filing for which the offsetting fee
      was paid previously.  Identify the previous filing by registration
      statement number, or the Form or Schedule and the date of its filing.

(1)   Amount previously paid:

      -------------------------------------------------------------------------

(2)   Form, Schedule or Registration Statement No.:

      -------------------------------------------------------------------------

(3)   Filing party:

      -------------------------------------------------------------------------

(4)   Date filed:

      -------------------------------------------------------------------------

Case 3:07-cv-02845-WHA   Document 74-11   Filed 12/20/2007   Page 4 of 24
50845/WHA   Document 74-11/13/97   Filed 12/20/2007
Document 1 of 1 · DEF 14A · Notice of Meeting and Proxy Statement

LYNX THERAPEUTICS, INC.
3832 Bay Center Place
Hayward, California 94545

NOTICE OF ANNUAL MEETING OF STOCKHOLDERS
TO BE HELD ON MAY 13, 1997

TO THE STOCKHOLDERS OF LYNX THERAPEUTICS, INC.:

NOTICE IS HEREBY GIVEN that the Annual Meeting of Stockholders of Lynx Therapeutics, Inc., a Delaware corporation (the "Company" or "Lynx"), will be held on Tuesday, May 13, 1997, at 11:00 a.m. local time at the Company's principal executive offices, 3832 Bay Center Place, Hayward, California, for the following purposes:

1.     To elect directors to serve for the ensuing year and until their successors are elected.

2.     To ratify the selection of Ernst & Young LLP as independent auditors of the Company for its fiscal year ending December 31, 1997.

3.     To transact such other business as may properly come before the meeting or any adjournment or postponement thereof.

The foregoing items of business are more fully described in the Proxy Statement accompanying this Notice.

The Board of Directors has fixed the close of business on March 24, 1997, as the record date for the determination of stockholders entitled to notice of and to vote at this Annual Meeting and at any adjournment or postponement thereof.

By Order of the Board of Directors

James C. Kitch, Secretary

Hayward, California
April 9, 1997

ALL STOCKHOLDERS ARE CORDIALLY INVITED TO ATTEND THE MEETING IN PERSON. WHETHER OR NOT YOU EXPECT TO ATTEND THE MEETING, PLEASE COMPLETE, DATE, SIGN AND RETURN THE ENCLOSED PROXY AS PROMPTLY AS POSSIBLE IN ORDER TO ENSURE YOUR REPRESENTATION AT THE MEETING. A RETURN ENVELOPE (WHICH IS POSTAGE PREPAID IF MAILED IN THE UNITED STATES) IS ENCLOSED FOR THAT PURPOSE. EVEN IF YOU HAVE GIVEN YOUR PROXY, YOU MAY STILL VOTE IN PERSON IF YOU ATTEND THE MEETING. PLEASE NOTE, HOWEVER, THAT IF YOUR SHARES ARE HELD OF RECORD BY A BROKER, BANK OR OTHER NOMINEE AND YOU WISH TO VOTE AT THE MEETING, YOU MUST OBTAIN FROM THE RECORD HOLDER A PROXY ISSUED IN YOUR NAME.

LYNX THERAPEUTICS, INC.
3832 Bay Center Place
Hayward, California 94545

PROXY STATEMENT

INFORMATION CONCERNING SOLICITATION AND VOTING

General

The enclosed proxy is solicited on behalf of the Board of Directors of Lynx Therapeutics, Inc., a Delaware corporation (the "Company"), for use at the Annual Meeting of Stockholders to be held on May 13, 1997, at 11:00 a.m. local time (the "Annual Meeting"), or at any adjournment or postponement thereof, for the purposes set forth herein and in the accompanying Notice of Annual Meeting. The Annual Meeting will be held at the Company's principal executive office, 3832 Bay Center Place, Hayward, California.

Solicitation

The Company will bear the entire cost of solicitation of proxies including preparation, assembly, printing and mailing of this proxy statement, the proxy and any additional information furnished to stockholders. Copies of solicitation materials will be furnished to banks, brokerage houses, fiduciaries and custodians holding in their names shares of Common Stock beneficially owned by others to forward to such beneficial owners. The Company may reimburse persons representing beneficial owners of Common Stock for their costs of forwarding solicitation materials to such beneficial owners. Original solicitation of proxies by mail may be supplemented by telephone, telegram or personal solicitation by directors, officers or other regular employees of the Company. No additional compensation will be paid to directors, officers or other regular employees for such services.

The Company intends to mail this Proxy Statement and the accompanying Proxy Card on or about April 9, 1997, to all stockholders entitled to vote at the Annual Meeting.

Voting Rights and Outstanding Shares

Only holders of record of Common Stock, Series B Preferred Stock, Series C Preferred Stock and Series D Preferred Stock at the close of business on March 24, 1997, will be entitled to notice of and to vote at the Annual Meeting. At the close of business on March 24, 1997, the Company had outstanding and entitled to vote 3,140,672 shares of Common Stock, 332,288 shares of Series B Preferred Stock, 123,299 shares of Series C Preferred Stock and 40,000 shares of Series D Preferred Stock, each share of which is presently convertible into ten shares of Common Stock. The holders of Common Stock, Series B Preferred Stock, Series C Preferred Stock and Series D Preferred Stock will vote together as a class (on an as-if-converted to Common Stock basis) on each proposal described in this Proxy Statement. Each holder of record of Common Stock on such date will be entitled to one vote for each share held on all matters to be voted upon at the Annual Meeting. Each holder of record of Series B Preferred Stock, Series C Preferred Stock and Series D Preferred Stock on such date will be entitled to ten votes for each share held on all matters to be voted upon at the Annual Meeting.

All votes will be tabulated by the inspector of election appointed for the meeting, who will separately tabulate affirmative and negative votes, abstentions and broker non-votes. Abstentions will be counted towards the tabulation of votes cast on proposals presented to the stockholders and will have the same effect as negative votes. Broker non-votes are counted towards a

quorum, but are not counted for any purpose in determining  whether a matter has
been approved.

2.

Revocability of Proxies

        Any person giving a proxy pursuant to this  solicitation  has the power
to revoke it at any time  before it is voted.  It may be revoked by filing  with
the Secretary of the Company at the Company's  principal  executive office, 3832
Bay Center Place, Hayward, California 94545, a written notice of revocation or a
duly executed  proxy bearing a later date, or it may be revoked by attending the
meeting and voting in person.  Attendance  at the  meeting  will not, by itself,
revoke a proxy.

Stockholder Proposals

        Proposals  of  stockholders  that are  intended to be  presented at the
Company's  next Annual Meeting of  Stockholders  must be received by the Company
not later than December 1, 1997, in order to be included in the proxy  statement
and proxy  relating to that Annual  Meeting.  Stockholders  are also  advised to
review the Company's By-laws, which contain additional requirements with respect
to advance notice of stockholder proposals and director nominations.

                            PROPOSAL 1

                       ELECTION OF DIRECTORS

        There are six nominees for the six Board positions presently authorized
in the Company's By-laws. Each director to be elected will hold office until the
next annual meeting of  stockholders  and until his successor is elected and has
qualified, or until such director's earlier death,  resignation or removal. Each
nominee listed below is currently a director of the Company.

        Shares  represented by executed  proxies will be voted, if authority to
do so is not withheld,  for the election of the six nominees named below. In the
event that any  nominee  should be  unavailable  for  election as a result of an
unexpected  occurrence,  such  shares  will be voted  for the  election  of such
substitute nominee as management may propose. Each person nominated for election
has agreed to serve if elected and  management has no reason to believe that any
nominee will be unable to serve.

        Directors  are elected by a plurality of the votes present in person or
represented by proxy and entitled to vote.

     THE BOARD OF DIRECTORS RECOMMENDS A VOTE IN FAVOR OF EACH NAMED NOMINEE.

Nominees

        The names of the  nominees and certain  information  about them are set
forth below:

| Name | Position | Age | Director Since |
| ---- | -------- | --- | -------------- |
| Sam Eletr, Ph.D. | Chairman of the Board and Chief Executive Officer | 57 | 1992 |
| William K. Bowes, Jr.(1) | Director | 70 | 1994 |
| Sydney Brenner, M.B., D. Phil. | Director | 69 | 1993 |
| James C. Kitch(1) | Director and Secretary | 49 | 1993 |
| Kathleen D. La Porte(2) | Director | 35 | 1994 |
| Craig C. Taylor(2) | Director and Acting Chief Financial Officer | 46 | 1994 |

<FN>
----------------
(1)  Member of the Audit Committee
(2)  Member of the Compensation Committee
</FN>

                                   3.

Dr. Eletr has served as Chairman of the Board of the Company since February 1992 and resumed the position of Chief Executive Officer of the Company in November 1996, a position he held from February 1992 through January 1996. In 1981, Dr. Eletr founded Applied Biosystems, Inc., ("ABI"), a manufacturer of instruments and consumables for life science research and related applications, now a wholly-owned subsidiary of Perkin Elmer Corporation, and served as Chairman of the Board of Directors and in various executive positions at ABI from its inception until March 1987. Dr. Eletr acted as a consultant to ABI from September 1990 until July 1992, during which time he undertook to assume the leadership of the Company.

Mr. Bowes has served as a director of the Company since March 1994. He has been a general partner of U.S. Venture Partners, a venture capital partnership, since 1981. He currently serves as a director of Amgen, Inc., XOMA Corporation and several of U.S. Venture Partners' privately owned portfolio companies.

Dr. Brenner has served as a director of the Company since October 1993. In July 1996 he was appointed the Director and President of The Molecular Sciences Institute, a non-profit research institute in La Jolla, California. In September 1996 he retired from his position of Honorary Professor of Genetic Medicine, University of Cambridge Clinical School. From 1986 to his retirement in 1991, Dr. Brenner directed the Medical Research Council Unit of Molecular Genetics. He was a member of the Scripps Research Institute in La Jolla, California until December 1994.

Mr. Kitch has served as a director of the Company since February 1993 and Secretary of Lynx since February 1992. He was a director of ABI, Lynx's predecessor, from August 1986 to February 1993. He is a partner at Cooley Godward LLP, a law firm which has provided legal services to the Company.

Ms. La Porte has served as a director of the Company since March 1994. She is a general partner of the Sprout Group, the venture capital affiliate of Donaldson, Lufkin and Jenrette. From 1987 to 1993, Ms. La Porte was a principal at Asset Management Company. She currently serves as a director of Onyx Pharmaceuticals, Inc., Fem Rx, Inc. and several private companies.

Mr. Taylor has served as a director of the Company since March 1994 and Acting Chief Financial Officer since July 1994. He has been active in venture capital since 1977 when he joined Asset Management Company. He is a general partner of AMC Partners 89 L.P., which serves as the general partner of Asset Management Associates 1989 L.P., a private venture capital partnership. He currently serves as a director of Metra BioSystems, Inc., Pharmacyclics, Inc. and several private companies.

Board Committees and Meetings

In March 1994, the Board of Directors established an Audit Committee and a Compensation Committee. The Board of Directors does not have a standing nominating committee.

The Audit Committee recommends engagement of the Company's independent auditors and reviews the plan of the annual audit, the results of the audit, and the adequacy of internal accounting controls. The Audit Committee is composed of Messrs. Bowes and Kitch. The Audit Committee held one meeting during 1996.

The Compensation Committee reviews and recommends salaries for officers and key employees. The Compensation Committee also serves as the Stock Option Committee for the 1992 Stock Option Plan for the employees of the Company and in that capacity approves employee stock option grants. The members of the Compensation Committee are Ms. La Porte and Mr. Taylor. The Compensation

Case 3:07-cv-02845-WHA   Document 74-11   Filed 12/20/2007   Page 9 of 24
5428ko/INCL · DEF 14A for 3/13/97 on 1/2/97
Document 1 of 1 · DEF 14A · Notice of Meeting and Proxy Statement

Committee did not meet during 1996.

During the fiscal year ended December 31, 1996 the Board of Directors held eight meetings. Each Board member attended 75% or more of the aggregate of the meetings of the Board and of the committees on which he or she served.

4.

Document 1 of 1 · DEF 14A · Notice of Meeting and Proxy Statement

PROPOSAL 2

RATIFICATION OF SELECTION OF INDEPENDENT AUDITORS

The Board of Directors has selected Ernst & Young LLP as the Company's independent auditors for the fiscal year ending December 31, 1997 and has further directed that management submit the selection of independent auditors for ratification by the stockholders at the Annual Meeting. Ernst & Young LLP has audited the Company's financial statements since its inception in 1992. Representatives of Ernst & Young LLP are expected to be present at the Annual Meeting, will have an opportunity to make a statement if they so desire and will be available to respond to appropriate questions.

Stockholder ratification of the selection of Ernst & Young LLP as the Company's independent auditors is not required by the Company's By-laws or otherwise. However, the Board is submitting the selection of Ernst & Young LLP to the stockholders for ratification as a matter of good corporate practice. If the stockholders fail to ratify the selection, the Audit Committee and the Board will reconsider whether or not to retain that firm. Even if the selection is ratified, the Audit Committee and the Board in their discretion may direct the appointment of different independent auditors at any time during the year if they determine that such a change would be in the best interests of the Company and its stockholders.

The affirmative vote of the holders of a majority of the shares present in person or represented by proxy and entitled to vote at the Annual Meeting will be required to ratify the selection of Ernst & Young LLP.

THE BOARD OF DIRECTORS RECOMMENDS A VOTE IN FAVOR OF PROPOSAL 2.

SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT

The following table sets forth certain information regarding beneficial ownership of each class of the Company's voting stock as of February 28, 1997, by (i) each stockholder who is known by the Company to own beneficially more than 5% of the Common Stock; Series B Preferred Stock; Series C Preferred Stock and Series D Preferred Stock; (ii) each Named Executive Officer of the Company; (iii) each director of the Company; and (iv) all directors and executive officers of the Company as a group. All Series D Preferred Stock is held by Hoechst Marion Roussel as reflected in the Common Stock table and as noted in Note 5.

| Name and Address of Beneficial Owners | Common Stock(1) | | Series B Preferred Stock(1) | | Series C Preferred Stock(1) | |
|---|---|---|---|---|---|---|
| | Number | Percent(2) | Number | Percent(2) | Number | Percent(2) |
| Entities affiliated with the Sprout Group(3) 3000 Sand Hill Road Building 4, Suite 270 Menlo Park, CA 94025 | 729,980 | 18.9% | 49,999 | 15.0% | 22,999 | 18.7% |
| Entities affiliated with U.S. Venture Partners IV, L.P.(4) 2180 Sand Hill Road Suite 300 Menlo Park, CA 94025 | 730,000 | 18.9% | 50,000 | 15.0% | 23,000 | 18.7% |
| Cannon Street Fund Ltd. c/o Meridian Venture Group R.R. Box 272 Charlottesville, VA 22314 | 565,000 | 15.3% | 40,000 | 12.0% | 16,500 | 13.4% |

Case 3:07-cv-02845-WHA   Document 74-11   Filed 12/20/2007   Page 11 of 24
SEC870-WHO · DEF 14A · For 5/13/97 · Filed 1/24/97
Document 1 of 1 · DEF 14A · Notice of Meeting and Proxy Statement

| Name and Address of Beneficial Owners | Common Stock(1) | | Series B Preferred Stock(1) | | Series C Preferred Stock(1) | |
|---|---|---|---|---|---|---|
| | Number | Percent(2) | Number | Percent(2) | Number | Percent(2) |
| Biotechnology Investments Limited c/o Old Court Limited P.O. Box 58 St. Julian's Court St. Peter Port Guernsey, Channel Islands | 545,000 | 14.8% | 40,000 | 12.0% | 14,500 | 11.8% |
| Singapore Bio-Innovations Pte, Ltd. 250 North Bridge Road 24-00 Raffles City Tower Singapore  0617 | 420,000 | 11.8% | 42,000 | 12.6% | 0 | ** |
| Hoechst Marion Roussel(5) 9300 Ward Parkway Kansas City, MO  64114 | 400,000 | 11.3% | 0 | ** | 0 | ** |
| Asset Management Associates 1989 L.P.(6) 2275 East Bayshore Rd., #150 Palo Alto, CA  94303 | 360,000 | 10.3% | 36,000 | 10.8% | 0 | ** |
| Applied Biosystems a Division of Perkin Elmer Corporation(7) 850 Lincoln Centre Drive Foster City, CA 94404 | 353,800 | 10.7% | 0 | ** | 0 | ** |
| Chiron Corporation 4360 Horton Street Emeryville, CA  94608 | 300,000 | 9.6% | 0 | ** | 0 | ** |
| Entities affiliated with Partech International(8) 101 California Ave., Suite 3150 San Francisco, CA  94111 | 300,000 | 8.7% | 15,000 | 4.5% | 15,000 | 12.2% |
| New York Life Insurance Company 51 Madison Avenue, Room 203 New York, NY  10010 | 270,000 | 7.9% | 20,000 | 6.0% | 7,000 | 5.7% |
| Becton Dickinson & Company One Becton Drive Franklin Lakes, NJ  07417 | 233,689 | 7.4% | 0 | ** | 0 | ** |
| Sam Eletr, Ph.D.(9) | 413,759 | 12.3% | 0 | ** | 0 | ** |
| William K. Bowes, Jr.(10) | 747,721 | 19.3% | 50,000 | 15.0% | 23,000 | 18.7% |
| Sydney Brenner, M.D., D. Phil.(11) | 275,375 | 8.7% | 0 | ** | 0 | ** |
| Timothy G. Geiser(12) | 160,327 | 4.9% | 0 | ** | 0 | ** |
| James C. Kitch(13) | 15,818 | ** | 700 | ** | 300 | ** |
| Kathleen D. La Porte(3) | 729,980 | 18.9% | 49,999 | 15.0% | 22,999 | 18.7% |
| David W. Martin, Jr., M.D | 92,500 | 2.9% | 0 | ** | 0 | ** |
| Karoly Nikolich, Ph.D.(14) | 100,000 | 3.1% | 0 | ** | 0 | ** |
| Craig C. Taylor(15) | 371,499 | 10.6% | 36,000 | 10.8% | 0 | ** |
| Gerald Zon, Ph.D.(16) | 160,806 | 4.9% | 0 | ** | 0 | ** |
| All directors and officers as a group (11 persons)(17) | 3,175,303 | 57.0% | 136,699 | 41.1% | 46,299 | 37.6% |

<PN>
**Less than one percent.

6.

(1)    Except as otherwise noted, and subject to community property laws where
applicable, each person or entity named in the table has sole voting
and investment power with respect to all shares shown as beneficially
owned by him, her or it. Beneficial ownership of Common Stock reflects
beneficial ownership of Series B Preferred Stock, Series C Preferred
Stock and Series D Preferred Stock as set forth in the table or, with
respect to Hoechst Marion Roussel, as set forth in Note 5.

(2)    Percentage of beneficial ownership is based on 3,140,672 shares of
Common Stock, 332,288 shares of the Company's Series B Preferred Stock,
123,299 shares of the Company's Series C Preferred Stock and 40,000
shares of the Company's Series D Preferred Stock outstanding as of
February 28, 1997, except as otherwise noted in the footnotes. The
Series B, Series C and Series D Preferred Stock is convertible into
Common Stock on a ten-for-one basis. Beneficial ownership is determined
in accordance with the rules of the Securities and Exchange Commission
and generally includes voting or investment power with respect to
securities. Shares of Common Stock subject to options currently
exercisable or exercisable within 60 days of February 28, 1997, are
deemed outstanding for computing the percentage of the person holding
such option but are not deemed outstanding for computing the percentage
of any other person.

(3)    Includes 49,999 shares of Series B Preferred Stock and 22,999 shares of
Series C Preferred Stock held by entities affiliated with Sprout Group.
Ms. La Porte, a director of the Company, is a general partner of the
Sprout Group, an entity affiliated with Sprout Capital VI, Sprout
Capital VII and DLJ Capital. Ms. La Porte shares the power to vote and
control the disposition of shares held by Sprout Capital VI, Sprout
Capital VII and DLJ Capital and therefore may be deemed to be the
beneficial owner of such shares. Ms. La Porte disclaims beneficial
ownership of such shares, except to the extent of her prorata interest
therein.

(4)    Includes 50,000 shares of Series B Preferred Stock and 23,000 shares of
Series C Preferred Stock held by entities affiliated with U.S. Venture
Partners IV, L.P. ("U.S.V.P. IV"). Mr. Bowes, a director of the
Company, is a general partner of Presidio Management Group IV, the
general partner of U.S.V.P. IV. Mr. Bowes shares the power to vote and
control the disposition of shares held by U.S.V.P. IV and therefore may
be deemed to be the beneficial owner of such shares. Mr. Bowes
disclaims beneficial ownership of such shares, except to the extent of
his prorata interest therein.

(5)    Consists solely of 40,000 shares of Series D Preferred Stock, which
constitutes 100% of the shares of Series D Preferred Stock outstanding.

(6)    Includes 36,000 shares of Series B Preferred Stock held by Asset
Management Associates 1989 L.P. ("Asset 1989 L.P."). Mr. Taylor, a
director of the Company, is a general partner of AMC Partners 89, which
is the general partner of Asset 1989 L.P. Mr. Taylor shares the power
to vote and control the disposition of shares held by Asset 1989 L.P.
and therefore may be deemed to be the beneficial owner of such shares.
Mr. Taylor disclaims beneficial ownership of such shares, except to the
extent of his prorata interest therein.

(7)    Includes 152,400 shares of Common Stock issuable upon exercise of Lynx
option held by Applied Biosystems that is exercisable immediately.

(8)    Includes 15,000 shares of Series B Preferred Stock and 15,000 shares
Series C Preferred Stock held by entities affiliated with Partech
International.

(9)    Includes 217,500 shares of Common Stock issuable upon exercise of Lynx
stock options held by Dr. Eletr that are exercisable within 60 days.

7.

(10)  See Note 4 above. Common Stock amount also includes 608 shares of Common Stock issuable upon exercise of Perkin Elmer stock options held by Mr. Bowes that are fully vested and exercisable.

(11)  Includes 15,375 shares of Common Stock issuable upon exercise of Lynx stock options held by Sydney Brenner that are exercisable within 60 days.

(12)  Includes 123,500 shares of Common Stock issuable upon exercise of Lynx stock options held by Dr. Geiser that are exercisable within 60 days. Also includes 4 shares of Common Stock held of record by Dr. Geiser's wife, to which shares Dr. Geiser disclaims beneficial ownership.

(13)  Includes 700 shares of Series B Preferred Stock and 300 shares of Series C Preferred Stock held by GC&H Investments, an investment partnership of which Mr. Kitch is a general partner. Also includes 3,833 shares of Common Stock issuable upon the exercise of Lynx stock option held by Mr. Kitch on behalf of Cooley Godward LLP, a law firm of which Mr. Kitch is a general partner. Mr. Kitch shares the power to vote and control the disposition of such shares and therefore may be deemed to be the beneficial owner of such shares. Mr. Kitch disclaims beneficial ownership of such shares, except to the extent of his prorata interest therein.

(14)  Includes 40,000 shares of Common Stock issuable upon exercise of Lynx stock options held by Dr. Nikolich that are exercisable within 60 days.

(15)  See Note 6 above. Common Stock amount also includes 1,000 shares of Series C Preferred Stock held by Mr. Taylor and 369 shares of Common Stock issuable upon exercise of Perkin Elmer stock options that are fully vested and exercisable.

(16)  Includes 130,750 shares of Common Stock issuable upon exercise of Lynx stock options held by Dr. Zon that are exercisable within 60 days. Also includes 105 shares of Common Stock held of record by Dr. Zon's wife and 64 shares of Common Stock issuable upon exercise of Perkin Elmer stock options held by Dr. Zon's wife that are fully vested and exercisable, as to which shares Dr. Zon disclaims beneficial ownership.

(17)  Common Stock amount includes 1,839,980 shares of Series B and Series C Preferred Stock (common equivalent) held by entities affiliated with certain directors and 585,999 shares of Common Stock issuable upon exercise of Lynx stock options and Perkin Elmer stock options held by directors and officers that are exercisable within 60 days. See Notes 9 through 16 above.

</FN>

Compliance with the Reporting Requirements of Section 16(a)

Section 16(a) of the Exchange Act requires the Company's directors and executive officers, and persons who own more than ten percent (10%) of a registered class of the Company's equity securities, to file with the Security and Exchange Commission ("SEC") initial reports of ownership and reports of changes in ownership of Common Stock and other equity securities of the Company. Officers, directors and greater than ten percent (10%) stockholders are required by SEC regulation to furnish the Company with copies of all Section 16(a) forms they file.

To the Company's knowledge, based solely on a review of the copies of such reports furnished to the Company, during the calendar year ended December 31, 1996, all Section 16(a) filing requirements applicable to its officers, directors and greater than ten percent (10%) beneficial owners were complied with except for Mr. Taylor's acquisition of 239 shares through the exercise of a stock option which was reported late.

8.

Document 1 of 1 · DEF 14A · Notice of Meeting and Proxy Statement

---

EXECUTIVE COMPENSATION

Compensation of Directors

       Directors are not  compensated by the Company for service as directors,
but they may be  reimbursed  for their  expenses  incurred  in  connection  with
attendance at board meetings.

Compensation of Executive Officers

       The following table sets forth certain compensation paid by the Company
during the calendar  year ended  December 31, 1996,  1995 and 1994, to its Chief
Executive Officer and each of the four other most highly  compensated  executive
officers whose compensation exceeded $100,000 (the "Named Executive Officers"):

Summary Compensation Table

| Name and Principal Position | Year | Annual Salary($)(1) | Long Term Compensation Awards ------ Securities Underlying Options (#) | All Other Compensation($) |
|---|---|---|---|---|
| Sam Eletr, Ph.D. | 1996 | 176,121 | 32,500 | – |
| Chief Executive Officer and | 1995 | 170,484 | 105,000 | – |
| Chairman of the Board | 1994 | 160,990 | 80,000 | – |
| David W. Martin, Jr., M.D.(2) | 1996 | 206,229 | 32,500 | 158,612(3) |
| President and Chief | 1995 | 133,713(4) | 250,000 | 750(5) |
| Executive Officer | 1994 | – | – | – |
| Timothy G. Geiser, Ph.D. | 1996 | 153,818 | – | 750(5) |
| Vice President, Business | 1995 | 142,674 | 60,000 | 750(5) |
| Development | 1994 | 132,176 | 60,000 | 750(5) |
| Karoly Nikolich, Ph.D. | 1996 | 150,210 | 30,000 | 750(5) |
| Vice President, Research | 1995 | 37,085(6) | 70,000 | – |
|  | 1994 | – | – | – |
| Gerald Zon, Ph.D. | 1996 | 154,168 | – | 750(5) |
| Vice President, Medicinal Chemistry | 1995 | 143,130 | 60,000 | 750(5) |
|  | 1994 | 132,468 | 60,000 | 750(5) |

<FN>

(1)    Includes  amounts  earned but  deferred  at the  election  of the Named
       Executive Officer pursuant to the Company's 401(k) Plan.

(2)    Dr. Martin  terminated  his  relationship  with the Company in November
       1996. The Company will continue to pay Dr.  Martin's annual base salary
       for a period of time not to exceed (12) months pursuant to the terms of
       the Separation Agreement between the Company and Dr. Martin.

                                     9.

---

Document 1 of 1 · DEF 14A · Notice of Meeting and Proxy Statement

---

<FN>

(3)     Includes $157,862 in principal and accrued interest due on the line of
        credit that was forgiven as part of the Separation Agreement. Also
        includes $750 in contributions made by the Company to the Company's
        401(k) Plan on behalf of such employee.

(4)     Dr. Martin joined the Company in May 1995. The 1995 annual salary
        represents a partial year and is not comparable to 1996.

(5)     Contributions made by the Company to the Company's 401(k) Plan on
        behalf of such employee.

(6)     Dr. Nikolich joined the Company in October 1995. The 1995 annual salary
        represents a partial year and is not comparable to 1996.

</FN>


        Except as disclosed above, no compensation characterized as long-term
compensation, including restricted stock awards issued at a price below fair
market value or long-term incentive plan payouts, was paid by the Company
during the year ended December 31, 1996, to any of the Named Executive Officers.

Stock Option Grants and Exercises

        The following table sets forth, for each of the Named Executive
Officers in the Summary Compensation Table, certain information regarding
options granted during the year.

OPTION GRANTS IN LAST FISCAL YEAR

|  |  | Individual Grants |  |  | Potential Realizable Value at Assumed Annual Rates of Stock Price Appreciation for Option Term(4) | |
| Name | Number of Securities Underlying Options Granted (1) | % of Total Options Granted to Employees in Fiscal Year (2) | Exercise or Base Price ($/sh)(3) | Expiration Date | 5%($) | 10%($) |
|----|----|----|----|----|----|----|
| Sam Eletr, Ph.D. | 32,500 | 3.78% | $1.54 | 08/06/2006 | $373,463 | $624,323 |
| David W. Martin, Jr., M.D. | 32,500(5) |  |  |  |  |  |
| Timothy G. Geiser, Ph.D. | - |  |  |  |  |  |
| Karoly Nikolich, Ph.D. | 30,000 | 3.49% | $4.00 | 11/18/2006 | $75,467 | $191,249 |
| Gerald Zon, Ph.D. | - |  |  |  |  |  |

<FN>

(1)     Officers of the Company were granted the right to exercise their
        options prior to vesting, subject to the Company's right of repurchase
        at the original issue price, which lapses ratably over five years.
        Options granted generally vest over a five-year period. The term of the
        options is ten years.

(2)     Based on an aggregate of 859,858 options granted to employees of and
        consultants to the Company during the year ended December 31, 1996,
        including the Named Executive Officers.

10.

Case 3:07-cv-02845-WHA    Document 74-11    Filed 12/20/2007    Page 16 of 24
08ce69a23454d29d · DEF 14A · For 13/13/96 · Filed 11/4/96
Document 1 of 1 · DEF 14A · Notice of Meeting and Proxy Statement

(3)     The exercise price per share of each option is equal to the fair market
        value as determined by the Board of Directors, except for the grants
        pursuant to the Agreement of Merger between the Company and Spectragen,
        Inc., for which the exercise price is the original Spectragen grant
        price, as adjusted pursuant to the terms of the Agreement of Merger.
        See. "Certain Transactions - Transactions with Directors and Executive
        Officers."

(4)     The potential realizable value is calculated based on the term of the
        option at its time of grant (ten years). It is calculated by assuming
        that the fair market value of the stock as determined by the Board of
        Directors on the date of grant appreciated at the indicated annual rate
        compounded annually for the entire term of the option and that the
        option is exercised and sold on the last day of its term for the
        appreciated stock price. These amounts represent certain assumed rates
        of appreciation only, in accordance with the rules of the SEC, and do
        not reflect the Company's estimate or projection of future stock price
        performance. Actual gains, if any, are dependent on the actual future
        performance of the Company's Common Stock and no gain to the optionee
        is possible unless the stock price increases over the option term,
        which will benefit all stockholders.

(5)     Dr. Martin's shares were canceled in November 1996 due to the
        termination of his relationship with the Company.

</FN>

    The following table sets forth, for each of the Named Executive
Officers in the Summary Compensation Table, the shares acquired and the value
realized on each exercise of stock options during the year and number of
unexercised options:

AGGREGATED OPTION EXERCISES IN THE YEAR ENDED
DECEMBER 31, 1996 AND OPTION VALUES

| Name | Shares Acquired on Exercise(#) | Value Realized($)(1) | Number of Unexercised Options at Year-End ----------- (Exercisable/ Unexercisable)(2) | Value of Unexercised In-the-Money Options at Year-End ($) ----------------- (Exercisable/ Unexercisable)(3) |
|------|------|------|------|------|
| Sam Eletr, Ph.D. | 130,000(4) | 630,500 | 217,500/0 | 489,950/0 |
| David W. Martin, Jr., M.D. | - | - | - | - |
| Timothy G. Geiser, Ph.D. | - | - | 123,500/0 | 288,150/0 |
| Karoly Nikolich, Ph.D. | - | - | 40,000/0 | 5,000/0 |
| Gerald Zon, Ph.D. | - | - | 130,750/0 | 311,925/0 |

<FN>

(1)     Represents the fair market value of the Company's Common Stock on the
        date of exercise, minus the exercise price of the option, multiplied by
        the number of shares underlying the option.

(2)     Includes unvested shares from grants which allow exercises of unvested
        shares.

(3)     Fair market value, as determined by the Board of Directors, of the
        Company's Common Stock at December 31, 1996 ($4.00), less the exercise
        price.

(4)     Shares exercised are subject to a Stock Purchase Agreement between the
        optionee and the Company. The shares are subject to repurchase by the
        Company at the original purchase price in the event of termination of
        employment. The shares will be released from the Company's repurchase
        option ratably over a five year period.

</FN>

11.

Case 3:07-cv-02845-WHA    Document 74-11    Filed 12/20/2007    Page 17 of 24
S-2845A7-WHA    Document 1 of 1 · 13/13/2007 12:20/2007
Document 1 of 1 · DEF 14A · Notice of Meeting and Proxy Statement

REPORT OF THE COMPENSATION COMMITTEE OF THE
BOARD OF DIRECTORS ON EXECUTIVE COMPENSATION(1)

General

The Company became a public reporting company in December 1993 when the Company registered its Common Stock and Series A Preferred Stock under the Exchange Act and the Compensation Committee of the Board of Directors was established in March 1994. Accordingly, the Compensation Committee made the primary compensation determinations for the Company's officers during the year ended December 31, 1996, including the establishment of base salaries, consideration of bonuses and stock option grants. During 1996, the members of the Compensation Committee included Kathleen La Porte and Craig Taylor. The committee has provided the following with respect to the compensation of executive officers during the year ended December 31, 1996:

Compensation Philosophy

The Company and its Compensation Committee believe that the compensation of all employees, including executive officers, must be sufficient to attract and retain highly qualified personnel and that the Company must align compensation with short-term and long-term business strategies and performance goals. The current compensation philosophy is to emphasize stockholder value linked with incentives such as stock options over salary increases. The basic elements of executive officer compensation are as follows:

Salary. To insure that its compensation practices remain competitive, the Company compares its compensation of executives with that of executives of other companies of similar industry, size and geographic location. Salary increases are generally granted on an annual basis and are based on both individual performance and the standard percentage of salary increases granted to other employees.

Bonuses. During 1996, the Compensation Committee did not consider bonuses when establishing executive compensation, focusing instead on base salary and long-term incentives as the primary compensation vehicles appropriate to the early stages of the Company's development. As part of its general compensation philosophy, however, the Company believes that executive performance may be maximized via a system of annual incentive awards and the Company may consider such awards in the future.

Long-term Incentives. The Company believes that equity ownership provides significant motivation to executive officers to maximize value for the Company's stockholders. The Compensation Committee grants stock to executive officers and other key employees based on a variety of factors, including the financial performance of the Company and assessment of personal performance. Through stock option grants, executives receive significant equity incentives to build long-term stockholder value. The exercise price of options generally is 100% of the fair value of the underlying stock on the date of grant. Employees receive value from these grants only if the Company's Common Stock appreciates in the long term.

Employment and Severance Agreements. On joining the Company in May 1995, David W. Martin, Jr., M.D., former President and Chief Executive Officer of the Company entered into an Employment Agreement with the Company. Pursuant to his employment agreement, Dr. Martin is receiving, as severance, continued payment of his base salary ($200,000 per year) for twelve (12) months from the date of his termination, reduced by any earned income he may receive from other sources. Also under the terms of the agreement, Dr. Martin received three stock option grants. The first was a fully vested option to purchase 25,000 shares of Lynx Common Stock at an exercise price of $1.00. The second

---------------------------

(1) The  material in this  report is not  "soliciting  material,"  is not deemed
"filed" with the SEC, and is not to be incorporated by reference into any filing
of the Company under the 1933 Act or 1934 Act,  whether made before or after the
date hereof and irrespective of any general incorporation  language contained in
such filing.

                                    12.

was an option to purchase 175,000 shares of Common Stock at an exercise price of $1.00 per share and the third was an option to purchase 50,000 shares of Common Stock at an exercise price of $5.00 per share. The second and third grants vested over a five year period from the date of grant. Dr. Martin exercised all of the grants subject to the Company's right to repurchase unvested shares upon his termination. A further term of Dr. Martin's employment was a line of credit whereby he could borrow up to $25,000 per quarter during the first two years of employment. The principal and interest due on the line of credit ($157,862) were forgiven upon Dr. Martin's separation from the Company in November 1996. Dr. Martin is not entitled to any additional compensation or benefits beyond what is described in this paragraph. See. "Certain Transactions Transactions with Directors and Executive Officers."

## Chief Executive Officer Compensation

Dr. Eletr's compensation was established in accordance with the criteria described above and was determined by the Board of Directors primarily on the basis of the salary received by Dr. Eletr in 1995 and pursuant to discussions between the Board of Directors and Dr. Eletr, with particular consideration given to Dr. Eletr's equity ownership position in the Company. Because of his ownership position in the Company, the salary established by the Board of Directors may not reflect a salary that would otherwise be required to competitively compensate and retain Dr. Eletr and may not be indicative of future compensation.

## Certain Tax Considerations

Section 162(m) of the Code limits the Company to a deduction for federal income tax purposes of not more than $1 million of compensation paid to certain executive officers in a taxable year. Compensation above $1 million may be deducted if it is "performance-based compensation" within the meaning of the Code. The Board of Directors has not yet established a policy for determining which forms of incentive compensation awarded to executive officers shall be designed to qualify as performance based compensation.

From the members of the Compensation Committee:

Kathleen La Porte
Craig Taylor

## Performance Measurement Comparison

The Company's Common Stock was subject to certain restrictions on transfer as set forth in the Company's By-laws, which restrictions expired on September 30, 1994. The Company has not listed its Common Stock on any exchange or on the Nasdaq National Market, nor is the Company aware of an established public trading market for the Common Stock. The Company therefore has not included a Performance Measurement Graph in this proxy statement because such a graph will not provide meaningful information to the Company's stockholders.

13.

Case 3:07-cv-02845-WHA   Document 74-11   Filed 12/20/2007   Page 20 of 24
S-2843A-WHA     DEF 14A   11/13/97   01:14:20 PM
Document 1 of 1 · DEF 14A · Notice of Meeting and Proxy Statement

CERTAIN TRANSACTIONS

Transactions with Directors and Executive Officers

In November 1996, Lynx and its majority owned subsidiary, Spectragen, Inc. ("Spectragen"), a Delaware corporation, entered into an Agreement of Merger pursuant to which Spectragen was merged with and into Lynx and the separate corporate existence of Spectragen ceased (the "Merger"). Each share of Spectragen Common Stock outstanding at the time of Merger was converted into 1.3 shares of Lynx Common Stock and all vested and unvested options to purchase shares of Spectragen Common Stock were assumed by Lynx and converted into options to purchase Lynx Common Stock at the same ratio. Dr. Eletr, a former stockholder and optionholder of Spectragen, received 130,000 shares of Lynx Common Stock and an option to purchase 32,500 shares of Lynx Common Stock as a result of the merger. Dr. Brenner, a former stockholder and optionholder of Spectragen, received 260,000 shares of Lynx Common Stock and an option to purchase 65,000 shares of Lynx Common Stock as a result of the merger.

In May and June 1995, the Company entered into three separate loan agreements with David W. Martin, Jr., M.D., who was then the Company's President. The first loan of $450,000 was a promissory note secured by a second mortgage on real property. The principal and interest on this loan were repaid according to the terms of the note in September 1996, upon sale of the property. The second loan of $450,000 was issued under a Stock Purchase Agreement for the purchase of 250,000 shares of Common Stock whereby all the shares issued under the agreement were pledged as collateral. Of the 250,000 shares, 225,000 shares were subject to the Company's right of repurchase which lapsed ratably over five years. The loan agreement specified that upon termination, after the Company's right of repurchase was exercised, the remaining principal and interest on the loan were due and payable. In November 1996, the officer left the Company and the stock purchase loan was repaid in full. The third loan was a line of credit agreement whereby Dr. Martin could borrow from the Company up to $25,000 per calendar quarter during the first two years of employment. The line was secured by shares of the Company's Common Stock owned by Dr. Martin. The principal and accrued interest due on the line of credit, an aggregate of $157,862, was forgiven upon Dr. Martin's separation from the Company.

In October 1995, the Company entered into a loan agreement with another officer of the Company. The note receivable of $210,000 was issued under a Stock Purchase Agreement for the purchase of 60,000 shares of Common Stock whereby all the shares issued under the agreement are pledged as collateral. The outstanding principal amount is due and payable in full on October 1, 2000, subject to an obligation to prepay under specified circumstances. Interest is payable upon the expiration or termination of the note and accrues at the rate of 6.38% per annum. As of February 28, 1997, the outstanding principal and accrued interest under the note was $228,906.

The Company currently has no other employment contracts with any Named Executive Officers, and the Company has no other compensatory plan or arrangement with Named Executive Officers where the amounts to be paid exceed $100,000 and which are activated upon resignation, termination or retirement of any such executive officer or upon a change in control of the Company.

For legal services rendered during the calendar year ended December 31, 1996, the Company paid approximately $468,937 to Cooley Godward LLP, the Company's counsel, of which Mr. Kitch, a director of the Company, is a partner.

The Company has entered into indemnity agreements with certain officers and directors which provide, among other things, that the Company will indemnify such officer or director, under the circumstances and to the extent provided for therein, for expenses, damages, judgments, fines and settlements he or she may

be required to pay in actions or proceedings which he or she is or may be made a party by reason of his or her position as a director, officer or other agent of the Company, and otherwise to the full extent permitted under Delaware law and the Company's By-laws.

14.

OTHER MATTERS

The Board of Directors knows of no other matters that will be presented for consideration at the Annual Meeting. If any other matters are properly brought before the meeting, it is the intention of the persons named in the accompanying proxy to vote on such matters in accordance with their best judgment.

By Order of the Board of Directors

James C. Kitch, Secretary

April 9, 1997

A copy of the Company's Annual Report to the Securities and Exchange Commission on Form 10-K for the period ended December 31, 1996, is available without charge upon written request to: Investor Relations, Lynx Therapeutics, Inc., 3832 Bay Center Place, Hayward, California 94545.

Case 3:07-cv-02845-WHA    Document 74-11    Filed 12/20/2007    Page 23 of 24
3:28:43 /WHA    Document 74-11   5/13/97   12:44:20/38
Document 1 of 1 · DEF 14A · Notice of Meeting and Proxy Statement

APPENDIX A

PROXY                          LYNX THERAPEUTICS, INC.                          PROXY
                   PROXY SOLICITED BY THE BOARD OF DIRECTORS
                     FOR THE ANNUAL MEETING OF STOCKHOLDERS
                        TO BE HELD ON MAY 13, 1997

     The undersigned  hereby appoints Sam Eletr and James C. Kitch,  and each of
them,  as  attorneys  and  proxies  of  the  undersigned,  with  full  power  of
substitution, to vote all of the shares of stock of Lynx Therapeutics, Inc. (the
"Company")  which the  undersigned may be entitled to vote at the Annual Meeting
of Stockholders of Lynx Therapeutics, Inc. to be held at the Company's principal
executive offices,  3832 Bay Center Place,  Hayward, CA 94545 on May 13, 1997 at
11:00 a.m. (local time),  and at any and all  postponments,  continuations  and
adjournments  thereof,  with all powers that the  undersigned  would  possess if
personally  present,  upon  and  in  respect  of  the  following  matters  and in
accordance with the following  instructions,  with discretionary authority as to
any and all other matters that may properly come before the meeting.

     UNLESS A CONTRARY DIRECTION IS INDICATED,  THIS PROXY WILL BE VOTED FOR ALL
NOMINEES LISTED IN PROPOSAL 1 AND FOR PROPOSAL 2 AND MORE SPECIFICALLY DESCRIBED
IN THE PROXY STATEMENT. IF SPECIFIC INSTRUCTIONS ARE INDICATED,  THIS PROXY WILL
BE VOTED IN ACCORDANCE THEREWITH.

                   (Continued and to be signed on the other side)

                                     1

Case 3:07-cv-02845-WHA    Document 74-11    Filed 12/20/2007    Page 24 of 24
S-2845A-WHA · Document 74-11 · 12/13/07 · of 12/20/2007
Document 1 of 1 · DEF 14A · Notice of Meeting and Proxy Statement

[X] Please mark
your votes
as in this
example.

THE BOARD OF DIRECTORS  RECOMMENDS A VOTE FOR THE NOMINEES FOR DIRECTORS  LISTED
ABOVE AND A VOTE FOR PROPOSAL 2.

1.  To elect directors to serve for the ensuing year and until their  successors
    are elected.

NOMINEES: Sam Eletr, William K. Bowes, Jr., Sydney Brenner,
James C. Kitch, Kathleen D. La Porte, Craig C. Taylor

                            FOR        WITHHELD

                            [ ]           [ ]

[ ]
    ------------------------------------
    For all nominees except as noted above

2.  To ratify the selection of Ernst & Young LLP as independent  auditors of the
    Company for its fiscal year ending December 31, 1997.

                        FOR     AGAINST     ABSTAIN
                        [ ]       [ ]         [ ]

3.  To transact  such other  business as may properly come before the meeting or
    any adjournment or postponement thereof.

MARK HERE FOR ADDRESS CHANGE AND NOTE AT LEFT [ ]

Signature(s) _____ Dated _____, 1997

Please vote, date and promptly return this proxy in the enclosed return envelope
which is postage prepaid if mailed in the United States.

Please sign exactly as your name appears  hereon.  If the stock is registered in
the names of two or more persons, each should sign. Executors,  administrators,
trustees,  guardians and attorneys-in-fact should add their titles. If signer is
a  corporation,  please  give  full  corporate  name and have a duly  authorized
officer  sign,  stating  title.  If  signer  is a  partnership  please  sign  in
partnership name by authorized person.

*Source:*  SEC Info · www.secinfo.com · *Fran Finnegan & Company* · 12/18/07