# Exhibit VV

## AGREEMENT REGARDING FORMATION OF SPECTRAGEN

THIS AGREEMENT REGARDING FORMATION OF SPECTRAGEN (the "Agreement") is made and entered into as of the 24th day of March, 1995 (the "Effective Date") by and among LYNX THERAPEUTICS, INC., a Delaware corporation ("Lynx"), SPECTRAGEN, INC., a Delaware corporation ("Spectragen"), and Dr. Sydney Brenner, an individual residing in Cambridge, England ("Brenner").

### RECITALS

WHEREAS, Brenner has developed certain inventions relating to improved methods for determining the sequence of DNA and other nucleotides and has filed patent applications covering such inventions;

WHEREAS, Lynx and Brenner entered into that certain Development Agreement, dated as of May 11, 1994 (the "Development Agreement"), pursuant to which Lynx undertook to conduct a research program in collaboration with Brenner directed to further evaluation and development of such inventions at a cost to Lynx of at least $1,000,000;

WHEREAS, the Development Agreement contemplated that upon completion of the research program Lynx and Brenner, after evaluating alternatives, would assign all rights in the Inventions, the Patents and the Program Technology to a new company that would seek independent financing to support commercial development of such patents and technology, subject only to the reservation of an option in favor of Lynx for a non-exclusive, royalty-free license solely for use by Lynx in the conduct of its own business;

WHEREAS, the research program contemplated by the Development Agreement has been partially completed, Lynx having expended approximately $1,000,000 thereon as of the Effective Date;

WHEREAS, Lynx has proposed, and Brenner has agreed, that the contemplated equity financing of the new company be provided by Lynx instead of by independent investors, subject to the terms and conditions set forth in this Agreement;

WHEREAS, the new company has been incorporated under the name "Spectragen, Inc." and is party to this Agreement; and

WHEREAS, on the Effective Date Lynx completed the first closing of its Series C Preferred Stock financing, a portion of the proceeds of which will be used to provide financing for Spectragen, as hereinafter set forth.

NOW THEREFORE, in consideration of the foregoing premises and the covenants and promises contained in this Agreement, the parties agree as follows:

## ARTICLE 1.

### DEFINITIONS

Capitalized terms not otherwise defined in this Agreement shall have the meanings ascribed to them in the Development Agreement.

## ARTICLE 2.

### ASSIGNMENT

2.1  ASSIGNMENTS OF RIGHTS. Lynx and Brenner hereby assign to Spectragen all of their respective rights, title and interest in and to the Inventions, the Patents, the Program Technology and any enhancements or improvements thereto reduced to practice by Lynx and Brenner, respectively, at any time prior to December 31, 1997. The parties agree to execute any and all assignments and other legal documents that may be necessary or appropriate to effect the foregoing assignments.

2.2  CAPITAL CONTRIBUTION. On the Effective Date, Lynx shall contribute to the capital of Spectragen $ 1.1M   in cash, representing the remainder of its financial commitment to the Development Program as of the Effective Date.

2.3  SERVICES AGREEMENT. For so long as Lynx owns at least 50% of the outstanding voting stock of Spectragen, Lynx agrees to provide at its cost such administrative, technical and operational support services as reasonably may be requested by Spectragen.

2.4  ISSUANCE OF COMMON STOCK. In consideration of the foregoing, on the Effective Date Spectragen shall issue and deliver 1,800,000 shares of its Common Stock to Lynx and 200,000 shares of its Common Stock to Brenner (the "Founder Stock").

2.5  ACCESS TO TECHNOLOGY; LICENSE. The parties acknowledge that the Program Technology and other technology to be developed or acquired by Spectragen may be useful to Lynx in the pursuit of its own research and development programs. For so long as Lynx owns more than 50% of the outstanding voting stock of Spectragen, Lynx shall have access to Spectragen's technology on such terms and conditions and for such consideration as Lynx and Spectragen may from time to time agree, it being the parties' intent that Spectragen should be fairly compensated for any assistance it provides to Lynx. At any time prior to completion of a transaction that results in Lynx owning 50% or less of the outstanding voting stock of Spectragen, Lynx may by written notice to Spectragen elect to enter into an agreement with Spectragen providing Lynx with access to Spectragen's technology following such transaction. Such agreement will be reasonable in scope and fair under the circumstances to both parties, it being the parties' intent that Lynx should have ongoing access to Spectragen's technology on a basis that is consistent with Spectragen's arrangements with other companies and on terms and conditions that are no less favorable to Lynx than the terms and conditions of such other arrangements.

**2.6   SERIES A PREFERRED STOCK.** On or as soon as practicable after the Effective Date, Lynx shall purchase 2,000,000 shares of the Series A Preferred Stock of Spectragen at a purchase price of $2.00 per share, payable in cash; *provided, however,* that any or all of such aggregate purchase price may be credited against funds expended by Lynx in excess of its funding commitment pursuant to the Development Agreement.

**2.7   CONSULTING AGREEMENTS.** On the Effective Date, Brenner shall enter into separate consulting agreements with Lynx and Spectragen addressing consulting services to be provided by Brenner to each of the two companies in their respective areas of interest. These agreements will replace the Consulting Agreement dated May 11, 1994, which hereby is terminated.

**2.8   DEVELOPMENT AGREEMENT.** The Development Agreement is hereby terminated as of the Effective Date.

ARTICLE 3.

SPECTRAGEN COVENANTS

**3.1   DEVELOPMENT OBLIGATION.** Spectragen hereby agrees to use commercially reasonable efforts to investigate and develop further the Inventions and the Program Technology and to commercially exploit the results thereof, all for the purpose of achieving the highest possible value for the Founder Stock.

**3.2   FUTURE LICENSES; AFFILIATES.** To ensure that Brenner receives full value from his contributions to Spectragen, Spectragen hereby agrees that, for so long as Brenner and his successors and assigns collectively hold at least 100,000 shares of the Founder Stock, Spectragen shall not, without the unanimous approval of its Board of Directors, (a) grant any license or other right in any of its technology, including technology hereafter developed or acquired as well as the technology assigned to Spectragen pursuant to Article 2.1 hereof, except on an arms-length basis for full and fair value or as provided in Article 2.5 hereof or (b) enter into any transaction with any of its Affiliates that are not wholly-owned subsidiaries.

**3.3   INTELLECTUAL PROPERTY MATTERS.** Spectragen shall undertake and shall have the sole and exclusive right, at its expense, to file any and all patent applications covering the Inventions and the Program Technology and to direct and control the prosecution of all such patent applications, using counsel selected by Spectragen. Brenner and Lynx agree to provide their full cooperation and assistance to Spectragen and its counsel at no cost to them in prosecuting such patent applications. Spectragen shall have sole discretion to determine the patent applications to be filed and how such applications shall be prosecuted. Spectragen agrees to use reasonable diligence in prosecuting such applications as are filed.

**3.4   SERIES A PREFERRED STOCK.** As soon as reasonably practicable after the Effective Date, Spectragen agrees to file with the Secretary of State of the State of Delaware an Amended and Restated Certificate of Incorporation substantially in the form attached hereto as

20842184
061295                                3.                                MAC00881

**CONFIDENTIAL**

Exhibit A, increasing the number of authorized shares of Preferred Stock to four million (4,000,000) and designating two million (2,000,000) shares as Series A Preferred Stock.

## ARTICLE 4.

### REPRESENTATIONS AND WARRANTIES

**4.1   LYNX.** Lynx hereby represents and warrants that it has full corporate power and authority to enter into this Agreement, that this Agreement has been duly and validly executed and delivered by it and constitutes a legal, valid and binding obligation of Lynx, enforceable in accordance with its terms, and that it owns, and under this Agreement assigns and conveys to Spectragen, all right, title and interest (other than such as are held by Brenner) in and to the Inventions, the Patents and the Program Technology, free and clear of any lien, claim or encumbrance or any covenant, condition, restriction or license created by Lynx that is not expressly disclosed in this Agreement.

**4.2   BRENNER.** Brenner hereby represents and warrants that this Agreement has been duly and validly executed and delivered by him and constitutes a legal, valid and binding obligation of his, enforceable in accordance with its terms, and that he has assigned and conveyed to Lynx pursuant to the Development Agreement and/or to Spectragen under this Agreement all of his right title and interest in and to the Inventions and the Patents, free and clear of any lien, claim or encumbrance or any covenant, condition, restriction or license created by Brenner that is not expressly disclosed in this Agreement.

**4.3   SPECTRAGEN.** Spectragen hereby represents and warrants that it has full corporate power and authority to enter into this Agreement, that this Agreement has been duly and validly executed and delivered by it and constitutes a legal, valid and binding obligation of Spectragen, enforceable in accordance with its terms. Immediately prior to the Effective Date, Spectragen's authorized capital stock consists of four million (4,000,000) shares of Common Stock, none of which are issued and outstanding, and two million (2,000,000) shares of Preferred Stock, none of which are issued and outstanding.

**4.4   INVESTMENT REPRESENTATIONS.** Lynx and Brenner understand that the Founder Stock has not been registered under the Securities Act of 1933, as amended (the "Act"). Each of Lynx and Brenner (for the purpose of this Section 4.4, each an "Investor") represents and warrants as follows:

(a)   Investor has substantial experience in evaluating and investing in private placement transactions of securities in companies similar to Spectragen so that it is capable of evaluating the merits and risks of its investment in Spectragen. Investor acknowledges that it must bear the economic risk of its investment indefinitely unless the Founder Stock is registered under the Act or an exemption from registration is available. Spectragen has no present intention of registering any of its Common Stock.

(b)  Investor is acquiring the Founder Stock for its own account for investment only and not with a view toward its distribution.

(c)  Investor represents that by reason of its (or its management's) business or financial experience, it has the capacity to protect its interests in connection with the transactions contemplated under this Agreement. Investor is aware of no publication of any advertisement in connection herewith.

(d)  Investor represents that it is an accredited investor within the meaning of Regulation D under the Act.

(e)  Investor represents that it has had ample opportunity to obtain information of Spectragen and to ask questions of its management.

(f)  Investor has been advised or is aware of the provisions of Rule 144 promulgated under the Act, which permits limited resale of shares purchased in a private placement subject to satisfaction of certain conditions, including, among other things the availability of certain current public information about Spectragen; the resale occurring not less then two years after a party has purchased and paid for the security to be sold; the sale being through an unsolicited "brokers' transaction" or in transactions directly with a market maker (as that term is defined under the Securities Exchange Act of 1934, as amended) and the number of shares being sold during any three month period not exceeding specified limitations.

(g)  Brenner resides in England; Lynx is located at the address contained in Article 6.6.

## ARTICLE 5.

### SPECIAL BRENNER RIGHTS

5.1  BOARD REPRESENTATION. For so long as Brenner and his successors and assigns collectively hold at least 100,000 shares of the Founder Stock, Lynx agrees to vote all shares of capital stock held by Lynx in favor of the election of Brenner to the Board of Directors of Spectragen.

5.2  RIGHT OF RESCISSION. In addition to any other rights and remedies he may have under the circumstances, Brenner shall have the right to rescind this Agreement in the event of a breach of any of the representations, warranties and covenants of Lynx and Spectragen set forth in Articles 3.1, 3.2, 4.1 and 4.2, which remains uncured 60 days after written notice thereof from Brenner. Upon exercise of this right by Brenner, (a) Brenner shall surrender to Spectragen for cancellation all of the Founder Stock issued to him pursuant to Article 2 hereof (together with any additional shares issued to him in respect to such stock as a result of stock splits, dividends or other similar changes in the capitalization of Spectragen) and (b) Spectragen shall assign and transfer to Brenner all right, title and interest in and to the intellectual property contributed to Spectragen by Investor pursuant to Article 2.1 of this Agreement. This right is

**CONFIDENTIAL**

personal to Brenner, may be exercised only by him during his lifetime, and will terminate upon his death.

## ARTICLE 6.

### MISCELLANEOUS

6.1  ASSIGNMENT.  This Agreement may not be assigned by any party without the prior written consent of the other parties, which consent shall not be unreasonably withheld, *provided, however,* that Spectragen may assign this Agreement without such consent to any Affiliate, to any successor by way of merger, acquisition, sale or transfer of substantially all of its business assets to which this Agreement relates, in a manner such that the assignee shall assume and be responsible for the performance and observance of all of Spectragen's duties and obligations hereunder.  The Agreement will be binding upon and inure to the benefit of all permitted successors and assigns of the parties hereunder, and the heirs and personal representatives of the individual parties hereunder; and the name of each party appearing herein will be deemed to include the names of such party's successors and assigns to the extent necessary to carry out the intent of this Agreement.

6.2  AMENDMENT.  No amendment, modification or supplement of any provision of the Agreement will be valid or effective unless made in writing and signed by a duly authorized representative of each party.

6.3  WAIVER.  No provision of the Agreement (unless such provision otherwise provides) will be waived by any act, omission or knowledge of a party or its agents or employees except by an instrument in writing expressly waiving such provision and signed by a duly authorized representative of the waiving party.

6.4  HEADINGS.  The headings for each Article and Section in this Agreement have been inserted for the convenience of reference only and are not intended to limit or expand on the meaning of the language contained in the particular article or section.

6.5  FORCE MAJEURE.  Any delays in performance by any party under this Agreement shall not be considered a breach of this Agreement if and to the extent caused by occurrences beyond the reasonable control of the party affected, including but not limited to acts of God, embargoes, governmental restrictions, strikes or other concerted acts of workers, fire, flood, explosion, earthquake, riots, wars, civil disorder, rebellion or sabotage.  The party suffering such occurrence shall immediately notify the other party and any time for performance hereunder shall be extended by the actual time of delay caused by the occurrence.

6.6  NOTICES..  Any notices given pursuant to this Agreement shall be in writing and shall be deemed delivered upon the earlier of (i) when received at the address set forth below, or (ii) five business days after mailed by certified mail in the United States mails, postage prepaid and properly addressed, with return receipt requested.  Notices shall be delivered to the

**CONFIDENTIAL**

respective parties as indicated below, or at such other locations as such parties specify by like notice:

If to Lynx:

> Lynx Therapeutics, Inc.
> 3832 Bay Center Place
> Hayward, California 94545
> Attn: President

If to Brenner:

> Dr. Sydney Brenner
> 17B St. Edwards Passage
> Cambridge, CB2 3PJ
> England

If to Spectragen:

> Spectragen, Inc.
> 3832 Bay Center Place
> Hayward, California 94545
> Attn: President

    6.7    SEVERABILITY. Whenever possible, each provision of the Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of the Agreement is held to be prohibited by or invalid under applicable law, such provision will be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of the Agreement.

    6.8    ENTIRE AGREEMENT OF THE PARTIES. The Agreement will constitute and contain the complete, final and exclusive understanding and agreement of the parties hereof respecting the subject matter, and cancels and supersedes any and all prior negotiations, correspondence, understandings and agreements, whether oral or written, between the parties respecting the subject matter thereof.

    6.9    GOVERNING LAW. This Agreement shall be governed by and construed in accordance with the laws of the State of California as applied to contracts entered into and to be performed in California, without reference to conflicts of laws. All parties to this Agreement hereby consent to the jurisdiction of the courts of the State of California and the Federal District Court for the Northern District of California for resolution of any disputes that arise hereunder.

    6.10    COUNTERPARTS. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first written above.

LYNX THERAPEUTICS, INC.

By: _____

Title: _____CEO_____

DR. BRENNER

By: _____Sydney Brenner_____

Title: _____

SPECTRAGEN, INC.

By: _____

Title: _____CEO_____

**CONFIDENTIAL**