KEVIN M. FLOWERS (admitted *pro hac vice*)
THOMAS I. ROSS (admitted *pro hac vice*)
JEFFREY H. DEAN (admitted *pro hac vice*)
GREGORY E. STANTON (CA Bar No. 203495)
JOHN R. LABBE (admitted *pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606-6357
(312) 474-6300 (telephone)
(312) 474-0448 (facsimile)
E-Mail: kflowers@marshallip.com
E-Mail: tross@marshallip.com
E-Mail: jdean@marshallip.com
E-Mail: gstanton@marshallip.com
E-Mail: jlabbe@marshallip.com

Counsel for Defendants
ILLUMINA, INC. AND SOLEXA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| APPLERA CORPORATION—APPLIED BIOSYSTEMS GROUP, a Delaware corporation, | Case No. 07-CV-02845 WHA |
|  | District Judge William H. Alsup |
| Plaintiff, | **OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION** |
| - vs. - |  |
| ILLUMINA, INC., a Delaware corporation, SOLEXA, INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual, | Date:  January 10, 2008 |
|  | Time:  8:00 a.m. |
|  | Place:  Courtroom 9, 19th Floor |
| Defendants. |  |

# TABLE OF CONTENTS

*Page*

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS .................................................................................. 3

    A.    The Parties ............................................................................................ 3

        1.    Applied Biosystems ........................................................ 3

        2.    Dr. Stephen C. Macevicz .............................................. 3

        3.    Lynx and Spectragen ..................................................... 4

        4.    Solexa and Illumina ....................................................... 5

    B.    Background of the Technologies ........................................................ 5

        1.    DNA Sequencing ........................................................... 5

        2.    AB and the "Sanger Chain Termination" Method ............................ 5

        3.    Macevicz and Hybridized Oligonucleotide Probes ........................... 6

    C.    The Development of the Macevicz Inventions ............................... 7

    D.    The '663 Patent Application and Its Assignment ......................... 9

    E.    AB's Prior Knowledge of the Macevicz Inventions ..................... 10

    F.    AB's 2006 Change in Business Strategy ....................................... 12

ARGUMENT ...................................................................................................... 12

    I.    SOLEXA HAS STANDING TO ASSERT ITS COUNTERCLAIMS ..................................................................... 13

    II.    DR. MACEVICZ BREACHED NO DUTY TO AB. ................. 14

        A.    Dr. Macevicz Did Not Breach His Employment Agreement .......... 14

            1.    The Inventions Were Developed Entirely on Dr. Macevicz's Own Time and Without Any Equipment, Supplies, Facilities or Trade Secrets of AB. ....................... 15

            2.    Dr. Macevicz's Inventions Did Not Relate to the Business or Actual or Demonstrably Anticipated Research or Development Activities of AB in 1995 or Result From any Work Dr. Macevicz Performed for AB ......................................................................................... 16

            3.    Any Failure to Provide Written Notice of Dr. Macevicz's Inventions Was Not a Breach. ........................... 18

---

OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA

-i-

B.   Dr. Macevicz Did Not Breach Any Fiduciary Duty ........................ 19

C.   Neither Dr. Macevicz Nor Lynx Converted Dr. Macevicz's Inventions ........................................................................................ 20

III.   SOLEXA WAS A BONA FIDE PURCHASER FOR VALUE. ................ 21

A.   Spectragen Paid Value for Legal Title. ............................................ 21

B.   Dr. Macevicz's Knowledge May Not Be Imputed to Spectragen. ........................................................................................ 22

C.   Spectragen Neither Knew, nor Had Reason to Inquire About, AB's Equitable Claim. .................................................................... 23

IV.   AB'S MOTION SHOULD BE DENIED PURSUANT TO RULE 56(f) BECAUSE DEFENDANTS HAVE NOT BEEN AFFORDED A FULL AND FAIR OPPORTUNITY TO DISCOVER RELEVANT EVIDENCE. ......................................................................... 24

CONCLUSION ...................................................................................................... 25

OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA

-ii-

# TABLE OF AUTHORITIES

*Cases:*                                                                    *Page(s):*

*Anderson v. Liberty Lobby, Inc.*,
        477 U.S. 242 (1986) ........................................................................ 12

*In re Apex Express Corp.*,
        190 F.3d 624 (4th Cir. 1999) ........................................................... 14

*Bramalea California, Inc. v. Reliable Interiors, Inc.*,
        119 Cal. App. 4th 468 (Cal. Ct. App. 2004) ..................................... 19

*Cadence Design Sys., Inc. v. Bhandari*,
        2007 U.S. Dist. LEXIS 83078 (N.D. Cal. Nov. 8, 2007) .................... 18

*Cubic Corp. v. Marty*,
        185 Cal. App. 3d 438 (Cal. Ct. App. 1986) ....................................... 18

*DiGiacinto v. Ameriko-Omserv Corp.*,
        59 Cal. App. 4th 629 (Cal. Ct. App. 1997) ........................................ 21

*Fisher v. State Mut. Ins. Co.*,
        290 F.3d 1256 (11th Cir. 2002) ......................................................... 19

*Gold Circle Stores, a Div. of Federated Dept.*
        *Stores, Inc. v. Riviera Finance-East Bay*,
        540 F.Supp. 15 (N.D. Cal. 1982) ....................................................... 21

*Harkins Amusement Enters., Inc. v. General Cinema Corp.*,
        850 F.2d 477 (9th Cir. 1988) ............................................................. 24

*Hartford Financial Corp. v. Burns*,
        96 Cal. App. 3d 591 (Cal. Ct. App. 1979) ......................................... 20

*Iconix, Inc. v. Tokuda*,
        457 F. Supp. 2d 969 (N.D. Cal. 2006) ......................................... 15, 18

*Kelegian v. Mgrdichian*,
        33 Cal. App. 4th 982 (Cal. Ct. App. 1995) ........................................ 20

*Lujan v. Defenders of Wildlife*,
        504 U.S. 555 (1992) .......................................................................... 13

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
        475 U.S. 574 (1986) .......................................................................... 12

*Paradise Creations, Inc. v. UV Sales, Inc.*,
        315 F.3d 1304 (Fed. Cir. 2003) ......................................................... 13

*Robinson, Leatham & Nelson, Inc. v. Nelson*,
        109 F.3d 1388 (9th Cir. 1997) ........................................................... 19

**OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA**

-iii-

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ......................................................................................... 20

*United States v. Detroit Timber & Lumber Co.*,
    131 F. 668 (8th Cir. 1904) .............................................................................. 22

*Statutes and Rules:*                                                                    *Page(s):*

Cal. Labor Code § 2870 ....................................................................................... 20

Fed. R. Civ. P. 56(c) ........................................................................................... 12

Cal. Code Civ. Pro. § 337 ................................................................................... 14

Cal. Code Civ. Pro. § 338(c) .............................................................................. 14

Cal. Code Civ. Pro. § 343 ................................................................................... 14

*Miscellaneous:*                                                                         *Page(s):*

Goodman *et al.*, "Biology,"
    Harcourt Brace Jovanovich (1986) ..................................................................... 5

Lehninger *et al.*, "Principles of Biochemistry,"
    Worth Publishers, 2d Ed. (1993). ....................................................................... 5

Maxam, Allan M. and Gilbert, Walter "A New Method for Sequencing DNA,"
    PROC. NATL. ACAD. SCI. USA 74(2) (1977) ...................................................... 6

Sambrook *et al.*, "Molecular Cloning, A Laboratory Manual,"
    Cold Spring Harbor Press, 2nd Ed. (1989) .......................................................... 6

Sanger *et al.*, "DNA Sequencing with Chain-Terminating Inhibitors,"
    PROC. NATL. ACAD. SCI. USA 74(12) (1977) .................................................... 6

Voet & Voet, "Biochemistry,"
    Wiley & Sons (1990) ........................................................................................... 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK
OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA

-iv-

**INTRODUCTION**

The three patents in this case describe and claim inventions that were conceived and reduced to practice by Dr. Macevicz through his own ingenuity, on his own time, using his own resources. His inventions did not relate to AB's actual or anticipated business or research and development at the time, nor to the work Dr. Macevicz performed as a patent lawyer for AB. He wrote the patent application describing those inventions on his own time, and used his own resources to file that application in the Patent Office in April 1995.

Consequently, when Dr. Macevicz assigned that application to his new employer, Lynx Therapeutics (the predecessor to defendant Solexa, which was recently acquired by co-defendant Illumina) in August 1995, he did not breach any contractual or fiduciary duty to AB. And when Spectragen (Lynx's subsidiary) compensated Dr. Macevicz for his assignment of the application, and acquired legal title to the application and to the three patents issuing therefrom, Spectragen became a bona fide purchaser for value.

Until very recently, AB did not dispute any of these facts. Indeed, the evidence of record indicates that AB did not consider Dr. Macevicz's inventions or his patents to be relevant or of interest to AB's business.

However, in 2006, AB changed its business strategy, acquiring another company—Agencourt Personal Genomics, Inc.—whose business activities were not only related to Dr. Macevicz's inventions, but fell squarely within the scope of his patent claims.

AB now argues that Dr. Macevicz's inventions were not only related, but were valuable, to AB's "life sciences" business activities back in 1995—more than a decade before AB radically changed its business strategy via its acquisition of Agencourt. But AB's hindsight litigation arguments are directly contradicted by even the limited discovery available in this case to date.

That evidence reveals that individuals at AB knew of Dr. Macevicz's inventions shortly after he conceived them, and have known about his patent application and his issued patents since at least 1999. Yet for the last 13 years, AB has focused its "life sci-

Opposition of Defendants Illumina, Inc. and Solexa, Inc. to Plaintiff's Motion to Dismiss for Lack of Standing and for Partial Summary Adjudication; Case No: 07-CV-02845 WHA

-1-

ences" business on improvements to, and the automation of, a highly specific DNA sequencing technique—known as the "Sanger Chain Termination" method—which is wholly unrelated to Dr. Macevicz's inventions. For years, AB knew that if those inventions had actually been related to AB's business activities in 1994, it could seek to acquire ownership of those inventions. Yet for years, AB never attempted to enforce what it now claims to be an unequivocal ownership right.

For a reasonable jury, AB's conduct permits only one reasonable inference and conclusion—that AB never truly regarded Dr. Macevicz's inventions to be related, much less valuable, to AB's business until 2006 when AB's business activities radically changed, and that AB now seeks to impose duties on Dr. Macevicz that existed neither during the term of his employment nor when he assigned his patent application.

Virtually all of these material facts are disputed by the parties. In its motion to dismiss and for partial summary judgment, AB asks this Court to enter judgment based almost exclusively on inferences drawn from attorney argument, and effectively asks this Court to draw all of these inferences in AB's favor, rather than in the defendants' favor as required under Rule 56. Even the limited facts uncovered thus far contradict AB's arguments, and, at the very least, create genuine issues of disputed material facts that prohibit summary judgment (and prevent dismissal for lack of standing).

Although defendants served discovery requests on November 9, 2007, AB failed to produce *any* documents in response to those requests until *today*. Consequently, at the very least the Court should deny AB's motion under Rule 56(f), and should permit this case to be decided by a jury following a full opportunity for defendants to conduct discovery.

OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA

-2-

1

**STATEMENT OF FACTS**

2

    **A.**    **The Parties**

3

        **1.**    **Applied Biosystems**

4

        Plaintiff Applied Biosystems Group ("AB") is an operating group of Applera Cor-

5

poration, a Delaware corporation with its principal place of business in Norwalk, Con-

6

necticut. (Docket Item No. 1, Complaint, ¶ 1.) AB was founded in 1981 by two scientists,

7

one of whom was Dr. Sam H. Eletr, a biophysical chemist who would later serve as the

8

first Chairman of both Lynx Therapeutics and Spectragen (a subsidiary of Lynx). (Ex. A,

9

"Twenty-Five Years of Advancing Science," Applied Biosystems, June 2006, p. 4. [1]) AB

10

is engaged in the manufacture and sale of products used in various life sciences, including

11

DNA sequencing—the science of determining the nucleotide sequence of genes. (*Id.*, p.

12

2.) At all relevant times and until 2006 when AB acquired Agencourt, AB's DNA se-

13

quencing business was limited to efforts to improve a specific DNA sequencing technique

14

known as the "Sanger Chain Termination" method. (Ex. B, Transcript of Proceedings,

15

Deposition of Stephen C. Macevicz [hereinafter "Macevicz Dep."], p. 54, ln. 17 – p. 55,

16

ln. 24; p. 142, ln. 18 – p. 143, ln. 3; p. 144, ln 6 – p. 145, ln. 16; p. 148, ln. 3 – p. 149, ln.

17

1; p. 157, lns. 2-6.) [2]

18

        **2.**    **Dr. Stephen C. Macevicz**

19

        Dr. Stephen C. Macevicz ("Dr. Macevicz") was senior patent counsel at AB be-

20

tween 1992 and 1995. (Ex. C, Employment Agreement, p. 3; Ex. D, Resignation Letter, p.

21

1.) Dr. Macevicz is also an accomplished scientist who earned his Ph.D. in biophysics

22

from the University of California at Berkeley and who served as a post-doctoral fellow at

23

the Lawrence Livermore National Laboratories. (Ex. E, Macevicz Resume.) Dr. Macevicz

24

---

25

    [1] Exhibits cited in this memorandum are attached to the Declaration of John R. Labbe in support of this opposition, which is contemporaneously filed herewith.

26

27

    [2] The "Sanger Chain Termination" method is named after Dr. Fredrick Sanger, a Brit-ish biochemist and molecular biologist who received two Nobel prizes, the second for his work in chain termination DNA sequencing. *See,* http://nobelprize.org/nobel_prizes/chemistry/laureates/.

28

**OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA**

-3-

is a named inventor on 11 United States patents in the life sciences,[3] including three[4] on which he is named as a co-inventor with Dr. Sydney Brenner, the 2002 Nobel Laureate in Medicine.[5]

Dr. Macevicz has long enjoyed, as a personal hobby, recording new and often un-proven ideas relating to biotechnology in personal laboratory notebooks which he keeps at his home. (Ex. F, Laboratory Notebook; Ex. B, Macevicz Dep., p. 57, ln. 6 – p. 59, ln. 3; p. 61, lns. 13-18; p. 104, lns. 16-23.) One of his ideas is the subject matter of this law-suit—DNA sequencing using hybridized oligonucleotide probes. Dr. Macevicz's sequenc-ing work with hybridized oligonucleotide probes began long before he joined AB as pat-ent counsel. For example, the United States Patent & Trademark Office in 1991 granted Dr. Macevicz U.S. Patent No. 5,002,867, entitled "Nucleic Acid Sequence Determination By Multiple Mixed Oligonucleotide Probes," which matured from a patent application that Dr. Macevicz filed on October 24, 1988—nearly four years before he joined AB. (Ex. G, U.S. Patent No. 5,002,867, p. 1.)

### 3.     Lynx and Spectragen

Lynx Therapeutics was created as a wholly-owned subsidiary of AB (Ex. H, p. 42), and, in June 1992, was spun off as an independent corporation. (*Id.*) Lynx was engaged in the business of using DNA oligonucleotides as therapeutic agents to treat diseases caused by aberrant gene expression. (*Id.*, pp. 2-3.) In 1995, Lynx created Spectragen as a wholly-owned subsidiary in part to explore the DNA sequencing techniques invented by Dr. Syd-ney Brenner. (Ex. I, p. 1.) In October 1996, Spectragen merged with Lynx. (Ex. J, p. 19.)

---

[3] U.S. Patent No. 5,002,867; U.S. Patent No. 5,750,341; U.S. Patent No. 5,846,719; U.S. Patent No. 5,969,119; U.S. Patent No. 6,054,276; U.S. Patent No. 6,136,537; U.S. Patent No. 6,150,516; U.S. Patent No. 6,235,475; U.S. Patent No. 6,280,935; U.S. Patent No. 6,306,597; U.S. Patent No. 6,720,179.

[4] U.S. Patent No. 5,846,719; U.S. Patent No. 6,150,516; U.S. Patent No. 6,235,475.

[5] *See,* http://nobelprize.org/nobel_prizes/medicine/laureates/.

OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA

-4-

1

### 4.    Solexa and Illumina

Solexa, Inc. was a Delaware corporation engaged in the business of developing and manufacturing genetic analysis technologies, including novel DNA sequencing techniques. (Ex. L, Solexa 10-k Annual Report for 2005, p. 2.) In 2005, Solexa merged with Lynx. (*Id.*, pp. 2-3)

Illumina, Inc. is a Delaware corporation that develops and manufactures products and offers services used in DNA sequencing, genotyping, and gene expression analysis. (Ex. K, p. 2.) Illumina acquired Solexa on January 26, 2007. (*Id.*, p. 3.)

### B.    Background of the Technologies

### 1.    DNA Sequencing

DNA is comprised of building blocks called "nucleotides." There are only four, which are conventionally referred to by the letters C, G, T and A. (Ex. M, Goodman *et al.*, "Biology," Harcourt Brace Jovanovich (1986), p. 182.) All of the functions of a gene are determined by the order of these nucleotides. (*Id.*) Identifying this order—or sequence—is the object of DNA sequencing. (Ex. N, Lehninger *et al.*, "Principles of Biochemistry," Worth Publishers, 2d Ed. (1993), pp. 347-50.) In a living organism, DNA is comprised of two strands of nucleotides bonded or "hybridized" to each other, with C always bonding to G (its complement), and T always bonding to A (its complement). (*Id.*, p. 15.) Consequently, if a scientist knows the sequence of one complementary strand of a double-stranded DNA sequence, he or she can know the sequence of the other. (*Id.*) Almost all DNA sequencing methods use some form of known DNA sequences to determine the sequence of an unknown DNA sequence. (Ex. G, U.S. Pat. No. 5,002,867, col. 1, ln. 67 – col. 2., ln 19.)

### 2.    AB and the "Sanger Chain Termination" Method

Prior to acquiring Agencourt in 2006—and at all times relevant to this dispute—AB's DNA sequencing business focused solely on improvements to a method of DNA sequencing referred to as the "Sanger Chain Termination" method. (Ex. B, Macevicz Dep., p. 144, ln 9 – p. 145, ln. 16.) Generally, the Sanger Chain Termination method works in

OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA

-5-

the following way. A scientist isolates a single strand of unknown DNA and attaches a known extension sequence to it. (Ex. N, p. 348; Ex. O, Voet & Voet, "Biochemistry," Wiley & Sons (1990), p. 833-35.) This structure is then cloned into millions of copies. (Ex. P, Sambrook *et al.*, "Molecular Cloning, A Laboratory Manual," Cold Spring Harbor Press, 2nd Ed. (1989), p. 13.6) Another known, complementary sequence called a "primer" is then hybridized to the extension sequence to make the beginning of a double stranded DNA fragment. (Ex. O, p. 833-35.) An enzyme that replicates DNA—known as "DNA polymerase"—is then added, which begins building the remaining portion of the second, complementary strand of DNA by adding complementary nucleotides one at a time—*e.g.*, a C where it finds a G, and a T where it finds an A. (*Id.*, p. 833). Scientists alter some of the nucleotides that are used in this building process to cause the termination of the process at random. (Ex. P, p. 13.6.) Eventually, however, the process will have created numerous DNA fragments that have been terminated at a point corresponding to each nucleotide in the original unknown DNA strand. These structures—which will vary in length by a single nucleotide—are then analyzed on a gel (sometimes in a capillary tube) that separates them from shortest to longest. (Ex. O, pp. 834-35; Ex. N, pp. 347-48.) With this information, a scientist can detect the nucleotide at which each DNA fragment has terminated, and do so in relation to other fragments that are one nucleotide shorter or longer, and thus determine the nucleotide sequence of the original unknown DNA sample.[6] The "Sanger Chain Termination" method is slow and limited in terms of the length of the DNA fragments that can be sequenced in a single operation. (Ex. S, U.S. Patent No. 5,750,341, at col. 1, ln. 60 – col. 2, ln. 64.)

### 3.    Macevicz and Hybridized Oligonucleotide Probes

Like the Sanger Chain Termination method, Dr. Macevicz's method relies on known DNA sequences to learn about unknown sequences. The similarity, however, ends

---

[6] *See generally* Ex. Q, Sanger *et al.*, "DNA Sequencing With Chain-Terminating Inhibitors," PROC. NATL. ACAD. SCI. USA 74(12): 5463-5467 (1977); Ex. R, Maxam, Allan M. and Gilbert, Walter "A New Method for Sequencing DNA," PROC. NATL. ACAD. SCI. USA 74(2), 560-564 (1977).

OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA

-6-

1    there. In Dr. Macevicz's method, short DNA fragments of a known sequence—called

2    "oligonucleotide probes"—attach or "hybridize" to an unknown DNA strand. (*Id.*, p. 1,

3    Abstract.) Often, these short probes comprise every possible combination of complemen-

4    tary nucleotides except one—a special interrogating nucleotide—which is located at a

5    known place in the probe's sequence. (*Id.*, at col. 6, lns. 34-46.) Once a probe hybridizes

6    to the unknown DNA strand, the identity of the unknown nucleotide that corresponds to

7    the probe's one interrogating nucleotide is revealed. (*Id.*, at col. 3, lns. 7-9; col. 5, lns. 10-

8    12.) The probe is then bonded or "ligated" to the previous probe, and the process is re-

9    peated over and over again until every nucleotide is known that corresponds to the posi-

10   tion of the probe's interrogating nucleotide. (*Id.*, at Figs. 1-3, and col. 4, ln. 58 – col. 5, ln.

11   9.) For example, if the fifth nucleotide in the probe is the interrogating nucleotide, then the

12   process will reveal the identity of every fifth nucleotide throughout the entire length of the

13   unknown fragment (*e.g.*, at positions 5, 10, 15, *etc.*). By shifting the position of the first

14   probe by one nucleotide, this technique will then reveal the identity of the adjacent nu-

15   cleotides (*e.g.*, at 6, 11, 16, *etc.*, and then at 7, 12, 17, *etc.*, and so on), until the entire se-

16   quence of the unknown DNA has been determined. (*Id.*) Unlike the Sanger Chain Termi-

17   nation method, the Macevicz method has the capacity to sequence very long DNA chains

18   in a single operation. (*Id.*, p. 1, Abstract; col. 2, lns. 55-60.)

19          **C.    The Development of the Macevicz Inventions**

20          Dr. Macevicz's work with hybridized oligonucleotide probes dates back as early as

21   1988—nearly four years before he joined AB—when he applied for what in 1991 would

22   mature into U.S. Patent No. 5,002,867, entitled "Nucleic Acid Sequence Determination

23   By Multiple Mixed Oligonucleotide Probes." (Ex. G, U.S. Patent No. 5,002,867.) There,

24   he distinguishes his new method from the Sanger Chain Termination method, and teaches

25   how hybridized oligonucleotide probes—long used for other kinds of DNA analysis—

26   could also be used for "detailed" gene sequencing:

27          > Presently there are two basic approaches to DNA sequence de-
   >          termination: the dideoxy chain termination method, e.g.,
28          > Sanger . . . and the [Maxam] chemical degradation method.

**OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA**

-7-

The chain termination method has been improved in several ways, and serves as the basis for all currently available auto-mated DNA sequencing machines.

(Ex. G, U.S. Pat. No. 5,002,867, at Col. 1, lns. 29-45 (internal citations omitted).)

In addition to DNA sequencing, nucleic acid hybridization has also been a crucial element of many techniques in molecular biology. . . . In particular, hybridization techniques have been used to select rare cDNA or genomic clones from large librar-ies by way of mixed oligonucleotide probes . . . . Nucleic acid hybridization has also been used to determine the degree of homology between sequences . . . . *Implicit to all of these ap-plications is the notion that the known probe sequences con-tain information about the unknown target sequences. This no-tion apparently has never been exploited to obtain detailed se-quence information about a target nucleic acid.*

(*Id.*, col. 1, ln. 67 – col. 2., ln 19 (citations omitted) (emphasis added).) All of the ideas that are expressed in the '867 patent were developed by Dr. Macevicz years before he joined AB, and thus could not have been conceived using AB's resources or on AB's time.

AB knew of Dr. Macevicz's work in the area of hybridized oligonucleotide probes long before Dr. Macevicz went to work for AB. Dr. Macevicz offered the technology dis-closed in the '867 patent to AB, but AB dismissed it:

A.    [W]hen I invented my variant of sequencing by hybridiza-tion, I brought it to AB to see if they were interested in it.

Q.    Who did you bring it to?

A.    I may have given it -- I don't remember for sure.

Q.    Do you remember what form you presented it in? Was it in writing? Orally?

A.    It may have been like a patent application.

Q.    But you don't remember for sure?

A.    I remember giving them some document. It was either a patent application or some other written description of the invention that I had in that area. I didn't give it to Dr. Hunkapiller directly, I gave it to somebody else who took it back. And when I talked to that person again, they men-tioned that Mike Hunkapiller had looked at it and dis-missed it.

Q.    Do you remember who that was?

A.    I can't remember for sure.

Q.    And this is all before you were working for AB?

A.    That's correct.

OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA

-8-

1  (Ex. B, Macevicz Dep., p. 100, ln. 24 – p. 101, ln. 23.)

2       Q.     Did you -- what did you do? What communications did
3               you have with anybody at AB regarding your sequencing
             by hybridization inventions before you went to work for
             AB?

4       A.     To the best I can recall, there was some individual that I
5               had contact with at AB, it may have been Steve Fung, it
             may have been somebody else, I can't recall. And I told
6               him about this invention, and I think I asked him if ABI
             would be interested in it. And they took a copy of this
7               document that I had prepared. Either it was a patent appli-
             cation or some other description of it in writing. And then,
8               when I talked to the person again, they told me that ABI
             was not interested; and that Mike Hunkapiller had looked
9               at it; and he had a list of, you know, critiques of it or some-
             thing.

10  (Ex. B, Macevicz Dep., p. 140, ln. 11 – p. 141, ln. 1.)[7]

11        When Dr. Macevicz joined AB in May 1992, he continued his conceptual work,

12  and continued to record his ideas in his personal laboratory notebook. (Ex. F, Laboratory

13  Notebook, pp. MAC00031-37; Ex. B, Macevicz Dep., p. 59, ln. 14 – p. 61, ln. 6.) He did

14  not hide, or otherwise conceal, his inventions from his colleagues, but rather freely dis-

15  closed them during lunch and other general discussions. (Ex. B, Macevicz Dep., p. 105,

16  lns. 8-23; p. 152, ln. 21 – p. 153, ln. 14; p. 107, lns. 2-15.) Several pages of his personal

17  laboratory notebook were witnessed (*i.e.*, signed) by Dr. Paul Grossman and Dr. Steven

18  Fung, both AB scientists in July 1994. (Ex. F, Laboratory Notebook, pp. MAC00031-35

19  (Dr. Fung); MAC00079-83 (Dr. Grossman); Ex. B, Macevicz Dep., p. 62, lns. 12-19; p.

20  102, ln. 13 – p. 103, ln. 15; p. 154, ln. 24 – p. 155, ln. 4.)

21      **D.**    **The '663 Patent Application and Its Assignment**

22        On April 17, 1995, Dr. Macevicz filed U.S. patent application Serial No.

23  08/424,663, entitled "DNA Sequencing by Parallel Oligonucleotide Extensions" ("the

24

25  ───────────────

26     [7] Dr. Macevicz's personal laboratory notebook also contains pages dated February 1991—more than a year before he joined AB—that reflect continued exploration of the use of hybridized oligonucleotide probes. (Ex. F, Laboratory Notebook, pp. MAC00031-35) Again, it is undisputed that these ideas could not have been conceived using AB's re-sources or on AB's time.

27

28

**OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA**

-9-

'663 Application"), which he invented using his own resources, on his own time, and at his own home. (Ex. U, the '633 Application; Ex. B, Macevicz Dep., p. 113, lns. 1-12.)

On June 1, 1995, Dr. Macevicz received a written offer to become Vice President, Intellectual Property at Lynx. (Ex. X, p. 1.)

On June 6, 1995, Dr. Macevicz gave notice of the termination of his employment with AB effective July 14, 1995. (Ex. D.) Dr. Macevicz's actual termination date was delayed, however, until August 1 (Ex. Z), and then again until August 7 (Ex. AA, p. 2), in order to complete a number of pending projects for AB. Mike Hunkapiller, Dr. Macevicz's superior and the AB executive who had originally dismissed Dr. Macevicz's pioneering '867 patent, conducted the exit interview. (*Id.*)

On August 14, 1995, Dr. Macevicz was given 20,000 stock options in Spectragen, a Lynx subsidiary. (Ex. BB.) These options were given to Dr. Macevicz as a benefit in addition to his employment compensation (Ex. X) and in consideration for his August 31, 1995 assignment of the '663 application (together with three other patent applications not at issue in this case) to Lynx, Spectragen's parent corporation. (Ex. CC.) Later, in January 1996, Lynx would assign legal title to those applications to Spectragen. (Ex. DD.)

On September 11, 1995, Dr. Macevicz began his employment with Lynx. (Ex. EE; Ex. B, Macevicz Dep., p. 17, lines 9 – 14.)

### E.    AB's Prior Knowledge of the Macevicz Inventions

AB contends that it first learned about Dr. Macevicz's inventions in February 2006. (Complaint, ¶ 15.) But even the limited evidence produced in this case thus far shows that AB reasonably knew of those inventions years earlier and yet made no claim of ownership until AB's business changed as result of AB's acquisition of Agencourt in 2006. The evidence shows at least the following:

> 1.    Before joining AB in 1992, Dr. Macevicz offered AB the technology disclosed in his first patent using hybridized oligonucleotides—the '867 patent—but AB's Mike Hunkapiller, Dr. Macevicz's future superior, dismissed it. (*See supra*, pp. 8-9.)

OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA

-10-

1       2.     Dr. Macevicz's '867 patent—the one that Dr.
Hunkapiller dismissed—issued on March 26, 1991, and thus
2 became public knowledge to companies like AB that were en-
gaged in both DNA sequencing and searches for relevant pat-
3 ents in the field. (Ex. G, p. 1.)

4       3.     AB's brief argues that Dr. Macevicz's technology
is related to the technology of Dr. Sydney Brenner, which also
5 uses hybridized oligonucleotide probes to sequence DNA. (AB
Brief, p. 19 n. 3.) But in 1993—before Dr. Macevicz filed his
6 '663 patent application—Dr. Sam Eletr (while still a principal at
AB) brought Dr. Brenner's technology to the attention of AB
7 scientists and business executives, and, once again, AB scien-
tists and business executives expressed no interest, once again
8 declining an express invitation to pursue this technology. (Ex.
FF, p. 1.)
9

10      4.     Dr. Macevicz was open and notorious about his
private inventions, sharing them with AB's Dr. Fung and Dr.
Grossman, as well as other AB colleagues during informal
11 discussions. (Ex. B, Macevicz Dep., p. 105, lns. 8-23; p. 152,
ln. 21 – p. 153, ln. 14; p. 107, lns. 2-15.) Dr. Grossman—who
12 signed and witnessed Dr. Macevicz's laboratory notebook (Ex.
F, Laboratory Notebook, pp. MAC00079-83)—would in 2002
13 become AB's head of business development (Ex. GG, p. 4)
and in 2005 AB's Vice President, Strategic Planning, Business
14 Development and Intellectual Property (Ex. HH, p. 1).

15      5.     On May 12, 1998—nearly eight years before the
filing of the lawsuit—the '663 patent issued as U.S. Patent No.
16 5,750, 341 (Ex. S), and thus became public knowledge to
companies like AB that were engaged in both DNA sequenc-
17 ing activities and searches for relevant patents in the field.

18      6.     One year later, on October 19, 1999, U.S. Patent
5,969,119 issued, which became the second Macevicz patent
19 to mature from the '663 application and to become public
knowledge. (Ex. JJ, U.S. Patent 5,969,119.)
20

21      7.     Two years later, on October 23, 2001, U.S. Pat-
ent No. 6,306,597 issued, which became the third Macevicz
22 patent to mature from the '663 application and to become pub-
lic knowledge. (Ex. KK, U.S. Patent No. 6,306,597.)

23      8.     Each of the disputed patent applications was
prosecuted by Vince Powers (Ex. S, p. 1; Ex. JJ, p. 1; Ex. KK,
24 p. 1), a patent lawyer who in 1999 would become in-house
patent counsel to AB, and later Director of Chemical Patent
25 Practice for AB. (Ex. LL, p. 6.)

26      9.     Mr. Powers, the lawyer who prosecuted the
Macevicz patents, served as in-house patent counsel to AB
27 through March 2007. (*Id.*)

28

---

OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK
OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA

-11-

1    Notwithstanding all of the foregoing, AB made no ownership claim until after its

2    2006 acquisition of Agencourt and AB's change in business strategy.

3    **F.    AB's 2006 Change in Business Strategy**

4    AB acquired Agencourt in July 2006. (Ex. MM, p. 11.) Agencourt developed ma-

5    chines that sequence DNA using supported oligonucleotide ligation detection, which AB

6    markets as the "SOLiD System." (Ex. NN, SOLiD™ Brochure, at p. 10.) The SOLiD sys-

7    tem uses hybridized oligonucleotide probes in a way that is disclosed and claimed in the

8    Macevicz patents, which is why Solexa accuses AB of infringement in this case. (*See,*

9    *e.g.,* Ex. S, Fig. 1.) AB's press releases describe the Agencourt technology as something

10   new and different from AB's pre-2006 business. One press release refers to the SOLiD

11   system as "a revolutionary genetic analysis platform." (Ex. OO, "Applied Biosystems

12   SOLiD System Specification Sheet," October 10, 2007, p. 1.) Another admits that "having

13   recently acquired Agencourt Personal Genomics, we [AB] are *now* ready to usher in the

14   *next generation of sequencing technology*." (Ex. PP, "Applied Biosystems Genomics

15   Showcase," Summer 2006, p. 1 (emphasis added).)

16   Five months after AB's acquisition of Agencourt, AB filed this lawsuit.

17   **ARGUMENT**

18   Summary judgment is appropriate only when there are no genuine disputes over

19   material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

20   P. 56(c). A genuine dispute exists where a reasonable jury could return a verdict for the

21   non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Summary

22   judgment will not lie if the dispute about a material fact is "genuine," that is, if the evi-

23   dence is such that a reasonable jury could return a verdict for the nonmoving party"). In

24   deciding a motion for summary judgment, the Court resolves *all* reasonable inferences in

25   favor of the non-movant. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574,

26   587, (1986). Consequently, if an inference reasonably *could* be made in the non-movant's

27   favor, it *must* be on a motion for summary judgment.

28

**OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA**

-12-

Here, AB's motion reads like a trial brief, urging dispositive conclusions based on chains of inferences from incomplete and selective disputed facts. Worse, AB's motion neglects even to mention the most telling evidence in this case—that for more than a decade, AB's scientists and business executives, untainted by the biases of litigation, consistently acted as though Dr. Macevicz's inventions were unrelated, and of no value, to AB's actual and anticipated business interests until those interests changed in 2006. A reasonable jury is entitled to give more weight to that conduct than to the litigating positions of AB's counsel. At the very least, it is a question that should be decided by a jury, and only *after* defendants have been accorded their right to conduct full and fair discovery.

## I.    SOLEXA HAS STANDING TO ASSERT ITS COUNTERCLAIMS.

Standing is established if the plaintiff has legal title "as of the commencement of suit." *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992)). Here, it is undisputed that Solexa enjoyed legal title to the patents-in-suit when Solexa filed its counterclaim on August 13, 2007. Solexa, therefore, has standing to assert those claims, and this Court enjoys subject matter jurisdiction to adjudicate them. To the extent that AB asserts that Solexa would lack standing to sue in the future if AB, not Solexa, owned the patents-in-suit, Solexa does not disagree. But that argument has nothing to do with whether Solexa had standing, or whether this Court had subject matter jurisdiction, at the commencement of this action. AB's standing argument is simply derivative of its claims to ownership of the Macevicz patents, which cannot be resolved on summary judgment for the reasons stated below.

But even if they could, AB still would not be entitled to the relief it seeks—namely, that "[a]ll of the relevant patents and applications should be returned to AB." (AB Brief, p. 25.) AB makes no attempt to address defendants' affirmative defenses that all of AB's claims are barred by the applicable statutes of limitations and by laches. (Answer and Counterclaim, Docket Item No. 13, pp. 15-16.) AB complains of breaches of duties

OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA

-13-

that occurred in 1995—more than ten years before AB filed this action. But the limitations period for actions lying in breach of contract and breach of fiduciary duty is four years, Cal. Code Civ. Pro. § 337 (breach of contract); Cal. Code Civ. Pro. § 343 (breach of fiduciary duty), and only three for conversion, Cal. Code Civ. Pro. § 338(c) (conversion). Accordingly, even if AB were to prevail at *trial* on the theories asserted in its current motion, the Court could not award AB the relief it seeks unless a jury also found in favor of AB on defendants' statute of limitations and laches defenses. *See, e.g.*, *In re Apex Express Corp.*, 190 F.3d 624, 639-40 (4th Cir. 1999) (reversing grant of summary judgment where factual issues remained concerning defenses of waiver, laches, and estoppel). AB does not attempt to address those defenses here.

## II.    DR. MACEVICZ BREACHED NO DUTY TO AB.

### A.    Dr. Macevicz Did Not Breach His Employment Agreement.

AB argues that Dr. Macevicz breached his employment agreement by not disclosing, and then not assigning, the '663 patent application to AB. (AB Brief, pp. 10-15.) But Dr. Macevicz's employment agreement expressly reserves for Dr. Macevicz all inventions as to which he can show:

> (a)    it was developed entirely on my own time; and

> (b)    no equipment, supplies, facility or trade secret of the company was used in its development; and

> (c)(i)    it does not relate to the business or actual or demonstrably anticipated research or development of the Company, or (ii) it does not result from any work performed by me for the Company.

(Ex. QQ, Employee Invention Agreement, p. 1.) Even at this early stage of these proceedings, a reasonable jury could find that Dr. Macevicz's inventions satisfied all of those conditions, and thus, had Dr. Macevicz more formally presented his invention to AB, Dr. Macevicz's employment agreement (as well as California statutory law) would have prohibited AB from appropriating Dr. Macevicz's invention for itself.

OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA

-14-

1

2

### 1.    The Inventions Were Developed Entirely on Dr. Macevicz's Own Time and Without Any Equipment, Supplies, Facilities or Trade Secrets of AB.

Dr. Macevicz's sequencing work with hybridized oligonucleotides began in the late 1980s (Ex. G, U.S. Patent No. 5,002,867)—years before Dr. Macevicz became an employee of AB. Once an AB employee, Dr. Macevicz continued his work, recording his ideas in a private laboratory notebook which he maintained at his home, and using his own personal computer to perform his calculations. (Ex. F, pp. MAC00031-37.) AB disputes none of this, but instead argues that Dr. Macevicz used his work phone and facsimile *numbers* as his contact information for correspondence with the PTO. (AB Brief, p. 12.)

That argument is hollow. A phone or facsimile number *listed on a sheet of paper* is not the "equipment, supplies, facilit[ies] or trade secret[s]" of AB. (Ex. QQ, p. 1.) Nowhere does AB present evidence that Dr. Macevicz used any piece of equipment, or supplies, or facilities, or trade secrets of AB to develop any portion of his invention. Instead, AB cites Dr. Macevicz's testimony that he did not remember if he used an AB fax machine to send some unidentified letter to Dr. Sam Eletr, which had nothing to do with his patent application, much less the development of his invention. (*Compare* AB Brief, p. 13 *with* Ex. B, Macevicz Dep. p. 96, line 21 – p. 97, line 1.) AB's evidence is simply insufficient to deprive defendants of a jury trial. Nor is AB's cited authority. Unlike the employee in *Iconix, Inc. v. Tokuda*, 457 F. Supp.2d 969, 974, 991 (N.D. Cal. 2006), AB presents no evidence that Dr. Macevicz used AB's computers or other equipment to prepare and prosecute his patent applications. To the contrary, Dr. Macevicz testified that his inventions were "thought up on [his] own time" and "were developed using [his] own resources at home." (Ex. B, Macevicz Dep., p. 113, lines 9-11.) A jury is entitled to credit that testimony.

OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA

-15-

2.    **Dr. Macevicz's Inventions Did Not Relate
to the Business or Actual or Demonstrably
Anticipated Research or Development Activities
of AB in 1994-1995 or Result From any Work
Dr. Macevicz Performed for AB.**

A jury not only *could* conclude that Dr. Macevicz's inventions were unrelated to AB's business, but most likely *would* reach such a conclusion in light of the overwhelming evidence of AB's knowledge of, and disinterest in, that technology for more than a decade *after* Dr. Macevicz's employment had terminated.

Even before joining AB in 1992, Dr. Macevicz offered to AB the technology disclosed in his first patent application on sequencing using hybridized oligonucleotides—which matured into the '867 patent (Ex. G)—but AB's Mike Hunkapiller, Dr. Macevicz's future supervisor, expressed no interest. (*See supra*, pp. 8-9.) That patent issued on March 26, 1991, and thus became public knowledge, and yet AB still expressed no interest. On May 12, 1998—nearly eight years before the filing of the lawsuit—the disputed '663 application issued as U.S. Patent No. 5,750, 341 (Ex. S) and became public knowledge, and yet AB still expressed no interest. One year later, on October 19, 1999, U.S. Patent 5,969,119 issued and became the second Macevicz patent to mature from the disputed '663 application and become public knowledge, and yet AB still expressed no interest. (Ex. JJ, U.S. Patent No. 5,969,119.) Two years later, on October 23, 2001, U.S. Patent No. 6,306,597 issued and became the third Macevicz patent to mature from the disputed '663 application and become public knowledge, and yet AB still expressed no interest. (Ex. KK, U.S. Patent No. 6,306,597.)[8]

_____

[8] AB admits to having conducted patent searches from 1995 to the present, but refuses to produce the results of those searches to defendants in this case. (Ex. RR, p. 16.) Nevertheless, a reasonable jury could conclude from the mere fact of AB's patent searches that AB either (1) discovered these patents and yet still expressed no interest in them or (2) did not discover these patents because they were not responsive to AB's patent searches. Either inference supports the conclusion that Dr. Macevicz's patents did not relate to AB's actual or anticipated business or research interests. Again, this point highlights the unfairness of AB filing its motion at a time before AB has produced related documents—including and especially the results of its patent searches—which will shed additional light on what AB in fact regarded its business to be in 1994-1995, and whether AB in fact believed the Macevicz technology to be relevant or useful to that business, and whether AB's claims are barred by laches or statutes of limitations.

OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK
OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA

-16-

1    AB's actual knowledge of the Macevicz inventions is not speculative. Dr. Mace-

2   vicz was open and notorious about his inventions, and shared them with AB's Dr. Fung

3   and Dr. Grossman, as well as other AB colleagues during informal discussions. (Ex. B,

4   Macevicz Dep., p. 105, lns. 8-23; p. 152, ln. 21 – p. 153, ln. 14; p. 107, lns. 2-15.) Dr.

5   Grossman—who signed and witnessed Dr. Macevicz's conception of his invention (Ex. F,

6   Laboratory Notebook, pp. MAC00079-83)—would in 2002 become AB's head of busi-

7   ness development (Ex. GG, p. 4) and in 2005 AB's Vice President, Strategic Planning,

8   Business Development and Intellectual Property (Ex. HH, p. 1). Most important, each of

9   the disputed patent applications was prosecuted by Vince Powers, who in 1999 would be-

10   come in-house patent counsel to AB, and later Director of Chemical Patent Practice for

11   AB. (Ex. LL, p. 6.) AB on this motion argues at length that a lawyer's knowledge is im-

12   puted to his client (AB Brief, pp. 17-18), but then ignores altogether Mr. Powers' actual

13   and thoroughgoing knowledge of the disclosures and claims of the disputed Macevicz pat-

14   ents. AB cannot have it both ways. According to AB's own logic, Mr. Powers—and thus

15   AB itself—possessed detailed knowledge of the disputed patents for *eight years* prior to

16   the filing of this lawsuit and yet AB expressed no interest in them—notwithstanding a

17   supposed unequivocal enforceable right to own them. AB's actual behavior would not be

18   commercially reasonable if AB truthfully believed that the Macevicz patents related to

19   AB's present or demonstrably anticipated business as early as *1994*. To the contrary, the

20   more reasonable conclusion—and the only permissible one on summary judgment—is

21   that AB simply did not consider the Macevicz patents to be relevant, much less valuable,

22   until *2006* when AB's business interests changed. Discovery of AB's 1994-1995 business

23   records necessarily will bear further upon this issue, which is why defendants have asked

24   for those records. AB has not produced them, unless they are included in the production

25   received by defendants today.

26    AB tries to imply that Dr. Macevicz's work inherently involved patent prosecution

27   and analysis of inventions relating to novel DNA sequencing techniques. (AB Brief, p. 5.)

28   But the two patents that AB cites do not involve new sequencing methods; rather, they in-

OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK
OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA

-17-

1    volve only improvements to accessories used in the old Sanger Chain Termination method:

2    the first involves gel-free separation of DNA fragments (Ex. SS), and the second involves

3    improved fluorescent dyes. (Ex. TT.) AB also argues that in Dr. Macevicz's "1994 perform-

4    ance evaluation Dr. Macevicz specifically identified sequencing by hybridization as a subject

5    of his work for AB," citing Dr. Macevicz's deposition testimony. (AB Brief, p. 14.) But AB

6    omits to mention that Dr. Macevicz was identifying his *own* '867 patent, not the work of any

7    AB scientist. (Ex. B, Macevicz Dep., p. 88, ln. 20 – p. 90, ln. 5.)

8          Under the circumstances, AB's reliance on *Inconix*, *Cadence*, and *Cubic* is mis-

9    placed. In *Iconix*, an employee used company computers to register a website that solved

10   the very problem that the employee was charged with solving for the company. *Iconix,*

11   *Inc. v. Tokuda*, 457 F. Supp.2d 969, 974 (N.D. Cal. 2006). In *Cubic* and *Cadence*, it was

12   not seriously disputed that the employees' inventions related to the company's business

13   interests. For example, in *Cubic*, the invention was "something to enhance" the em-

14   ployer's existing product line, was designed to function with the employer's product, and

15   the "preferred embodiment" of the invention in the patent application involved the em-

16   ployer's product. *Cubic Corp. v. Marty,* 185 Cal. App. 3d 438, 447 (Cal. Ct. App. 1986).

17   Likewise, in *Cadence Design Sys., Inc. v. Bhandari*, 2007 U.S. Dist. LEXIS 83078, at

18   *21-22 (N.D. Cal. Nov. 8, 2007), the employees "themselves recognized that the '900

19   patent was related to LSI's business." These cases are readily distinguishable on their

20   facts.

21              **3.    Any Failure to Provide Written Notice of
                        Dr. Macevicz's Inventions Was Not a Breach.**

22         Dr. Macevicz's employment contract recited that Dr. Macevicz would "advise the

23   Company promptly in writing of any inventions" that "he believes" were exempt from as-

24   signment together with "all evidence necessary to substantiate that belief." (Ex. QQ, Em-

25   ployee Invention Agreement, ¶ 7.) AB argues that Dr. Macevicz's failure to comply with

26   that term constituted an independent breach of the employment contract without regard for

27   whether Dr. Macevicz's invention was exempt from his assignment obligations. (AB

28

OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK
OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA

-18-

Brief, pp. 10-11.) That argument is illogical. "Damage" is an element of a breach of contract, *Bramalea California, Inc. v. Reliable Interiors, Inc.*, 119 Cal. App. 4th 468, 472 (Cal. Ct. App. 2004), and even AB does not argue that it was somehow damaged by this alleged breach alone. Nor could it.

Here, the parties would have been in the identical position even if Dr. Macevicz had more formally presented his invention to AB in a separate writing. If the invention was required to be assigned to AB according to the contract's *substantive* terms, then AB would have obtained legal title to the invention. If the invention was not required to be assigned to AB according to the contract's *substantive* terms, then AB would have been prohibited from appropriating the inventions for itself. Either way, compliance or non-compliance with the written notice requirement cannot change the substantive rights between the parties, and hence cannot be the sole basis for a claim of injury.

## B.    Dr. Macevicz Did Not Breach Any Fiduciary Duty.

AB argues that, even if Dr Macevicz did not breach his employment agreement, he nevertheless breached his fiduciary duty to AB by usurping a corporate opportunity in which AB would have been interested and which AB would have been capable of exploiting. (AB Brief, pp. 23-25.) But a fiduciary does not breach a duty to a beneficiary by denying an opportunity of which his beneficiary has been aware, and which his beneficiary has dismissed as worthless. *Robinson, Leatham & Nelson, Inc. v. Nelson*, 109 F.3d 1388, 1392 (9th Cir. 1997) (no breach of fiduciary duty when there is no evidence that the corporation could have exploited the contested business opportunity); *Fisher v. State Mut. Ins. Co.*, 290 F.3d 1256, 1264 (11th Cir. 2002) (when a corporation knew of a proposed transaction and had a full opportunity to evaluate the proposed transaction, a corporate usurpation claim is not available).[9]

---

[9] AB's brief muddies the waters with a host of alleged breaches of fiduciary duties that it attributes to Dr. Macevicz that are unrelated to an alleged usurpation of a corporate opportunity. But the only breach of duty—and the only injury—that AB pleads in its Complaint relates to the assignment of the '663 patent application. (Complaint, Docket Item No. 1, at ¶¶34-38.)

OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA

-19-

The corporate opportunity doctrine prohibits a corporate fiduciary from usurping an opportunity that is "reasonably incident to the corporation's present or prospective business and is one in which the corporation has the capacity to engage." *Robinson, Leatham & Nelson, Inc. v. Nelson*, 109 F.3d 1388, 1392 (9th Cir. 1997). The question is one of fact, and is determined at the time that the alleged usurpation occurs. *See, e.g., Kelegian v. Mgrdichian*, 33 Cal. App. 4th 982, 989-90 (Cal. Ct. App. 1995) ("Whether or not a given opportunity meets the requisite relationship [to the corporation's business] is largely a question of fact to be determined from the objective facts and surrounding circumstances existing *at the time the opportunity arises*") (quoting 3 Fletcher Cyclopedia Corporations (1994 rev.) § 861.10, p. 284) (emphasis added). Here, a reasonable jury could conclude that Dr. Macevicz's invention was neither reasonably incident to AB's present or prospective business, nor a technology in which AB had the capacity to engage, for all of the reasons stated above.[10] Defendants should be permitted to bolster the evidence supporting that conclusion through actual discovery.

### C.    Neither Dr. Macevicz Nor Lynx Converted Dr. Macevicz's Inventions.

AB argues that, apart from Dr Macevicz's employment agreement, and apart from his fiduciary duties, Dr. Macevicz also converted his patent applications. (AB Brief, p. 22.) That argument is entirely derivative of AB's contract and fiduciary duty claim. Conversion requires the taking of property by some wrongful act. *Hartford Financial Corp. v. Burns*, 96 Cal. App. 3d 591, 598 (Cal. Ct. App. 1979). Here, for the reasons stated above, a reasonable jury could conclude that neither Dr. Macevicz nor Lynx committed any wrongful act because AB had no right to Dr Macevicz's inventions in the first instance. This is not susceptible to summary judgment.

---

[10] Dr. Macevicz's fiduciary duty cannot, as matter of law, be construed to be broader than his contractual duties. California statutory law protects all employees, including fiduciaries, from unfair misappropriations of personal inventions. Cal. Labor Code § 2870. Although statutes may modify a common law duty, *United States v. Bestfoods*, 524 U.S. 51, 63 (1998) (statute can abrogate a common-law principle if the statute speaks to the question addressed by the common law), the opposite is never true.

OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA

-20-

1    **III.    SOLEXA WAS A BONA FIDE PURCHASER FOR VALUE.**

2        A person who gives value for, and acquires legal title to, property without notice of

3    competing claims to title becomes a bona fide purchaser for value ("BFP") and takes such

4    property free and clear of competing equitable claims. *Gold Circle Stores, a Div. of Fed-*

5    *erated Dept. Stores, Inc. v. Riviera Finance-East Bay*, 540 F.Supp. 15, 21 (N.D. Cal.

6    1982). Here, AB does not dispute that Dr. Macevicz possessed legal title to the '663 pat-

7    ent application when he assigned it to Lynx, which later would assign it to Spectragen.

8    Nor does AB dispute that Dr. Macevicz received 20,000 options to purchase Spectragen

9    stock as consideration for his assignment. Nor still does AB argue that the chain of as-

10   signments from Spectragen to Solexa is somehow defective or wanting. Instead, AB dis-

11   putes Solexa's claim to BFP status based on four disparate arguments grounded in a host

12   of factual disputes incapable of resolution on summary judgment.

        **A.    Spectragen Paid Value for Legal Title.**

13       AB contends that Solexa is not a BFP because Lynx paid no value for the assign-

14   ment, and thus Lynx was a mere "donee" or "gratuitous transferee." (AB Brief, pp. 15-

15   16). But that argument confuses the issue. Spectragen paid value for, and subsequently

16   received title to, the '663 application, and thus at least Spectragen was not a mere donee

17   or gratuitous transferee. Spectragen gave Dr. Macevicz the option to purchase 20,000

18   shares of Spectragen stock on August 14, 1995. (Ex. BB, p. 2 & 5.) Stock options are, of

19   course, valuable consideration. *DiGiacinto v. Ameriko-Omserv Corp.*, 59 Cal. App. 4th

20   629, 635 (Cal. Ct. App. 1997). Dr. Macevicz testified that these options were separate and

21   apart from his compensation as an employee of Lynx and were given by Spectragen solely

22   in exchange for his assignment. (Ex. B, Macevicz Dep., p. 122, ln. 15 – p. 123, ln. 9.) A

23   jury will likely credit that testimony.

24       The record evidence is corroborative. Lynx and Spectragen, though separate corpo-

25   rations, were closely related. Spectragen was a wholly owned subsidiary of Lynx (Ex.

26   UU, p. 28), was formed only months before Dr. Macevicz assigned his inventions to Lynx

27   (Ex. CC), and shared a common Chairman and CEO, Dr. Sam Eletr (Ex. VV, p. 8). Dr.

28

**OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA**

-21-

Macevicz received additional stock options from both corporations as part of his employ-ment compensation from Lynx. (Ex. X; Ex. BB.) Although a Lynx employee, Dr. Mace-vicz understood that his inventions would be developed by Spectragen, not Lynx, as part of ongoing efforts by Spectragen to exploit the related inventions of Dr. Sidney Brenner, which AB had earlier rejected. (Ex. B, Macevicz Dep., p. 123, lns. 4-15) (*See supra*, pp. 8-9.) Most important, at the time of the assignment to Lynx, Lynx was contractually obli-gated to assign over to Spectragen all patent applications relating to the Brenner inven-tions, such as Dr. Macevicz's application, and did so. (Ex. I, p. 2; Ex. DD, p. 2.) That Lynx's assignment to Spectragen occurred a few months *after* Spectragen's payment of consideration is simply irrelevant. A BFP is not required to acquire legal title at the same time that it pays its consideration. *See, e.g., United States v. Detroit Timber & Lumber Co.*, 131 F. 668, 677 (8th Cir. 1904) ("It is not more essential that the legal title should be secured before or at the time when the consideration is paid").

Under the circumstances, a reasonable jury could conclude that Spectragen paid valuable consideration for legal title to property. Any contrary conclusion would require the Court to draw a series of unreasonable inferences, including that Dr. Macevicz as-signed his inventions to Lynx for nothing, that Spectragen gave 20,000 stock options to Dr. Macevicz for nothing, and that Lynx assigned the inventions to Spectragen for noth-ing. A court is not permitted to draw reasonable inferences—much less unreasonable in-ferences—against a non-moving party on a motion for summary judgment.

**B.      Dr. Macevicz's Knowledge May Not Be Imputed to Spectragen.**

AB next argues that Lynx was not a BFP because Dr. Macevicz was an employee and officer of Lynx, and thus Dr. Macevicz's alleged knowledge of AB's equitable claim would have been imputed to Lynx at the time of the initial assignment. (AB Brief, pp. 17-18.) Putting aside the fact that Dr. Macevicz's assignment to Lynx occurred *before* Dr. Macevicz became an employee or officer of Lynx (Ex. CC), AB's argument ignores the

OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA

-22-

1    fact that Spectragen, independent of Lynx,[11] became a BFP of the Macevicz inventions,

2    and it is undisputed that Dr. Macevicz was *never* an employee or officer of Spectragen.

3    AB relies elsewhere on the "separate identities of the two companies" to support its highly

4    technical argument that Lynx, though the initial assignee, paid no consideration, and

5    Spectragen, the payor of consideration, was not the initial assignee. (AB Brief, p. 16).

6    Apart from being irrelevant, the argument is self-contradicting. AB cannot take advantage

7    of the separateness of Lynx and Spectragen to show a want of consideration only to con-

8    flate the two companies to impute knowledge to Spectragen.

9            **C.    Spectragen Neither Knew, nor Had Reason
                     to Inquire About, AB's Equitable Claim.**

10           AB's third and fourth arguments are that Dr. Eletr knew of AB's claim or, if he did

11   not, possessed sufficient knowledge to give rise to a duty of inquiry. (AB Brief, pp. 20-

12   21.) AB offers no admission by Dr. Eletr, either by declaration or deposition, and thus

13   AB's argument is nothing more than an impermissible inference from disputed facts about

14   what a reasonable jury should conclude.

15           In fact, however, a reasonable jury could conclude the exact opposite. As the for-

16   mer founder and former CEO of AB (AB Brief, p. 18), Dr. Eletr would have appreciated

17   that AB's DNA sequencing business and research efforts were directed exclusively to the

18   Sanger Chain Termination method and not to the pursuit of all possible DNA sequencing

19   technologies. Dr. Eletr's appreciation would have been corroborated by his knowledge of

20   AB's rejection of both Dr. Macevicz's '867 patent (Ex. B, Macevicz Dep., p. 100, ln. 23 –

21   p. 101, ln. 18; p. 140, ln. 11 – p. 141, ln. 1) and the related Brenner patents (Ex. FF, p.

22   1)—both novel DNA sequencing techniques related to the disputed inventions in this case

23   and in which AB expressed no interest when expressly invited to do so. In light of these

24   facts, a reasonable jury could conclude that Dr. Eletr reasonably believed that AB had no

25

26           [11] Defendants maintain that Lynx, too, became a BFP upon Dr. Macevicz's initial as-
27   signment, but need not press that argument on this motion. It is sufficient for this motion
     that, at the very least, Spectragen became a BFP. Even AB concedes that Spectragen paid
28   value to Dr. Macevicz. (AB Brief, p. 8.)

**OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK
OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA**

-23-

interest in pursuing technology that AB had twice rejected during his tenure with AB, and thus was reasonably justified in declining to investigate the question. Indeed, a reasonable jury could conclude that, even had Dr. Eletr conducted an investigation, AB would have rejected the new technology yet a third time.

## IV.    AB'S MOTION SHOULD BE DENIED PURSUANT TO RULE 56(f) BECAUSE DEFENDANTS HAVE NOT BEEN AFFORDED A FULL AND FAIR OPPORTUNITY TO DISCOVER RELEVANT EVIDENCE.

Rule 56(f) empowers this Court to deny a motion for summary judgment to afford the non-movant an opportunity to fully and fairly discover facts relevant to defeat the motion. Although defendants believe that the foregoing record evidence is sufficient to defeat AB's motion, defendants object to AB's attempt to compel an early summary judgment without affording defendants the discovery that is defendants' right under the Federal Rules of Civil Procedure. *See, e.g., Harkins Amusement Enters., Inc. v. General Cinema Corp.,* 850 F.2d 477, 490 (9th Cir. 1988) (considering a request for relief under Rule 56(f) as an alternative to denying a Rule 56 motion on its merits).

To date, Illumina has received only limited discovery from AB and third parties regarding the ownership dispute. Illumina served AB with document requests on November 9, 2007. Illumina did not receive any responsive documents until December 20, 2007, the day this opposition brief is due. (Decl. of J. Labbé in Support of Defs.' Req. for Relief Under Fed. R. Civ. P. 56(f) ("Labbé Decl.") 3, 5.) Accordingly, Illumina has not had an opportunity to review these documents, much less determine the completeness of AB's production. (Labbé Decl. 5.) Apart from AB's documents, Illumina is entitled to depose present and former AB employees. (Labbé Decl. 9.) Logically, Illumina has been awaiting AB's production of documents before taking these depositions. (Labbé Decl. 10.) For example, Dr. Eletr was a former AB founder and CEO, and thus defendants are entitled to review AB's production of Dr. Eletr's documents before deposing him. The same is true for Dr. Fung, Dr. Grossman, Dr. Hunkapiller, and Mr. Powers.

**Opposition of Defendants Illumina, Inc. and Solexa, Inc. to Plaintiff's Motion to Dismiss for Lack of Standing and for Partial Summary Adjudication; Case No: 07-CV-02845 WHA**

-24-

1     This discovery, which is defendants' right to conduct, is reasonably believed to fur-

2  ther show, at the very least, the limited nature of AB's business in 1995, AB's actual

3  knowledge of the disputed inventions, and AB's disregard for those inventions until AB's

4  acquisition of Agencourt in 2006. (Labbé Decl. 6-8, 11-13.)[12] Indeed, one of the most dis-

5  puted facts in this case is the nature of AB's business in 1995, and yet AB has failed to

6  produce even a single business record until today in response to Illumina's document re-

7  quests seeking such records. (Labbé Decl. 5.) Surely, defendants are entitled to discovery

8  of AB's business records in order to rebut AB's unilateral assertions about the nature and

9  aspirations of that business. For this reason alone, the Court should deny AB's motion.

10                              **CONCLUSION**

11     For the foregoing reasons, the Court should deny AB's motion to dismiss and for

12  partial adjudication.

---

27     [12] Defendants incorporate herein the Rule 56(f) Declaration of John R. Labbé, filed
28  contemporaneously herewith.

OPPOSITION OF DEFENDANTS ILLUMINA, INC. AND SOLEXA, INC. TO PLAINTIFF'S MOTION TO DISMISS FOR LACK
OF STANDING AND FOR PARTIAL SUMMARY ADJUDICATION; CASE NO: 07-CV-02845 WHA

-25-

1   Dated: December 20, 2007        Respectfully submitted,

2

3

4                                s/ John R. Labbé

KEVIN M. FLOWERS (admitted *pro hac vice*)

5                                THOMAS I. ROSS (admitted *pro hac vice*)

JEFFREY H. DEAN (admitted *pro hac vice*)

6                                GREGORY E. STANTON (CA Bar No. 203495)

7                                JOHN R. LABBE (admitted *pro hac vice*)

MARSHALL, GERSTEIN & BORUN LLP

8                                6300 Sears Tower

9                                233 South Wacker Drive

Chicago, IL 60606-6357

10                              (312) 474-6300

11                              (312) 474-0448 (facsimile)

E-Mail: kflowers@marshallip.com

12                              E-Mail: tross@marshallip.com

E-Mail: jdean@marshallip.com

13                              E-Mail: gstanton@marshallip.com

14                              E-Mail: jlabbe@marshallip.com

15                              *Attorneys for Defendants Illumina, Inc. and*

16                              *Solexa, Inc.*

17

18

19

20

21

22

23

24

25

26

27

28

Opposition of Defendants Illumina, Inc. and Solexa, Inc. to Plaintiff's Motion to Dismiss for Lack of Standing and for Partial Summary Adjudication; Case No: 07-CV-02845 WHA

-26-