BRYAN WILSON (CA BAR NO. 138842)
DARA TABESH (CA BAR NO. 230434)
ERIC C. PAI (CA BAR NO. 247604)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792
E-Mail: BWilson@mofo.com
E-Mail: DTabesh@mofo.com
E-Mail: EPai@mofo.com

DAVID C. DOYLE (CA BAR NO. 70690)
STEVEN E. COMER (CA BAR NO. 154384)
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, California 92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125
E-Mail: DDoyle@mofo.com
E-Mail: SComer@mofo.com

Attorneys for Plaintiff
APPLERA CORPORATION—APPLIED BIOSYSTEMS GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

APPLERA CORPORATION—APPLIED BIOSYSTEMS GROUP, a Delaware corporation,

Plaintiff,

v.

ILLUMINA, INC., a Delaware corporation, SOLEXA, INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual,

Defendants.

Case No. 07-CV-02845 WHA

**APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF STANDING AND MOTION FOR PARTIAL SUMMARY ADJUDICATION**

Date: January 10, 2008
Time: 8:00 a.m.
Place: Courtroom 9, 19th Floor
Honorable William H. Alsup

# TABLE OF CONTENTS

**Page**

I. ILLUMINA LACKS STANDING TO SUE ........ 1

II. THERE ARE NO MATERIAL QUESTIONS OF FACT REGARDING DR. MACEVICZ'S BREACH OF CONTRACT ........ 2

A. Dr. Macevicz Did Not Disclose His Inventions To AB ........ 2

B. AB Was Damaged By Dr. Macevicz's Failure To Disclose His Inventions ........ 4

C. Illumina Ignores Most Of The Evidence Showing That Dr. Macevicz's Inventions Were Developed Using AB's Time And Resources ........ 4

D. Dr. Macevicz's Inventions Related To AB's Business And Research And Development Goals ........ 5

1. AB's business and research and development goals included Dr. Macevicz's purported improvements in DNA sequencing ........ 5

2. Illumina cannot explain away Dr. Macevicz's own references to AB's interest in sequencing by hybridization ........ 6

III. ILLUMINA DOES NOT ADDRESS DR. MACEVICZ'S BREACH OF FIDUCIARY DUTY BY SIGNING AN INDEMNITY AGREEMENT ........ 7

IV. NEITHER LYNX NOR SPECTRAGEN WAS A BFP ........ 8

A. Spectragen's Separate Corporate Existence From Lynx Cannot Be Disregarded ........ 8

B. Dr. Macevicz's Knowledge Is Imputed To Spectragen ........ 9

C. Dr. Eletr Had A Duty To Inquire About Dr. Macevicz's Obligations Under The AB Invention Agreement ........ 10

V. ILLUMINA HAS NOT ESTABLISHED THAT THE STATUTE OF LIMITATIONS OR LACHES BARS AB'S CLAIMS ........ 11

VI. RULE 56(F) DOES NOT PREVENT SUMMARY JUDGMENT ........ 14

A. Illumina Has Not Been Diligent In Discovery ........ 14

B. Discovery Would Not Defeat The Motion ........ 15

# TABLE OF AUTHORITIES

## CASES

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Systems, Inc.*, 988 F.2d 1157 (Fed. Cir. 1993)........ 13

*April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805 (1983)........ 12

*Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 339 F. Supp. 2d 944 (W.D. Mich. 2004)........ 13

*Cadence Design Sys., Inc. v. Bhandari*, No. C 07-00823, 2007 U.S. Dist. LEXIS 83078 (N.D. Cal. Nov. 8, 2007)........ 5

*Cal. Serv. Empls. Health & Welfare Trust Fund v. Advance Bldg. Maint.*, No. C 06-3078 CW, 2007 U.S. Dist. LEXIS 83987 (N.D. Cal. Nov. 1, 2007)........ 11

*Calderone v. U.S.*, 799 F.2d 254 (6th Cir. 1986)........ 11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)........ 11

*Christian v. Cal. Bank*, 30 Cal. 2d 421 (1947)........ 11

*Cross v. Bonded Adj. Bureau*, 48 Cal. App. 4th 266 (1996)........ 12

*Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969 (N.D. Cal. 2006)........ 3, 4

*Kahn v. Gen. Motors*, 77 F.3d 457 (Fed. Cir. 1996)........ 2

*Katz v. Lear Siegler Inc.*, Case No. 91-1094, 1993 U.S. App. LEXIS 17507 (Fed. Cir. July 12, 1993)........ 11

*Leighton Techs. LLC v. Oberthur Card. Sys.*, No. 04 Civ. 2496, 2007 U.S. Dist. LEXIS 57873 (S.D.N.Y. July 11, 2007)........ 2

*Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075 (9th Cir. 1996)........ 7

*Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839 (9th Cir. 1994)........ 14

*Roberts v. Corrothers*, 812 F.2d 1173 (9th Cir. 1987)........ 2

*S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885 (9th Cir. 2003)........ 11

*Tatum v. City & County of San Francisco*, 441 F. 3d 1090 (9th Cir. 2006)........................................................................................ 15

*U.S. v. Detroit Timber & Lumber Co.*, 131 F. 668 (8th Cir. 1904)............................................................................................ 9

*Univ. of Colo. Found., Inc. v. Am. Cyanamid*, 880 F. Supp. 1387 (D. Colo. 1995)........................................................................... 13

*Webber v. Inland Empire Invs. Inc.*, 74 Cal. App. 4th 884 (1999) ...................................................................................... 8

**STATUTES**

Cal. Lab. Code Section 2870 ..................................................................................... 4

Fed R. Civ. P. 9(b) ............................................................................................... 7

Fed. R. Civ. P. 56(f) .............................................................................. 1, 14, 15

Fed. R. Civ. P. 56(e).......................................................................................... 11

## INTRODUCTION

Illumina's Opposition[1] does not challenge the two main points on which this motion turns. First, AB's business was DNA sequencing, and the patent applications that Dr. Macevicz kept for himself and later assigned to Lynx are "related to" DNA sequencing. Second, even if Dr. Macevicz did not think his inventions were related to AB's business, he still did not disclose the inventions to AB as required by his AB Invention Agreement. Instead, he took the inventions for himself and Illumina. Nothing more is required for this motion to be granted.

Where Illumina does offer additional evidence, it is in an effort to show that AB would not have been interested in Dr. Macevicz's inventions. But that is not the test. The test is whether the inventions were related to AB's business. The evidence offered by Illumina proves that the inventions were related to AB's business. Dr. Macevicz and Lynx offered to license DNA sequencing inventions to AB because they knew that DNA sequencing technologies were within AB's line of business. This "untainted" pre-litigation conduct cited by Illumina leaves no room for debate on this point.

The other defenses raised by Illumina are likewise not viable on their face: (1) an employee cannot satisfy the detailed requirements of a corporate invention agreement through informal, incomplete discussion with non-management co-workers; (2) costly, avoidable litigation does cause damage to a company; (3) a BFP defense cannot be based on corporations disregarding their own separate legal status; (4) a fiduciary cannot conceal his misconduct and then rely on the statute of limitations; and (5) a litigant cannot fail to prepare its case and qualify for Rule 56(f) relief.

### I. ILLUMINA LACKS STANDING TO SUE

Illumina's response to its lack of standing—that it held legal title to the patents and applications when it filed its counterclaim—is no response at all. The issue before the Court is whether Illumina's claim to title is fatally defective because the purported title was improperly

[1] Illumina and Solexa's Opposition ("Opp." or "Opposition") (Docket No. 76), was filed by Illumina, and joined by Dr. Macevicz. Illumina is providing Dr. Macevicz's defense, and Illumina's counsel now represents Dr. Macevicz. (*See* Docket No. 79.) The Defendants are referred to collectively as "Illumina."

acquired through Dr. Macevicz's illegal conduct. It is the Court's responsibility to resolve as a threshold issue of law Illumina's standing to assert counterclaims for infringement of patents for which ownership is contested. (*See* Opp. at 13:10-14:10.) "The ownership of patent property is a matter of law, the decision of which may entail underlying factual inquiries." *Kahn v. General Motors*, 77 F.3d 457, 459 (Fed. Cir. 1996); *Leighton Techs. LLC v. Oberthur Card. Sys.*, No. 04 Civ. 2496, 2007 U.S. Dist. LEXIS 57873, at *11 (S.D.N.Y. July 11, 2007) ("[T]he question of legal title is inextricably intertwined with a plaintiff's standing to maintain an infringement action."). To the extent Illumina contends that facts relating to standing (including Illumina's affirmative defenses of laches and statute of limitations) remain disputed, those disputes must be resolved by the Court. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) ("[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.").

## II. THERE ARE NO MATERIAL QUESTIONS OF FACT REGARDING DR. MACEVICZ'S BREACH OF CONTRACT

### A. Dr. Macevicz Did Not Disclose His Inventions To AB

The facts relating to Dr. Macevicz's failure to disclose his inventions are undisputed. He did not disclose the inventions in writing to AB as required, and Defendants do not argue he did.

The AB Invention Agreement required Dr. Macevicz to "[a]dvise the Company promptly in writing" of his inventions and, if he thought they were unrelated to AB's business, to substantiate his belief with evidence sufficient to show that his inventions (1) were developed entirely on his own time and without the use of AB resources, and (2) did not relate to AB's business or demonstrably anticipated research and development. (Wilson Decl.[2] Ex. 15 ¶¶ 2 & 7.) Illumina does not contend, and no reasonable fact finder could conclude, that Dr. Macevicz's casual discussions "at lunch" or "in the hallways" satisfied his obligation to disclose, in writing, what his invention is and his basis for asserting that he has no obligation to assign it to AB.

[2] "Wilson Decl." refers to the Declaration of Bryan Wilson in Support of Motion to Dismiss for Lack of Standing, and Motion for Partial Summary Adjudication, filed December 6, 2007 ("Wilson Decl.") (Docket No. 63).

Similarly, Illumina does not contend that asking co-workers, including a subordinate, to sign notebook pages constitutes written disclosure "to the company;" or that it constitutes evidence that an invention was made entirely on Dr. Macevicz's own time and without AB resources, and did not relate to AB's business or research and development goals. The facts cited by Illumina are irrelevant to the issues presented by the motion, and Illumina offers no other facts purporting to show that Dr. Macevicz met his duty to disclose while he was employed by AB.

Dr. Macevicz relies on his offer to license his '867 patent to AB, before he came to work for AB, as evidence that AB was interested only in the Sanger method. However, that does not address his obligation to disclose inventions he made while working for AB. (Opp. at 16:8-10.) The AB Invention Agreement required Dr. Macevicz to disclose all inventions made while in the employ of AB. (Wilson Decl. Ex. 15 ¶ 2.) The '867 Patent inventions were, by definition, different from those that were later the subject of the Applications at issue in this case. Further, since the '867 Patent inventions were developed before Dr. Macevicz worked at AB, AB had no claim to ownership of those inventions. While AB may have declined an offer to license those inventions, it did not disavow ownership rights to technology invented by Dr. Macevicz when he was working for AB.

No matter how many times Dr. Macevicz testifies that he did not believe that AB had a right to or an interest in his inventions (Labbe Decl.[3] Ex. B at 98:1-8, 106:5-15 & 107:2-8), he cannot avoid that he gave up the right to make that determination when he signed the AB Invention Agreement. *See, e.g.*, *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 990 (N.D. Cal. 2006) ("The clear terms of the [agreement] indicate that [defendants] did not have the discretion to retain any ideas.")

**B. AB Was Damaged By Dr. Macevicz's Failure To Disclose His Inventions**

Illumina tries to excuse Dr. Macevicz's failure to make the required written disclosures

---

[3] "Labbe Decl." refers to the Declaration of John R. Labbe in Support of Defendants Illumina and Solexa's Opposition to Plaintiff's Motion to Dismiss for Lack of Standing and for Partial Summary Adjudication, filed December 20, 2007 (Docket No. 74).

under the theory that nondisclosure did not harm AB. That proposition ignores this very litigation. Illumina is suing AB for allegedly infringing patents that AB would have had the opportunity to own from the outset had Dr. Macevicz satisfied his obligations.

Further, now that Illumina is disputing AB's right to the inventions, proving AB's rights is significantly more complicated, expensive, and time-consuming than it would have been thirteen years ago when the relevant acts occurred. One of the purposes of the invention agreement, which required Dr. Macevicz to "*promptly* make full disclosure" of his inventions (Wilson Decl. Ex. 15 ¶ 2 (emphasis added), is to resolve ownership disputes when the relevant facts are readily available. As Dr. Macevicz's repeated assertions that he "can't recall" or "doesn't remember" key facts demonstrates, memories tend to fade after thirteen years. (*See* Labbe Decl. Ex. B at 21:23-22:6, 83:20-23 & 92:12-17.) Dr. Macevicz made resolution of the matter even more difficult by his motion to dismiss himself from the case under the theory that he has no interest in its outcome.

Finally, resolving ownership now is complicated by the presence of a third party, Illumina, that claims ownership as a BFP. Not only must the parties and Court determine whether Dr. Macevicz had a duty to assign his inventions to AB, but they must also now address Lynx's contention that it had no notice of that duty and paid valuable consideration for the inventions. Had Dr. Macevicz disclosed his inventions under the AB Invention Agreement, only his conduct would be at issue.

### C. Illumina Ignores Most Of The Evidence Showing That Dr. Macevicz's Inventions Were Developed Using AB's Time And Resources

Illumina argues that Dr. Macevicz's use of "[a] phone or facsimile number *listed on a sheet of paper* . . ." is excusable. (Opp. at 15:11-12 (emphasis in original).) This ignores the rest of the facts showing Dr. Macevicz's use of AB's time and resources—Dr. Macevicz did not just put a number on a piece of paper. Moreover, Illumina cites no authority suggesting that use of a company's facsimile and phone numbers is not sufficient to bar an employee's claim to an exemption under Section 2870. Indeed, the case law cited by AB holds that *any* use of a company's time and resources bars an employee's claim to exemption under Section 2870. *See, e.g.*, *Iconix*, 457 F. Supp. 2d at 992.

Illumina does not address, and does not dispute, the additional facts proving that Dr. Macevicz did use company time and resources. For example, Dr. Macevicz used AB's standard fax cover sheet on his faxes to and from the patent office. (*Compare* Wilson Decl. Exs. 28 *with* 29.) Dr. Macevicz admitted that he actually used AB's fax machines (not just the numbers) to conduct his personal business related to the inventions because he had not yet purchased a fax machine of his own. (Labbe Decl. Ex. B at 96:2-97:13.)

Additionally, Illumina has adopted facts showing Dr. Macevicz's use of AB resources to imply that Dr. Macevicz disclosed his inventions (although not in writing, as required by his invention agreement) to AB. As Illumina notes, Dr. Macevicz asked AB employees Paul Grossman (who reported to Dr. Macevicz) and Steven Fung to read and witness his notebook pages to establish the conception date of the inventions at issue. This was done during Dr. Macevicz's (and Dr. Grossman's and Dr. Fung's) workday at AB. More importantly, he chose these AB employees to sign his notebook because he knew of their particular technical skills in the field. (*See, e.g.*, *id.* at 62:25-63:6.) Because he admittedly used company resources, including his knowledge of the company, its employees, standard forms, and equipment, he was required to disclose the inventions under the AB Invention Agreement.

### D. Dr. Macevicz's Inventions Related To AB's Business And Research And Development Goals

#### 1. AB's business and research and development goals included Dr. Macevicz's purported improvements in DNA sequencing

The AB Invention Agreement required Dr. Macevicz to disclose and assign any inventions that "*relate to* the business or actual or demonstrably anticipated research or development of" AB, at the time the inventions were made. (Wilson Decl. Ex. 15 ¶ 2.) Because a significant portion of AB's business was (and still is) DNA sequencing, Dr. Macevicz's DNA sequencing invention "relates to" AB's business or its research or development. (*See* Opening Br.[4] at 2:11-26 & 5:3-16.) To avoid this indisputable fact, Illumina misstates the relevant legal inquiry by addressing whether AB was "interested in" paying for licenses to different inventions before Dr. Macevicz

[4] "Opening Br." refers to AB's Motion to Dismiss for Lack of Standing, and Motion for Partial Summary Adjudication, filed December 6, 2007 (Docket No. 61).

became an AB employee.

Dr. Macevicz knew that his ‘867 Patent inventions related to AB’s line of business when he offered to license them to AB. Similarly, Dr. Eletr knew that Dr. Sydney Brenner’s inventions, which were similar to Dr. Macevicz’s inventions, related to AB’s line of business when he offered to license them to AB. Those offers demonstrate that Dr. Macevicz and Dr. Eletr considered these inventions to be at least “related to” AB’s actual or anticipated business or research. That AB chose not to license them does not mean that they did not “relate to” AB’s line of business. The very fact that Dr. Macevicz chose to offer DNA sequencing inventions to AB shows that he knew AB was interested in DNA sequencing.

The patents, SEC filings, and other exhibits cited by AB confirm its broad range of business and research into DNA sequencing technologies. (*See, e.g.*, Wilson Decl. Exs. 1-3, 20 & 21.) No reasonable fact finder could conclude that improved methods of DNA sequencing did not “relate to” AB’s business or research and development, because California law requires that Section 2870’s “relate to” provision be construed “broadly.” *Cadence Design Sys., Inc. v. Bhandari*, No. C 07-00823, 2007 U.S. Dist. LEXIS 83078, at *19 (N.D. Cal. Nov. 8, 2007) (citing *Cubic Corp. v. Marty*, 185 Cal. App. 3d 438 (1986)).

**2. Illumina cannot explain away Dr. Macevicz’s own references to AB’s interest in sequencing by hybridization**

Sequencing by hybridization technology, which is the subject of three of the four Applications, relates to AB’s DNA sequencing line of business, regardless of AB’s level of “interest in” the technology. Dr. Macevicz confirmed this in his own AB performance review where he wrote that he “analyzed patent position relating to *sequencing by hybridization*” for AB. (Wilson Decl. Ex. 22 (emphasis added).) Defendants’ contention that Dr. Macevicz “was identifying his own ‘867 Patent, not the work of any AB scientist” (Opp. at 18:6-7), is unsupportable. Dr. Macevicz was describing his own work for AB, which proves the breadth of AB’s interest in DNA sequencing.

Dr. Macevicz now speculates that this reference in his self-evaluation may have related to his sequencing by hybridization patent (*i.e.*, the ‘867 Patent) that predated his AB employment.

(Labbe Decl Ex. B at 88:9-19.) But when asked whether there was "any reason that you can think of that on your performance review for AB you would list activities that were not done in the course of your work for AB," Dr. Macevicz responds: "No, I wouldn't do that." (*Id.* at 89:20.) Illumina cannot create a factual dispute as to the sequencing by hybridization patents by relying on Dr. Macevicz's speculation that he later contradicted. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[S]peculation do[es] not create a factual dispute for purposes of summary judgment.").

## III. ILLUMINA DOES NOT ADDRESS DR. MACEVICZ'S BREACH OF FIDUCIARY DUTY BY SIGNING AN INDEMNITY AGREEMENT

Illumina's complaint that "AB's brief muddies the waters with a host of alleged breaches of fiduciary duties" that were not pleaded, and therefore not at issue (*see* Opp. at 19 fn. 9), overlooks the obvious explanation: AB did not know of these additional breaches until recently. Dr. Macevicz produced documents, including the Indemnity Agreement, on November 1, 2007 and testified about it on November 28, 2007. These documents and testimony prove that Dr. Macevicz further breached his fiduciary duties to AB by signing an Indemnity Agreement with Lynx, and thereby undertook fiduciary duties to Lynx, while he was still working for AB. (*See* Opening Br. at 23:11-24:12.) These additional grounds for summary judgment of breach of fiduciary duty are properly before the Court, and Illumina has chosen not to oppose them.

Additionally, AB's pleadings satisfy the notice standards because they allege that Dr. Macevicz had fiduciary duties to AB, he breached those duties, and those breaches warrant relief. (*See* First Amended Complaint (Docket No. 46) ¶¶ 35-39.) AB need not have stated with "particularity" in its complaint that its claim is based in part on the Indemnity Agreement. The claim is not grounded in fraud, so is not subject to the heightened pleading standard of Rule 9(b).

## IV. NEITHER LYNX NOR SPECTRAGEN WAS A BFP

### A. Spectragen's Separate Corporate Existence From Lynx Cannot Be Disregarded

There is no factual dispute about the chain of title of the Applications from Dr. Macevicz to Spectragen: Dr. Macevicz purported to assign his patents to Lynx; Spectragen paid

Dr. Macevicz 20,000 shares of its stock options; and Lynx purported to assign the patents to Spectragen several months later. There also is no dispute that Lynx and Spectragen were separate companies and separate corporate entities. For its BFP argument, however, Illumina attempts to disregard the companies' separate corporate existences. Illumina argues that the close relationship between the companies means that assignment to Lynx constitutes assignment to Spectragen, or that consideration from Spectragen constitutes consideration from Lynx, in an apparent concession that Lynx paid nothing for the assignment from Dr. Macevicz, which would break the chain of title. These are nothing more than a defensive use of the alter ego doctrine, invoked by Lynx to protect itself.

Illumina's argument must be rejected, because "alter ego . . . is not a doctrine that allows the persons who actually control the corporation to disregard the corporate form." (Opening Br. at 16:22-17:6 (citing *Communist Party of the U.S. v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 994 (1995).) Indeed, the "record evidence" cited by Illumina—that Spectragen was a wholly-owned subsidiary of Lynx with a common Chairman and CEO, Dr. Sam Eletr, that Dr. Macevicz understood that Spectragen would be developing his invention even though he was a Lynx employee, that Lynx was contractually obligated to assign all patent applications related to Dr. Sydney Brenner's inventions to Spectragen (*see* Opp. at 21:5-22:6)—is irrelevant because a corporation cannot claim that it is acting as an alter ego in order to avoid liability. *See Webber v. Inland Empire Invs. Inc.*, 74 Cal. App. 4th 884, 901 (1999) (declining to apply alter ego theory where "unity of ownership and interest" was established because alter ego cannot be used "as a sword to preclude liability").

Moreover, Illumina's other arguments emphasize the separateness of the two companies. The "Agreement Regarding Formation of Spectragen" and the "Assignment" document in which Dr. Macevicz assigned his inventions to Spectragen ("Pursuant to Agreements between . . . Lynx, Therapeutics, Inc. and Stephen C. Macevicz . . ."), *emphasize* the companies' observation of corporate formalities, rather than support disregarding them. (Labbe Decl. Exs. I & DD, respectively.) And, perhaps most obviously, the grant of stock options from Spectragen to

Dr. Macevicz makes no mention of any patent assignment by Dr. Macevicz to Spectragen or to Lynx. (Wilson Decl. Ex. 36.)

Finally, the case cited by Illumina to support its contention that Spectragen can be considered a BFP that paid first and then later received the Applications is inapposite. (Opp. at 22:10-13.) *U.S. v. Detroit Timber & Lumber Co.*, 131 F. 668, 677 (8th Cir. 1904), holds that notice of another's right in property sufficient to defeat a BFP defense must arise before value is paid and property is received, regardless of the order of these events. The case does not involve a separate assignment of property, from one entity to another, that breaks the chain of title before the property has been received and value has been paid.

**B. Dr. Macevicz's Knowledge Is Imputed To Spectragen**

Illumina does not dispute that Dr. Macevicz's knowledge is imputed to Lynx. It argues instead that Spectragen was a BFP, and that Dr. Macevicz's knowledge is not imputed to Spectragen. This argument directly contradicts Illumina's other argument that Lynx and Spectragen were so "closely related" that assignment of the Applications to Lynx conferred BFP status on Spectragen. (Opp. at 21:25-22:8.) Here, Illumina must acknowledge the companies' separate corporate existences to make its argument that imputation of Dr. Macevicz's knowledge to Lynx is inconsequential. If corporate separateness is observed, however, only Lynx can claim BFP status. Lynx negotiated the assignment, received the Applications from Dr. Macevicz, and assigned them to Spectragen—all with the knowledge of Dr. Macevicz attributable to it. And apparently without making any payment.

Conversely, if corporate separateness is not observed, then because both Lynx and Spectragen were "closely related," Dr. Macevicz's knowledge would be imputed to both Lynx and Spectragen. This is particularly so because Dr. Eletr, who was both Lynx's and Spectragen's CEO, was the sole representative of both companies who negotiated the assignment with Dr. Macevicz.

Finally, Illumina incorrectly states that "Dr. Macevicz's assignment to Lynx occurred before Dr. Macevicz became an employee or officer of Lynx." (Opp. at 22:25-26.) On August 31, 1995, Dr. Macevicz assigned the Applications to Lynx. But four months earlier, on May 1,

1995, Dr. Macevicz entered into an Indemnity Agreement with Lynx in which he was identified as "an Officer of [Lynx]." Illumina is now indemnifying Dr. Macevicz on the basis of that agreement: Dr. Macevicz and Illumina, at least, appear to believe that Dr. Macevicz was an officer of Lynx.

### C.  Dr. Eletr Had A Duty To Inquire About Dr. Macevicz's Obligations Under The AB Invention Agreement

Illumina admits that neither Lynx nor Spectragen satisfied their duty of inquiry regarding AB's equitable rights in Dr. Macevicz's inventions. (Opp. at 23:9-10.) They merely assert that the circumstances did not give rise to a duty of inquiry. This is plainly contradicted by the record.

Whether or not Dr. Eletr knew that AB would not be interested in claiming an ownership right in Dr. Macevicz's inventions—and as explained below, he did not—Dr. Eletr knew about the AB Invention Agreement to which Dr. Macevicz was bound. (*See* Opening Br. at 18:24-20:2.) That agreement required Dr. Macevicz to, at a minimum, disclose his invention to AB so that AB—not Dr. Macevicz or Dr. Eletr—could determine whether AB had a right to the inventions. AB has set forth undisputed facts that show Dr. Eletr made no inquires about: (1) the AB Invention Agreement, (2) whether Dr. Macevicz disclosed his inventions pursuant to that Agreement, and (3) whether AB had disavowed a right to Dr. Macevicz's inventions. (*See id.* at 20:3-21:25.) Because Illumina has the burden of establishing its BFP status, the absence of such evidence is fatal to its defense.

Illumina's speculation that Dr. Eletr concluded with certainty that AB was not interested in asserting ownership rights to Dr. Macevicz's inventions is legally irrelevant and factually unsupported. (Opp. at 23:15-24:4.) Legally, what Dr. Eletr was required to assess was the relationship between the Macevicz inventions and AB's line of business, not whether he thought AB would want to develop the inventions. Factually, it is undisputed that Dr. Eletr wrote a letter to AB challenging AB's claim to rights in Dr. Sydney Brenner's inventions (which involve DNA sequencing technology related to the Macevicz inventions), in which he acknowledged AB's *interest* in Brenner's inventions but argued that AB lacked an *ownership right* to them under the AB/Lynx Cross-License because they were purportedly not developed by Lynx. (*See* Wilson

Decl. Ex. 12.) This dialogue with AB regarding the Brenner inventions while simultaneously ignoring Dr. Macevicz's just-concluded employment with AB constitutes undisputed evidence of a "willful and deliberate blindness" antithetical to BFP status. *See Katz v. Lear Siegler Inc.*, No. 91-1094, 1993 U.S. App. LEXIS 17507, at *12 (Fed. Cir. July 12, 1993); *see also Christian v. Cal. Bank*, 30 Cal. 2d 421, 425 (1947) ("[W]here the circumstances are such as to justify the conclusion that the failure to make inquiry arose from a suspicion that inquiry would disclose a vice or defect in the instrument or transaction, such indorsee is charged with knowledge.").

**V. ILLUMINA HAS NOT ESTABLISHED THAT EITHER THE STATUTE OF LIMITATIONS OR LACHES BARS AB'S CLAIMS**

Illumina has not met its burden of showing that there is a genuine issue of material fact supporting its affirmative defenses of statute of limitations and laches. It instead tries to shift that burden to AB, arguing that AB's moving papers did not address Illumina's affirmative defenses. AB, however, does not have the burden of disproving Illumina's defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). AB's burden on summary judgment is to show that there are no genuine issues of material fact as to its own claims. *See Calderone v. U.S.*, 799 F.2d 254, 259 (6th Cir. 1986); *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). AB met that burden by showing that it is entitled to judgment on its causes of action.

Illumina has the burden of showing specific facts supporting its affirmative defenses. It cannot meet that burden by resting on its pleadings. "Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 323–24 (quotations omitted); *see Cal. Serv. Empls. Health & Welfare Trust Fund v. Advance Bldg. Maint.*, No. C 06-3078 CW, 2007 U.S. Dist. LEXIS 83987, at **13-14 (N.D. Cal. Nov. 1, 2007) (defendant cannot avoid summary judgment by raising unsubstantiated assertions that plaintiff's claim is barred by the statute of limitations).

The "specific facts" that Illumina offers in support of its affirmative defenses are that Dr. Macevicz's breaches occurred more than ten years ago, and that the Patents issued more than

four years ago. (*See* Opp. 13:24-14:10, & 16. fn. 8.) The mere occurrence of the breach, though, does not trigger the statute of limitations. The statute of limitations begins to run only when the plaintiff has actual or constructive notice of the facts giving rise to the claim. *See April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 828-29 (1983). Illumina does not present any fact showing that AB had actual or constructive notice of Dr. Macevicz's breaches more than four years before filing suit.

Dr. Macevicz's role as AB's attorney is also equally significant. A fiduciary cannot invoke the statute of limitations as a defense when he should have informed the plaintiff in a timely manner about the facts giving rise to the potential claim. *See Cross v. Bonded Adj. Bureau*, 48 Cal. App. 4th 266, 281 (1996). In *Cross*, the fiduciary did not disclose the expiration of a lien and transfer of the property that later resulted in the claim, and therefore was not allowed to invoke the statute of limitations. "Where a fiduciary relationship exists the [plaintiffs'] usual duty of diligence to discover facts does not exist." *Id.* (citing *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 598 (1970)). Therefore, "if the delay in commencing an action is induced by the conduct of the defendant, he cannot avail himself of the defense of the statute [of limitations]." *Id.* (citing *Gaglione v. Coolidge*, 134 Cal. App. 2d 518, 527 (1955)). Dr. Macevicz admits that, despite his fiduciary role as AB's Senior Patent Counsel, he did not disclose his patent application to anyone in management at AB. It is also undisputed that he did not provide the required written disclosure that he had an invention that he wanted to keep as his own. Had he provided the required disclosure, AB would have known of this claim. Since he did not, he cannot avail himself of the statute of limitations.

Illumina's observation that the three asserted patents were issued in 1998, 1999, and 2001 does not establish notice of Dr. Macevicz's breaches. Moreover, contrary to Illumina's assertion, AB never admitted to "having conducted patent searches from 1995 to the present." (Opp. at 16 fn. 8.) The evidence cited by Illumina shows just the opposite. Illumina's request for production of documents calls for "[t]he results of patent searches conducted by [AB], for the years 1995 through the present that refer or relate to [the '663 Application]." (Labbe Decl. Ex. RR at No. 36.) AB responded that it was not aware of any such documents. (*Id.*) And even if AB did

conduct such searches, this would not put AB on notice that its technology was stolen. *See Univ. of Colo. Found., Inc. v. Am. Cyanamid*, 880 F. Supp. 1387, 1406 & fn. 4 (D. Colo. 1995) (while "issuance of a patent is notice to the world for certain purposes, [this does] not support the conclusion that such issuance is notice for all purposes, *including the statute of limitations*") (emphasis added); *Advanced Cardiovascular Sys., Inc. v. Scimed Life Systems, Inc.*, 988 F.2d 1157, 1161-62 (Fed. Cir. 1993) (issuance of patent does not provide constructive notice to omitted inventor for purposes of laches). A contrary rule would require companies, many of them like AB with thousands of employees, to maintain constant vigilance of all issued patents worldwide. *See Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 339 F. Supp. 2d 944, 962 (W.D. Mich. 2004) ("What [defendant] really advocates is a duty of paranoia, not a duty of inquiry. This is not the law.").

Elsewhere in its Opposition, Illumina suggests that AB should have discovered Dr. Macevicz's breaches (*see* Opp. at 10:19-11:27), but Illumina does not argue that those assertions support its defenses under the statute of limitations and laches. To the extent that the Court considers those assertions here, they do not support Illumina's affirmative defenses.

Illumina's first observation—that Dr. Macevicz disclosed the contested inventions by offering to license a different invention before joining AB—cannot logically constitute notice of Dr. Macevicz's breach, which occurred years later.

Illumina's second observation—that Dr. Macevicz's patent attorney was Vincent Powers, who later worked at AB (Opp. at 17:8-25)—also lacks factual, logical and legal relevance to AB's actual or constructive notice of Dr. Macevicz's breach. Illumina offers no evidence that Dr. Powers himself knew, let alone that he actually informed AB that his former client breached his obligations to AB. In addition, Dr. Powers prosecuted the Patents as Dr. Macevicz's attorney, not AB's. He is not permitted to reveal the confidences of one client to another.

Finally, Illumina's suggestion that Dr. Macevicz disclosed the inventions to AB by exploiting its employees, Drs. Fung and Grossman, to witness his notebook lacks any factual or legal support. As discussed above, neither person was in a management position at AB with authority to evaluate assignment of inventions, and Dr. Macevicz's concealment prevented them,

or anyone else at AB, from determining the ownership of what was disclosed in his notebook. It likewise lacks logical relevance, in that awareness of the invention's existence is not tantamount to awareness that it has been stolen.

## VI. RULE 56(F) DOES NOT PREVENT SUMMARY JUDGMENT

Illumina has waited too long to take advantage of Rule 56(f). It has known the full details of this dispute since no later than December 12, 2006, when AB filed its initial state court action. (Complaint (Docket No. 1) ¶ 8.) This case was then filed on May 31, 2007. Most specifically, Illumina has been on notice since no later than September 13, 2007 that AB would move early in the case to resolve the ownership issue. (Joint Case Management Statement (Docket No. 26) at 7 & 13-14.)

Despite its knowledge that AB would make this motion, and the Court's unequivocal admonition that the case must move quickly, Illumina requests relief under Rule 56(f). To be eligible for this relief Illumina must show that it "diligently pursued [its] *previous* discovery opportunities," and "show how allowing *additional* discovery would [] preclude[] summary judgment." *Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994) (emphasis in original). Illumina cannot make this showing. It cannot show that it diligently pursued previous discovery, and cannot show how additional discovery would preclude summary judgment.

### A. Illumina Has Not Been Diligent In Discovery

Illumina has had more than enough time to conduct discovery, but has chosen not to. It served its first discovery requests on November 9, more than five months after this action was filed and almost a year after the similar state court action was filed. (Labbe 56(f) Decl.[5] ¶ 3.) AB's response to the requests was timely, and AB has been producing documents in response to those requests. (*Id.* ¶¶ 4-5.) Illumina has not noticed or taken any depositions. (Wilson Reply Declaration ¶ 2.) Although it specifically identifies five witnesses in its Opposition brief, it has not served deposition subpoenas or requested deposition dates for any of those witnesses. (*Id.*)

---

[5] "Labbe 56(f) Decl." refers to the Declaration of John R. Labbe in Support of Defendants' Request for Relief under Fed. R. Civ. P. 56(f) (Docket No. 77), filed December 20, 2007.

Moreover, Illumina has not offered any reason why it could not have pursued discovery earlier in the case, for example, after AB said that it would be moving for summary judgment and lack of standing on the ownership issue at the earliest opportunity. Illumina simply waited to conduct its discovery. Such complete lack of diligence precludes invocation of Rule 56(f).

**B. Discovery Would Not Defeat The Motion**

Rule 56(f) is not satisfied by general statements that more discovery is needed. Illumina must identify "the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City & County of San Francisco*, 441 F. 3d 1090, 1100 (9th Cir. 2006) (citing *State of Cal. v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998))`. In this case, general statements of entitlement are all that Illumina has offered. (Opp. at 25:7-9.) Illumina's 56(f) declaration similarly identifies only general subject matter that may result from further discovery, and does not point out specific facts to be discovered, or how those specifics facts would preclude summary judgment. (Labbe 56(f) Decl. ¶¶ 9, 11-13.) Illumina's showing comes nowhere near what is required by Rule 56(f). In the absence of a showing of specific facts that would be revealed through discovery, and how those facts would preclude summary judgment, the defendants' request for more time under Rule 56(f) must be denied.

**CONCLUSION**

This case ultimately boils down to whether Dr. Macevicz disclosed his inventions to AB, and whether they were related to AB's business. Since the inventions were related to AB's business, and Dr. Macevicz did not disclose them, the defendants must lose.

Dated: December 27, 2007

MORRISON & FOERSTER LLP

By: /s/ Bryan Wilson
Bryan Wilson
Attorneys for Plaintiff
APPLERA CORPORATION—
APPLIED BIOSYSTEMS GROUP