# EXHIBIT  A

1      Pursuant to Patent Local Rule 4-1, Plaintiff Applera Corporation – Applied Biosystems

2   Group ("AB") provides its Proposed Terms and Claim Elements for Construction (identified in

3   bold and listed individually).

4      AB reserves its right to amend or supplement the list based on the discovery of additional

5   information, including the terms and elements proposed by Solexa.

6

| '341 Patent Terms And Claim Elements For Construction[1] | |
|---|---|
| 1. A method for **determining a sequence of nucleotides** in a **target polynucleotide**, the method comprising the steps of: | "determining a sequence of nucleotides" "target polynucleotide" |
| (a) providing a probe-target duplex comprising an **initializing oligonucleotide probe** hybridized to a target polynucleotide, **said probe having an extendable probe terminus**; | "initializing oligonucleotide probe" "said probe having an extendable probe terminus" |
| (b) ligating **an extension oligonucleotide probe to said extendable probe terminus**, to form **an extended duplex** containing **an extended oligonucleotide probe**; | "an extension oligonucleotide probe" "to said extendable probe terminus" "an extended duplex" |
| (c) **identifying**, in the extended duplex, at least one nucleotide in the target polynucleotide that is either (1) complementary to the **just-ligated extension probe** or (2) a nucleotide residue in the target polynucleotide which is immediately downstream of the extended oligonucleotide probe; | "an extended oligonucleotide probe" "identifying" "just-ligated extension probe" "extended probe" |
| (d) generating an extendable probe terminus on the **extended probe**, if an extendable probe terminus is not already present, such that **the terminus generated is different from the terminus to which the last extension probe was ligated**; and | "the terminus generated is different from the terminus to which the last extension probe was ligated" "repeating steps (b), (c) and (d) until a sequence of nucleotides in the target polynucleotide is determined" |
| (e) **repeating steps (b), (c) and (d) until a sequence of nucleotides in the target polynucleotide is determined**. | |
| 2. The method of claim 1 wherein each **extension probe** has a chain-terminating | "extension probe" |

---

[1] In the interest of avoiding unnecessary repetition in these charts, AB has not necessarily identified claim terms and elements that are duplicative of terms or elements already identified in earlier claim provisions.

AB'S PROPOSED TERMS & CLAIM ELEMENTS FOR CONSTRUCTION
Case No. C07 02845 WHA
sd-400918

# EXHIBIT B

| '341 Patent Terms And Claim Elements For Construction | |
| --- | --- |
| 1. A method for **determining a sequence of nucleotides** in a **target polynucleotide**, the method comprising the steps of: | **"Determining a sequence of nucleotides"** means establishing the identity of two or more bases, as either A, T, G, or C, in a target polynucleotide. <br><br> **"Target polynucleotide"** means a polymer of nucleotides, one or more of which are unknown, that is targeted for analysis with the method. |
| (a) providing a probe-target duplex comprising **an initializing oligonucleotide probe** hybridized to a target polynucleotide, **said probe having an extendable probe terminus**; | **"Initializing oligonucleotide probe"** means the oligonucleotide to which the first extension oligonucleotide probe will be ligated. <br><br> **"Said probe having an extendable probe terminus"** means that the end of the initializing oligonucleotide is capable of participating in a ligation reaction. |
| (b) **ligating an extension oligonucleotide probe to said extendable probe terminus**, to form **an extended duplex** containing **an extended oligonucleotide probe**; | **"Ligating an extension oligonucleotide probe to said extendable probe terminus"** means forming a covalent bond between a short oligonucleotide probe and the extendable probe terminus of the initializing oligonucleotide of step 1(a). <br><br> **"An extended duplex"** means the double stranded structure formed by the hybridization of the extended oligonucleotide probe to the target polynucleotide. <br><br> **"An extended oligonucleotide probe"** means the product of the ligation of the extension oligonucleotide probe of step 1(b) to the initializing oligonucleotide of step 1(a). |
| (c) **identifying**, in the extended duplex, at least one nucleotide in the target polynucleotide that is either (1) complementary to the **just-ligated extension probe** or (2) a nucleotide residue in the target polynucleotide which is immediately downstream of the extended oligonucleotide probe; | **"Identifying"** means within each cycle determining the identity of a base, as either A, T, G, or C, in the target polynucleotide. <br><br> **"Just-ligated extension probe"** means the extension oligonucleotide probe of step 1(b) that was ligated within that cycle to the initializing oligonucleotide of step 1(a). |
| (d) generating an extendable probe terminus on the **extended probe**, if an extendable probe terminus is not already present, such that **the terminus generated is different from the terminus to which the last** | **"Extended probe"** means the extended oligonucleotide probe of step 1(b). <br><br> **"The terminus generated is different from the terminus to which the last extension** |

# EXHIBIT  C

I hereby certify that this correspondence is being deposited with the U.S. Postal Service with sufficient postage as First Class Mail in an envelope addressed to: Assistant Commissioner for Patents, Washington, D.C., 20231, on:

Date: Oct 16, 1996    By: Vinct M Power

DOCKET No.: 5525-0015

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

IN RE APPLICATION OF:

    Stephen C. Macevicz

SERIAL No.: 08/424,663

FILED: April 17, 1995

FOR: DNA Sequencing by Parallel
    Oligonucleotide Extensions

EXAMINER:  P.B. Tran

ART UNIT:  1807

### AMENDMENT

Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

    In response to the Office action mailed April 16, 1996, please amend the application as indicated below.  A Petition for 3-Month Extension of Time with fee is enclosed herewith.

### In the Specification:

    On page 3, line 32, change "required" to --require--.
    On page 4, line 21, after "that" insert --of--; on line 27, change "initializiang" to --initializing--; and on line 30, change "identifed" to --identified--.
    On page 5, line 24, change "the the" to --the--.
    On page 6, line 28, after "start" insert --of--; and on line 35, change "i, in" to "in".
    On page 7, line 25, change "be be" to --be--.
    On page 12, line "4,816,571" to --4,816,571--.
    On page 13, line 7, change "application," to --application number--; and on line 26, insert --step-- after "ligation", and change "steps" to --step--.
    On page 14, line 22, change "Internation" to --International--.

A

On page 17, line 1, after "by" delete "several"; line 16, change "hybrized" to --hybridized--; on line 19, change "hybrization" to --hybridization--; and on line 24, change "simutaneously" to --simultaneously--.

On page 18, line 35, change "stingency" to --stringency--.

On page 20, line 3, after "on" insert --the--; on line 7, change "corresponence" to --correspondence--; and on line 32, after "pUC19", insert --(SEQ ID NO. 1)--.

On page 21, line 33, before "5'-", insert --(SEQ ID NO. 2)   --; and on line 35, before "5'-", insert --(SEQ ID NO. 3)   --.

On page 22, line 1, before "5'-", insert --(SEQ ID NO. 4)   --; on line 3, before "5'-", insert --(SEQ ID NO. 5)   --; and on line 29, change "))" to --)--.

On page 23, line 13, before "and", insert --(SEQ ID NO. 6)--; on line 14, change "3'" to --3' (SEQ ID NO. 7)--; and on line 22, before "5'-", insert --(SEQ ID NO. 8)   --.

In the Claims:

Please cancel claims 4, 8 and 13-19, without prejudice.

Please amend claims 1-3, 5, 7, 9, 11 and 12 as follows:

1.    (Amended)  A method for [identifying] determining a sequence of nucleotides in a target polynucleotide, the method comprising the steps of:

[(a) extending an initializing oligonucleotide along the polynucleotide by ligating an oligonucleotide probe thereto to form an extended duplex;

(b) identifying one or more nucleotides of the polynucleotide; ]

(a) providing a probe-target duplex comprising an initializing oligonucleotide probe hybridized to a target polynucleotide, said probe having an extendable probe terminus;

2

(b) ligating an extension oligonucleotide probe to said
extendable probe terminus, to form an extended duplex containing
an extended oligonucleotide probe;

(c) identifying, in the extended duplex, at least one nucleo-
tide in the target polynucleotide that is either (1) complementary
to the just-ligated extension probe or (2) a nucleotide residue in
the target polynucleotide which is immediately ~~adjacent to, and~~
downstream of/ the extended oligonucleotide probe;

(d) generating an extendable probe terminus on the extended
probe, if an extendable probe terminus is not already present,
such that the terminus generated is different from the terminus to
which the last extension probe was ligated; and

[(c)] (e) repeating steps [(a) and] (b), (c) and (d) until
[the] a sequence of nucleotides in the target polynucleotide is
determined.

2.   (Amended)  The method of claim 1 wherein each [said]
extension [oligonucleotide] probe has a chain-terminating moiety
at a terminus distal to said initializing oligonucleotide probe.

3.   (Amended)  The method of claim 2 wherein said step of
identifying includes removing said chain-terminating moiety and
extending said extended oligonucleotide probe with a nucleic acid
polymerase in the [presense] presence of one or more labeled
chain-terminating nucleoside triphosphates.

N/5.   (Amended) The method of claim [4] 3 wherein said exten-
sion [oligonucleotide] probe includes a subsequence of four
ribonucleotides and wherein said step of regenerating includes
cleaving said extended oligonucleotide probe with RNase H.

6/7.   (Amended)  The method of claim 2 further including a step
of capping an extended [duplex] oligonucleotide probe [or said
initializing oligonucleotide] whenever [the extended duplex or
said initializing oligonucleotide fails to ligate to said oligonu-

3

*a³*  cleotide probe] <u>no extension probe has ligated to the extendable</u>
<u>terminus in the ligation step.</u>

*a⁴*  7 8̸.  (Amended)  The method of claim [8] <u>2</u> wherein said step of
regenerating includes cleaving a chemically scissile internucleo-
sidic linkage in said extended [duplex] <u>oligonucleotide probe.</u>

8 1X̸.  (Amended)  The method of claim [8] <u>2</u> wherein said step
of regenerating includes enzymatically cleaving an internucleo-
sidic linkage in said extended [duplex] <u>oligonucleotide probe.</u>

*a⁵*

10 1X̸.  (Amended)  The method of claim 1X̸ wherein [said] <u>at</u>
<u>least one extension</u> [oligonucleotide] probe includes a subsequence
of four ribonucleotides and wherein said step of regenerating
includes cleaving said oligonucleotide probe with RNase H.

Please add claims 20-28 as follows:

--2̸0̸.  The method of claim 1, wherein step (a) includes
providing, in separate aliquots, a plurality of distinct target-
primer duplexes, each distinct duplex comprising an initializing
oligonucleotide primer hybridized to a target polynucleotide,
wherein

the target polynucleotide in each duplex is the same, but the
initializing oligonucleotide in each duplex is bound to a differ-

*a⁶*  ent sequence of the target polynucleotide; and

steps (b) to (e) are carried out independently on each
aliquot.

*c*  2̸1̸.  The method of claim 2̸0̸ wherein for each aliquot, said *extension*
oligonucleotide probe has a chain-terminating moiety at a terminus
distal to said primer.

2̸2̸.  The method of claim 2̸1̸ wherein for each aliquot, said
step of identifying includes removing said chain-terminating
moiety and extending said extended oligonucleotide probe with a

4

33

nucleic acid polymerase in the presence of one or more labeled chain-terminating nucleoside triphosphates.

23. The method of claim 20 wherein for each aliquot, said extension probe includes a subsequence of four ribonucleotides and wherein said step of regenerating includes cleaving said extended oligonucleotide probe with RNase H.

24. The method of claim 20 wherein said chain-terminating moiety is a 3' phosphate.

𝒶6  25. The method of claim 20 further including a step of capping an extended oligonucleotide probe whenever no extension probe has ligated to the extendable terminus in the ligation step.

26. The method of claim 20 wherein for each aliquot, said step of regenerating includes cleaving a chemically scissile internucleosidic linkage in said extended oligonucleotide probe.

27. The method of claim 26 wherein said chemically scissile internucleosidic linkage is a phosphoramidate.

28. The method of claim 20 wherein for each aliquot, said step of regenerating includes enzymatically cleaving an inter-nucleosidic linkage in said extended duplex.--

## REMARKS

Reconsideration of the rejections set forth in the Office action mailed April 16, 1996 is respectfully requested.  By the present amendment, claims 4, 8 and 13-19 have been canceled, claims 1-3, 5, 7, 9, 11 and 12 have been amended, and claims 20-28 have been added.  Claims 1-3, 5-7, 9-12, and 20-28 are pending in the application.

I.  Amendments

The specification has been amended to correct various typographical errors, and to include SEQ ID identifiers.

The claims have been amended to correct typographical errors and provide further clarification.  In particular, claim 1 has been amended to include the step of providing a probe-target duplex preliminary to the ligation step; to further define the identifying step; and to add a step (d) for generating an extendable probe terminus on the extended probe, if necessary, prior to the next ligation cycle.  Claims 2, 3, 5, 7, 9, 11 and 12 have been amended to comport with the language of claim 1 and to correct minor typographical errors.

Support for amended claim 1 can be found in original claim 1, and in the specification and drawings at least at the following locations:

Step (a): page 4, lines 5-8;

step (b): page 4, lines 8-10;

step (c): page 4, lines 11-13; Figs. 1 to 3B and corresponding text in the application (identification of target nucleotides complementary to the added extension probe; Fig. 4 and the corresponding text (identification of target nucleotides immediately adjacent and downstream of the added/ligated probe);

step (d): page 4, lines 13-17 and pages 12-16;

step (e): page 4, lines 10-11.

New claim 20 is directed to the use of multiple initiating primers for obtaining sequence information from different reading frames, as discussed in the specification at page 6, line 17 to page 11, line 8, and as illustrated in Fig. 1.  Dependent claims 21-28 find support in original claims 2, 3, 5-7, and 9-11, respectively.

No new matter is added by any of the amendments.

6

II.  Restriction Requirement

The Examiner requested election between method claims 1-17 (Group I) and probe claims 18 and 19 (Group II).  In response, applicant confirms election of claims 1-17 without traverse.  Non-elected claims 18 and 19 have been canceled.

III.  Objection to the Disclosure

The disclosure was objected to because of typographical errors and the lack of SEQ ID identifiers on pages 20-23.  Accordingly, various typographical errors have been corrected, and SEQ ID identifiers have been added on pages 20-23 to comport with the sequence listing on pages 25-27.  Withdrawal of the rejection is respectfully requested.

IV.  Rejections Under 35 U.S.C. §112, Second Paragraph

Claims 1-17 were rejected under 35 U.S.C., second paragraph, as being indefinite on account of claims 1, 13, 4, and 7.  The rejections are respectfully traversed in light of the following remarks.

In order to meet the definiteness requirement of 35 U.S.C. §112, claims need only set forth the invention so that one skilled in the art is apprised of the metes and bounds of the invention (e.g., Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 231 USPQ 81, Fed. Cir. 1986).  The "definiteness of the [claim] language must be analyzed ... in light of the teachings of the prior art and of the particular application disclosure as it would be interpreted by one possessing the ordinary level of skill in the pertinent art."  In re Moore, 439 F.2d 1232, 169 USPQ 236 (CCPA 1971).

Claim 1.  The examiner considered claim 1 to be indefinite for failing to define the identifying step in greater detail as to the relative position of the nucleotide(s) identified and the mode of identification.  The applicant submits that claim 1 as amended is definite.  In particular, claim 1 now specifies that the target nucleotide(s) identified in each ligation cycle are either comple-mentary to the just-ligated extension probe or (2) are immediately

7

adjacent to, and downstream of, the extended oligonucleotide probe. Furthermore, there is no need to recite the use of a label. The applicant submits that the skilled person would readily understand the metes and bounds of what is claimed given the ample guidance provided by the applicant's disclosure coupled with knowledge of the relevant art.

<u>Claim 13</u>. Claims 13-17 were considered indefinite because of the label recited in step (e). The rejection is moot in light of cancellation of claim 13.

<u>Claim 4</u>. Claims 4-6 were considered indefinite because of the phrase "said extended duplex". The rejection is moot in light of cancellation of claim 4.

<u>Claim 7</u>. Claim 7 was considered indefinite because of the phrase "an extended duplex". It is submitted that the meaning of this phrase is clear in light of amended claim 1 -- that is, the skilled person would understand that an extended probe produced in each iteration of step b is capped whenever the probe ligation step has failed for that particular extended probe.

In view of the amendments and remarks above, withdrawal of the rejections is respectfully requested.

V.   <u>Rejections Under 35 U.S.C. §103</u>

Claims 1, 2, 7 and 13 were rejected under 35 U.S.C. §103 as being unpatentable over Brennan et al. (U.S. Patent No. 5,403,708) in view of Cantor (U.S. Patent No. 5,503,980) or Broude et al. (1995). The rejection is respectfully traversed in light of the following remarks.

A.   <u>The Invention</u>

The present invention, as embodied in claim 1, is directed to a method for determining a sequence of nucleotides in a target polynucleotide. In the method, there is provided a probe-target duplex comprising an initializing oligonucleotide probe hybridized to a target polynucleotide, where the probe has an extendable probe terminus. An extension oligonucleotide probe is ligated to the extendable probe terminus, forming an extended duplex con-

8

taining an extended oligonucleotide probe.  At least one target
nucleotide is then identified in the extended duplex, wherein the
nucleotide is either (1) complementary to the just-ligated exten-
sion probe or (2) a nucleotide residue in the target polynucleo-
tide which is immediately adjacent to, and downstream of, the
extended oligonucleotide probe.  If an extendable probe terminus
is not already present on the extended probe after the identifying
step is complete, a new extendable probe terminus on the extended
probe is generated.  The steps of ligation, identification, and
(optional) regeneration are repeated until a sequence of nucleo-
tides in the target is determined.

In a further embodiment, claim 20 and dependent claims 21-28
are directed to a sequencing method wherein a plurality of probe-
target duplexes are processed as in claim 1.

B.   The Cited Art
Brennan et al. (5,403,708) discloses a method of sequencing
wherein a primed template is contacted with a ligation enzyme and
a pool of random extension oligonucleotides of length N.

In a first general embodiment, the primed template is reacted
with the extension oligonucleotides in the presence of a terminat-
ing oligonucleotide.  The terminating oligonucleotide contains a
blocking group which prevents further ligase-mediated extension,
and a labeled nucleotide at a predetermined position for sequence
determination.  The reaction produces a mixture of ligation prod-
ucts containing different numbers of extension oligonucleotides.
The mixture may then be separated by size, e.g., by gel electro-
phoresis, to produce ladders of fragments which are read much like
a standard Sanger or Maxam and Gilbert sequencing gel (e.g., Fig.
3).

In a second general embodiment, primer extension is carried
out in the presence of a mixture of random sequence extension
oligonucleotides, without terminator moieties.  Each extension
oligonucleotide contains a labeled nucleotide residue at a prede-
fined position such that the ligation products contain identifying
labels separated by intervals of N nucleotides.  The fragments are

9

then capped with a terminating moiety for immobilization on a
solid support, immobilized, and then sequenced by single molecule
nuclease digestion (e.g., Figs. 5 and 6, and column 9, line 11 to
column 10, line 17).

In no instance does Brennan et al. suggest extending an
initiating oligonucleotide probe by one oligonucleotide probe at a
time, and identifying one or more target nucleotides in between
each extension/ligation step.  Rather, Brennan teaches obtaining
sequence information only after all ligations have been completed.

Cantor (5,503,980) discloses a method of sequencing by
hybridization.  In the method, a single-stranded DNA target is
hybridized with a set of separate, immobilized different-sequence
probes containing (i) a double-stranded portion and (ii) a single-
stranded portion having a random but determinable sequence for
hybridizing to the target.  The double stranded portions provide
base-stacking interactions which promote hybridization (e.g.,
column 3, lines 36-40).  A ligation step may also be included to
further assure fidelity of hybridization (e.g., column 8, lines
33-36).

The method taught by Cantor is merely an elaboration of the
sequencing method known as "sequencing by hybridization" (dis-
cussed in Cantor at column 2, lines 6-32), where target DNA is
hybridized to an array of different sequence probes, and sequence
information is derived from the pattern of hybridization on the
array.  Cantor does not anywhere suggest a method in accordance
with the present invention.

Broude et al., which was coauthored by Cantor, is directed to
experimental characterization of the methods taught in the Cantor
patent.  Thus, Broude et al. teaches nothing more than Cantor.

C.  Analysis

The consistent criterion for determining obviousness under 35
USC §103 is whether the prior art would have suggested to one
skilled in the art that the claimed invention should be carried
out and would have a reasonable likelihood of success (e.g.,
Burlington Industries v. Quigg, 822 F.2d 1581, 3 USPQ2d 1436 (Fed.

10

Cir. 1987; *In re Hedges* 783 F.2d 1038, 228 USPQ 685 (Fed. Cir. 1987).  Both the suggestion and the expectation of success must be founded in the prior art, not in the applicant's disclosure.  *In re Dow Chemical Co.*, 837 F.2d 469, 5 USPQ2d 1529 (Fed. Cir. 1988).

In the present case, the Examiner has failed to point to any objective teaching in the cited references which would have led the skilled person to the present invention.  In fact, to arrive at the present invention would have required substantial departures from the teachings of Brennan et al. and Cantor or Broude et al.

Brennan et al. teaches forming mixtures of extended oligonucleotides by primer ligation in the presence of terminating oligonucleotides, in a method analogous to Sanger dideoxy sequencing.  Brennan et al. also teaches preparing long chains of labeled oligonucleotides which are digested by exonuclease to derive sequence information.  Nowhere does this reference suggest iterative cycles of single-probe ligation and target nucleotide identification in a probe-target duplex, in accordance with the present invention.  Nor is it seen how such modification would even be compatible with the Brennan et al. method.

Cantor and Broude et al. teach hybridization of a target sequence with probes containing random sequences which hybridization with the target.  Although hybridization may be followed by ligation to link the probes to correctly hybridized targets, conducting further cycles of oligonucleotide ligation and nucleotide identification would have no place in the disclosed method.

In summary, there is no suggestion in the cited art of a sequencing method comprising the steps of:

(a) providing a probe-target duplex comprising an initializing oligonucleotide probe hybridized to a target polynucleotide, said probe having an extendable probe terminus;

(b) ligating an extension oligonucleotide probe to said extendable probe terminus, to form an extended duplex containing an extended oligonucleotide probe;

(c) identifying, in the extended duplex, at least one nucleotide in the target polynucleotide that is either (1) complementary

11

to the just-ligated extension probe or (2) a nucleotide residue in the target polynucleotide which is immediately adjacent to, and downstream of, the extended oligonucleotide probe;

(d) generating an extendable probe terminus on the extended probe, if an extendable probe terminus is not already present, such that the terminus generated is different from the terminus to which the last extension probe was ligated; and

(e) repeating steps (b), (c) and (d) until a sequence of nucleotides in the target polynucleotide is determined.

The applicant appreciates the Examiner's suggestion that the claims would be allowable over the cited art if limited to the subject matter of claims 3-6, 8-12 and 14-17 [now canceled]. However, such claim scope would not fairly define the applicant's invention.

In the absence of any objective teaching in the cited art that the claimed invention should be carried out, the invention embodied in claim 1 and its dependent claims cannot be considered obvious. Withdrawal of the rejection is therefore respectfully requested.

VI. Conclusion

In view of the foregoing, the applicant submits that the claims pending in the application are in condition for allowance. A Notice of Allowance is therefore respectfully requested.

Respectfully submitted,

Date: _Oct. 16, 1996_

Vincent M. Powers
Registration No. 36,246

Correspondence Address:
Dehlinger & Associates
P.O. Box 60850
Palo Alto, CA 94306
Phone: (415) 324-0880

12

# EXHIBIT D

BRYAN WILSON (CA SBN 138842)
ERIC C. PAI (CA SBN 247604)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792
E-Mail: BWilson@mofo.com
E-Mail: EPai@mofo.com

DAVID C. DOYLE (CA SBN 70690)
STEVEN E. COMER (CA SBN 154384)
ANDERS T. AANNESTAD (CA SBN 211100)
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, California 92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125
E-Mail: DDoyle@mofo.com
E-Mail: SComer@mofo.com
E-Mail: AAannestad@mofo.com

Attorneys for Plaintiff
APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ILLUMINA, INC., a Delaware corporation, SOLEXA, INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual.,<br><br>Defendants. | Case No.    C07 02845 WHA<br><br>**APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP'S PRELIMINARY INVALIDITY CONTENTIONS** |

1            **E.**     **PATENT LOCAL RULE 3-3(c)**

2         In accordance with Patent Local Rule 3-3(c), charts identifying where in each item of the

3 prior art listed above each element of each asserted claim of the '341, '597 and '119 Patents are

4 attached as **Exhibit A, Exhibit B, and Exhibit C.** Where elements are disclosed at multiple

5 locations within a single item of prior art, AB has not necessarily identified every location of that

6 element. AB reserves the right to add additional citations to these charts, as well as update the

7 charts once a claim construction is issued in this case.

8            **F.**     **PATENT LOCAL RULE 3-3(d)**

9               **1.**     **Indefiniteness**

10         In accordance with Patent Local Rule 3-3(d), AB identifies the following grounds of

11 invalidity of the asserted claims based on indefiniteness under 35 U.S.C. § 112(2).

12         Claim 1 of the '597 Patent is invalid because the claim fails to particularly point out and

13 distinctly claim the subject matter regarded by the inventors as the invention. As a result, the

14 claim fails to reasonably apprise those skilled in the art as to its scope when read in light of the

15 specification, rendering the limits of the claim unknown.

16         In particular, the relationship between step (a) and step (b) is unclear. Step (b) merely

17 requires that a nucleotide be identified, but the claim does not state how that identified nucleotide

18 is related to the limitations of step (a). For example, step (b) does not identify the relative

19 position of the identified nucleotide with respect to the initializing oligonucleotide, the

20 oligonucleotide probe and/or the extended duplex. Nor is it clear from the claim language what

21 mechanism of identification is used. Given this lack of clarity, one skilled in the art would not be

22 apprised of the scope of the claim.

23         Claim 1 of the '341 Patent and all claims dependent therefrom are invalid because claim 1

24 fails to particularly point out and distinctly claim the subject matter regarded by the inventors as

25 the invention. For example, the phrases "extended oligonucleotide probe" and "just-ligated

26 extension probe" render claim 1 and all claims dependent therefrom indefinite. It is unclear

27 whether these terms refer to the same or different probes, or whether the terms refer to just a

28 portion of the extended or ligated probes. Neither of these terms is used in the specification, let

1    alone defined in the specification. As a result, the claim fails to reasonably apprise those skilled

2    in the art as to its scope when read in light of the specification, rendering the limits of the claim

3    unknown.

4        Claim 1 of the '341 Patent and all claims depending therefrom are also invalid as being

5    vague and indefinite because the antecedent basis for the phrase "said extendable probe terminus"

6    appearing in step (b) is not clear. Both steps (a) and (d) of Claim 1 recite "an extendable probe

7    terminus." Step (a) of Claim 1 requires providing an initializing oligonucleotide probe having

8    "an extendable probe terminus." Step (b) of the method recites ligating an extension probe to

9    "said extendable probe terminus" to form an extended duplex. Step (c) calls for identifying at

10   least one nucleotide in the target polynucleotide. Step (d) recites the optional generation of "an

11   extendable probe terminus" on the extended probe if one is not already present. Step (e) requires

12   that steps (b), (c), and (d) be repeated until a sequence of nucleotides is determined. Claim 1 is

13   indefinite because it is not clear if, in the second cycle of the method, the step of "ligating an

14   extension oligonucleotide probe to said extendable probe terminus" refers to a ligation reaction

15   between the extension oligonucleotide probe and the extendable probe terminus of the initializing

16   probe of step (a) or with the extendable probe terminus of the extended probe recited step (d). As

17   a result of this vague and indefinite claim language, one of ordinary skill in the art would not be

18   able to determine the metes and bounds of the claimed invention.

19       Claim 1 of the '341 Patent and all claims depending therefrom are also invalid as being

20   vague and indefinite because the phrase "a sequence of nucleotides in a target polynucleotide" in

21   the preamble and the phrase "a sequence of nucleotides in the target polynucleotide" appearing in

22   step (e) are not clear. Claim 1 of the '597 patent is invalid as being vague and indefinite because

23   the phrase "a sequence of nucleotides in a polynucleotide" in the preamble and the phrase "the

24   sequence of nucleotides in the polynucleotide" appearing in step (e) are not clear. It is not clear if

25   the steps of the claims require identification of only one nucleotide in the polynucleotide, or

26   whether more than one nucleotide must be identified. Moreover, it is unclear whether the claim

27   language requires the identification of contiguous nucleotides comprising the entire sequence of

28   the polynucleotide, or whether the identification of non-contiguous nucleotides would satisfy the

claim requirements. Further, if the claims only require identifying one nucleotide, repeating step
(e) of the '341 patent and step (c) of the '597 patent are unnecessary. As a result of this vague
and indefinite claim language, one of ordinary skill in the art would not be able to determine the
metes and bounds of the claimed invention.

Claim 7 of the '341 Patent and all claims dependent therefrom are invalid because claim 7
fails to particularly point out and distinctly claim the subject matter regarded by the inventors as
the invention. For example, the term "regenerating" lacks antecedent basis. It is unclear whether
this term refers to the generating step (d) of claim 1, whether it refers only to the generating step
(d) of claim 1 during repeating step (e), or whether it refers to some omitted steps, whereby a
particular extendable probe terminus is first generated, removed and subsequently generated yet
again. As a result, the claim fails to reasonably apprise those skilled in the art as to its scope
when read in light of the specification, rendering the limits of the claim unknown.

Other indefiniteness grounds may result from claim constructions proposed or adopted
during this litigation.

### 2.    Enablement and Written Description

In accordance with Patent Local Rule 3-3(d), AB identifies the following grounds of
invalidity of the asserted claims based on lack of enablement and lack of written description
under 35 U.S.C. § 112(1):

Claim 1 of the '341 Patent and all of its dependent claims are not supported by an
enabling disclosure. Undue experimentation would be required to practice the method of Claim 1
because step (e) of Claim 1 requires that a subsequent extension oligonucleotide probe be ligated
to the extendable probe terminus of initializing oligonucleotide probe in step (a). The disclosure
of the '341 Patent does not provide any guidance whatsoever as to how to remove completely the
first extension oligonucleotide probe ligated to the initializing oligonucleotide probe that occurred
in the first cycle of the method so that a second extension probe can be ligated to the same
initializing oligonucleotide. At best, the '341 Patent teaches how to cleave a portion of the
extension oligonucleotide probe ligated to initializing probe. However, such a cleavage step
would not regenerate "said extendable probe terminus" of the initializing oligonucleotide probe

1   but rather would create a new extendable probe terminus within the extension probe.

2   Accordingly, one of ordinary skill in the art would not be able to practice the full scope of the

3   claimed invention without undue experimentation.

4        Claim 1 of the '597 Patent is not enabled and lacks adequate written description for failure

5   to include an essential element. Claim 1 requires that an initializing oligonucleotide is extended

6   by ligation to an oligonucleotide probe to create an extended duplex. The repeating step (c)

7   requires that the initializing oligonucleotide be extended by an oligonucleotide probe. In contrast,

8   the disclosure of the '597 Patent teaches extending the initializing oligonucleotide with an

9   oligonucleotide probe to create an extended duplex, which is further extended by ligation with

10  one or more additional oligonucleotide probes. Claim 1 does not require that the extended duplex

11  be further extended by one or more additional oligonucleotide probes. Claim 1 thus omits the

12  required element that the extended duplex be further extended by ligation with a subsequent

13  oligonucleotide probe in the repeating step.

14       The '597 Patent does not enable one of ordinary skill in the art to make or use the full

15  scope of the claimed subject matter without undue experimentation, and fails to convey to one of

16  ordinary skill in the art that the named inventors were in possession of the claimed subject matter

17  at the time the specification was filed.

18

19       **G.    INEQUITABLE CONDUCT**

20       Each of the asserted claims may also be unenforceable by Solexa for inequitable conduct,

21  as asserted in the pleadings.

22       Specifically, each of the '341, '119, and '597 Patents are void and unenforceable by

23  Solexa due to inequitable conduct in their prosecution before the United States Patent and

24  Trademark Office (the "PTO"). The applicant failed to disclose material prior art to the PTO

25  during prosecution of the '341, '119 and '597 Patents even though such prior art was known to

26  the applicant, thereby rendering the '341, '119 and '597 Patents unenforceable by Solexa. In

27  particular, U.S. Patent No. 4,988,617 ("Landegren") and U.S. Patent No. 4,883,750 ("Whiteley")

28  were known to the applicant, Stephen C. Macevicz. The disclosures of Landegren and Whiteley