IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

APPLERA CORPORATION-APPLIED
BIOSYSTEMS GROUP, a Delaware
corporation,

    Plaintiff,

  v.

ILLUMINA, INC., a Delaware corporation,
SOLEXA, INC., a Delaware corporation,
and STEPHEN C. MACEVICZ, an
individual,

    Defendants.

No. C 07-02845 WHA

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION, DENYING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, AND DENYING DEFENDANT MACEVICZ'S MOTION TO DISMISS**

**INTRODUCTION**

    This is a dispute over which side owns a series of patents and which side is infringing them. Plaintiff moves for summary adjudication as to its breach of contract claim, breach of fiduciary duty claim, and conversion claim. Plaintiff also moves to dismiss defendant Illumina's counterclaims. In addition, defendant Macevicz moves to dismiss plaintiff's claims against him. For the reasons below, all motions are **DENIED**.

**STATEMENT**

    Plaintiff Applied Biosystems is engaged in the manufacture and sale of products used in various life sciences, including automated systems used for synthesis, amplification, and sequencing of DNA and RNA, proteins and other biological molecules (Wilson Decl. Exh. 2

at 2). In 1992, Applied spun off Lynx Therapeutics, Inc., as a separate, privately owned company to develop drugs for the treatment of diseases while Applied continued to develop sequencing methods and machines (Wilson Decl. Exh. 1). Initially, Lynx and Applied shared some intellectual property rights pursuant to a cross-license agreement (*ibid.*). In 1995, Lynx created Spectragen as a wholly-owned subsidiary to explore the DNA sequencing techniques invented by Dr. Sydney Brenner (Labbe Decl. Exh. I). In 1996, Spectragen merged with Lynx, and in 2005, Lynx merged with defendant Solexa, a corporation engaged in the business of developing and manufacturing genetic analysis technologies, including novel DNA sequencing techniques (Labbe Decl. Exh. J). Defendant Illumina later acquired Solexa in 2007.

Dr. Stephen Macevicz is the alleged villain of the piece. He began as plaintiff Applied Biosystems's senior patent counsel in 1992. As a condition of his employment, Macevicz entered into an employee invention agreement that provided, in part:

> 2. I agree that I will promptly make full disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and will assign all my right, title, and interest to any and all inventions, discoveries, developments, improvements or trade secrets which I may solely or jointly conceive, develop or reduce to practice, or cause to be conceived, developed or reduced to practice, during the period of time I am in the employ of the Company, except any invention, discovery, development, improvement or trade secret as to which I can prove that
>
> (a) it was developed entirely on my own time; and
>
> (b) no equipment, supplies, facility or trade secret of the Company was used in its development; and
>
> (c) (i) it does not relate to the business or actual or demonstrably anticipated research or development of the Company, or (ii) it does not result from any work performed by me for the Company (Wilson Decl. Ex. 15).

The agreement further provided:

> 7. The provisions of this agreement requiring assignment to the Company do not apply to any invention which qualifies fully under the provisions of Section 2870 of the California Labor Code. I will advise the Company promptly in writing of any inventions, discoveries, developments, improvement or trade secretes that I believe meet the criteria in subparagraphs 2(a), (b) and (c) above; and I will at that time provide to the Company in writing all evidence necessary to substantiate that belief (*ibid.*).

2

At all material times, Section 2870 of the California Labor Code, referenced in the quoted passage, invalidated any provision in an employment agreement that:

> a) [P]rovides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:
>
> (1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or
>
> (2) Result from any work performed by the employee for the employer.

Note that the last two exceptions track the two exceptions in paragraph 2(c) of the agreement above. During his tenure at Applied from 1992 to 1995, Macevicz prosecuted several patents and, on at least one occasion, submitted an invention proposal for the company in which he identified himself as the inventor (Wilson Decl. Exh. 15). Before arriving at Applied, however, Macevicz had worked on a new method of DNA sequencing known as "sequencing by hybridization" (Macevicz Dep. 139), which received U.S. Patent No. 5,002,867 in 1991, one year before his employment with Applied (Labbe Decl. Exh. G). Prior to beginning his employment in 1992, Macevicz offered to licence the '867 patent to Applied, which declined the offer (Macevicz Dep. 140).

After moving to Applied, Macevicz continued to work on the method for sequencing by hybridization. Several pages of his invention notebook were witnessed by two of Applied's scientists, Dr. Paul Grossman and Dr. Steven Fung (Labbe Decl. Exh. F). Although plaintiff contends that Macevicz concealed his work from Applied and his supervisors (Br. 5), Macevicz maintains that he did not hide or otherwise conceal his inventions from his colleagues but rather, freely disclosed them during lunch and other general discussions (Macevicz Dep.105: 8–23).

On April 17, 1995, Macevicz filed U.S. Patent Application No. 08/242,663 based on his continued work on sequencing by hybridization (Labbe Decl. Exh. U). The application was filed while he was still employed by Applied. Macevicz concedes that he filed no written

3

disclosure regarding his invention to Applied, *i.e.*, he gave no "Section 2870" notice of the type described above. The application was prosecuted by Vincent Powers, Applied's in-house patent counsel from 1999 to March 2007. The patent application led to the issuance of three U.S. patents: No. 5,750, 341, No. 5,969,119, and No. 6,306,597, all of which issued after Macevicz had terminated his employment with Applied. The latest patent issued in 2001 (Labbe Decl. Exh. KK).

In November 1994, Macevicz sent Lynx a draft agreement to assign certain intellectual property including the '663 application to Lynx (Wilson Decl. Exh. 28). Macevicz used standard Applied fax cover sheets and an Applied fax machine to send the draft agreement (Wilson Decl. Exh. 29). On May 1, 1995, two weeks after the '663 patent application was filed, Macevicz entered into a pre-printed form indemnity agreement with Lynx that identified Macevicz as an "officer" of Lynx (Wilson Decl. Exh. 30). Macevicz used his home address in the indemnity agreement. At the time, Macevicz was still employed by Applied but was performing legal services for Lynx (of which Applied was aware of). Defendants now contend that Macevicz's identification as an "officer" in the agreement was a mistake, and that he should have been identified merely as an "agent."

On June 1, 1995, Macevicz received a written offer to become vice president of intellectual property at Lynx (Labbe Decl. Exh. X). On June 6, Macevicz gave Applied written notice of his employment termination effective July 14 (Labbe Decl. Exh. D). Macevicz's termination was delayed to August 7, however, in order to complete a number of pending projects for Applied (Labbe Decl. Exh. Z). On August 14, Macevicz was given 20,000 stock options in Spectragen and on August 31, Macevicz assigned the '663 patent application (and three other patent applications not in dispute) to Spectragen's parent corporation, Lynx (Labbe Decl. Exh. BB). Defendants contend that the stock options were given in consideration for the assignment of the patent applications (Opp. 10). Neither the stock option grant nor the assignment document, however, references the other. Macevicz began his employment with Lynx in September of the same year (Labbe Decl. Exh. E).

4

On December 26, 2006, Applied filed a state-court action against Solexa and Macevicz, alleging that Macevicz had breached his employment invention agreement by wrongfully assigning intellectual property rights that belonged to Applied, to Lynx. After learning of Illumina's intent to assert the three resulting patents, Applied filed the instant action for declaratory relief, and re-asserted the claims pending in the state-court action for wrongful assignment of intellectual property rights. Illumina counterclaimed alleging infringement of the patents. Plaintiff now moves to dismiss Illumina's infringement counterclaims on the grounds that Illumina lacks standing to assert its claims because it has no ownership rights in the patents. Applied also moves for summary judgment of its first claim for breach of contract by Macevicz, its third claim for breach of fiduciary duty against all defendants, and its fifth claim for conversion. In addition, Macevicz moves to dismiss all claims against him or, in the alternative, strike portions of the complaint on the grounds that he holds no title to the patents in question and no monetary relief is sought against him.

**ANALYSIS**

**1. LEGAL STANDARD.**

Plaintiff and defendant Macevicz move to dismiss claims under FRCP 12(b)(6). "If matters outside the pleadings are considered, [a] motion to dismiss is to be treated as one for summary judgment." *San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 477 (9th Cir.1998). Both plaintiff and defendant's motions depend on the outcome of plaintiff's motion for summary judgment and matters outside of the pleadings. Accordingly, plaintiff and defendant Macevicz's motions will be treated as summary judgment motions.

Under FRCP 56(c), summary judgment shall be rendered if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Summary judgment is not granted if the dispute about a material fact is "genuine" — that is, if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. The evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

1    The moving party "has both the initial burden of proof and the ultimate burden of
2    persuasion on a motion for summary judgment." On a motion by the party without the burden
3    of proof at trial, the party may carry its initial burden by either of two methods. "The moving
4    party may produce evidence negating an essential element of the nonmoving party's case, or,
5    after suitable discovery, the moving party may show that the nonmoving party does not have
6    enough evidence of an essential element of its claim or defense to carry its ultimate burden of
7    persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d
8    1099, 1102–06 (9th Cir. 2000). Once the moving party meets its burden, the nonmoving party
9    must "go beyond the pleadings and by [its] own affidavits, or by depositions, answers to
10   interrogatories and admissions on file, designate specific facts showing there is a genuine issue
11   for trial." Summary judgment for a defendant is appropriate when plaintiff fails to make a
12   showing sufficient to establish the existence of an element essential to that party's case, and on
13   which party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317,
14   322–24 (1986) (internal quotations omitted).

15   **2.     APPLIED'S CLAIMS.**

16   The central fact question for a jury is whether the inventions were: (1) developed
17   entirely on Macevicz's time; (2) developed with no equipment, supplies, facility, or trade secret
18   of Applied; and (3) not related to Applied's business or actual or demonstrably anticipated
19   research or development or not as a result from any work Macevicz performed for Applied.

20   Applied has a strong case on the merits in regard to this claim. The particularly strong
21   sources of evidence include the relative similarity between the field of the patents and Applied's
22   business and Macevicz's complete lack of written disclosure regarding his inventions. Given
23   the clause requiring notice of private inventions, the failure to give notice is an admission that
24   the invention was *not* private. But the admission does not appear to be conclusive under the
25   law, strong as it may be.

26   The record indicates, however, that a reasonable jury could find that Macevicz's
27   inventions qualified for the assignment exemption. In regard to the first two requirements,
28   Macevicz testified that his inventions were "thought up on [his] own time" and were developed

6

using [his] own sources at home" (Macevicz Dep. 113:9–11). The mere fact that Macevicz used his work phone and facsimile numbers on his correspondences with PTO and requested the signatures of two Applied employees to witness his notebook do not, as Applied urges, automatically mean that Macevicz used company resources and time to develop his invention. A jury might find that Macevicz used company resources and time to pursue the inventions *after* it was developed.

Given the amount of evidence suggesting Applied was well aware of the invention, a reasonable jury could find that the invention did not relate to Applied's business or anticipated research in 1995. *First*, Applied declined an offer by Macevicz to license similar technology before Macevicz began his employment in 1992. *Second*, the '341 patent issued in 1991. If a jury determines that Applied had notice of the patent, it could also determine that Applied did not regard it as related to its own business because of the prolonged delay in bringing this action. *Third*, Macevicz contends that he openly discussed the inventions with his colleagues at work and Vincent Powers (who later became Applied's in-house patent counsel) prosecuted each of the patents at issue. In sum, a reasonable jury could find that such evidence demonstrates that the invention did not relate to Applied's business or anticipated research at the time of its conception.

Applied also contends that Macevicz independently breached the employee invention agreement by failing to comply with the written disclosure requirements for inventions that Macevicz believed were exempted. This is too bound up in the main issue to be decided on summary judgment.

Applied next argues that even if it is not entitled to summary judgment as to its breach of contract claim, it still is entitled to summary judgment on its breach of fiduciary duty claim because Macevicz entered into an indemnity agreement with Lynx while he was still an employee at Applied and Macevicz usurped Applied's corporate opportunities. Because the indemnity agreement was a standard pre-printed form and Applied was aware of Macevicz's involvement with Lynx, however, a reasonable jury could determine that Macevicz did not breach any fiduciary duty by entering into the indemnity agreement. Applied's second claim

7

1 that Macevicz usurped corporate opportunities also does not warrant summary judgment.
2 Under California law, there is no breach of a fiduciary duty where the beneficiary was aware of
3 the opportunity and dismissed it as undesirable. *See Robinson, Leatham & Nelson, Inc. v.*
4 *Nelson*, 109 F.3d 1388 (9th Cir. 1997). Given the substantial evidence regarding Applied's
5 knowledge of the patents discussed above, summary judgment is not proper.

Accordingly, as issues of material fact exist, plaintiff's motions for summary judgment are **DENIED**.

### 3. STATUTE OF LIMITATIONS.

While Applied would seem to have a reasonable case on the merits, it faces an uphill battle on the statute of limitations defense. Defendants contend that plaintiff's breach of contract, breach of fiduciary duty, and conversion claims are barred by the applicable statute of limitations. "Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 323–24. Defendants' inattention to the statute of limitations defense in its opposition brief is hard to fathom, considering that most of the events giving rise to the present action occurred well over 10 years ago.* Defendants made no cross motion for summary judgment.

Under California law, the limitations period for actions grounded in breach of contract and breach of fiduciary duty is four years. *See* Cal. Code Civ. Pro. §§ 337 and 343. The limitations period for conversion claims is three years. *See* Cal. Code Civ. Pro. § 338(c). Breach alone does not trigger the statute of limitations. The limitations period only begins to run when the plaintiff has actual or constructive notice of the facts giving rise to the claim. *See April Enterprises., Inc. V. KTTV*, 147 Cal. App. 3d 805, 828–29 (1983). California Civil Code Section 19 provides, "[e]very person who has actual notice of circumstances sufficient to

---

\* Defendants solely addressed the issue in one short paragraph in a lengthy brief. The one paragraph is mostly conclusory.

8

put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact."

"[I]ssuance of a patent and recordation in the Patent Office constitute notice to the world of its existence." *Wine Ry. Appliance Co. v. Enterprise Ry. Equip. Co.*, 297 U.S. 387, 393 (1936). The '663 patent application issued on May 12, 1998. Notice of the patent itself, however, may not be enough for our purposes.

In *Hartley Pen Co. v. Lindy Pen Co.*, 16 F.R.D. 141, 147–58 (S.D. Cal.1954), Kimberly claimed that two of its employees failed to assign rights to a patent to it despite being under a duty to so. Instead, the employees left Kimberly and assigned the patent to a newly formed company. The district court held that Kimberly's claims were barred by the California statute of limitations because Kimberley was on constructive notice of its claims as soon as the patent was issued and the assignment recorded.

Faced with somewhat similar facts, however, the Ninth Circuit came out the opposite way in *General Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1396–99 (9th Cir. 1991), reversing the district court's finding that plaintiff was on constructive notice of its claim when the patent in question issued. General Bedding had authorized its vice president, Brandau, to investigate the uses of polyvinyl in waterbeds. Brandau worked with Echevarria, whose company supplied mattresses to General Bedding. Echevarria subsequently filed for a patent a year later, wherein Brandau was entitled to a one-half interest in the invention and any profits derived from it. After learning of the arrangement years later, General Bedding brought an action against Echevarria and Brandau, alleging that Brandau was required to assign any rights to the invention to it. In rejecting the defendants' statute of limitations defense, the Ninth Circuit found that the mere issuance of the patent did not put General Bedding on notice as to its conversion and breach of contract claims. In distinguishing the facts of *Hartley Pen*, where the employer had actually used the invention and the former employees were listed as inventors on the patent, the Ninth Circuit held:

> Viewing the evidence in the light most favorable to appellant, only Brandau knew the details of his research and cooperation with Echevarria. In that case, only Brandau could have known if the patent was for the same design. Because only Brandau would

9

> have been alerted by the design, arguably only Brandau should
> have been alerted by this patent. What was most likely to alert
> the other employees of General Bedding— Brandau's name—was
> absent from the patent.

Thus, despite evidence including the issuing of the patent indicating that General Bedding had notice regarding its claims, the Ninth Circuit chose "to leave resolution of the conflicting inferences to the jury."

Applied argues that regardless of whether it was on constructive notice regarding its claims, Macevicz, as a fiduciary, cannot invoke the statute of limitations as a defense when he is the one who should have informed Applied about the facts giving rise to its claims. Under California law, "[w]here a fiduciary obligation is present, the courts have recognized a postponement of the accrual of the cause of action until the beneficiary has knowledge or notice of the act constituting a breach of fidelity." *Eisenbaum v. Western Energy Resources*, Inc., 218 Cal. App. 3d 314, 324 (1990). This does not mean, however, that a plaintiff can be willfully ignorant when it has knowledge of facts that would lead it to inquire about a potential claim. As the court held in *Bedolla v. Logan & Frazer*, 52 Cal. App. 3d 118, 130–31 (1975):

> [The] third assertion that because of the fiduciary relationship
> between the parties the accrual of the causes of action was
> postponed until the actual discovery of fraud and/or professional
> negligence and that the jury should have been so instructed is
> derived from an obvious misinterpretation of law. . . . [It is]
> abundantly clear that the general rules relating to pleading and
> proof of facts excusing a late discovery of fraud remain applicable
> to cases involving a confidential relationship. The only distinction
> between the rules of discovery in the ordinary fraud case and those
> in the confidential relationship category is that in the latter
> situation the duty to investigate may arise later by reason of the
> fact that the plaintiff is entitled to rely upon the assumption that his
> fiduciary is acting in his behalf. But, once the plaintiff becomes
> aware of facts which would make a reasonably prudent person
> suspicious, the duty to investigate arises and the plaintiff may then
> be charged with the knowledge of facts which would have been
> discovered by such an investigation. (internal citations omitted)

Although Applied may arguably be excused from performing due diligence regarding discovery of its claims, it may still be considered on notice if it had knowledge of facts that would make a reasonably prudent person sufficiently suspicious so as to investigate the possibility of a claim.

In the present action, a fully developed record may eventually yield substantial evidence showing plaintiff's notice of the existence of its claims. *First*, Macevicz was listed as the

10

inventor on each of the patent applications and issued patents in questions, the first of which issued in 1998. This is stronger evidence than if the named inventor was a third-party, as in *General Bedding*. *Second*, the record does not reveal the extent of plaintiff's patent searches and results from 1995 onwards, which may have put plaintiff on notice of at least the patent itself given the similarity between the invention and plaintiff's area of business. *Third*, Vincent Powers, who also did work for Applied and who became plaintiff's in-house patent counsel in 1998, prosecuted each of Macevicz's applications. Powers' knowledge of the filing of these patents, though not outcome determinative, provides support for the argument that plaintiff was also aware of its claim in at least 1999. *Fourth*, defendants contend Macevicz openly discussed the inventions at work and with other employees, evidenced by Dr. Fung and Dr. Grossman's signatures in Macevicz's notebook. In sum, there is significant support to show that plaintiff's claims might well be barred by the statute of limitations. This is yet another reason to deny plaintiff's motion for summary judgment. There is no occasion to grant summary judgment the other way, *i.e.*, for defendants on this point, for no cross motion for summary judgment was made.

### 4. MACEVICZ'S MOTION TO DISMISS.

Plaintiff's complaint seeks no monetary relief from Macevicz and only requests equitable relief in the form of an injunction or imposition of a constructive trust (Compl. 6–10). Macevicz contends that because he claims no interest in the patents in question and only equitable relief is sought by plaintiff, all claims brought against him should be dismissed. If Macevicz has no legal or equitable interest in the patents in suit, plaintiff's complaint would fail to state a claim against Macevicz that could be granted. The relevant inquiry becomes whether there are any set of circumstances in which Macevicz could gain title, legal or equitable, to the patents in question. If he can, then his motion must be denied. Macevicz argues that any interest he had in the patents was assigned to Lynx, pursuant to the assignment agreement he entered when he began his new employment.

Macevicz is a central party to this litigation. It is his alleged fraudulent conduct that has given rise to the dispute over patent ownership. There are various circumstances and

11

contingencies that may ultimately require Macevicz to be a party to this action in order to protect his own interests. For instance, if Macevicz is determined to have engaged in fraudulent conduct, his reputation interest alone would best be protected if he was represented. Given his central role to the facts of this case and the high possibility that his interests might be affected, it is essential that he remain a party to this action. As such, Macevicz's motion to dismiss or in the alternative to strike portions of the amended complaint is **DENIED**.

## CONCLUSION

For the above-stated reasons, plaintiff's motion for summary adjudication, plaintiff's motion to dismiss Illumina's counterclaims, and Macevicz's motion to dismiss are **DENIED**.

**IT IS SO ORDERED**.

Dated: January 17, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE