1   BRYAN WILSON (CA BAR NO. 138842)
    DARA TABESH (CA BAR 230434)
2   ERIC C. PAI (CA BAR NO. 247604)
    MORRISON & FOERSTER LLP
3   755 Page Mill Road
    Palo Alto, California 94304-1018
4   Telephone: 650.813.5600
    Facsimile: 650.494.0792
5   E-Mail: BWilson@mofo.com
    E-Mail: DTabesh@mofo.com
6   E-Mail: EPai@mofo.com

7   DAVID C. DOYLE (CA SBN 70690)
    STEVEN E. COMER (CA SBN 154384)
8   MORRISON & FOERSTER LLP
    12531 High Bluff Drive, Suite 100
9   San Diego, California  92130-2040
    Telephone:  858.720.5100
10  Facsimile:  858.720.5125
    E-Mail:  DDoyle@mofo.com
11  E-Mail: SComer@mofo.com

12  Attorneys for Plaintiff
    APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP

13

14              UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16                 SAN FRANCISCO DIVISION

17

18  APPLERA CORPORATION – APPLIED          Case No.    C07 02845 WHA
    BIOSYSTEMS GROUP, a Delaware corporation,
19                                          **APPLERA CORPORATION –
                                            APPLIED BIOSYSTEMS
20          Plaintiff,                      GROUP'S RESPONSIVE CLAIM
                                            CONSTRUCTION BRIEF**
        v.
21
    ILLUMINA, INC., a Delaware corporation,   Date:   February 13, 2008
22  SOLEXA, INC., a Delaware corporation, and Time:   1:30 p.m.
    STEPHEN C. MACEVICZ, an individual,       Place:  Courtroom 9, 19th Floor
23                                            Judge:  William H. Alsup
            Defendants.
24

25

26

27

28

1

# TABLE OF CONTENTS

2

**Page**

3  I.      INTRODUCTION ................................................................................................ 1

4  II.     BACKGROUND OF TECHNOLOGY .......................................................... 1

5  III.    THE ASSERTED CLAIMS ............................................................................ 5

6  IV.     CLAIM CONSTRUCTION STANDARDS ................................................... 6

7  V.      CLAIM CONSTRUCTION ............................................................................ 7

8       A.      "Identifying" at least one nucleotide within each cycle ........................... 7

9           1.      Within each cycle ....................................................................... 7

10          2.      Determining the identity of a nucleotide as either A, T, G, or C .............. 11

11          3.      Solexa's proposed construction ................................................. 13

12          4.      Relevance to noninfringement .................................................. 16

13      B.      "Repeating steps (b), (c) and (d) until a sequence of nucleotides in the
             target polynucleotide is determined" ...................................................... 16

14          1.      Solexa's proposed construction ................................................. 17

15          2.      Relevance to noninfringement .................................................. 19

16      C.      Courts should not redraft claims ............................................................. 19

17      D.      "Initializing oligonucleotide probe" ....................................................... 20

18          1.      The initializing oligonucleotide probe must be "hybridized to a
                 target polynucleotide" ............................................................... 20

19          2.      Solexa's proposed construction ................................................. 22

20          3.      Relevance to noninfringement .................................................. 22

21      E.      Ligating an extension oligonucleotide probe to "said" extendable probe
             terminus (Step (b)) .................................................................................. 23

22      F.      "Extended Oligonucleotide Probe" and "Just-Ligated Extension Probe" ............. 24

1

## TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*Aro Mfg. v. Convertible Top Replacement Co.,*
    365 U.S. 336 (1961) ........................................................................................ 7

5

*Chef America, Inc. v. Lamb-Weston, Inc.,*
6    358 F.3d 1371 (Fed. Cir. 2004) .................................................................. *passim*

7

*Combined Sys., Inc. v. Def. Tech. Corp. of Am.,*
    350 F.3d 1207 (Fed. Cir. 2003) .......................................................................... 8

8

*E-Pass Techs., Inc. v. 3Com Corp.,*
9    473 F.3d 1213 (Fed. Cir. 2007) .................................................................. 12, 22

10    *Eaton Corp. v. Rockwell Int'l Corp.,*
    323 F.3d 1332 (Fed. Cir. 2003) ........................................................................ 23

11

*Elkay Mfg. Co. v. Ebco Mfg. Co.,*
12    192 F.3d 973 (Fed. Cir. 1999) .......................................................................... 10

13    *Hoganas AB v. Dresser Indus., Inc.,*
    9 F.3d 948 (Fed. Cir. 1993) ............................................................................. 20

14

*International Rectifier Corp. v. IXYS Corp.,*
15    361 F.3d 1363 (Fed. Cir. 2004) ........................................................................ 15

16    *KCJ Corp. v. Kinetic Concepts, Inc.,*
    223 F.3d 1351 (Fed. Cir. 2000) ........................................................................ 12

17

*Loral Fairchild Corp. v. Sony Corp.,*
18    181 F.3d 1313 (Fed. Cir. 1999) .......................................................................... 8

19    *Mantech Envtl. Corp v. Hudson Envtl. Servs., Inc.,*
    152 F.3d 1368 (Fed Cir. 1998) ........................................................................... 8

20

*Phillips v. AWH Corp.,*
21    415 F.3d 1303 (Fed. Cir. 2005) .................................................................... 7, 12

22    *Process Control Corp. v. Hydreclaim Corp.,*
    190 F.3d 1350 (Fed. Cir. 1999) .................................................................. 20, 24

23

*Quantum Corp. v. Rodime, PLC,*
24    65 F.3d 1577 (Fed. Cir. 1995) .......................................................................... 20

25    *Southwall Tech. Inc. v. Cardinal IG Co.,*
    54 F.3d 1570 (Fed. Cir. 1995) .......................................................................... 10

26

*Superguide Corp. v. DirecTV Enters.,*
27    358 F.3d 870 (Fed. Cir. 2004) ............................................................................ 7

28

1

2

# TABLE OF AUTHORITIES

**Page**

3

*Wang Lab., Inc. v. America Online, Inc.*,
      197 F.3d 1377 (Fed. Cir. 1999)............................................................................................. 10

4

## STATUTES

5

35 U.S.C. § 271(c) ..................................................................................................................... 7

6

## MISCELLANEOUS

7

MPEP § 2173.05(e)................................................................................................................... 23

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

Applied Biosystems' ("AB") proposed constructions define the claim limitations in precise, understandable language.  Solexa's proposed constructions, on the other hand, use complicated, deliberately imprecise, and incorrect terminology.

For example, one of the key limitations to be construed is the step of "identifying" at least one nucleotide in the target polynucleotide.  The correct construction of this is "within each cycle determining the identity of a base, as either A, T, G, or C, in the target polynucleotide."  This is what the specification teaches and what the inventor represented to the Patent Office.  Solexa offers only irrelevant and incorrect criticisms of this construction and argues instead that the claim should be construed vaguely as "obtaining information sufficient to distinguish."  This litigation-driven definition is squarely contradicted by how the inventor used the term in the specification and during prosecution.

For most of the other claim limitations, Solexa asks the Court to redraft claim language that is clear, but not what Solexa now wishes it had claimed.  Courts, however, do not redraft claim language, even if the result is an inoperable invention.  When the patentee's own claim language results in an inoperable invention, its remedy is to seek correction of its claims from the Patent Office, not the courts.

## II.     BACKGROUND OF TECHNOLOGY

AB is the world's largest maker of DNA sequencing machines.  Its machines were used by its sister company, Celera Genomics, and the Human Genome Project, to decode the human genome in 2000.  Back then, the process took hundreds of machines and years to complete.  AB's latest machine, the SOLiD$^{TM}$ DNA sequencer, which Solexa accuses of infringement, can sequence the same number of bases in a week.  Key aspects of the process are fundamentally different from, and more advanced than, the older technology claimed by Dr. Macevicz.  For example, the Macevicz '341 and '597 patents require identifying a target nucleotide within each ligation cycle, whereas SOLiD uses a two-base interrogating system that does not identify a target nucleotide until after all ligation cycles are complete and after intensive computation.

1    AB's process works as follows.  The unknown DNA to be sequenced is extracted (such as

2    from human cells) and cut into fragments.  Each target fragment is attached ("ligated") to a

3    known sequence of nucleotides, called the adapter.  The combined adapter and target fragments

4    are attached to beads, which are then deposited onto a slide that is inserted into the SOLiD

5    machine.  The sequencing is done on a massive scale: each bead contains thousands of copies of a

6    given target, and each slide contains millions of beads.

7        The machine adds a solution containing an anchoring primer, which is an oligonucleotide

8    that hybridizes to the adapter sequence attached to the bead.  The primer is designed to hybridize

9    at the end of the adapter, such that the primer does not hybridize to any base in the target

10   fragment, but does hybridize to the last base of the adapter immediately preceding the first base in

11   the target fragment (*see* Figure 1 below).  The machine then adds a mixture of labeled probes.

12   Each probe is eight nucleotides long and is designed so that only the nucleotides at the fourth and

13   fifth positions produce information about ("interrogate") the target polynucleotide.  The other six

14   bases are either randomly-generated bases or "universal bases" that bind nonspecifically to any

15   nucleotide in the target sequence.

16       Some of the probes will hybridize to the target sequence.  If a probe has hybridized

17   adjacent to the primer, a ligase enzyme will connect the probe to the primer.  The machine then

18   washes away the unligated probes.  A camera photographs the slide through a microscope to

19   record the color of the label on the ligated probe.  This gives a color related to the target

20   nucleotides at the fourth and fifth positions.  For example, in Figure 1, a probe with the sequence

21   CA at the fourth and fifth positions has bound with the target.

22

23   **Figure 1**

24

25

26

27

28

1    If one knew that this was a CA probe, one would know that the target has the

2    complementary sequence GT at the fourth and fifth positions. The color, however, does not

3    identify this as a CA probe. It would take sixteen different label colors to identify the two

4    nucleotides in the target sequence (four possible bases for the fourth position multiplied by four

5    possible bases for the fifth position; the sixteen possible sequences are shown in Figure 2 of

6    Appendix A). But because the SOLiD system uses only four different labels, each color

7    corresponds to four possible combinations. For example, the green label corresponds with the

8    combinations AC, CA, GT, or TG. (*See* Appendix A, Figure 2.)

9    Thus, when the camera records a green label, it does not reveal whether the two target

10    nucleotides being interrogated are TG, GT, CA, or AC (the complements of the green probe

11    sequences). In other words, the probe does not reveal whether the target nucleotide at position

12    four is a T, G, C, or A. The color reading narrows the possible two-nucleotide combinations from

13    sixteen possibilities to four, but does not determine which of those four combinations is correct.

14    This is different from the more conventional probes described in the Macevicz patents,

15    which identify at least one target nucleotide in each ligation cycle. As Solexa explained in its

16    recent brief opposing AB's summary judgment motion, "[i]n Dr. Macevicz's method . . . [o]nce a

17    probe hybridizes to the unknown DNA strand, the identity of the unknown nucleotide that

18    corresponds to the probe's one interrogating nucleotide is revealed." (Docket No. 76 ("Solexa's

19    Opp. to AB's MSJ") at 7 (citations to '341 patent omitted).) In order to do that, as Solexa further

20    explained in its opening claim construction brief, in the Macevicz method, "each probe is

21    identifiable by a label corresponding to the identity of one or more 'interrogating' nucleotides

22    located at the same known positions in the probe." (Docket No. 82 (Solexa's Op. Br.) at 2

23    (citations to '341 patent omitted).) Thus, the color reading identifies a specific base in the target

24    (for example, red means the target nucleotide is an A). (*See* Pai Decl.[1] Ex. A at 5:10-12; 14:30-

25    32.) Naturally then, Dr. Macevicz has claimed that his method determines the "identity" of a

26    target nucleotide within each cycle.

27    [1] "Pai Decl." refers to the Declaration of Eric C. Pai In Support of Applera Corporation –
Applied Biosystems Group's Responsive Claim Construction Brief, filed herewith.

28

1    The next step in the SOLiD method is to remove the label (along with the universal

2    bases), so that a shortened version of the probe is available for ligation to another probe in the

3    next cycle.  The cycle is run again, only the new probe now gets ligated to the previously-ligated

4    and shortened probe, and the color is recorded.  In this second cycle, the probe interrogates the

5    target at the ninth and tenth positions.  Multiple cycles are run, giving color calls for positions that

6    are offset in the target (*e.g.*, positions 4,5  9,10  14,15  19,20 and 24,25).

7    Then the primer and all of the ligated probes are stripped off.  A new primer is added,

8    which binds one nucleotide back from where the previous primer was bound.  This allows the

9    probes to interrogate one position back from the previous round of cycles.  Colors are recorded

10    for positions 3 and 4, then 8 and 9, and so on.  The primer and probes are again removed and a

11    new primer is added, this time binding two positions back from the original primer.  This process

12    of primer resets and cycles is repeated to get complete coverage.  The resulting string of color

13    recordings, however, still does not identify the target nucleotides.  For example, it is still

14    unknown whether the target nucleotide at position five is a G, T, A, or C.

15    In the sample results shown in Figure 3 of Appendix A, the first color (blue) comes from

16    the probe that interrogated positions 1 and 2.  This shows that there are four possible

17    combinations for positions 1 and 2 (AA, CC, GG, and TT).  The second color (green) comes from

18    the probe that interrogated positions 2 and 3.  This shows that there are four possible

19    combinations for positions 2 and 3 as well (AC, CA, GT, and TG).  So even though position 2,

20    for example, has been interrogated twice, this method still does not determine whether the

21    nucleotide at that position is an A, T, C, or G.  (*See* Appendix A, Figure 3.)

22    The next step is for the computers to take a known reference sequence of nucleotides (a

23    sequence that has already been determined for that organism) and convert it to a color sequence.

24    This can be done by applying the same coding in the table in Figure 2 to the known reference.

25    For example, the known combination CA in the reference is converted to green.  The computers

26    then find where the fragments align to the reference, as shown in Figure 4 of Appendix A.  At that

27    point, the colors for the fragments can be converted into base calls.  For example, the green

28    reading that has been aligned to position 2 of the reference is an AC.  (*See* Appendix A, Figure 4.)

1    One of the advantages of the SOLiD design is built-in error correction. This "two-base

2    encoding" design results in certain color combinations being "illegal" and therefore discarded as

3    invalid. Another advantage is in "snip" detection (single nucleotide polymorphism, or SNP). A

4    snip is a single nucleotide difference from what is expected (such as an A where there is normally

5    a T), which could be a mutation that confers susceptibility to disease, such as cancer. With two-

6    base encoding, true snips are indicated by two adjacent color changes, as shown in Figure 5 of

7    Appendix A. A single-color change is therefore discarded as invalid. Thus, a two-color change

8    gives the researcher greater confidence that the result is a true snip, rather than a measurement

9    error. (*See* Appendix A, Figure 5.)

10   **III.    THE ASSERTED CLAIMS**

11   Claim 1 of the '341 patent states (with the terms selected for construction in bold):

12   
13       1. A method for determining a sequence of nucleotides in a target
             polynucleotide, the method comprising the steps of:

14       (a) providing a probe-target duplex comprising an **initializing
15       oligonucleotide probe** hybridized to a target polynucleotide, said
             probe having an extendable probe terminus;

16       (b) l**igating an extension oligonucleotide probe to said
17       extendable probe terminus**, to form an extended duplex
             containing an extended oligonucleotide probe;

18       (c) **identifying**, in the extended duplex, at least one nucleotide in
             the target polynucleotide that is either (1) complementary to the
19       **just-ligated extension probe** or (2) a nucleotide residue in the
             target polynucleotide which is immediately downstream of the
20       **extended oligonucleotide probe**;

21       (d) generating an extendable probe terminus on the extended probe,
             if an extendable probe terminus is not already present, such that the
22       terminus generated is different from the terminus to which the last
             extension probe was ligated; and

23       (e) **repeating steps (b), (c) and (d) until a sequence of
24       nucleotides in the target polynucleotide is determined**.

     (Pai Decl. Ex. A at 21:36-57.) Claim 1 of the '597 patent states:

25   
26       1. A method for identifying a sequence of nucleotides in a
             polynucleotide, the method comprising the steps of:

27       (a) extending an initializing oligonucleotide along the
             polynucleotide by ligating an oligonucleotide probe thereto to form
28       an extended duplex;

(b) **identifying** one or more nucleotides of the polynucleotide; and

(c) repeating steps (a) and (b) until the sequence of nucleotides is determined.

(Pai Decl. Ex. B at 21:25-34.)  In summary, claim 1 of the '341 patent requires:

- determining the sequence of nucleotides in a target polynucleotide by adding an initializing oligonucleotide that hybridizes to the target polynucleotide;

- adding a probe that also hybridizes to the target polynucleotide and is ligated to the end of the initializing oligonucleotide;

- determining the identity of one or more of the nucleotides in the target; and

- repeating the process until the target sequence is determined.

The claim language varies from the specification in two pertinent ways.  First, it requires that the initializing oligonucleotide hybridize to the "target polynucleotide," instead of to the "binding region of known sequence," as described in the specification.  Second, it requires that when the cycle is repeated, the subsequently-added probes are ligated to the end of "said" initializing oligonucleotide, rather than to the end of the previously-ligated probe.  As discussed below, only the Patent Office, not the courts, can modify the claims.  AB intends to establish its title to the patents, and then seek amendment of the claims through a reexamination.

AB also intends to seek summary judgment of noninfringement on at least three grounds related to the terms addressed in this *Markman* hearing.[2]  They include: (1) SOLiD does not identify a target nucleotide within a cycle, (2) the initializing oligonucleotide used in SOLiD does not hybridize to the target polynucleotide, and (3) in SOLiD the probes added after the first cycle are not ligated to the initializing oligonucleotide.  The discussion of the disputed terms is organized in order of these three issues.[3]

## IV.    CLAIM CONSTRUCTION STANDARDS

Claim construction begins with an examination of the claim language, since "'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *See*

---

[2] AB intends to seek summary judgment of noninfringement of all asserted claims, including claim 1 of the '597 patent, which is similar to claim 1 of the '341 patent, and claim 1 of the '119 patent, which relates to the probe chemistry.

[3] AB reserves its rights as to disputed terms not selected for construction in this hearing.

1  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure*

2  *Water, Inc. v. Safari Water Filtration Sys. Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  Solexa

3  acknowledges this rule, but does not follow it.  Instead, it relies on the specification as though it

4  were a substitute for the claim language.  While the specification is an important guide for

5  understanding the claim language, it does not supplant the definitional function of the claims.  *Id.*

6  at 1312-13.  As the Federal Circuit has long held, "[t]he written description, however, is not a

7  substitute for, nor can it be used to rewrite, the chosen claim language.  Specifications teach.

8  Claims claim."  *Superguide Corp. v. DirecTV Enters.*, 358 F.3d 870, 875 (Fed. Cir. 2004)

9  (citation and quotations omitted); *see also Aro Mfg. v. Convertible Top Replacement Co.*, 365

10  U.S. 336, 339 (1961) ("The claims made in the patent are the sole measure of the grant . . . ."),

11  *superseded on other grounds* by 35 U.S.C. § 271(c)).  Several of Solexa's constructions also

12  violate the rule that "courts may not redraft claims, whether to make them operable or to sustain

13  their validity."  *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004)

14  (citations omitted).

15  ## V.    CLAIM CONSTRUCTION

16  ### A.    "Identifying" at least one nucleotide within each cycle

17          Claim 1 of the '341 patent requires in step (c) "identifying, in the extended duplex, at least

18  one nucleotide in the target polynucleotide . . . ."  Similarly, claim 1 of the '597 patent requires in

19  step (b) "identifying one or more nucleotides of the polynucleotide . . . ."  "Identifying" a

20  nucleotide in the target polynucleotide means "within each cycle determining the identity of a

21  base, as either A, T, G, or C, in the target polynucleotide."  This construction expresses two

22  requirements: That at least one nucleotide be identified by its chemical base, and that the

23  identification occur within each ligation cycle.  This is what the claim language requires, what the

24  specification says, and what Dr. Macevicz represented to the Patent Office.

25  ### 1.    Within each cycle

26          Solexa discusses AB's construction extensively, and takes issue with minor points that

27  need not be resolved (such as whether the identification can include more than one nucleotide per

28

1  cycle and whether the identity of a nucleotide includes analogs of A, T, C, or G). But it takes no

2  issue with the requirement that at least one target nucleotide must be identified within each cycle.

3  　　　　The claim language in both the '341 and '597 patents requires that at least one nucleotide

4  be identified within each cycle. Claim 1 of the '341 patent requires five steps, (a) through (e).

5  Step (a) requires hybridizing an initializing oligonucleotide to the target polynucleotide; step (b)

6  requires ligating a probe to the initializing oligonucleotide; step (c) requires identifying at least

7  one nucleotide in the target polynucleotide; step (d) requires (if necessary) generating an

8  extendable probe terminus on the probe; and step (e) requires repeating steps (b), (c) and (d) until

9  a sequence of nucleotides in the target polynucleotide is determined. Thus, at least one target

10 nucleotide must be identified in step (c) before the cycle is repeated in step (e). Claim 1 of the

11 '597 patent requires three steps, (a) through (c). Step (a) requires extending an initializing

12 oligonucleotide along the polynucleotide by ligation of an extension probe to the initializing

13 oligonucleotide; step (b) requires identifying one or more nucleotides of the polynucleotide; and

14 step (c) requires repeating steps (a) and (b) until the sequence of nucleotides is determined. *See,*

15 *e.g.*, *Combined Sys., Inc. v. Def. Tech. Corp. of Am.*, 350 F.3d 1207, 1211-12 (Fed. Cir. 2003)

16 (holding that "plainly as a matter of grammar" the claimed steps were required to be performed in

17 order); *Mantech Envtl. Corp v. Hudson Envtl. Servs., Inc.*, 152 F.3d 1368, 1376 (Fed Cir. 1998)

18 (holding that "sequential nature" of steps was "apparent from the plain meaning of the claim

19 language"); *Loral Fairchild Corp. v. Sony Corp.*, 181 F.3d 1313, 1321 (Fed. Cir. 1999) (holding

20 that "literal language of the claim" required that steps be performed in sequence).[4]

21

22

23  　　　　[4] During prosecution of the '341 Patent, Macevicz referred to the steps as being performed
     in sequence. (Pai Decl. Ex. D at 6 ("In particular, claim 1 has been amended to include the step
24   of providing a probe-target duplex *preliminary to the ligation step* ... and to add step (d) for
     generating an extendable probe terminus on the extended probe, if necessary, *prior to the next*
25   *ligation cycle*.") (emphasis added).) A similar statement was made during the prosecution of the
     '597 Patent. (Pai Decl. Ex. I at 2 (The reference does not teach "repeating steps (a) and (b)
26   [identifying one or more nucleotides of the polynucleotide] until the sequence of nucleotides is
     determined", as recited in the present claim. Because the prior art method identifies only a single
27   nucleotide, not a sequence of nucleotides, there would be no need for such repetition.)

28

1    The specification describes the invention exactly this way.[5]  It says "*During each cycle*,

2    the identity of one or more nucleotides in the template is determined by a label on, or associated

3    with, a successfully ligated oligonucleotide probe."  (Pai Decl. Ex. A at 3:7-10 (emphasis added).)

4    Solexa relies on this same sentence for construing "identifying," but says nothing about the

5    requirement of identifying a nucleotide during each cycle.  (Solexa's Op. Br. at 17.)  The

6    drawings also show the claimed cycle of ligating a probe, identifying a nucleotide, and then

7    repeating the process.  (Pai Decl. Ex. A at Figs. 2, 3A, and 3B.)

8        During prosecution, Macevicz argued that his claims should be allowed over the prior art

9    because his invention requires identifying one or more target nucleotides within each cycle.  In

10   the first Office Action, the Examiner rejected claim 1 of the '341 patent as indefinite in the

11   "identifying" step and as anticipated by U.S. Patent No. 5,403,708 ("Brennan").  (Pai Decl. Ex. C

12   at 3, 5-6.)  Macevicz overcame the prior art rejection by arguing that Brennan does not disclose

13   claim 1's requirement of identifying one or more target nucleotides within each cycle:

> In no instance does Brennan et al. suggest extending an initiating
> oligonucleotide probe by one oligonucleotide probe at a time, and
> *identifying one or more target nucleotides in between each
> extension/ligation step*.  Rather, Brennan teaches obtaining
> sequence information only *after* all ligations have been completed.

17   (Pai Decl. Ex. D at 10 (emphasis added).)

18       Macevicz again emphasized to the Examiner that his invention is different because it

19   requires "iterative cycles of single-probe ligation and target nucleotide identification:"

> Brennan et al. also teaches preparing long chains of labeled
> oligonucleotides which are digested by exonuclease to derive
> sequence information.  Nowhere does this reference suggest
> *iterative cycles of single-probe ligation and target nucleotide
> identification* in a probe-target duplex, in accordance with the
> present invention.

23   (*Id.* at 11 (emphasis added).)  The Examiner accepted Macevicz's distinction and allowed the

24   claims, noting the requirement for identifying a nucleotide within each cycle in his explanation of

25   why he was allowing the claim:

---

27   [5] The specifications of all three of the asserted patents are essentially the same.  The '119
     patent is a divisional application claiming priority to the '341 patent.  The '597 patent is a
28   continuation application claiming priority to both the '341 and the '119 patents.

> The claims distinguish over the prior art due to two limitations recited in the claimed method of determining a nucleic acid sequence: (1) The initiating oligonucleotide probe or primer is extended by one extension oligonucleotide probe at a time, and *the identifying of one or more target nucleotide(s) in between each extension/ligation step*; and (2) the extension oligonucleotide probes are regenerated to an extendable probe to which the next extension oligonucleotide probe is ligated to repeat the steps into the downstream region of the nucleic acid.

(Pai Decl. Ex. E at 3 (emphasis added).)

Macevicz also overcame the rejection that claim 1 was indefinite as to the "identifying" step by arguing that "claim 1 now specifies that the target nucleotide(s) *identified in each ligation cycle* are either complementary to the just-ligated extension probe or (2) are immediately adjacent to, and downstream of, the extended oligonucleotide probe." (Pai Decl. Ex. D at 7-8 (emphasis added).)[6]

Thus, Macevicz obtained his claims after representing they required identifying one or more target nucleotides within each cycle. His statements were not casual comments—they were representations as to the scope of the claims for the purpose of getting the claims issued. The representations succeeded, and Macevicz and Solexa are bound by them. The prosecution history limits the interpretation of a claim when the applicant "relinquished this potential claim construction in an amendment to the claim or in an argument to overcome or distinguish a reference." *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 978-79 (Fed. Cir. 1999); *see also Southwall Tech. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.").

---

[6] Macevicz made similar statements during prosecution of the subsequent '597 Patent. "In accordance with the claim, the step of ligating an oligonucleotide probe to an initializing oligonucleotide alternates with the step of identifying one or more nucleotides in the polynucleotide template. These alternating steps are repeated until the sequence of nucleotides in the polynucleotide is determined." (Pai Decl. Ex. I at 2.) Moreover, the statements made during prosecution of the '341 patent are part of the prosecution history of the '597 patent, because it was filed as a continuation of the '119 patent, which in turn was filed as a continuation of the '341 patent. *Wang Lab., Inc. v. America Online, Inc*., 197 F.3d 1377, 1384 (Fed. Cir. 1999) (holding that argument to distinguish a reference in the prosecution history of a parent application applies to "common subject matter" in a continuation-in-part application).

2.      **Determining the identity of a nucleotide as either A, T, G, or C**

The claims of the '341 and '597 patents use the term "identify" in its ordinary sense in DNA sequencing, which is to identify a target nucleotide by its chemical base (A, T, C, or G). The specification uses the term in this ordinary sense:

> In preferred embodiments in which a single nucleotide in the template is identified in each extension cycle, perfect base pairing is only required for identifying that particular nucleotide. . . . Likewise, in embodiments that rely on polymerase extension for *base identification*, the probe primarily serves as a spacer, so specific hybridization to the template is not critical, although it is desirable.

(Pai Decl. Ex. A at 6:16-33 (emphasis added).)

The specification also explains that the purpose of the labels on the probes is to reveal the identity of the target nucleotide as one of the four possibilities, A, T, C, or G: "In the above embodiment, the oligonucleotide probes are labeled so that the identity of the nucleotide abutting the extended duplex can be determined from the label." (*Id.* at 5:10-12; *see also id.* at 9:47-49.) The preferred embodiment uses four different colored labels so that "the identity of the one or more terminal nucleotides would be correlated to a distinct color." (*Id.* at 14:30-31.) This allows "a one-to-one correspondence between each of four spectrally resolvable fluorescent dyes and the four possible terminal nucleotides on a target polynucleotide." (*Id.* at 14:34-36.) The four possible nucleotides are A, T, C, and G. (*Id.* at 1:37-43.)

Solexa itself uses the term "identifying a nucleotide" to mean determining its chemical base. In its opposition to AB's motion for summary judgment on ownership, Solexa stated that the object of DNA sequencing is to identify the order of the As, Ts, Cs, and Gs in the target: "DNA is comprised of building blocks called 'nucleotides.' There are only four, which conventionally referred to by the letters C, G, T and A. All of the functions of a gene are determined by the order of these nucleotides. Identifying this order—or sequence—is the object of DNA sequencing." (Solexa's Opp. to AB's MSJ at 5 (citations omitted).)

Solexa also said that Macevicz's invention "reveals the identity" of a target nucleotide in each cycle:

1

2

3

4

> Once a probe hybridizes to the unknown DNA strand, the *identity* of the unknown nucleotide that corresponds to the probe's one interrogating nucleotide is revealed.… For example, if the fifth nucleotide in the probe is the interrogating nucleotide, then the process will *reveal the identity* of every fifth nucleotide throughout the entire length of the unknown fragment.

(*Id.* at 7 (citations omitted and emphasis added).)

5

6

  In describing its own DNA sequencing machine, Solexa uses the phrase "record the identity of the first base" to mean determining the chemical base:  "After laser excitation, capture the image of emitted fluorescence from each cluster on the flow cell.  *Record the identity of the first base* for each cluster."  (Pai Decl. Ex. F (showing bases as A, T, C, and G).)

7

8

9

  The dictionary supports the plain meaning.  *See Phillips*, 415 F.3d at 1314, 1317-18.  The definition of "identify" is "to determine or establish the identity of."  (*See* Pai Decl. Ex. J.)  The only way described in the specification "to determine or establish the identity of" a nucleotide in a chain of target nucleotides is to determine its chemical base.

10

11

12

13

  Solexa argues that AB's construction is incorrect because it requires identifying "a" base, which Solexa interprets as "a single" base.  AB proposed no such thing; nor would it, since the claim language requires "identifying, in the extended duplex, *at least one* nucleotide in the target polynucleotide."  AB used the term "a" in its patent law sense of "one or more."  *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000).  Nevertheless, if the Court prefers to state this expressly, AB has no objection to modifying its construction to "within each cycle determining the identity of <u>at least one</u> base, as either A, T, G, or C, in the target polynucleotide."

14

15

16

17

18

19

20

  Solexa also argues that construing the claim as meaning identifying a target nucleotide by its chemical base would exclude a method that identifies only an "analog" of a base.  This has no relevance to this case, so it need not be considered.  *E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1219 (Fed. Cir. 2007).  Solexa cites a statement in the specification that one could use RNA probes instead of DNA probes.  (Pai Decl. Ex. A at 4:4-14 (the oligonucleotides can include nucleosides (a base linked to a sugar) or analogs thereof, such as "deoxyribonucleosides [DNA], ribonucleosides [RNA], and the like").)  This suggests that one could use RNA probes to sequence RNA, or perhaps DNA.  But it does not change the meaning of "identifying" from

21

22

23

24

25

26

27

28

1   determining the chemical identity of a target nucleotide, whether the target is DNA or RNA,

2   except that in RNA, T (thymine) is replaced with U (uracil).  In any event, as the documents

3   provided to Solexa show, SOLiD uses DNA probes, so there is no reason to expand the

4   construction to include DNA or RNA probes.  That would add unnecessary complication without

5   resolving any issues in the case.  If it were to become an issue, the Court could add to the

6   construction "within each cycle determining the identity of a base, as either A, T, G, C or U, in

7   the target polynucleotide."  But since that issue has not arisen, and Solexa has not explained how

8   it could, the additional language is unnecessary.

9                   **3.      Solexa's proposed construction**

10       Solexa's proposed construction, "obtaining information sufficient to distinguish," appears

11   to be deliberately vague as to precisely what the claim requires.  First, it omits the requirement of

12   identifying a target nucleotide within each cycle.  Since that is required by claim 1 of the '341

13   patent and claim 1 of the '597 patent, and Solexa does not contend otherwise, this requirement

14   should be spelled out.  There is no reason to exclude from the Court's construction simple,

15   express terms explaining what is required by the claim, particularly when the requirement relates

16   to a noninfringement issue and was emphasized by the inventor in getting the claim allowed.

17       Second, Solexa's proposed construction is vague as to what it means to identify a target

18   nucleotide.  The only way taught in the specification to identify a target nucleotide is by its

19   chemical base.  Solexa, however, argues that the following quote from the specification regarding

20   the meaning of "sequencing" also provides a special definition of "identifying":

21              As used herein "sequence determination," "determining a
                nucleotide sequence," "sequencing," and like terms, in reference to
22              polynucleotides includes determination of partial as well as full
                sequence information of the polynucleotide.  That is, the term
23              includes sequence comparisons, fingerprinting, and like levels of
                information about a target polynucleotide, as well as the *express*
24              *identification and ordering of each nucleoside* of the test
                polynucleotide.
25
     (Pai Decl. Ex. A at 3:53-60 (emphasis added).)
26
         This quote shows that "identifying" is a more specific and narrow term than "sequencing."
27
     Macevicz purports to use "sequencing" and "like terms" to include determination of partial as
28

1   well as full sequence information.  But "identifying" is *not* one of those "like terms."  It cannot be

2   used interchangeably with the broader term "sequencing."  The second sentence enumerates

3   several specific types of procedures that fall under the concept of sequencing.  This list of what

4   sequencing "includes" demonstrates that the "express *identification* and ordering of each

5   nucleoside of the test polynucleotide" is a subset of "sequencing."  As a matter of logic and

6   grammar, this "express identification" is a narrower concept than "sequencing"—they cannot

7   mean the same thing.

8        Solexa's argument for conflating these terms takes out of context the two isolated phrases

9   it quotes in boldface: "like terms" and "as well as the express identification."  (Solexa's Op. Br. at

10  19.)  The implied premise is that "express identification" is one of the "like terms."  But this

11  premise is false.  The second sentence makes clear that "the express identification and ordering of

12  each nucleoside of the test polynucleotide" is a more specific concept and term.  The term also

13  requires doing nothing less than what it says—the express identification and ordering of each

14  nucleotide in the test polynucleotide does not mean partially identifying a nucleotide.

15       Solexa's interpretation of "identifying" a nucleotide is at odds with what it said less than a

16  month ago.  Solexa said in its opposition to AB's motion for summary judgment on ownership

17  that "[o]nce a probe hybridizes to the unknown DNA strand, the *identity* of the unknown

18  nucleotide that corresponds to the probe's one interrogating nucleotide is revealed. . . .  For

19  example, if the fifth nucleotide in the probe is the interrogating nucleotide, then the process will

20  *reveal the identity* of every fifth nucleotide throughout the entire length of the unknown

21  fragment."  (Solexa's Opp. to AB's MSJ at 7 (citations to '341 patent omitted and emphasis

22  added).)  The specification uses the term "identifying" the same way Solexa did—as identifying a

23  target nucleotide by its chemical base.

24       Solexa implies that the phrase "identifying a target nucleotide" should include gathering

25  some unspecified degree of information about a particular target nucleotide, without actually

26  identifying that nucleotide as an A, T, C, or G.  It bases this on the phrase "determination of

27  partial as well as full sequence information" in the quote above regarding the meaning of

28  "sequencing."  However, nowhere in the quoted passage or anywhere in the specification does

1   Macevicz use Solexa's made-up phrase "obtaining information sufficient to distinguish," let alone

2   use it as a special definition for determining the identity of a target nucleotide.  And nowhere in

3   the specification does Macevicz teach a method of gathering some lesser degree of information

4   about a target nucleotide and somehow transforming that information into the target's chemical

5   identity, let alone doing so other than within a cycle.

6          Construing "identifying" a nucleotide to include "partially identifying" a nucleotide would

7   conflict with the Federal Circuit's admonition against "softening" claim language.  In

8   *International Rectifier*, the district court held that given the realities of semiconductor

9   manufacturing, a claim to a "cellular polygonal region" should mean "generally but not perfectly

10  polygonal."  *International Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1370 (Fed. Cir. 2004).

11  The Federal Circuit acknowledged that "one of ordinary skill in the art would understand from the

12  written description that the diffusion resulting from the doping process will naturally cause some

13  blurring of the corners and sides of the polygonal regions."  *Id.* at 1371.  Nevertheless, it reversed:

> 14  There is nothing, however, to suggest that the recognition of these
> 15  diffusion effects by those skilled in the art warrants the re-definition
>     of the term polygon to mean anything other than "a closed plane
>     figure bounded by straight lines". . . .  The patentee . . . could have
> 16  claimed the regions more broadly but chose to use the word
>     "polygonal" without modification or qualification.  The district
> 17  court was not free to attribute new meaning to the term or to excuse
>     the patentee from the consequences of its own word choice.

18  *Id.*

19          There is no suggestion in Macevicz's specification that identifying a target nucleotide

20  means partially identifying a target nucleotide.  Moreover, Macevicz chose to claim "identifying

21  … at least one nucleotide in the target polynucleotide" within each cycle.  Just as in *International

22  Rectifier*, "identifying" a target nucleotide does not mean "partially but not completely"

23  identifying a target nucleotide or "obtaining information about" the identity of a target nucleotide.

24  *Id.* at 1370.  It means actually identifying a nucleotide within each cycle.  If Macevicz had wanted

25  to claim "[at least partially] identifying … at least one nucleotide in the target polynucleotide," he

26  could have said so, and could have added support for such a claim to the specification.  Instead,

27

28

1    he chose the word "identify" "without modification or qualification." *Id.* at 1372. He and Solexa

2    are bound by that choice.

3                        **4.    Relevance to noninfringement**

4        Claim 1 of the '341 patent and claim 1 of the '597 patent both require determining the

5    identity of at least one target nucleotide within each cycle. AB's SOLiD does not determine the

6    identity of a nucleotide within a cycle. Instead, it gathers information that narrows the

7    possibilities of two adjacent nucleotides from sixteen to four. But it does not identify the

8    chemical base of either nucleotide. Either one can be an A, T, C or G. The identity of either

9    nucleotide is not determined until all of the cycles are run and intensive computation is performed

10   to align the reads to a known reference.

11                    **B.    "Repeating steps (b), (c) and (d) until a sequence of nucleotides in the
                         target polynucleotide is determined"**

12       Step (e) of Claim 1 of the '341 patent requires "repeating steps (b), (c) and (d) until a

13   sequence of nucleotides in the target polynucleotide is determined." This phrase means

14   "completing, and then performing again, exactly what is described in steps (b), (c), and (d) until

15   two or more nucleotides in the unknown sequence that is targeted for analysis are identified."

16       This construction expresses two key limitations. First, as discussed above, it confirms that

17   after at least one target nucleotide is identified within the cycle, the cycle must be repeated.

18   Second, it defines "target polynucleotide" as "the unknown sequence that is targeted for

19   analysis," and thus distinguishes the "target polynucleotide" from the "template" and "binding

20   region." Each of these terms has its own distinct meaning, and those meanings are used

21   consistently in the claims, specification, drawings, and prosecution history. They are not

22   interchangeable.

23       The preamble of claim 1 of the '341 patent states that the purpose of the claimed invention

24   is to "determin[e] a sequence of nucleotides in a target polynucleotide . . . ." (Pai Decl. Ex. A at

25   21:36-37.) The specification distinguishes the target polynucleotide (of unknown sequence) from

26   the binding region (of known sequence), and from the template, which refers to the combination

27   of the unknown target polynucleotide and the known binding region. "Preferably, a *target*

28

1  *polynucleotide* is conjugated to a *binding region* to form a *template*, and the template is attached

2  to a solid phase support . . . ." (*Id.* at 8:8-10 (emphasis added).) In explaining Figure 1 below,

3  the specification states "[t]emplate (20) comprising *a polynucleotide (50) of unknown sequence*

4  and binding region (40) is attached to solid phase support (10)."



12  (*Id.* at 4:46-48 (emphasis added); *id.* Fig. 1.) Solexa shows this figure at page 9 of its opening

13  brief, but conveniently redacts out 40 (the binding region of known sequence) and 50 (the

14  polynucleotide of unknown sequence).

15      These statements confirm that the target polynucleotide is "a polynucleotide of unknown

16  sequence." The specification also states that "[b]inding region has a known sequence . . . ." (*Id.*

17  at 5:13-14.) These statements demonstrate three defining characteristics of the target

18  polynucleotide. First, it is an unknown sequence. Second, it is distinct from and *does not contain*

19  *a binding region*. And third, it is *not the same as a template*—the terms are not interchangeable.

20      The prosecution history confirms that Macevicz used the term "target polynucleotide" to

21  refer to the sequence that is targeted for analysis. "The present invention, as embodied in claim 1,

22  is directed to a method for determining a sequence of nucleotides in a target polynucleotide."

23  (Pai Decl. Ex. D at 8.)

### 1.    Solexa's proposed construction

25      Solexa's proposed construction of step (e) is "repeating steps (b), (c), and (d) until partial

26  or complete sequence information of the target polynucleotide is obtained, including, for

27  example, sequence comparisons, fingerprinting, and like levels of information, as well as the

28  express identification and ordering of nucleotides."

Solexa's construction fails to capture the requirement that at least one target nucleotide is identified within each cycle. The specification states: "The steps can be repeated (208) in successive cycles. In one aspect of this embodiment, a single initializing oligonucleotide may be employed such that only one nucleotide is identified in each sequencing cycle." (Pai Decl. Ex. A. at 9:46-49.) Since the steps of Claim 1 are to be performed in order, at least one target nucleotide must be identified in step (c) before the process is repeated in step (e). *See* Section V.A.1, *supra.* Solexa ignores the requirements of the claim language and improperly packs its construction with all types of sequence determination, such as fingerprinting,[7] that are logically incompatible with the previous steps that require ligating a probe to a primer and identifying a target nucleotide within each cycle. This is a transparent attempt to expand the scope of Claim 1 beyond its express limitations.

Solexa's construction also does not give a definition to the term "target polynucleotide." It just repeats the claim language. Solexa does construe "target polynucleotide" in the preamble to Claim 1 as "a polynucleotide that contains the nucleotide sequence information to be obtained." (Docket No. 78 ("Joint Claim Const. Stmt."), at 6.) This construction, however, does not distinguish the "target polynucleotide" from the "binding region" and the "template."

It is true that the target polynucleotide "contains the nucleotide sequence information to be obtained." In other words, it is the unknown sequence that is targeted for analysis. However, Solexa's construction fails to make clear that the target polynucleotide *does not contain* the binding region of known sequence. It also fails to make clear that the target polynucleotide is not the same as the template. Since the template "contains" the target polynucleotide *plus* the binding region, the template also necessarily "contains the nucleotide sequence information to be obtained." Solexa's construction of target polynucleotide therefore does not distinguish the target polynucleotide from the template. Solexa cites nothing in the specification saying that the target

---

[7] DNA fingerprinting is a means of distinguishing between DNA samples from individuals of the same species. DNA samples are fragmented by using restriction enzymes to cleave the DNA samples at particular sequences that occur throughout the genome. The sizes of the fragments that result from cleavage will differ enough such that the samples can be distinguished if they came from different individuals. (*See* Pai Decl. Exs. G & H.)

1  and the template are the same.  Nor could it, since the specification repeatedly says that the target

2  is only a subset of the template.  They are not the same.

3  ## 2.  Relevance to noninfringement

4  The term "target polynucleotide" is used consistently throughout claim 1.  As discussed

5  below, step (a) requires that the initializing oligonucleotide hybridize to the target

6  polynucleotide—not to the binding region of known sequence as Solexa proposes.  In AB's

7  SOLiD system, the primer hybridizes to the adapter, which is a "binding region" of known

8  sequence.  It therefore does not infringe.

9  ## C.  Courts should not redraft claims

10  The construction of the remaining terms turns on whether they should be construed as

11  written or as Solexa wishes it had written them.  The Federal Circuit "repeatedly and consistently

12  has recognized that courts may not redraft claims, whether to make them operable or to sustain

13  their validity." *Chef America,* 358 F.3d at 1374.  Not even a "nonsensical result" or the fact that

14  "otherwise the patented process could not perform the function the patentees intended" will

15  permit a court to "rewrite unambiguous patent claim language." *Id.* at 1374-75.

16  In *Chef America*, the specification disclosed a process for producing "dough products

17  suitable for freezing and finish cooking to a light, flaky, crispy texture." *Id.* at 1373 (citation

18  omitted).  The claim language to be construed was the step of "heating the resulting batter-coated

19  dough to a temperature in the range of about 400 degrees F. to 850 degrees F. for a period of time

20  ranging from about 10 seconds to 5 minutes . . . ." *Id.* at 1372.  The dispute was whether this

21  meant that the dough had to be heated *to* the specified temperature, or *at* this temperature

22  (referring to the temperature of the oven).  *Id.* at 1371.

23  The Federal Circuit held that "[a]s written, the claim unambiguously requires that the

24  dough be heated *to* a temperature range of 400 degrees F. to 850 degrees F." *Id.* at 1374

25  (emphasis added).  It recognized that this construction would result in the dough being "burned to

26  a crisp" that "resembles a charcoal briquet." *Id.* at 1373.  Nonetheless, the court rejected the

27  patentee's argument that "to" should be construed to mean "at" so that "the patented process can

28  accomplish its stated objective." *Id.*  The court found "nothing in the claims, the specification, or

1    the prosecution history that indicates that the patentees here defined 'to' to mean 'at.'"  *Id.* at

2    1374.

3       Even "a nonsensical result does not require the court to redraft the claims" of a patent.

4    *Process Control Corp. v. Hydreclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999); *see also*

5    *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1584 (Fed. Cir. 1995) ("[I]t is well settled that no

6    matter how great the temptations of fairness or policy making, courts do not redraft claims.").

7    Courts do not redraft claims to avoid even a nonsensical result because the purpose of claim

8    language is to provide the public with notice of the scope of the claims.  This public notice

9    function "prevent[s] unduly burdening competitors who must determine the scope of the claimed

10   invention based on an erroneously drafted claim."  *Process Control*, 190 F.3d at 1357; *see also*

11   *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 951 (Fed. Cir. 1993).

12      Solexa acknowledges this rule in its opening brief: "Because the patentee is required to

13   'define precisely what his invention is,' it is 'unjust to the public, as well as an evasion of the law,

14   to construe it in a manner different from the plain import of its terms.'"  (Solexa Op. Br. at 3

15   (citations omitted).)  The rule is designed to prevent precisely the type of corrective construction

16   proposed by Solexa, where the patentee seeks to rewrite unambiguous claim language to achieve

17   the claims it now wishes it had for purposes of an infringement lawsuit against a competitor.  If

18   Solexa had wanted to redraft the claims to be consistent with the constructions it favors in this

19   litigation, it should have done so through proceedings before the Patent Office.  Solexa took no

20   such action.

21       **D.**  **"Initializing oligonucleotide probe"**

22         **1.**  **The initializing oligonucleotide probe must be "hybridized to a target polynucleotide"**

23

24      Claim 1 of the '341 patent expressly requires that the "initializing oligonucleotide probe"

25   be hybridized to a "target polynucleotide," rather than to the binding region of "known sequence"

26   as Solexa proposes.

27      Step (a) of claim 1 requires:  "providing a probe-target duplex comprising an *initializing*

28   *oligonucleotide probe* hybridized to a *target polynucleotide*, said probe having an extendable

1    probe terminus."[8]  The correct construction of "initializing oligonucleotide probe" is "the

2    oligonucleotide to which the first extension oligonucleotide probe will be ligated."

3         The claim language requires that the "initializing oligonucleotide probe" be "hybridized to

4    a target polynucleotide."  As discussed above, the "target polynucleotide" is the region targeted

5    for analysis, not the "binding region" of known sequence.  Therefore, step (a) requires that the

6    initializing oligonucleotide probe be hybridized to the sequence that is targeted for analysis.

7    Solexa acknowledges this requirement in its opening brief: "According to step (a) of claim 1 of

8    the '341 patent, an 'initializing oligonucleotide probe' with an extendable probe terminus is

9    *hybridized to a target polynucleotide* to form a probe-target duplex."  (Solexa Op. Br. at 7

10   (emphasis added).)  As a matter of law, the "initializing oligonucleotide probe" cannot be defined

11   in a way that contradicts the express claim requirement that it be "hybridized to the target

12   polynucleotide."

13        The claim language presents a *Chef America* problem for Solexa.  The claim

14   unambiguously requires that the initializing oligonucleotide be hybridized to the target

15   polynucleotide, whereas the specification describes it as being hybridized to the binding region of

16   known sequence.  To avoid this problem, Solexa would need to redraft the claim language to read

17   either "an initializing oligonucleotide probe hybridized to a binding region" or "an initializing

18   oligonucleotide probe hybridized to a template."  Just as the patentee in *Chef America* needed the

19   Federal Circuit to construe "to" to mean "at," Solexa needs the Court to construe "target

20   polynucleotide" to mean "binding region" or "template."

21        The specification, however, expressly distinguishes "target polynucleotide," "binding

22   region," and "template."  The terms cannot be used interchangeably or synonymously.  *See*

23   Section V.B, *supra*.

24        Moreover, the prosecution history shows that when Macevicz had the opportunity to

25   amend his word choice, he consciously selected the term "target polynucleotide" rather than

26

27        [8] Both parties agree that the term "initializing oligonucleotide primer" in claim 11 of the
     '341 patent has the same meaning as the term "initializing oligonucleotide probe" in claim 1 of
28   the '341 patent.  (Joint Claim Const Stmt. at 9.)

"binding region" or "template." The original version of Claim 1 referred to "extending an initializing oligonucleotide probe along the *polynucleotide*...." (Pai Decl. Ex. D at 2 (emphasis added).) In amending the claim in response to the Examiner's indefiniteness rejection, Macevicz could have chosen any of the three terms he used and explained in the specification—"template," "binding region," or "target polynucleotide," and he chose "target polynucleotide." (*Id.* at 8.) In *Chef America*, the Federal Circuit noted that the patentees made a similar choice "in formulating the amendment to the claims to specify the temperature limitation" in their patent. *Chef America*, 358 F.3d at 1375 ("It thus appears that the patentees consciously selected 'to' rather than 'at.'").

### 2.    Solexa's proposed construction

Aside from this dispute over whether the "initializing oligonucleotide probe" is hybridized to the "target polynucleotide" or a "known sequence," the remaining differences between AB and Solexa's positions are relatively minor. In effect, both parties acknowledge that the "initializing oligonucleotide probe" is a primer. However, AB's construction should be adopted because it more simply and straightforwardly states what is required by the plain language of the claims. AB's construction is logically required by step (b) of Claim 1, in which the first extension oligonucleotide probe will be ligated to the initializing oligonucleotide probe.[9] (Pai Decl. Ex. A at 21:42-44.) Solexa's construction, which states that the initializing oligonucleotide probe "establishes registration for extension," brings in the additional undefined concept of "registration." Introducing this potentially ambiguous term only risks unnecessary confusion. *See E-Pass*, 473 F.3d at 1219.

### 3.    Relevance to noninfringement

The claim language is unambiguous that in step (a) the initializing oligonucleotide probe must be hybridized to the target polynucleotide, not the binding region of known sequence. In

---

[9] In criticizing AB's proposed construction, Solexa argues that the first extension oligonucleotide probe will be ligated to both the primer and the second extension oligonucleotide probe. (Solexa's Op. Br. at 9.) This is incorrect. As written, the claim language requires the process to ligate each subsequent oligonucleotide extension probe (including the second probe) to the primer. None of the extension probes will be ligated to each other. *See* Sections V.E-F, *infra*.

SOLiD, the primer is hybridized only to the adapter, which is a binding region of known sequence. Therefore, it does not infringe.

### E.    Ligating an extension oligonucleotide probe to "said" extendable probe terminus (Step (b))

AB bases its construction of step (b) in claim 1 of the '341 patent on its express relationship to step (a). Step (a) requires an "*initializing* oligonucleotide probe hybridized to a target polynucleotide, said probe having an extendable probe terminus." The very next phrase is step (b), which requires "ligating an extension oligonucleotide probe to *said* extendable probe terminus." Thus, the claim language requires that the "extension oligonucleotide probe" be ligated to "*said* extendable probe terminus" on the initializing oligonucleotide, which is what is shown in figures 2, 3A, 3B and 4 of the patents. When a claim refers to "said" preceding element, it is referring back to that particular element. *See Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003) ("When the body of the claim refers to '*said* vehicle master clutch,' and '*said* drive train,' it is referring back to the *particular* clutch and the *particular* drive train previously described in the preamble.") (emphasis added); *see also* Pai Decl. Ex. J ("said" means "named or mentioned before"); MPEP § 2173.05(e) (claim is indefinite for lack of antecedent basis where it refers to, e.g., "said" or "the" "lever" without an earlier recitation of such "lever," or if multiple "levers" were recited earlier in the claim). Therefore, "ligating an extension oligonucleotide probe to *said* extendable probe terminus" means "forming a covalent bond between a short oligonucleotide probe and the extendable probe terminus of the initializing oligonucleotide of step 1(a)."

Solexa's proposed construction—"forming a covalent bond between an extension oligonucleotide probe and the extendable probe terminus of *either* an initializing oligonucleotide *or* an extended oligonucleotide probe while hybridized to a target polynucleotide" — rewrites the claim from "said" extendable probe terminus to "an" extendable probe terminus. In other words, Solexa wants this term to refer not just to ligating to the extendable probe terminus of the initializing oligonucleotide, as the claim language requires, but to an extendable probe terminus

1    on "an extended oligonucleotide probe" as well.  Again, as in *Chef America,* the claim as written

2    does not cover what Solexa wishes it did, so Solexa asks the Court to rewrite the claim.

3    Solexa argues that its construction is necessary to preserve the claim's operability.

4    (Solexa's Op. Br. at 13.)  But courts cannot redraft claim terms, even if the resulting construction

5    is nonsensical or inoperable.  *Chef America*, 358 F.3d at 1374; *Process Control*, 190 F.3d at 1357

6    ("As a result of our claim construction, clause [d] does not make 'sense' as HydReclaim itself

7    realizes and concedes.  What HydReclaim fails to realize is that such a nonsensical result does not

8    require the court to redraft the claims of the [patent].").  The specification cannot be used "to

9    circumvent the plain language of the claim and the clear definition of the disputed claim

10   language." *Process Control*, 190 F.3d at 1357.

11   The same issue arises in claim 1 of the '597 Patent.  Step (a) claims "extending an

12   initializing oligonucleotide along the polynucleotide by ligating an oligonucleotide *thereto* to

13   form an extended duplex."  (Pai Decl. Ex. B at 21:28-30 (emphasis added).)  "Thereto" refers

14   only to the "*initializing* oligonucleotide."  (*Id.*)  Step (c) of the method requires "repeating steps

15   (a) and (b) . . . ," which means that in the repeated step, the probes are ligated to the "initializing

16   oligonucleotide."

17   **F.    "Extended Oligonucleotide Probe" and "Just-Ligated Extension Probe"**

18   The dispute regarding the two remaining terms is a repeat of the requirement discussed

19   above that the extension oligonucleotide must be ligated to the initializing oligonucleotide.  Claim

20   1 of the '341 Patent requires, in step (b) "ligating an extension oligonucleotide probe to said

21   extendable probe terminus, to form an extended duplex containing an *extended oligonucleotide*

22   *probe*."  Step (c) then refers to "identifying, in the extended duplex, at least one nucleotide in the

23   target polynucleotide that is either (1) complementary to the *just-ligated extension probe* . . . ."

24   The construction of "the extended oligonucleotide probe" is "the product of the ligation of

25   the extension oligonucleotide probe of step l(b) to the initializing oligonucleotide of step 1(a)."

26   Step (b) requires that the "extended oligonucleotide probe" be formed by "ligating an extension

27   oligonucleotide probe to said extendable probe terminus."  As discussed above, this means that

28

1    the "extended oligonucleotide probe" is ligated to the "initializing oligonucleotide" of step (a).

2    *See* Section V.E, *supra*.

3         Similarly, the "just-ligated extension probe" means "the extension oligonucleotide probe

4    of step 1 (b) that was ligated within that cycle to the initializing oligonucleotide of step 1 (a)."

5    The parties agree that this refers to the probe that was just ligated within the current cycle. The

6    dispute is over what it is ligated to. The "just-ligated extension probe" refers to the probe that

7    was just ligated in the step (b) to the initializing oligonucleotide of step (a). As discussed above,

8    the extension probe ligated in step (b) must be ligated to "said extendable probe terminus," which

9    refers to the extendable probe terminus of the "initializing oligonucleotide probe." *See* Section

10   V.E, *supra*.

11        Solexa again asks the court to rewrite the claim language to preserve operability in the

12   same manner described above in Section V.E. According to Solexa, an "extended

13   oligonucleotide probe" is "an initializing oligonucleotide probe *effectively extended by one or*

14   *more nucleotides*;" and, a "just-ligated extension probe" is "the extension oligonucleotide probe

15   ligated to *either* the initializing oligonucleotide probe *or* an extended oligonucleotide probe in the

16   present cycle of the method." But the correct construction of both terms flows from step (b)'s

17   "*said* extendable probe terminus." As explained above, this refers *only* to the extendable probe

18   terminus of the initializing oligonucleotide. Solexa's invitation to rewrite the claim language

19   should be rejected.

20

21   Dated: January 18, 2008                    MORRISON & FOERSTER LLP

22

23                                              By:    /s/ Steven E. Comer

24                                                     Steven E. Comer

25                                              Attorneys for Plaintiff
                                                APPLERA CORPORATION –
26                                              APPLIED BIOSYSTEMS GROUP

27

28

**Appendix A**

**Figure 2**

| Label | Probe Sequence |
|-------|----------------|
| Blue | nnn AA zzz |
| | nnn CC zzz |
| | nnn GG zzz |
| | nnn TT zzz |
| Green | nnn AC zzz |
| | nnn CA zzz |
| | nnn GT zzz |
| | nnn TG zzz |
| Yellow | nnn AG zzz |
| | nnn GA zzz |
| | nnn CT zzz |
| | nnn TC zzz |
| Red | nnn AT zzz |
| | nnn TA zzz |
| | nnn CG zzz |
| | nnn GC zzz |
| | n = random bases<br>z = universal bases |

**Figure 3**



```
    1 2   2 3   3 4   4 5   5 6   6 7   7 8   8 9   9 10
    A A   A C   A C   A A   A G   A T   A A   A G   A G
    C C   C A   C A   C C   C T   C G   C C   C T   C T
    G G   G T   G T   G G   G A   G C   G G   G A   G A
    T T   T G   T G   T T   T C   T A   T T   T C   T C
```

**Figure 4**



Fragments

T A C G G T A A C T G C C A G C A G C A C A T A C A C G C A A

**Reference**

**Figure 5**

