

KEVIN M. FLOWERS (admitted *pro hac vice*)
THOMAS I. ROSS (admitted *pro hac vice*)
JEFFREY H. DEAN (admitted *pro hac vice*)
GREGORY E. STANTON (CA Bar No. 203495)
JOHN R. LABBE (admitted *pro hac vice*)
CULLEN N. PENDLETON (admitted *pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606-6357
(312) 474-6300 (telephone)
(312) 474-0448 (facsimile)
E-Mail: kflowers@marshallip.com
E-Mail: tross@marshallip.com
E-Mail: jdean@marshallip.com
E-Mail: gstanton@marshallip.com
E-Mail: jlabbe@marshallip.com
E-Mail: cpendleton@marshallip.com

Counsel for Defendant/Counterclaim Plaintiff
SOLEXA, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLERA CORPORATION—APPLIED BIOSYSTEMS GROUP, a Delaware corporation, <br><br> Plaintiff, <br><br> - vs. - <br><br> ILLUMINA, INC., a Delaware corporation, SOLEXA, INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual, <br><br> Defendants. | Case No. 07-CV-02845 WHA <br><br> District Judge William H. Alsup <br> Courtroom 9, 19th Floor <br><br> **REPLY CLAIM CONSTRUCTION BRIEF OF COUNTERCLAIM PLAINTIFF SOLEXA, INC.** <br><br> Tutorial:   January 30, 2008 <br> Time:      1:30 P.M. <br><br> Hearing:   February 13, 2008 <br> Time:      1:30 P.M. |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ....................................................................................................... 2

        A.      AB's various proposed constructions for "identifying"
                are either untimely, contrary to express definitions in
                the specification, or improperly import limitations
                from a preferred embodiment .......................................................................... 3

        B.      AB's proposed construction for "repeating steps (b), (c),
                and (d) until a sequence of nucleotides in the target
                polynucleotide is determined" improperly imports
                limitations from a preferred embodiment and contradicts
                express definitions in the specification ......................................................... 8

        C.      AB's proposed construction for "initializing
                oligonucleotide probe" improperly imports
                limitations from a preferred embodiment described
                in the specification, and is unclear .............................................................. 11

        D.      AB's proposed construction for "ligating an extension
                oligonucleotide probe to said extendable probe terminus"
                is contradicted by the intrinsic evidence and is
                internally inconsistent .................................................................................. 12

        E.      AB's proposed constructions for "extended oligonucleotide
                probe" and "just-ligated extension probe" are contradicted
                by the intrinsic evidence and are internally inconsistent ............................. 15

III.    CONCLUSION .................................................................................................. 15

1

2

**TABLE OF AUTHORITIES**

3

*Cases*                                                                          *Page(s):*

4

*ACTV, Inc. v. Walt Disney Co.*,
    346 F.3d 1082 (Fed. Cir. 2003) ................................................................. 13

5

*Chef America v. Lamb-Weston, Inc.*,
    358 F.3d 1371 (Fed. Cir. 2004). ............................................................... 14

6

7

*Eaton Corp. v. Rockwell Int'l Corp.*,
    323 F.3d 1332 (Fed. Cir. 2003). ............................................................... 14

8

9

*Enercon GmbH v. Int'l Trade Comm'n*,
    151 F.3d 1376 (Fed. Cir. 1998) ................................................................... 5

10

11

*Hockerson-Halberstadt, Inc. v. Converse Inc.*,
    183 F.3d 1369 (Fed. Cir. 1999) ................................................................. 13

12

13

*Interactive Gift Express v. Compuserve*,
    256 F.3d 1323 (Fed. Cir. 2001). ................................................................. 5

14

15

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ................................................................... 3

16

17

*Process Control Corp. v. Hydreclaim Corp.*,
    190 F.3d 1350 (Fed. Cir. 1999) ................................................................. 14

18

19

*Renishaw PLC v. Marposs Societa' per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998). ............................................................... 10

20

*Varco L.P. v. Pason Sys. USA Corp.*,
    436 F.3d 1368 (Fed. Cir. 2006) ................................................................... 3

21

22

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ........................................................... 14, 15

23

*Rules*

24

Fed. R. Civ. P. 26.......................................................................................... 2

25

MPEP § 2173.05(e) ..................................................................................... 14

26

27

28

1    **I.    INTRODUCTION**

2          Contrary to this Court's Orders and the Patent Local Rules, in its claim construc-

3    tion brief AB presents multiple, never-before-disclosed alternative proposed constructions

4    for a key term, "identifying," and offers constructions for terms other than the six terms

5    that the parties agreed that this Court should construe.

6          In arguing for its new constructions, AB attempts to distract the Court with irrele-

7    vant extrinsic evidence, including Solexa's description of its own commercial product

8    (which does not use the methods claimed in the patents-at-issue), statements in the tech-

9    nology background section of Solexa's opposition to AB's motion for summary judgment,

10   and previously undisclosed internet-dictionary definitions.

11         And instead of squarely addressing the evidence and arguments presented in

12   Solexa's Opening Brief,[1] AB repeatedly creates and attacks "straw man" arguments that

13   Solexa has never made. The Court should disregard or otherwise reject all of these im-

14   proper arguments.

15         Even when AB relies on its previously (*i.e.*, properly) disclosed arguments and evi-

16   dence, its positions are fraught with error. AB argues that its proposed constructions

17   should be adopted because they are "precise" and "understandable." But AB's proposed

18   constructions are inconsistent with both the plain meaning of the claim language and the

19   intrinsic evidence. Tellingly, AB points to little or no evidence in the intrinsic record to

20   support its proposed constructions, while ignoring or misrepresenting the intrinsic evi-

21   dence that supports Solexa's proposed constructions.

22         For these reasons, as discussed further below, the Court should reject AB's pro-

23   posed claim constructions and adopt the constructions proposed by Solexa.

24

25

26

27   ───────────────
          [1] Opening Claim Construction Brief of Counterclaim Plaintiff Solexa, Inc. (Docket No. 82)
28   (hereinafter "Opening Brief").

**REPLY CLAIM CONSTRUCTION BRIEF OF COUNTERCLAIM PLAINTIFF SOLEXA, INC.; CASE NO: 07-CV-02845 WHA**

II.    **ARGUMENT**

All of the six disputed terms that the parties agreed should be construed by the Court are found in claim 1 of the '341 patent, which recites:

1. A method for determining a sequence of nucleotides in a target polynucleotide, the method comprising the steps of:

(a) providing a probe-target duplex comprising an **initializing oligonucleotide probe** hybridized to a target polynucleotide, said probe having an extendable probe terminus;

(b) **ligating an extension oligonucleotide probe to said extendable probe terminus**, to form an extended duplex containing an **extended oligonucleotide probe**;

(c) **identifying**, in the extended duplex, at least one nucleotide in the target polynucleotide that is either (1) complementary to the **just-ligated extension probe** or (2) the nucleotide residue in the target polynucleotide which is immediately downstream of the extended oligonucleotide probe;

(d) generating an extendable probe terminus on the extended probe, if an extendable probe terminus is not already present, such that the terminus generated is different from the terminus to which the last extension probe was ligated; and

(e) **repeating steps (b), (c) and (d) until a sequence of nucleotides in the target polynucleotide is determined**.

In this reply brief, Solexa addresses AB's proposed constructions for each of these disputed terms in the order in which AB presents those constructions in its brief.

In its brief, AB offered what it called a "Background of the Technology" section, but that section does not provide a description of the technology underlying the claimed inventions. Rather, AB presented an incomplete description of its accused "SOLiD System" and its arguments as to why that system would not infringe the asserted claims based on AB's proposed constructions of those claims. Solexa disagrees with AB's description of its accused system, and with its non-infringement arguments. But Solexa will not address those arguments here. Solexa will respond to those arguments at the appropriate time, after the Court construes the claims and only after AB complies with Fed. R. Civ. P. 26 by providing complete discovery regarding its accused "SOLiD System."

**A.     AB's various proposed constructions for "identifying" are either untimely, contrary to express definitions in the specification, or improperly import limitations from a preferred embodiment**

In addition to the construction that it presented in its L.R. 4-2(a) submission almost two months ago,[2] AB now attempts to introduce two new eleventh-hour alternative claim constructions for "identifying."[3] AB was required to disclose its proposed construction for "identifying" in its L.R. 4-2(a) submission, as mandated by the Court's orders and the Patent Local Rules. AB should not be permitted to disregard this Court's rules by changing its proposed constructions, both in the interest of fundamental fairness and to discourage future litigation misconduct.[4]

Beyond failing to comply with this Court's rules, AB's newly proposed constructions for "identifying" suffer from the same defect as its original proposed construction: they improperly narrow the scope of the term by improperly importing multiple limitations from the specification into the claims under the guise of construing this single word, contrary to its clear meaning and contrary to bedrock rules of claim construction.

First, AB proposes narrowing the scope of "identifying" to determining whether a nucleotide is A, G, C, or T (or U). AB's proposed construction is based on an incomplete description of a preferred embodiment in the specification. It is black-letter law that limiting the scope of a claim to a preferred embodiment, when the specification provides a broader disclosure including additional embodiments, as here, is legal error.[5]

---

[2] In its submission under L.R. 4-2(a) on December 7, 2007, AB first proposed construing "identifying" as "within each cycle determining the identity of a base, as either A, T, G, or C, in the target polynucleotide."

[3] AB now proposes construing "identifying" to mean "within each cycle determining the identity of at least one base, as either A, T, G, or C, in the target polynucleotide" and "within each cycle determining the identity of a base, as either A, T, G, C or U, in the target polynucleotide." (AB Claim Construction Brief at 12 and 13, respectively).

[4] In addition, because AB's submissions under L.R. 4-2 and 4-3 failed to disclose the dictionary definitions of "identify" on which it now attempts to rely (AB Claim Construction Brief at 12 and Ex. J), the Court should not consider those definitions.

[5] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (noting that it has "repeatedly warned against confining the claims to [specific] embodiments."); *see also Varco L.P. v. Pason Sys. USA Corp.*, 436 F.3d 1368, 1375 (Fed. Cir. 2006) (reversing district court for construing

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AB's original proposed construction is particularly objectionable because the language of claim 1 of the '341 patent expressly recites that "**at least one** nucleotide" (emphasis added) may be identified during step (c).

In addition, the very passage of the specification quoted by AB indicates that "identifying" has a broader meaning than AB proposes. In describing various preferred embodiments of the inventions, the specification states:

> In one **preferred** kit, fluorescently labeled oligonucleotide probes are provided such that probes corresponding to different terminal nucleotides of the target polynucleotide carry distinct spectrally resolvable fluorescent dyes. As used herein, "spectrally resolvable" means that the dyes may be distinguished on the basis of their spectral characteristics, particularly fluorescence emission wavelength, under conditions of operation. Thus, the identity of the one or more terminal nucleotides would be correlated to a distinct color, or perhaps ratio of intensities at different wavelengths. **More preferably**, four such probes are provided that allow a one-to-one correspondence between each of four spectrally resolvable fluorescent dyes and the four possible terminal nucleotides on a target polynucleotide.[6]

Thus, the specification makes clear that identification can be accomplished by detecting, *e.g.*, fluorescent dyes correlated with the identity of one **or more** nucleotides, with a one-to-one correspondence between four dyes and four nucleotides being **only one possible**, **preferred** embodiment.[7] Simply put, "[m]ore preferably" does not mean "invariably." Yet AB asks this Court to limit "identifying" to the meaning found in a single "more preferable" embodiment for practicing the claimed methods. Such a position is contrary to well-settled patent law, logic, and ordinary English usage.

As support for its new constructions, AB points to Solexa's description of DNA sequencing in Solexa's opposition to AB's motion for summary judgment, and Solexa's description of its own commercial DNA sequencer (which does not use the methods

claims to include limitations found only in the description of a preferred embodiment).

   [6] Col. 14, lines 22-36 (emphasis added). Unless otherwise indicated, all references to figures and column and line numbers in this brief refer to the '341 patent.

   [7] Many other combinations are possible. In Example 2, the specification describes using 16 different labeled dideoxynucleotides for synthesizing probes.

claimed in the patents-at-issue).[8] In neither case did Solexa narrow the scope of "identify-ing" to that which AB now proposes. Moreover, neither of these is relevant or proper evidence regarding claim construction. The purpose of claim construction is to determine what the claims, including their terms, would have meant to one of ordinary skill at the time of the application based on the intrinsic evidence. Contemporaneous extrinsic evidence can also be considered, but only if necessary to resolve any genuine ambiguities following consideration of the intrinsic evidence.[9] AB offers no explanation and cites no authority to support the notion that Solexa's later uses of a disputed term in other contexts are somehow relevant to claim construction; nor can it.

In contrast to AB's various proposed constructions, Solexa's construction comports with both the plain meaning of the term and the definition of the term in the specification. Solexa proposes construing "identifying" to mean "obtaining information sufficient to distinguish."[10] As Solexa pointed out in its Opening Brief, the term "identifying" must be construed in light of the following express definition in the specification:

> As used herein, 'sequence determination,' '*determining* a nucleotide sequence,' 'sequencing,' *and like terms*, in reference to polynucleotides *includes determination of partial as well as full* sequence information of the polynucleotide. That is, the term includes sequence comparisons, fingerprinting, *and like levels of information* about a target polynucleotide, *as well as* the *express* identification and ordering of *each* nucleoside of the test polynucleotide.[11]

The specification invariably uses the terms "determining" and "identifying" synonymously, in accordance with their ordinary meaning.[12] In such cases, the definition of one term applies equally to the other.[13] Thus, based on this express definition, "identify-

---

[8] AB Claim Construction Brief at 11–12.

[9] *Interactive Gift Express v. Compuserve*, 256 F.3d 1323, 1332 (Fed. Cir. 2001).

[10] Notably, when stripped of all excess baggage, AB's proposed construction reduces to "determine the identity of."

[11] Col. 3, lines 53-60 (emphasis added).

[12] *See, e.g.*, col. 1, lines 5-10; col. 3, lines 7-10; col. 5, lines 11-12; col. 16, lines 35-36.

[13] *See, e.g.*, *Enercon GmbH v. Int'l Trade Comm'n,* 151 F.3d 1376, 1384-85 (Fed. Cir. 1998)

ing" cannot be limited, as AB proposes, to obtaining only the most specific level of information possible about a target polynucleotide when the term plainly encompasses obtaining less-specific information about that polynucleotide.

AB argues that this definition in the specification means that "identifying" is "a more specific concept and term" than "determining." This argument cannot be reconciled with the phrase "as well as the express identification and ordering of each nucleoside of the test polynucleotide." AB's argument improperly emphasizes the word "identification" in order to distinguish it from the rest of the definition of "determining a nucleotide sequence" and "like terms." The proper emphasis, however, is "as well as the ***express*** identification and ordering of ***each*** nucleoside of the test polynucleotide." The quoted phrase refers to a particular type of identification or determination, *i.e.*, expressly identifying or determining each nucleotide in the test polynucleotide. A proper reading of the entire definition in the specification supports Solexa's position: the first sentence of the definition states that "determining a nucleotide sequence" includes "determination of partial as well as full sequence information of the polynucleotide" and then states "that is," followed by a more complete description. Grammatically and logically, "that is" signals that what follows explains what is meant by "partial as well as full sequence information."

Thus, contrary to AB's argument, this definition does not distinguish "identification" from "determination." Rather, the "express" identification and ordering of "each" nucleotide in a target is being distinguished from "partial" sequence identification that also falls within the definition.[14] "Identifying" is not a "more specific concept and term"

---

(refusing to limit a term used "interchangeably" in the written description to only one of the uses of the term).

[14] In its Claim Construction Brief, AB describes DNA fingerprinting as a technique for determining differences between DNA involving only the use of restriction enzymes. AB Claim Construction Brief at 18, n.7. This characterization is incomplete and misleading, as demonstrated by AB's own Exhibits. *See* Pai Decl., Exh. H (Docket No. 93-7) (Brenner & Livak, *Genetics* 86:8902-8906) at 8902 ("Here we describe a fluorescent fingerprinting procedure that couples band separation with *sampled nucleotide sequencing* . . . .")).

than "determining," either in ordinary use or as the terms are used in the specification. The Court should therefore construe "identifying" as proposed by Solexa, and reject AB's proposal because it is contradicted by an express definition in the specification.

AB relies heavily on statements about the "identifying" step in the prosecution history of the patents-at-issue.[15] But these statements relate to *when* the "identifying" step was carried out in prior-art methods compared to methods described in the specification. The issue here is not *when* the "identifying" step occurs in the claimed methods; the claim recites that the "identifying" step is carried out in each "cycle" of the method. The issue here is what *information* is required to satisfy that "identifying" step in the methods. As discussed in the Opening Brief[16] and herein, the intrinsic evidence shows that "identifying . . . at least one nucleotide" is satisfied by, *e.g.*, obtaining information sufficient to distinguish that one or more nucleotides are present as opposed to all possible nucleotides (regardless of whether that distinguishing information is then used to calculate a specific A, C, G, T or U "base-call" immediately or at a later time).[17] Nothing in the specification or prosecution history requires that "identifying" be defined any more narrowly, so the term

---

[15] AB Claim Construction Brief at 9-10.

[16] Opening Brief at, *e.g.*, 21 ("The specification routinely uses 'identifying' in a manner consistent with the construction proposed by Solexa. For example, as pointed out above, the specification teaches that 'identifying' one or more bases of a target polynucleotide can be accomplished by reading a fluorescent signal emitted from a dye associated with an extension oligonucleotide probe. The specification describes multiple examples of obtaining information sufficient to distinguish nucleotides in this manner.") (citing col. 14, lines 30-32 ("Thus, the identity of the one or more terminal nucleotides would be correlated to a distinct color, or perhaps ratio of intensities at different wavelengths."); col. 16, l. 35-37 ("[T]he identity of the extended nucleotide is determined by illuminating each reaction mixture with standard wavelengths."); and col. 18, lines 9-12 ("After ligation and washing, a nucleotide is identified by the fluorescent signal of the oligonucleotide probe.")).

[17] In both the claimed methods and AB's "SOLiD System," "identifying" is carried out during each cycle because the information needed to identify nucleotide(s) complementary to a given extension probe is usually destroyed at the end of each cycle. It does not matter whether a nucleotide's "identity" is recorded during each cycle as the chemical name of the nucleotide or as a set of pseudonyms for the chemical name, such as a set of colors. Whether AB transforms that distinguishing information (by correlating colors to chemical names) after the cycles are completed or before the cycles are initiated does not matter.

1

should not be construed any more narrowly.

2

3        Unable to respond to Solexa's proposed construction on the merits, AB chooses in-

4   stead to create myriad "straw man" arguments it can then attack. For page after page, AB

5   rails against alleged Solexa constructions for terms that appear nowhere in the claims,

6   specification, agreed-upon list of terms for construction, or Solexa's Opening Brief, in-

7   cluding "identifying a target nucleotide," "partially identifying," "partially but not com-

8   pletely," and "at least partially identifying . . . at least one nucleotide in the target polynu-

9   cleotide."[18] This may be an attempt to create confusion; in any event, it is tilting at wind-

10  mills, and Solexa will not defend any position that it has not actually taken.

11        **B.    AB's proposed construction for "repeating steps (b), (c), and (d)
12               until a sequence of nucleotides in the target polynucleotide is de-
               termined" improperly imports limitations from a preferred em-
               bodiment and contradicts express definitions in the specification**

13        AB proposes construing step (e) of claim 1 to mean: "completing, and then per-

14  forming again, exactly what is described in steps (b), (c) and (d) until two or more nucleo-

15  tides in the unknown sequence that is targeted for analysis are identified." AB reaches this

16  construction, which limits "target polynucleotide" to mean only an "unknown sequence

17  that is targeted for analysis,"[19] by improperly importing selected limitations from a pre-

18  ferred embodiment into the claims. This violates the bedrock principle of claim construc-

19  tion that claims cannot be limited to preferred embodiments. Moreover, as discussed be-

20  low, neither of the passages selectively quoted by AB supports its position.

21        The first passage cited by AB states: "[p]*referably*, a target polynucleotide is con-

22  jugated to a binding region to form a template . . . ." (col. 8, lines 8-9). As noted above,

23  "preferably" does not mean "invariably." It only means that this particular way of practic-

24  ing the invention offers certain advantages over other ways of practicing the invention.

25  The specification explains why: binding regions with desirable properties, such as particu-

26

27        [18] AB Claim Construction Brief at 14–16.

28        [19] Prehearing Statement (Docket No. 78) at 6 and 12.

1
2
3
4

lar base compositions and length, can be designed beforehand and used with standard sets
of initializing oligonucleotides with desirable properties, and this practice eliminates the
need to partially sequence the target polynucleotide and then design and synthesize new
sets of initializing oligonucleotides each time.[20]

5
6
7
8
9
10
11
12
13
14

Next, AB selectively quotes the specification's description of Figure 1, "[t]emplate
(20) comprising a polynucleotide (50) of unknown sequence and binding region (40) is
attached to solid phase support." AB accuses Solexa of redacting relevant information in
depicting Figure 1 in Solexa's opening brief.[21] In fact, the only "convenient" redactions
are AB's: namely the sentences immediately preceding the sentence AB quotes: "The gen-
eral scheme of **one aspect** of the invention is shown diagrammatically in Fig. 1. As de-
scribed more fully below, ***the invention is not meant to be limited by the particular fea-
tures of this embodiment***. Template (20) comprising . . . ." (Col. 8, lines 44-46). Dr.
Macevicz could not have indicated any more clearly that what AB says is **the** invention is
only one **embodiment** of the invention.

15
16
17
18
19
20
21
22
23
24

Solexa's proposed construction of "target polynucleotide," which is "a polynucleo-
tide that contains the nucleotide sequence information to be obtained" by practicing the
claimed methods, is unquestionably supported by the specification. The specification does
not teach that the target polynucleotide is always "unknown"; to the contrary, the se-
quence of a "target polynucleotide" may be fully known, fully unknown, or partially
known, since the term only refers to the polynucleotide from which sequence information
is being obtained. Both Examples in the specification involve obtaining sequence informa-
tion from the *fully known* "target polynucleotide," pUC19, which is a well-known plasmid
cloning vector that was familiar to those of ordinary skill in the art at the time of filing.[22]

---

25

[20] Col. 5, lines 13-27; col. 15, lines 29-38.

26

[21] AB Claim Construction Brief at 17 (emphasis added) ("Solexa shows [Figure 1] at page 9
of its opening brief, but *conveniently* redacts out [the portion of the figure showing regions 40 and
50].").

27
28

[22] *See* Col. 14, line 43 to col. 15, line 15; col. 16, line 53-57; *see also Gene* 33(1):103-19
(1985) (disclosing, *inter alia*, the complete nucleotide sequences of the pUC vectors in Fig. 2 and

1

2
AB's proposed construction cannot be correct because the specification repeatedly teaches

3
that a "target polynucleotide" can include both known and unknown sequences.

4
AB's proposed construction of "target polynucleotide" in its responsive brief con-

5
tradicts even its position in the Prehearing Statement. There, AB construed "target

6
polynucleotide" as "a polymer of nucleotides, *one or more of which are unknown*, that is

7
targeted for analysis with the method,"[23] *i.e.*, a polynucleotide that may be partially

8
known and partially unknown. Yet in its responsive brief, AB contends that the term

9
means "a polynucleotide of unknown sequence."[24] This Court should reject AB's ever-

changing proposed constructions.

10
In contrast, Solexa's proposed construction for step (e) is consistent with its plain

11
meaning and use in the specification. Solexa has proposed that the Court construe the dis-

12
puted phrase as follows: "repeating steps (b), (c), and (d) until partial or complete se-

13
quence information of the target polynucleotide is obtained, including, for example, se-

14
quence comparisons, fingerprinting, and like levels of information, as well as the express

15
identification and ordering of nucleotides." This construction simply repeats the first part

16
of the phrase, which requires no additional construction, and adds the specification's ex-

17
press definition of the second part of the phrase, "until a sequence of nucleotides in the

18
target polynucleotide is determined."[25] It is black-letter patent law that a patent's express

19
definition of a term must control.[26]

20
AB's additional criticisms of Solexa's proposed construction are also misplaced.

21
For example, AB criticizes Solexa for not "captur[ing] the requirement that at least one

22
target nucleotide is identified within each cycle."[27] But as pointed out above regarding the

23

24
accompanying text) (attached as Exh. 1 to Labbé Declaration).

[23] Prehearing Statement (Docket No. 78) at 20.

25
[24] *See*, *e.g.*, AB Claim Construction Brief at 17.

26
[25] Col. 3, lines 53-60 (quoted *supra* in text accompanying n.11).

27
[26] *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998).

28
[27] AB Claim Construction Brief at 18.

"identifying" term, claim construction is not an exercise in seeing how many meanings can be shoe-horned into a single term.

Ironically, in the same breath, AB also criticizes Solexa's proposed construction for "improperly pack[ing] its construction with all types of sequencing information." Solexa's proposal does no such thing. To the contrary, Solexa's proposed construction accurately paraphrases an express definition in the specification that must be accorded controlling weight. AB's proposed construction, by contrast, fails even to mention this definition. For all of these reasons, AB's proposed construction for step (e) of claim 1 of the '341 patent is incorrect as a matter of law and must be rejected.

### C.    AB's proposed construction for "initializing oligonucleotide probe" improperly imports limitations from a preferred embodiment described in the specification, and is unclear

Solexa proposes construing "initializing oligonucleotide probe" to mean "the oligonucleotide probe that hybridizes to a known sequence in a polynucleotide and establishes registration for extension." AB's criticisms are two-fold. First, AB argues that the "known sequence" portion of Solexa's construction is incorrect because the initializing oligonucleotide must hybridize to the "target polynucleotide," which it further asserts can only have an "unknown" sequence. Second, AB criticizes the "establishes registration for extension" portion of the construction. Neither argument has merit.[28]

AB's assertion that an "initializing oligonucleotide" cannot bind to a known sequence is legally and factually incorrect. As discussed above, AB's proposed limitation of "target polynucleotide" to mean only an "unknown sequence" is incorrect as a matter of law because it imports limitations from preferred embodiments into the claims. In addition, AB's proposed limitation is factually incorrect because the specification describes a

---

[28] AB also improperly offers arguments regarding the construction of the term "thereto" from claim 1 of the '597 patent. AB Claim Construction Brief at 24. This term was not selected for construction by the parties, and construction of "initializing oligonucleotide" does not depend on the construction of this term. The Court should reject AB's attempt to expand the scope of the *Markman* hearing.

"target polynucleotide" as including both known and unknown sequences. Thus, Solexa's proposal that "initializing oligonucleotide" be construed to hybridize to a "known" sequence is in no way incompatible with the correct construction of "target polynucleotide." The terms need not be "redrafted," merely given their correct meaning.

AB says that construing "initializing oligonucleotides" as including "establishing registration for extension" is an "undefined concept" that "only risks unnecessary confusion."[29] The intrinsic evidence establishes otherwise. As discussed in detail in Solexa's Opening Brief, the specification teaches that the initializing oligonucleotide establishes registration for all subsequent extensions on the target polynucleotide, and explicitly defines the term.[30] The Court should construe the term to include this important concept.

AB's proposed construction of "the oligonucleotide to which the first extension oligonucleotide probe will be ligated" fails to distinguish between the initializing oligonucleotide and the second extension oligonucleotide probe, both of which are ligated to the first extension oligonucleotide probe in the claimed methods.[31] Instead, in the context of the claim as a whole, "initializing oligonucleotide" should be construed to include its function of establishing registration for subsequent rounds of extension and identification.

**D.    AB's proposed construction for "ligating an extension oligonucleotide probe to said extendable probe terminus" is contradicted by the intrinsic evidence and is internally inconsistent**

AB proposes limiting the phrase "ligating an extension oligonucleotide probe to said extendable probe terminus" to mean "forming a covalent bond between a short oligonucleotide probe and the extendable probe terminus of the initializing oligonucleotide of step 1(a)." AB admits that its construction is based solely on its interpretation of steps

---

[29] AB Claim Construction Brief at 22.

[30] *See* col. 3, lines 18-24 and col. 5, lines 23-26; *see also* discussion of these passages in Opening Brief at 8.

[31] Opening Brief at 9; *see also*, Fig. 1, and accompanying text at col. 4, line 60 and col. 5, lines 1-4.

(a) and (b) read in isolation from the rest of the claim language.[32] Such an interpretation violates fundamental principles of claim construction, which require claim language to be interpreted in light of the claim as a whole.[33] In particular, AB's construction fails to acknowledge, much less give weight to, step (d)'s reference to an "extendable probe terminus on the extended probe." AB's proposed construction improperly ignores the intrinsic evidence and is internally inconsistent.[34]

Solexa's proposed construction does not require the Court to "rewrite the claim," but merely to construe the disputed phrase consistently with the intrinsic evidence. Solexa proposes construing this phrase to mean "forming a covalent bond between an extension oligonucleotide probe and the extendable terminus of either an initializing oligonucleotide or an extended oligonucleotide probe while hybridized to a target polynucleotide." In his Statement of Reasons for Allowance, which AB quotes,[35] the Examiner indicated the term should be construed this way by stating "the extension oligonucleotide probes are regenerated to an extendable probe *to which the next extension oligonucleotide probe is ligated* to repeat the steps into the downstream region of the nucleic acid." If the steps were written out repeatedly to show the "cycles" of the method, it would be apparent that "said extendable terminus" referred to the extendable terminus of the initializing oligonucleotide during the first cycle of the method, and thereafter referred to the extendable terminus of the extended probe recited in step (d) of the preceding cycle of the method. This cumbersome approach to claim drafting was avoided by including the repeating step (e).

---

[32] AB Claim Construction Brief at 23.

[33] *ACTV, Inc. v. Walt Disney Co*., 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("[T]he context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms"); *Hockerson-Halberstadt, Inc. v. Converse Inc*., 183 F.3d 1369, 1374 (Fed. Cir. 1999) (reversing district court's claim construction) ("Proper claim construction, however, demands interpretation of the entire claim in context, not a single element in isolation.").

[34] *See* Opening Brief at 9–14.

[35] *See* AB Claim Construction Brief at 10 and Exh. E to Pai Decl. (Docket No. 93-6) at 3.

AB's citations of authority are inapposite. *Eaton v. Rockwell*[36] addressed whether the language in a claim preamble is necessary to define an invention, which is not an issue in this case. Likewise, AB's citation of MPEP § 2173.05(e), which provides that a claim is indefinite in cases where it recites, *e.g.*, "'said lever' without an *earlier* recitation of such 'lever'" in a claim, provides no support for AB's position because AB does not contend that "said extendable probe terminus" in 1(b) is indefinite due to a lack of an earlier recitation of "extendable probe terminus." To the contrary, the question here is whether "said extendable probe terminus" in 1(b) is ***limited*** to the extendable terminus of the initializing oligonucleotides. It is not, and AB cites no relevant authority to support its position. In the context of the claim as a whole, the meaning of this disputed phrase is clear.

AB mischaracterizes Solexa's Opening Brief as requesting that the Court redraft the claims to preserve their operability. No such argument was made, nor is any redrafting needed. Unlike in *Chef America*[37] and *Process Control*,[38] this Court is not faced with the extraordinarily rare situation[39] where the only possible construction of a claim not only excludes preferred embodiments, but renders the claim inoperable. Rather, as Solexa explained in its Opening Brief, AB's constructions give meaning to only some of the terms, are internally inconsistent, would exclude the preferred embodiments, and are contradicted by the specification. As established by the cases Solexa cited in its Opening Brief,[40] each of these deficiencies is sufficient reason for the Court to reject AB's proposed constructions.

---

[36] *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003).

[37] *Chef America v. Lamb-Weston, Inc.*, 358 F.3d 1371 (Fed. Cir. 2004).

[38] *Process Control Corp. v. Hydreclaim Corp.*, 190 F.3d 1350 (Fed. Cir. 1999).

[39] *See, e.g.*, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (explaining that a claim construction that excludes the preferred embodiments "is rarely, if ever, correct and would require highly persuasive evidentiary support . . . ").

[40] Opening Brief at 11 n.19, 12 n. 20, 13 nn.21–23.

1

**E.    AB's proposed constructions for "extended oligonucleotide probe" and "just-ligated extension probe" are contradicted by the intrinsic evidence and are internally inconsistent**

2

3    AB admits that its proposed constructions for "extended oligonucleotide probe"

4 and "just-ligated extension probe" rely on the same flawed reasoning as its proposed con-

5 struction for "ligating an extension oligonucleotide probe to said extendable probe termi-

6 nus."[41] In sum, AB fails to construe either of these terms in the context of the entire claim,

7 the specification, or the remaining intrinsic evidence. Moreover, AB's proposed construc-

8 tions for these terms are internally inconsistent with its proposed construction of step (d)

9 of claim 1. Because AB's constructions of these terms are otherwise unsupported in its

10 responsive brief, both should be rejected if the Court rejects AB's construction of "ligat-

11 ing an extension oligonucleotide probe to said extendable probe terminus."

12    AB does not provide any independent rationale for rejecting Solexa's proposed

13 construction for these terms,[42] and mischaracterizes Solexa's attack on the internal incon-

14 sistency of AB's positions as an attempt to "rewrite" the claims to preserve operability.

15 AB's defense of its inconsistent, inoperable claim constructions on the basis that "inoper-

16 able claims cannot be rewritten" relies on an invalid premise, *i.e.*, that the properly con-

17 strued claims exclude preferred embodiments and are inoperable. Given the Federal Cir-

18 cuit's repeated warnings that such constructions are "rarely if ever correct," AB has not

19 provided the "highly persuasive evidentiary support" necessary to prevail on this point.[43]

20 **III.    CONCLUSION**

21    For the reasons stated above, Solexa respectfully requests that the Court adopt its

22 constructions of the disputed terms set out in its Opening Brief.

23

24

25

---

26 [41] These all fail for the reasons discussed above and in the Opening Brief at 14–17, 20–22.

27 [42] Solexa proposes construing "extended oligonucleotide probe" as "an initializing oligonu-
cleotide probe effectively extended by one or more nucleotides."

28 [43] *See* n.39, *supra*.

---

REPLY CLAIM CONSTRUCTION BRIEF OF COUNTERCLAIM PLAINTIFF SOLEXA, INC.; CASE NO: 07-CV-02845
WHA

1    Dated: January 25, 2008                 Respectfully submitted,

2

3
                                            /s/    John R. Labbé
4                                           KEVIN M. FLOWERS (admitted *pro hac vice*)
                                            THOMAS I. ROSS (admitted *pro hac vice*)
5                                           JEFFREY H. DEAN (admitted *pro hac vice*)
                                            GREGORY E. STANTON (CA Bar No. 203495)
6                                           JOHN R. LABBE (admitted *pro hac vice*)
                                            CULLEN N. PENDLETON (admitted *pro hac vice*)
7                                           MARSHALL, GERSTEIN & BORUN LLP
8                                           6300 Sears Tower
                                            233 South Wacker Drive
9                                           Chicago, IL 60606-6357
                                            (312) 474-6300
10                                          (312) 474-0448 (facsimile)
                                            E-Mail: kflowers@marshallip.com
11                                          E-Mail: tross@marshallip.com
                                            E-Mail: jdean@marshallip.com
12                                          E-Mail: gstanton@marshallip.com
                                            E-Mail: jlabbe@marshallip.com
13                                          E-Mail: cpendleton@marshallip.com
14

15                                          Counsel for Defendant/Counterclaim Plaintiff
                                            SOLEXA, INC.
16

17

18

19

20

21

22

23

24

25

26

27

28