1  BRYAN WILSON (CA SBN 138842)
   ERIC C. PAI (CA SBN 247604)
2  MORRISON & FOERSTER LLP
   755 Page Mill Road
3  Palo Alto, California  94304-1018
   Telephone:  650.813.5600
4  Facsimile: 650.494.0792
   E-Mail:  BWilson@mofo.com
5  E-Mail: EPai@mofo.com

6  DAVID C. DOYLE (CA SBN 70690)
   STEPHEN E. COMER (CA SBN 154384)
7  BRIAN M. KRAMER (CA SBN 212107)
   MORRISON & FOERSTER LLP
8  12531 High Bluff Drive, Suite 100
   San Diego, California  92130-2040
9  Telephone:  858.720.5100
   Facsimile:  858.720.5125
10 E-Mail:  DDoyle@mofo.com
   E-Mail:  SComer@mofo.com
11 E-Mail:  BMKramer@mofo.com

12 Attorneys for Plaintiff
   APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP
13

14                    UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

16                        SAN FRANCISCO DIVISION

17

18 | APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP, a Delaware corporation, | Case No.    C07 02845 WHA |
   |---|---|
   | Plaintiff, | **DECLARATION OF MICHAEL HUNKAPILLER, PH.D.** |
   | v. | Date:    March 13, 2008<br>Time:    8:00 a.m. |
   | ILLUMINA, INC., a Delaware corporation, SOLEXA, INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual, | Place:    Courtroom 9, 19th Floor<br>Honorable William H. Alsup |
   | Defendants. | |

        I, Michael Hunkapiller, declare as follows:

        1.      I was employed by Applied Biosystems for 21 years, until I retired in August

2004.  When I retired I was a senior vice president of Applera, and the President and General

Manager of Applied Biosystems (Applera, Applied Biosystems, and their predecessors,

DECLARATION OF MICHAEL HUNKAPILLER
Case No. C07 02845 WHA                                                                                        1
pa-1208958

1  collectively, "AB"). I have a Ph.D. in Chemical Biology from the California Institute of
2  Technology, and I am a named inventor on more than two dozen patents, including patents on
3  some of AB's basic technology. I make these statements based on personal knowledge, unless
4  otherwise stated, and if called as a witness I could and would testify competently hereto.

5      2.    I was with AB during the entire time that Stephen Macevicz worked for AB.
6  When Dr. Macevicz first started with AB he reported to Joseph Smith, who was AB's patent
7  counsel. Later, after Mr. Smith changed from full-time status to a consulting capacity and
8  eventually left AB, Dr. Macevicz reported to me. Dr. Macevicz's job was to develop and protect
9  AB's intellectual property spanning the full range of AB's many areas of business. At the time
10 AB's business included making instruments used for synthesis, amplification, purification,
11 isolation, analysis, and sequencing of nucleic acids, proteins, and other biological molecules. It
12 also included making analytical instruments for determining the composition and structure of
13 chemical substances. Those instruments included atomic absorption spectrometers, instruments
14 for elemental analysis, fluorescence spectrophotometers, gas chromatographs, inductively
15 coupled plasma emission spectrometers, infrared spectrophotometers, liquid chromatographs,
16 mass spectrometers, thermal analyzers, thermal cyclers, ultraviolet/visible spectrophotometers
17 and polarimeters, analytical balances, flame photometers, data-handling devices, and data systems
18 for applications in analytical chemistry. It also included the development of reagents used in such
19 systems. Dr. Macevicz's duties included writing patent applications, managing outside counsel
20 who were developing patent applications, and deciding which of the many inventions developed
21 by AB scientists should be made the subject of patent applications.

22     3.    Dr. Macevicz held the position of Senior Patent Attorney at AB. As an attorney to
23 AB, Dr. Macevicz held a position of trust and had access to highly confidential information
24 belonging to AB. I expected Dr. Macevicz to protect AB's intellectual property and did not
25 believe that I needed to be suspicious that Dr. Macevicz would claim ownership in patents
26 belonging to AB.

27     4.    I was unaware of U.S. Patent 5,750,341 ("'341 patent") and its related patents
28 ("the '341 patent family") until about the time AB filed suit against Illumina in December 2006.

1  Dr. Macevicz never disclosed to me the application on which the '341 patent family is based.
2  Dr. Macevicz never told me that he was applying for his own patents without assigning them to
3  AB while he was working for AB.  I would have considered applying for his own patents without
4  assigning them to AB to be improper unless he had explicit approval from the company.  At the
5  very least, I would have required that I or someone else in management review his claimed
6  inventions before allowing him to apply for his own patents without assigning them to AB.

7      5.      During the time I worked at AB, the company did not conduct routine,
8  comprehensive patent searches for all patents related to all aspects of AB's business.  Such
9  extensive searching would have been too expensive and too time consuming for the company
10 given the wide range of AB's business and many areas of technology related to our business.
11 Instead, from time to time, targeted patent searches were conducted usually focusing on a
12 particular product or a particular transaction.   When the patents in the '341 patent family began
13 issuing in 1998, we had no current transactions with Lynx or Solexa that would cause us to
14 consider searching for their patents.

15     6.      During the time I worked at AB, the company did not conduct patent searches for
16 patents invented by former employees, current employees, or other individuals who had access to
17 confidential company information.  By the time the patents in the '341 patent family began
18 issuing in 1998, AB had several thousand current and former employees.  Searching for patents
19 issued to each of those current and former employees would have required significant hours from
20 AB patent attorneys and human resources personnel.  For every patent issued to a former
21 employee located in such a search, the company would have had to conduct an investigation
22 regarding when that former employee worked for AB, speculated as to when the invention
23 claimed in the patent was made, and determined whether AB had an unassigned ownership
24 interest in the patent.  That process would have to be repeated indefinitely, as new patents issue
25 all the time.  For all the work such a process would entail, I would have expected it to only rarely
26 result in a finding of wrongdoing.

27
28

7.  I am not aware of any patent search made while I was at AB that uncovered the Macevicz '341 patent or related patents. If such a search had revealed the Macevicz patents, I would have expected that to be brought to my attention.

8.  I understand that Illumina has said that Vince Powers knew about the patents and may have disclosed them to AB. Dr. Powers did not disclose these patents to me, or to anyone else at AB to my knowledge.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 5, 2008 in Palo Alto, California

_____
Michael Hunkapiller, Ph.D.

DECLARATION OF MICHAEL HUNKAPILLER
Case No. C07 02845 WHA
pa-1208958

4