KEVIN M. FLOWERS (admitted *pro hac vice*)
THOMAS I. ROSS (admitted *pro hac vice*)
JEFFREY H. DEAN (admitted *pro hac vice*)
JOHN R. LABBE (admitted *pro hac vice*)
CULLEN N. PENDLETON (admitted *pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606-6357
(312) 474-6300 (telephone)
(312) 474-0448 (facsimile)
E-Mail: kflowers@marshallip.com
E-Mail: tross@marshallip.com
E-Mail: jdean@marshallip.com
E-Mail: jlabbe@marshallip.com
E-Mail: cpendleton@marshallip.com

Counsel for Defendants
ILLUMINA, INC., SOLEXA, INC.,
and STEPHEN C. MACEVICZ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLERA CORPORATION—APPLIED BIOSYSTEMS GROUP, a Delaware corporation,<br><br>       Plaintiff/Counterdefendant,<br><br>  - vs. -<br><br>ILLUMINA, INC., a Delaware corporation, SOLEXA, INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual,<br><br>       Defendants/Counterclaimants. | Case No. 07-CV-02845 WHA<br><br>**(1) DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND**<br><br>**(2) DEFENDANTS' OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   March 20, 2008<br>Time:  8:00 a.m.<br>Place:  Courtroom 9, 19th Floor |

1

**TABLE OF CONTENTS**

2

*Page*

3

I.  INTRODUCTION ................................................................................................... 1

4

II.  THE UNDISPUTED FACTS ................................................................................. 2

5

A.  Dr. Stephen C. Macevicz ............................................................................ 2

6

B.  Dr. Vincent Powers ..................................................................................... 3

7

1.  The '341 Patent ............................................................................... 3

8

2.  The '119 Patent ............................................................................... 4

9

3.  The '597 Patent ............................................................................... 5

10

C.  AB's patent searches .................................................................................... 5

11

III.  ARGUMENT ......................................................................................................... 6

12

A.  The holdings in *IBM* and *Hartley Pen* apply here .......................................... 6

13

B.  For purposes of the instant cross-motions, AB has admitted that Dr.
Macevicz's claimed inventions related to AB's business .............................. 6

14

C.  The law-of-the-case doctrine does not apply to statements in this
Court's Order denying AB's summary judgment motion .............................. 7

15

16

D.  AB misstates the law on constructive notice ................................................ 9

17

E.  AB's exaggerations about the numbers of patents and employees are
irrelevant and misleading .............................................................................. 10

18

F.  Dr. Powers knew about the operative facts underlying AB's state-law
claims ............................................................................................................ 12

19

20

G.  Dr. Powers's knowledge of the Macevicz patents is imputed to AB .......... 12

21

H.  AB's knowledge of the Macevicz Patents put it on inquiry notice of
its current state-law claims ........................................................................... 15

22

I.  AB overstates the import of Macevicz's status as a fiduciary .................... 16

23

1.  The cases cited by AB are inapposite ............................................. 17

24

2.  AB had inquiry notice ..................................................................... 19

25

J.  Summary judgment is warranted in view of AB's constructive and
actual notice of the Macevicz patents .......................................................... 22

26

K.  This Court should deny AB's summary judgment motion ........................... 22

27

IV.  CONCLUSION ...................................................................................................... 23

28

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE
TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA

-i-

# TABLE OF AUTHORITIES

*Cases:*                                                                    *Page(s):*

*Advanced Semiconductor Materials v. Applied Materials, Inc.,*
    922 F. Supp. 1439 (N.D. Cal. 1996).................................................................. 8, 9

*April Enterprises, Inc. v. KTTV,*
    147 Cal. App. 3d 805 (Cal. App. Ct. 1983)........................................................... 10

*Bennett v. Hibernia Bank,*
    47 Cal. 2d 540 (1956)........................................................................... 16, 17, 19

*Columbia Pictures Corp. v. DeToth,*
    87 Cal. App. 2d 620 (Cal. App. Ct. 1948)................................................. 13, 14, 15

*Dessar v. Bank of America Nat. Trust and Sav. Ass'n,*
    353 F.2d 468 (9th Cir. 1965)........................................................................... 7

*Gryczman v. 4550 Pico Partners, Ltd.,*
    107 Cal.App.4th 1 (Cal. App. Ct. 2003)........................................................ 17, 18

*Hartley Pen Co. v. Lindy Pen Co.,*
    16 F.R.D. 141 (S.D. Cal. 1954)........................................................................ 6

*Hobart v. Hobart Estate Co.,*
    26 Cal. 2d 412 (1945)..................................................................................... 9

*IBM v. Zachariades,*
    1993 WL 443409 (N.D. Cal. Oct. 27, 1993).......................................................... 6

*I-Enterprise Co. LLC v. Draper Fisher Jurvetson Management Co. V, LLC,*
    2005 WL 3590984 (N.D. Cal. Dec. 30, 2005).................................................. 21, 22

In *Miller v Bechtel Corp.,*
    33 Cal. 3d 868 (1983)............................................................................ 19, 20, 22

*Milgard Tempering, Inc. v. Selas Corp. of Am.,*
    902 F.2d 703 (9th Cir. 1990).......................................................................... 8, 9

*Norgart v. Upjohn Co.,*
    21 Cal. 4th 383 (1999)................................................................................... 12

*O'Riordan v. Federal Kemper Life Assurance,*
    36 Cal. 4th 281 (2005)..................................................................... 13, 14, 15

*Preaseau v. Prudential Ins. Co. of America,*
    591 F.2d 74 (9th Cir 1979)............................................................................... 8

*Prudential Home Mortgage Co. v. Superior Court,*
    66 Cal.App.4th 1236 (Cal. App. Ct. 1998).................................................... 17, 18

*Richardson v. United States,*
    841 F.2d 993 (9th Cir. 1988)......................................................................... 8, 9

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE
TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA

-ii-

*Shouse v.Ljunggren*,
    792 F.2d 902 (9th Cir. 1986) ................................................................................. 7

*U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*,
    1 Cal. 3d 586 (1970) .............................................................................................. 16

*Yeda Research & Dev. Co. v. Imclone Sys. Inc.*,
    443 F. Supp. 2d 570 (S.D.N.Y. 2006) .................................................................. 10

*Statutes and Rules:*                                                                                    *Page:*

Civil Local Rule 56-3 ...................................................................................................... 8

**DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA**

-iii-

1    **I.    INTRODUCTION**

2           The limitations period for AB's state-law claims began running no later than Octo-

3    ber 1999 because: (1) the issuance of the Macevicz patents provided AB with constructive

4    notice of the operative facts underlying all of its state-law claims; and (2) AB had actual

5    notice of the Macevicz patents because its in-house patent counsel, Dr. Vincent Powers,

6    prosecuted the Macevicz patents; knew that the first Macevicz patent issued before he

7    joined AB; knew that the second Macevicz patent issued one month after he joined AB;

8    and knew that Dr. Macevicz had been an AB employee around the time that Dr. Macevicz

9    filed his original patent application. Thus, even if the Court were to accept AB's theory

10   that any fiduciary duty that Dr. Macevicz might have owed to AB "reduced AB's duty of

11   diligence," Dr. Powers's (*i.e.*, AB's) knowledge of the existence of the Macevicz patents

12   in October 1999 was enough to trigger the limitations period.

13          Despite AB's arguments that there are too many patents issued every year to re-

14   view, and too many former AB employees to keep track of, in *IBM v. Zachariades*, Judge

15   Ware did not hesitate to find that the constructive notice provided by an issued patent

16   started the limitations period, even though the former employer in that case, IBM, claimed

17   to have no actual knowledge of the patent, and had more than 250,000 current employees.

18   By contrast, to this day AB has had a total of only 21,487 employees. It was fair to find

19   that a company of IBM's size was on constructive notice of issued patents relating to its

20   businesses, and it is fair to find the same regarding AB.

21          Because it cannot dispute that the holding in *IBM* applies here, AB argues that con-

22   structive notice alone is not enough to bar its current claims. But that ignores the actual

23   notice AB had of the Macevicz patents, and reads too much into whatever fiduciary duty

24   Dr. Macevicz might have owed AB as in-house patent counsel.

25          AB's declarants, Drs. Grossman (the former head of AB's legal department) and

26   Hunkapiller (AB's former CEO), testified in their depositions that upon viewing the

27   Macevicz patents in 2006, they recognized from the information in those patents that AB

28   might have a claim of ownership of the patents. Their immediate recognition of AB's po-

**DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA**

-1-

tential claim of ownership of the Macevicz patents shows that Dr. Macevicz's fiduciary relationship with AB cannot trump the notice provided by those patents: AB's actual and/or constructive knowledge of the issued patents was enough to begin the limitations period because they were enough to put AB on notice that it might have a claim of ownership. Even under AB's theory of "reduced duty of diligence," AB's state law claims are time-barred.

## II.    THE UNDISPUTED FACTS[1]

### A.    Dr. Stephen C. Macevicz

Dr. Macevicz filed his first application for a patent covering his inventions in the life sciences in 1988 and continued to file applications over the ensuing years, with many of his applications resulting in issued patents. In fact, between 1991 and 2004, Dr. Macevicz was a named inventor on 11 United States patents in the life sciences,[2] including three[3] on which he was a co-inventor with Dr. Sydney Brenner, the 2002 Nobel Laureate in Medicine.

While he was employed at AB, Dr. Macevicz disclosed his inventions to two AB employees, Drs. Steven Fung (a scientist) and Paul Grossman (a patent agent in AB's legal department).[4] Drs. Fung and Grossman witnessed Dr. Macevicz's journal pages describing those inventions by signing and dating them.[5]

---

[1] Exhibits cited in this memorandum are attached to the Declaration of John R. Labbé, which is being filed herewith.

[2] U.S. Patent No. 5,002,867; U.S. Patent No. 5,750,341; U.S. Patent No. 5,846,719; U.S. Patent No. 5,969,119; U.S. Patent No. 6,054,276; U.S. Patent No. 6,136,537; U.S. Patent No. 6,150,516; U.S. Patent No. 6,235,475; U.S. Patent No. 6,280,935; U.S. Patent No. 6,306,597; U.S. Patent No. 6,720,179.

[3] U.S. Patent No. 5,846,719; U.S. Patent No. 6,150,516; U.S. Patent No. 6,235,475.

[4] Dr. Grossman subsequently became a patent attorney and worked as an in-house attorney for AB until February, 2007. Exh. 1 (AB 00001471). During his tenure in AB's legal department, Dr. Grossman became the Vice President of Intellectual Property and Vice President for Strategic Planning & Business Development. Exh. 2 (AB 00001478 & AB 00001480); Exh. 3 (Transcript of Deposition of Paul Grossman (Feb. 14, 2008) ("Grossman Dep.") at p. 73, line 23 – p. 74, line 22.

[5] Dr. Fung witnessed Dr. Macevicz's journal pages on July 28, 1992. Docket No. 74-7 at 7-11 (MAC00031-35). Dr. Grossman witnessed Dr. Macevicz's journal notebook pages on July 21, 1994. *Id*. at 55-59 (MAC00079-83).

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA

-2-

### B.    Dr. Vincent Powers

Dr. Vincent Powers began prosecuting patent applications for Applied Biosystems in 1992 when he was a patent agent with the law firm Dehlinger & Associates.[6] After he became a lawyer in 1997, Dr. Powers continued to prosecute patent applications for AB in his capacity as AB's outside counsel. Dr. Powers joined AB as a patent attorney in September 1999.[7] He eventually became AB's Director of Chemical Patent Practice.[8]

Dr. Powers prosecuted each of the patent applications that led to the Macevicz patents-in-suit, in whole or in part.[9] On the face of each of the patents-in-suit, Dr. Powers is listed as the "Agent, Attorney, or Firm" that prosecuted the patents. The patents also list Lynx Therapeutics as Dr. Macevicz's assignee. Dr. Powers was involved in all phases of the prosecution of these applications for more than 3 years; he filed applications, declarations, and other documents, responded to office actions from the Patent & Trademark Office ("PTO"), amended the claims, participated in interviews with the PTO Examiners, and paid the issue fees.

Dr. Powers was also the lawyer who notified the PTO that Dr. Macevicz's patent applications had been assigned to Lynx, and later referred to those assignments in his correspondence with the PTO during prosecution of the Macevicz patents-in-suit.[10]

#### 1.    The '341 Patent

U.S. Patent Application Serial No. 08/424,663 ("the '663 application"), which resulted in U.S. Patent No. 5,750,341 ("the '341 patent"), was filed on April 17, 1995.[11] Dr. Powers received an Associate Power of Attorney to prosecute this application on October 15, 1996,[12] which he submitted along with his response to a PTO Office Action regarding

---

[6] Exh. 4 (Transcript of Deposition of Vincent M. Powers (Feb. 22, 2008)) ("Powers Dep.") at p. 24, line 15 – p. 25, line 12; Docket No. 126 (Declaration of Vincent M. Powers ("Powers Decl.")) at ¶ 2.

[7] *Id.*

[8] Exh. 4 (Powers Dep.) at p. 13, lines 5-18; Docket No. 126 (Powers Decl.) at ¶ 2.

[9] Docket No. 126 (Powers Decl.) at ¶ 3.

[10] Exh. 5 (Assignment from Spectragen to Lynx dated June 10, 1997).

[11] Exh. 6 ('341 Patent) at 1.

[12] Exh. 7 ('341 File History, Power of Attorney).

---

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA

-3-

1  that application on October 16, 1996.[13] Thereafter, Dr. Powers prosecuted the '663 appli-

2  cation through to allowance of the claims[14] and issuance of the '341 patent, including pay-

3  ing the issue fee on May 27, 1997.[15] Dr. Powers submitted his name as an "Attor-

4  ney/Agent" for the '341 patent along with the formal drawings/sequence listings after pay-

5  ing the issue fee.[16] The '341 patent issued on May 12, 1998, and lists the "Assignee" as

6  "Lynx Therapeutics, Inc." and "Vincent M. Powers" under "Attorney, Agent or Firm."[17]

7  Consequently, there can be no dispute that Dr. Powers knew that the '341 patent issued

8  before he joined AB.[18]

9          2.    **The '119 Patent**

10      On June 10, 1997, Dr. Powers filed U.S. Patent Application Serial No. 08/872,446

11  ("the '446 application") on Dr. Macevicz's behalf as a divisional of the '663 application.[19]

12  Dr. Powers prosecuted the '446 application through to issuance, including paying the is-

13  sue fee and ordering advance copies of the printed patent on February 19, 1999.[20] The

14  '446 application issued as U.S. Patent No. 5,969,119 ("the '119 patent") on October 19,

15  1999, and lists the "Assignee" as "Lynx Therapeutics, Inc." and "Vincent M. Powers" as

16  the "Attorney, Agent or Firm."[21] The '119 patent issued a month after Dr. Powers began

17  work at AB.[22]

18      Dr. Powers knew that the '119 patent issued while he was working at AB. In his

19  deposition, Dr. Powers stated that he was aware of the issuance of the issuance of the first

20      [13] Exh. 8 ('341 File History, Amendment dated Oct. 16, 1996).

21      [14] Exh. 9 ('341 File History, Interview Summary dated Feb. 14, 1997).

22      [15] Exh. 10 ('341 File History, Transmittal of Issue Fee and Advance Order dated May 27, 1997).

23      [16] Exh. 11 ('341 File History, Communication dated Feb. 18, 1998) at 3.

24      [17] Exh. 6 ('341 patent) at 1. The delay was caused by the PTO repeated misplacing the formal drawings and sequence listings submitted by Dr. Powers. Exh. 11 ('341 File History, Communication dated Feb. 18, 1998) at 1.

25      [18] Exh. 4 (Powers Dep.) at p. 65, lines 16-19.

    [19] Exh. 12 ('119 File History, Filing Under 37 CFR §1.60 dated June 10, 1997) at 3.

26      [20] Exh. 13 ('119 File History, Transmittal of Issue Fee and Advance Order dated Feb. 19,

27  1999) and Exh. 14 ('119 File History, Issue Fee Transmittal dated Feb. 19, 1999).

    [21] Exh. 15 ('119 patent) at 1.

28      [22] *Id.*; Docket No. 126 (Powers Decl.) at ¶ 2.

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA

-4-

1  two Macevicz patents, the '341 and '119 patents, when they issued in May, 1998 and Oc-

2  tober, 1999: "The Macevicz patents, the two -- the first two of which issued during my

3  employment at Dehlinger, I certainly knew about at the time of the grant."[23] Dr. Powers

4  was at Dehlinger & Associates until September 1999, when he left to join AB's legal de-

5  partment.[24] Dr. Powers was obviously mistaken when he stated that the '119 patent issued

6  while he was at Dehlinger & Associates, because the '119 patent issued one month after

7  he began working as AB's in-house patent counsel. Consequently, there can be no dispute

8  that Dr. Powers knew that the '119 patent issued while he was working at AB.

9          3.    **The '597 Patent**

10       On March 29, 1999, approximately six months before leaving Dehlinger & Associ-

11  ates to join AB, Dr. Powers filed U.S. Application Serial No. 09/280,270 ("the '270 appli-

12  cation") as a continuation of the '446 application.[25] Dr. Powers continued prosecuting the

13  '270 application prior to joining AB.[26] The issue fee for the '270 application was paid on

14  July 31, 2001, and lists "Vincent M. Powers" as a patent attorney to be listed on the front

15  page of the patent.[27] The '270 application issued as U.S. Patent No. 6,306,597 on October

16  23, 2001, and lists the "Assignee" as "Lynx Therapeutics, Inc." and "Vincent M. Powers"

17  under "Attorney, Agent or Firm."[28]

18      **C.**    **AB's patent searches**

19       Dr. Paul Grossman, who served as AB's Vice-President of Intellectual Property

20  from 2001 through 2007, Dr. Michael Hunkapiller, who served as AB's chief scientific

21  officer and CEO until 2004, and Dr. Scott Bortner, who has been a patent attorney at AB

22  since 1996, all admitted in their declarations and depositions that AB has conducted tar-

23

24     [23] Exh. 4 (Powers Dep.) at p. 65, lines 16-19.

   [24] Docket No. 126 (Powers Decl.) at ¶ 2.

25     [25] Exh. 16 ('597 File History, Transmittal of Continuation Patent Application dated March 29, 1999) at 2.

26     [26] Exh. 17 ('597 File History, Response to Notice to File Missing Parts dated June 21, 1999 Amendment) at 2 and Exh. 18 ('597 File History, Preliminary Amendment) at 6.

27     [27] Exh. 20 ('597 File History, Issue Fee Transmittal dated August 1, 2001).

28     [28] Exh. 19 ('597 Patent) at 1.

**DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA**

-5-

geted patent searches for particular purposes,[29] such as to ensure that an AB product is not infringing any patents, to determine whether to license technology, and to find potential prior art before filing patent applications.[30] For example, AB conducted a patent search for all patents assigned to Lynx in 1996.[31] It was thus common for members of AB's patent department to conduct targeted patent searches and to review patents that were discovered in such patent searches.

## III.    ARGUMENT

### A.    The holdings in *IBM* and *Hartley Pen* apply here

AB does not dispute that the courts in *IBM v. Zachariades*, 1993 WL 443409 (N.D. Cal. Oct. 27, 1993), and *Hartley Pen Co. v. Lindy Pen Co.*, 16 F.R.D. 141 (S.D. Cal. 1954), both applying California law, found that a party has constructive notice of a patent when it issues, and that such constructive notice is sufficient to bar a party's ownership claims to such patents based on the running of the limitations period. Nor can AB dispute that in both *IBM* and *Hartley Pen*, because the issued patents related to the former employee's work and the former employer's business, IBM and Kimberly had no excuse for failing to timely discover their ownership claims. The relevant facts here are effectively identical to those in *IBM* and *Hartley Pen*, save one—that Dr. Macevicz, AB's in-house counsel, may have owed AB a fiduciary duty. As explained below, this does not compel a different result.

### B.    For purposes of the instant cross-motions, AB has admitted that Dr. Macevicz's claimed inventions related to AB's business

AB argues that it is unfair to expect it to have discovered the Macevicz patents. But AB argued (*i.e.*, admitted, for purposes of the instant cross-motions) in the course of brief-

---

[29] Exh. 3 (Grossman Dep.) at p. 93, line 11 – p. 95, line 11; Exh. 21 (Transcript of Deposition of Michael Hunkapiller (Feb. 21, 2008) ("Hunkapiller Dep.")) at p. 115, lines 7-22, p. 116, lines 19-23; Exh. 22 (Transcript of Deposition of Scott Bortner (Feb. 22, 2008)) at p. 32, lines 2-21.

[30] *Id.*

[31] Docket No. 124 (Bortner Decl.) at ¶ 4.

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA

-6-

ing its prior summary judgment motion that its "business was (and still is) DNA sequenc-

ing," and that Dr. Macevicz's inventions relate to that business:

> "The AB Invention Agreement required Dr. Macevicz to disclose and assign any inventions that "*relate to* the business or actual or demonstrably antici-pated research or development of" AB, at the time the inventions were made. *Because a significant portion of AB's business was (and still is) DNA sequencing, Dr. Macevicz's DNA sequencing invention "relates to" AB's business or its research or development.*"[32]

Despite arguing that "Dr. Macevicz's DNA sequencing invention 'relates to' AB's business or its research or development," AB now tries to generalize its business by stat-ing its business "includes making instruments used for the synthesis, amplification, purifi-cation, isolation, analysis and sequencing or nucleic acids, proteins and other biological molecules."[33] When it suited AB's arguments for summary judgment, AB said that "Dr. Macevicz's DNA sequencing invention 'relates to' AB's business or its research or devel-opment."[34] Now it says this Court cannot accept that statement as an admission for the purposes of the instant cross-motions. AB cannot have it both ways.

### C.    The law-of-the-case doctrine does not apply to statements in this Court's Order denying AB's summary judgment motion

This Court's denial of AB's summary judgment motion does not render this Court's statement about a factual dispute the "law of the case." As the Ninth Circuit stated in *Dessar v. Bank of America Nat. Trust and Sav. Ass'n*, 353 F.2d 468 (9th Cir. 1965), the denial of a motion for summary judgment "merely postpones decision of any question; it decides none."[35]

---

[32] Docket No. 80 (AB's Reply in Support of Motion for Summary Adjudication) at p. 5-6 (emphasis added).

[33] Docket No. 119 (Opposition to Illumina's Motion) at p. 3.

[34] AB contends that Illumina is estopped from arguing that AB's business includes DNA se-quencing, however, Illumina is merely relying on AB's statements concerning its business, not taking a contrary position. AB's admissions have nothing to do with Illumina's contention that AB's DNA sequencing business was limited to a method based on a technology developed by Fredrick Sanger, Ph.D.

[35] *Dessar*, 353 F.2d at 470; *see also Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) ("More recently, we stated that the law of the case does not apply to pretrial rulings such

**DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA**

-7-

1    Moreover, this Court's Civil Local Rule 56-3 states that "[s]tatements contained in

2    an order of the Court denying a motion for summary judgment or summary adjudication

3    shall not constitute issues deemed established for purposes of the trial of the case, unless

4    the Court so specifies."[36] Indeed, this Court has applied Civil Local Rule 56-3 to prevent

5    the very result advocated by AB.[37] In its Order denying AB's motion for summary judg-

6    ment,[38] this Court did not specify that the issue of whether AB's business related to Dr.

7    Macevicz's claimed inventions was "deemed established." AB's law-of-the-case argu-

8    ment is a non-starter, and AB cannot escape its admission for the purposes of the instant

9    cross-motions that "Dr. Macevicz's DNA sequencing invention 'relates to' AB's business

10    or its research or development."

11    AB's reliance on *Richardson v. United States*, 841 F.2d 993 (9th Cir. 1988), and

12    *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990), is un-

13    availing. Neither *Richardson* and *Milgard* involved the application of law-of-the-case

14    doctrine to statements made in an order denying a motion for summary judgment (and in

15    both cases, the Ninth Circuit declined to apply the law of the case).

16    In *Richardson*, the Ninth Circuit addressed the question of whether the law–of-the-

17    case doctrine applied despite an intervening change in the law. In an earlier decision, the

18    Ninth Circuit had reversed a judgment in favor of the government and remanded for fur-

19    ther proceedings because the trial judge had applied the wrong legal standard.[39] By the

20    _____

21

22    as motions for summary judgment.") (*citing Preaseau v. Prudential Ins. Co. of America*, 591 F.2d 74, 79-80 (9th Cir 1979)).

23    [36] Civil Local Rule 56-3 (December 2005).

24    [37] *Advanced Semiconductor Materials v. Applied Materials, Inc.,* 922 F. Supp. 1439, 1448 (N.D. Cal. 1996). In *Advanced Semiconductor*, a patent infringement action, the Court denied defendant's first motion for summary judgment on the issue compliance with the "best mode" re-

25    quirement. Defendant filed a second motion for summary judgment relying on the law of the case to give effect to a fact referred to the Court's order denying the first summary judgment. *Id.* at

26    1441-42 & 1448. The Court, quoting Civil Local Rule 56-3, refused to apply the law of the case "because statements made in an order denying a motion for summary judgment are not issues

27    deemed established for trial unless the court so specifies." *Id.* at 1448.

    [38] Docket No. 88.

28    [39] *Richardson*, 841 F.2d at 994-95.

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA

-8-

1   time the case came back to the Ninth Circuit on appeal, the appropriate legal standard had

2   changed.[40] The government argued that the law-of-the-case doctrine did not apply in light

3   of the intervening change in the law.[41] The Ninth Circuit agreed, holding that the new le-

4   gal standard applied.[42] The holding in *Richardson* does not apply here, where AB is at-

5   tempting to apply the law-of-the-case doctrine to a statement in this Court's order denying

6   AB's summary judgment motion.[43]

7           **D.      AB misstates the law on constructive notice**

8           AB argues that whether it had constructive notice of the information disclosed in

9   the Macevicz patents is a question of fact,[44] citing *Hobart v. Hobart Estate Co.*, 26 Cal. 2d

10  412 (1945).[45] AB's argument conflates the issues of (i) the existence of constructive notice

11  and (ii) whether such notice is enough to put a prudent party on inquiry such that it should

12  have followed up on the facts of which it was aware.

13          The passage in *Hobart* quoted by AB does not state that the existence of construc-

14  tive knowledge is a question of fact.[46] Instead, it merely addresses the next issue, whether

15  "certain facts indisputably known to plaintiff were sufficient to put him on inquiry."[47] The

16  *Hobart* court ultimately found that the facts "admittedly known to plaintiff" were not nec-

17  essarily enough to "have put a prudent man on inquiry."[48] *Hobart* did not address whether

18

19  ───────────────

20      [40] *Id.* at 995.

        [41] *Id.*

21      [42] *Id.* at 996.

22      [43] Likewise, in *Milgard*, the Ninth Circuit declined to apply the law of the case to an issue re-
    garding the question of attorneys' fees because the lower court merely referred to the attorneys'
    fees issue in dicta.  *Milgard*, 902 F.2d 716 ("[A]ny general remarks he may have made about the

23  'prevailing party' are dicta. Of course, the law of the case doctrine gives no preclusive effect to
    dicta.") (citations omitted).

24      [44] Docket No. 119 (Opposition to Illumina's Motion) at p. 8.

25      [45] *Id.* (*quoting Hobart*, 26 Cal. 2d at 440). AB also cites *Advanced Cardiovascular Sys., Inc.
    v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1162 (Fed. Cir. 1993), but in *Advanced Cardiovascular

26  Systems*, the Federal Circuit applied its own law, rather than the law of a regional circuit court, to
    the issue of whether the notice was sufficient to begin the laches period. *See id.* at 1162.

27      [46] *Hobart*, 26 Cal. 2d at 440.

        [47] *Id.*

28      [48] *Id.* at 441.

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE
TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA

-9-

1   the existence of constructive notice is a question of fact that cannot be resolved on sum-

2   mary judgment.

3          AB cannot dispute that the courts in *Hartley Pen* and *IBM* both found, as a matter

4   of law on motions for summary judgment, that the plaintiffs had constructive notice of the

5   patents that issued to their former employees. Instead, AB complains about the putative

6   burden that it would face if it were found to have constructive notice of issued patents re-

7   lating to its core business, and attempts to rely on Dr. Macevicz's status as an attorney

8   owing AB a fiduciary duty to distinguish these cases and mitigate the effect of its con-

9   structive and actual notice of the Macevicz patents.[49]

10         But even where a fiduciary is involved, the limitations period for a potential claim

11  begins to run when a party "could reasonably be expected to discover its existence."[50] As

12  explained below, the constructive notice provided by the issued Macevicz patents, taken

13  together with the indisputable knowledge of those patents held by Dr. Powers, AB's in-

14  house patent counsel from September 1999 to April 2007, establishes that AB "could rea-

15  sonably be expected to discover" the existence of its current state-law claims no later than

16  October 19, 1999, when the second Macevicz patent issued while Dr. Powers was work-

17  ing as a patent attorney at AB.[51]

18      **E.    AB's exaggerations about the numbers of patents and employees are ir-
               relevant and misleading**

19

20         Citing a case that involved the issue of laches, which is an issue reserved exclu-

21  sively for the Federal Circuit, AB argues that it would be too much to expect AB to search

22  through the millions of patents that have issued to date and "cross-reference" them to

23  AB's list of current and former employees.[52] AB further argues that even within the "areas

24  of technology and subject matter that were potentially related to AB's business," over two

25  ────────────

26      [49] Docket No. 119 (Opposition to Illumina's Motion) at p. 9-14.

27      [50] *April Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 827 (Cal. App. Ct. 1983).

        [51] *Id.*

28      [52] Docket No. 119 (Opposition to Illumina's Motion) at p. 16-17 (*citing Yeda Research & Dev. Co. v. Imclone Sys. Inc.*, 443 F. Supp. 2d 570, 630 n.89 (S.D.N.Y. 2006)).

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA

-10-

1    thousand patents issue per month, making it impractical for AB to review those patents.[53]

2    These arguments are merely an attempt to set up a straw man to avoid the fact that it is

3    perfectly reasonable to expect that AB would search for and be aware of patents related to

4    "DNA sequencing," when AB has told this Court that "a significant portion of AB's busi-

5    ness was (and still is) DNA sequencing."[54]

6        To find the Macevicz patents, today or in October 1999, all one need do is search

7    the U.S. Patent & Trademark Office database[55] for patents having "DNA sequencing" in

8    the title. In October 1999, that search would have only resulted in 80 patents,[56] two of

9    which were the Macevicz patents, and all of which, according to AB, would have been

10   "indisputably" related to "a significant portion of AB's business." The idea that AB would

11   have to search for patents issued to all of its former employees is absurd; like the plaintiff

12   in *IBM*, AB is presumed to be aware of patents that relate to its business, especially where

13   AB has admitted that its legal staff conducts targeted searches for such patents.

14       Contrary to AB's arguments, the number of patents that issue each year and the

15   number of former AB employees do not negate AB's notice of the Macevicz patents. In

16   *IBM*, Judge Ware was unfazed by the "burden" that constructive notice would place on

17   IBM. When Judge Ware issued his opinion in *IBM v. Zachariades*, IBM ranked second

18   among all companies in the number of patents issued (1,085 patents in 1993), and had

19   more than 250,000 employees.[57] By contrast, in that same year, AB received only seven-

20   teen patents, and has had a total of only 21,487 employees in the last *fourteen* years.[58] If a

21   company of IBM's size is on constructive notice of all patents relating to its businesses

22   that issue to its former employees, so too is AB.

23

24
        _____

        [53] *Id.* at p. 16, lines 25-28.

25      [54] Docket No. 80 (AB's Reply in Support of Motion for Summary Adjudication) at p. 5-6.
        [55] http://patft.uspto.gov/netahtml/PTO/search-adv.htm

26      [56] Exh. 23 (Search results from the U.S. Patent & Trademark Office website).

27      [57] Exh. 24 (IBM Timeline, 1993) at 1.
        [58] Exh. 25 (Search results from the U.S. Patent & Trademark Office website); Docket No. 123

28   (Declaration of Adam Tschop) at ¶ 10.

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE
TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA

-11-

In *Norgart v. Upjohn Co*., 21 Cal. 4th 383 (1999), the California Supreme Court analyzed the policies promoted by statutes of limitations, including discovery and tolling rules, and determined that "[t]he two public policies identified above --the one for repose and the other for disposition on the merits -- are equally strong, the one being no less important or substantial than the other."[59] The "fairness" associated with AB being charged with constructive notice of issued patents relating to a purported "significant portion" of its business does not, as Judge Ware found in *IBM*, outweigh the policy underlying the statute of limitations. This is especially true in this case, where AB regularly conducts targeted patent searches.

**F.    Dr. Powers knew about the operative facts underlying AB's state-law claims**

Dr. Vincent Powers, the attorney who prosecuted all three of the Macevicz patents, joined AB in September 1999.[60] Before he joined AB, Dr. Powers prosecuted and paid the issue fees for the first and second Macevicz patents, and filed the application that issued as the third Macevicz patent. Dr. Powers admits that he knew of the issuance of the second Macevicz patent on October 19, 1999, just one month after he joined AB.[61] He also knew that Dr. Macevicz had been employed by AB as AB's in-house patent counsel in the early to mid-1990's.[62] In fact, Dr. Macevicz offered him a job at AB in the summer or fall of 1993.[63]

**G.    Dr. Powers's knowledge of the Macevicz patents is imputed to AB**

Dr. Powers's knowledge of the issuance of the first Macevicz patent in 1998 and the second Macevicz patent in October, 1999 constitutes actual knowledge by AB of the issuance of the Macevicz patents. As AB's in-house patent attorney, Dr. Powers was acting as an agent of AB to protect AB's intellectual property rights; as AB argued regarding

---

[59] *Norgart*, 21 Cal. 4th at 396.
[60] Docket No. 126 (Powers Decl.) at ¶¶ 2, 3.
[61] Exh. 4 (Powers Dep.) at p. 60, line 18 – p. 61, line 11.
[62] *Id.* at p. 26, lines 2-9.
[63] *Id.* at p. 26, line 24 – p. 27, line 12.

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA

-12-

1   Dr. Macevicz's duties as AB's in-house counsel, Dr. Powers had "a duty to protect AB's

2   intellectual property in all areas of its business."[64] The very same argument AB made to

3   assail Dr. Macevicz (that he was AB's guardian of intellectual property) brings Dr. Pow-

4   ers's knowledge of the Macevicz patents squarely within the scope of his job duties as

5   AB's agent.[65]

6        AB cannot dispute that Dr. Powers: (i) prosecuted the applications that led to the

7   Macevicz patents; (ii) paid the issue fee for the first Macevicz patent; (iii) filed the appli-

8   cations that resulted in the second and third Macevicz patents; and (iv) filed the assign-

9   ment of the Macevicz patents to Lynx. Dr. Powers also knew that Dr. Macevicz worked as

10  AB's in-house counsel in the early- to mid-1990's. Thus, Dr. Powers, AB's lawyer, knew

11  all of the facts needed to discover and investigate AB's claims.

12       Dr. Powers says in his declaration that he did not share this information with any-

13  one at AB. But this is immaterial to the issue of notice -- Dr. Powers's knowledge of the

14  Macevicz patents, whether he acquired that knowledge before or after he joined AB, and

15  which related to his job duties as the guardian of all of AB's intellectual property, is im-

16  puted to AB.[66]

17       In *O'Riordan*, the defendant, Kemper, held the plaintiff O'Riordan's insurance pol-

18  icy that O'Riordan obtained through an independent agent, Hoyme.[67] During Hoyme's in-

19  teractions with O'Riordan, he discovered that she used to smoke cigarettes, but he implied

20  that she was free to check "no" in response to the insurance application question asking

21  whether she smoked.[68] Soon after selling O'Riordan the subject Kemper insurance policy,

22

---

23    [64] Docket No. 119 (Opposition to Illumina's Motion) at p. 3, line 21.

24    [65] As Dr. Powers explained in his deposition, he was also part of management in AB's legal department. Powers Dep., p. 16, lines 3-6.

25    [66] *See O'Riordan v. Federal Kemper Life Assurance*, 36 Cal. 4th 281, 288 (2005) ("'The prin-
26  cipal is charged with knowledge which his agent acquires before the commencement of the rela-
    tionship when that knowledge can reasonably be said to be present in the mind of the agent while
    acting for the principal.'" (*quoting Columbia Pictures Corp. v. DeToth*, 87 Cal. App. 2d 620, 631
27  (Cal. App. Ct. 1948)).

    [67] *O'Riordan*, 36 Cal. 4th at 283.

28    [68] *Id.* at 287.

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE
TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA

-13-

Hoyme became a Kemper insurance agent.[69] The California Supreme Court held that Kemper was charged with the knowledge that Hoyme acquired before he became Kemper's agent because "Hoyme's knowledge of [O'Riordan's] smoking…was imputed to Kemper."[70] The critical factor in imputing prior-acquired knowledge of an agent is the determination that, given the timing of events, the imputed knowledge "'can reasonably be said to be present in [his] mind' while he was acting as Kemper's agent."[71]

In *Columbia Pictures*, a movie director, DeToth, hired a lawyer, Allenberg, to act as his agent in negotiating a long-term agreement with the plaintiff movie studio.[72] During a meeting between DeToth, his agent, and the plaintiff, DeToth entered into an oral agreement that included the terms found in the plaintiff's standard form of contract for directors, the specific terms of which were not communicated to DeToth or his agent.[73] DeToth's agent, however, had prior experience with the plaintiff's standard form contracts for directors. The Court imputed the agent's prior knowledge of these terms to DeToth even though that knowledge was never communicated to him, and was acquired by Allenberg before he became DeToth's agent:

> The fact that Allenberg [the agent] acquired his knowledge of the terms of Columbia's standard form of contract for directors prior to his agency does not affect application of the rule. The principal is charged with knowledge which his agent acquires before the commencement of the relationship when that knowledge can reasonably be said to be present in the mind of the agent while acting for the principal.[74]

Here, Dr. Powers admits that he knew that the first two Macevicz patents had issued. Dr. Powers's actual knowledge of the second Macevicz patent, which issued only *one month* after he joined AB as in-house patent counsel, "can reasonably be said to be

---

[69] *Id.* at 284-85.
[70] *Id.* at 288.
[71] *Id.* at 288-89 (*quoting Columbia Pictures Corp.*, 87 Cal. App. 2d at 631).
[72] *Columbia Pictures Corp.*, 87 Cal. App. 2d at 629-30.
[73] *Id.*
[74] *Id.* at 631.

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA

-14-

present" in his mind while acting as AB's agent to protect AB's intellectual property.[75] Moreover, Dr. Powers knew that Dr. Macevicz was employed by AB in the early- to mid-1990's, at least as late as Fall 1993. These facts, and the notice provided by them, are charged to AB.

### H. AB's knowledge of the Macevicz Patents put it on inquiry notice of its current state-law claims

AB tries to minimize the effect of its notice of the Macevicz patents when it rhetorically asks "notice of what?"[76] AB then attempts analogies to cases in which other district courts applied other state laws, and to a case in which the Federal Circuit applied its own law regarding notice in the context of laches, patent infringement, willful infringement, 35 U.S.C. § 287 marking, and inequitable conduct issues.[77] These cases are not relevant to the application of California law to the applicable California statutes of limitation.

Moreover, AB's reliance on Dr. Macevicz's status as an AB fiduciary to toll the limitations period is belied by the testimony of AB's witnesses, each of whom said they immediately recognized AB's potential ownership claim upon first viewing the Macevicz patents.

First, Dr. Paul Grossman, who was the Vice President in charge of AB's patent department from 2001 and until he left AB in 2007,[78] said he considered whether Dr. Macevicz should have assigned his patents to AB "as soon as he saw the patents":

> Q. When did you first consider that AB was the rightful owner of the Macevicz patents that you were discussing with Agencourt?
>
> A. As soon as I saw the patents.
>
> Q. So when you saw the Macevicz patents, it would have occurred to you or did occur to you that based on the time that those patents issued Dr. Macevicz should have assigned them to AB?

---

[75] *O'Riordan*, 36 Cal. 4th at 288 (*quoting Columbia Pictures Corp.*, 87 Cal. App. 2d at 631.)

[76] Docket No. 119 (Opposition to Illumina's Motion) at p. 14, line 20.

[77] *Id.* at p. 14-15.

[78] Docket No. 122 (Grossman Decl.) at ¶¶ 2, 3; Exh. 3 (Grossman Dep.) at p. 83, line 13 – p. 83, line 3; p. 89, lines 5-9. Dr. Grossman led AB's patent department in early 2006, when AB says it first learned of the Macevicz patents. Docket No. 122 (Grossman Decl.) at ¶ 6.

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA

-15-

A. Yes.[79]

Second, Dr. Michael Hunkapiller, AB's chief technology officer who eventually became the CEO, had the same realization upon viewing the Macevicz patents:

> Q. When you looked at the patent, what was your thought about whether it should have been assigned to AB or not?
>
> A. Well, when I -- when I saw the date and my memory refreshes as to when Mr. Macevicz had left AB, yeah, I had a pretty definite opinion.
>
> Q. And so that was based on your review of the first page of the patent?
>
> A. Yes.
>
> Q. And was that based in part on the fact that the patent was filed on April 7th, 1995?
>
> A. Yes.[80]

It is clear from the record that all the information needed for AB to have been put on notice of its state-law claims was shown on the cover page of the Macevicz patents. Dr. Powers actually had that knowledge no later than October 1999, and therefore, so did AB. Imputing Dr. Powers's knowledge of the Macevicz patents to AB leads to one conclusion—AB had actual notice of the bases for its current state-law claims.

**I.      AB overstates the import of Macevicz's status as a fiduciary**

AB argues that the constructive notice afforded by the issuance of the Macevicz patents is not enough in this instance because Dr. Macevicz owed AB a fiduciary duty to disclose his inventions to AB.[81] The basis for AB's contention is a line of cases that hold that where a fiduciary is involved, a party is not under a duty of inquiry to discover facts that would have given it notice of its claim.[82] Thus, AB argues, citing *Bennett*,[83]

---

[79] Exh. 3 (Grossman Dep.) at p. 112, lines 4-12.

[80] Exh. 21 (Hunkapiller Dep. at p. 112, lines 2-13.

[81] *See* Docket No. 119 (Opposition to Illumina's Motion) at p. 9 (*citing U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 598 (1970)).

[82] *Id.* at 17-18 (citing to *Bennett v. Hibernia Bank*, 47 Cal. 2d 540, 563 (1956)).

[83] *Bennett v. Hibernia Bank*, 47 Cal. 2d 540, 563 (1956).

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA

-16-

*Gryczman*,[84] and *Prudential*,[85] that the public-notice function of the issuance of a patent does not apply to bar AB's claims.[86] AB argues that even with constructive notice of the Macevicz patents, it did not have a duty to investigate its potential claims.[87] As explained above, AB ignores what it *did* know through its in-house counsel, Dr. Powers, and as explained below, it overstates the import of Dr. Macevicz's fiduciary relationship with AB.

### 1.    The cases cited by AB are inapposite

All of the cases cited by AB are distinguishable on their facts from this case. None of *Bennett*, *Gryczman*, or *Prudential* involved a situation where the defendant would have reviewed the publicly available documents as part of its business. Unlike AB, the plaintiffs in *Bennett*, *Gryczman*, and *Prudential* did not have a regular practice of looking through the public record for the documents that would have provided notice of their claims, and would not regularly have searched or analyzed the public records referred to in those cases.

In *Bennett*, the court considered whether the complaint sufficiently pled enough facts to establish that the plaintiffs, Bennett, were not aware of their potential claim for ownership of a bank based on an ancestor's investment in the bank in 1864. In 1947, more than six years before the complaint was filed, fifteen newly discovered owners of the bank recorded their interest in the bank with the California Secretary of State. The court stated that the filing with the Secretary of State alone could not begin the limitations period.[88] The plaintiffs in *Bennett* were generations removed from the event that resulted in their ownership claim (an 1864 purchase of an interest in the property). The plaintiffs in *Bennett* had no reason to regularly check filings with the Secretary of State.

---

[84] *Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal.App.4th 1 (Cal. App. Ct. 2003).

[85] *Prudential Home Mortgage Co. v. Superior Court*, 66 Cal.App.4th 1236 (Cal. App. Ct. 1998).

[86] Docket No. 119 (Opposition to Illumina's Motion) at p. 9, 11.

[87] *Id.*

[88] *Bennett*, 47 Cal. 2d at 562. The bank's filing of documents in 1909 that extended the corporate life of the bank for another 50 years was also found to be insufficient to begin the limitations period. *Id.*

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: **07-CV-02845 WHA**

-17-

In *Gryczman*, the dispute involved a right of first refusal to purchase real property that required the defendant to notify the plaintiff if a bona fide offer was made on the property.[89] The plaintiff learned that the property had been conveyed to a third party only when he drove by the property, more than four years after the property was sold.[90] The *Gryczman* court noted that that plaintiff did not have a duty to monitor the recording of deeds to determine whether someone had purchased the property.[91] Indeed, it would have been unreasonable to expect the plaintiff in *Gryczman* to search for all conveyances of the subject property. Here, unlike the plaintiff in *Gryczman*, AB conducts regular searches for patents relating to its business, and it is only reasonable to believe that would include searches for patents relating to DNA sequencing, which AB contends "was (and still is)" a "significant portion of AB's business."

The facts in the *Prudential* case were even further afield from the facts here. *Prudential* was a class-action case in which a class of borrowers sued real estate lenders for failing to release their deed upon repayment of their loan.[92] The defendants alleged that each of the borrowers could have searched through the public record to find that the plaintiffs failed to release their recorded liens on the property.[93] However, in *Prudential*, title insurance companies sent the plaintiffs letters conspicuously telling plaintiffs that they "NEED NOT TAKE ACTION" to have their titles cleared of the liens.[94] The *Prudential* court found that the legislative history for the statute establishing plaintiff's right of action dictated that "the public policy that would support such a holding [i.e., barring defendants' claims based on the existence of public records] is not present here."[95] The *Prudential* court said nothing about whether this result would be appropriate in other circumstances.

---

[89] *Gryczman*, 107 Cal.App.4th at 3-4.

[90] *Id.* at 4.

[91] *Id.* at 6.

[92] *Prudential*, 66 Cal.App.4th 1240.

[93] *Id.* at 1247.

[94] *Id.* at 1248.

[95] *Id.*

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: **07-CV-02845 WHA**

-18-

Unlike the plaintiffs in *Bennett*, *Gryczman*, and *Prudential*, AB conducted numerous searches of the relevant public records relating to its technologies and businesses (including a search for patents assigned to Lynx). AB should not therefore be heard to complain that it would be unfair to find that it has constructive notice of patents and potential claims relating to its technologies and businesses.

Moreover, unlike the cases cited by AB, this is not a case where AB affirmatively decided not to conduct searches for the Macevicz patents because AB was under the belief that Dr. Macevicz, as AB's fiduciary, would automatically have assigned his rights in all of his inventions to AB. Drs. Grossman and Hunkapiller had no doubt upon viewing the Macevicz patents, and given that Macevicz was formerly employed by AB, that AB had an ownership claim to the Macevicz patents. All of the information Drs. Grossman and Hunkapiller needed to discover the bases for AB's potential state-law claims was found on the cover page of the Macevicz patents.

2.    **AB had inquiry notice**

Even the cases cited by AB hold that a party is on inquiry notice when it has "notice of facts sufficient to arouse the suspicions of a reasonable man."[96] In *Miller v Bechtel Corp.*, 33 Cal. 3d 868 (1983), the California Supreme Court addressed facts analogous to this case. The plaintiff in *Miller* entered into a divorce decree with her now ex-husband. During the divorce, the value of the couple's stock in the defendant company, Bechtel Corp., was a contentious issue.[97] Years after entering into the divorce decree, plaintiff learned that her ex-husband and the officers of Bechtel suppressed the value of her ex-husband's share of stock in Bechtel.[98] Like AB, she was not aware of any facts that showed that the defendants suppressed the value of the stock, and also like AB, she claimed that she was not under a duty of inquiry because her ex-husband owed her a fiduciary duty to provide full and correct information as to their worth.[99] The *Miller* court

---

[96] *Bennett*, 47 Cal. 2d 563.
[97] *Miller*, 33 Cal. 3d at 871.
[98] *Id.* at 872.
[99] *Id.* at 874-75.

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA

-19-

granted summary judgment and expressly stated that a plaintiff has inquiry notice even where a fiduciary is involved if plaintiff "became aware of facts which would make a reasonably prudent person suspicious, [] had a duty to investigate further, and [] was charged with knowledge of matters which would have been revealed by such an investigation."[100]

In *Miller*, the plaintiff's legal counsel in the divorce had reason to suspect that the value attributed to the stock was not its true value, and this knowledge was charged to the plaintiff even though it was never communicated to her.[101] The court also found that the plaintiff could have easily searched the public records to discover that the stock increased in value 270% within nine months of the divorce decree.[102]

AB is in the same position as the plaintiff in *Miller*. Dr. Powers, AB's in-house counsel from September 1999 to April 2007, *prosecuted the applications* that resulted in the Macevicz patents. He knew that the first Macevicz patent issued in 1998, and that the second Macevicz patent issued on October 19, 1999, one month after he joined the AB legal department. Dr. Powers also knew that Dr. Macevicz worked for AB near the time that the original Macevicz patent application was filed. He certainly was "aware of facts which would make a reasonably prudent person suspicious" that AB had a potential claim of ownership in the Macevicz patents. Indeed, Dr. Powers secured patents for AB as his primary job duty. There is no question that he was in a position to put two and two together and take notice of AB's potential ownership claim to the Macevicz patents. Because its own patent lawyer had knowledge of the existence of the Macevicz patents, AB is charged with that knowledge and all of the claims that follow from that notice.[103]

Furthermore, the Macevicz patents were published in the Patent Office *Official Gazette*, and were available to view by the public and for full-text searching on the Internet

---

[100] *Id.* at 875.

[101] *Id.*

[102] *Id.*

[103] *See* section III.G *supra.*

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: **07-CV-02845 WHA**

-20-

as soon as the first Macevicz patent issued in 1998.[104] As in *Miller*, the ease with which AB could have discovered the Macevicz patents, given Dr. Powers's knowledge, is more than enough to conclude, as a matter of law, that the statute of limitations began to run as soon as the first Macevicz patent issued in May 1998, and at least by October 19, 1999, when the second patent issued while Mr. Powers was an AB in-house patent lawyer.

In *I-Enterprise Co. LLC v. Draper Fisher Jurvetson Management Co. V, LLC*, 2005 WL 3590984 (N.D. Cal. Dec. 30, 2005), the court applied the holding in *Miller* to grant summary judgment where the plaintiff's counsel was sent quarterly reports showing the defendant fund's losses that would have alerted plaintiff to his claim, even though the plaintiff's lawyer claimed to not have received the reports.[105] The defendant, a limited partnership, owed the plaintiff, a limited partner, a fiduciary duty to disclose information related to their investment of the fund's assets.[106] The plaintiff's counsel was sent the fund prospectus, although he could not remember seeing the particular prospectus that would have given him notice of the relevant facts.[107] The *I-Enterprise* court, applying the holdings in *Columbia Pictures* and *Miller*, charged the plaintiff with the knowledge that his counsel would have had if he had reviewed the fund prospectus that was sent to his office.[108] Relying on this "notice," Judge Chesney granted summary judgment that the statute of limitations barred plaintiff's claim because the fund prospectus was sent to plaintiff's counsel, even though plaintiff's counsel couldn't recall the information disclosed in the prospectus, and that information was never communicated to the plaintiff.[109]

Like the plaintiff in *I-Enterprise*, AB's own in-house patent counsel remained silent even though he was indisputably aware that Dr. Macevicz, a former AB employee, applied for patents relating to "DNA sequencing" at or about the time when he was em-

---

[104] Patents were conveniently available for viewing by the public on the internet and for full-text searching in January 1997. *See* Exh. 26 (N.Y. Times Article, dated March 10, 1997) at 1.

[105] *I-Enterprise*, 2005 WL 3590984 at *16.

[106] *Id.* at *3.

[107] *Id.* at *16.

[108] *Id.*

[109] *Id.* at *15-18.

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA

-21-

ployed by AB. Indeed, Dr. Powers secured those very patents for Dr. Macevicz, and knew that they issued. In *I-Enterprise*, Judge Chesney had to infer that the prospectus was sent to the plaintiff's counsel; here, there can be no doubt that Dr. Powers knew that the Macevicz patents issued and were not assigned to AB.[110]

### J.    Summary judgment is warranted in view of AB's constructive and actual notice of the Macevicz patents

As stated by the courts in *Miller* and *I-Enterprise*, if AB was aware of "facts which would make a reasonably prudent person suspicious," AB then had "a duty to investigate further."[111] Even if AB failed to investigate those facts further, it was "charged with knowledge of matters which would have been revealed by such an investigation."[112] As a matter of law, AB was aware of the Macevicz patents either through its in-house counsel's knowledge or through the constructive notice provided by the issuance of the Macevicz patents; and according to Drs. Grossman and Hunkapiller, they each recognized AB's potential ownership claim as soon as they saw the Macevicz patents. AB is charged with this knowledge of its potential state-law ownership claims by no later than the October 19, 1999 issue date for the '119 patent, and AB therefore had a duty to investigate why these patents were not assigned to AB. AB's state law claims are thus time-barred.

### K.    This Court should deny AB's summary judgment motion

In its opposition to Defendants' motion for summary judgment, AB argues that questions of fact exist that prevent this Court from granting Defendants' motion for summary judgment on the statute of limitations.[113] Indeed, AB claims that the existence of constructive notice, and the knowledge that would flow from that notice, raises material

---

[110] *Id.* at *15-16; Exh. 4 (Powers Dep.) at p. 65, line 12 – p. 66, line 6.

[111] *Miller*, 33 Cal. 3d at 875; *I-Enterprise*, 2005 WL 3590984 at *15 (*quoting Miller*, 33 Cal. 3d at 875).

[112] *Id.*

[113] Docket No. 119 (Opposition to Illumina's Motion) at p. 7, lines 17-18 ("In ruling on AB's motion for summary judgment less than a month ago, the Court held that issues of material fact existed as to whether the Patents were related to AB's business"); p. 8, lines 15 – 16 ("Whether there is constructive notice is a question of fact."); p. 9, lines 1 – 2 ("Defendants have failed to present any of the other material facts that bear upon the determination of whether AB had constructive notice.").

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA

-22-

1    questions of fact that preclude summary judgment.[114] In spite of this, AB argues that, with

2    respect to its motion on the same issue, there are no questions of material fact regarding

3    its actual or constructive notice, and whether AB had a duty of inquiry once charged with

4    those facts.

5         Defendants believe that there are no genuine issues of disputed material fact that

6    could bar grant of their instant motion. As explained above, the undisputed facts show that

7    AB was on inquiry notice regarding the ownership of the Macevicz patents, and that AB is

8    charged with the knowledge that would have resulted from such inquiry. Accordingly, De-

9    fendants' motion should be granted and AB's cross-motion should be denied. If this Court

10   finds, however, that a genuine issue of disputed material fact exists, it should deny both

11   motions and this issue should be tried to the jury starting September 29, 2008.

12   **IV.    CONCLUSION**

13        AB had notice of its claims through either the constructive notice provided by the

14   issuance of the Macevicz patents, or AB's in-house counsel's knowledge of the issuance

15   of the first two Macevicz patents. Consequently, Defendants' motion for summary judg-

16   ment on AB's state-law claims for failure to comply with the statute of limitations should

17   be granted, and AB's cross-motion should be denied.

18

19

20

21

22

23

24

25

26

---

27        [114] *Id.* at p. 8, lines 11 – 14 ("Defendants' bright-line theory of constructive notice finds no
     support in the case law because constructive notice depends on an overall assessment of reason-

28   ableness, not an automatic application of rigid rules.")

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE
TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA

-23-

1

Dated: February 28, 2008          Respectfully submitted,

2

3
                                  s/ John R. Labbé
4                                 _____
                                  KEVIN M. FLOWERS (admitted pro hac vice)
                                  THOMAS I. ROSS (admitted pro hac vice)
5                                 JEFFREY H. DEAN (admitted pro hac vice)
                                  JOHN R. LABBE (admitted pro hac vice)
6                                 CULLEN N. PENDLETON (admitted pro hac vice)
                                  MARSHALL, GERSTEIN & BORUN LLP
7                                 6300 Sears Tower
                                  233 South Wacker Drive
8                                 Chicago, IL 60606-6357
                                  (312) 474-6300
9                                 (312) 474-0448 (facsimile)
                                  E-Mail: kflowers@marshallip.com
10                                E-Mail: tross@marshallip.com
                                  E-Mail: jdean@marshallip.com
11                                E-Mail: gstanton@marshallip.com
                                  E-Mail: jlabbe@marshallip.com
12                                E-Mail: cpendleton@marshallip.com

13

14
                                  *Attorneys for Defendants Illumina, Inc. and*
15                                *Solexa, Inc.*

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS': (1) REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE-LAW CAUSES OF ACTION FOR FAILURE
TO COMPLY WITH THE STATUTES OF LIMITATIONS; AND (2) OPPOSITION TO PLAINTIFF'S CROSS-MOTION; CASE NO: 07-CV-02845 WHA

-24-