BRYAN WILSON (CA SBN 138842)
ERIC C. PAI (CA SBN 247604)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792
E-Mail: BWilson@mofo.com; EPai@mofo.com

DAVID C. DOYLE (CA SBN 70690)
STEVEN E. COMER (CA SBN 154384)
BRIAN M. KRAMER (CA SBN 212107)
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, California  92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125
E-Mail: DDoyle@mofo.com; SComer@mofo.com;
BMKramer@mofo.com

Attorneys for Plaintiff
APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ILLUMINA, INC., a Delaware corporation, SOLEXA, INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual,<br><br>Defendants. | Case No.   C07 02845 WHA<br><br>**APPLERA CORPORATION - APPLIED BIOSYSTEMS GROUP'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS**<br><br>Date:   March 20, 2008<br>Time:   8:00 a.m.<br>Place:   Courtroom 9, 19th Floor<br>Judge:   William H. Alsup |

AB'S REPLY ISO CROSS-MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS
Case No. C07 02845 WHA
sd-414107

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..........................................................................................................................1

II. ARGUMENT ................................................................................................................................2

    A. The Statutes of Limitations Did Not Begin to Run Until AB First Became Suspicious of Dr. Macevicz in 2006 ...............................................................................2

        1. Dr. Powers's Knowledge of the Macevicz Patents Would Not Make a Reasonably Prudent Person Suspicious of Dr. Macevicz ........................4

        2. Even if Dr. Powers Knew of "Operative Facts," He Was Ethically Precluded From Sharing Those With AB ..................................................7

    B. AB Was Not Notified of the Macevicz Patents Through Any Patent Searching Program ............................................................................................................8

    C. The Court Should Apply Its Prior Ruling Regarding the Relationship Between Dr. Macevicz's Patents and AB's Business to the Present Motions ........9

    D. Defendants Continue to Misrepresent the Facts and Law of *IBM* and *Hartley Pen* ..................................................................................................................10

III. CONCLUSION ..........................................................................................................................12

# TABLE OF AUTHORITIES

Page

*Bennett v. Hibernia Bank*,
  47 Cal. 2d 540 (1956) ............................................................................................................ 11

*Columbia Pictures Corp. v. DeToth*,
  197 P.2d 580 (Cal. Ct. App. 1948) ........................................................................................... 6

*DDB Techs. v. MLB Advanced Media*,
  No. 2007-1211, __ F.3d __, 2008 U.S. App.
  LEXIS 3086 (Fed. Cir. Feb. 13, 2008) ................................................................................... 12

*Eisenbaum v. W. Energy Res. Inc.*,
  267 Cal. Rptr. 5 (Cal. Ct. App. 1990) ...................................................................................... 3

*Flatt v. Super. Ct.*,
  9 Cal. 4th 275 (1994) ................................................................................................................ 7

*Gryczman v. 4550 Pico Partners, Ltd.*,
  131 Cal. Rptr. 2d 680 (Cal. Ct. App. 2003) ........................................................................... 11

*Hamilton v. State Farm Fire & Cas. Co.*,
  270 F.3d 778 (9th Cir. 2001) .................................................................................................. 10

*Hartley Pen Co. v. Lindy Pen Co.*,
  16 F.R.D. 141 (S.D. Cal. 1954) ................................................................................ 2, 10, 11, 12

*Hobart v. Hobart Estate Co.*,
  26 Cal. 2d 412 (1945) ............................................................................................................... 3

*IBM v. Zachariades*, No. C 91-20419-JW,
  1993 WL 443409 (N.D. Cal. Oct. 27, 1993) ................................................................ 2, 10, 11

*I-Enter. Co. v. Draper Fisher Jurvetson Mgmt. Co. V*,
  No. C-03-1561 MMC, 2005 U.S. Dist LEXIS 39481
  (N.D. Cal. Dec. 30, 2005) ......................................................................................................... 3

*Kimberly Corp. v. Hartley Pen Co.*,
  237 F.2d 294 (9th Cir. 1956) ............................................................................................ 11, 12

*Miller v. Bechtel Corp.*,
  33 Cal. 3d 868 (1983) .................................................................................................. 1, 3, 4, 8

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ............................................................................................................... 10

*O'Riordan v. Fed. Kemper Life Assurance Co.*,
  36 Cal. 4th 281 (2005) .............................................................................................................. 6

# TABLE OF AUTHORITIES
### (continued)

**Page**

*People v. Baylis*,
 43 Cal. Rptr. 3d 559 (Cal. Ct. App. 2006) .................................................................................... 7

*People v. SpeeDee Oil Change Sys., Inc.*,
 20 Cal. 4th 1135 (1999) ................................................................................................................ 7

*Prudential Home Mortgage Co. v. Super. Ct.*,
 78 Cal. Rptr. 2d 566 (Cal. Ct. App. 1998) .................................................................................. 11

**STATUTES**

California Rules of Professional Conduct R. 3-310(E) ...................................................................... 7

## I. INTRODUCTION

AB's cross-motion for summary judgment should be granted based on the legal authority cited in Defendants' reply and the undisputed evidence just provided by Defendants' discovery. In their reply Defendants rely on *Miller v. Bechtel Corp.*, 33 Cal. 3d 868 (1983), which states that a fiduciary, such as Dr. Macevicz, can rely on constructive notice only if the plaintiff, here AB, is aware of facts that would lead a reasonable person to be suspicious of wrongdoing by the fiduciary. *Id*. at 875. The California Supreme Court further stated that absent a factual basis to suspect the fiduciary of wrongdoing, there is no duty to search public records. *Id.* Despite having now taken all of the depositions they requested of the relevant AB attorneys and decision makers, Defendants have presented no evidence that AB knew, or had a basis to suspect, that Dr. Macevicz had taken patents belonging to AB.

Instead of presenting evidence that AB knew of, or had reason to suspect, Dr. Macevicz's wrongdoing, Defendants make arguments based on conjecture that is contradicted by the evidence. Defendants' lead conjecture – that AB had knowledge of Dr. Macevicz's wrongdoing through Dr. Powers's knowledge of the Macevicz patents – is contradicted by Dr. Powers's deposition taken just two weeks ago. Although 24 pages long, Defendants' reply contains not a single word of Dr. Powers's unequivocal testimony that he believed Dr. Macevicz was working for Lynx, not AB, when he made his invention and filed the original patent application. (*See* accompanying Declaration of Brian M. Kramer ("Kramer Decl."), Ex. 1 at 85:5-23.) This makes Dr. Powers's knowledge of the Macevicz patents completely benign. Dr. Powers had no knowledge or suspicion of wrongdoing by Dr. Macevicz that can be imputed to AB.

Defendants also continue to speculate that AB could have become aware of the Macevicz patents by conducting patent searches. But, they provide no evidence that AB ever conducted a patent search that revealed, or even could have revealed, the Macevicz patents. The evidence of record is undisputed that AB conducted patent searches only on an *ad hoc* basis, and never conducted a search that revealed, or could have revealed, the Macevicz patents until 2006. Further, AB had no duty to search public records until it had reason to suspect Dr. Macevicz of wrongdoing. *Miller*, 33 Cal. 3d at 875. In sum, there is no evidence that AB had a basis to

1  suspect Dr. Macevicz of wrongdoing until it first discovered the Macevicz patents in 2006, and,

2  accordingly, AB's cross-motion for summary judgment should be granted.

3         To grant Defendants' motion for summary judgment, the Court must rule that issuance of

4  a patent starts the statute of limitations as a matter of law for all purposes without regard to tolling

5  or other factual circumstances. No binding case law supports this argument. Defendants' two

6  non-binding cases, *IBM* and *Hartley Pen*, provide neither the law Defendants seek nor the factual

7  similarity required to make them applicable here.[1]

8      **II.**    **ARGUMENT**

9          **A.**    **The Statutes of Limitations Did Not Begin to Run Until AB First Became Suspicious of Dr. Macevicz in 2006.**

10

11         Within months of discovering Dr. Macevicz's wrongdoing, AB brought suit against

12  Defendants for breach of contract, breach of fiduciary duty, conversion, and other causes of

13  action based on Dr. Macevicz's filing of patents in his own name while employed by AB and

14  thereafter assigning them to Lynx. (*See generally* Docket No. 46.) AB specifically alleged that it

15  did not discover the Macevicz patents until February 2006. (*Id.* ¶ 14.) In its pleadings,

16  Defendants denied that AB first became aware of the Macevicz patents at that time, apparently

17  taking the position that AB had actual knowledge of the Macevicz patents before February 2006.

18  (Docket No. 55 ¶ 14; Docket No. 118 ¶ 14.) In their motion for summary judgment on this issue,

19  Defendants presented no evidence of actual knowledge and instead retreated to a position of

20  constructive knowledge based on the issuance of the patents as public records. After full

21  discovery on the issue, Defendants submitted their opposition to AB's cross-motion for summary

22  judgment and further retreated from their first constructive notice theory to a theory of

23  constructive notice based on Dr. Powers's employment at AB. Thus, there is no genuine issue of

---

[1] Because Defendants' reply brief in support of their motion for summary judgment includes new deposition testimony that was not part of their opening brief, AB respectfully requests that the Court consider this brief as part of AB's opposition to Defendants' motion for summary judgment in addition to a reply brief in support of AB's cross-motion for summary judgment on the same topic. While AB understands that sur-reply briefs are disfavored, we respectfully suggest that Defendants' reliance on intervening discovery following AB's opposition brief warrants some discussion of Defendants' motion in this brief.

material fact that AB did not have actual knowledge of the Macevicz patents until 2006, and the only issue before the Court is whether the statute of limitations began to run before AB had actual knowledge in 2006.

Whether the statute of limitations began to run prior to AB's having received actual notice of its claims against Dr. Macevicz is a highly factual inquiry. *Hobart v. Hobart Estate Co.*, 26 Cal. 2d 412, 437-39 (1945). Defendants criticize AB's reliance on *Hobart*, drawing the immaterial distinction that constructive notice is a two step analysis, only the first of which is technically labelled "constructive notice." Regardless of whether constructive notice is a one part or a two part test, the bottom line is that the Court cannot conclude that AB's claims are barred by the statutes of limitations without examining the facts and determining whether AB had a factual basis to be suspicious of Dr. Macevicz.

The new cases cited by Defendants make clear that, "in cases involving a fiduciary relationship between the parties, 'facts which ordinarily require investigation may not incite suspicion' and 'the usual duty of diligence to discover facts does not exist'; consequently, 'the limitations period does not begin to run until plaintiff actually discovers the facts constituting the cause of action, even though the means for obtaining the information are available.'" *I-Enter. Co. v. Draper Fisher Jurvetson Mgmt. Co. V*, No. C-03-1561 MMC, 2005 U.S. Dist LEXIS 39481, at *50-*51 (N.D. Cal. Dec. 30, 2005) (quoting *Eisenbaum v. W. Energy Res. Inc.*, 267 Cal. Rptr. 5, 11 (Cal. Ct. App. 1990)). Because of the fiduciary duty owed by Dr. Macevicz to AB, "the usual duty of diligence to discover facts does not exist." *Id.* at 50. That does not end the inquiry. The California Supreme Court has noted that "if [plaintiff] became aware of facts which would make a reasonably prudent person suspicious, [plaintiff] had a duty to investigate further, and [plaintiff] was charged with knowledge of matters which would have been revealed by such an investigation." *Miller*, 33 Cal. 3d at 875. Thus, a duty upon AB to investigate could arise only by AB becoming aware of facts which would have made a reasonably prudent person suspicious of Dr. Macevicz. The Court in *Miller* specifically addressed discovery of wrongdoing through the search of public records and noted that, in the case of a fiduciary relationship, the obligation to search public records is not triggered until "<u>after</u> plaintiff's suspicions [have] been aroused."

1  *Id.* (emphasis added).  Applying these legal standards put forth by Defendants, the relevant

2  factual inquiry in this case is:  When did AB become aware of facts which would make a

3  reasonably prudent person suspicious of Dr. Macevicz?

### 1. Dr. Powers's Knowledge of the Macevicz Patents Would Not Make a Reasonably Prudent Person Suspicious of Dr. Macevicz.

6  Defendants claim that Dr. Powers "knew about the operative facts underlying AB's state-

7  law claims." (Docket No. 138 at 12.)  That is false.  Each state law cause of action includes as its

8  most important operative fact that Dr. Macevicz developed and applied for his DNA sequencing

9  patents while he was employed at AB.  It is undisputed that Dr. Powers did not know this.

10  Dr. Powers believed that Dr. Macevicz worked for Lynx when he filed the application for

11  the patents-at-issue in this case.  (Powers Decl. ¶ 5.)  That understanding was entirely reasonable.

12  First, Dr. Powers did not file the first Macevicz patent application in April 1995.  Rather, Dr.

13  Macevicz filed that application himself, a few months before he left AB in August 1995.  (*See,*

14  *e.g.*, Docket No. 98-2 at 75 of 101.)  Dr. Powers did not become involved in prosecution of the

15  Macevicz patents until October 1996, 18 months after the filing of the original application, and 14

16  months after Dr. Macevicz had joined Lynx.  (Powers Decl. ¶ 4.)  When Dr. Powers first worked

17  on the Macevicz patent applications, an assignment from Dr. Macevicz to Lynx was already on

18  file with the PTO.  That 1995 assignment did not arouse suspicion because Dr. Powers knew only

19  that Dr. Macevicz had worked at AB until 1993.[2]  (Kramer Decl., Ex. 1 at 30:12-31:4.)  Further,

20  as explained by Dr. Powers at his deposition, when he began working on the Macevicz patent

21  applications in October 1996, he was already working on other Lynx projects from Dr. Macevicz.

22  (Powers Decl. ¶ 4; Kramer Decl., Ex. 1 at 85:5-16.)  Dr. Powers reasonably believed that the

23  Macevicz patent application was just another Lynx project.

---

[2] In their opposition, Defendants mislead the Court in describing Dr. Powers's knowledge of Dr. Macevicz's employment at AB. Dr. Powers knew only that Dr. Macevicz was employed at AB in 1993. Rather than tell the Court this fact, Defendants represent 1993 as (1) "around the time that Dr. Macevicz filed his original patent application," i.e., 1995; (2) "in the early to mid-1990's"; and (3) "near the time that the original Macevicz patent application was filed." (Docket No. 138 at 1, ll. 8-9; 12, ll.16-17; 20, ll. 14-15.)

AB'S REPLY ISO CROSS-MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS
Case No. C07 02845 WHA
sd-414107

4

When AB sought to discover the above evidence, Defendants hid behind the attorney-client privilege. Specifically, when AB asked Dr. Powers at his deposition whether Dr. Macevicz told Dr. Powers about his employment history, Defendants instructed the witness not to answer:

> Q. Okay. Now, did Steve Macevicz tell you that at the time he applied for the [first Macevicz patent application], at the time he filed the ['663] patent application, that he was an employee of Applied Biosystems?
>
> MR. LABBE: Objection on the basis of the attorney-client privilege. I'm going to instruct the witness not to answer that question.

(Kramer Decl., Ex. 1 at 83:11-17.) Eventually, Dr. Powers was allowed to explain why he thought that Dr. Macevicz worked at Lynx:

> Q. Okay. And when you were working on the Macevicz patent applications, who did you think was Macevicz' employer at the time the '633 patent application was filed?
>
> A. Lynx
>
> Q. Why did you think that?
>
> A. For a couple of reasons. Because at some point -- well, because of other work that was sent to me by Steve with -- when he was at Lynx and under Lynx' letterhead and so on, I understood that any of the cases that I was handling -- you could say I inferred this -- were owned by Lynx.
>
> And further, when the first of the Macevicz patents -- or I should say "patent application" was sent to me, it had already been filed by Steve and, to the best of my recollection, was associated with an assignment document assigning the ownership from Steve, who was the only named inventor, to Lynx.
>
> And I was aware of the existence of that document at some time after I undertook responsibility for the first application in this set of Macevicz patents.

(*Id.* at 85:5-86:2.) Under the undisputed facts, no reasonable juror could conclude that Dr. Powers should have known something was awry. Defendants have provided no evidence that would make a reasonably prudent person in Dr. Powers's shoes suspicious of Dr. Macevicz.[3]

---

[3] Assuming *arguendo* that Dr. Powers knew that Dr. Macevicz worked at AB when Macevicz filed the patent application, Defendants have likewise provided no evidence that Dr. Powers had any reason to believe that Macevicz had not been granted permission to take his invention with him to Lynx.

AB'S REPLY ISO CROSS-MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS
Case No. C07 02845 WHA
sd-414107

5

Because Dr. Powers did not know that Dr. Macevicz worked at AB when he applied for the DNA sequencing patents at issue in this case, there is no "knowledge" to impute to AB. Under California law, "[t]he principal is charged with knowledge which his agent acquires before the commencement of the relationship when that knowledge can reasonably be said to be present in the mind of the agent while acting for the principal." *O'Riordan v. Fed. Kemper Life Assurance Co.*, 36 Cal. 4th 281, 288 (2005) (quoting *Columbia Pictures Corp. v. DeToth*, 197 P.2d 580, 587 (Cal. Ct. App. 1948)). Dr. Powers testified that he did not have the Macevicz patents in mind when working at AB, let alone any sense of wrongdoing on the part of Dr. Macevicz:

> Q. And while you were a patent attorney at AB, you knew about the Macevicz patents; is that correct?
>
> A. It depends on what you mean by "knew about."
>
> Q. Well, you knew that at least the first two of the Macevicz patents had issued; is that correct?
>
> A. Let me answer it this way: To know something, you have to have it in your mind. The Macevicz patents, the two -- the first two of which issued during my employment at Dehlinger, I certainly knew about at the time of the grant, but they were just two of many, many matters that I handled during that time, not all of which resulted even in granted patents and not all of which were US. And so they were hardly at the forefront of my mind at any particular time and were less so after I left Dehlinger.
>
> And so I cannot say that I knew of them during my time at Applied Biosystems because, in fact, I had forgotten about them. And if they came to mind, I don't recall that in the least, nor was there any -- well, I'm going further than I think I need to based on what I've said.
>
> Q. So when you say you had forgotten about them, you hadn't completely forgotten about those patents, had you?
>
> A. I don't know what you mean by "completely." They were not in my mind. I had plenty of other things to think about, including the ongoing docket of work I had at Applied Biosystems during my employment there, which was quite extensive.
>
> Q. So thinking about it now, you remember that you forgot about the patents when you went to AB?
>
> A. I -- that is a fair statement. Let me just clarify why it's a fair statement. I -- because I have no recollection of ever even thinking about them past my employment at Dehlinger, nor having even a

        reason to think back to them.  There is nothing that I can -- that I
can recall right now to refresh my memory of this particular work,
of the myriad of work I had performed at Dehlinger.

(Kramer Decl., Ex. 1 at 65:7-67:1.)[4]

### 2. Even if Dr. Powers Knew of "Operative Facts," He Was Ethically Precluded From Sharing Those With AB.

California law prohibits an attorney from representing clients with adverse interests, including conflicts of interest between current and former clients. "When a conflict arises out of the successive representation of a former and a current client, disqualification turns on whether there is a *substantial relationship* between the former representation and the current representation." *People v. Baylis*, 43 Cal. Rptr. 3d 559, 568 (Cal. Ct. App. 2006) (emphasis added); *see also People v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1146 (1999); Cal. Rules of Prof'l Conduct R. 3-310(E).  Where the representations are substantially related, "access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory." *Flatt v. Super. Ct.*, 9 Cal. 4th 275, 283 (1994).

Therefore, if Dr. Powers had known about Dr. Macevicz's misconduct in applying for the patents (which he did not), Dr. Powers would have been barred from sharing this information with AB.  The two representations would have been adverse and substantially related – the first representation was to prosecute the patents *for* Dr. Macevicz, and the second, hypothetical representation would have required Dr. Powers to provide information *against* Dr. Macevicz concerning his taking those same Patents from AB.  Dr. Powers would have been ethically precluded from informing AB of its claims regarding the patents.  Defendants' argument that information should be imputed to AB that Dr. Powers did not have, and ethically would have been precluded from sharing even if he did have, is untenable.  Specifically, Defendants' theory of constructive notice by imputation requires the Court to conclude that:  (1) Dr. Powers had

---

[4] This clear testimony of Dr. Powers just two weeks ago contradicts the assertion in Defendants' opposition that "Dr. Powers knew that the '119 patent issued while he was working at AB." (Docket No. 138 at 4, ll. 18-19.)

1  knowledge which he did not have; (2) Dr. Powers knowingly accepted his position at AB in
2  breach of his duties to Dr. Macevicz as a former client; and (3) Dr. Powers should have provided
3  information to AB adverse to his former client.

      **B.    AB Was Not Notified of the Macevicz Patents Through Any Patent Searching Program.**

6        AB's patent searching efforts are only relevant if the Court first finds that AB was aware
7  of facts that would cause a reasonably prudent person to suspect that Dr. Macevicz had stolen
8  patents from AB.  Absent a factual basis for such suspicion, there was no duty to investigate.
9  *Miller*, 33 Cal. 3d at 875 (noting that the obligation to search public records is not triggered until
10 "after plaintiff's suspicions had been aroused").  As explained above, there was no reason to be
11 suspicious in the first place.

12       Assuming *arguendo* that there is some significance to AB's patent searching, Defendants
13 grossly mischaracterize the record by stating, without citation, that "AB conducts regular searches
14 for patents relating to its business." (Docket No. 138 at 18.)  The record only shows that AB
15 conducts targeted patent searches when warranted for a particular purpose. (Bortner Decl. ¶¶ 3-
16 5.)  Defendants emphasize that AB conducted a search for patents issued to Lynx in 1996.  Like
17 AB's other patent searches, that particular search was conducted for a specific purpose – to
18 evaluate Lynx's 1996 offer to license certain Lynx technologies.  (*Id.* ¶ 4.)  Defendants wrongly
19 suggest that AB routinely conducted searches for patents assigned to Lynx after Dr. Macevicz's
20 patents began issuing in 1998.  The record is undisputed that no additional searches for Lynx
21 patents were conducted after Lynx offered AB its technologies in 1996.  (Bortner Decl. ¶ 4;
22 Kramer Decl., Ex. 2, Bortner Depo. at 47:11-48:1.)

23       AB's principal brief in support of its motion sets forth the impracticality of monitoring all
24 AB employees through open-ended, untargeted patent searches.  Defendants pretend that AB's
25 business was solely related to DNA sequencing, and that a simple search for patents having
26 "DNA sequencing" in the title would have uncovered 80 patents, including two of the Macevicz
27 patents.  (Docket No. 138 at 11.)  But DNA sequencing was just one of many areas of AB's
28 business at the time.  (Hunkapiller Decl. ¶ 2.)  If AB were searching for patents related to all of

AB'S REPLY ISO CROSS-MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS
Case No. C07 02845 WHA
sd-414107

8

AB's business, the volume of patents would have been in the thousands each month. (Pai Decl. ¶¶ 9-13.) AB had no reason to suspect that it needed to do a search directed to "DNA sequencing" as opposed to any other field of AB's business. Moreover, AB had no reason to suspect that it needed to do a search for patents issued to Dr. Macevicz as opposed to any of the other 20,000+ current and former AB employees.

To be sure, AB eventually found the Macevicz patents in a patent search in 2006. But that discovery came in a targeted search for a particular purpose. At that time, AB was considering acquiring Agencourt Personal Genomics. (Bortner Decl. ¶ 7; Fung Decl. ¶ 5.) As part of its due diligence, AB commissioned a patent search. (Kramer Decl., Ex. 2, Bortner Depo. at 18:25-19:12.) When the Macevicz patents turned up, AB discovered Dr. Macevicz's wrongdoing and initiated this litigation. There is no basis to conclude as a matter of fact, or as a matter of law, that the Macevicz patents were discovered earlier or should have been discovered earlier.

**C.    The Court Should Apply Its Prior Ruling Regarding the Relationship Between Dr. Macevicz's Patents and AB's Business to the Present Motions.**

On January 17, 2008, this Court ruled that whether the Macevicz patents were related to AB's business in 1995 is a disputed issue of fact. AB respectfully disagrees with the Court's ruling. For purposes of this motion, AB is not switching positions. Rather, it is only asking the Court to apply its prior ruling, which was the ruling sought by Defendants.

The Macevicz patents were, of course, related to AB's business. It appears that Defendants, now needing to do so, are prepared to recognize the obvious relationship between AB's business and the Macevicz patents. DNA sequencing is and has been an important component of AB's business since 1995 and before. (*See generally* Docket No. 61 at 2; Docket No. 63, Wilson Decl., Ex. 1-2.) Dr. Macevicz filed a patent application regarding a form of DNA sequencing. Upon recently seeing the Macevicz patents for the first time, and then connecting the dots as to Dr. Macevicz's dates of employment at AB and his obligation to disclose and assign the patents to AB, Drs. Grossman and Hunkapiller immediately knew that Dr. Macevicz had improperly taken the inventions with him to Lynx.

Defendants ignore their own "admissions" that "Dr. Macevicz's inventions did not relate to the business or actual or demonstrably anticipated research or development activities of AB in 1994-1995. . . ." (*See, e.g.*, Docket No. 76 at 16.) Defendants went so far as to say that "[a] jury not only *could* conclude that Dr. Macevicz's inventions were unrelated to AB's business, but most likely *would* reach such a conclusion in light of the overwhelming evidence of AB's knowledge of, and disinterest in, that technology for more than a decade after Dr. Macevicz's employment had terminated." (*Id.*)

Whether the finding that there are disputed issues of fact on this issue is appropriately labeled "law of the case" is immaterial because, at minimum, Defendants' flip-flopping is a classic case of judicial estoppel. Under *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001), a party is precluded from taking one position and later taking the opposite position when: (1) the later position is "clearly inconsistent" with the earlier position; (2) the party succeeded in persuading a court to accept that party's earlier position; and (3) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *See also Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001). All three elements are met here. First, Defendants claimed two months ago that whether Dr. Macevicz's inventions related to AB's business was a disputed issue of fact. Now, without any change of fact or law on this topic, they ask the Court to reach the opposite conclusion. Second, Defendants succeeded in persuading the Court to adopt its earlier position. (Docket No. 88 at 7.) Finally, Defendants would derive an unfair advantage if they were permitted to defeat AB's first summary judgment motion with their "unrelated" position and then turn around and win their summary judgment motion on their "related" position. Whatever legal doctrine the Court applies, Defendants are precluded from having it both ways.

### D. Defendants Continue to Misrepresent the Facts and Law of *IBM* and *Hartley Pen*.

Defendants' original, extreme theory that issuance of a patent constitutes constructive notice as a matter of law for statute of limitations purposes depends on factual and legal exaggeration of the *IBM* and *Hartley Pen* cases, bordering on misrepresentation. Factually,

AB'S REPLY ISO CROSS-MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS
Case No. C07 02845 WHA
sd-414107

10

Defendants do acknowledge that *IBM* is distinguishable because, unlike Mr. Zachariades, the scientist-inventor in *IBM*, Dr. Macevicz owed AB a fiduciary duty to disclose facts apprising AB of its claims. Defendants fail to acknowledge the additional fact that the scientist-inventor in *IBM* specifically asked IBM, through its chief patent attorney, to disclaim the company's interest in Zachariades's invention the same month that Zachariades's first patent issued. *IBM v. Zachariades*, No. C 91-20419-JW, 1993 WL 443409, at *1 (N.D. Cal. Oct. 27, 1993). Here, Dr. Macevicz himself was AB's chief patent attorney, and he never asked AB to disclaim any interest in the three patents-in-suit. Thus, while IBM was placed on notice that Zachariades was actively seeking to deprive IBM of its rights to his invention, AB had no notice of Dr. Macevicz's efforts to deprive AB of its ownership.

Legally, *IBM* does not stand for the absolute rule suggested by Defendants – that issuance of the Zachariades patents alone was dispositive of IBM's statue of limitations challenge. The district court held that whether IBM had constructive notice of the patent-in-suit was a question of fact, and the specific inquiry was whether IBM "discovered or should have discovered [its] claims." *Id.* at *2. Under that factual inquiry, the district court noted that Zachariades's statements made when seeking a disclaimer of the inventions by IBM could have tolled the statute of limitations, but IBM failed to present evidence that it relied on those statements. *Id.* at *3. Here, proof of reliance is not required because Dr. Macevicz owed a fiduciary duty to AB to prevent theft of AB's patent rights. *Bennett v. Hibernia Bank*, 47 Cal. 2d 540, 562 (1956); *Gryczman v. 4550 Pico Partners, Ltd.*, 131 Cal. Rptr. 2d 680, 683 (Cal. Ct. App. 2003); *Prudential Home Mortgage Co. v. Super. Ct.*, 78 Cal. Rptr. 2d 566, 571-72 (Cal. Ct. App. 1998).

Likewise, Defendants continue to misrepresent the holdings and applicability of *Hartley Pen*. Most importantly, they still do not account for the subsequent Ninth Circuit opinion, which explains that the amended complaint survived a summary judgment motion based on the statute of limitations and laches. *Kimberly Corp. v. Hartley Pen Co.*, 237 F.2d 294, 297 (9th Cir. 1956). Instead, Defendants rely narrowly and inappropriately on the district court opinion, which merely granted an early motion to dismiss with leave to file an amended complaint. *Hartley Pen Co. v. Lindy Pen Co.*, 16 F.R.D. 141, 158 (S.D. Cal. 1954). The district court there expressly stated that

1  the problem was deficient *pleading* – the original complaint "plead[ed] neither the date of
2  discovery nor the circumstances surrounding discovery of the alleged fraud." *Id.*
3      The Ninth Circuit also noted that, *based on a voluminous factual record and after a full
4  trial*, it was later found that the plaintiff's claims to equitable relief were barred by laches.
5  *Kimberly*, 237 F.2d at 297 ("The length of the transcript on appeal and the many trial exhibits
6  now before us make it impracticable to burden this opinion with a recital of the text of the many
7  findings and the many facets of the evidence . . . ."). Without the full factual record, there is no
8  way to determine exactly what considerations resulted in the final outcome, but the Ninth Circuit
9  opinion does indicate there was evidence of both *actual* and constructive notice. *Id.* In short,
10 Defendants have failed to consider the complete facts and procedural posture of *Hartley Pen*.[5]

### III.    CONCLUSION

AB's cross-motion for summary judgment should be granted. The fiduciary relationship between Dr. Macevicz and AB tolled the statutes of limitations. Defendants have brought forth no facts on which a reasonable juror could find that AB should have been suspicious of Dr. Macevicz prior to 2006. If the Court were to conclude there are facts on which a reasonable juror could find AB should have been suspicious, this would constitute a factual dispute requiring that Defendants' motion be denied as well.

---

[5] Defendants' criticism of AB's reliance on Federal Circuit law in the context of constructive notice is likewise misplaced. The Federal Circuit recently ruled that issues "intimately bound up with the question of standing in patent cases" are governed by Federal Circuit law as opposed to state law. *See DDB Techs. v. MLB Advanced Media*, No. 2007-1211, __ F.3d __, 2008 U.S. App. LEXIS 3086, at *12 (Fed. Cir. Feb. 13, 2008). Because AB's ownership claims are directly related to whether Defendants have standing in this case, Federal Circuit law applies. Thus, AB's reliance on Federal Circuit cases in which the issuance of the patent alone did not amount to constructive notice is entirely appropriate and binding upon this Court.

| | | |
|---|---|---|
| 1 | Dated: March 6, 2008 | MORRISON & FOERSTER LLP |
| 2 | | |
| 3 | | By: /s/ David C. Doyle |
| 4 | | David C. Doyle |
| 5 | | Attorneys for Plaintiff<br>APPLERA CORPORATION -<br>APPLIED BIOSYSTEMS GROUP |

AB'S REPLY ISO CROSS-MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS
Case No. C07 02845 WHA
sd-414107

13