# Exhibit 3

Case 3:07-cv-02845-WHA   Document 152-4   Filed 03/11/2008   Page 2 of 15

Paul Grossman, February 14, 2008
APPLERA CORPORATION-- v. ILLUMINA, INC., et al.

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLERA CORPORATION--APPLIED BIOSYSTEMS GROUP, a Delaware corporation; | ) ) ) ) |
| Plaintiff, | ) Case No. 07-CV-02845 ) WHA |
| vs. | ) ) Confidential |
| ILLUMINA, INC., a Delaware corporation, SOLEXA INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual; | ) ) OUTSIDE ATTORNEYS ) ONLY ) ) ) |
| Defendants. | ) ) |

VIDEOTAPED DEPOSITION OF PAUL GROSSMAN

San Diego, California

Thursday, February 14, 2008

Reported by:
Lynda L. Fenn, CSR, RPR
CSR No. 12566
JOB No. 27292

Case 3:07-cv-02845-WHA   Document 152-4   Filed 03/11/2008   Page 3 of 15

Paul Grossman, February 14, 2008
APPLERA CORPORATION-- v. ILLUMINA, INC., et al.

Page 2

```
 1                UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3                   SAN FRANCISCO DIVISION

 4

 5

 6  APPLERA CORPORATION--APPLIED     )
    BIOSYSTEMS GROUP, a Delaware     )
 7  corporation;                     )
                                     )
 8                  Plaintiff,       )  Case No. 07-CV-02845
                                     )  WHA
 9        vs.                        )
                                     )
10  ILLUMINA, INC., a Delaware       )
    corporation, SOLEXA INC., a      )
11  Delaware corporation, and        )
    STEPHEN C. MACEVICZ, an          )
12  individual;                      )
                                     )
13                  Defendants.      )
                                     )
14

15

16

17         VIDEOTAPED DEPOSITION of PAUL GROSSMAN,

18      taken on behalf of Defendants, at 12531 High

19      Bluff Drive, Suite 100, San Diego, California,

20      at 8:12 a.m. and ending at 12:14 p.m.,

21      Thursday, February 14, 2008, reported by

22      Lynda L. Fenn, CSR No. 12566, Certified

23      Shorthand Reporter within and for the State of

24      California, pursuant to notice.

25
```

Paul Grossman, February 14, 2008
APPLERA CORPORATION-- v. ILLUMINA, INC., et al.

Page 3

```
 1   APPEARANCES:

 2   For the Plaintiff:

 3        MORRISON & FOERSTER LLP
          BY:  DAVID C. DOYLE
 4             Attorney at Law
          12531 High Bluff Drive, Suite 100
 5        San Diego, California  92130-2040
          (858) 720-5139
 6        ddoyle@mofo.com

 7   For the Defendants:

 8        MARSHALL, GERSTEIN & BORUN LLP
          BY:  JOHN R. LABBE
 9             KEVIN M. FLOWERS, Ph.D.
               Attorneys at Law
10        233 South Wacker Drive
          6300 Sears Tower
11        Chicago, Illinois  60606-6357
          (312) 474-6300
12        jlabbe@marshallip.com
          kflowers@marshallip.com
13
     Also Present:
14
          Kurtis MacFerrin, JD
15        Applied Biosystems

16        Gregg Eisman, Videographer

17

18

19

20

21

22

23

24

25
```

Paul Grossman, February 14, 2008
APPLERA CORPORATION-- v. ILLUMINA, INC., et al.

Page 4

```
 1                         I N D E X

 2     EXAMINATION BY:                                    PAGE

 3     MR. LABBE                                             6

 4

 5

 6
                           E X H I B I T S
 7
       NUMBER              DESCRIPTION                    PAGE
 8
       Exhibit 40     A three-page document entitled         8
 9                    Subpoena in a Civil Case

10     Exhibit 41     A five-page document consisting       73
                      of handwritten notebook pages
11                    marked confidential; MAC00079 -
                      MAC00083
12

13
                       INFORMATION REQUESTED
14
                              (None)
15

16
                     INSTRUCTION NOT TO ANSWER
17
                              (None)
18
                         PAGE        LINE
19
                          113          21
20                        114           1
                          125          14
21

22

23

24

25
```

(800) 939-0080                WWW.KRAMM.COM                (619) 239-0080

Case 3:07-cv-02845-WHA   Document 152-4   Filed 03/11/2008   Page 6 of 15

Paul Grossman, February 14, 2008
APPLERA CORPORATION-- v. ILLUMINA, INC., et al.

Page 5

|       |    |                                                                        |
|-------|----|------------------------------------------------------------------------|
|       | 1  | San Diego, California                                                  |
|       | 2  | Thursday, February 14, 2008                                            |
|       | 3  | 8:12 a.m.  -  12:14 p.m.                                               |
|       | 4  |                                                                        |
| 08:11 | 5  |                                                                        |
|       | 6  |                                                                        |
|       | 7  | THE VIDEOGRAPHER:  This is the digital video                           |
|       | 8  | deposition of Paul Grossman being taken on behalf of                   |
|       | 9  | defendants in the matter of Applera Corporation, Applied               |
| 08:12 | 10 | Biosystems Group versus Illumina, Incorporated, et al.,                |
|       | 11 | United States District Court, Northern District of                     |
|       | 12 | California, San Francisco Division, Case No. 07, dash,                 |
|       | 13 | CV, dash, 02845 WHA.                                                   |
|       | 14 | This deposition is being held in the offices                           |
| 08:12 | 15 | of Morrison & Foerster LLP, located at 12531 High Bluff                |
|       | 16 | Drive, Suite 100, San Diego, California.                               |
|       | 17 | Today is Thursday, February 14th, 2008, and                            |
|       | 18 | the time is now 8:12 a.m.                                              |
|       | 19 | My name is Gregg Eisman, a legal video                                 |
| 08:12 | 20 | specialist with Jordan Media, Incorporated, 1228 Madison               |
|       | 21 | Avenue, San Diego, California.  The certified shorthand                |
|       | 22 | reporter is Lynda Fenn of Kramm & Associates, San Diego,               |
|       | 23 | California.                                                            |
|       | 24 | For the video record, would counsel please                             |
| 08:12 | 25 | state their appearances?                                               |

Case 3:07-cv-02845-WHA   Document 152-4   Filed 03/11/2008   Page 7 of 15

Paul Grossman, February 14, 2008
APPLERA CORPORATION-- v. ILLUMINA, INC., et al.

Page 73

```
        1       Q    And what example is that?
        2       A    This was an invention that Jeff Fraser in the
        3   legal department had, but, you know, it would be
        4   something that as the legal department grew -- again, it
10:02   5   was populated by many, you know, intelligent, creative
        6   scientists who also happen to be patent lawyers, so it
        7   would be -- it would not be that unusual for a patent
        8   attorney to have an idea that they might want to capture
        9   in IDS form.
10:02  10       Q    And you mentioned Jeff Fraser earlier.  Was he
       11   a patent attorney?
       12       A    Yes.
       13       Q    Did he also hold a Ph.D.?
       14       A    I don't believe so.  I think he had a master's
10:02  15   degree.
       16       Q    Okay.  I'm going to show you another exhibit
       17   and this one we'll need to mark as, I think, Exhibit
       18   No. 41.
       19            (Defendant's Exhibit No. 41 was marked for
       20   identification by the Certified Shorthand Reporter and
       21   is attached hereto.)
       22   BY MR. LABBE:
       23       Q    If you would just take a look at this document
       24   that we've marked as Exhibit No. 41?
10:03  25       A    (Witness complies.)
```

Case 3:07-cv-02845-WHA   Document 152-4   Filed 03/11/2008   Page 8 of 15

Paul Grossman, February 14, 2008
APPLERA CORPORATION-- v. ILLUMINA, INC., et al.

Page 74

|       |    |   |                                                           |
|-------|----|---|-----------------------------------------------------------|
|       | 1  | Q | Do you recognize this document?                           |
|       | 2  | A | No.                                                       |
|       | 3  | Q | So you have not -- you have not reviewed this             |
|       | 4  |   | document recently?                                        |
| 10:03 | 5  | A | Well, there are a couple of notebook pages                |
|       | 6  |   | that look sort of like this that I was asked to review.   |
|       | 7  |   | I skimmed through them very quickly so I can't -- I       |
|       | 8  |   | can't be sure.  There's a lot of information on these     |
|       | 9  |   | pages.                                                    |
| 10:04 | 10 | Q | Okay.  Just drawing your attention to the                 |
|       | 11 |   | bottom right-hand corner of, I guess, each page of this   |
|       | 12 |   | document.                                                 |
|       | 13 |   | Do you see where it says, "Read and understood            |
|       | 14 |   | by"?                                                      |
| 10:04 | 15 | A | Yes.                                                      |
|       | 16 | Q | And is that your signature, Paul Grossman?                |
|       | 17 | A | Yes, it is.                                               |
|       | 18 | Q | And do you see that it's dated July 21, 1994?             |
|       | 19 | A | Yes.                                                      |
| 10:04 | 20 | Q | Does that appear to be your handwriting?                  |
|       | 21 | A | Yes, it does.  It's kind of an odd way to                 |
|       | 22 |   | write the date, but that is my handwriting.               |
|       | 23 | Q | I guess now that you've flipped through this a            |
|       | 24 |   | little bit, do you recall whether this is -- whether      |
| 10:05 | 25 |   | these are the pages of the lab notebook from Stephen      |

Case 3:07-cv-02845-WHA  Document 152-4  Filed 03/11/2008  Page 9 of 15

Paul Grossman, February 14, 2008
APPLERA CORPORATION-- v. ILLUMINA, INC., et al.

Page 83

```
             1    studying; is that correct?
             2         A    Yeah.  I mean, it's correct as far as it goes,
             3    but the power of the technique is that to get a ligation
             4    product a number of things would have to happen.
    10:34    5              The first probe would have to hybridize.  The
             6    second probe would have to hybridize right next to the
             7    third probe, and then there would have to be a ligation
             8    event.
             9              So all of those things would have to happen.
    10:34   10    So the idea behind the technique is for all of those
            11    things to happen, a particular sequence would have to be
            12    present in the target.
            13         Q    Okay.  Let's talk a little bit more, then,
            14    about your career at AB, because I think we've only
    10:35   15    gotten up to about the mid nineties when you joined the
            16    legal department.  And, actually, I think we've gotten
            17    up through the time that you were working in the legal
            18    department as a patent attorney after receiving your law
            19    degree in 1997.
    10:35   20              Do you recall what position you held at the
            21    time that you first graduated from law school?
            22         A    Patent attorney.
            23         Q    Okay.  And then, did that position -- let me
            24    ask you a different question.
    10:35   25              Did you then take a different position in the
```

Case 3:07-cv-02845-WHA  Document 152-4  Filed 03/11/2008  Page 10 of 15

Paul Grossman, February 14, 2008
APPLERA CORPORATION-- v. ILLUMINA, INC., et al.

Page 84

```
 1    legal department after some time?
 2         A    Yeah.  Around 2001 or so I became responsible
 3    for the legal department.
 4         Q    Okay.  And what position did you take at that
 5    time?
 6         A    Vice President Intellectual Property.
 7         Q    Was there also a general counsel at AB at that
 8    time?
 9         A    No.  There was a general counsel at the
10    corporate parent, but the VP IP job was, you know, as
11    close to a general counsel at AB as we had.
12         Q    Okay.  And at that time in 2001, was the
13    parent Perkin-Elmer?
14         A    That's a good question.  No, I think at that
15    time it was Applera.
16         Q    Okay.  How many lawyers were in the legal
17    department in 2001 when you became the vice president of
18    IP?
19         A    I don't remember.  Maybe -- I don't know.
20    Four or five.
21         Q    Okay.  After a while in that position, did you
22    then assume another position within the legal department
23    or at AB?
24         A    Yeah, around 2005 I became responsible for
25    strategy and corporate development at AB, so the role of
```

Case 3:07-cv-02845-WHA   Document 152-4   Filed 03/11/2008   Page 11 of 15

Paul Grossman, February 14, 2008
APPLERA CORPORATION-- v. ILLUMINA, INC., et al.

Page 89

```
 1     president of IP for Applied Biosystems, were you the
 2     head of the legal department at that time for Applied
 3     Biosystems?
 4         A    Yes.
10:43  5         Q    Okay.  So from 2001 until the time you left
 6     the company in 2007, you held a number of positions, but
 7     all that time were you the head of the legal department
 8     for Applied Biosystems?
 9         A    Yes.
10:43 10         Q    Okay.
11         A    Again, except for this last couple of weeks
12     before I left.  But aside from that, what you said is
13     accurate.
14         Q    So you left AB in 2007; is that right?
10:44 15         A    Yes.
16         Q    What month was that that you left?
17         A    Early February.
18         Q    Okay.  Why did you choose to leave AB?
19         A    Sort of a complex set of reasons, but
10:44 20     effectively there had been a change in executive
21     management.  The president that had come in about three
22     or four years before, left.  I -- my own personal
23     feeling was that the company didn't have a clear view of
24     what its future strategy was going to be.  I had certain
10:44 25     stock option contracts that accelerated if I left.
```

Case 3:07-cv-02845-WHA   Document 152-4   Filed 03/11/2008   Page 12 of 15

Paul Grossman, February 14, 2008
APPLERA CORPORATION-- v. ILLUMINA, INC., et al.

Page 93

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | search firm and in other cases the lawyer, generally in      |
|       | 2  | collaboration with a technical person, would search the      |
|       | 3  | literature primarily online or, you know, in rare            |
|       | 4  | circumstances, you know, go to the Patent Office in          |
| 10:50 | 5  | person, and that's sort of the process.                      |
|       | 6  | Q   Okay.  I just identified a pretty broad period           |
|       | 7  | of time from 1997 to 2007.                                   |
|       | 8  | Why don't we focus for now on the period when                |
|       | 9  | you were a patent attorney from year 1997 through 2001       |
| 10:51 | 10 | at 2004 at AB.                                               |
|       | 11 | Were people in the legal department performing               |
|       | 12 | those kind of patent searches at that time?                  |
|       | 13 | A   Yes.                                                     |
|       | 14 | Q   Would you characterize the patent searches as            |
| 10:51 | 15 | falling into different categories?                           |
|       | 16 | A   I don't understand the question.                         |
|       | 17 | Q   Were there different reasons for conducting              |
|       | 18 | patent searches?                                             |
|       | 19 | A   Yes.                                                     |
| 10:51 | 20 | Q   And what would some of those reasons have                |
|       | 21 | been?                                                        |
|       | 22 | A   In preparation for filing a new patent                   |
|       | 23 | application.  In the context of studies for freedom to       |
|       | 24 | operate, studies for validity, potentially around patent     |
| 10:51 | 25 | searches in connection with some sort of a transaction,      |

Case 3:07-cv-02845-WHA   Document 152-4   Filed 03/11/2008   Page 13 of 15

Paul Grossman, February 14, 2008
APPLERA CORPORATION-- v. ILLUMINA, INC., et al.

Page 94

```
              1    either a license transaction or a collaboration
              2    transaction or an M&A transaction.
              3             Those are examples of the types of projects
              4    that would involve a patent search.
    10:52     5        Q    When you say a, "patent search regarding the
              6    validity," you mean regarding the validity of AB's own
              7    patents?
              8        A    I guess you could, but typically it would be
              9    the validity of third-party patents.
    10:52    10        Q    Okay.  So when you are referring to validity
             11    searches, you meant typically a search for prior art,
             12    for instance, for a competitor's patent?
             13        A    Well, it would be prior art against a
             14    competitor's patent, so prior art that would be prior
    10:52    15    art to a third-party patent.
             16        Q    Okay.
             17        A    I mean, in a sense, when I say, "validity of
             18    AB's own patents," I mean the kind of searching that you
             19    do in the context of filing a patent application.  I
    10:53    20    mean, that's effectively a search to determine the
             21    validity of a potential future patent.
             22        Q    Did anybody in the patent department ever
             23    conduct -- during this time frame of '97 to
             24    2001 -- conduct patent searches to try to learn what
    10:53    25    AB's competitors were doing?
```

Case 3:07-cv-02845-WHA   Document 152-4   Filed 03/11/2008   Page 14 of 15

Paul Grossman, February 14, 2008
APPLERA CORPORATION-- v. ILLUMINA, INC., et al.

Page 95

```
              1              MR. DOYLE:  Objection; vague.
              2              THE WITNESS:  Yeah.  I mean, we'd be curious
              3     if we saw, maybe, a new product on the market, to see
              4     whether there is any intellectual property that had been
   10:53      5     filed around that or, you know, there were cases where
              6     we would do sort of more landscape type searching.  That
              7     was relatively rare, but that was typically done with
              8     the help of a third party.
              9              So there the question would be a little
   10:53     10     broader, saying what patent activity is going on in a
             11     certain area.
             12     BY MR. LABBE:
             13        Q     Let's talk a little bit about patent searches
             14     when you were preparing a new patent application.
   10:54     15              Do you have any recollection of performing
             16     patent searches when you were prosecuting patents for
             17     mobility modifiers?
             18        A     I don't have a specific recollection, but I'm
             19     sure we did.
   10:54     20        Q     Okay.  I mean, was it your practice any time
             21     you worked on a new patent -- let me ask this a little
             22     bit differently.
             23              Was it your practice, when you started
             24     preparing a new patent application, to perform patent
   10:54     25     searches to find out what prior art was of record?
```

Case 3:07-cv-02845-WHA   Document 152-4   Filed 03/11/2008   Page 15 of 15

Paul Grossman, February 14, 2008
APPLERA CORPORATION-- v. ILLUMINA, INC., et al.

Page 112

|       |    |                                                                                 |
|-------|----|---------------------------------------------------------------------------------|
|       | 1  | patents, I should say.                                                          |
|       | 2  | Q   When did it first come up that -- let me ask                                |
|       | 3  | this -- let me ask a different question.                                        |
|       | 4  | When did you first consider that AB was the                                     |
| 11:24 | 5  | rightful owner of the Macevicz patents that you were                            |
|       | 6  | discussing with Agencourt?                                                      |
|       | 7  | A   As soon as I saw the patents.                                               |
|       | 8  | Q   So when you saw the Macevicz patents, it would                              |
|       | 9  | have occurred to you or did occur to you that, based on                         |
| 11:24 | 10 | the time that those patents issued, Dr. Macevicz should                         |
|       | 11 | have assigned them to AB?                                                       |
|       | 12 | A   Yes.                                                                        |
|       | 13 | Q   Did you discuss with the people at Agencourt                                |
|       | 14 | whether the Agencourt next generation technology                                |
| 11:25 | 15 | infringed any of the Macevicz patents?                                          |
|       | 16 | A   We didn't talk about it in the context of, you                              |
|       | 17 | know, rigorous analysis, but, you know, we went back and                        |
|       | 18 | forth on it.                                                                    |
|       | 19 | They were of the opinion and fairly convinced                                   |
| 11:25 | 20 | of the opinion that they had a -- that they had ways to                         |
|       | 21 | practice their technology that were far away from the                           |
|       | 22 | Macevicz patents.                                                               |
|       | 23 | Q   When you say, "far away," they were of the                                  |
|       | 24 | view that their technology did not infringe the Macevicz                        |
| 11:25 | 25 | patents?                                                                        |