BRYAN WILSON (CA SBN 138842)
ERIC C. PAI (CA SBN 247604)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792
E-Mail: BWilson@mofo.com; EPai@mofo.com

DAVID C. DOYLE (CA SBN 70690)
STEVEN E. COMER (CA SBN 154384)
BRIAN M. KRAMER (CA SBN 212107)
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, California 92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125
E-Mail: DDoyle@mofo.com; SComer@mofo.com;
BMKramer@mofo.com

Attorneys for Plaintiff
APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ILLUMINA, INC., a Delaware corporation, SOLEXA, INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual,<br><br>Defendants. | Case No.   C07 02845 WHA<br><br>**APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP'S NOTICE OF MOTION AND MOTION TO BIFURCATE**<br><br>Date: April 17, 2008<br>Time: 8:00 a.m.<br>Place: Courtroom 9, 19th Floor<br>Honorable William H. Alsup |

AB'S MOTION TO BIFURCATE
Case No. C07 02845 WHA
sd-413819

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................. 2

II. FACTUAL BACKGROUND ............................................................................................... 3

    A. The Ownership Dispute ............................................................................................ 3

        1. Macevicz's Obligation To Assign The Inventions To AB ......................... 3

        2. Illumina's BFP Defense ............................................................................. 4

        3. Illumina's Statute Of Limitations Defense ................................................ 5

    B. The Infringement, Willfulness, Damages, Invalidity, And Unenforceability Case ............................................................................................................................. 5

    C. Trial Of The Ownership Case ................................................................................... 6

    D. Trial Of The Infringement, Willfulness, Damages, Invalidity, And Unenforceability Case ................................................................................................ 7

III. ARGUMENT ...................................................................................................................... 8

    A. Illumina Has No Right To A Jury Trial On The Effect Of The Invention Agreement On Standing ............................................................................................ 8

    B. There Should Be A Bench Trial On Standing Before Proceeding With The Infringement, Invalidity, And Inequitable Conduct Issues ................................... 11

        1. Standing Is A Threshold Issue To Be Decided First ............................... 11

        2. An Early Bench Trial On Standing Will Promote Efficiency .................. 12

            a. The standing issues are a fraction of the issues to be decided at an infringement trial ................................................................ 12

            b. The standing case will involve a fraction of the witnesses involved in the infringement case ................................................ 13

            c. The potential savings of judicial resources is significant.............. 14

            d. Bifurcation is fair because otherwise AB will have to attack its own patents ............................................................................. 15

IV. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

*DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*,
   No. 2007-1211, 2008 U.S. App. LEXIS 3086 (Fed. Cir. Feb. 13, 2008) ...................... 2, 8, 9, 10

*F & G Scrolling Mouse L.L.C. v. IBM Corp.*,
   190 F.R.D. 385 (M.D.N.C. 1999) .................................................................................... 12

*FilmTec Corp. v. Allied-Signal Inc.*,
   939 F.2d 1568 (Fed. Cir. 1991) ................................................................................... 4, 10

*Fitzgerald v. Terminal Dev. Co.*,
   11 Cal. App. 2d 126 (Ct. App. 1936) ............................................................................. 11

*Hebert v. Lisle Corp.*,
   99 F.3d 1109 (Fed. Cir. 1996) ....................................................................................... 14

*Hendrie v. Sayles*,
   98 U.S. 546 (1879) .............................................................................................. 4, 10, 11

*Jinro Am. Inc. v. Secure Invs., Inc.*,
   266 F.3d 993 (9th Cir. 2001) ......................................................................................... 12

*Kahn v. Gen. Motors Corp.*,
   77 F.3d 457 (Fed. Cir. 1996) ......................................................................................... 11

*Kahn v. Gen. Motors Corp.*,
   865 F. Supp. 210 (S.D.N.Y. 1994) ........................................................................... 12, 14

*Miller v. Bechtel Corp.*,
   33 Cal. 3d 868 (1983) ..................................................................................................... 5

*Ortho Pharm. Corp. v. Genetics Inst., Inc.*,
   52 F.3d 1026 (Fed. Cir. 1995) ..................................................................................... 8, 11

*Propat Int'l Corp. v. RPost, Inc.*,
   473 F.3d 1187 (Fed. Cir. 2007) ..................................................................................... 12

*Roberts v. Corrothers*,
   812 F.2d 1173 (9th Cir. 1987) ....................................................................................... 11

## STATUTES

Fed. R. Civ. P. 42(b) ............................................................................................................ 1, 12

**NOTICE OF MOTION AND MOTION**

TO ILLUMINA, INC., SOLEXA, INC., AND STEPHEN C. MACEVICZ ("DEFENDANTS") AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on April 17, 2008, in the Courtroom of the Honorable William H. Alsup, located at 450 Golden Gate Avenue, San Francisco, California, in the hour of 8:00 a.m., Plaintiff Applera Corporation – Applied Biosystems Group ("AB"), by and through its counsel, will move and hereby does move, pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, to bifurcate and conduct a bench trial on Defendants' standing to assert United States Patent Nos. 5,750,341, 5,969,119, and 6,306,597 ("the Macevicz patents").  This motion is based on the accompanying Memorandum of Points and Authorities, the Declaration of Bryan Wilson in Support of AB's Motion to Bifurcate ("Wilson Decl.") and the exhibits attached thereto, and on all of the documents and records on file in this action and all matters judicially noticeable.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On February 13, this Court issued an order inviting the parties to brief "whether the issue of ownership is for the judge or for the jury." (Order Re Issue of Ownership of Patent, Docket No. 131, at 1.) On the very same day, the Federal Circuit, addressing what it called an issue of first impression, answered the Court's question: In cases interpreting whether an employment agreement obligates an inventor to assign an invention to his employer, there is no right to a jury trial on the issue of standing. *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, No. 2007-1211, 2008 U.S. App. LEXIS 3086, at *15-*17 (Fed. Cir. Feb. 13, 2008). As acknowledged by Defendants, a determination that the patents at issue belong to AB under the Invention Agreement would deprive them of standing for their federal patent law claims. (*See* Docket No. 114, at 4-5.) Under *DDB*, that determination is for the Court, not the jury.

In the same February 13 Order, the Court also inquired "whether the issue of ownership of the patents should be severed." (Docket No. 131, at 1.) Bifurcation is appropriate here because Illumina's lack of standing is a threshold issue of subject matter jurisdiction that must be resolved before deciding any other aspect of the case. If the Court finds that Illumina does not have standing, then (1) there is no jurisdictional basis for any further inquiry into any of the claims raised by the parties with respect to issues of patent infringement, willfulness, damages, invalidity, and unenforceability, and (2) because of the lack of federal court jurisdiction, any remaining claims could be remanded back to state court for resolution.

Bifurcation of standing is highly efficient, because if the Court concludes that AB owns the patents, it will moot the expensive, and potentially unnecessary, trial of the infringement, willfulness, damages, invalidity, and unenforceability case. Standing can be decided without considering any of the extensive evidence relating only to infringement, willfulness, damages, invalidity, and unenforceability of the patents. AB therefore requests that, subject to the Court's calendar, a bench trial on standing be set during May 2008 and the infringement, willfulness, damages, invalidity, and unenforceability trial, if necessary, remain set for September 29, 2008.

## II. FACTUAL BACKGROUND

The issues, evidence, and witnesses regarding the Invention Agreement are a small fraction of the issues regarding whether the patents are valid and infringed, and if so, the amount of damages. The principal issues on the Invention Agreement are whether Macevicz was obligated to assign the inventions, whether Illumina was a bona fide purchaser for value, and whether the statute of limitations applies. These are very different from the issues of whether AB's SOLiD™ system infringes the patents, the amount of any damages due to the infringement, and whether the patents are invalid in light of the prior art.

### A. The Ownership Dispute

#### 1. Macevicz's Obligation To Assign The Inventions To AB

The first issue regarding standing is whether AB's former Senior Patent Counsel, Dr. Stephen Macevicz, breached his Employee Invention Agreement (the "Invention Agreement"). The Court found that AB "has a strong case on the merits" of its claim that Macevicz was required to assign the patent application to AB. (Docket No. 88, at 6, 10-11.)

In 1992, Macevicz signed the Invention Agreement, in which he promised to assign his inventions to AB. (Wilson Decl. Ex. 1 ¶ 2.) The only exception was for inventions that were developed entirely on his own time and without company resources, and were unrelated to AB's business. Macevicz further agreed that if he believed the invention fell within the exception, he would promptly disclose, in writing, what the invention was and the grounds for his belief that it fell within the exception. (*Id.* ¶ 7.)

While working for AB, Macevicz invented what he described as a method of DNA sequencing by ligation. On April 17, 1995, he filed a patent application entitled "DNA Sequencing By Parallel Oligonucleotide Extensions," (Wilson Decl. Ex. 4.) Although the invention was squarely within AB's line of business, he did not disclose it to his supervisor, Michael Hunkapiller, or anyone else at AB. (Wilson Decl. Ex. 2 at 104:24-105:7; 106:5-107:23; 173:10-174:4.) Four months later, on August 7, 1995, Macevicz left AB. Three weeks later, on

August 31, 1995, he purported to assign the patent application to Lynx.[1]  (Wilson Decl. Ex. 8.)  That application led to the three patents at issue in this case.

Macevicz argues that he "didn't consider these inventions to be a part of the AB business." (*Id.* at 107:7-8.)  The Invention Agreement, however, covers inventions that "relate to the business or actual or demonstrably anticipated research or development" of AB.  (Wilson Decl. Ex. 1 ¶ 2(c)(i).)  Moreover, the Invention Agreement required him to promptly disclose, in writing, the inventions and the grounds for his belief that he did not use any AB resources developing the inventions and that they did not relate to AB's business, which he admitted he never did.

### 2. Illumina's BFP Defense

Illumina claims to be a bona fide purchaser for value.  To qualify as a BFP, Illumina will have to show that it (1) acquired an interest in the patents (2) by paying valuable consideration (3) to the legal title holder (4) without notice of an outstanding equitable claim or title on the patent.  *See FilmTec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1573 (Fed. Cir. 1991) (citing *Hendrie v. Sayles*, 98 U.S. 546, 549 (1879)).

Illumina claims that its predecessor, Lynx, paid Macevicz for the patent application.  Lynx, however, paid Macevicz *nothing* for the application.  Illumina's corporate designee, Kathy San Roman, testified that Illumina is not aware of any compensation being provided to Macevicz for the application. (Wilson Decl. Ex. 5 at 76:14-25.)  Even when value is paid, a BFP must purchase "without notice" of an outstanding equitable claim or title.  AB contends that Lynx cannot be a BFP because Macevicz's knowledge of his obligation to assign the patent application to AB is imputed to Lynx.  As an officer of Lynx when he assigned the application, he "would clearly be on notice of the provisions of his own contract." *FilmTec*, 939 F.2d at 1574.

AB also contends that Lynx had more than enough information to put it on inquiry notice.  Sam Eletr, the CEO of Lynx, negotiated with Macevicz to assign the application.  (Wilson Decl.

---

[1] Lynx merged with Solexa in 2005.  (Docket No. 55, ¶ 2.)  Illumina acquired Solexa in January 2007. (*Id.*)  The three entities are referred to collectively herein as "Illumina."

Ex. 2 at 123:1-124:6.) Eletr was also a founder of AB and was familiar with AB's policies concerning employee inventions. The same law firm, Cooley Godward, worked for both Lynx and AB at that time, handled the spin-off of Lynx, and drafted Lynx's employee invention agreement, which is identical to AB's Invention Agreement. (Wilson Decl. Ex. 5 at 22:14-25:6, 60:4-16 & 142:18-22.) And Lynx was a spin-off of AB, so Eletr and others knew that DNA sequencing was within AB's line of business. They also knew that Macevicz conceived of and reduced to practice his invention while employed by AB.

### 3. Illumina's Statute Of Limitations Defense

Illumina also argues that AB's rights to the patents are barred by the statute of limitations. This issue, which is currently before the Court on cross-motions for summary judgment, has little to do with the issues of infringement, invalidity, or inequitable conduct. Macevicz admits that he owed AB a fiduciary duty (Wilson Decl. Ex. 2 at 23:8-23), which means that AB would have a duty to investigate his wrongdoing only if it became aware of facts that would make a reasonably prudent person suspicious. *See Miller v. Bechtel Corp.*, 33 Cal. 3d 868, 875 (1983). The issues, evidence and witnesses regarding (1) AB's lack of actual notice, (2) the absence of information creating a duty of inquiry until February 2006, and (3) the legal effect of Macevicz's fiduciary duty, are a fraction of the issues, evidence and witnesses on the infringement, willfulness, damages, invalidity, and inequitable conduct issues.

### B. The Infringement, Willfulness, Damages, Invalidity, And Unenforceability Case

The infringement issues involve only whether AB's SOLiD™ system meets the claim limitations as construed by the Court. For example, all of the asserted claims in the '341 and '597 patents require determining the identity of at least one target nucleotide within each cycle. The Court held that "identifying" a nucleotide means "within each cycle determining the identity of a base in the target polynucleotide." AB's SOLiD™ system does not determine the identity of a base within each cycle. Claim 1 of the '341 patent also requires that the "initializing oligonucleotide probe" be hybridized to a "target polynucleotide." The Court held that although the specification teaches that the initializing oligonucleotide probe is hybridized to the known

1  region, the claim requires that it be hybridized to the target region. (Docket No. 133, at 8-10.) In
2  the SOLiD™ system, the initializing oligonucleotide probe hybridizes to the known region, not
3  the target region.

4  Claim 1 of the '119 patent requires a probe with a cleavable bond of a particular formula.
5  The formula "—OP(==O)(O—)NH" means that there must be nitrogen atom (N) in the particular
6  location claimed. Illumina does not dispute that the probes used in the SOLiD™ system use a
7  sulfur atom (S) in place of the required nitrogen atom, but contends that AB's probes infringe
8  under the doctrine of equivalents.

9  AB has also disclosed several prior art references that anticipate or render the asserted
10  claims obvious. AB further asserts that the patents are unenforceable due to Macevicz's failure to
11  disclose material prior art to the patent examiner.

### C. Trial Of The Ownership Case

13  The ownership case will involve analysis of events that took place primarily in 1992
14  through mid-1995, when Macevicz worked for AB, as well as the period shortly after he left AB.
15  Macevicz will be the main witness on the relevant issues. AB anticipates that it will also offer the
16  testimony of current and former AB employees, including Macevicz's former supervisor Michael
17  Hunkapiller, and the AB employee who first learned of the Macevicz patents, Scott Bortner. Dr.
18  Hunkapiller left AB several years ago and has minimal knowledge about the SOLiD™ system
19  that Illumina accuses of infringement. (Wilson Decl. ¶ 10.) AB does not yet know what
20  testimony will be offered by Illumina. Its testimony will, though, necessarily be focused on AB's
21  business and the actions of AB, Illumina and Macevicz during the 1990s. While Defendants may
22  argue that an understanding of AB's business is relevant to both the Invention Agreement and
23  patent sides of this litigation, there are two significant differences. First, the infringement part of
24  the case is directed at the current time frame, while the standing part of the case is not. The
25  Invention Agreement trial will address the scope of AB's business during the early to mid-1990s.
26  By contrast, to resolve the patent issues, the jury will need to understand the details of AB's
27  SOLiD™ system, which was first placed in 2007.

28

AB'S MOTION TO BIFURCATE
Case No. C07 02845 WHA
sd-413819

6

Second, the two sides of the case require different types of knowledge about AB's business. On the Invention Agreement issues, the key inquiry concerns the overall breadth of AB's business, at a high and general level, in the early to mid-1990s. The patent issues, on the other hand, will also require jurors to learn about a specific product – one particular aspect of AB's current business – in great depth and detail to be able to conduct an element-by-element infringement analysis.

Illumina's primary affirmative defense is that Lynx was a bona fide purchaser for value. The evidence on this defense will focus on Lynx's acquisition in 1995 of the patent application that spawned the Macevicz patents, many years before what is now known as the SOLiD™ system was invented. This will have little relevance to the question of whether the SOLiD™ system infringes the Macevicz patents, or whether the patents are valid or enforceable.

Illumina's other affirmative defense is based on the statute of limitations. The evidence on this defense will focus on whether AB became aware of facts that would make a reasonably prudent person suspicious of Macevicz before it obtained actual knowledge of the Macevicz patents and started this litigation in 2006. This too will have little relevance to the question of whether the SOLiD™ system infringes the Macevicz patents, or whether the patents are valid.

AB anticipates that the Invention Agreement case will take about two or three days to try to the Court, and that the parties could be ready for trial as early as May 8, 2008.

### D. Trial Of The Infringement, Willfulness, Damages, Invalidity, And Unenforceability Case

The infringement case will require an analysis of AB's SOLiD™ system. The system originated at Agencourt Personal Genomics in Massachusetts, which AB acquired in 2006. The first system was placed with customers in June 2007. To explain the detailed operation of the system, including its chemistry and software, AB expects to offer the testimony of several AB scientists who have worked on developing the system. AB also expects to offer the testimony of at least one technical expert.

The invalidity case will involve an analysis of the prior art, which AB expects will be handled primarily by technical experts. The unenforceability case involves Macevicz's

knowledge of prior art references which he did not disclose to the Patent Office. The witnesses are expected to be technical and PTO experts, as well as Macevicz.

The patent damages case will involve evidence concerning lost profits and determination of a reasonable royalty under the *Georgia-Pacific* factors. Other witnesses will include AB and Illumina sales and marketing people regarding AB's and Illumina's sales and other financials, and experts on damages issues.

AB anticipates that trial of the infringement, willfulness, damages, invalidity, and inequitable conduct issues will take about 10 days.

### III.   ARGUMENT

#### A.   Illumina Has No Right To A Jury Trial On The Effect Of The Invention Agreement On Standing.

Standing is a jurisdictional issue that must be resolved by the court before proceeding with any other aspect of this case. *See Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1032-33 (Fed. Cir. 1995) ("[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue.") (citations omitted). The Federal Circuit's recent decision in *DDB Technologies*, 2008 U.S. App. LEXIS 3086, is dispositive on Defendants' lack of right to a jury trial regarding the Invention Agreement and its effect on standing. In *DDB*, brothers David and Daniel Barstow were the named inventors on three patents relating to a method for generating a computer simulation of a live event and a fourth patent relating to a method allowing a viewer to search for information about a live event. *Id.* at *2. The brothers formed DDB Technologies ("DDB") and purported to assign their patents to that company. *Id.*

During the time David Barstow ("Barstow") was filing his patent applications and purporting to assign them to DDB, he was working as a computer scientist for Schlumberger Technology Corporation. Barstow and Schlumberger had an invention agreement that required Barstow to promptly disclose his inventions to his employer:

> 3. Employee shall promptly furnish to Company a complete record
> of any and all technological ideas, inventions and improvements,
> whether patentable or not, which he, solely or jointly, may

>conceive, make or first disclose during the period of his employment with [Schlumberger].
>
>4. Employee agrees to and does hereby grant and assign to Company or its nominee his entire right, title and interest in and to ideas, inventions and improvements coming within the scope of Paragraph 3:
>
>a) <u>which relate in any way to</u> the business or activities of [Schlumberger], or
>
>b) <u>which are suggested by or result from</u> any task or work of Employee for [Schlumberger], or
>
>c) which relate in any way to the business or activities of Affiliates of [Schlumberger],
>
>together with any and all domestic and foreign patent rights in such ideas, inventions and improvements. Employee agrees to execute specific assignments and do anything else properly requested by [Schlumberger], at any time during or after employment with [Schlumberger], to secure such rights.

2008 U.S. App. LEXIS 3086, at *3-*4.[2]

Ten years after Barstow left Schlumberger, DDB filed suit against MLB Advanced Media ("MLB") alleging patent infringement. MLB purchased whatever interest Schlumberger owned in the patents, and moved to dismiss the case based on its claim of ownership through the Barstow-Schlumberger invention agreement. *Id.* at *6-7.

The district court held a hearing, weighed the facts in dispute, and found that the patents fell within the scope of Barstow's employee invention agreement. *Id.* at *8. The district court held that it lacked jurisdiction because DDB could not sue a co-owner of the patent, and therefore lacked standing. *Id.*

On appeal, DDB argued that the district court should not have dismissed the case on jurisdictional grounds without first having a jury trial on the merits as to whether the employee invention agreement required assignment of the patents. *Id.* at *15. The Federal Circuit first

---

[2] The Invention Agreement in *DDB* provided for "automatic assignment," while the AB Invention Agreement imposes an obligation to assign. Automatic assignment was one ground on which the district court in *DDB* held that the defenses of waiver, estoppel, and statute of limitations were not available to DDB, which the Federal Circuit affirmed, but played no role in the Federal Circuit's analysis of the jury trial issue.

1  clarified the issue of what law controls. It held that because the question of a patentee's right to a
2  jury trial implicates patent law, its resolution is governed by the law of the Federal Circuit, not the
3  regional circuits. *Id.* at *15-*16. It also stated that "the right to a jury trial on disputed
4  jurisdictional facts that also implicate the merits of plaintiff's cause of action is an issue of first
5  impression for this court." *Id.* at *16. Thus, to the extent that any earlier decisions from other
6  circuits are inconsistent with *DDB*, they are not controlling.

7        The Federal Circuit noted that district courts should consider "the degree of
8  intertwinement of jurisdictional facts and facts underlying the substantive claim [to] determine
9  the appropriate procedure for resolution of those facts." *Id.* at *16. Applying that standard to
10 DDB, the Federal Circuit held that "the interpretation of the employment agreement, which
11 depends in part on state contract law and in part on this circuit's law regarding patent assignment
12 clauses, is not so intertwined with the substantive federal patent law governing DDB's
13 infringement claims and [MLB]'s invalidity counterclaims that dismissal on jurisdictional
14 grounds would be inappropriate." *Id.* at *16-*17. Therefore, it held that "DDB has no right to a
15 jury trial on the issue of standing." *Id.* at *17.

16       The same minimal degree of intertwinement is present here. Defendants' standing
17 depends on interpretation of the Invention Agreement, Macevicz's actions during the early to
18 mid-1990s, and Illumina's assertions that it is a BFP and that the statute of limitations has run.
19 The substantive federal law issues on which the Defendants would be entitled to a jury trial
20 revolve around whether the SOLiD™ system infringes the Macevicz patents, the amount of any
21 damages, whether the patents are valid, and whether they are unenforceable. There is little
22 intertwinement between the two sets of issues.

23       The minimal intertwinement between the substantive patent law issues and the ownership
24 issues is further illustrated by Illumina's affirmative defenses. Its primary defense appears to be
25 that Lynx was a BFP and its successors, Solexa and Illumina, inherited that status. To qualify as
26 a BFP, Illumina has the burden of showing that Lynx (1) acquired an interest in the patents (2) by
27 paying valuable consideration (3) to the legal title holder (4) without notice of an outstanding
28 equitable claim or title on the patent. *See FilmTec,* 939 F.2d at 1573 (citing *Hendrie v. Sayles*, 98

AB'S MOTION TO BIFURCATE  
Case No. C07 02845 WHA  
sd-413819

10

U.S. 546, 549 (1879)); *Fitzgerald v. Terminal Dev. Co.*, 11 Cal. App. 2d 126, 133 (Ct. App. 1936). The resolution of each of these prongs does not involve any analysis of AB's SOLiD™ system. In fact, consideration of the SOLiD™ system in resolving these claims would be impossible because it did not even exist at the time.

Similarly, Illumina's defense based on the statute of limitations has little, if any, intertwinement with the substantive patent issues. This defense involves (1) AB's lack of actual notice, (2) the absence of information creating a duty of inquiry until February 2006, and (3) the legal effect of Macevicz's fiduciary duty. These are distinct from the issues of infringement, damages, invalidity, or inequitable conduct.

### B.  There Should Be A Bench Trial On Standing Before Proceeding With The Infringement, Invalidity, And Inequitable Conduct Issues.

The issue of standing must be decided first. *Ortho Pharm.*, 52 F.3d at 1032-33. AB proposes that the Court hold a bench trial on standing beginning as early as May 8, 2008 and continuing for two to three days, which should be sufficient time for the parties to present all of their evidence and testimony on this issue. An early bench trial will avoid any delay and preserve the existing September 29 date for the trial on the patent infringement, damages, willfulness, invalidity, and inequitable conduct issues, if still necessary.

#### 1.  Standing Is A Threshold Issue To Be Decided First.

Illumina's lack of standing is a threshold subject matter jurisdiction issue that must be resolved before proceeding with any other aspect of the case.[3] *See id.* The Court may hear evidence and weigh facts as necessary to determine jurisdiction. *See Kahn v. Gen. Motors Corp.*, 77 F.3d 457, 459 (Fed. Cir. 1996) ("The ownership of patent property is a matter of law, the decision of which may entail underlying factual inquiries."); *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). If the Court finds that Illumina does not have standing, then there is no jurisdictional basis for any further inquiry into any of the claims raised by the parties with respect to issues of patent infringement, willfulness, damages, invalidity, and unenforceability,

---

[3] Illumina agrees that if the Court rules for AB on the ownership claims, then Illumina no longer has standing to sue. (Docket No. 114 at 4-5.)

AB'S MOTION TO BIFURCATE
Case No. C07 02845 WHA
sd-413819

11

and the remaining claims should be resolved in state court. *See Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1194 (Fed. Cir. 2007) (affirming dismissal of patent infringement claims for lack of standing).

### 2. An Early Bench Trial On Standing Will Promote Efficiency.

Bifurcation is appropriate when a separate trial will promote efficiency or avoid prejudice. Federal Rule of Civil Procedure 42(b) provides in pertinent part:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third party claim, or of any separate issues or of any number of claims . . . .

Fed. R. Civ. P. 42(b). "Under Rule 42(b), the district court has broad discretion to bifurcate a trial to permit deferral of *costly and possibly unnecessary proceedings* pending resolution of *potentially dispositive preliminary issues*." *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 998 (9th Cir. 2001) (emphasis added).

Bifurcating the issue of Illumina's standing to sue for an early bench trial has precisely this benefit. It may dispose of Illumina's infringement allegations and thus avoid wasting the time and resources of the Court, the jury, and the parties in trying the issues of infringement, damages, willfulness, invalidity, and inequitable conduct. *See Kahn v. Gen. Motors Corp.*, 865 F. Supp. 210, 215 (S.D.N.Y. 1994) ("If [plaintiff] does not own the patent, the parties will have saved the substantial cost of preparing for and conducting the trial on the infringement issues."); *F & G Scrolling Mouse L.L.C. v. IBM Corp.*, 190 F.R.D. 385, 390 (M.D.N.C. 1999) ("At times, a special issue may be found to merit its own separate trial, such as patent ownership . . . .").

#### a. The standing issues are a fraction of the issues to be decided at an infringement trial.

A separate trial on standing is also more efficient. As discussed above, the issues to be tried on standing are a fraction of the issues to be tried in the infringement, damages, invalidity, and unenforceability case. Defendants' standing depends on interpretation of the Invention Agreement and its application to events occurring in the early to mid-1990's, while the patent case

is about a specific product that was not launched until 2007, which will be the subject of days of expert testimony irrelevant to standing.

Both standing and the patent case require some knowledge of technology. For standing, this is knowledge about the scope of AB's business in 1995, and a general understanding of DNA sequencing. For the patent case, this will be a detailed understanding of the patents and the asserted claims, at an element-by-element level, and a detailed understanding of the complex SOLiD™ system as it works today. These subject areas are so different that trying them together will likely confuse matters rather than clarify them.

The damages and invalidity cases are also separate from the standing issues. The invalidity case requires comparing the scope of the asserted claims to what was taught by the prior art. The damages issues involve recent financial data. Neither of these subject areas overlaps significantly with the issue of Macevicz's obligation to assign the invention to AB.

### b. The standing case will involve a fraction of the witnesses involved in the infringement case.

The witnesses who will testify regarding standing are also a fraction of the witnesses who will testify regarding infringement. In addition to the different fact witnesses described above, there will be extensive expert witness testimony that will be essential to the infringement, damages, invalidity, and inequitable conduct case but irrelevant to standing.

The only witnesses who AB believes will have testimony potentially relevant to both standing and the patent case are Macevicz, Michael Hunkapiller (the named inventor on a prior art patent), and Vincent Powers (the patent attorney who prosecuted the patents for Lynx, and later worked for AB). But the subject matter of their testimony concerning standing will be but a fraction of their testimony in the patent case. Illumina acknowledges this, and took the position that depositions of witnesses to date would cover only ownership issues, not infringement. (Wilson Decl. Ex. 7 at 81:11-82:9.) Illumina even objected when AB questioned Dr. Powers about subjects that Illumina thought were related to enforceability. (*Id.* at 80:6-82:9.)

Aside from these limited exceptions, the witnesses who will testify regarding standing will not testify regarding infringement, damages, invalidity, and unenforceability issues, and those

AB'S MOTION TO BIFURCATE
Case No. C07 02845 WHA
sd-413819

13

who will testify regarding infringement, damages, invalidity, and unenforceability issues will not testify regarding standing. The parties could readily expedite the completion of any remaining discovery relating to standing there might be so that a bench trial on standing could commence as early as May 8, 2008.

### c. The potential savings of judicial resources is significant.

Standing is much simpler than the patent case. It can be tried in about two to three days, as opposed to Illumina's estimate of eight days to try all of the issues in the case. (Docket No. 26, at 15.) (AB believes that ten days is a more realistic estimate.) A bench trial on standing has the potential to resolve this litigation much more quickly than a jury trial on infringement. Trying all of the issues in a single jury trial, by contrast, would require the jury to sit through the presentation of witnesses, testimony, and other evidence that may be mooted by the resolution of the standing issue. This is inefficient, regardless of how the Court rules on standing. If AB wins on standing, the inefficiency is the greatest, since the infringement, damages, willfulness, invalidity, and inequitable conduct portions of the trial will have been unnecessary.[4] *Kahn*, 865 F. Supp. at 215 (holding that a single trial on ownership and infringement would be "unreasonable and wasteful"). But even if Illumina wins on standing, there is still inefficiency because the jury will have had to sit through a trial that was longer than necessary to resolve the jury issues.

Bifurcation avoids these inefficiencies. If AB wins on standing, the federal case will be over and significant judicial resources will have been saved. In fact, under AB's proposed schedule this case could be completely resolved in May. If AB does not win on standing, the jury trial will be more focused and shorter. *Id.* ("If [plaintiff] prevails on the title issue, the half-day trial will not have been in vain, and the parties can prepare for the final showdown.").

---

[4] The district courts have discretion in how to decide inequitable conduct. *See Hebert v. Lisle Corp.*, 99 F.3d 1109, 1114 (Fed. Cir. 1996). A court may decide the issue itself, submit special interrogatories to the jury on the facts relating to materiality and intent, or instruct the jury to find and weigh the facts of materiality and intent and decide the ultimate question of inequitable conduct.

AB'S MOTION TO BIFURCATE
Case No. C07 02845 WHA
sd-413819

14

           **d.    Bifurcation is fair because otherwise AB will have to attack its own patents.**

Finally, resolving standing quickly and first will prevent the prejudice to AB from having to take "accused infringer" positions against its own patents at trial. This avoids putting AB in the unfair position of having to attack the validity and enforceability of patents it owns. Although this factor alone has not led the Court to order bifurcation previously, it is another factor weighing in favor of bifurcation now that standing is ready for decision and the Federal Circuit has clarified that defendants have no right to a jury trial on standing.

## IV.    CONCLUSION

AB respectfully requests that the issue of standing be set for an early bench trial, and that the remaining issues be bifurcated and remain set for trial on September 29, 2008.

Dated: March 12, 2008                MORRISON & FOERSTER LLP

By:   /s/ Steven E. Comer
       Steven E. Comer

Attorneys for Plaintiff
APPLERA CORPORATION –
APPLIED BIOSYSTEMS GROUP

I, Bryan Wilson am the ECF User whose ID and password are being used to file this **APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP'S NOTICE OF MOTION AND MOTION TO BIFURCATE**. In compliance with General Order 45, X.B., I hereby attest that Steven E. Comer has concurred in this filing.

March 12, 2008                          /s/ Bryan Wilson
                                              Bryan Wilson