UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION


APPLERA CORPORATION –
APPLIED BIOSYSTEMS GROUP, A
DELAWARE CORPORATION,

        PLAINTIFF,

    VS.                CASE NO. 07-CV-02845 WHA

ILLUMINA, INC., A DELAWARE
CORPORATION, SOLEXA, INC., A
DELAWARE CORPORATION, AND
STEPHEN C. MACEVICZ, AN
INDIVIDUAL,

        DEFENDANTS.
_____ /


Deposition of

Kathy San Roman

November 8, 2007


Reported by
Linda Frazeur
CSR No. 6697


SHARI MOSS & ASSOCIATES
Certified Shorthand Reporters
877 Cowan Road
Burlingame, California 94010
(415) 402-0004
(650) 692-8900
FAX: (415) 402-0005

395e2553-6e4c-42fa-a9df-b0fce94b179d

EXHIBIT 5

Page 2

# I N D E X

                              Page

EXAMINATION BY MR. WILSON                                    7

---oOo---

## EXHIBITS

Number

1  – Job Description, Senior Patent Attorney        27
      MAC-1906 (1 page)

2  – Applied Biosystems, Inc., Code of             28
      Business Ethics Policy – MAC-1120 –
      MAC-1127 (8 pages)

3  – Applied Biosystems, Inc., Employee            41
      Invention Agreement – MAC-1903 –
      MAC-1905 (3 pages)

4  – Corporate Services Agreement – ILL-2248       53
      – ILL-2254 (7 pages)

5  – Letter to Mike Anderson – 07-09-92            59
      (3 pages)

6  – Letter to Mr. Steve Macevicz – 06-01-95       61
      (2 pages)

7  – Lynx Therapeutics, Inc., Employee             70
      Invention Agreement – SOL-9 – SOL-11
      (2 pages)

8  – Assignment – COOLEY-9 – COOLEY-10             74
      (2 pages)

9  – United States Patent and Trademark            80
      Office Notice of Recordation of
      Assignment Document – 02-01-96 (3 pages)

10 – Lynx Therapeutics, Inc., Development          89
      Agreement – MAC-0975 – MAC-0983 (9
      pages)

11 – Facsimile to Sam Eletr – 11-07-94            92
      (6 pages)

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-6e4c-42fa-a9df-b0fce94b179d

**EXHIBIT 5**

Page 3

1    12  - Performance Evaluation - MAC-1109 -        97
         MAC-1118 (10 pages)
2
3    13  - Letter to Kathy A. San Roman - 06-18-81    98
         (5 pages)
4
     14  - Answers and Objections of Illumina, Inc.   100
         to Applied Biosystems' First Set of
5        Interrogatories to Ilumina, Inc.
         (15 pages)
6
     15  - Letter to Joseph Smith, Esq. - 12-16-94    104
7        (2 pages)
8    16  - Indemnity Agreement - 05-01-95 (7 pages)   106
9    17  - Letter to John R. Labbe, Esq. - 10-26-07   117
         (12 pages)
10
     18  - Objections of Illumina, Inc. To            118
11       Plaintiff's Draft Notice of Rule
         30(b)(6) Deposition of Illumina, Inc. (6
12       pages)
13   19  - Cooley Godward Kronish, LLP Privilege      149
         and Redaction Log - 11-07-07 (30 pages)
14

15

16

17

18

19

20

21

22

23

24

25

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-6e4c-42fa-a9df-b0fce94b179d

EXHIBIT 5

Page 4

1    BE IT REMEMBERED that, pursuant to the laws

2 governing the taking and use of depositions, and on

3 November 8, 2007, commencing at 9:55 a.m. thereof,

4 425 Market Street, 33rd Floor, San Francisco, California,

5 before me, Linda Frazeur, a Certified Shorthand Reporter

6 in the State of California, personally appeared,

7       Kathy San Roman,

8 called as a witness by the Plaintiff, who, being by me

9 first duly sworn, was examined and testified as is

10 hereinafter set forth.

11       ---oOo---

12    MORRISON & FOERSTER, LLP, 755 Page Mill Road,

13 Palo Alto, California 94304-1018, represented by Bryan

14 Wilson, Attorney at Law, and Dara Tabesh, Attorney at

15 Law, appeared as counsel on behalf of the Plaintiff.

16    MARSHALL, GERSTEIN & BORUN, LLP, 233 South

17 Wacker Drive, Chicago, Illinois 60606-6357, represented

18 by Kevin M. Flowers, Attorney at Law, and John R. Labbe,

19 Attorney at Law, appeared as counsel on behalf of the

20 Defendant Illumina, Inc., a Delaware Corporation, and

21 Solexa, Inc., a Delaware Corporation.

22    TECHNOLOGY & INTELLECTUAL PROPERTY STRATEGIES

23 GROUP PC, 1000 Elwell Court, Palo Alto, California

24 94303-4318, represented by Basil P. Fthenakis, Attorney

25 at Law, appeared as counsel on behalf of the Defendant

SHARI MOSS & ASSOCIATES      (415 ) 402-0004

395e2853-5e4c-42fa-a9df-b0fce04b179d

EXHIBIT 5

Page 5

1    Stephen C. Macevicz.

2                              ---oOo---

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SHARI MOSS & ASSOCIATES                    (415) 402-0004

395e2653-6e4c-42fa-a9df-b0fce94b179d

EXHIBIT 5

1          THE VIDEOGRAPHER:  Good morning.  We are now on

2    the record.  Here begins Videotape Number 1 of Volume

3    Number 1, the deposition of Kathy San Roman in the

4    matter -- matter of Applera Corporation, et al., versus

5    Illumina, Inc., et al., venued in the U.S. District

6    Court, Northern District of California, San Francisco

7    Division.  The case number is 07-CV-02845 WHA.  Today's

8    date is November 8, 2007, and the time on the video

9    monitor is 9:58 a.m.

10          My name is Michael Mack, the video operator,

11    contracted by Eureka Street Legal Video located at 511

12    Eureka Street, San Francisco, California; telephone

13    number, (415) 643-9190.

14          This videotaped deposition is taking place at

15    the Law Offices of Morrison & Foerster located at 425

16    Market Street, 33rd Floor, San Francisco, California, and

17    it is being noticed by Morrison & Foerster on behalf of

18    the Plaintiff.

19          Counsel, please voice-identify yourselves and

20    state whom you represent.

21          MR. WILSON:  Bryan Wilson, Morrison & Foerster,

22    representing Applera Corporation.  With me is Dara Tabesh

23    from our office as well.

24          MR. FLOWERS:  Kevin Flowers from Marshall,

25    Gerstein & Borun representing Illumina and Solexa.  With

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-8e4c-42fa-a9df-b0fce94b179d

EXHIBIT 5

Page 7

1    me is my colleague John Labbe also from Marshall,

2    Gerstein.

3            MR. FTHENAKIS:  Basil Fthenakis, TIPS Group,

4    representing Defendant Stephen Macevicz.

5            THE VIDEOGRAPHER:  The court reporter today is

6    Linda Frazeur of Shari Moss & Associates.

7            Would the reporter please administer the oath to

8    the witness.

9

10                    KATHY SAN ROMAN,

11            having been first duly sworn, was

12            examined and testified as follows:

13

14                    EXAMINATION

15

16    BY MR. WILSON:

17        Q.  Good morning.

18        A.  Good morning.

19        Q.  Have you ever been deposed before?

20        A.  It was --  It's possible.

21        Q.  All right.  If you've forgotten it, I guess that

22    says something about the deposition.

23            Let me give you a couple of basic ground rules.

24    There's nothing very complicated about the process, but a

25    couple of things will make it go more smoothly.

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-6e4c-42fa-a9df-b0fce94b179d

EXHIBIT 5

Page 22

1   Q.  Did you know if AB had any other lawyers between

2   August and October of 1992?

3   A.  Yes.

4   Q.  Who were the -- Who -- What other lawyers were

5   you aware of?

6   A.  Joe Smith.

7   Q.  Were there any lawyers you were aware of working

8   at AB besides Joe Smith and Steve Macevicz?

9   A.  Paul Grossman.

10  Q.  Was he a lawyer at the time, do you know?

11  A.  I believe so.

12  Q.  Any other lawyers?

13  A.  No.

14  Q.  Did you work with any outside attorneys when you

15  were at AB, either before the 1987 time period or after

16  1992?

17  A.  Yes.

18  Q.  What outside lawyers did you work with?

19  A.  Cooley Godward.

20  Q.  Was that before 1989 were you working with

21  Cooley Godward?

22  A.  Yes.

23  Q.  How did you work with Cooley Godward before

24  1989?

25  A.  They were outside counsel.

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-6e4c-42fa-a9df-b0fce94b179d

**EXHIBIT 5**

Page 23

1    Q.  What were your interactions with them?

2    A.  I worked with them on employment matters and SEC

3  filings.

4    Q.  What kinds of things did you do in your work

5  with them on employment matters?

6    A.  Could be a number of --

7    Q.  Were they in individual --

8    A.  -- issues.

9    Q.  -- individual cases, employment policies?  What

10  kinds of things?

11    A.  Policies, forms, documents.

12    Q.  Do you recall who it was that you worked with at

13  Cooley?

14    A.  The partner was Jim Kitch.

15    Q.  Is there anybody else that you remember working

16  with?

17    A.  Not specifically.

18    Q.  Between August and October of 1992, did you work

19  with the Cooley Godward law firm when you were at AB?

20    A.  Yes.

21    Q.  Who did you work with then, the same people?

22    A.  Yes.

23    Q.  What kind of work did you do with them?

24    A.  -- worked on various documents.

25    Q.  Do you recall what any of the documents were?

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-6e4c-42fa-a9df-b0fce94b179d

**EXHIBIT 5**

Page 24

1       A.  Some employment; some as part of the spinout.

2       Q.  Were they documents for Lynx or documents for

3  AB, or both, or neither?

4       A.  Lynx.

5       Q.  Were you doing any work in that October to --

6  excuse me, that August-to-October time period with Cooley

7  for AB?

8       A.  No.

9       Q.  So all the work you did with Cooley in that

10  August-to-October time period was with -- with Cooley was

11  related to Lynx?

12      A.  Yes.

13      Q.  And then after you went to work for Lynx, did

14  you continue to work with the Cooley law firm?

15      A.  Yes.

16      Q.  What kind of work did they do for Lynx after

17  October of 1992?

18      A.  They were our employment and outside legal

19  counsel.

20      Q.  Did they provide forms that you used in the

21  course of your HR work for Lynx?

22      A.  Yes.

23      Q.  Did they provide policies that you used in the

24  course of your HR work for Lynx?

25      A.  I don't recall.

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2853-8e4c-42fa-a9df-b0fce94b179d

**EXHIBIT 5**

Page 25

1     Q.  Did you work directly with the Cooley law firm

2  during your first stint at AB before 1989?

3     A.  Yes.

4     Q.  And did you work directly with lawyers from the

5  Cooley law firm between August and October of 1992?

6     A.  Yes.

7     Q.  Are there any other law firms that you recall

8  working with while you were at AB, either before 1989 or

9  between August and October of 1992?

10     A.  No.

11     Q.  Before you took on HR responsibilities, did you

12  receive training in human resources issues?

13     A.  I don't recall.

14     Q.  Do you recall any kind of training, either

15  on-the-job or otherwise, that you had?

16     A.  I don't recall.

17     Q.  While you were with AB, were you familiar with

18  invention assignment agreements?

19     A.  Yes.

20     Q.  What was your familiarity with the invention

21  assignment agreements?

22     A.  They were a document we asked employees to sign.

23     Q.  What was the purpose of asking employees to sign

24  invention assignment agreements?

25     A.  It was part of a -- It was part of

SHARI MOSS & ASSOCIATES            (415 ) 402-0004

395e2653-6e4c-42fa-a9df-b0fce94b179d

EXHIBIT 5

Page 60

1    Q.  -- or about Lynx paying for services rendered by

2    AB?

3    A.  No.

4    Q.  When you were at Lynx, beginning in October

5    1992, were you responsible for having employees sign

6    invention assignment agreements?

7    A.  Yes.

8    Q.  Why did you have them sign invention assignment

9    agreements at Lynx?

10    A.  -- because we were advised by legal counsel to

11    have the employees sign these agreements.

12    Q.  Did you have a form of invention assignment

13    agreement?

14    A.  We did.

15    Q.  Where did that form come from?

16    A.  Cooley Godward.

17    Q.  Was it the same form that you had been using at

18    AB?

19    A.  I don't know.

20    Q.  Did you ever make any changes to the invention

21    assignment form that you used at Lynx?

22    A.  No.

23    Q.  Was signing the invention assignment form a

24    condition of employment at Lynx?

25    A.  No.

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-6e4c-42fa-a9df-b0fce94b179d

**EXHIBIT 5**

Page 64

1    these documents."

2         I assume there is no other Kathy San Roman at

3    Lynx.  Right?  So that is you?

4         A.  Correct.

5         Q.  And then it says, Number 1, there is an employee

6    invention agreement and signing this agreement is a

7    condition of employment.  That's a correct statement.

8    Right?

9         MR. FLOWERS:  Objection as to form.

10   BY MR. WILSON:

11        Q.  Is that a correct statement that signing the

12   invention assignment agreement is a condition of

13   employment with Lynx?

14        A.  That's what's stated here.

15        Q.  Did --  Did Dr. Macevicz contact you with any

16   questions about this offer letter?

17        A.  I don't recall.

18        Q.  Did he contact you with any questions about his

19   job duties or salary, anything else that you recall?

20        A.  I don't recall.

21        Q.  Do you know if Dr. Macevicz had been retained as

22   a consultant by Lynx before he came to work full time for

23   Lynx?

24        A.  I don't recall.

25        Q.  Do you know what it was that Dr. Macevicz was

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-6e4c-42fa-a9df-b0fce94b179d

EXHIBIT 5

Page 65

1    hired to do at Lynx?

2        A.  He was hired as the IP attorney.

3        Q.  So you only know what it says in the letter?

4        A.  Right.

5        Q.  It says here that his starting salary will be

6    $11,650 per month.  Do you know how that number was

7    arrived at?

8        A.  I do not.

9        Q.  It also says he'll be given a sign-on bonus of

10   $10,000.  Do you know how that number was arrived at?

11       A.  I do not.

12       Q.  And then it says he'll be granted a stock option

13   on 150,000 shares of Lynx -- Lynx's common stock and an

14   option on 50,000 shares of Spectragen's common stock.  Do

15   you know how it was decided that he would receive 150,000

16   shares of Lynx's common stock options?

17       A.  I do not.

18       Q.  Do you know how it was decided that he would

19   receive an option for 50,000 shares of Spectragen's

20   common stock?

21       A.  I do not.

22       Q.  Do you know why he was offered Lynx common

23   stock?

24       A.  Most likely because all new-hires were offered a

25   stock option grant when they were -- came on board at

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-6e4c-42fa-a9df-b0fce94b179d

**EXHIBIT 5**

1    Lynx.

2        Q.  Is that --   That was part of what you were

3    offered if you came to work at Lynx?

4        A.  You received a stock option grant.

5        Q.  Do you know if there was a typical number that

6    employees would be offered?

7        A.  No.

8        Q.  Do you have any sense of whether 150,000 shares

9    is about what people tended to receive when they came to

10   work at Lynx or do you not know one way or the other?

11       A.  I don't remember.

12       Q.  Do you know why it is that he also received an

13   option for 50,000 shares of Spectragen's common stock?

14       A.  I do not.

15       Q.  Was it typical for people who were made job

16   offers at Lynx to be offered options in Spectragen's

17   common stock?

18       A.  -- if they were hired into Spectragen.

19       Q.  And what do you mean by -- by being hired into

20   Spectragen?

21       A.  If they were hired to work at Spectragen, they

22   received a stock option grant.

23       Q.  So it was Dr. Macevicz' being hired into Lynx or

24   into Spectragen?

25       A.  He was hired into Lynx.

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2553-8e4c-42fa-a9df-b0fce94b179d

EXHIBIT 5

Page 67

1       Q.   Do you know if he was offered any position with

2   Spectragen?

3       A.   I do not know.

4       Q.   So the only position you're aware of was with

5   Lynx?

6       A.   Yes.

7       Q.   Do you know if Dr. Macevicz ever had a position

8   with Spectragen?

9       A.   I don't believe so.

10      Q.   Do you know why it is that, although

11  Dr. Macevicz wasn't being hired into Spectragen, he was

12  still offered options in Spectragen?

13           MR. FLOWERS:  Objection as to form.

14           THE WITNESS:  I don't know.

15  BY MR. WILSON:

16      Q.   Do you know who made the decision to offer him

17  options in Spectragen?

18      A.   I would assume it would be Sam, Tim, and Jerry.

19      Q.   Did you have a position with Spectragen in June

20  1995?

21      A.   No.

22      Q.   Were there employees of Spectragen in June 1995?

23      A.   I don't recall.

24      Q.   Were there employees of Spectragen at any time?

25      A.   Yes.

SHARI MOSS & ASSOCIATES                (415 ) 402-0004

395e2653-6e4c-42fa-a9df-b0fce94b179d

EXHIBIT 5

Page 68

1      Q.  When were there employees to your -- the best of

2  your recollection?

3      A.  I --  It was probably mid 1995.  But mid-year

4  1995.

5      Q.  Do you know if it was before or after June?

6      A.  I don't recall.

7      Q.  Do you know if this was unusual for an employee

8  who was being hired into Lynx to be offered options in

9  Spectragen?

10     A.  I don't know if it was unusual.

11     Q.  What was the relationship between Spectragen and

12  Lynx?

13     A.  Spectragen was a subsidiary of Lynx.

14     Q.  Is it wholly-owned by Lynx?

15     A.  I believe so.

16     Q.  Did Sam Eletr have a position with -- with

17  Spectragen?

18     A.  I don't recall the structure.

19     Q.  If you wanted to find out why it was that --

20  that Steve Macevicz was offered options in Spectragen, at

21  this point who would you ask?

22     A.  Most likely, Sam Eletr.

23     Q.  Is there anybody else you might ask?

24     A.  Tim or Jerry.

25     Q.  Now, at some point I think you're aware, I

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2853-6e4c-42fa-a9df-b0fce94b179d

**EXHIBIT 5**

Page 69

1  assume, that Dr. Macevicz assigned some patent

2  applications to Lynx.  Correct?

3         Are you aware?  Maybe you're not.  Let me start

4  at the beginning.

5         Are you aware that at some point Dr. Macevicz

6  assigned some patent applications to Lynx?

7     A.  I am aware.

8     Q.  Do you know if that was before or after he was

9  offered employment with Lynx?

10     A.  I -- I don't know.

11     Q.  Do you know if the assignment of the patent

12  applications to Lynx was a condition of his employment

13  with Lynx?

14     A.  I don't know that.

15     Q.  Do you know if it was a condition of his offer

16  of employment with Lynx?

17     A.  I don't know.

18     Q.  Does Exhibit 6 appear to be a standard form of

19  offer letter to people you wanted to come work for Lynx?

20         MR. FLOWERS:  Objection as to form.

21         MR. WILSON:  That's a fair objection.

22     Q.  Can you think of any other employees who were

23  made job offers at Lynx who were offered options in

24  Spectragen as well as in Lynx?

25     A.  I don't recall.

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-8e4c-42fa-a9df-b0fca94b179d

**EXHIBIT 5**

1   Q.  Are you aware that Steve Macevicz assigned four

2   patent applications to Lynx?

3   A.  I'm aware there was or were patents.  I don't --

4   wasn't aware how many.

5   Q.  Do you know why Dr. Macevicz assigned patents or

6   patent applications to Lynx?

7   A.  No, I'm not aware.

8   Q.  Do you know whose idea it was for Dr. Macevicz

9   to assign patents or patent applications to Lynx?

10  A.  No.

11  Q.  Do you know if Lynx provided any compensation to

12  Dr. Macevicz for assigning those patents or patent

13  applications to Lynx?

14  A.  -- only based on his statement.

15  Q.  And what statement is it that you're referring

16  to?

17  A.  -- that he made at the interview.

18  Q.  So you're talking about the interview that we --

19  we all had -- the lawyers had had at Mr. Fthenakis's

20  office?

21  A.  Yes.

22  Q.  So putting that aside for the moment, other

23  than --  And that's a meeting that occurred, I think,

24  last summer.  So it's recent?  In other words, it's not

25  1995?

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2553-6e4c-42fa-a9df-b0fce94b179d

**EXHIBIT 5**

Page 76

1    A.  No.  No.  No.

2    Q.  It's at least within the last year or so.

3    A.  Right.

4    Q.  So putting aside anything that's happened within

5    the last year, are you aware of Lynx paying anything to

6    Dr. Macevicz in return for him assigning patent

7    applications to Lynx?

8    A.  I'm not aware.

9    Q.  And putting aside what you've learned in the

10   last year, are you aware of Lynx giving anything at all

11   of value to Dr. Macevicz in return for assigning patent

12   applications to Lynx?

13   A.  No.

14   Q.  And specifically referring to Exhibit 6 --

15   Exhibit 8 here, are you aware of Lynx providing anything

16   of any value at all to Dr. Macevicz in return for

17   assigning the four applications with the serial numbers

18   on this document to Lynx?  So in other words,

19   applications 091,603, 436,084, 436,528, and 424,663?

20   A.  No.

21   Q.  Are you aware of Spectragen providing any

22   compensation to Dr. Macevicz in return for assigning

23   these four patent applications listed on Exhibit 8 to

24   Lynx?

25   A.  No.

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-6e4c-42fa-a9df-b0fce94b179d

EXHIBIT 5

Page 100

1   when you resigned from the Applied Biosystems in 1988, or

2   did you stay after you had sent this letter?

3       A.  Apparently it was '88.

4       Q.  And then the last couple of pages is an accurate

5   copy of your resume, at least as of the time that you

6   prepared it?

7       A.  It appears to be.

8       Q.  And that's prepared before you went to work for

9   AB.  Right?

10      A.  Appears to be, yes.

11          (Plaintiff's Exhibit Number 14

12          was marked for identification.)

13          THE REPORTER:  14.

14  BY MR. WILSON:

15      Q.  Exhibit 14 is the answers and objections of

16  Illumina, Inc., to Applied Biosystems' first set of

17  interrogatories to Illumina.  Can you take a brief look

18  through these and just let me know if you've seen these

19  before?

20      A.  I don't believe I've seen this before.

21      Q.  Can you take a look at the response to

22  Interrogatory Number 9, which is on page 10 of the

23  documents?  And the question is to identify each grant of

24  stock or stock options made by Illumina, including

25  without limitation Spectragen, Inc., to Macevicz.  And

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-5e4c-42fa-a9df-b0fce94b179d

EXHIBIT 5

Page 101

1   you see there's a table there?

2       A.   Uh-huh.

3       Q.   And that shows three grants of stock options on

4   or before September 1, 1995.  And you see there's one for

5   150,000 options in Lynx on September 1, 1995.  And then

6   there's one on August 14, 1995, for 50,000 options in

7   Spectragen.  And then you see there's one for 20,000

8   options in Spectragen on August 14, 1995.

9       A.   Uh-huh.

10      Q.   And my question is, Do you know why there is an

11  additional grant over and above what was mentioned in

12  Steve Macevicz's offer letter of 20,000 options?

13           May I ask to go back again.  First of all, do

14  you know if those numbers are correct?  Did Steve

15  Macevicz receive 50,000 options of Spectragen on or about

16  August 14, 1995, another 20,000 options of Spectragen on

17  or about August 14, 1995, and 150,000 options in Lynx on

18  or about September 1, 1995?

19      A.   I believe so.  I'd have to see documentation to

20  confirm that.

21      Q.   Did you assist in preparing the response to this

22  interrogatory?

23      A.   No.

24      Q.   Do you know why Steve was -- Steve Macevicz was

25  granted a 20,000 share options in Spectragen on

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-5e4c-42fa-a9df-b0fce94b179d

EXHIBIT 5

Page 102

1    August 14?

2        A.  No.

3        Q.  Do you know if that was done in connection with

4    an assignment of a patent or patent applications to Lynx?

5        A.  I don't know.

6        Q.  Do you know if it was done in connection with

7    the assignment of patent or patent applications to

8    Spectragen?

9        A.  I don't know.

10       Q.  Can I ask you to take a look at Exhibit 11

11   again?  It should be in the stack there with the court

12   reporter.

13       The fax cover sheet has a note from Steve to

14   Sam.  And one of the things he says in here is "My

15   objective --" objective "-- was to make my patent part of

16   the 'Brenner' package of intellectual property owned by

17   Newco or Lynx."  Do you know what the Brenner package is?

18       A.  I do not.

19       Q.  Have you ever heard any reference to the Brenner

20   package of intellectual property?

21       A.  I have not.

22       Q.  Do you know what the Newco is in reference to?

23       A.  I do not.

24       Q.  Did you have any role in the setting up of

25   Spectragen?

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-5e4c-42fa-a9df-b0fce94b179d

EXHIBIT 5

Page 120

1  that topic.  So the grant of stock options to

2  Dr. Macevicz she's -- she's designated to testify as to

3  those.

4       MR. WILSON:  Okay.  And obviously we're not

5  conceding anything with respect to the appropriateness of

6  the designation or timeliness or anything.  But I'll go

7  through and ask the questions because I hope we won't

8  have to do this again.  So if we're lucky, this will all

9  work out.  If we're not lucky, then we can work it out

10 when the time --

11      MR. FLOWERS:  I guess it's Illumina's position

12 that if you proceed to ask questions under 30(B)6 on the

13 topics, then there is an implicit concession there.  We

14 can argue about that --

15      MR. WILSON:  I'm sure that is Illumina's

16 position.  And our position, of course, was there wasn't

17 enough time to prepare.  But we'll do our best because I

18 don't think anybody has any interest in having to do this

19 again.

20      Q.  So let me ask you to take a look at Topic 1 on

21 Exhibit 18 which is the corporate history of Illumina and

22 its related entities, including but not limited to the

23 inception of Lynx as a subsidiary of AB, the transition

24 of Lynx into an independent company from AB, the

25 combination of Lynx with Solexa --

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-6e4c-42fa-a9df-b0fce94b179d

**EXHIBIT 5**

1    We left out a word so I want to ask you about

2    that.

3        -- the acquisition of Solexa by Illumina.  So

4    rather than read it into the record, let me ask you to

5    read that and ask you if you are the most knowledgeable

6    person at Illumina about these topics.

7        A.  Just in Section 1?

8        Q.  Just in Topic 1 for now, right.

9        A.  There are parts of it that I would probably be

10   the most appropriate person.  But there are other parts

11   where I would not be.

12       Q.  Okay.  Well, which parts do you think you would

13   be the most appropriate person?

14       A.  You know, the combination of -- of Lynx with the

15   acquisition of Solexa by Illumina, the identity.  Maybe

16   in a position of former AB employees and personnel that

17   started or joined Lynx.

18       But when you get down to representatives

19   concerning the transfer of employees or intellectual

20   property rights and below, that's probably not myself.

21       Q.  How about the relationship between Spectragen

22   and Macevicz or Lynx?

23       A.  That's probably not myself either.

24       MR. FLOWERS:  Bryan, I don't like to speak on

25   the record, but I just want to make sure you're asking

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-6e4c-42fa-a9df-b0fce94b179d

EXHIBIT 5

Page 122

1  whether she believes she's the most knowledgeable person

2  on this topic currently at Illumina.

3          MR. WILSON:  Right.

4          MR. FLOWERS:  Okay.  I just want to make sure

5  that's clear --

6          MR. WILSON:  Right.

7          MR. FLOWERS:  -- the person currently at

8  Illumina.

9          MR. WILSON:  Right.  Right.

10     Q.  Who currently at Illumina, if anybody, would be

11  more knowledgeable about the relationship between

12  Spectragen and Macevicz?

13     A.  There's probably no one.

14     Q.  Have you done anything to learn about the

15  relation -- to learn about the topics --  Have you done

16  anything to learn about the subjects that are discussed

17  in Topic 1?  Have you reviewed documents, for example?

18     A.  I've not reviewed documents, no.

19     Q.  Have you talked to employees of -- other

20  employees of Illumina to see what you might be able to

21  learn about these topics?

22     A.  No.

23     Q.  Have you talked to former employees of Illumina

24  to see what you might be able to learn about these

25  topics?

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-5e4c-42fa-a9df-b0fce94b179d

EXHIBIT 5

Page 125

1         First of all, is that an okay way to describe

2    it?  I know the transaction was more complicated than

3    that.

4         How would you --  How would you refer to it if

5    you were using shorthand for that?

6         A.  The merger --

7         Q.  The merger.

8         A.  --- between Lynx and Solexa.

9         Q.  So without getting into the intricacies of a

10   reverse triangular merger and all that kind of stuff --

11        A.  It was pretty --

12        Q.  So in the merger between Solexa and Lynx, was

13   there any discussion of the patents or applications that

14   Steve Macevicz had assigned to Lynx in 1995?

15        A.  Not that I'm aware of.

16        MR. FLOWERS:  Oh.

17   BY MR. WILSON:

18        Q.  Was --

19        THE WITNESS:  Sorry.

20   BY MR. WILSON:

21        Q.  Was any inquiry made by Solexa to Lynx about

22   Lynx's rights in the applications or patents that had

23   been received from Steve Macevicz?

24        A.  Say that again.

25        Q.  Was there any inquiry by Solexa to Lynx about

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-8e4c-42fa-a9df-b0fce94b179d

EXHIBIT 5

Page 126

1    Lynx's rights to the patents or applications that had

2    been assigned to Lynx by Dr. Macevicz?

3        A.   Not that I'm aware of.

4        Q.   Was there any inquiry by Solexa to Dr. Macevicz

5    about whether he had the rights to assign patents or

6    applications to Lynx?

7        A.   Not that I'm aware of.

8        Q.   Are you aware of any discussion between Solexa

9    and Lynx of any intellectual property rights connected to

10   Steve Macevicz in any way?

11       A.   No.  I'm not aware of any.

12       Q.   So as far as you know in the course of the

13   Solexa and Lynx merger, the topic of Steve Macevicz's

14   patents or applications never arose?

15       A.   Not that I'm aware of.

16       Q.   As far as you're aware, was any part of the

17   consideration that may have passed from Solexa to

18   Illumina intended to compensate --  Strike that.

19            As far as you know, was any of the compensation

20   that was paid by Solexa to Lynx intended in any way to

21   pay for any patents or applications of Steve Macevicz's?

22       A.   Not that I'm aware of.

23       MR. FLOWERS:  Just for the record, I'll note

24   it's our position that all of those questions relating to

25   Solexa are outside the scope of Topic 1.

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-6e4c-42fa-a9df-b0fce94b179d

**EXHIBIT 5**

1    BY MR. WILSON:

2        Q.  Can we take a look at Topic Number 2, which is

3    the hiring and employment of Macevicz in 1995.  And I'd

4    like you to read through that topic and tell me, Are you

5    the most knowledgeable current employee at Illumina on

6    this topic?

7        A.  I'm probably the person most knowledgeable.

8        Q.  All right.  And that sort of follows because HR

9    was one of your areas of responsibility.  Right?

10       A.  Yes.

11       Q.  Now, specifically Illumina said it would

12   designate a witness to testify about the terms of

13   Dr. Macevicz's employment and any compensation given to

14   Macevicz as consideration for his hiring and employment

15   including any grant of stock or stock options.  So we

16   talked about that a little bit, but I just want to make

17   sure we've closed that all out.

18           Is it correct that you don't have any

19   information about how Steve Macevicz's salary was

20   negotiated?

21       A.  That's correct.

22       Q.  And is it correct that you don't have any

23   knowledge of how the number of stock or stock options

24   that he received was arrived at?

25       A.  That's correct.

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2553-6e4c-42fa-a9df-b0fce94b179d

**EXHIBIT 5**

Page 128

1    Q.  As far as you know also, isn't it the case

2    that -- that --

3              That has a double negative.

4              As far as you know, was Dr. Macevicz paid

5    anything by Lynx or Spectragen for assigning his patent

6    applications to Lynx?

7              MR. FLOWERS:  Again, I'll just note for the

8    record it's our position that this question is outside

9    the scope of the 30(B)6 for which she's been designated.

10             THE WITNESS:  I'm not aware.

11   BY MR. WILSON:

12    Q.  So as far as you know, the salary and the stock

13   options that were provided by Lynx to Dr. Macevicz were

14   components of his compensation for going to work for

15   Lynx, nothing more?

16             MR. FLOWERS:  Same note for the record.  It's

17   outside the scope of the 30(B)6.

18             THE WITNESS:  I believe so.

19   BY MR. WILSON:

20    Q.  Now, are there instances that you're aware of in

21   which Lynx has acquired patents or patent applications

22   from third-parties?

23    A.  I don't know.

24    Q.  Do you know, based on your experience as the --

25   as the HR administrator for Lynx whether, if Dr. Macevicz

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-6e4c-42fa-a9df-b0fce94b179d

EXHIBIT 5

Page 129

1   had been paid something for his applications, that would

2   have been handled separately from his pay for the work he

3   was doing for Lynx?

4           MR. FLOWERS:  Objection as to form.

5           MR. WILSON:  That's a fair objection.

6       Q.  Do you know based in your -- based in your

7   experience as the HR administrator at Lynx --

8           That doesn't work either.

9           Based on your experience as the HR administrator

10  for Lynx, if Dr. Macevicz had been compensated for

11  assigning his patents or applications to Lynx, would that

12  have been handled or accounted for separately than the

13  payment of his salary?

14          MR. FLOWERS:  Outside the scope of the 30(B)6

15  and objection as to form.

16          THE WITNESS:  I don't know.

17  BY MR. WILSON:

18      Q.  Just don't know one way or the other?

19      A.  I don't, no.

20      Q.  But as far as you know, Steve received a salary

21  for working at Lynx, he received stock options for

22  working at Lynx, and that was all he received.  Right?

23          MR. FLOWERS:  Same.  Outside the scope of the

24  30(B)6.

25          THE WITNESS:  Repeat your question.

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-6e4c-42fa-a9df-b0fce94b179d

EXHIBIT 5

Page 136

1    Q.  In the course of the transition from Solexa to

2  Illumina, did anybody ever ask you for background on

3  Dr. Macevicz or his patents?

4    A.  I don't believe so.

5    Q.  Can you take a look at Topic 4?  I'm going to

6  ask you to review Topic 4, which is due diligence on

7  various, related matters.

8      So I take it you're not aware of any due

9  diligence having been done in connection with the

10  assignment of the -- of Dr. Macevicz's applications to

11  Lynx.  Right?

12    A.  I am not.

13    Q.  The objection here says that Illumina is not

14  currently aware of any organization witness that can be

15  designated to provide testimony about this topic.  As far

16  as you know, is that still a correct statement?

17    A.  I believe so.

18    Q.  So as far as you know, there's nobody at

19  Illumina, no current employee of Illumina who could speak

20  about the due diligence performed in connection with the

21  assignment of Dr. Macevicz's patent application to Lynx?

22    A.  That's true.

23    Q.  As far as you know, is there anybody who is not

24  an employee, maybe a contractor or consultant or an

25  agent, who could testify about due diligence done in

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2553-8e4c-42fa-a9df-b0fce94b179d

EXHIBIT 5

1    A.  Sure.

2    Q.  And do you have files of bills that have been

3    paid for legal fees?

4    A.  Yes.

5    Q.  Probably the same files in all likelihood.

6    A.  Right.

7    Q.  Do you have legal files that would show matters

8    that were handled by the law firm for the company?

9    A.  Yes.

10    Q.  Do you have files that would -- that would show

11    corporate matters being handled by the law firms?

12    A.  Only what's noted on the invoices.

13    Q.  And have you gone through any of those files to

14    see what you could learn about services that may have

15    been provided by the Cooley Godward law firm to Solexa or

16    Lynx?

17    A.  No.

18    Q.  Going back to the Lynx spinoff for a moment, was

19    there a law firm that assisted Lynx with the spinoff from

20    Solexa?  Excuse me, was there a law firm that assisted

21    Lynx with the spinoff from AB?

22    A.  Cooley Godward.

23    Q.  That was Cooley Godward?

24         Now, was there a law firm that assisted AB with

25    the spinoff?

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

395e2653-6e4c-42fa-a9df-b0fce94b179d

EXHIBIT 5