KEVIN M. FLOWERS (admitted *pro hac vice*)
THOMAS I. ROSS (admitted *pro hac vice*)
JEFFREY H. DEAN (admitted *pro hac vice*)
JOHN R. LABBE (admitted *pro hac vice*)
CULLEN N. PENDLETON (admitted *pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606-6357
(312) 474-6300 (telephone)
(312) 474-0448 (facsimile)
E-Mail: kflowers@marshallip.com
E-Mail: tross@marshallip.com
E-Mail: jdean@marshallip.com
E-Mail: jlabbe@marshallip.com
E-Mail: cpendleton@marshallip.com

Counsel for Defendants
ILLUMINA, INC., SOLEXA, INC.,
and STEPHEN C. MACEVICZ

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| APPLERA CORPORATION—APPLIED BIOSYSTEMS GROUP, a Delaware corporation, | Case No. 07-CV-02845 WHA |
| | District Judge William H. Alsup |
| Plaintiff/counterdefendant, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO BIFURCATE** |
| - vs. - | |
| ILLUMINA, INC., a Delaware corporation, SOLEXA, INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual, | Date: April 24, 2008 Time: 8:00 a.m. Place: Courtroom 9, 19th Floor |
| Defendants/counterclaimants. | |

# TABLE OF CONTENTS

*Page*

I.  INTRODUCTION ................................................................................................ 1

II. ARGUMENT ..................................................................................................... 3

    A.  Jurisdictional standing is not at issue in this case ........................................ 3

    B.  Defendants are entitled to a jury trial because AB seeks
        money damages as a remedy for its state-law claims .................................. 4

    C.  *DDB Techs. v. MLB Advanced Media* does not address
        the question here ........................................................................................ 6

    D.  Defendants are entitled to a jury trial despite AB's
        mischaracterization of its state-law claims as presenting
        an issue of "standing" ............................................................................... 8

    E.  A trial beginning May 12, 2008 is not reasonable or
        logistically feasible ................................................................................... 9

        1.  AB has refused to provide discovery regarding the
            claims for which it now seeks an early trial .................................... 10

        2.  It is not reasonable or feasible to require Defendants
            to begin and complete expert discovery in time for
            a trial in May ................................................................................ 12

    F.  A trial on all issues beginning on September 29 is more
        efficient ................................................................................................... 13

    G.  AB has not established that bifurcation is warranted .................................. 14

        1.  AB has not shown that bifurcation will not
            prejudice Defendants ...................................................................... 14

        2.  AB has not shown that bifurcation will avoid
            prejudice to AB ............................................................................. 15

III. CONCLUSION ................................................................................................ 16

1

# TABLE OF AUTHORITIES

2

*Cases:*                                                                                      *Page(s):*

3

4

*Arachnid, Inc. v. Merit Industries, Inc.*,
939 F.2d 1574 (Fed. Cir. 1991) ............................................................... 3

5

*Autery v. United States*,
424 F.3d 944 (9th Cir. 2005) .................................................................. 8

6

7

*Beacon Theatres, Inc. v. Westover*,
359 U.S. 500 (1959) ..................................................................... 4, 5, 9

8

*Bowsher v. Synar*,
478 U.S. 714 (1986) .............................................................................. 5

9

10

*Calmar, Inc. v. Emson Research*,
850 F. Supp. 861 (C.D. Cal. 1994) ......................................................... 14

11

*Curtis v. Loether*,
415 U.S. 189 (1974) .............................................................................. 5

12

13

*Dairy Queen, Inc. v. Wood*,
369 U.S. 469 (1962) ..................................................................... 4, 5, 9

14

*DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*,
2008 WL 375202 (Fed. Cir. Feb. 13, 2008) ........................... 1, 3, 6, 7, 8, 9

15

16

*Filmtec Corp. v. Allied-Signal Inc.*,
939 F.2d 1568 (Fed. Cir. 1991) ............................................................... 6

17

*In re Technology Licensing Corp*,
423 F.3d 1286 (Fed. Cir. 2005) ............................................................... 5

18

19

*INS v. Chadha*,
462 U.S. 919 (1983) .............................................................................. 5

20

*Lans v. Digital Equipment Corp.*,
252 F.3d 1320 (Fed. Cir. 2001) ............................................................... 3

21

22

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .............................................................................. 3

23

*Paradise Creations, Inc. v. UV Sales, Inc.*,
315 F.3d 1304 (Fed. Cir. 2003) ............................................................... 3

24

25

*Pernell v. Southall Realty*,
416 U.S. 363 (1974) .............................................................................. 5

26

*Rosales v. United States*,
824 F.2d 799 (9th Cir. 1987) .................................................................. 8

27

28

*Spectra-Physics Lasers, Inc. v. Uniphase Corp.*,
144 F.R.D. 99 (N.D. Cal. 1992) ............................................................. 14

*Speedplay, Inc. v. Bebop, Inc.*,
    211 F.3d 1245 (Fed. Cir. 2000) .................................................................................... 6

*Rules:*                                                                            *Pages*

Fed. R. Civ. P. 42(b) .............................................................................. 5, 9, 14, 15

1    **I.    INTRODUCTION**

2         AB's request for bifurcation "on the issue of standing" attempts to mislead the Court

3    into concluding that the resolution of a jurisdictional question would avoid the need to try

4    this case to a jury. It will not. AB's request to bifurcate misrepresents the triable issues —

5    AB's seven state-law claims — and in so doing ignores the fact that Defendants have a

6    right to have AB's state-law claims (and other issues in this case) tried to a jury.

7         First, AB cannot legitimately challenge Solexa's standing to bring its infringement

8    counterclaims (and therefore the Court's subject-matter jurisdiction over those claims).

9    Standing to bring patent infringement claims only requires that one held legal title to the

10   patents-in-suit when one filed the claims. Solexa has held legal title in the patents-in-suit

11   since 1995, when Dr. Macevicz assigned the application underlying the patents-in-suit to

12   Lynx (Solexa's predecessor). AB cannot dispute that Solexa holds legal title to the patents-

13   in-suit, so it recasts its request for a bench trial on its state-law claims as a "question of

14   standing" in a strained attempt to analogize this case to *DDB Techs., L.L.C. v. MLB Ad-*

15   *vanced Media, L.P.*, 2008 WL 375202 (Fed. Cir. Feb. 13, 2008). But *DDB* addressed the

16   right to a jury trial on the issue of jurisdictional standing, not on state-law claims that seek

17   monetary damages, which is what AB brings here. The holding in *DDB* is not relevant to

18   the present question of a bifurcated bench trial because there is no legitimate issue of juris-

19   dictional standing here. AB's "standing" argument is a red herring that should be rejected.

20        Second, a bifurcated bench trial on AB's state-law claims would deny Defendants

21   their Seventh Amendment right to a jury trial on those claims. AB seeks money damages as

22   a remedy for its state-law claims. *DDB* did not change the long-standing Supreme Court

23   case law that holds that where a party seeks a remedy at law — money damages — its op-

24   ponent is entitled to a jury trial. Because AB seeks damages under its state-law claims, De-

25   fendants are entitled to a jury trial on those claims, and holding a bifurcated bench trial on

26   those claims over Defendants' objections would constitute reversible error.

27        Third, holding a trial in May is not reasonable or logistically feasible. The current

28   schedule calls for fact discovery to continue through May 30, and expert discovery to begin

---

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO BIFURCATE; CASE NO: 07-CV-02845 WHA

-1-

on May 30 and end on July 7.[1] Although Defendants served AB with discovery requests regarding the issues raised by AB's state-law claims more than four months ago, AB has thus far refused to produce discovery regarding those claims. Even if this Court were to order AB to comply with its discovery obligations immediately, it would be unfair to require Defendants to process that discovery in time for a trial in May. Moreover, Defendants intend to retain experts and rely on their testimony to address important aspects of the central question in AB's state-law ownership case: whether Dr. Macevicz's claimed inventions were "related to" AB's business or its actual or reasonably anticipated research or development in 1994-95, or resulted from his work at AB. It would not be fair or logistically feasible for Defendants to have to begin and complete expert discovery on these issues in the less than one month that would remain after AB provides discovery on these issues.

Defendants have proceeded in this case under the reasonable expectation that they would have until May 30 to complete this fact discovery, and that they would not have to begin expert discovery until May 30. It is not reasonable or feasible to require the parties to complete fact discovery, find and retain experts, prepare expert reports, complete expert discovery, conduct a pre-trial conference, and be ready for a trial on AB's seven state-law claims by May 12. Moreover, as this Court has recognized, holding a "preliminary" jury trial on the state-law claims could result in two juries having to learn about the background technology, the inventions, and the patents, which would be wasteful of this Court's, the juries', and the parties' time and resources.

Finally, preparing for a jury trial beginning May 12, or at any time prior to the scheduled September trial date, would likely require the parties to delay or abandon their efforts to prepare the patent infringement and validity issues for trial in September 2008, which could significantly delay the ultimate resolution of this case and increase the time and resources expended by the Court and the parties to resolve this case.

The Court should deny AB's motion and permit the parties to complete fact and ex-

---

[1] *See* Dkt. No. 32, Case Management Order, at 2-3.

1   pert discovery under the current schedule so they can efficiently and effectively prepare

2   and present the issues that survive Defendants' pending motion for summary judgment at

3   the currently scheduled jury trial beginning September 29.

4   **II.    ARGUMENT**

5           **A.    Jurisdictional standing is not at issue in this case**

6           AB characterizes the patent ownership issue in this case as a "threshold issue of sub-

7   ject matter jurisdiction that must be resolved before deciding any other aspect of the case."[2]

8   Citing *DDB*, AB argues that Defendants have no "right to a jury trial regarding the Inven-

9   tion Agreement and its effect on standing."[3]

10          In its Motion, AB seeks a bifurcated trial only on the issue of standing. The question

11  of standing, however, is an easy one which does not require a trial. Jurisdictional standing

12  is determined "'as of the commencement of suit.'"[4] To have standing to bring infringement

13  claims, a party like Solexa need only have held legal title to the patents-in-suit when it filed

14  those claims.[5] Solexa has had legal title to the patents-in-suit since Dr. Macevicz assigned

15  the patent application underlying those patents to Lynx Therapeutics, Inc. (a predecessor of

16  Solexa) on August 31, 1995.[6] AB does not and cannot dispute any of this. Thus, jurisdic-

17  tional standing is not at issue here because Solexa had standing when it filed its counter-

18  claims for infringement, and therefore this Court has subject-matter jurisdiction over

19  Solexa's counterclaims.

20

21

22  _____

23      [2] Dkt. No. 155, AB's Motion, at p. 2, lines 15-16; and p. 11, lines 18-19.
        [3] *Id.* at p. 8, lines 16-17.

24      [4] *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003)
    (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 n.5 (1992)).

25      [5] *Arachnid, Inc. v. Merit Industries, Inc.*, 939 F.2d 1574, 1579 (Fed. Cir. 1991) ("The
    general rule is that one seeking to recover money damages for infringement of a United

26  States patent (an action 'at law') must have held the legal title to the patent during the time
    of the infringement."); *see also Lans v. Digital Equipment Corp.*, 252 F.3d 1320, 1328

27  (Fed. Cir. 2001) (party did not have standing where he had already assigned legal title to
    the patent before the inception of the lawsuit)

28      [6] Exh. A, August 31, 1995 Assignment.

**B.    Defendants are entitled to a jury trial because AB seeks money damages as a remedy for its state-law claims**

AB's motion to bifurcate essentially seeks a bench trial on all of its state-law owner-ship claims. But in its First Amended Complaint,[7] AB seeks money damages (including punitive damages) as a remedy for its state-law claims against one or more Defendants, *i.e.*, for interference with contract,[8] aiding and abetting a breach of fiduciary duty,[9] constructive fraud,[10] conversion,[11] and unfair competition.[12] AB also seeks "profits or income" from one or more Defendants under its theory of constructive trust.[13] AB pled these claims for dam-ages as elements of its state-law claims.

The Court may not bifurcate a trial on AB's state-law claims from a trial on AB's demands for damages as a remedy under those claims. In *Beacon Theatres, Inc. v. West-over*, 359 U.S. 500, 508 (1959), the Supreme Court explicitly rejected this approach. In *Beacon Theatres*, the Court addressed the importance of the order in which legal and equi-table claims are to be tried in one suit. While recognizing that "the same court may try both legal and equitable causes in the same action," the Supreme Court held that "only under the most imperative circumstances ... can the right to a jury trial of legal issues be lost through prior determination of equitable claims."[14] The Court held that it was reversible error to conduct a bench trial on an equitable claim, thereby precluding a jury trial on the legal claims, when the equitable claim involved factual issues that were "common" to the legal claims.

The Supreme Court addressed the issue again in *Dairy Queen, Inc. v. Wood,* 369 U.S. 469 (1962). The plaintiffs in *Dairy Queen*, like AB in this case, brought a breach-of-

---

[7] Dkt. No. 46.
[8] *Id.* at ¶ 34.
[9] *Id.* at ¶ 39.
[10] *Id.* at ¶ 46.
[11] *Id.* at ¶ 50.
[12] *Id.* at ¶ 57.
[13] *Id.* at ¶ 53.
[14] *Beacon Theatres,* 359 U.S. at 508, 510-11.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO BIFURCATE; CASE NO: 07-CV-02845 WHA

1  contract claim against Dairy Queen.[15] The breach-of-contract claim sought equitable relief

2  (an injunction) and a legal claim for monetary damages.[16] The trial court refused to grant a

3  jury trial on plaintiffs' breach-of-contract claim. The Supreme Court held that to be re-

4  versible error because "the factual issues related to the question of whether there has been a

5  breach of contract…are common" to the equitable and legal claims for relief.[17] Thus,

6  "[w]hen an action calls for the adjudication of legal rights, the trial court must honor the

7  jury demand, whether or not equitable issues are also present."[18]

8         Each of AB's requests for equitable relief on its various state-law claims expressly

9  includes a request for money damages.[19] Consequently, there can be no dispute that AB's

10 state-law claims request legal as well as equitable relief. Because AB seeks monetary dam-

11 ages as a remedy for its state-law claims, Defendants are entitled to a jury trial on those

12 claims. Under the holdings in *Beacon Theatres* and *Dairy Queen*, the Court cannot resolve

13 the factual disputes underlying AB's state-law claims without a jury.

14        Even if it seemed more efficient to sever AB's state-law claims under Fed. R. Civ.

15 P. 42(b), "these considerations are insufficient to overcome the clear command of the Sev-

16 enth Amendment."[20] Indeed, before a court orders bifurcation under Fed. R. Civ. P. 42(b),

17  _____

18    [15] *Dairy Queen,* 369 U.S. at 474-75.

      [16] *Id.* at 475.

19    [17] *Id.* at 479.

      [18] *In re Technology Licensing Corp*, 423 F.3d 1286, 1292 (Fed. Cir. 2005) (citing *Dairy*
20  *Queen*, 369 U.S. at 472-73, 479).

21    [19] *See, e.g.,* Dkt No. 46, First Amended Complaint, at ¶ 34 ("AB has been damaged as a
    result of Illumina's interference with the Invention Agreement between Macevicz and AB,
22  in an amount to be proven at trial."), at ¶ 39 ("AB has been damaged as a result of Illu-
    mina's aiding and abetting of Macevicz's breaches of fiduciary duties owed to AB, in an
    amount to be proven at trial."), at ¶ 46 ("AB has been damaged as a result of defendants'
23  constructive fraud, in an amount to be proven at trial."), at ¶ 50 ("AB has been harmed by
    defendants' conduct and is entitled to recover from defendants the actual damages sus-
24  tained by AB as a result of the defendants' wrongful acts as described in this Complaint."),
    and at ¶ 57 ("As a result of Illumina and Solexa's acts of unfair competition, AB has been
25  damaged by, among other things, the cost of this action and other measures made necessary
    to recover the Patents and otherwise remedy Illumina and Solexa's wrongdoing.").

26    [20] *Curtis v. Loether*, 415 U.S. 189, 198 (1974); *see also Bowsher v. Synar*, 478 U.S.
    714, 736 (1986) ("'[T]he fact that a given law or procedure is efficient, convenient, and
27  useful in facilitating functions of government, standing alone, will not save it if it is con-
    trary to the Constitution.'") (quoting *INS v. Chadha*, 462 U.S. 919, 944 (1983)); *Pernell v.*
28  *Southall Realty*, 416 U.S. 363, at 383-84 (1974) (discounting arguments that jury trials

_____

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO BIFURCATE; CASE NO: 07-CV-02845 WHA**

"the court must preserve any federal right to a jury trial." Here, there is no way to avoid violating the Supreme Court's prohibition against dividing up the legal and equitable portions of a given claim. Accordingly, AB's request to hold a bench trial on its state-law claims should be denied.

### C.    *DDB Techs. v. MLB Advanced Media* does not address the question here

AB grounds its arguments on one case, *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 2008 WL 375202 (Fed. Cir. Feb. 13, 2008). *DDB*, however, did not address the right to a jury trial on any claim of ownership of a patent or on the types of substantive state-law claims that AB is asserting here. *DDB* does not answer the question now before the Court: can AB's state-law claims (*e.g.*, breach of contract and unfair competition) be resolved by the Court when AB seeks monetary damages as a remedy for those claims?

The defendant in *DDB* moved to dismiss DDB's patent infringement complaint for lack of subject-matter jurisdiction on the ground that the inventor's employment agreement constituted "an automatic assignment" of the patent-in-suit.[21] If the employment agreement constituted an automatic assignment, and the invention fell within the scope of the agreement, the patent was automatically assigned to a third party, Schlumberger.[22] In that circumstance, DDB would not have owned the patent at the time it filed the complaint, so it would have lacked jurisdictional standing to assert its infringement claim, which was the *only* claim at issue in *DDB*.

In *DDB*, after a brief hearing, the district court found that the employment agreement constituted an automatic assignment because it stated that the employee "'agrees to

_____

would be unduly burdensome and rejecting "the notion that there is some necessary inconsistency between the desire for speedy justice and the right to jury trial").

[21] *DDB*, 2008 WL 375202 at *4.

[22] *Id.* at *5; *see also Filmtec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1570 & 1573 (Fed. Cir. 1991) (automatic assignment where the contract provided that inventor "agrees to grant and does hereby grant" all rights in future inventions); *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000) (automatic assignment where the contract provided that employee's inventions within the scope of the agreement "shall belong exclusively to [employer] and [employee] hereby conveys, transfers, and assigns to [employer] ... all right, title and interest in and to Inventions").

1    *and does hereby grant and assign*' all rights in future inventions."[23] The district court also

2    concluded that the invention, computer-simulated baseball games, fell within the scope of

3    the agreement because it was "'suggested by' and 'related to'" the inventor's work for

4    Schlumberger.[24] DDB therefore lacked standing to assert its infringement claim when it

5    filed its complaint, and the court lacked subject-matter jurisdiction over the case.[25]

6        On appeal, the question was whether DDB was "entitled to a jury trial on the juris-

7    dictional issue of standing,"[26] not whether DDB was entitled to a jury trial on the types of

8    state-law claims (*e.g.,* breach of contract and unfair competition) brought by AB here. The

9    Federal Circuit held that the district court did not have to wait until after a jury trial *on the*

10   *merits of the patent infringement claim* to resolve the jurisdictional issue.[27] However, the

11   Federal Circuit was careful to point out that while "DDB has no right to a jury trial on the

12   issue of standing, there of course remains a right to jury trial on other appropriate issues in

13   the case [*i.e.*, substantive claims seeking damages]."[28]

14       This case and *DDB* both involve questions of ownership of a patent, but the similar-

15   ity ends there.

16       First, it is undisputed that Solexa holds legal title to the patents-in-suit, and AB has

17   never argued that Dr. Macevicz's Employee Invention Agreement constituted an automatic

18   assignment of the type at issue in *DDB*. The "threshold issue of subject matter jurisdiction"

19   that was present in *DDB* is not at issue in this case.

20       Second, AB's purported "standing" issue is wholly derivative of AB's seven sub-

21   stantive state-law claims (*e.g.*, breach of contract, conversion, and breach of fiduciary

22   duty). The Court could grant equitable relief to AB (by transferring ownership of the pat-

23

24       [23] *DDB*, 2008 WL 375202 at *5 (emphasis in original).

         [24] *Id.* at *3.

25       [25] *Id.*

         [26] *Id.* at *5.

26       [27] *Id.* ("We therefore reject DDB's argument that the district court erred by holding a

27   preliminary hearing, rather than awaiting jury trial on the merits, to resolve the jurisdic-
     tional issues.")

28       [28] *Id.*

ents-in-suit to AB) only if AB were to prevail on those substantive state-law claims. Only after those two things were to occur — which Defendants believe unlikely — would Solexa lack standing to bring, and would the Court lack subject-matter jurisdiction over, the infringement counterclaims. In contrast, *DDB* did not address the question of whether a party has a right to a jury trial to resolve substantive state-law claims.

Third, as discussed above, AB seeks monetary damages under its seven state-law claims.[29] *DDB* did not address the right to a jury trial on claims that involve monetary damages.

AB's attempt to analogize this case to *DDB* mischaracterizes its substantive state-law claims as presenting "a threshold issue of standing." Although AB never explicitly states which claims it wants to bifurcate, there is no doubt that the issues for trial are not simply a question of jurisdictional standing as was the case in *DDB*.

### D. Defendants are entitled to a jury trial despite AB's mischaracterization of its state-law claims as presenting an issue of "standing"

As explained in section II.A, *supra*, Solexa has standing to sue AB for infringement of the patents-in-suit because Solexa holds legal title to those patents. Even if there were triable issues on the issue of "standing," Defendants would still be entitled to a jury trial because "the jurisdictional issue and substantive claims are so intertwined the resolution of the jurisdictional question is dependent on factual issues going to the merits" of AB's state-law claims.[30] Here, unlike in *DDB*, AB's state-law claims are based on *the very same facts* that AB argues present an issue of "jurisdictional standing."

*DDB* involved a straightforward claim of patent infringement, and the question before the Federal Circuit was whether the issue of infringement and DDB's standing to as-

---

[29] *See, e.g.*, Exh. B, AB's Response to Illumina and Solexa's First Set of Document Requests, at p. 22, lines 5-8 (AB claims that it has "been damaged by…the cost of negotiating and litigating with Defendants, and the potential revenues and benefits that AB could have received from licensing, enforcing, and/or commercializing the inventions in the Application.").

[30] *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987); *see also DDB,* 2008 WL 375202 at *5; *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005).

sert its claim of infringement "so intertwined with the substantive federal patent law governing DDB's infringement claims" that a jury would need to resolve the factual issues underlying the infringement issue to resolve the question of standing.[31] The *DDB* court held that they were not so intertwined as to prevent the resolution of jurisdictional standing on a Rule 12(b)(6) motion.[32]

Here, the comparison is not between AB's "jurisdictional standing" issue and Solexa's patent infringement claim, but between the "standing" issue and AB's seven state-law claims. What AB refers to as a trial on "standing" is actually a trial on the *same* state-law claims for which the Defendants have a right to a jury trial.[33] Thus, the factual issues are not only "intertwined," they are *identical*. Defendants' right to a jury trial on AB's state-law claims cannot be set aside by labeling the issue as one of "standing."

As the Federal Circuit explicitly noted in *DDB*, although DDB had "no right to a jury trial on the issue of standing, there of course remains a right to jury trial on other appropriate issues in the case."[34] Under Fed. R. Civ. P. 42(b), which requires the preservation of the right to a jury trial, Defendants have a right to a jury trial on the merits of AB's substantive state-law claims in addition to the issues that relate to monetary damages based on those claims.[35]

### E.    A trial beginning May 12, 2008 is not reasonable or logistically feasible

Even if the Court finds AB's arguments for bifurcation persuasive in the abstract, AB's request to hold a trial in May on all of its state-law ownership claims is not reasonable or feasible given the current state of the case.

---

[31] *DDB,* 2008 WL 375202 at *5.

[32] *Id*.

[33] *See* Section II.B, *supra*.

[34] *DDB,* 2008 WL 375202 at *5.

[35] Fed. R. Civ. P. 42(b) ("When ordering a separate trial, the court must preserve any federal right to a jury trial."); *see also Dairy Queen*, 369 U.S. at 479 (a claim for monetary damages in a breach-of-contract claim seeking both equitable and legal remedies must first be tried to a jury); *Beacon Theatres*, 359 U.S. at 508 (error to bifurcate a claim involving an equitable and legal remedy under Fed. R. Civ. P. 42(b) where it deprived the party of a jury trial).

The current schedule calls for fact discovery to continue through May 30, and expert discovery to begin on May 30 and end on July 7.[36] AB has refused to provide discovery in response to Defendants' long-standing requests regarding the state-law claims, and has indicated that it does not intend to produce such discovery. Moreover, Defendants intend to retain experts and rely on their testimony to address important aspects of the central question in AB's state-law ownership case: whether Dr. Macevicz's claimed inventions were "related to" AB's business or its actual or reasonably anticipated research or development in 1994-95, or resulted from his work at AB. Defendants have proceeded in this case under the reasonable expectation that they would have until May 30 to complete fact discovery, and that they would not have to begin expert discovery until May 30. Given AB's intransigence in providing discovery regarding these issues, it would be unfair to move the trial on these issues up by more than four months, before fact discovery is scheduled to close.

### 1.    AB has refused to provide discovery regarding the claims for which it now seeks an early trial

A trial on AB's state-law ownership issues in May is not reasonable or feasible primarily because AB has thus far refused to provide discovery regarding an issue at the very core of its state-law ownership claims and Defendants' affirmative defenses thereto: whether AB's "business" or its "actual or demonstrably anticipated research or development" in 1994-95 "related to" Dr. Macevicz's novel sequencing-by-ligation inventions.[37] Although Defendants first requested discovery regarding AB's state-law claims more than four-and-a-half months ago,[38] AB has produced essentially nothing in response to those requests, despite Defendants' repeated correspondence and conferences with AB's counsel.[39]

---

[36] *See* Dkt. No. 32, Case Management Order, at 2-3.

[37] Under the terms of the Employee Invention Agreement, Dr. Macevicz's inventions that do not "relate to the business or actual or demonstrably anticipated research or development" of AB at the time of his inventions belong completely to Dr. Macevicz. (Dkt. No. 63-17, Employee Invention Agreement, at p. 1).

[38] *See* Exh. C (Illumina and Solexa's First Set of Document Requests) at Requests 9, 11, 12, 13, 14, & 18.

[39] Exh. D (Jan. 31, 2008 letter); Exh. E (March 5, 2008 e-mail); Exh. F (March 5, 2008 letter).

AB's responses to Defendants' discovery requests[40] show that AB has deliberately obstructed Defendants' access to the documents necessary to fully develop their affirmative defenses to AB's state-law claims, by asserting improper objections[41] and by refusing to obey this Court's explicit Orders regarding the conduct of discovery.[42]

For example, AB has produced only a handful of documents having anything to do with its "business" or its "actual or demonstrably anticipated research or development" in 1994-95. AB has not stated that such documents do not exist, it has simply refused to produce them. AB has also not produced any documents related to its acquisition of Agencourt Personal Genomics in 2006. This has deprived Defendants of the ability to demonstrate that AB's "business" and its "actual or reasonably anticipated research or development" had nothing to do with sequencing-by-ligation technology until AB sought to acquire such technology through its acquisition of Agencourt in 2006.

Even where AB has produced documents, its production is far from complete. For example, AB has not produced a single e-mail relating to any of its business or research and development endeavors. With regard to the issue of AB's actual and constructive notice of the patents-in-suit, AB has provided only one redacted patent search result, despite the fact that AB's in-house counsel, Dr. Bortner, admitted that AB conducted patent

---

[40] Exh. B (AB's Response to Illumina and Solexa's First Set of Document Requests).

[41] AB objected to each of Requests 9, 11, 12, 13, 14, & 18 variously as, *inter alia*, "cumulative," "vague," "overly broad," and "unduly burdensome," and stated variously that it would produce only non-privileged "documents sufficient to show," "documents that it currently expects to rely upon," or, simply "responsive documents," rather than all documents in its possession. AB's response violates the Court's Supplemental Order to Order Setting Initial Case Management Conference, which states that "[a] burden or overbreadth or similar objection shall not be a valid reason for withholding requested materials actually known to counsel or a party representative responsible for the conduct of the litigation." (Dkt. No. 22 at 4.)

[42] AB has not provided "promptly after production, confirm[ation] in writing that they have produced all such materials so described that are locatable after a diligent search of all locations at which such materials might plausibly exist." *Id.* at 3-4. AB has also not provided a "written list . . . setting forth in detail each specific source and location searched[ which identifies] by name and position[] all persons conducting the search and their areas of search responsibility" or "a list describing the specific source for each produced item . . . ." *Id.* at 4. Finally, AB has not provided a privilege log of any kind, much less one satisfying the Court's Order. *Id.*

---

1  searches in the field of DNA sequencing technology for various purposes, such as deter-

2  mining if AB had freedom to operate, keeping track of competitors, and searching prior art,

3  including patent databases, when evaluating invention disclosures.[43] Defendants are enti-

4  tled to evaluate the facts regarding AB's patent searching practices because they pertain not

5  only to affirmative defenses such as the statute of limitations, but also to the merits of AB's

6  claim that Dr. Macevicz's inventions fell within the scope of AB's business or research and

7  development efforts in 1994-95.

8       Even if AB were to immediately produce the discovery that it has improperly with-

9  held, it would not be fair to require Defendants to review all of this discovery, take fact

10  depositions, prepare expert reports, and complete expert discovery regarding these materi-

11  als in the few weeks between that point and the beginning of May. Granting AB's request

12  for an early trial on its state-law ownership claims under these circumstances would only

13  reward AB for its improper discovery gamesmanship.

### 2. It is not reasonable or feasible to require Defendants to begin and complete expert discovery in time for a trial in May

16  A separate trial on AB's state-law claims in May, or any time prior to the scheduled

17  trial date, is not reasonable or feasible because Defendants will rely on expert testimony to

18  describe and contrast the DNA sequencing that was used in AB's business in 1994-95

19  ("Sanger" sequencing) with the novel sequencing-by-ligation technology invented by Dr.

20  Macevicz. The technical differences are central to Defendants' defense that the Macevicz

21  inventions did "not relate to the business or actual or demonstrably anticipated research or

22  development of" AB at that time.[44] Expert testimony is needed to both explain the two dif-

23  ferent sequencing technologies, to describe the inventions, and to describe the technology

24  embodied in AB's commercial products at that time.

25       It is not reasonable to force Defendants to obtain the missing discovery from AB, re-

26  tain necessary experts, prepare expert reports regarding those materials, for AB to prepare

27  ―――――――――――――――――

[43] Exh. G, Transcript of Deposition of Scott Bortner (Feb. 22, 2008), at p. 32, lines 2-21.

28  [44] Dkt. No. 63-17, Employee Invention Agreement, at p. 1.

rebuttal report(s), and for both parties to conduct expert discovery by the suggested May 5 pretrial conference date. The parties have not even finalized a protective order that would allow Defendants to show AB's confidential documents to an expert.[45] The only way to efficiently proceed to trial is to continue on the current course, which calls for fact discovery to close and expert reports to be served on May 30, 2008.[46]

### F.    A trial on all issues beginning on September 29 is more efficient

A separate trial on AB's state-law claims in May will necessarily cause significant inefficiencies for the subsequent proceedings. Rather than holding a hasty trial before the close of fact discovery, it would be far more efficient to allow the parties to complete discovery according to the current schedule and proceed to trial on infringement and any of AB's state-law claims that survive Defendants' pending motion for summary judgment on the statute-of-limitations issue.

First, an early trial on ownership would be inefficient because, regardless of its outcome, it would necessitate a departure from the current trial schedule. A trial in May on the ownership issues would necessarily disrupt the current case schedule because the tremendous amount of labor and money necessary to bring a case to trial would have to be expended in less than five weeks, even if the Court issued an Order simultaneously with AB's filing of its reply on the instant motion on April 1. Without question, preparation for an early trial would disrupt and displace the orderly completion of fact and expert discovery and motion practice contemplated by the current schedule, thereby producing significant inefficiencies.

Second, bifurcating the trial will likely just create the need for two trials. There is little doubt that one trial is more efficient than two. Indeed, there is likely to be significant overlap between witnesses at both trials, regardless of the outcome on the ownership is-

---

[45] The parties are still negotiating the appropriate language to address AB's concerns regarding Chris Cabou's access to AB's confidential documents.

[46] Dkt. No. 32, Case Management Order, at p.2, line 14-20.

sues.[47] Efficiency demands that these witnesses not be called twice when once will do. Furthermore, just because a single ten-day trial can be divided into a two- to three-day and a seven- to eight-day trial does not mean that two trials are the equivalent of one, much less to be preferred, in terms of efficiency. At the very least holding two trials would increase the disruption and travel expenses for both counsel, witnesses, and party representatives. AB has not carried its burden to show that the efficiency, if any, to be gained by immediately deciding the ownership issues outweighs the clear inefficiencies caused by forcing, and simultaneously delaying, a second trial on the remaining issues, so its motion should be denied.

### G.    AB has not established that bifurcation is warranted

AB's motion to bifurcate should be denied because bifurcation of AB's state-law claims will neither avoid prejudice to AB nor promote judicial economy, while not unfairly prejudicing Solexa. Although this Court has broad authority to "order a separate trial of any claim" in the interest of "convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy," Fed. R. Civ. P. 42(b), AB bears "the burden of proving that bifurcation is justified given the facts in this case."[48] Because AB has failed to "present sufficient facts to show that bifurcation will promote judicial economy or that no party will be prejudiced by the bifurcation,"[49] AB's motion to bifurcate should be denied.

#### 1.    AB has not shown that bifurcation will not prejudice Defendants

AB has not satisfied its burden of showing that an early trial on its state-law claims

---

[47] For example, Dr. Macevicz would likely have to testify regarding the state-law claims at the first trial, and if Defendants prevail there, on patent issues such as invalidity at the second trial. AB representatives would likely have to testify regarding Defendants' affirmative defenses against AB's state-law claims at the first trial and regarding, *e.g.*, damages, either AB's or Solexa's, at the second trial.

[48] *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992) (denying motion to bifurcate where movant did not provide evidence that bifurcation would promote judicial economy). "Motions to bifurcate are to be granted 'on a case by case basis only when the separation will result in judicial economy and will not unduly prejudice any party.'" *Calmar, Inc. v. Emson Research*, 850 F. Supp. 861, 865-66 (C.D. Cal. 1994) (citation omitted).

[49] *Id.*

---

1  will not cause unfair prejudice to Defendants. At the very least, the substantial likelihood

2  that AB's proposal would result in having to conduct two trials, and would likely delay re-

3  solution of Solexa's infringement counterclaims, suggests unfair prejudice to Defendants.

4  *Spectra-Physics Lasers*, 144 F.R.D. at 101 (denying motion to bifurcate and finding that

5  "logic dictates that holding two trials, as opposed to one, will inevitably cause delay in the

6  resolution of the instant case.") Because AB has not shown why delaying the resolution of

7  this case would not unfairly prejudice Defendants, its motion should be denied.

8           **2.      AB has not shown that bifurcation will avoid prejudice to AB**

9           To show that bifurcation is warranted, AB must show that bifurcation would avoid

10  prejudice to AB.[50] AB argued that an early trial would save AB from having to argue that

11  the Macevicz patents, patents AB contends it owns, are invalid and unenforceable.[51] This

12  argument is nonsensical; AB has already publicly taken the positions it now tells the Court

13  that bifurcation would allow it to avoid.

14           On November 7, 2007, in its First Amended Complaint, AB asserted that the pat-

15  ents-in-suit are invalid and unenforceable.[52] The same day, AB said the same thing in its

16  Second Amended Reply to Solexa's Counterclaims.[53] Then, on November 19, 2007, AB

17  served its Preliminary Invalidity Contentions, in which it again asserted that the patents-in-

18  suit are invalid and unenforceable. Having made these public statements, AB has every rea-

19  son to go forward with a trial on the merits of its invalidity and unenforceability conten-

20  tions.[54] Because bifurcation will not avoid any "prejudice" to AB from having to repeat and

21  defend arguments it has already made, AB cannot show that bifurcation is necessary to

22  avoid prejudice, and its motion should be denied.

23

---

24      [50] Fed. R. Civ. P. 42(b).
        [51] Dkt. 155, AB's Motion, at p. 15, lines 2-8.
25      [52] Dkt. 44-2 at pp. 11-12.
        [53] Dkt. 44-3 at pp. 3-4.
26
        [54] Exh. H, AB Preliminary Invalidity Contentions and Exhibits (arguing that the as-
27  serted claims are, variously, anticipated, obvious, indefinite, lacking written description,
    and not enabled); *see also* Dkt. No. 155, AB's Motion to Bifurcate, at 6 (similarly arguing
28  that the asserted claims are invalid and unenforceable).

---

III.    **CONCLUSION**

AB's motion, framed as a motion to bifurcate the issue of "jurisdictional standing," actually seeks a bench trial on AB's seven state-law claims, each of which involves a claim for monetary damages. AB's affirmative claims for monetary damages preclude separating the issues that must be tried to a jury (*i.e.*, AB's claims for monetary damages) from the factual inquiries underlying AB's substantive state-law claims. For this reason alone, the Court should deny AB's motion to bifurcate. AB's motion should also be denied because it would be neither reasonable nor logistically feasible to hold a trial in May, and there is a substantial likelihood that holding such a "preliminary" trial in May will necessitate increased expenditures of time and resources by the Court, the juries, and the parties as compared to holding a single trial on all remaining issues in September.

1

2      Dated: March 28, 2008                    Respectfully submitted,

3

4                                               /s/ John R. Labbé
                                                KEVIN M. FLOWERS (admitted *pro hac vice*)
5                                               THOMAS I. ROSS (admitted *pro hac vice*)
                                                JEFFREY H. DEAN (admitted *pro hac vice*)
6                                               JOHN R. LABBE (admitted *pro hac vice*)
                                                CULLEN N. PENDLETON (admitted *pro hac vice*)
7                                               MARSHALL, GERSTEIN & BORUN LLP
8                                               6300 Sears Tower
                                                233 South Wacker Drive
9                                               Chicago, IL 60606-6357
                                                (312) 474-6300
10                                              (312) 474-0448 (facsimile)
                                                E-Mail: kflowers@marshallip.com
11                                              E-Mail: tross@marshallip.com
                                                E-Mail: jdean@marshallip.com
12                                              E-Mail: jlabbe@marshallip.com
                                                E-Mail: cpendleton@marshallip.com
13

14                                              *Attorneys for Defendants*

15

16

17

18

19

20

21

22

23

24

25

26

27

28