1   BRYAN WILSON (CA SBN 138842)
    ERIC C. PAI (CA SBN 247604)
2   MORRISON & FOERSTER LLP
    755 Page Mill Road
3   Palo Alto, California 94304-1018
    Telephone: 650.813.5600
4   Facsimile: 650.494.0792
    E-Mail: BWilson@mofo.com; EPai@mofo.com
5
    DAVID C. DOYLE (CA SBN 70690)
6   STEVEN E. COMER (CA SBN 154384)
    BRIAN M. KRAMER (CA SBN 212107)
7   MORRISON & FOERSTER LLP
    12531 High Bluff Drive, Suite 100
8   San Diego, California  92130-2040
    Telephone: 858.720.5100
9   Facsimile: 858.720.5125
    E-Mail: DDoyle@mofo.com; SComer@mofo.com;
10  BMKramer@mofo.com

11  Attorneys for Plaintiff
    APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP
12

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15                SAN FRANCISCO DIVISION

16

17  APPLERA CORPORATION – APPLIED          Case No.    C07 02845 WHA
    BIOSYSTEMS GROUP, a Delaware corporation,
18                                          **APPLERA CORPORATION –
                   Plaintiff,               APPLIED BIOSYSTEMS
19                                          GROUP'S REPLY IN SUPPORT
            v.                              OF MOTION TO BIFURCATE**
20
    ILLUMINA, INC., a Delaware corporation,  Date:  April 3, 2008
21  SOLEXA, INC., a Delaware corporation, and Time:  8:00 a.m.
    STEPHEN C. MACEVICZ, an individual,     Place: Courtroom 9, 19th Floor
22                                          Honorable William H. Alsup
                   Defendants.
23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3

I.    INTRODUCTION ...................................................................................................... 1

4

II.    ARGUMENT ............................................................................................................ 2

5

    A.    Illumina Has No Right To A Jury Trial On Ownership ......................................... 2

6

        1.    The bench trial is on jurisdictional standing, not damages ........................ 2

7

        2.    The issue of present assignment versus future assignment played no part in the decision in DDB ................................................................. 4

8

9

        3.    The standing issue is not "intertwined" with the federal patent issues ......................................................................................................... 5

10

    B.    Illumina's Lack of Preparation Is Not Excused by its False Accusations of Discovery Stonewalling or by its Feigned Need for Expert Testimony ................ 6

11

        1.    AB has produced the requested documents ............................................... 6

12

        2.    There is no need for expert testimony on the issue of ownership ............. 10

13

    C.    The Ownership and Standing Issue Meets the Standards for Bifurcation under Rule 42(b) .................................................................................................. 11

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Autery v. United States,*
424 F.3d 944 (9th Cir. 2005) ................................................................................................. 6

4

*Bender v. Williamsport Area Sch. Dist.,*
475 U.S. 534 (1986) ............................................................................................................... 2

5

6

*Cadence Design Sys., Inc. v. Bhandari,*
No. C 07-00823, 2007 U.S. Dist. LEXIS 83078 (N.D. Cal. Nov. 8, 2007) ............................ 11

7

*DDB Techs., L.L.C. v. MLB Advanced Media, L.P.,*
465 F. Supp. 2d 657 (W.D. Tex. 2006) .................................................................................. 3

8

9

*DDB Techs., L.L.C. v. MLB Advanced Media, L.P.,*
No. 2007-1211, 2008 U.S. App. LEXIS 3086 (Fed. Cir. Feb. 13, 2008)..........................*passim*

10

*Gaia Techs. v. Reconversion Techs.,*
104 F.3d 1296 (Fed. Cir. 1996) .............................................................................................. 4

11

12

*Nat'l. Org. for Women, Inc. v. Scheidler,*
510 U.S. 249 (1994) ............................................................................................................... 2

13

*Rosales v. United States,*
824 F.2d 799 (9th Cir. 1987) ................................................................................................. 6

14

15

*Scott v. Pasadena Unified Sch. Dist.,*
306 F.3d 646 (9th Cir. 2002) ................................................................................................. 3

16

*Wilbur v. Locke,*
423 F.3d 1101 (9th Cir. 2005) ............................................................................................... 3

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES,** *cont'd.*

**STATUTES**

Fed. R. Civ. P. 42(b) ..................................................................................................... 11

**MISCELLANEOUS**

2 James W. Moore et al, *Moore's Federal Practice* § 12.30[3] (3d ed. 2007) ............................... 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Illumina's opposition to a bench trial on jurisdictional standing depends primarily on the incorrect premise that the Court would also be deciding AB's state law claims for damages.[1]  The issue for the bench trial is whether AB is an owner of the patents.  If the Court decides that AB is the rightful owner, then Illumina has no standing to assert the patents, and Illumina's claims for patent infringement must be dismissed.  AB's claims for a declaration of noninfringement and invalidity would also be dismissed for lack of a case or controversy.  And, because there would be no federal causes of action remaining, AB's state law causes of action would be dismissed for lack of jurisdiction and pursued in state court.

Illumina also seeks to avoid a bench trial by arguing that it had "legal title" on the day it filed its counterclaims, so its standing to continue pursuing this case cannot be challenged.  But, as the court held in *DDB*, when the accused infringer asserts that it has an ownership interest in the patents, the court must decide whether the plaintiff has standing to pursue the claims of infringement.  *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, No. 2007-1211, 2008 U.S. App. LEXIS 3086, at *2-*3 (Fed. Cir. Feb. 13, 2008).  The plaintiff in *DDB* was the assignee of record and claimed to have legal title to the patents at the outset of its case.  But when its standing was challenged, the district court held a bench trial and concluded that the patented technology fell within the scope of the inventor's employment agreement, which gave the defendant an ownership interest in the patents and deprived DDB of standing.  *Id.* at *15-*17.  The Federal Circuit held that this was the correct procedure, as there is no right to a jury trial on the issue of jurisdictional standing.

Illumina then offers three excuses for why it cannot get ready for trial by May 12.  First, it incorrectly claims that AB has withheld documents regarding "whether Dr. Macevicz's claimed inventions were 'related to' AB's business or its actual or reasonably anticipated research or development in 1994-95, or resulted from his work at AB."  Illumina's document demands sought

---

[1] Lynx merged with Solexa in 2005.  (Docket No. 55 ¶ 2.)  Illumina acquired Solexa in January 2007.  (*Id.*)  The three entities are referred to collectively herein as "Illumina."

1   "*Documents sufficient to show* [AB's] 'business or actual or demonstrably anticipated research or

2   development' as of April 17, 1995" and "All documents that [AB] may rely upon in this

3   litigation. . . ." AB produced those documents months ago. If Illumina needs additional

4   documents, it should identify what it needs at the meet-and-confer ordered for April 3.

5       Second, Illumina says it needs more time to find and prepare an expert to testify on the

6   technical differences between AB's DNA sequencing products in 1995 (which Illumina claims

7   were limited to Sanger sequencing) and Macevicz's invention. Expert testimony is not needed to

8   assist the Court with the commonsense, business determination of whether Dr. Macevicz's DNA

9   sequencing patent was "related" to AB's business in 1995. Even if expert testimony were

10  permitted, Illumina has already retained Dr. John Quackenbush as its expert. He should have no

11  trouble preparing a report, since Illumina already gave a tutorial on Macevicz's invention and

12  Sanger sequencing.

13      Finally, Illumina complains that a May 12 bench trial would delay the jury trial set for

14  September 29. AB will be prepared for the September 29 trial, if one is needed, and Illumina has

15  offered no specific reasons it cannot be ready, too.

16      All of AB's expected witnesses for the bench trial have been deposed and have confirmed

17  that they are available for trial on May 12. The bench trial should proceed.

18  **II.    ARGUMENT**

19      **A.    Illumina Has No Right To A Jury Trial On Ownership.**

20          **1.    The bench trial is on jurisdictional standing, not damages.**

21      The Court's question to the parties is whether the issue of ownership is for the judge or for

22  the jury. The Court in *DDB* answered that question, holding that there is no right to a jury trial on

23  the issue of patent ownership and its effect on standing. Because standing can be raised at any

24  time, *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994), and because

25  federal courts have an independent obligation to assess their jurisdiction to hear cases, *Bender v.*

26  *Williamsport Area School District*, 475 U.S. 534, 541 (1986), it is incumbent on the Court to

27  determine ownership of the patents and Illumina's standing to assert them. Moreover, because

28  questions of subject matter jurisdiction must be decided before reaching the merits of a case,

1    standing should be decided now.  *See, e.g.*, *Wilbur v. Locke*, 423 F.3d 1101, 1106 (9th Cir. 2005)

2    ("[Q]uestions of subject matter jurisdiction, '*i.e.*, the courts' statutory or constitutional *power* to

3    adjudicate the case,' must generally be decided before the merits.") (internal citations omitted).

4          As set forth in AB's opening brief, the Federal Circuit's decision in *DDB* is controlling.

5    In *DDB*, the Federal Circuit affirmed the same procedure AB is requesting here.  The district

6    court in that case determined, without a jury trial, that the accused infringer, MLB, had an

7    ownership interest in the patents and that DDB therefore lacked standing to sue MLB.  *DDB*

8    *Techs., L.L.C. v. MLB Advanced Media, L.P.*, 465 F. Supp. 2d 657, 670 (W.D. Tex. 2006).  While

9    the Federal Circuit vacated in part because DDB was denied relevant discovery, the Federal

10    Circuit affirmed the district court's authority to decide the issue without a jury trial as part of its

11    obligation to assess standing.  *DDB*, 2008 U.S. App. LEXIS 3086, at *15 ("The sole jury trial

12    issue in this case concerns whether DDB is entitled to a jury trial on the jurisdictional issue of

13    standing. We hold that it is not.").  Just as the *DDB* court determined without a jury that the

14    accused infringer had an ownership interest in the patents and the case should be dismissed, this

15    Court should determine whether AB has an ownership interest in the Macevicz patents.

16          Illumina's standing turns on AB's ownership claim to the patents.  If AB is the owner, it

17    cannot be sued.  As the Federal Circuit stated in *DDB*, a patentee lacks standing to sue unless it

18    joins all owners of the patent as plaintiffs.  *Id.* at *9 (citing *Isr. Bio-Eng'g Project v. Amgen Inc.*,

19    475 F.3d 1256, 1264-65 (Fed. Cir. 2007) ("Absent the voluntary joinder of all co-owners of a

20    patent, a co-owner acting alone will lack standing.")).  Illumina did not and cannot join AB as a

21    plaintiff to sue itself for patent infringement.  *See id.* at *9-*10 n.2.  If the Court determines that

22    AB has an ownership interest in the Macevicz patents, Illumina lacks standing to sue AB for

23    patent infringement, and its patent law counterclaims would have to be dismissed.  Likewise,

24    AB's declaratory judgment action based on the patents would have to be dismissed for a lack of

25    case or controversy.  Without any federal causes of action, and without diversity among the

26    parties,[2] the Court could not exercise supplemental jurisdiction over AB's state law claims.  *Scott*

---

27    _____

      [2] AB, Illumina, and Solexa have their principal places of business in California.  Macevicz
      is a California resident.

28

1    *v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002) ("[W]ith the dismissal of

2    Scott's federal constitutional claim for lack of standing, we have no authority to retain jurisdiction

3    over Scott's state law claims.") (citing 28 U.S.C. § 1367(a)); *Gaia Techs. v. Reconversion Techs.*,

4    104 F.3d 1296, 1297 (Fed. Cir. 1996) ("The district court may not, however, exercise

5    supplemental jurisdiction if there was no federal jurisdiction at the outset; for example, if all of

6    the federal claims are dismissed for lack of standing, there is no Article III case or controversy

7    and § 1367 does not apply.").

8         Illumina tries to avoid a bench trial by arguing that *DDB* does not apply because AB is

9    also seeking money damages on its state law causes of action.  AB, however, is not asking the

10   Court to award it damages at the bench trial.  It is asking the Court to determine Illumina's

11   standing to assert patent infringement claims and the Court's jurisdiction to hear this case.  None

12   of AB's state law causes of action (*e.g.*, breach of contract, breach of fiduciary duty, conversion)

13   will be decided by the Court determining that Illumina lacks standing to sue for patent

14   infringement.  The Court will not assess damages.  Thus, Illumina's purported right to a jury trial

15   on those issues is not affected.  While Illumina stands to have its claim to ownership of the

16   patents undermined at a bench trial on standing, the same was true for the purported patentee in

17   *DDB*.  DDB went into that lawsuit claiming to be the full owner of the patents.  Without a jury

18   trial, the district court determined that MLB shared the ownership interest in the patents based on

19   the district court's assessment of DDB's standing to sue.

### 2.    The issue of present assignment versus future assignment played no part in the decision in *DDB*.

20
21
22        Illumina also attempts to distinguish *DDB* on the ground that the "automatic assignment"

provision in *DDB* differs from Dr. Macevicz's assignment clause.  That distinction is meaningless

23   to the issue of standing and is based on Illumina's mischaracterization of the holding in *DDB*.

24   Illumina claims that because the invention agreement in *DDB* was an automatic assignment, DDB

25   did not own the patents at the time it filed suit, meaning it lacked jurisdictional standing from the

26   outset of the case.  (Opp'n at 6-7.)  That is not what happened in *DDB*.  The district court did not

27   hold that DDB lacked an ownership interest in the patents at the time it filed suit.  In fact, the

28

1    Federal Circuit expressly recognized that DDB owned co-inventor *Daniel* Barstow's interest in

2    the patents. *DDB*, 2008 U.S. LEXIS 3086, at *3 n.1. The only issue was whether the accused

3    infringer, MLB, owned co-inventor *David* Barstow's interest in the patents. *Id.* at *2-*3.

4    Because the standing inquiry resulted in a finding that MLB held an ownership interest in the

5    patents, DDB, even though it was an owner of the patents, lacked standing because it failed to

6    join all co-owners of the patents as plaintiffs. *Id.* at *9.

7        The issue of automatic assignment versus a promise to assign has no bearing on the

8    fundamental standing rules that only a patentee can sue for patent infringement and one co-owner

9    of a patent cannot sue another co-owner for patent infringement. While the Federal Circuit in

10   *DDB* considered the automatic assignment provision when considering DDB's statute of

11   limitations defense, it had no bearing on the Federal Circuit's analysis whether DDB was entitled

12   to a jury trial on MLB's challenge to DDB's standing.

### 3.    The standing issue is not "intertwined" with the federal patent issues.

14

15       In *DDB*, the Federal Circuit affirmed the well-established principle that when standing is

16   challenged, a district court is permitted to weigh facts without a jury to determine its own

     jurisdiction. *See* 2 James W. Moore et al, *Moore's Federal Practice* § 12.30[3] (3d ed. 2007)

18   ("[A] district court may hear evidence and make findings of fact necessary to rule on the subject

19   matter jurisdiction question before trial, if the jurisdictional facts are not intertwined with the

20   merits."). When determining whether the court should weigh jurisdictional facts without a jury,

21   the Federal Circuit, like many regional circuits, including the Ninth Circuit, assesses "the degree

22   of intertwinement of jurisdictional facts and facts underlying the substantive claim [to] determine

23   the appropriate procedure for resolution of those facts." *DDB*, 2008 U.S. App. LEXIS 3086, at

24   *16. The "underlying substantive claim" refers to the substantive claim giving rise to federal

25   subject matter in the first instance. In *DDB*, the Federal Circuit applied this standard to the

26   federal patent claim, noting that "we think that the interpretation of the employment

27   agreement . . . is not so intertwined with the substantive federal patent law governing DDB's

28

1    infringement claims and MLB's invalidity counterclaims that dismissal on jurisdictional grounds

2    would be inappropriate." *Id.* at *16-*17.

3        Illumina does not contend that the interpretation of Dr. Macevicz's employment

4    agreement is at all intertwined with Illumina's claims for patent infringement.  Instead, it claims

5    that the correct analysis is whether the employment agreement is intertwined with AB's state law

6    causes of action.  Illumina did not bring forth a single case, and AB is aware of none, in which a

7    district court assessed the degree of intertwinement between jurisdictional facts and state law

8    claims over which the court was exercising supplemental jurisdiction.  All three cases cited by

9    Illumina assessed the intertwinement of jurisdictional facts and federal causes of action.  *See*

10   *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987) (assessing facts giving rise to

11   jurisdiction under the Federal Tort Claims Act); *Autery v. United States*, 424 F.3d 944, 956 (9th

12   Cir. 2005) (same); *DDB* 2008 U.S. App. LEXIS 3086, at *16-*17 (assessing patent infringement

13   claims).  The lack of authority for Illumina's intertwinement argument is not surprising, since the

14   Court is determining its *federal* subject matter jurisdiction.  Moreover, even if the state law causes

15   of action were relevant to the intertwinement analysis, there is no intertwinement here because

16   this court is not resolving the state law causes of action when assessing the jurisdictional facts.

17
18   **B.    Illumina's Lack of Preparation Is Not Excused by its False
        Accusations of Discovery Stonewalling or by its Feigned Need for
        Expert Testimony.**

19       Illumina's assertion that it cannot get ready for a bench trial is a transparent attempt to

20   avoid the trial through its own inaction.  It has known about the standing issue since this case

21   began.  Illumina has received the documents it requested and taken the depositions of all of the

22   witnesses it has requested.  All of the witnesses AB expects to call have been deposed.  The

23   excuses Illumina raises in its opposition are just that – excuses to try to avoid the bench trial.  AB

24   will be ready, and so can Illumina.

25   **1.    AB has produced the requested documents.**

26       Illumina falsely states that AB has "refused" to provide discovery relating to whether

27   "AB's 'business' or its 'actual or demonstrably anticipated research or development' in 1994-95

28

1  'related to' Dr. Macevicz's novel sequencing-by-ligation inventions." (Opp'n at 10.) Illumina

2  identifies six Requests for Production for which it claims AB has refused to produce documents:

3      9.  Documents sufficient to show Your "business or actual or
        demonstrably anticipated research or development of" as of April
4      17, 1995.

5                                    * * *

6      11.  All of Your research and development plans and forecasts
        created or dated between 1992 and 1995.
7
       12.  All of Your strategic business plans and forecasts created or
8      dated between 1992 and 1995.

9      13.  All documents that You may rely upon in this litigation to
        support or rebut any contention regarding what "inventions,
10      discoveries, developments, improvements, or trade secrets" were
        "solely or jointly conceive[d], develop[ed] or reduce[d] to practice"
11      by Macevicz that "relate to [Your] business or actual or
        demonstrably anticipated research or development."
12
       14.  All documents that You may rely upon in this litigation to
13      support or rebut any Contention regarding what "inventions,
        discoveries, developments, improvements, or trade secrets" were
14      "solely or jointly conceive[d], develop[ed] or reduce[d] to practice"
        by Macevicz that "result from any work performed by" Macevicz
15      for You.

16                                   * * *

17      18.     All documents that refer or relate to any duty or obligation
        of Macevicz to disclose or assign to You any "inventions,
18      discoveries, developments, improvements, or trade secrets,"
        including any "inventions, discoveries, developments,
19      improvements, or trade secrets" disclosed or claimed in U.S. Patent
        Application No. 08/424,663 or any patents claiming priority
20      thereto, including but not limited to the Patents.

21  (3/28/08 Labbe Decl., Ex. C at 6-7 (Docket No. 172-4).)  AB has provided the requested

22  "[d]ocuments sufficient to show" in Request 9 and "documents [AB] may rely upon . . . to

23  support or rebut" its claims in Requests 13.[3]  AB has produced "[a]ll documents" responsive to

24  Requests 11, 12, and 18.  Illumina's claim that AB "has simply refused to produce them" is

25          [3] AB has produced all documents responsive to Requests 13 and 14, but there could be
    additional documents because AB has not decided with finality which documents it "may rely
26  upon" to prove its claims, including whether Macevicz's patents were based on other work he
    performed for AB.  Any such documents will be produced by the April 17 deadline set by the
27  Court.

28

AB'S REPLY ISO MOTION TO BIFURCATE                                                   7
Case No. C07 02845 WHA
sd-418387

1    simply false.  AB is not withholding any documents.  While AB has preserved its objections to

2    Illumina's discovery requests, it has not withheld anything based on those objections.

3          Moreover, Illumina's opposition brief is the first time that Illumina has raised any

4    complaints regarding the documents produced pursuant to these categories.  At no point during

5    any of the parties' meet and confers on discovery disputes has Illumina demanded additional

6    documents in response to these requests for production, or even suggested that it needed more

7    documents on AB's "business" or "actual or demonstrably anticipated research or development."

8    (Reply Declaration of Eric C. Pai, concurrently filed herewith, ("Pai Decl.") ¶ 2.)  The fact that

9    Illumina has waited until this briefing to raise these complaints, as well as Illumina's failure to

10   support its allegations of deficient production in a declaration, undercuts its claim that it cannot

11   be prepared for a jurisdictional standing bench trial on May 12.

12         Illumina complains that it has not received "a single e-mail relating to any of its business

13   or research and development endeavors," but omits that the parties have an agreement not to

14   produce e-mails or any other documents that can only be located on backup tapes.  (Pai Decl.

15   ¶ 3.)  Because e-mails relating to the ownership issue in the 1992-1995 time frame, to the extent

16   that they exist at all, would be on backup tapes, there are no responsive documents that have not

17   already been produced.  In fact, Illumina itself raised the concern, during the Rule 26(f)

18   conference, that searching through backup tapes would be overly burdensome, costly, and

19   unlikely to turn up responsive or relevant documents.  (*Id.*)  Consistent with this assertion,

20   Illumina has not produced any e-mails from that time frame.

21         Illumina also complains that "AB has provided only one redacted patent search result,

22   despite the fact that AB's in-house counsel, Dr. Bortner, admitted that AB conducted patent

23   searches in the field of DNA sequencing technology for various purposes, such as determining if

24   AB had freedom to operate, keeping track of competitors, and searching prior art, including

25   patent databases, when evaluating invention disclosures."  (Opp'n at 11-12.)  Illumina omits that

26   Dr. Bortner also testified in his declaration and his deposition that he did not keep copies of

27   freedom to operate searches.  (Docket No. 124 ¶¶ 3-5; Reply Declaration of Bryan Wilson

28   ("Wilson Reply Decl."), concurrently filed herewith, ¶ 6 & Ex. 1 at 37:20-38:12.)  Illumina also

1    does not explain that the only redactions are for comments that constitute attorney work product,

2    or that AB responded to Illumina's inquiries and explained that the additional documents

3    requested by Illumina do not exist.  The complete search results requested by Illumina were

4    produced.  (Wilson Reply Decl. ¶¶ 6-7.)  AB has since completed another search for documents

5    and located additional search results that it will be producing this week.  (Wilson Reply Decl.

6    ¶ 7.)  AB does not believe that these documents are responsive to Illumina's requests for patent

7    search results, but will produce them to avoid any dispute about whether it has satisfied its

8    discovery obligations.  (*Id.*)

9        AB has already produced roughly 50,000 pages of documents.  It is producing additional

10    documents, but nearly all of those forthcoming documents relate to patent infringement, not

11    ownership.  Illumina's "meet and confer" letters show that its complaints are centered on AB's

12    production of infringement documents, not ownership documents related to the standing dispute.

13        The parties have been operating with an understanding that ownership discovery took

14    precedence over infringement discovery.  Illumina has taken the position that the depositions to

15    date have been limited to ownership claims.  For example, Dr. Macevicz's first deposition was

16    limited to the ownership claims per agreement of the parties.  (Wilson Reply Decl. ¶ 8.)  His next

17    deposition will cover infringement, invalidity, and unenforceability.  Likewise, during Dr.

18    Vincent Powers's deposition, Illumina objected to questions directed to AB's inequitable conduct

19    cause of action because, according to Illumina, the deposition was limited to the ownership

20    dispute.  (Wilson Reply Decl., Ex. 2 at 81:21-82:3 ("[I]t's [Illumina's] understanding that the

21    deposition of Dr. Powers is being taken today pursuant to an expedited discovery period that's

22    intended to address issues pending on cross motions for summary judgment before the court at

23    this time, and that therefore the depositions are for the purpose of probing the ownership issues in

24    this litigation.").  Illumina's complaint that it has not received all of the documents relating to

25    infringement discovery has no bearing on whether Illumina can be ready for a May 12 bench trial

26    on ownership.

27        To the extent Illumina believes it will be difficult to prepare for a May 12 trial, this

28    difficulty can be attributed only to Illumina's own lack of diligence.  Illumina waited until

1   November 9, 2007, almost three months after the Rule 26(f) conference between the parties to

2   serve its first request for production of documents.  (Wilson Reply Decl. ¶ 9.)  Illumina did not

3   notice a single deposition in the case until late January 2008 when AB specifically prompted

4   Illumina to do so and to move the case along.  (*Id.* ¶ 11.)  Throughout this time, AB has diligently

5   gathered and produced documents responsive to all discovery requests.  (*Id.* ¶ 10.)  Illumina has

6   not raised any complaints about the interrogatory responses or the depositions.  AB has produced

7   witnesses for every deposition noticed by Illumina and has answered every interrogatory.

8       If Illumina can specify additional documents, beyond those "documents sufficient to

9   show" and "documents you intend to rely upon" it requested and has been provided, AB will

10  prioritize their production.[4]  Under the Court's March 29 Order, which requires production of all

11  documents by April 17, Illumina should have no difficulty preparing its case for a May 12 trial.

12                    **2.    There is no need for expert testimony on the issue of ownership.**

13      Illumina says its primary challenge to Dr. Macevicz's obligation to assign his invention to

14  AB is its claim that Dr. Macevicz's DNA sequencing invention did not "relate" to AB's business.

15  Illumina complains that it is unprepared to present expert testimony on the DNA sequencing

16  technology used in AB's business in 1994-95 compared to that described in the Macevicz patents.

17  (Opp'n at 12.)  This excuse lacks merit for several reasons.

18      First, expert testimony is unnecessary to assist the Court in its standing analysis, which

19  depends on application of the standard AB employee invention agreement signed by Dr.

20  Macevicz.  The relevant clause in that agreement is similar to exemptions afforded to inventors

21  under California Labor Code § 2870 that allow employees to keep inventions that they disclosed

22  and showed do not "relate to the business or actual or demonstrably anticipated research or

23  development of the Company."  (Docket No. 63-17 ¶¶ 2(c) & 7.)  "Courts interpreting employee

24  assignment agreements in the context of section 2870 have construed the 'related to' phrase

25      [4] AB has a number of discovery issues of its own to discuss at the April 3 conference,
    including Illumina's designation of public documents as "attorneys only", and its failure to
26  respond to AB's requests that it correct the designation of those documents, and Illumina's
    continuing failure to provide protective order language that it promised to provide weeks ago.
27  (Wilson Reply Decl. ¶¶ 3-5.)

28

broadly." *Cadence Design Sys., Inc. v. Bhandari*, No. C 07-00823, 2007 U.S. Dist. LEXIS 83078, at *19 (N.D. Cal. Nov. 8, 2007) (citing *Cubic Corp. v. Marty*, 229 Cal. Rptr. 828 (Ct. App. 1986) (assignment agreement enforceable where employee's invention was new product potentially used to "enhance" company's existing product)). The Court's understanding of DNA sequencing technology is already more than sufficient to understand both the patent and AB's business at the level necessary to apply the invention agreement.

Second, Illumina's technology tutorial to this Court focused on differentiating Sanger sequencing from Macevicz's sequencing-by-ligation. (*See* Wilson Reply Decl., Ex. 3 at 3:8-4:18 (describing Illumina's three tutorial topics as (1) "the structure of nucleic acid; specifically, DNA;" (2) "the so-called 'Sanger method' of sequencing DNA;" and (3) "the technology called 'sequencing by ligation'".) Illumina has, therefore, already prepared and presented an analysis of the technical differences between Sanger sequencing and Macevicz's invention. To the extent that the Court wishes to hear about those differences again, it should not be overly burdensome for Illumina to prepare a witness to repeat the presentation.

Third, Illumina says that it needs time to "retain necessary experts." Illumina already retained an expert witness, Dr. John Quackenbush, as its technical expert to opine on the meaning of terms in Dr. Macevicz's patents. (Docket No. 78 at 2.) Because the Macevicz patents describe Sanger sequencing (*see* Wilson Decl., Ex. 3 at 3:24-4:4.), Dr. Quackenbush is presumably prepared to discuss the differences between Sanger sequencing and sequencing-by-ligation. If the Court wishes to allow expert testimony at the bench trial, AB suggests that expert reports, if any, should be served on April 24. Rebuttal expert reports, if any, should be served on April 30. Expert depositions, if any, should be conducted before May 2.

### C.    The Ownership and Standing Issue Meets the Standards for Bifurcation under Rule 42(b).

Citing only non-binding district court opinions, Illumina argues that AB did not "present sufficient facts" or otherwise meet its burden "of proving that bifurcation is justified." (Opp'n at 14.) Under the plain language of Rule 42(b), a party need only show that separate trials are

1    sought based on any one of the three factors set forth in the rule: "For convenience, to avoid

2    prejudice, *or* to expedite and economize. . . . ." Fed. R. Civ. P. 42(b) (emphasis added).[5]

3        It is readily apparent that a bench trial on standing may "expedite and economize" the

4    case. If Illumina lacks standing, the federal patent law case must be dismissed. The Court can

5    stop spending its valuable time, and the parties can stop spending millions of dollars, on pointless

6    patent litigation. Further, the entire Federal Court case would end, because there would be no

7    supplemental jurisdiction to support the state law claims.

8        Illumina cites no binding case law for its claim that AB bears the burden of showing that

9    Illumina will not be prejudiced by a separate trial on standing. Regardless, Illumina's claims of

10    prejudice are based on the faulty premise that the Court is being asked to decide the state law

11    causes of action. Illumina's additional claims of prejudice based on its lack of preparation for

12    trial are of its own making. AB has sought bifurcation of jurisdictional standing based on its

13    patent ownership from the very beginning of this case. (Docket No. 26 at 7.) Illumina cannot

14    credibly claim surprise that AB has continued to seek an early determination of jurisdictional

15    standing, especially following the Federal Circuit's decision of first impression in *DDB*.

16        Dated: April 1, 2008            MORRISON & FOERSTER LLP

17

18                                By:    /s/ David C. Doyle
                                         _____
19                                       David C. Doyle

20                                       Attorneys for Plaintiff
                                         APPLERA CORPORATION –
                                         APPLIED BIOSYSTEMS GROUP
21

22

23

24

25

26    _____

27        [5] The non-binding cases cited by Illumina suggesting that all three factors in Rule 42 are required are contrary to the express language of the Rule, which is written in the disjunctive.

28