1  BRYAN WILSON (CA SBN 138842)
   ERIC C. PAI (CA SBN 247604)
2  MORRISON & FOERSTER LLP
   755 Page Mill Road
3  Palo Alto, California 94304-1018
   Telephone: 650.813.5600
4  Facsimile: 650.494.0792
   E-Mail: BWilson@mofo.com
5  E-Mail: EPai@mofo.com

6  DAVID C. DOYLE (CA SBN 70690)
   STEVEN E. COMER (CA SBN 154384)
7  BRIAN M. KRAMER (CA SBN 212107)
   MORRISON & FOERSTER LLP
8  12531 High Bluff Drive
   Suite 100
9  San Diego, California  92130-2040
   Telephone: 858.720.5100
10 Facsimile: 858.720.5125
   E-Mail: DDoyle@mofo.com
11 E-Mail: SComer@mofo.com
   E-Mail: BMKramer@mofo.com
12

13 Attorneys for Plaintiff
   APPLERA CORPORATION – APPLIED BIOSYSTEMS
14 GROUP

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17               SAN FRANCISCO DIVISION

18

19 APPLERA CORPORATION – APPLIED          Case No.    07-CV-02845 WHA
   BIOSYSTEMS GROUP, a Delaware corporation,
20                                         **SECOND AMENDED
                  Plaintiff,               COMPLAINT**
21
         v.
22                                         DEMAND FOR JURY TRIAL
   ILLUMINA, INC., a Delaware corporation,
23 SOLEXA, INC., a Delaware corporation, and
   STEPHEN C. MACEVICZ, an individual,
24
                  Defendants.
25

26

27

28

                                1

1    Plaintiff Applera Corporation – Applied Biosystems Group ("Applied Biosystems" or

2    "AB"), by its undersigned attorneys, alleges as follows:

3                                              **PARTIES**

4        1.    Applied Biosystems is an operating group of Applera Corporation, a Delaware

5    Corporation.  Applera's principal place of business is in Norwalk, Connecticut, and Applied

6    Biosystems' principal place of business is in Foster City, California.

7        2.    Applied Biosystems is informed and believes, and on that basis alleges, that

8    defendant Illumina, Inc. ("Illumina") is a Delaware Corporation with its principal place of

9    business in San Diego, California.  AB is further informed and believes that in 2005, Lynx

10   Therapeutics, Inc. ("Lynx") acquired Solexa, and that the combined companies of Lynx and

11   Solexa became known as Solexa.  AB is further informed and believes that effective January 26,

12   2007, Illumina acquired Solexa, Inc. ("Solexa"), a Delaware Corporation with its principal place

13   of business in Hayward, California.  References to Illumina in this Second Amended Complaint

14   ("Complaint") include Illumina, Solexa, and Lynx.

15       3.    AB is informed and believes, and on that basis alleges, that defendant Stephen C.

16   Macevicz ("Macevicz") is, and at all relevant times was, a resident of Santa Clara County,

17   California.

18                                           **JURISDICTION**

19       4.    This is an action for declaratory relief pursuant to Rule 57 of the Federal Rules of

20   Civil Procedure and 28 U.S.C. §§ 2201 and 2202 for the purpose of determining a question of

21   actual controversy between the parties as described herein.

22       5.    This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1338(a) (action

23   arising under an Act of Congress relating to patents), 28 U.S.C. § 1331 (federal question), and 28

24   U.S.C. § 1367 (supplemental jurisdiction).

25                                              **VENUE**

26       6.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b)-(c) in that AB is

27   informed and believes, and on that basis alleges, that Illumina is subject to personal jurisdiction

28   within the State of California and this judicial district by virtue of, *inter alia*, Illumina's principal

2

1  place of business in San Diego, California and Solexa's principal place of business in Hayward,

2  California, Illumina and Solexa's regular and systematic business contacts with this judicial

3  district, and Solexa's communications to AB in California. Illumina accordingly resides within

4  this judicial district for venue purposes.

5                    **INTRADISTRICT ASSIGNMENT**

6        7.      This case has been assigned to the San Francisco Division.

7                    **RELATED STATE-COURT ACTION**

8        8.      This case is related to the formerly pending case of *Applera Corporation – Applied*

9  *Biosystems Group v. Solexa, Inc., Stephen C. Macevicz, and Does 1-10*, filed on or about

10  December 26, 2006 in the Superior Court of California, County of Santa Clara, Case

11  No. 106CV077133 (the "State Court Action").

12        9.      The complaint in the State Court Action alleged, *inter alia*, that Solexa (which was

13  known during much of the relevant time period as Lynx) and Macevicz wrongfully took patents

14  and inventions that belong to AB.

15        10.      Macevicz is the former Chief Patent Counsel for AB. While he was employed by

16  AB, and without the knowledge or consent of AB, Macevicz applied for patents on inventions

17  that he was obligated to assign to AB. Under the terms of his employment with AB, he held these

18  inventions, applications, and patents in trust for AB. Immediately after he left AB, however, and

19  before the patents were issued, Macevicz went to work for Lynx and purported to assign the

20  patents to Lynx.

21        11.      AB brought the State Court Action to recover the patents because Macevicz had no

22  right to assign the applications to Lynx, and Lynx had no right to accept the assignments. The

23  State Court Action has since been voluntarily dismissed without prejudice, such that all claims

24  may be resolved in this action.

25                    **FACTUAL BACKGROUND**

26        12.      In Spring, 1992, Macevicz accepted an offer to become patent counsel for AB. On

27  May 4, 1992, as a condition of his employment by AB, Macevicz signed an Employee Invention

28  Agreement ("Invention Agreement") with AB. In the Invention Agreement, Macevicz promised

SECOND AMENDED COMPLAINT
pa-1241932
Case No. 07-CV-02845 WHA

1    to disclose to AB, to hold in trust for the sole right and benefit of AB, and to assign to AB any

2    inventions that he might make while employed by AB.  The only exception was for inventions

3    that Macevicz could prove were developed entirely on his own time, were developed without the

4    use of company resources, and did not relate to the actual or anticipated business of AB or result

5    from work performed by him for AB.  Macevicz further promised that if he made any inventions

6    that he believed fell within this exception, he would disclose those inventions to AB and provide

7    evidence to substantiate his belief that the inventions fell within the exception.

8         13.    On April 17, 1995, while he was still working for AB, Macevicz filed United

9    States Patent Application No. 08/424,663 ("the Application") with the United States Patent and

10   Trademark Office.  He filed the Application in his own name.  The Application described and

11   covered inventions that were owned by AB pursuant to the Invention Agreement.  Macevicz did

12   not disclose the Application, nor did he make any other disclosure required by the Invention

13   Agreement, to AB.

14        14.    Macevicz's Application led to at least three U.S. patents that issued after he left

15   AB:  U.S. Patent No. 5,750,341 ("the '341 Patent"), U.S. Patent No. 5,969,119 ("the '119 Patent),

16   and U.S. Patent No. 6,306,597 (the '597 Patent) (collectively, "the Patents").  Copies of the '341

17   Patent, '119 Patent, and '597 Patent are attached to this Complaint as Exhibits A-C, respectively.

18   AB did not learn about the Application or the Patents until in or around February 2006.

19        15.    A PCT application and several foreign patents and patent applications also claim

20   priority to Macevicz's Application, including but not limited to PCT Application

21   PCT/US96/05245, European Patent Application Publication No. EP 0871646, Canadian Patent

22   No. 2,218,017, Australian Patent No. 754991, Australian Patent No. 718937, Japanese Patent

23   Application No. H08-531848 (Publication No. JP H11-503908), and Japanese Patent Application

24   H19-185093 ("the Foreign Patents and Applications").

25        16.    Very soon after he left AB, Macevicz went to work for Lynx.  On information and

26   belief, Macevicz purported to assign the Application and the Patents to Lynx, and Lynx purported

27   to accept the assignments, even though they were already assigned to AB under the Invention

28

4

1   Agreement.  AB was unaware of the purported assignment to Lynx, and was unaware of the

2   Application or the Patents, until in or around February 2006.

3                          **GROUNDS FOR DECLARATORY RELIEF**

4          17.    This is in part an action for a declaratory judgment concerning infringement of the

5   '341 Patent, the '119 Patent, and the '597 Patent.

6          18.    Illumina/Solexa purports to be the owner by assignment of the Patents.

7          19.    AB currently manufactures, sells, and intends to sell in the United States its DNA

8   sequencing products.

9          20.    On March 8, 2006, Dr. Tony Smith, the Vice President and Chief Scientific

10  Officer of Solexa, wrote to Dr. Kevin McKernan, attaching a copy of the '597 Patent.

11  Dr. McKernan was at that time the Vice President and Co-Chief Scientific Officer of Agencourt

12  Personal Genomics, which is now owned by AB.

13         21.    The March 8, 2006 letter indicated to AB the intention of Solexa to assert the '597

14  patent, as well as the related '341 and '119 patents, against DNA sequencing products of AB.  In

15  the letter Dr. Smith describes a conference at Hilton Head at which he had met with

16  Dr. McKernan.  The letter states that Dr. McKernan "made a reference to Solexa patents" at the

17  meeting.  But, during this meeting, Dr. McKernan had not made a reference to the Solexa patents

18  listed in the letter.  Thus, Agencourt and AB understand that Solexa used the conversation

19  between Drs. McKernan and Smith at the Hilton Head conference as a pretext to put Agencourt

20  on notice of the '597 patent, as well as the related '341 and '119 patents, thereby indicating to

21  Agencourt/AB that Solexa is contending that Agencourt is engaging or intending to engage in

22  activity for which it needs a license to the '597 patent and its related patents.

23         22.    On or about February 23, 2007, Solexa served "Defendant Solexa, Inc.'s First

24  Request for Production of Documents and Things to Plaintiff Applera Corporation – Applied

25  Biosystems Group" in the related State Court action.  In that discovery demand, Solexa demanded

26  "All documents that refer or relate to whether You infringe any claim in the Patents".  Solexa's

27  demand defined the "Patents" as the '341 patent, '119 patent, and '597 patent.  This discovery

28  demand confirmed Illumina's intent to assert the '341, '119 and '597 patents against AB.

                                            5

23.    Solexa's actions have raised issues of infringement of the '341 Patent, '119 Patent, and '597 Patent for AB.

24.    AB is informed and believes, and on that basis alleges, that Solexa contends that the '341 Patent, '119 Patent, and/or '597 Patent are infringed by AB's DNA sequencing products.

25.    The foregoing facts and circumstances demonstrate that Illumina/Solexa asserts rights under the '341 Patent, '119 Patent, and '597 Patent based on ongoing or planned activity of AB, namely the manufacturing, selling, offering for sale, and/or using of DNA sequencing products.  AB contends that it has the right to engage in the accused activity without license. There is therefore an actual, justiciable, Article III case or controversy between the parties with respect to infringement of the Patents.  Accordingly, AB is entitled to have a declaration of its rights and further relief as requested herein.

26.    AB seeks a declaration of its rights to continue making, selling, offering for sale, and using DNA sequencing products without a license and without a risk of being sued for infringement of the Patents.  AB seeks the declaration based on (1) equitable principles stemming from its ownership interest in the Patents and/or (2) the noninfringement, invalidity, and unenforceability of the Patents.

27.    The ownership of the Patents is in dispute between AB and Illumina, as indicated by the State Court Action.  In the interests of judicial economy, AB herein alleges its causes of action regarding the ownership of the Application, the Patents, and the Foreign Patents and Applications, so that the issues of ownership and infringement can be resolved in the most efficient manner through a consolidated proceeding.  Since the parties' positions regarding infringement will be affected by the determination of ownership, the same Court should resolve all issues concerning the Patents, beginning with the issue of ownership.

### FIRST CAUSE OF ACTION
### (Breach of Contract; Against Macevicz)

28.    AB incorporates by reference paragraphs 1 through 27 above.

29.    The Invention Agreement is a valid and enforceable agreement between Macevicz and AB.

6

30. Macevicz breached the terms of the Invention Agreement by, among other things, failing to disclose the inventions to AB, applying for patents on the inventions in his own name, and purporting to assign the inventions and patents to Lynx.

31. AB has been harmed by Macevicz's various breaches of the Invention Agreement in ways that cannot be fully compensated by monetary damages. AB is therefore entitled to damages and injunctive relief including, among other things, specific enforcement of Macevicz's obligations under the Invention Agreement.

**SECOND CAUSE OF ACTION**
**(Interference With Contract; Against Solexa and Illumina)**

32. AB incorporates by reference paragraphs 1 through 31 above.

33. On information and belief, Lynx knew that Macevicz had a contractual duty to disclose and assign the Application, the Patents, and the Foreign Patents and Applications to AB. Lynx also knew that Macevicz had worked for AB prior to working for Lynx, and that the Application, the Patents, and the Foreign Patents and Applications were within AB's scope of business. Lynx nonetheless accepted the purported assignment of the Application, the Patents, and the Foreign Patents and Applications from Macevicz, and assisted Macevicz in violating his contractual obligations to AB by failing to disclose, hold in trust for, and assign the Application, the Patents, and the Foreign Patents and Applications to AB. Illumina/Solexa has adopted, ratified and benefited from the wrongful conduct of Macevicz and Lynx.

34. AB has been damaged as a result of Illumina's interference with the Invention Agreement between Macevicz and AB, in an amount to be proven at trial. Illumina's conduct was intentional, willful, and malicious, thereby justifying an award of punitive damages. AB has also been damaged in ways that cannot be compensated by monetary damages, and is therefore entitled to injunctive relief.

**THIRD CAUSE OF ACTION**
**(Breach of Fiduciary Duty; Against All Defendants)**

35. AB incorporates by reference paragraphs 1 through 34 above.

7

36.     As AB's chief patent counsel, Macevicz owed to AB fiduciary duties of utmost good faith and honesty, including duties to protect AB's business and interests with respect to inventions, patents, intellectual property, and other corporate opportunities, and not to allow those opportunities to be used by others for their own benefit and to harm AB.  Macevicz also owed fiduciary duties to AB under the Invention Agreement, pursuant to which he held inventions in trust for the sole right and benefit of AB.

37.     Macevicz breached fiduciary duties owed to AB by, among other things, failing to disclose the inventions to AB, applying for patents on the inventions in his own name, and purporting to assign the inventions and patents to Lynx.

38.     On information and belief, Lynx knew that Macevicz was AB's chief patent counsel, held the inventions and patents in trust for AB, and owed fiduciary duties to AB.  Lynx aided and abetted Macevicz in violating his fiduciary duties to AB by encouraging and accepting Macevicz's purported assignment of the Application, the Patents, and the Foreign Patents and Applications to Lynx.  Illumina/Solexa has adopted, ratified and benefited from the wrongful conduct of Macevicz and Lynx.

39.     AB has been damaged as a result of Macevicz's breach of fiduciary duties, in an amount to be proven at trial.  Macevicz's conduct was intentional, willful, and malicious, thereby justifying an award of punitive damages.  Punitive damages are especially appropriate in this case because Macevicz was entrusted with the protection and development of AB's intellectual property rights, and took those rights for himself instead of protecting them for AB.  Additionally, AB has been damaged as a result of Illumina's aiding and abetting of Macevicz's breaches of fiduciary duties owed to AB, in an amount to be proven at trial.  Illumina's conduct was intentional, willful, and malicious, thereby justifying an award of punitive damages.  AB has also been damaged by Macevicz's breaches of fiduciary duties, and Illumina's aiding and abetting thereof, in ways that cannot be fully compensated by monetary damages, and is therefore entitled to injunctive relief.

SECOND AMENDED COMPLAINT
pa-1241932
Case No. 07-CV-02845 WHA

**FOURTH CAUSE OF ACTION**
**(Constructive Fraud; Against All Defendants)**

40.     AB incorporates by reference paragraphs 1 through 39 above.

41.     As AB's chief patent counsel, Macevicz owed to AB fiduciary duties of utmost good faith and honesty, including duties to protect AB's business and interests with respect to inventions, patents, intellectual property, and other corporate opportunities, and not to allow those opportunities to be used by others for their own benefit and to harm AB.  Macevicz also owed fiduciary duties to AB under the Invention Agreement, pursuant to which he held inventions in trust for the sole right and benefit of AB.

42.     Macevicz breached fiduciary duties owed to AB by, among other things, failing to disclose the inventions to AB, applying for patents on the inventions in his own name, and purporting to assign the inventions and patents to Lynx.

43.     On information and belief, Lynx knew that Macevicz was AB's chief patent counsel, held the inventions and patents in trust for AB, and owed fiduciary duties to AB.  Lynx aided and abetted Macevicz in violating his fiduciary duties to AB by encouraging and accepting Macevicz's purported assignment of the Application, the Patents, and the Foreign Patents and Applications to Lynx.

44.     On information and belief, Macevicz's breaches of fiduciary duties provided advantages to him, and to Lynx claiming under him, by misleading AB to its prejudice.  These breaches constitute constructive fraud under the common law and according to statute, including California Civil Code section 1573.

45.     On information and belief, Illumina/Solexa has adopted and ratified the wrongful conduct of Macevicz and Lynx, and Illumina's aiding and abetting of Macevicz's breaches of fiduciary duties provided advantages to Illumina, by misleading AB to its prejudice.  These breaches constitute constructive fraud under the common law and according to statute, including California Civil Code section 1573.

46.     AB has been damaged as a result of defendants' constructive fraud, in an amount to be proven at trial.  Defendants' conduct was intentional, willful, and malicious, thereby

9

1    justifying an award of punitive damages.  AB has also been damaged by defendants' constructive

2    fraud in ways that cannot be fully compensated by monetary damages, and is therefore entitled to

3    injunctive relief.

### FIFTH CAUSE OF ACTION
### (Conversion; Against All Defendants)

6    47.    AB incorporates by reference paragraphs 1 through 46 above.

7    48.    AB owned and continues to own the Application, the Patents and the Foreign

8    Patents and Applications.  Without AB's consent, Lynx intentionally took possession of the

9    Application, the Patents, and the Foreign Patents and Applications.

10    49.    Lynx knew or should have known that Macevicz submitted the Application while

11    he was working for AB, and that the subject matter of the Application, the Patents, and the

12    Foreign Patents and Applications related to AB's business.  Lynx could not reasonably have

13    believed that Macevicz had authority to assign the Application, the Patents, and the Foreign

14    Patents and Applications to Lynx.  Illumina/Solexa has adopted, ratified and benefited from the

15    wrongful conduct of Macevicz and Lynx.

16    50.    AB has been harmed by defendants' conduct and is entitled to recover from

17    defendants the actual damages sustained by AB as a result of the defendants' wrongful acts as

18    described in this Complaint.  The amount of these damages cannot be determined at this time.

19    AB is further entitled to the return of the Application, the Patents, and the Foreign Patents and

20    Applications, and is also entitled to a constructive trust over the Application, the Patents, and the

21    Foreign Patents and Applications and income derived therefrom.

### SIXTH CAUSE OF ACTION
### (Imposition of Constructive Trust; Against All Defendants)

24    51.    AB incorporates by reference paragraphs 1 through 50 above.

25    52.    Under the Invention Agreement, Macevicz holds and held the Application, the

26    Patents, and the Foreign Patents and Applications in trust for AB.  Although Macevicz purported

27    to assign the Application, the Patents, and the Foreign Patents and Applications to Lynx,

28    Macevicz had no right to make that assignment.  Lynx knew, or should have known, that

10

1  Macevicz had no right to make the assignment.  Illumina/Solexa has adopted, ratified and

2  benefited from the wrongful conduct of Macevicz and Lynx.

3      53.    Because of the fraudulent and otherwise wrongful manner in which Illumina

4  obtained its purported right, claim or interest in and to the Application, the Patents, and the

5  Foreign Patents and Applications, Illumina has no legal or equitable right, claim or interest to the

6  Application, the Patents, and the Foreign Patents and Applications, or any income or benefits

7  derived from them.  Illumina is an involuntary trustee holding the Application, the Patents, and

8  the Foreign Patents and Applications and any profits or income therefrom in constructive trust for

9  AB, with the duty to convey the same to AB.

10
## SEVENTH CAUSE OF ACTION
### (Unfair Competition; Against Solexa and Illumina)
11

12      54.    AB incorporates by reference paragraphs 1 through 53 above.

13      55.    Solexa has brought the Patents to the attention of third parties as if it were the

14  legitimate assignee and owner of the Patents, acting as if it were the proper assignee and owner of

15  the Patents.  However, Solexa is not the proper assignee or owner of the Patents.

16      56.    Solexa's improper receipt of the Application, the Patents, and the Foreign Patents

17  and Applications, and improper representation of ownership of the Patents, constitutes unfair

18  competition under the common law and according to statute, including California Business and

19  Professions Code section 17200 *et seq.* Illumina has adopted, ratified and benefited from the

20  wrongful conduct of Solexa.

21      57.    As a result of Illumina and Solexa's acts of unfair competition, AB has been

22  damaged by, among other things, the cost of this action and other measures made necessary to

23  recover the Patents and otherwise remedy Illumina and Solexa's wrongdoing.

24
## EIGHTH CAUSE OF ACTION
### (Declaratory Judgment Regarding Infringement of '341 Patent, '119 Patent, and '597 Patent; Against All Defendants)
25

26
27      58.    AB incorporates by reference paragraphs 1 through 57 above.

28

59.    The parties require declaratory relief regarding infringement or non-infringement of the '341, '119, and '597 Patents.

60.    This judicial declaration is necessary and appropriate in order that AB may ascertain its rights and duties with respect to the Patents.

## NINTH CAUSE OF ACTION
### (Declaratory Judgment Regarding Validity of '341 Patent, '119 Patent, and '597 Patent; Against All Defendants)

61.    AB incorporates by reference paragraphs 1 through 60 above.

62.    The parties require declaratory relief regarding the validity or invalidity of each of the asserted claims of the '341, '119, and '597 Patents.

63.    This judicial declaration is necessary and appropriate in order that AB may ascertain its rights and duties with respect to the Patents.

## TENTH CAUSE OF ACTION
### (Declaratory Judgment Regarding Enforceability of '341 Patent, '119 Patent, and '597 Patent; Against All Defendants)

64.    AB incorporates by reference paragraphs 1 through 63 above.

65.    The parties require declaratory relief regarding the enforceability or unenforceability by Solexa of each of the '341 Patent, the '119 Patent, and the '597 Patent.

66.    Each of the '341, '119, and '597 Patents are void and unenforceable by Solexa due to inequitable conduct in their prosecution before the United States Patent and Trademark Office (the "PTO"), based on the conduct described above, and as more particularly alleged below.

67.    On information and belief, the applicant failed to disclose material prior art to the PTO during prosecution of the '341, '119 and '597 Patents even though such prior art was known to the applicant, thereby rendering the '341, '119 and '597 Patents unenforceable by Solexa.  In particular, during prosecution of the '341, '119 and '597 Patents, U.S. Patent No. 4,988,617 (the "Landegren Patent") and U.S. Patent No. 4,883,750 (the "Whiteley Patent") were known to the applicant, Stephen C. Macevicz.  The disclosures of the Landegren Patent and the Whiteley Patent describe methods for determining the sequence of a nucleic acid which read directly on claims of the '341 and '597 Patents and are also material to claims of the '119 Patent.

68.    Dr. Macevicz discussed the Landegren Patent and the Whiteley Patent in a letter dated May 12, 1995 to Bio-Rad Laboratories.  This letter demonstrates that Dr. Macevicz knew of the Landegren Patent and the Whiteley Patent during the prosecution of the applications that resulted in the '341,'119 and '597 Patents.  Nonetheless, the applicant failed to disclose these highly material references to the examiners overseeing the prosecution of those applications. Because the applicant thereby knew, or should have known, that the withheld information would be material to the PTO's consideration of the '341, '119 and '597 patent applications, intent to deceive may be inferred.

69.    As separate and independent grounds, Claim 1 of the '597 Patent is further unenforceable by Solexa because, on information and belief, although Claim 1 of the '597 Patent is identical to Claim 1 as originally filed in the '341 Patent, the applicant did not disclose to the PTO during the prosecution of the '597 Patent that the original Claim 1 of the '341 Patent had been rejected.

70.    Claim 1 of the '341 Patent in its original form was rejected as indefinite for failing to identify the relative position of relevant nucleotides with respect to the initializing oligonucleotide, the oligonucleotide probe, and the extended duplex.  The Examiner also stated that it was not clear what mechanism, such as the employment of a label, was being utilized in the identification step.  In response to the rejections, the claim was amended to clarify and further define the identifying step in what would ultimately become Claim 1 of the '341 Patent.  The amended claim was allowed after an Examiner's amendment.

71.    At no time during the prosecution of the '597 Patent, which occurred before a different examiner than the prosecution of the '341 Patent, did the applicant disclose the Office Action or Response thereto relating to the rejection of claim language identical to that previously pending in the '341 Patent.  Claim 1 of the '597 Patent was not amended during prosecution and was allowed.  Nevertheless, a reasonable examiner would consider a rejection directed toward a claim having the identical language in a related case to be material.  Because the applicant thereby knew, or should have known, that the withheld information would be material to the PTO's consideration of the '597 patent application, intent to deceive may be inferred.

72.     As separate and independent grounds, the '341 Patent is further unenforceable by Solexa because, on information and belief, Lynx improperly made its maintenance fees payments as a small entity, even after it had represented to the PTO with respect to the '119 and '597 Patents that its status had changed to a large entity.

73.     Two maintenance fee payments were paid for the '341 Patent.  Although these maintenance fees were paid as a small entity, the '341 Patent was assigned to a large entity at the time each maintenance fee was paid.  As early as February 19, 1999, Lynx, the then-owner of the '341 Patent, filed a statement with the PTO formally notifying it that the application that issued as the '119 Patent was now owned by a large entity.  The rights to the '119 Patent were co-assigned to Lynx along with the rights to the '341 Patent.  Despite this, Lynx paid the first maintenance fee for the '341 Patent as a small entity on November 9, 2001.  More than five and a half years later, after the first large entity notification was filed and after at least six assertions to the PTO that the '119 or '597 Patents were owned by a large entity, Solexa again paid the '341 Patent maintenance fee as a small entity on November 14, 2005.  At no time has the maintenance fee for the '341 Patent been properly paid.  Lynx and Solexa knew that at the time they paid the maintenance fees that they did not qualify as a small entity, yet they continued to make improper maintenance fee payments.  The PTO would consider the entity's status as large or small to be material.  Because the applicant thereby knew, or should have known, that the withheld information would be material to the PTO, intent to deceive may be inferred.

74.     AB is entitled to a judicial declaration that the '341, '119, and '597 Patents are unenforceable by Solexa.  This judicial declaration is necessary and appropriate in order that AB may ascertain its rights and duties with respect to the Patents.

## PRAYER FOR RELIEF

WHEREFORE, AB prays for relief as follows:

1.     Actual, incidental, and consequential damages from Macevicz and Illumina, together with interest, in an amount to be proven at trial;

2.     Punitive damages from Macevicz and Illumina according to proof;

14

1    3.    That the Court declare that AB is the true and proper owner of the Application, the

2    Patents, and the Foreign Patents and Applications;

3    4.    Injunctive relief, in the form of the imposition of a constructive trust and an order

4    directing Macevicz and Illumina to, at a minimum:  (a) take all necessary steps to confirm and

5    restore ownership of the Patents and the Foreign Patents and Applications, including any patents

6    or patent applications that may still be pending or may yet issue based on the Application, to AB,

7    including a transfer of registration of Japanese Patent Application No. H08-531848 (Publication

8    No. JP H11-503908) and Japanese Patent Application H19-185093 to AB; (b) cease all use of any

9    information that they wrongfully took or received from AB, either directly or indirectly, (c)

10   identify and return to AB any other information, patents, or inventions made by Macevicz while

11   he was employed by AB that he has not previously disclosed and assigned to AB;

12   5.    An order for an accounting of all fees, royalties, or other compensation received by

13   Illumina based on the Patents, and imposing a constructive trust over any such fees, royalties, or

14   other compensation in favor of AB;

15   6.    That the Court declare the rights and duties of AB regarding infringement of the

16   '341 Patent, '119 Patent, or '597 Patent;

17   7.    That the Court declare the validity or invalidity of each of the asserted claims of

18   the '341 Patent, the '119 Patent, and '597 Patent.

19   8.    That the Court declare the enforceability or unenforceability by Solexa of the '341

20   Patent, the '119 Patent, and the '597 Patent.

21   9.    That the Court deem this case to be "exceptional" within the meaning of 35 U.S.C.

22   § 285 entitling AB to an award of its reasonable attorneys' fees and expenses in this action; and

23   10.    Any such additional and further relief the Court deems just and proper.

24   **DEMAND FOR JURY TRIAL**

25   Pursuant to Federal Rule of Civil Procedure 38(b), Applied Biosystems demands a trial by

26   jury of all issues triable in this action.

27

28

15

SECOND AMENDED COMPLAINT
pa-1241932
Case No. 07-CV-02845 WHA

1    Dated: _____, 2008          MORRISON & FOERSTER LLP

2

3                                              By:    /s/ Bryan Wilson
                                                      Bryan Wilson
4
                                                      Attorneys for Plaintiff
5                                                     APPLERA CORPORATION –
                                                      APPLIED BIOSYSTEMS GROUP
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

1    **CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

2        Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons,

3    associations of persons, firms, partnerships, corporations (including parent corporations) or other

4    entities (i) have a financial interest in the subject matter in controversy or in a party to the

5    proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be

6    substantially affected by the outcome of this proceeding:  Applied Biosystems an operating group

7    of Applera Corporation.  Applera Corporation has two classes of stock, Applera-Applied

8    Biosystems stock and Applera-Celera stock.  Applera-Applied Biosystems stock is listed on the

9    New York Stock Exchange under the ticker symbol "ABI."  Applera-Celera stock is listed on the

10   New York Stock Exchange under the ticker symbol "CRA."

11

12   Dated: _____, 2008          MORRISON & FOERSTER LLP

13

14                                           By:   /s/ Bryan Wilson_____
                                                   Bryan Wilson

15                                           Attorneys for Plaintiff
16                                           APPLERA CORPORATION –
                                             APPLIED BIOSYSTEMS GROUP

17

18

19

20

21

22

23

24

25

26

27

28

17