BRYAN WILSON (CA ~~BAR NO.~~ SBN 138842)
ERIC C. PAI (CA ~~BAR NO.~~ SBN 247604)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792
E-Mail: BWilson@mofo.com
E-Mail: EPai@mofo.com

DAVID C. DOYLE (CA SBN 70690)
STEVEN E. COMER (CA SBN 154384)
~~ANDERS T. AANNESTAD~~BRIAN M. KRAMER (CA SBN ~~211100~~212107)
MORRISON & FOERSTER LLP
12531 High Bluff Drive
Suite 100
San Diego, California  92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125
E-Mail: DDoyle@mofo.com
E-Mail: SComer@mofo.com
E-Mail: ~~AAannestad~~BMKramer@mofo.com

Attorneys for Plaintiff
APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ILLUMINA, INC., a Delaware corporation, SOLEXA, INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual,<br><br>Defendants. | Case No.   07-CV-02845 WHA<br><br>~~FIRST~~SECOND AMENDED COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

1

Plaintiff Applera Corporation – Applied Biosystems Group ("Applied Biosystems" or "AB"), by its undersigned attorneys, alleges as follows:

**PARTIES**

1. Applied Biosystems is an operating group of Applera Corporation, a Delaware Corporation. Applera's principal place of business is in Norwalk, Connecticut, and Applied Biosystems' principal place of business is in Foster City, California.

2. Applied Biosystems is informed and believes, and on that basis alleges, that defendant Illumina, Inc. ("Illumina") is a Delaware Corporation with its principal place of business in San Diego, California. AB is further informed and believes that in 2005, Lynx Therapeutics, Inc. ("Lynx") acquired Solexa, and that the combined companies of Lynx and Solexa became known as Solexa. AB is further informed and believes that effective January 26, 2007, Illumina acquired Solexa, Inc. ("Solexa"), a Delaware Corporation with its principal place of business in Hayward, California. References to Illumina in this ~~First~~Second Amended Complaint ("Complaint") include Illumina, Solexa, and Lynx.

3. AB is informed and believes, and on that basis alleges, that defendant Stephen C. Macevicz ("Macevicz") is, and at all relevant times was, a resident of Santa Clara County, California.

**JURISDICTION**

4. This is an action for declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202 for the purpose of determining a question of actual controversy between the parties as described herein.

5. This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1338(a) (action arising under an Act of Congress relating to patents), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1367 (supplemental jurisdiction).

**VENUE**

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)-(c) in that AB is informed and believes, and on that basis alleges, that Illumina is subject to personal jurisdiction within the State of California and this judicial district by virtue of, *inter alia*, Illumina's principal

1    place of business in San Diego, California and Solexa's principal place of business in Hayward,

2    California, Illumina and Solexa's regular and systematic business contacts with this judicial

3    district, and Solexa's communications to AB in California.  Illumina accordingly resides within

4    this judicial district for venue purposes.

## INTRADISTRICT ASSIGNMENT

6    7.    ~~Assignment~~This case has been assigned to the San ~~Jose Division is proper because

7    Defendant Stephen Macevicz resides in the County of Santa Clara~~Francisco Division.

## RELATED STATE-COURT ACTION

9    8.    This case is related to the formerly pending case of *Applera Corporation – Applied

10   Biosystems Group v. Solexa, Inc., Stephen C. Macevicz, and Does 1-10*, filed on or about

11   December 26, 2006 in the Superior Court of California, County of Santa Clara, Case No.

12   106CV077133 (the "State Court Action").

13   9.    The complaint in the State Court Action ~~alleges~~alleged, *inter alia*, that Solexa

14   (which was known during much of the relevant time period as Lynx) and Macevicz wrongfully

15   took patents and inventions that belong to AB.

16   10.   Macevicz is the former Chief Patent Counsel for AB.  While he was employed by

17   AB, and without the knowledge or consent of AB, Macevicz applied for patents on inventions

18   that he was obligated to assign to AB.  Under the terms of his employment with AB, he held these

19   inventions, applications, and patents in trust for AB.  Immediately after he left AB, however, and

20   before the patents were issued, Macevicz went to work for Lynx and purported to assign the

21   patents to Lynx.

22   11.   AB brought the State Court Action to recover the patents because Macevicz had no

23   right to assign the applications to Lynx, and Lynx had no right to accept the assignments.  The

24   State Court Action has since been voluntarily dismissed without prejudice, such that all claims

25   may be resolved in this action.

## FACTUAL BACKGROUND

27   12.   In Spring, 1992, Macevicz accepted an offer to become patent counsel for AB.  On

28   May 4, 1992, as a condition of his employment by AB, Macevicz signed an Employee Invention

1  Agreement ("Invention Agreement") with AB. In the Invention Agreement, Macevicz promised
2  to disclose to AB, to hold in trust for the sole right and benefit of AB, and to assign to AB any
3  inventions that he might make while employed by AB. The only exception was for inventions
4  that Macevicz could prove were developed entirely on his own time, were developed without the
5  use of company resources, and did not relate to the actual or anticipated business of AB or result
6  from work performed by him for AB. Macevicz further promised that if he made any inventions
7  that he believed fell within this exception, he would disclose those inventions to AB and provide
8  evidence to substantiate his belief that the inventions fell within the exception.

9        13. On April 17, 1995, while he was still working for AB, Macevicz filed United
10  States Patent Application No. 08/424,663 ("the Application") with the United States Patent and
11  Trademark Office. He filed the Application in his own name. The Application described and
12  covered inventions that were owned by AB pursuant to the Invention Agreement. Macevicz did
13  not disclose the Application, nor did he make any other disclosure required by the Invention
14  Agreement, to AB.

15        14. Macevicz's Application led to at least three U.S. patents that issued after he left
16  AB: U.S. Patent No. 5,750,341 ("the '341 Patent"), U.S. Patent No. 5,969,119 ("the '119 Patent),
17  and U.S. Patent No. 6,306,597 (the '597 Patent) (collectively, "the Patents"). Copies of the '341
18  Patent, '119 Patent, and '597 Patent are attached to this Complaint as Exhibits A-C, respectively.
19  AB did not learn about the Application or the Patents until in or around February 2006.

20        15. A PCT application and several foreign patents and patent applications also claim
21  priority to Macevicz's Application, including but not limited to PCT Application
22  PCT/US96/05245, European Patent Application Publication No. EP 0871646, Canadian Patent
23  No. 2,218,017, Australian Patent No. 754991, Australian Patent No. 718937, Japanese Patent
24  Application No. H08-531848 (Publication No. JP H11-503908), and Japanese Patent Application
25  H19-185093 ("the Foreign Patents and Applications").

26        16. Very soon after he left AB, Macevicz went to work for Lynx. On information and
27  belief, Macevicz purported to assign the Application and the Patents to Lynx, and Lynx purported
28  to accept the assignments, even though they were already assigned to AB under the Invention

4

1  Agreement. AB was unaware of the purported assignment to Lynx, and was unaware of the
2  Application or the Patents, until in or around February 2006.

3  **GROUNDS FOR DECLARATORY RELIEF**

4  17. This is in part an action for a declaratory judgment concerning infringement of the
5  '341 Patent, the '119 Patent, and the '597 Patent.

6  18. Illumina/Solexa purports to be the owner by assignment of the Patents.

7  19. AB currently manufactures, sells, and intends to sell in the United States its DNA
8  sequencing products.

9  20. On March 8, 2006, Dr. Tony Smith, the Vice President and Chief Scientific
10 Officer of Solexa, wrote to Dr. Kevin McKernan, attaching a copy of the '597 Patent. Dr.
11 McKernan was at that time the Vice President and Co-Chief Scientific Officer of Agencourt
12 Personal Genomics, which is now owned by AB.

13 21. The March 8, 2006 letter indicated to AB the intention of Solexa to assert the '597
14 patent, as well as the related '341 and '119 patents, against DNA sequencing products of AB. In
15 the letter Dr. Smith describes a conference at Hilton Head at which he had met with Dr.
16 McKernan. The letter states that Dr. McKernan "made a reference to Solexa patents" at the
17 meeting. But, during this meeting, Dr. McKernan had not made a reference to the Solexa patents
18 listed in the letter. Thus, Agencourt and AB understand that Solexa used the conversation
19 between Drs. McKernan and Smith at the Hilton Head conference as a pretext to put Agencourt
20 on notice of the '597 patent, as well as the related '341 and '119 patents, thereby indicating to
21 Agencourt/AB that Solexa is contending that Agencourt is engaging or intending to engage in
22 activity for which it needs a license to the '597 patent and its related patents.

23 22. On or about February 23, 2007, Solexa served "Defendant Solexa, Inc.'s First
24 Request for Production of Documents and Things to Plaintiff Applera Corporation – Applied
25 Biosystems Group" in the related State Court action. In that discovery demand, Solexa demanded
26 "All documents that refer or relate to whether You infringe any claim in the Patents". Solexa's
27 demand defined the "Patents" as the '341 patent, '119 patent, and '597 patent. This discovery
28 demand confirmed Illumina's intent to assert the '341, '119 and '597 patents against AB.

5

23. Solexa's actions have raised issues of infringement of the '341 Patent, '119 Patent, and '597 Patent for AB.

24. AB is informed and believes, and on that basis alleges, that Solexa contends that the '341 Patent, '119 Patent, and/or '597 Patent are infringed by AB's DNA sequencing products.

25. The foregoing facts and circumstances demonstrate that Illumina/Solexa asserts rights under the '341 Patent, '119 Patent, and '597 Patent based on ongoing or planned activity of AB, namely the manufacturing, selling, offering for sale, and/or using of DNA sequencing products. AB contends that it has the right to engage in the accused activity without license. There is therefore an actual, justiciable, Article III case or controversy between the parties with respect to infringement of the Patents. Accordingly, AB is entitled to have a declaration of its rights and further relief as requested herein.

26. AB seeks a declaration of its rights to continue making, selling, offering for sale, and using DNA sequencing products without a license and without a risk of being sued for infringement of the Patents. AB seeks the declaration based on (1) equitable principles stemming from its ownership interest in the Patents and/or (2) the noninfringement, invalidity, and unenforceability of the Patents.

27. The ownership of the Patents is in dispute between AB and Illumina, as indicated by the State Court Action. In the interests of judicial economy, AB herein alleges its causes of action regarding the ownership of the Application, the Patents, and the Foreign Patents and Applications, so that the issues of ownership and infringement can be resolved in the most efficient manner through a consolidated proceeding. Since the parties' positions regarding infringement will be affected by the determination of ownership, the same Court should resolve all issues concerning the Patents, beginning with the issue of ownership.

**FIRST CAUSE OF ACTION**
**(Breach of Contract; Against Macevicz)**

28. AB incorporates by reference paragraphs 1 through 27 above.

29. The Invention Agreement is a valid and enforceable agreement between Macevicz and AB.

30. Macevicz breached the terms of the Invention Agreement by, among other things, failing to disclose the inventions to AB, applying for patents on the inventions in his own name, and purporting to assign the inventions and patents to Lynx.

31. AB has been harmed by Macevicz's various breaches of the Invention Agreement in ways that cannot be fully compensated by monetary damages. AB is therefore entitled to damages and injunctive relief including, among other things, specific enforcement of Macevicz's obligations under the Invention Agreement.

**SECOND CAUSE OF ACTION**
**(Interference With Contract; Against ~~All Defendants~~Solexa and Illumina)**

32. AB incorporates by reference paragraphs 1 through 31 above.

33. On information and belief, Lynx knew that Macevicz had a contractual duty to disclose and assign the Application, the Patents, and the Foreign Patents and Applications to AB. Lynx also knew that Macevicz had worked for AB prior to working for Lynx, and that the Application, the Patents, and the Foreign Patents and Applications were within AB's scope of business. Lynx nonetheless accepted the purported assignment of the Application, the Patents, and the Foreign Patents and Applications from Macevicz, and assisted Macevicz in violating his contractual obligations to AB by failing to disclose, hold in trust for, and assign the Application, the Patents, and the Foreign Patents and Applications to AB. Illumina/Solexa has adopted, ratified and benefited from the wrongful conduct of Macevicz and Lynx.

34. AB has been damaged as a result of Illumina's interference with the Invention Agreement between Macevicz and AB, in an amount to be proven at trial. Illumina's conduct was intentional, willful, and malicious, thereby justifying an award of punitive damages. AB has also been damaged in ways that cannot be compensated by monetary damages, and is therefore entitled to injunctive relief.

**THIRD CAUSE OF ACTION**
**(Breach of Fiduciary Duty; Against All Defendants)**

35. AB incorporates by reference paragraphs 1 through 34 above.

7

36. As AB's chief patent counsel, Macevicz owed to AB fiduciary duties of utmost good faith and honesty, including duties to protect AB's business and interests with respect to inventions, patents, intellectual property, and other corporate opportunities, and not to allow those opportunities to be used by others for their own benefit and to harm AB. Macevicz also owed fiduciary duties to AB under the Invention Agreement, pursuant to which he held inventions in trust for the sole right and benefit of AB.

37. Macevicz breached fiduciary duties owed to AB by, among other things, failing to disclose the inventions to AB, applying for patents on the inventions in his own name, and purporting to assign the inventions and patents to Lynx.

38. On information and belief, Lynx knew that Macevicz was AB's chief patent counsel, held the inventions and patents in trust for AB, and owed fiduciary duties to AB. Lynx aided and abetted Macevicz in violating his fiduciary duties to AB by encouraging and accepting Macevicz's purported assignment of the Application, the Patents, and the Foreign Patents and Applications to Lynx. Illumina/Solexa has adopted, ratified and benefited from the wrongful conduct of Macevicz and Lynx.

39. AB has been damaged as a result of Macevicz's breach of fiduciary duties, in an amount to be proven at trial. Macevicz's conduct was intentional, willful, and malicious, thereby justifying an award of punitive damages. Punitive damages are especially appropriate in this case because Macevicz was entrusted with the protection and development of AB's intellectual property rights, and took those rights for himself instead of protecting them for AB. Additionally, AB has been damaged as a result of Illumina's aiding and abetting of Macevicz's breaches of fiduciary duties owed to AB, in an amount to be proven at trial. Illumina's conduct was intentional, willful, and malicious, thereby justifying an award of punitive damages. AB has also been damaged by Macevicz's breaches of fiduciary duties, and Illumina's aiding and abetting thereof, in ways that cannot be fully compensated by monetary damages, and is therefore entitled to injunctive relief.

## FOURTH CAUSE OF ACTION
### (Constructive Fraud; Against All Defendants)

40. AB incorporates by reference paragraphs 1 through 39 above.

41. As AB's chief patent counsel, Macevicz owed to AB fiduciary duties of utmost good faith and honesty, including duties to protect AB's business and interests with respect to inventions, patents, intellectual property, and other corporate opportunities, and not to allow those opportunities to be used by others for their own benefit and to harm AB. Macevicz also owed fiduciary duties to AB under the Invention Agreement, pursuant to which he held inventions in trust for the sole right and benefit of AB.

42. Macevicz breached fiduciary duties owed to AB by, among other things, failing to disclose the inventions to AB, applying for patents on the inventions in his own name, and purporting to assign the inventions and patents to Lynx.

43. On information and belief, Lynx knew that Macevicz was AB's chief patent counsel, held the inventions and patents in trust for AB, and owed fiduciary duties to AB. Lynx aided and abetted Macevicz in violating his fiduciary duties to AB by encouraging and accepting Macevicz's purported assignment of the Application, the Patents, and the Foreign Patents and Applications to Lynx.

44. On information and belief, Macevicz's breaches of fiduciary duties provided advantages to him, and to Lynx claiming under him, by misleading AB to its prejudice. These breaches constitute constructive fraud under the common law and according to statute, including California Civil Code section 1573.

45. On information and belief, Illumina/Solexa has adopted and ratified the wrongful conduct of Macevicz and Lynx, and Illumina's aiding and abetting of Macevicz's breaches of fiduciary duties provided advantages to Illumina, by misleading AB to its prejudice. These breaches constitute constructive fraud under the common law and according to statute, including California Civil Code section 1573.

46. AB has been damaged as a result of defendants' constructive fraud, in an amount to be proven at trial. ~~Illumina~~Defendants'~~s~~ conduct was intentional, willful, and malicious,

9

thereby justifying an award of punitive damages.  AB has also been damaged by defendants' constructive fraud in ways that cannot be fully compensated by monetary damages, and is therefore entitled to injunctive relief.

**FIFTH CAUSE OF ACTION**
**(Conversion; Against All Defendants)**

47. AB incorporates by reference paragraphs 1 through 46 above.

48. AB owned and continues to own the Application, the Patents and the Foreign Patents and Applications.  Without AB's consent, Lynx intentionally took possession of the Application, the Patents, and the Foreign Patents and Applications.

49. Lynx knew or should have known that Macevicz submitted the Application while he was working for AB, and that the subject matter of the Application, the Patents, and the Foreign Patents and Applications related to AB's business.  Lynx could not reasonably have believed that Macevicz had authority to assign the Application, the Patents, and the Foreign Patents and Applications to Lynx.  Illumina/Solexa has adopted, ratified and benefited from the wrongful conduct of Macevicz and Lynx.

50. AB has been harmed by defendants' conduct and is entitled to recover from defendants the actual damages sustained by AB as a result of the defendants' wrongful acts as described in this Complaint.  The amount of these damages cannot be determined at this time.  AB is further entitled to the return of the Application, the Patents, and the Foreign Patents and Applications, and is also entitled to a constructive trust over the Application, the Patents, and the Foreign Patents and Applications and income derived therefrom.

**SIXTH CAUSE OF ACTION**
**(Imposition of Constructive Trust; Against All Defendants)**

51. AB incorporates by reference paragraphs 1 through 50 above.

52. Under the Invention Agreement, Macevicz holds and held the Application, the Patents, and the Foreign Patents and Applications in trust for AB.  Although Macevicz purported to assign the Application, the Patents, and the Foreign Patents and Applications to Lynx, Macevicz had no right to make that assignment.  Lynx knew, or should have known, that

1  Macevicz had no right to make the assignment.  Illumina/Solexa has adopted, ratified and
2  benefited from the wrongful conduct of Macevicz and Lynx.

3        53.    Because of the fraudulent and otherwise wrongful manner in which Illumina
4  obtained its purported right, claim or interest in and to the Application, the Patents, and the
5  Foreign Patents and Applications, Illumina has no legal or equitable right, claim or interest to the
6  Application, the Patents, and the Foreign Patents and Applications, or any income or benefits
7  derived from them.  Illumina is an involuntary trustee holding the Application, the Patents, and
8  the Foreign Patents and Applications and any profits or income therefrom in constructive trust for
9  AB, with the duty to convey the same to AB.

**SEVENTH CAUSE OF ACTION**
**(Unfair Competition; Against Solexa and Illumina)**

12        54.    AB incorporates by reference paragraphs 1 through 53 above.
13        55.    Solexa has brought the Patents to the attention of third parties as if it were the
14  legitimate assignee and owner of the Patents, acting as if it were the proper assignee and owner of
15  the Patents.  However, Solexa is not the proper assignee or owner of the Patents.
16        56.    Solexa's improper receipt of the Application, the Patents, and the Foreign Patents
17  and Applications, and improper representation of ownership of the Patents, constitutes unfair
18  competition under the common law and according to statute, including California Business and
19  Professions Code section 17200 *et seq.* Illumina has adopted, ratified and benefited from the
20  wrongful conduct of Solexa.
21        57.    As a result of Illumina and Solexa's acts of unfair competition, AB has been
22  damaged by, among other things, the cost of this action and other measures made necessary to
23  recover the Patents and otherwise remedy Illumina and Solexa's wrongdoing.

**EIGHTH CAUSE OF ACTION**
**(Declaratory Judgment Regarding Infringement of '341 Patent, '119 Patent, and '597 Patent; Against All Defendants)**

26
27        58.    AB incorporates by reference paragraphs 1 through 57 above.
28

11

59. The parties require declaratory relief regarding infringement or non-infringement of the '341, '119, and '597 Patents.

60. This judicial declaration is necessary and appropriate in order that AB may ascertain its rights and duties with respect to the Patents.

**NINTH CAUSE OF ACTION**
**(Declaratory Judgment Regarding Validity of '341 Patent, '119 Patent, and '597 Patent; Against All Defendants)**

61. AB incorporates by reference paragraphs 1 through 60 above.

62. The parties require declaratory relief regarding the validity or invalidity of each of the asserted claims of the '341, '119, and '597 Patents.

63. This judicial declaration is necessary and appropriate in order that AB may ascertain its rights and duties with respect to the Patents.

**TENTH CAUSE OF ACTION**
**(Declaratory Judgment Regarding Enforceability of '341 Patent, '119 Patent, and '597 Patent; Against All Defendants)**

64. AB incorporates by reference ~~paragraph~~ paragraphs 1 through 63 above.

65. The parties require declaratory relief regarding the enforceability or unenforceability by Solexa of each of the '341 Patent, the '119 Patent, and the '597 Patent.

66. Each of the '341, ~~'~~'119, and '597 Patents are void and unenforceable by Solexa due to inequitable conduct in their prosecution before the United States Patent and Trademark Office (the "PTO"), based on the conduct described above, and as more particularly alleged below.

67. On information and belief, the applicant failed to disclose material prior art to the PTO during prosecution of the '341, '119 and '597 Patents even though such prior art was known to the applicant, thereby rendering the '341, '119 and '597 Patents unenforceable by Solexa. In particular, during prosecution of the '341, '119 and '597 Patents, U.S. Patent No. 4,988,617 (the "Landegren Patent") and U.S. Patent No. 4,883,750 (the "~~Whitely~~Whiteley Patent") were known to the applicant, Stephen C. Macevicz. The disclosures of the Landegren Patent and the ~~Whitely~~Whiteley Patent describe methods for determining the sequence of a nucleic acid which

12

~~FIRST~~SECOND AMENDED COMPLAINT
pa-~~1202429~~1241932
Case No. 07-CV-02845 WHA

1  read directly on claims of the '341 and '597 Patents and are also material to claims of the '119

2  Patent.

3       68.    Dr. Macevicz discussed the Landegren Patent and the ~~Whitely~~Whiteley Patent in a

4  letter dated May 12, 1995 to Bio-Rad Laboratories. This letter demonstrates that Dr. Macevicz

5  knew of the Landegren Patent and the ~~Whitely~~Whiteley Patent during the prosecution of the

6  applications that resulted in the '341,'119 and '597 Patents. Nonetheless, the applicant failed to

7  disclose these highly material references to the examiners overseeing the prosecution of those

8  applications. Because the applicant thereby knew, or should have known, that the withheld

9  information would be material to the PTO's consideration of the '341, '119 and '597 patent

10  applications, intent to deceive may be inferred.

11       69.    As separate and independent grounds, Claim 1 of the '597 Patent is further

12  unenforceable by Solexa because, on information and belief, although Claim 1 of the '597 Patent

13  is identical to Claim 1 as originally filed in the '341 Patent, the applicant did not disclose to the

14  PTO during the prosecution of the '597 Patent that the original Claim 1 of the '341 Patent had

15  been rejected.

16       70.    Claim 1 of the '341 Patent in its original form was rejected as indefinite for failing

17  to identify the relative position of relevant nucleotides with respect to the initializing

18  oligonucleotide, the oligonucleotide probe, and the extended duplex. The Examiner also stated

19  that it was not clear what mechanism, such as the employment of a label, was being utilized in the

20  identification step. In response to the rejections, the claim was amended to clarify and further

21  define the identifying step in what would ultimately become Claim 1 of the '341 Patent. The

22  amended claim was allowed after an Examiner's amendment.

23       71.    At no time during the prosecution of the '597 Patent, which occurred before a

24  different examiner than the prosecution of the '341 Patent, did the applicant disclose the Office

25  Action or Response thereto relating to the rejection of claim language identical to that previously

26  pending in the '341 Patent. Claim 1 of the '597 Patent was not amended during prosecution and

27  was allowed. Nevertheless, a reasonable examiner would consider a rejection directed toward a

28  claim having the identical language in a related case to be material. Because the applicant

1  thereby knew, or should have known, that the withheld information would be material to the
2  PTO's consideration of the '597 patent application, intent to deceive may be inferred.

3      72.    As separate and independent grounds, the '341 Patent is further unenforceable by
4  Solexa because, on information and belief, Lynx improperly made its maintenance fees payments
5  as a small entity, even after it had represented to the PTO with respect to the '119 and '597
6  Patents that its status had changed to a large entity.

7      73.    Two maintenance fee payments were paid for the '341 Patent. Although these
8  maintenance fees were paid as a small entity, the '341 Patent was assigned to a large entity at the
9  time each maintenance fee was paid. As early as February 19, 1999, Lynx, the then-owner of the
10 '341 Patent, filed a statement with the PTO formally notifying it that the application that issued as
11 the '119 Patent was now owned by a large entity. The rights to the '119 Patent were co-assigned
12 to Lynx along with the rights to the '341 Patent. Despite this, Lynx paid the first maintenance fee
13 for the '341 Patent as a small entity on November 9, 2001. More than five and a half years later,
14 after the first large entity notification was filed and after at least six assertions to the PTO that the
15 '119 or '597 Patents were owned by a large entity, Solexa again paid the '341 Patent maintenance
16 fee as a small entity on November 14, 2005. At no time has the maintenance fee for the '341
17 Patent been properly paid. Lynx and Solexa knew that at the time they paid the maintenance fees
18 that they did not qualify as a small entity, yet they continued to make improper maintenance fee
19 payments. The PTO would consider the entity's status as large or small to be material. Because
20 the applicant thereby knew, or should have known, that the withheld information would be
21 material to the PTO, intent to deceive may be inferred.

22     74.  ~~69.~~ AB is entitled to a judicial declaration that the '341, '119, and '597 Patents are
23 unenforceable by Solexa. This judicial declaration is necessary and appropriate in order that AB
24 may ascertain its rights and duties with respect to the Patents.

25     **PRAYER FOR RELIEF**

26     WHEREFORE, AB prays for relief as follows:

27     1.    Actual, incidental, and consequential damages from Macevicz and Illumina,
28 together with interest, in an amount to be proven at trial;

14

1    2.   Punitive damages from Macevicz and Illumina according to proof;

2    3.   That the Court declare that AB is the true and proper owner of the Application, the
3    Patents, and the Foreign Patents and Applications;

4    4.   Injunctive relief, in the form of the imposition of a constructive trust and an order
5    directing Macevicz and Illumina to, at a minimum: (a) take all necessary steps to confirm and
6    restore ownership of the Patents and the Foreign Patents and Applications, including any patents
7    or patent applications that may still be pending or may yet issue based on the Application, to AB,
8    including a transfer of registration of Japanese Patent Application No. H08-531848 (Publication
9    No. JP H11-503908) and Japanese Patent Application H19-185093 to AB; (b) cease all use of any
10   information that they wrongfully took or received from AB, either directly or indirectly, (c)
11   identify and return to AB any other information, patents, or inventions made by Macevicz while
12   he was employed by AB that he has not previously disclosed and assigned to AB;

13   5.   An order for an accounting of all fees, royalties, or other compensation received by
14   Illumina based on the Patents, and imposing a constructive trust over any such fees, royalties, or
15   other compensation in favor of AB;

16   6.   That the Court declare the rights and duties of AB regarding infringement of the
17   '341 Patent, '119 Patent, or '597 Patent;

18   7.   That the Court declare the validity or invalidity of each of the asserted claims of
19   the '341 Patent, the '119 Patent, and '597 Patent.

20   8.   That the Court declare the enforceability or unenforceability by Solexa of the '341
21   Patent, the '119 Patent, and the '597 Patent.

22   9.   That the Court deem this case to be "exceptional" within the meaning of 35 U.S.C.
23   § 285 entitling AB to an award of its reasonable attorneys' fees and expenses in this action; and

24   10.  Any such additional and further relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

26   Pursuant to Federal Rule of Civil Procedure 38(b), Applied Biosystems demands a trial by
27   jury of all issues triable in this action.

28

15

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: ~~November 7, 2007~~_____, 2008 | MORRISON & FOERSTER LLP |
| 3 | | |
| 4 | | By:  /s/ Bryan Wilson<br>       Bryan Wilson |
| 5 | | Attorneys for Plaintiff |
| 6 | | APPLERA CORPORATION –<br>APPLIED BIOSYSTEMS GROUP |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

16

~~First~~SECOND AMENDED COMPLAINT
pa-~~1202429~~1241932
Case No. 07-CV-02845 WHA

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: Applied Biosystems an operating group of Applera Corporation. Applera Corporation has two classes of stock, Applera-Applied Biosystems stock and Applera-Celera stock. Applera-Applied Biosystems stock is listed on the New York Stock Exchange under the ticker symbol "ABI." Applera-Celera stock is listed on the New York Stock Exchange under the ticker symbol "CRA."

Dated: ~~November 7, 2007~~_____, 2008

MORRISON & FOERSTER LLP

By: /s/ Bryan Wilson
    Bryan Wilson

    Attorneys for Plaintiff
    APPLERA CORPORATION –
    APPLIED BIOSYSTEMS GROUP

Document comparison done by Workshare DeltaView on Tuesday, April 08, 2008 1:21:51 PM

| **Input:** | |
|---|---|
| Document 1 | PowerDocs://PALO ALTO/1202429/3 |
| Document 2 | PowerDocs://PALO ALTO/1241932/2 |
| Rendering set | standard |

| **Legend:** | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| **Statistics:** | |
|---|---|
| | Count |
| Insertions | 45 |
| Deletions | 26 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 71 |