KEVIN M. FLOWERS (admitted *pro hac vice*)
THOMAS I. ROSS (admitted *pro hac vice*)
JEFFREY H. DEAN (admitted *pro hac vice*)
JOHN R. LABBE (admitted *pro hac vice*)
CULLEN N. PENDLETON (admitted *pro hac vice*)
MARK H. IZRAELEWICZ (admitted *pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606-6357
(312) 474-6300 (telephone)
(312) 474-0448 (facsimile)
E-Mail: kflowers@marshallip.com
E-Mail: tross@marshallip.com
E-Mail: jdean@marshallip.com
E-Mail: jlabbe@marshallip.com
E-Mail: cpendleton@marshallip.com
E-Mail: mizraelewicz@marshallip.com

Counsel for Defendants
ILLUMINA, INC., SOLEXA, INC.,
and STEPHEN C. MACEVICZ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| APPLERA CORPORATION—APPLIED BIOSYSTEMS GROUP, a Delaware corporation,<br><br>Plaintiff/Counterdefendant,<br><br>- vs. -<br><br>ILLUMINA, INC., a Delaware corporation, SOLEXA, INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual,<br><br>Defendants/Counterclaimants. | Case No. 07-CV-02845 WHA<br><br>Honorable William H. Alsup<br><br>**SOLEXA'S OPPOSITION TO AB'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br>Date:   August 21, 2008<br>Time:  8:00 a.m.<br>Place:  Courtroom 9, 19th Floor |

1

## TABLE OF CONTENTS

2   I.    INTRODUCTION ................................................................................................. 1

3   II.   ARGUMENT ...................................................................................................... 3

4         A.    AB is not entitled to summary judgment of non-infringement of the
                '341 and '597 patents ............................................................................. 3
5
                1.    AB's arguments regarding "within each cycle" are wrong and
6                     cannot justify summary judgment ............................................... 5

7               2.    AB's arguments regarding the "identifying" limitation are
                      subject to material factual disputes that preclude summary
8                     judgment ........................................................................................ 6

9               3.    AB's arguments regarding the "target polynucleotide"
                      limitation are incorrect and are subject to material factual
10                    disputes that preclude summary judgment ................................. 13

11        B.    AB is not entitled to summary judgment of non-infringement of
                claim 1 of the '119 patent ................................................................... 20
12
      III.  CONCLUSION ................................................................................................ 25
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

*Cases*

3

*Abraxis Bioscience, Inc. v. Mayne Pharma Inc.,*
    467 F.3d 1370 (Fed. Cir. 2006)...............................................................22, 23

4

*Bateman v. Por-Ta Target, Inc.,*
    2004 U.S. Dist. LEXIS 28487 (N.D. Cal. July 28, 2004)...............................13

5

*Caterpillar Inc. v. Deere & Co.,*
    224 F.3d 1374 (Fed. Cir. 2000)........................................................................7

6

7

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,*
    469 F.3d 1005 (Fed. Cir. 2006)......................................................................20

8

*Dow Chem. Co. v. Sumitomo Chem. Co.,*
    257 F.3d 1364, 1380 (Fed. Cir. 2001)..............................................................5

9

10

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
    535 U.S. 722 (2002)...................................................................................18, 19

11

*Freedman Seating Co. v. Am. Seating Co.,*
    420 F.3d 1350 (Fed. Cir. 2005)................................................................20, 21

12

13

*Genentech, Inc. v. Chiron Corp.,*
    112 F.3d 495, 501 (Fed. Cir. 1997)..................................................................5

14

*Graver Tank & Mfg. Co. v. Linde Air Products Co.,*
    339 U.S. 605 (1950)...........................................................................20, 21, 22

15

16

*Linde Air Products Co. v. Graver Tank & Mfg. Co.,*
    86 F. Supp. 191, 199 (D. Ind. 1947)..............................................................21

17

*Moleculon Research Corp. v. CBS, Inc.,*
    793 F.2d 1261 (Fed. Cir. 1986)........................................................................6

18

19

*Norian Corp. v. Stryker Corp.,*
    432 F.3d 1356 (Fed. Cir. 2005)......................................................................18

20

*Pfizer, Inc. v. Teva Pharms. USA, Inc.,*
    429 F.3d 1364 (Fed. Cir. 2005)......................................................................25

21

22

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005)......................................................................14

23

*Sage Prods., Inc. v. Devon Indus., Inc.,*
    126 F.3d 1420 (Fed. Cir. 1997)................................................................22, 24

24

25

*Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.,*
    74 F.3d 1216 (Fed. Cir. 1996)........................................................................14

26

*Tanabe Seiyaku Co. v United States Int'l Trade Comm'n,*
    109 F.3d 726 (Fed. Cir. 1997).................................................................22, 23

27

28

1

*Varco L.P. v. Pason Sys. USA Corp.,*
    436 F.3d 1368 (Fed. Cir. 2006)....................................................................................... 14

2

*Warner-Jenkinson Co. v. Hilton-Davis Chem. Co.,*
    520 U.S. 17 (1997) ........................................................................................................ 25

3

4

*z4 Techs., Inc. v. Microsoft Corp.,*
    507 F.3d 1340 (Fed. Cir. 2007)......................................................................................... 6

5

*Rules*

6

Fed. R. Civ. P. 54(b) .............................................................................................................. 13

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SOLEXA'S OPPOSITION TO AB'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT;
CASE NO: 07-CV-02845 WHA**

1    **I.     INTRODUCTION**

2          This Court should deny AB's motion for partial summary judgment because AB's argu-

3    ments are either factually incorrect, legally incorrect, directed to legally irrelevant points, or sub-

4    ject to legitimate material factual disputes.

5          AB's first argument, that the SOLiD System does not infringe the '341 or '597 patents be-

6    cause it does not identify a base within each and every chemistry cycle, is legally incorrect and

7    legally irrelevant. To show literal infringement, Solexa does not have to prove that every cycle

8    performed by the SOLiD System infringes: because the claims are "open-ended" ("the method

9    comprising the steps of . . ."), Solexa only has to prove that there are cycles in which the SOLiD

10   System collects the information that determines the identity of a base in the target. That the cur-

11   rent SOLiD System also performs potentially non-infringing cycles is legally irrelevant: it is

12   hornbook patent law that an accused method does not avoid literally infringing a method claim

13   simply because it employs additional (non-infringing) steps, and infringement of a method claim

14   is not avoided merely because a non-infringing mode of operation is possible. AB's proposed in-

15   terpretation of the "within each cycle" language in the Court's claim construction of the "identify-

16   ing" limitation violates these indisputable legal principles and should be rejected.

17        AB's second argument, that its current SOLiD System does not identify a base within <u>any</u>

18   cycle because its software only identifies bases in the target after all of the chemistry steps are

19   completed, should be rejected because it is the subject of a legitimate material factual dispute be-

20   tween the parties. Admissions in AB's documents and the deposition testimony of its 30(b)(6) and

21   expert witnesses, along with the deposition and proposed trial testimony of defendants' expert Dr.

22   Backman, establish that there is a genuine issue of disputed material fact regarding when and how

23   the current SOLiD System determines the identity of a base in the target. The Court cannot grant

24   summary judgment for AB because it cannot resolve this disputed factual issue in AB's favor.

25        AB's third argument, that the SOLiD System does not infringe claim 1 of the '341 patent

26   because the primer used in the SOLiD System does not hybridize to the "target polynucleotide,"

27   should be rejected because construing "target polynucleotide" to exclude a known sequence such

28   as AB's "adapter" would require this Court to impermissibly limit the scope of the term to what

**SOLEXA'S OPPOSITION TO AB'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT;**
**CASE NO: 07-CV-02845 WHA**

**1**

the patent expressly describes as merely a preferred embodiment. Because there is no factual dispute as to where AB's primer hybridizes, the Court can and should resolve this issue of literal infringement by construing "target polynucleotide" consistent with its plain and ordinary meaning to include targets containing known sequences such as AB's "adapter." And even if the Court were to construe "target polynucleotide" to exclude such known sequences, the parties' factual dispute as to whether hybridization of AB's primer to its "adapter" is equivalent to hybridization to the recited "target polynucleotide" precludes summary judgment in AB's favor.

AB's final argument, that its oligonucleotide probes do not infringe claim 1 of the '119 patent under the Doctrine of Equivalents, should be rejected for two reasons. First, AB's argument that finding infringement by equivalence would "vitiate" the claim limitation reciting a specific chemical structure is contradicted by Supreme Court and Federal Circuit case law finding equivalence in cases involving substitutions of specific structures in chemical compounds. AB's arguments rely on Federal Circuit decisions dealing only with the "vitiation" doctrine in the context of simple mechanical devices and should be rejected because they are inapposite.

Second, AB's 30(b)(6) and expert witnesses already admitted in their depositions that both the phosphorothiolate structure in the SOLiD System oligonucleotide probes and the phosphoramidate structure recited in claim 1 function to link the 5' portion of a probe to the 3' portion of the probe. They also admitted that these structures perform this function by replacing the normal oxygen atom in a phosphodiester bond with either a sulfur atom (in AB's structure) or a nitrogen atom (in the recited structure), both of which result in a chemically cleavable linker that, upon cleavage, generates an extendable terminus. AB therefore cannot legitimately deny that its linker is equivalent to the linker in claim 1.

AB argues that the two linkers are not equivalent because different chemicals can be used to cleave those linkers. But any potential differences in the methods for cleaving the linkers are irrelevant to infringement of claim 1, because claim 1 does not say anything about cleavage of the linker or the use of the recited oligonucleotide probe in a method for sequencing. Because AB only argues that the linkers differ with regard to attributes that are not part of claim 1, its motion for non-infringement should be denied (and Solexa's motion for infringement should be granted).

SOLEXA'S OPPOSITION TO AB'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT;
CASE NO: 07-CV-02845 WHA

2

1    Alternatively, if the Court finds that the alleged differences in the function, way or result of the

2    linkers are material to infringement, the Court must deny AB's motion for summary judgment

3    and leave resolution of this factual dispute for trial.

4         For all these reasons, this Court should deny AB's motion for partial summary judgment.

5    ## II.    ARGUMENT

6    ### A.    AB is not entitled to summary judgment of non-infringement of the '341 and '597 patents

7         This Court held that "identifying" means "within each cycle determining the identity of a

8    base in the target polynucleotide."[1] In so doing, the Court specifically rejected a broader construc-

9    tion that would "include merely gathering information that could eventually be used to distinguish

10   between nucleotides even if insufficient to make a precise determination in the (b) to (e) cycle."[2]

11   Consequently, the Court's construction requires that, during the cycles that are accused of in-

12   fringement, the identity of a base in the target polynucleotide must be determined.

13        The identity of a base is "determined" when that identity is fixed: in other words, when

14   sufficient information is gathered to establish (within the limits of experimental error) that a base

15   in the target polynucleotide is either an A, G, C or T. AB's documents and the deposition testi-

16   mony of its Fed. R. Civ. P. 30(b)(6) and expert witnesses regarding infringement establish that the

17   SOLiD System does just that: it determines the identities of bases in the target polynucleotide

18   within successive cycles.

19        It is undisputed that during each and every cycle, the SOLiD System obtains a color image

20   (i.e., a picture) of each bead, which indicates the color of the label attached to the oligonucleotide

21   probe that hybridized to the target on that bead and was ligated to the primer. It also cannot be

22   disputed that in the current "two-base-encoding" version of the SOLiD System,[3] if the identity of

23   _____

     [1] Docket No. 133 at 16.

24
25   [2] *Id.* at 13. This was not Solexa's proposed construction for the "identifying" term: Solexa's proposed construction was "obtaining information sufficient to distinguish." Docket No. 82 at 19 ("Solexa proposes that 'identifying' be construed as "obtaining information sufficient to distin-

26   guish."").

27   [3] According to the unrefuted admissions in AB's documents and in the testimony of its 30(b)(6) and expert witnesses, a color signal alone precisely determines or fixes the identity of a

28   base in AB's previous "one-base-encoding" version of the SOLiD System. Knowing that the one-

**SOLEXA'S OPPOSITION TO AB'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT; CASE NO: 07-CV-02845 WHA**

1   one base in a dinucleotide pair has been determined, the color signal from the labeled probe inter-

2   rogating that dinucleotide pair fixes (determines) the identity of the other base.[4]

3       As Dr. Backman explains in his expert report, in both the previous and current two-base-

4   encoding versions of the SOLiD System, within each cycle in the final round of cycles, color sig-

5   nals are obtained for dinucleotide pairs in which the identity of one base in the pair has already

6   been determined. Consequently, during this final round of cycles, the color images of the beads

7   contain all of the information that is necessary and sufficient to identify the specific bases in the

8   target interrogated by each probe as either an A, C, G or T; in other words, that color information

9   fixes, or determines, the identity of those bases. On this basis, Solexa alleges that each and every

10  cycle in the final round of cycles satisfies the "identifying" limitation and infringes the claims.[5]

11      AB's arguments about when the SOLiD System's "software code" operates are either ir-

12  relevant to infringement of the "identifying" limitation or are evidence of a substantial disputed

13  issue of material fact. If, as Solexa maintains, "identifying" is complete when information is ob-

14  tained within the (b)-to-(e) cycle that is necessary and sufficient to precisely determine a base's

15  identity, then what the software subsequently does is irrelevant to infringement of the "identify-

16  ing" limitation.[6] If not, the unrefuted admissions in AB's documents and the testimony of the par-

17  _____

18  base-encoding SOLiD System infringed the '341 and '597 patents (*See* Transcript of 30(b)(6)
    Deposition of Applera Corporation - Applied Biosystems Group (May 20, 2008) at 160:15-
19  161:11 and AB00296964, -78 (submitted herewith as Exhs. 1 and 2, respectively, to Declaration
    of Cullen N. Pendleton in Support of Solexa's Opposition to AB's Motion for Summary Judg-
20  ment of Non-Infringement ("Pendleton Decl.")), AB tried but failed to "design around" those pat-
21  ents using a "two-base-encoding" system.

22      [4] Indeed, the SOLiD System uses this property of the two-base-encoding system to align color
    read sequences to a reference using the identity of the "1" position in the target polynucleotide
23  that was determined using a color read for the "0,1" position and the known identity of the "0"
    position, which is the last base of the adapter sequence. *See* Exh. 1 to Declaration of Keith C.
24  Backman in Support of Solexa's Opposition to AB's Motion for Summary Judgment ("Backman
    Decl.") at ¶¶ 170-193.
25
    [5] Backman Decl., Exh. 1 at ¶¶ 181-193.
26
    [6] While precise identification of bases does not occur within cycles where the color call is in-
27  accurate, at most 5% of the reads in any cycle are misidentified, given the 95-98% accuracy rate
    of the SOLiD System color calls. (Docket No. 210-2 at ¶ 56.) The other 95% of the time, the
28  color call is accurate, which means the identity of the base is determined.

**SOLEXA'S OPPOSITION TO AB'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT;**
**CASE NO: 07-CV-02845 WHA**

1    ties' witnesses establish that there is a material issue of fact regarding whether the "identifying"

2    limitation is satisfied by AB's two-base-encoding method, and the Court must leave resolution of

3    this dispute for trial. In either case, summary judgment of non-infringement is inappropriate.

### 1.    AB's arguments regarding "within each cycle" are wrong and cannot justify summary judgment

6    AB first argues that the two-base-encoding versions of the SOLiD System[7] do not infringe

7    because they do not identify a base in the target polynucleotide within "each" (*i.e.*, each and

8    every) cycle. As explained above, Solexa alleges that in the SOLiD System, each of the cycles

9    during the final round of cycles satisfies the "identifying" limitation. Seizing on the "within *each*

10   cycle" language in the Court's claim construction for "identifying," AB argues that unless *every*

11   cycle performed by the SOLiD System infringes, *none* of them do. AB's argument fundamentally

12   misunderstands the significance of the Court's construction and the legal test for infringement,

13   and therefore cannot provide a basis for summary judgment.

14   The flaw in AB's argument is apparent from the claim language itself. The asserted claims

15   of the '341 and '597 patents are written using the open-ended term "comprising" ("A method, . . .

16   the method comprising the steps of . . ."), which "is a term of art used in claim language which

17   means that the named elements are essential, but other elements may be added and still form a

18   construct within the scope of the claim."[8]

19   AB cannot avoid infringement simply because the SOLiD System performs some cycles

20   during which a base is not identified. As a matter of law, an accused method "does not avoid lit-

21   erally infringing a method claim having the transitional phrase 'which comprises' (or 'compris-

22   ing') simply because it employs <u>additional</u> steps"[9] or because a non-infringing mode of operation

---

23

24   [7] AB has not moved for summary judgment that the one-base-encoding format of the SOLiD System does not infringe claim 1 of the '597 patent.

25   [8] *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997). *See also Dow Chem.*
26   *Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1380 (Fed. Cir. 2001) ("It is fundamental that the use of ['which comprises'] as a transitional phrase does not exclude additional unrecited elements, or
27   steps in the case of a method claim." (citations omitted)).

28   [9] *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986).

---

1  is possible.[10] The Court's claim construction cannot be interpreted to change these fundamental

2  legal principles. Solexa need not prove that each and every cycle of the SOLiD System infringes;

3  all Solexa need show is that the SOLiD System performs cycles that satisfy steps (b) to (e) of

4  claim 1 of the '341 patent.

5          There is ample evidence to support Solexa's infringement contentions regarding the two-

6  base-encoding versions of the SOLiD System and therefore preclude summary judgment. Solexa

7  contends that the two-base-encoding versions of the SOLiD System identify a base within each

8  cycle of the fifth round of cycles. Dr. Backman testified that the two-base-encoding versions of

9  the SOLiD System "determine the identity of bases in the target polynucleotide within each cy-

10 cle" during the final round,[11] and explained how and why in great detail in his expert report.[12] Dr.

11 Backman's testimony is competent evidence upon which a reasonable jury could find that the cy-

12 cles of the fifth round infringe the '341 and '597 patents. Whether the SOLiD System performs

13 other, non-infringing cycles is legally irrelevant.

> **2.      AB's arguments regarding the "identifying" limitation are subject to material factual disputes that preclude summary judgment**

16         AB seeks partial summary judgment of non-infringement based on its assertion that the

17 two-base-encoding versions of the SOLiD System do not infringe because they only gather "par-

18 tial information within each cycle that it combines with information gathered during all of the cy-

19 cles and then uses alignment to a reference to determine the identity of the bases only after all cy-

20 cles have concluded."[13]

---

22 [10] *z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1350 (Fed. Cir. 2007).

23 [11] Pendleton Decl., Exh. 3 (Transcript of Deposition of Keith C. Backman, Ph.D. (June 27, 2008) ("Backman Dep. Tr.") at 82:11-15.

24 [12] Backman Decl., Exh. 1 at ¶¶ 170-193.

25 [13] Docket No. 207 at 2.

1    The record thus far contains substantial evidence that, when credited by the fact-finder,[14]

2    establishes that the identity of a base is determined (fixed) during the final cycles performed by

3    the SOLiD machine, prior to and independent of the subsequent software analyses. As Dr. Back-

4    man indicates in his expert report and declaration and has testified in his deposition, a color call

5    performed by the SOLiD System unequivocally identifies a base in an interrogated dinucleotide

6    pair as long as the identity of the other base in that pair has been determined.[15] When the first

7    base in the dinucleotide pair interrogated by the probe has already been identified, there can be no

8    legitimate dispute that the "color call" for that probe fixes (which is to say determines) the iden-

9    tity of the other base. Even if the software used in the two-base-encoding version of the SOLiD

10   System were never used to translate the 1's and 0's which represent the color calls in the com-

11   puter memory into the other 1's and 0's (and later, letters) representing the bases, the SOLiD Sys-

12   tem would still infringe because the identities of the bases in the target are determined by the col-

13   ors obtained from each bead during each cycle in the fifth round of cycles.

14   Contrary to AB's assertion, Dr. Backman did not "acknowledge" that the SOLiD System

15   determines the identity of a base in the target polynucleotide using its software, only that the

16   software translates information "from one form to another in the machine."[16] Indeed, Dr. Back-

17   man testified that the software is not needed to determine the identities of the bases: "[The SOLiD

18   System] determines the identity of the base, as I pointed out, when it gathers the information that

19   necessarily results in this output. Then it's determined."[17] As Dr. Backman explained, the two-

20   base-encoding versions of the SOLiD System determine the identity of bases in the target

21   by virtue of obtaining that information which is sufficient to determine the iden-
22   tity. In other words, as -- as we talked about, when the 0, 1 position was queried,

23   [14] In evaluating AB's motion, Solexa's proffered evidence must be accepted, along with all
24   reasonable inferences. *See, e.g., Caterpillar Inc. v. Deere & Co.*, 224 F.3d 1374, 1379 (Fed. Cir.
     2000) ("When ruling on a motion for summary judgment, all of the nonmovant's evidence is to be
25   credited, and all justifiable inferences are to be drawn in the nonmovant's favor.").

     [15] Pendleton Decl., Exh. 3 (Backman Dep. Tr.) at, e.g., 82:17-83:8, 92:20-93:2; 94:18-95:11;
26   98:5-99:22; and 104:11-17; Backman Decl., Exh. 1 at ¶¶ 170-193.

27   [16] Pendleton Decl., Exh. 3 (Backman Dep. Tr.) at 84:14-16.

28   [17] *Id.* at 85:14-17.

**SOLEXA'S OPPOSITION TO AB'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT;
CASE NO: 07-CV-02845 WHA**

1  because the 0 position was known, the 1 position was determined. Now, having the
2  1 position determined, when you go to the final round and you query 1, 2, when
   you get the result of the query of 1, 2, the 1 position having already been deter-
3  mined, determines the identity of 2. And you've already queried 2, 3, so the 2 posi-
   tion being determined, determines the identity of 3. And you've already queried 3,
4  4, so the 3 position being determined, determines the identity of 4. And then you
   go into the next cycle of ligation where you query 4, 5, and so on. It's like a string
5  of dominos falling.[18]

6      As Dr. Backman further explained, the determination of the identity of the bases in the tar-

7  get polynucleotide is not dependent on the operation of the software, but rather on when the color

8  image corresponding to the "0,1" position is obtained:

9      You know, the identity of certain bases is determined when the 0,1 query is made.
10     Now, if you or the machine or ABI chooses not to look at that until some later
       date, I can't stop them from doing that, but it doesn't change the fact that the iden-
11     tity of the base has been determined.[19]

12     Dr. Backman's opinion is supported by the testimony of AB's witnesses. For example,

13 AB's Fed. R. Civ. P. 30(b)(6) witness regarding infringement, Dr. Gina Costa, admitted that dur-

14 ing each cycle the two-base-encoding SOLiD System obtains and records color images represent-

15 ing dinucleotide pairs prior to the cleavage step, i.e., "within each cycle,"[20] and the last base of

16 the adapter sequence, which is position "0" of the target polynucleotide, is always known before

17 the process begins, is recorded as a constant in the SOLiD System software, and is prepended to

18 every color space sequence.[21]

19     Dr. Backman's testimony is also supported by numerous AB documents, which show that

20 when the fifth round begins, either the "0,1" position has already been read[22] or it is read during

21

22     [18] *Id.* at 82:17-83:8.

23     [19] *Id.* at 104:11-17

24     [20] Pendleton Decl., Exh. 1 at 56:18-57:18.

25     [21] Pendleton Decl., Exh. 1 at 118:5-123:8 and Exh. 4 at AB00001004-5, -1007, -1026 (estab-
   lishing that the last base of the adapter is always either G (for the "R3" primer or "tag") or T (for
26 the "F3" primer), and that the last base of the adapter is prepended to every color space se-
   quence).

27     [22] In the SOLiD System Version 2.0, the "0,1" position is read in ligation cycle 1 of primer
28 round 2. *See* Docket No. 207-3 (Appendix A, Figure 2).

**SOLEXA'S OPPOSITION TO AB'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT;
CASE NO: 07-CV-02845 WHA**

the first cycle in that round.[23] Because the "0" position is known, the color call for the "0,1" position does not represent four possibilities, but only one: in other words, the identity of the base at the "1" position has been determined by the color call. In these documents, AB's scientists said such things as "Fix one base, determines all other bases • Reference sequence or primer can determine sequence";[24] "To decode the bases you **must** know **one** of the bases in the sequence";[25] "If [you] know first base is an A then immediately it decodes 2nd base. This must be an A as Blue translates 2nd base A if first base A";[26] "In practice, one or more bases will be know [sic: known] primer sequence, which is enough information to resolve the 4-fold ambiguity";[27] "as soon as one base is identified, the entire sequence becomes known";[28] "sequence remains unknown unless you know the vector base or perform alignment in color space";[29] and "sequence remains unknown unless you know the vector base."[30]

All of AB's arguments about the operation of the software are irrelevant because the color calls made during the cycles, rather than the subsequent software processing, are sufficient to determine the identities of bases in the target. None of the subsequent software processing steps, e.g., determining where in a reference sequence the target sequence is located, is necessary to "determine the identity of a base in the target polynucleotide." Indeed, in its motion, AB admits that the identity of the "1" position in the target polynucleotide which is determined within a cy-

---

[23] In the original SOLiD System, the 0,1 position was read in cycle 1 of round 2. *Id.*

[24] Pendleton Decl., Exh. 5 at AB00132635.

[25] Pendleton Decl., Exh. 6 at ILL050369 (emphasis in original).

[26] *Id.* at ILL050371 (emphasis added). Indeed, even now, there is a "webinar" available on AB's website that makes this point. *See* "Webinar: Two Base Encoding" by Dr. Rhodes (available at http://marketing.appliedbiosystems.com/mk/get/SOLID_KNOWLEDGE_LANDING under the "Webinars" tab; last visited July 31, 2008).

[27] Pendleton Decl., Exh. 7 at AB00140260. Another AB document states that "[t]o assign a base for any position, you must read color signal for that position and know another base in the sequence" (Pendleton Decl., Exh. 8 at AB00133131), and "[i]f you know ONE base in the sequence, you can determine the sequence." (*Id.* at AB00133136-7).

[28] Pendleton Decl., Exh. 9 at AB00121770 (emphasis added).

[29] Pendleton Decl., Exh. 10 at AB00121858.

[30] Pendleton Decl., Exh. 11 at AB00131911.

---

**SOLEXA'S OPPOSITION TO AB'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT; CASE NO: 07-CV-02845 WHA**

cle is necessary to confirm alignments of the color reads to the reference sequence.[31] The User

Guide for the SOLiD System states the same thing,[32] as admitted by AB's expert, Dr. Metzker.[33]

Rather than being determined by aligning the color reads of the target to the reference sequence,

the identity of the "1" position is determined by the color call for the "0,1" position, which can

only have one possible meaning because the "0" position is already determined. The SOLiD Sys-

tem software may later convert numbers representing colors to letters indicating bases, but it does

not "determine" the identity of the base at the "1" position: that was already determined by the

color call in light of the encoding scheme and the identity of the base at the "0" position.

Contrary to AB's assertion, Dr. Backman's opinions do not conflict with the Court's claim

construction. Dr. Backman's opinions do not rely on Solexa's original proposed claim construc-

tion. To the contrary, Dr. Backman expressly relied on the Court's construction in rendering his

opinion regarding the specific cycles during which the information is obtained that precisely de-

termines the identities of successive bases in the target.[34]

AB also mischaracterizes Dr. Backman's statements regarding "machine error."[35] As Dr.

Backman explained at his deposition:

> A. People know things --
> Q. Okay.
> A. -- machines don't know things.
> Q. So the machine determines.
> A. Well, information determines. The machine generates information, and the in-
> formation, if it's sufficient, determines. And by determine, I mean that the infor-
> mation cannot possibly -- will result in one output and cannot possibly result in
> any other output, outside of machine error or something like that.[36]

---

[31] Docket No. 207 at n.7.

[32] Pendleton Decl., Exh. 4 at AB00001007-1008 and AB00001010 (describing color-code scheme used in two-base-encoding SOLiD System and determining the identity of the 1 position using the 0,1 color call and the identity of the 0 position).

[33] Pendleton Decl., Exh. 12 (Transcript of Deposition of Michael Metzker (June 24, 2008)) at 30:2-38:5.

[34] Backman Decl., Exh. 1 at ¶ 159; Pendleton Decl., Exh. 3 (Backman Dep. Tr.) at 77:20-78:25.

[35] Docket No. 207 at 13.

[36] Pendleton Decl., Exh. 3 (Backman Dep. Tr.) at 86:10-20.

**SOLEXA'S OPPOSITION TO AB'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT; CASE NO: 07-CV-02845 WHA**

1  Immediately before this comment, Dr. Backman described the operation of the SOLiD software

2  in general terms as:

3       just a set of rules. But what I do know is that if you start with a given set of infor-
         mation at the beginning, you get the same output at the end. If you take that same

4       set of starting information and you push it through the software 50 times, a hun-
         dred times, a thousand times, it comes out with the same answer at the end every

5       time.[37]

6  In context, therefore, Dr. Backman was referring to "machine error" with regard to the SOLiD

7  System's translation of information from one form to another, not to errors in sequencing chemis-

8  try. Dr. Backman's opinions expressly rely upon the Court's claim construction, have ample fac-

9  tual basis in admissions from AB's own documents, are legally sound, and must be credited. At

10  the very least, Dr. Backman's testimony (AB's mischaracterization of it notwithstanding) estab-

11  lishes that there is a genuine issue of material fact as to when and how the two-base-encoding

12  versions of the SOLiD System determine the identity of a base in the target polynucleotide.

13       AB's argument that "the SOLiD System interrogates the 0, 1 position not to decode that

14  particular position at that time, it does so to interrogate position 1 twice"[38] is both irrelevant and

15  misleading. The "purpose" of interrogating the "0,1" position is irrelevant: it is the <u>result</u> of inter-

16  rogating the "0,1" position, regarding which the parties have a genuine dispute of material fact,

17  that matters here. AB's argument is also misleading because the reading of the "0,1" position –

18  and the concomitant determination of the identity of the base at the "1" position – is critical for

19  the function of the SOLiD System's "alignment" software. As AB's documents show, a series of

20  color calls alone cannot be unambiguously resolved into a series of bases. For example, a series

21  of "blue" color calls might represent a series of As, a series of Cs, a series of Gs, or a series of Ts

22  in the target, because AA, CC, GG, and TT are all encoded by the color blue in the two-base-

23  encoding system. Using the colors alone, there is no way to tell what the sequence is.[39] But be-

24

25  _____

26     [37] *Id*. at 84:20-85:2.

       [38] Docket No. 207 at 14.

27     [39] Pendleton Decl., Exh. 12 (Metzker Dep. Tr.) at 54:7-55:14 and Pendleton Decl., Exh. 6 at
28  ILL050370.

**SOLEXA'S OPPOSITION TO AB'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT;**
**CASE NO: 07-CV-2845 WHA**

1  cause the "0" position is known, the ambiguity is instantly resolved (e.g., if "0" is an A, all of the

2  bases are determined to be As).[40] Under the two-base-encoding system, moreover, any series of

3  color calls could represent any of four possible sequences of nucleotides.[41] The actual sequence of

4  bases represented by the colors can only be unambiguously resolved if one of the bases is

5  known.[42] The SOLiD System performs this function by reading the 0,1 position: because the "0"

6  position is already known, the color call for the 0,1 position determines the identity of the base at

7  the "1" position and so eliminates the ambiguity. This principle of the two-base-encoding system

8  applies not just to the 0,1 position, but to ANY dinucleotide pair: with a color call and the identity

9  of one base, the identity of the other base of the pair is determined.[43]

10      In sum, the parties have a material dispute with regard to the effect of interrogating the 0,1

11  position: AB contends it serves no purpose other than "double interrogation," while Solexa con-

12  tends, with support from AB's documents and other evidence, that interrogating the 0,1 position

13  determines the identity of the "1" position and, by the same logic, the identity of the previously-

14  obtained color calls for the "1,2," "2,3," "3,4," and "4,5" positions. This material dispute pre-

15  cludes summary judgment.[44]

16      AB admits that the substance of Dr. Backman's opinion is true, i.e., "[i]n principle, it is

17  possible to convert data from color space to the corresponding nucleotides or 'base space' with

18  knowledge of the identity of any base in the read."[45] Thus, even under AB's theory, colors deter-

19

20      [40] Pendleton Decl., Exh. 12 (Metzker Dep. Tr.) at 55:15-57:20 and Pendleton Decl., Exh. 6 at
ILL050371-72.

21      [41] Pendleton Decl., Exh. 6 at ILL050371.

22      [42] Id. at ILL050369; see also Pendleton Decl., Exh. 12 (Metzker Dep. Tr.) at 57:24-61:24.

23      [43] Backman Decl., Exh. 1 at ¶¶ 181-193.

24      [44] AB mischaracterizes Solexa's arguments in an attempt to obscure the factual dispute be-
tween the parties. AB characterizes Solexa's arguments using terms like "serial decoding" and

25  "tracing back" in quotation marks, suggesting that these terms were used by Dr. Backman or
Solexa. In fact, neither of these phrases were ever used by Dr. Backman or Solexa. It was AB's

26  counsel who used such terms. See, e.g., Pendleton Decl., Exh. 3 (Backman Dep. Tr.) at 99:4-22
("A: Tracing back isn't – isn't really what's important – or I don't even quite understand what

27  tracing back means.").

28      [45] Docket No. 207 at 14-15.

mine the identity of a base whenever the identity of any adjacent base has been determined. Because the identity of the last base of the adapter sequence is always known in the SOLiD System method, color calls for adjacent dinucleotides represent not four possibilities, but one.

AB's arguments regarding the "serial error problem,"[46] even if true, do not justify summary judgment. Because the claims do not recite any "error rate" limitation, the error rates for determining the identities of bases using the SOLiD System are irrelevant to infringement. The claims only require that the recited steps be repeated until "a sequence of nucleotides in the target polynucleotide is determined" or until "a sequence of nucleotides is determined." The claims do not require that the entire sequence of the target polynucleotide be determined. Solexa need only prove by a fair preponderance of the evidence that the SOLiD System determines the identities of a series of nucleotides in the target polynucleotide. There can be no genuine factual dispute that this is more likely than not: even accepting AB's error rate of 95% per position, successive readings of the "0,1" and "1,2" positions accurately determines the sequence of the nucleotides at positions 1 and 2 over 90% of the time.

It is evident that the parties strongly disagree as to when and how the identity of a base in the target polynucleotide is determined. The Court cannot grant summary judgment in favor of AB without resolving the dispute as to this factual issue in favor of AB, which is prohibited on a motion for summary judgment.

> ### 3.    AB's arguments regarding the "target polynucleotide" limitation are incorrect and are subject to material factual disputes that preclude summary judgment

AB incorrectly argues that Solexa seeks to reargue the Court's construction of "target polynucleotide." Although the Court discussed this term in its Claim Construction Order, the Court did not formally construe the term (this was <u>not</u> one of the six terms for which construction was requested). Moreover, even if the Court considers the comments in its Order to constitute a

---

[46] *Id*. at 15.

1  construction of the term, it "has discretion to review the claims construction at any time before

2  final adjudication."[47]

3      In any event, AB's argument that the SOLiD System does not infringe claim 1 of the '341

4  patent because the primer used in the SOLiD System does not hybridize to the "target polynucleo-

5  tide" should be rejected because construing "target polynucleotide" to exclude a known sequence

6  such as AB's "adapter" would require this Court to impermissibly limit the scope of the term to

7  what is expressly described in the specification as merely a preferred embodiment.[48]

8      As Dr. Backman states in his expert report, the term "target polynucleotide" should be

9  construed to mean "a polynucleotide that contains the nucleotide sequence information to be ob-

10  tained."[49] Under this construction, a "target polynucleotide" may contain other nucleotide se-

11  quences, such as binding regions[50]

12      As Dr. Backman explains,[51] this construction is consistent with the use of the term in the

13  specification and, based on his experience, with its use in the art when the original patent applica-

14  tion was filed in 1995. The specification's "Definitions" section describes target polynucleotides

15  as being polynucleotides from which sequence information is obtained.[52] The specification never

16  ────────────────

17  [47] *Bateman v. Por-Ta Target, Inc.*, 2004 U.S. Dist. LEXIS 28487 (N.D. Cal. July 28, 2004) (*citing* Fed. R. Civ. P. 54(b)). *See also Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*, 74

18  F.3d 1216, 1221 (Fed. Cir. 1996) (stating that because a claim construction order is interlocutory, "[d]istrict courts may engage in a rolling claim construction, in which the court revisits and alters

19  its interpretation of the claim terms as its understanding of the technology evolves").

20  [48] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (the Federal Circuit has "re-peatedly warned against confining the claims to [specific] embodiments"); *see also Varco L.P. v.*

21  *Pason Sys. USA Corp.*, 436 F.3d 1368, 1375 (Fed. Cir. 2006) (reversing district court for constru-ing claims to include limitations found only in the description of a preferred embodiment).

22  [49] AB asserts that "Dr. Backman's 'expert opinion' on this legal issue tracks Illumina's claim

23  construction briefing word for word" (Docket No. 206 at n.10) and that he "repeats Illumina's legal argument" (*Id.* at 18). This is simply not true. Dr. Backman agrees with Solexa's proposed

24  claim construction "word for word," but his reasoning supporting that construction is his own. *Compare* Docket No. 100 (Solexa Reply Claim Construction Brief) at 8-11, *and* Backman Decl.,

25  Exh. 1 at ¶¶ 128-139.

26  [50] Backman Decl., Exh. 1 at ¶ 129.

27  [51] *Id.* at ¶ 130.

28  [52] Docket No. 206-2 ('341 Patent) at col. 3, lines 53-60 (defining "determining a nucleotide sequence" and other terms as including a range of levels of information "about a target polynu-

1    says that a "target polynucleotide" can only include unknown sequence or excludes known se-

2    quences, so the term should not be so construed.

3        Further support for this proposed construction is found in the specification's description of

4    the amplification of target polynucleotides using standard cloning and PCR techniques.[53] Accord-

5    ing to Dr. Backman, one of ordinary skill in the art in 1994-95 would have understood that these

6    techniques involve the addition of known nucleotide sequences, such as PCR primer binding

7    sites, multiple-cloning sites and other sequences to the DNA to be sequenced.[54] Because the '341

8    patent does not teach one of ordinary skill that any of these types of sequences have to be re-

9    moved in order to practice the inventions, one of ordinary skill would have expected that such

10   known sequences would remain part of the "target polynucleotide." Other examples in the speci-

11   fication, such as the description of the preparation of target polynucleotides "which permit at-

12   tachment to magnetic beads, or other solid supports, for ease of separating the target polynucleo-

13   tide from other reagents used in the method,"[55] also support Solexa's proposed construction. The

14   specification also teaches that the sequence of known DNA can be "determined."[56] One of ordi-

15   nary skill in the art would not have believed that sequence information could only be "deter-

16   mined" from an unknown or partially known sequence.[57] Thus, as Dr. Backman concludes, the

17   term "target polynucleotide" can encompass targets comprising unknown, partially known, and

18   fully known sequences.

19       Dr. Backman's conclusion is consistent with his experience in the field and understanding

20   of how terms were used by those of ordinary skill in molecular biology in 1994-95. As Dr. Back-

21   man explains, linking the target polynucleotide to a binding region of known sequence is advan-

22   _____

23   cleotide").

24   [53] *Id.* at col. 8, lines 19-31.

25   [54] *Id.* at col. 8, lines 32-35; *see also* Backman Decl., Exh. 1 at ¶ 131.

     [55] Docket No. 206-2 at col. 15, lines 9-28.
26
     [56] Backman Decl., Exh. 1 at ¶¶ 131-34; Gene 33(1):103-19 (1985) (previously submitted as
27   Docket No. 101-2); Docket No. 206-2 ('341 Patent) at col. 16, lines 44-45, col. 18, lines 16-17.

28   [57] Backman Decl., Exh. 1 at ¶¶ 134-35.

**SOLEXA'S OPPOSITION TO AB'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT;
CASE NO: 07-CV-02845 WHA**

1  tageous because it allows predesigned initializing oligonucleotides to be used in the claimed

2  method.[58]

3       As AB points out, Dr. Backman disagrees with the Court's statement that the use of the

4  term "target polynucleotide" in claim 1 represents a "drafting error." It appears that the Court's

5  comments were based on the premise that the specification's description of a preferred embodi-

6  ment, in which a "target polynucleotide" and a separate, known "binding region" are combined to

7  form a "template," limits the scope of claim 1. Such a conclusion is unwarranted. The specifica-

8  tion clearly states that "the invention is not meant to be limited by the particular features of [the]

9  embodiment [in Fig. 1]," which describes a preferred embodiment where a template "comprising

10  a polynucleotide (50) of unknown sequence and binding region (40) attached to a solid phase

11  support (10)."[59] The specification also states that "[p]referably, a target polynucleotide is conju-

12  gated to a binding region to form a template . . . ."[60] The necessary implication of the word "pref-

13  erably" is that the description following it is one of a plurality of options, not the only option. One

14  of ordinary skill in the art reading the specification and claim language would not have concluded

15  that the claim was limited to this preferred embodiment.[61]

16       One of ordinary skill in the art would have understood that the claimed methods are not

17  limited to the preferred embodiments described in the specification. The pre-designed binding

18  region and complementary initializing oligonucleotides are comparatively useful, and hence pref-

19  erable, but not indispensable, in the practice of the invention. One of ordinary skill in the art

20  would have understood that, alternatively, the claimed method could be practiced on a target

21  polynucleotide after partial sequence information was obtained (perhaps by some other method)

22  to allow design of one or more complementary initializing oligonucleotides.[62]

23

24  ─────────────

[58] *Id.* at ¶ 138.

25  [59] Docket No. 206-2 at col. 4, lines 44-48.

26  [60] *Id.* at col. 8, lines 8-9.

27  [61] Backman Decl., Exh. 1 at ¶¶ 137 and 139.

28  [62] *Id.* at ¶ 139.

**SOLEXA'S OPPOSITION TO AB'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT;**
**CASE NO: 07-CV-02845 WHA**

1    Because there is no factual dispute as to where AB's primer hybridizes, the Court can and

2    should resolve the issue of literal infringement by construing "target polynucleotide" consistent

3    with its plain and ordinary meaning to include targets containing known sequences such as AB's

4    "adapter." And even if the Court were to construe "target polynucleotide" to exclude such known

5    sequences, the parties' factual dispute as to whether hybridization of AB's primer to its "adapter"

6    is equivalent to hybridization to the recited "target polynucleotide"[63] precludes summary judg-

7    ment in AB's favor.

8    AB next argues that Dr. Backman is making a "new argument about 'bridge probes' used

9    in the latest version of the SOLiD System."[64] Dr. Backman's testimony establishes that the so-

10   called "bridge probes" are not "extension oligonucleotide probes" as that term is used in the pat-

11   ents-in-suit because they are not labeled and do not perform the function of a "extension oligonu-

12   cleotide probe."[65] One of ordinary skill reading the specification of the patents-in-suit would

13   agree with Dr. Backman.[66]

14   AB's "bridge probes" are oligonucleotides, but they are not the oligonucleotide "probes"

15   recited in the claims. Thus, contrary to AB's attorney argument, ligation of the "bridge probes" to

16   the end of the primers does not satisfy the limitation in step (b) of "ligating an extension oligonu-

17   cleotide probe to said extendable probe terminus, to form an extended duplex containing an ex-

18   tended oligonucleotide probe." Rather, ligation of the bridge probes is simply part of the forma-

19

20   [63] Compare *id.* at ¶ 146 *and* Docket No. 211-2 at 22-23.

21   [64] AB's characterization of this as a "new argument" that was "not disclosed in Illumina's
     [sic: Solexa's] Final Infringement Contentions" is misleading. Solexa knew nothing of AB's use

22   of "bridge probes" in the latest version of the SOLiD System until AB produced its "User Guide"
     for this new version in May, long after Solexa's final infringement contentions were served in

23   March.

24   [65] Pendleton Decl., Exh. 3 (Backman Dep. Tr.) at 121:13-125:19.

25   [66] *See, e.g.*, Docket No. 206-2 ('341 Patent) at, e.g., col. 3, lines 7-10 ("During each cycle, the
     identity of one or more nucleotides in the template is determined by a label on, or associated with,

26   a successfully ligated oligonucleotide probe."); col. 6, lines 8-10 ("[T]he probe should possess a
     signaling moiety that permits the acquisition of sequencing information relating to the template

27   after a successful ligation."); and Figs. 1-4 and Example 2 (each describing in the accompanying
     text a "probe" as having an associated label).

28

**SOLEXA'S OPPOSITION TO AB'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT;
CASE NO: 07-CV-2845 WHA**

1    tion of the "initializing oligonucleotide" in ligation rounds 3, 4, and 5 of the two-base-encoding

2    SOLiD System method, as explained by Dr. Backman in his expert report.[67] Notably, the initializ-

3    ing oligonucleotide so formed is hybridized to the target polynucleotide (which includes portions

4    of both the "adapter" and the DNA to be sequenced), as recited in step (a) of claim 1 of the '341

5    patent, and is then ligated to the first "extension oligonucleotide probe," which is one of the la-

6    beled two-base-encoding probes, thus satisfying the Court's construction as "the oligonucleotide

7    to which the first extension oligonucleotide probe is first ligated."

8         AB offers attorney argument in an attempt to refute Dr. Backman's expert opinions about

9    bridge probes, citing three paragraphs in Dr. Costa's declaration. At the very least, AB's dis-

10   agreement with Dr. Backman creates a genuine issue of material fact as to whether the "bridge

11   probes" are "extension oligonucleotide probes," and thus precludes summary judgment regarding

12   whether the latest version of the SOLiD System literally infringes the "target polynucleotide"

13   limitation.

14        AB argues that if "target polynucleotide" is construed to exclude known sequences such

15   as AB's adapter, Solexa is precluded from asserting that the SOLiD System infringes this limita-

16   tion under the Doctrine of Equivalents, because "polynucleotide" was changed to "target polynu-

17   cleotide" during prosecution of the '341 patent.[68] That is not correct. As *Festo Corp. v. Shoketsu*

18   *Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722 (2002), makes clear (but which is barely mentioned

19   in the primary case AB relies on, *Norian Corp. v. Stryker Corp.*, 432 F.3d 1356 (Fed. Cir. 2005)),

20   even where a patentee narrowed a claim limitation for a reason relating to patentability, such that

21   a presumption arises that the Doctrine of Equivalents is not available regarding that limitation,

22   that presumption can be overcome if the patentee can show that any one of three exceptions ap-

23   ply. These exceptions are where (i) the equivalent was "unforeseeable at the time of the applica-

24   tion"; (ii) "the rationale underlying the amendment" bore "no more than a tangential relation to

25

26

---

27        [67] Backman Decl., Exh. 1 at ¶¶ 144, 187, 193.

28        [68] Docket No. 206 at 19-20.

**SOLEXA'S OPPOSITION TO AB'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT;
CASE NO: 07-CV-02845 WHA**

1    the equivalent in question"; and (iii) there was "some other reason suggesting that the patentee

2    could not reasonably be expected to have described the insubstantial substitute in question."[69]

3          The *Festo* presumption does not apply here because (a) the term "polynucleotide" was not

4    amended for a reason relating to patentability, and (b) the rationale underlying the amendment of

5    "polynucleotide" bore <u>no</u> relation to the equivalent in question, AB's "adapter." Contrary to AB's

6    assertion,[70] in the Office Action of April 16, 1996, the Examiner never rejected the term "polynu-

7    cleotide" as indefinite.[71] Indeed, the term "polynucleotide" was never mentioned anywhere in

8    discussing the rejections for indefiniteness. Rather, the indefiniteness rejections were directed to

9    "what limitations are involved in the identifying step[s] (b) [and (e)]," "by what mechanism . . .

10   the identifying is to be carried out," and "whether ["said extended duplex"] refers to the extended

11   duplex produced in step (a) . . . or that produced in the extending of the oligonucleotide probe af-

12   ter the identifying step."[72] Therefore, when the claim was subsequently amended to change

13   "polynucleotide" to "target polynucleotide," it was not to overcome any indefiniteness rejection.

14         Moreover, the "rationale" for changing "polynucleotide" to "target polynucleotide" was

15   not related in <u>any</u> way to the equivalent in question here (AB's "adapter"). In the October 16,

16   1996 "Amendment," under the "Remarks" and "Rejections under 35 U.S.C. § 112, Second Para-

17   graph" headings, in which the applicant explained the rationales underlying the various amend-

18   ments to the pending claims, there is <u>no</u> discussion of the change of "polynucleotide" to "target

19   polynucleotide" (or of the terms "binding region" or "template").[73] Indeed, the terms "target

20   polynucleotide," "binding region," and "template" are <u>never</u> mentioned in any of these explana-

21   tory remarks. Given that the Examiner's rejections of the claims certainly had nothing to do with

22   the purported "binding region" equivalent in question here, there can be no dispute that the "ra-

23   tionale" underlying the amendment of the term bore <u>no</u> relation to the equivalent in question here.

---

24      [69] *Festo*, 535 U.S. at 740-741.

25      [70] *Id*. at 20.

26      [71] *See* Docket No. 212-5 at 3-4.

27      [72] *Id*.

28      [73] *See* Docket No. 212-6 at 7-8.

**SOLEXA'S OPPOSITION TO AB'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT; CASE NO: 07-CV-02845 WHA**

Consequently, the amendment of the term cannot foreclose application of the Doctrine of Equivalents.

**B.    AB is not entitled to summary judgment of non-infringement of claim 1 of the '119 patent**

AB seeks summary judgment of non-infringement of claim 1 of the '119 patent on two grounds. First, AB argues that it does not infringe under the Doctrine of Equivalents because finding a phosphorothiolate (hereinafter "PT") structure equivalent to the phosphoramidate (hereinafter "PA") structure recited in the claim amounts to "vitiation of a claim limitation." Second, AB argues that it does not infringe claim 1 of the '119 patent because the PA structure was "expressly relied" upon by the Patent Office in allowing the claims. Because both of AB's arguments are factually incorrect and legally flawed, they should be rejected.

AB's argument that application of the Doctrine of Equivalents would "vitiate a claim limitation" is based on a fundamental misunderstanding of the "all limitations" rule, which is that "an accused product or process is not infringing unless it contains each limitation of the claim, either literally or by an equivalent."[74] As the Federal Circuit has explained:

> A holding that the doctrine of equivalents cannot be applied to an accused device because it 'vitiates' a claim limitation is nothing more than a conclusion that the evidence is such that no reasonable jury could conclude that an element of an accused device is equivalent to an element called for in the claim, or that the theory of equivalence to support the conclusion of infringement otherwise lacks legal sufficiency.[75]

Thus, under the Doctrine of Equivalents, whose application presupposes that a recited claim element is not literally present in the accused embodiment, "vitiation" refers to the legal sufficiency of the evidence of equivalence.

The "vitiation" doctrine does not encompass the bright-line rule urged by AB that recitation of a "specific" chemical formula in a claim necessarily precludes application of the Doctrine of Equivalents. That is simply not the law. Substitution of one type of atom for another in a

---

[74] *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358, 1361-62 (Fed. Cir. 2005).

[75] *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1018-19 (Fed. Cir. 2006).

1   claimed compound does not preclude infringement under the Doctrine of Equivalents. In *Graver*

2   *Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605 (1950), for example, the Supreme

3   Court held that the accused compound, in which silicates of calcium and manganese were substi-

4   tuted for the silicates of calcium and magnesium recited in the claims, was found to infringe un-

5   der the Doctrine of Equivalents.[76] Similarly, here AB's substitution of a sulfur atom for the "N"

6   (nitrogen) atom recited in the claim does not "vitiate" the claim limitation because there is sub-

7   stantial evidence upon which a reasonable jury could find that the substituted atom performs the

8   same function in the same way to achieve the same result as the atom recited in the claim.[77]

9          In its motion, AB suggests there is a simple three-factor test for determining whether a

10  limitation would be vitiated by application of the Doctrine of Equivalents. There is not. As the

11  *Freedman* case cited by AB makes clear, the test for vitiation requires an analysis of the totality

12  of the circumstances, not simply the three factors on which AB relies.[78] But even focusing solely

13  on the three factors on which AB relies, its arguments regarding vitiation fail. If AB's argument

14  that the "simplicity of the structure" precludes application of the Doctrine of Equivalents were

15  correct, any patent claim reciting a "specific chemical formula" would not be entitled to any

16  equivalents. That is not correct either as a matter of fact or law. First, as a factual matter, the

17  structures recited in claim 1 of the '119 patent are hardly "simple." To the contrary, the structures

18  recited in claim 1 represent a large number of combinations of complex chemical elements, in-

19  cluding bases, analogs, labels, and linkage groups. To the extent that AB's argument for limiting

20      [76] Notably, the Court affirmed the judgment of infringement under the Doctrine of Equiva-

21  lents despite the fact that the use of manganese silicates in welding flux compounds was both
    known in the prior art and specifically disclosed in the patent. *Graver Tank*, 339 U.S. at 610-11.

22  *See also Linde Air Products Co. v. Graver Tank & Mfg. Co.*, 86 F. Supp. 191, 199 (D. Ind. 1947),
    *aff'd in part and rev'd in part*, 167 F.3d 531 (7th Cir. 1948), *aff'd*, 339 U.S. 605 (observing that

23  the inventors stated in the patent that they had used "silicates of . . . manganese" in a variety of

24  welding compositions).

25      [77]  Backman Decl., Exh. 1 at ¶¶ 65-122; Pendleton Decl., Exh. 1 (30(b)(6) Dep. Tr.) at 70:10-
    71:8, 84:11-86:14, 107:3-22; Exh. 3 at 23:12-25:13, 27:18-32:14, 34:15-42:12; Exh. 12 (Metzker

26  Dep. Tr.) at 93:8-25, 95:3-96:16, 184:2-25.

27      [78] *Freedman*, 420 F.3d 1350 at 1359 ("There is no set formula for determining whether a find-
    ing of equivalence would vitiate a claim limitation, and thereby violate the all limitations rule.

28  Rather, courts must consider the totality of the circumstances of each case . . . .").

**SOLEXA'S OPPOSITION TO AB'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT;**
**CASE NO: 07-CV-02845 WHA**

1  the scope of claim 1 depends on the factual assertion that it is "simple" and thus not entitled to

2  any equivalents, that factual assertion is both material and disputed – thus precluding summary

3  judgment.

4       AB's argument regarding the "simplicity of the structure" is also legally flawed. The Su-

5  preme Court and the Federal Circuit have already rejected such a narrow interpretation of the

6  Doctrine of Equivalents for chemical compositions. In *Graver Tank*, for example, the accused

7  product substituted manganese for magnesium, a seemingly "simple" structure,  yet it was found

8  infringe under the Doctrine of Equivalents.[79] In *Abraxis Bioscience, Inc. v. Mayne Pharma Inc*.,

9  467 F.3d 1370 (Fed. Cir. 2006), the claim at issue recited a composition comprising, in relevant

10  part, an "edetate." *Id*. at 1375 and 1378. The accused composition contained calcium trisodium

11  DTPA, a non-edetate, and so did not literally infringe. Nevertheless, the district court found in-

12  fringement under the Doctrine of Equivalents because the substituted chemical compound per-

13  formed the same function in the same way to achieve the same result. *Id*. at 1380. On appeal, the

14  appellee insisted that the appellant was precluded from asserting equivalence. Relying on *Tanabe*

15  *Seiyaku Co. v United States Int'l Trade Comm'n*, 109 F.3d 726, 732 (Fed. Cir. 1997), the appel-

16  lant argued that:

17  > it was impermissible as a matter of law for the meaning of edetate to extend to cal-
18  > cium trisodium DTPA by equivalence because the patentees chose to narrowly
> claim their invention. According to Mayne, the patentees chose to use the restric-
19  > tive term 'edetate' in claiming their invention, rather than broader terms such as
> 'polyaminocarboxylates' or 'metal ion chelators,' and thus are now precluded from
20  > extending patent protection to cover compounds beyond edetate.[80]

21       The Federal Circuit rejected this argument, reasoning that, unlike in *Tanabe Seiyaku*, "the

22  inventors did not clearly disavow other polyaminocarboxylates, including DTPA, by claiming

23

24

25  _____

26     [79] *Graver Tank*, 339 U.S. at 612. AB's citation of *Sage Prods., Inc. v. Devon Indus., Inc*., 126
27  F.3d 1420, 1425 (Fed. Cir. 1997), is also inapposite: *Sage Products* did not address the range of
equivalents available for a recited chemical structure, but rather for a simple mechanical device.

28     [80] *Abraxis Bioscience*, 467 F.3d at 1379.

edetate," i.e., that the patentees did not make a "clear and unmistakable surrender of other poly-aminocarboxylates, or calcium trisodium DTPA in particular, during prosecution."[81]

AB's argument here mirrors that rejected by the Federal Circuit in *Abraxis Bioscience* and should likewise be rejected. Contrary to AB's assertion, there is no bright-line rule that claims reciting a "specific chemical formula" are not entitled to equivalents simply because the patentee "could have claimed" a broader scope of coverage using broader language.

AB's argument that Macevicz's statements during prosecution (regarding enablement of synthesis of probes containing PA linkers) mean that "his claim was limited to a phosphoramidate linkage"[82] is little more than a retread of AB's argument, refuted above, that Solexa is not entitled to equivalents because Macevicz claimed a specific chemical structure. During prosecution of the '119 patent, Macevicz explained that the synthesis of PA structures was known in the art and that, therefore, the specification did not need to describe those techniques in order to enable the claims. Because AB cites no legal or factual basis to support the conclusion that such a statement amounted to a "clear and unmistakable surrender" of other structures,[83] Macevicz's statements do not limit the scope of equivalents.

AB argues that the Doctrine of Equivalents does not apply because of the "specificity and narrowness" of claim 1, relying on *Tanabe Seiyaku* just as the appellant in *Abraxis Bioscience* did. AB's argument is similarly without merit. Contrary to AB's assertion, the inventor in *Tanabe Seiyaku* did not lose protection under the Doctrine of Equivalents simply because he "chose to claim only 'acetone' specifically by name," instead of a class of solvents.[84] Instead, the Federal Circuit concluded that the inventor had disclaimed subject-matter beyond what was specifically claimed because the inventor made statements in the specification and prosecution history that specifically defined his inventions in terms of the expressly claimed base-solvent combinations

---

[81] *Id.* at 1381.

[82] Docket No. 207 at 22.

[83] *Abraxis Bioscience*, 467 F.3d at 1381.

[84] Docket No. 207 at 24.

1    and also distinguished his invention over the prior art by arguing that the specifically claimed

2    combinations gave unexpectedly better results than other possible solvents.[85] Neither of these fac-

3    tors is present here: as AB admits, Macevicz disclosed in a general sense that other types of

4    chemically scissile bonds could be used in his inventions,[86] and Macevicz never distinguished the

5    prior art on the basis of unexpectedly good results with the claimed PA linker. Thus, Macevicz

6    did not "clearly and unmistakably surrender" claim scope so as to preclude application of the

7    Doctrine of Equivalents.

8        AB next argues that the Doctrine of Equivalents cannot apply because the PA linker was

9    of "central importance to patentability."[87] This argument misrepresents the facts. AB argues that

10   the Examiner stated that "the claim's patentability over the prior art depended on its 'unique'

11   phosphoramidate linkage."[88] AB conveniently neglects to mention that the Examiner made such a

12   statement very early in prosecution,[89] but later rejected the claims as anticipated by a reference

13   that disclosed an oligonucleotide probe with the "unique" phosphoramidate linkage.[90] Thus, the

14   patentability of the claim did not "depend on" the phosphoramidate linker: the claim was actually

15   allowed because Macevicz amended the claim to add unrelated limitations.

16       Finally, AB's argument that "foreseeability of variations" forecloses equivalents is both

17   legally and factually flawed. First, AB relies only on the *Sage Products* case, which did not ad-

18   dress the issue of equivalents for chemical structures, but rather for simple mechanical devices.

19   And even if *Sage Products* were applicable, AB misunderstands the importance of its holding.

20   *Sage Products* did not hold that any "foreseeable alteration" is outside the scope of equivalents,

21

22       [85] *Abraxis Bioscience*, 467 F.3d at 1381 (discussing the holding in *Tanabe Seiyaku*).

23       [86] Indeed, AB points to Macevicz's discussion of alternatives to the phosphoramidate linkage
24   in the specification as evidence of "foreseeability of variation." (Docket No. 207 at 24). AB can-
     not have it both ways.

25       [87] Docket No. 207 at 23.

26       [88] *Id*.

27       [89] The application continued in prosecution for over a year after the Examiner made this until
     allowance in late January, 1999, and did not issue until October 19, 1999.

28       [90] Pendleton Decl., Exh. 13 at 2-3.

---

**SOLEXA'S OPPOSITION TO AB'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT;
CASE NO: 07-CV-02845 WHA**

1    nor could it. Under controlling Supreme Court precedent, "known interchangeability" of ele-

2    ments, which presupposes "foreseeability," is a factor that <u>supports</u> a finding of equivalence,

3    rather than precluding it.[91] Furthermore, in order to trigger the dedication-disclosure rule, the un-

4    claimed subject matter must have been specifically identified by the patentee as an alternative to a

5    claim limitation.[92] The only "disclosure" AB points to in the specification of the patents-in-suit

6    states that "[t]he phosphoramidate linkage described above is an example of a general class of

7    internucleosidic linkages referred to herein as 'chemically scissile internucleosidic linkages,'"

8    which does not, as a matter of fact, disclose phosphorothiolate as a specific alternative to a claim

9    limitation and therefore cannot, as a matter of law, preclude application of the Doctrine of

10   Equivalents.

11   **III.    CONCLUSION**

12          For all these reasons, AB's motion for summary judgment of non-infringement of the '119

13   patent should be denied.

---

[91] *Warner-Jenkinson Co. v. Hilton-Davis Chem. Co.*, 520 U.S. 17, 36 (1997). Equivalents may also be disclosed in the specification. *Id*. at 37.

[92] *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1379 (Fed. Cir. 2005).

**SOLEXA'S OPPOSITION TO AB'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT; CASE NO: 07-CV-02845 WHA**

1

2    DATED: July 31, 2008

3    _Cullen Pendleton_

4    KEVIN M. FLOWERS (admitted *pro hac vice*)
     THOMAS I. ROSS (admitted *pro hac vice*)

5    JEFFREY H. DEAN (admitted *pro hac vice*)
     JOHN R. LABBE (admitted *pro hac vice*)

6    CULLEN N. PENDLETON (admitted *pro hac vice*)
     MARK H. IZRAELEWICZ (admitted *pro hac vice*)

7    MARSHALL, GERSTEIN & BORUN LLP
     6300 Sears Tower

8    233 South Wacker Drive
     Chicago, Illinois 60606-6357

9    (312) 474-6300 (telephone)
     (312) 474-0448 (facsimile)

10   E-Mail: kflowers@marshallip.com

11   E-Mail: tross@marshallip.com
     E-Mail: jdean@marshallip.com

12   E-Mail: jlabbe@marshallip.com
     E-Mail: cpendleton@marshallip.com

13   E-Mail: mizraelewicz@marshallip.com

14
     Counsel for Defendants
15   ILLUMINA, INC., SOLEXA, INC.,
     and STEPHEN C. MACEVICZ
16

17

18

19

20

21

22

23

24

25

26

27

28

SOLEXA'S OPPOSITION TO AB'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT;
CASE NO: 07-CV-02845 WHA