UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

APPLERA CORPORATION - APPLIED
BIOSYSTEMS GROUP, a Delaware
corporation,

    Plaintiff,

vs.                      No. 07-CV-02845 WHA

ILLUMINA, INC., a Delaware
corporation, SOLEXA, INC.,
a Delaware corporation, and
STEPHEN C. MACEVICZ, an
individual,

    Defendants.
_____/

Deposition of

STEPHEN C. MACEVICZ

November 28, 2007

Reported by:
KELLIE A. ZOLLARS, CSR, RPR, CRR
License No. 5735

SHARI MOSS & ASSOCIATES
Certified Shorthand Reporters
877 Cowan Road, Suite A
Burlingame, California 94010
Tel: (650) 692-8900

25

1  a home fax.
2     Q.  Would you agree that from the face of the fax
3  it appears that you did send it from AB and used your
4  AB return phone and fax numbers on the cover sheet?
5     A.  Well, it could have been, yes.                    03:11
6     Q.  Is there any doubt that that's what happened
7  in your mind?
8     DR. FLOWERS:  Objection as to form.
9     MR. FTHENAKIS:  Join.
10    BY MR. WILSON:                                         03:12
11    Q.  Is there any doubt in your mind that that's
12 what happened?
13    A.  Well, if there is, it isn't a large doubt.
14    Q.  This patent application was filed on July 13,
15 1993, right?                                              03:12
16    DR. FLOWERS:  Objection as to form.
17    BY MR. WILSON:
18    Q.  The patent application that's referred to in
19 the agreement was filed on July 13, 1993, right?
20    A.  You're referring to the one in the second          03:12
21 "WHEREAS" clause?
22    Q.  Right.
23        Did anyone ever disclose that patent
24 application to AB?
25    A.  I just don't recall.                               03:12

SHARI MOSS & ASSOCIATES                         (415) 402-0004

**EXHIBIT 5**

Page 104

1   A.  Well, I can't imagine giving him a notebook
2   and asking him to sign it without explaining the
3   reason why I wanted to have him sign it.  Or that I
4   would ask him to sign it for me.
5   Q.  The reason being that it was -- you wanted to        03:20
6   corroborate the date of conception, right?
7   A.  Yes.
8   Q.  Do you also think that you explained to him
9   that this was something you were doing outside of the
10  scope of your work for AB?                               03:20
11  A.  Yes.
12  Q.  Do you think you explained to him that you
13  were not planning on assigning this invention to AB?
14  A.  I don't recall specifically or generally that
15  sort of discussion.                                      03:20
16  Q.  Do you recall specifically telling him that
17  this was outside of the scope of your work for AB?
18  A.  I don't have a specific recollection of me
19  saying those words 12 years ago, but I think it was
20  clear from the fact that I brought the notebook from    03:21
21  home and that he was aware that I had this hobby of
22  working on analytical technologies as a pastime, that
23  that was the understanding.
24  Q.  Did you disclose this invention to your
25  supervisor, Joe Smith, at the time?                      03:21

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

**EXHIBIT 5**

b8d025a6-4c2c-4881-8a37-dec0587cbf84

Page 105

1    A.  I don't believe I did.
2    Q.  Did you discuss these inventions with Joe
3  Smith, your supervisor?
4    A.  I don't recall discussing it with him.
5    Q.  Did you disclose these inventions to                03:21
6  Dr. Hunkapiller?
7    A.  I don't recall disclosing them to him either.
8    Q.  Did you discuss any of these inventions with
9  Dr. Hunkapiller?
10   A.  I don't have a specific recollection, but         03:21
11  these types of inventions are things that would be
12  discussed that -- you know, I wasn't hiding anything.
13  I would discuss them with people in the hallways or
14  at the lunch table.  I just don't have a specific
15  recollection of sitting down, drawing things, and      03:21
16  relating it to this invention.
17   Q.  By the hallways you mean the hallways at
18  work?
19   A.  That's correct.
20   Q.  And by the lunch area you mean the lunch --       03:22
21   A.  Cafeteria.
22   Q.  -- cafeteria at work?
23   A.  Yeah.
24   Q.  Did you ever disclose these inventions on
25  pages MAC 79 through 83 in writing to anybody at AB,   03:22

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

**EXHIBIT 5**

b8d025a6-4c2c-4881-8a37-dec0587cbf84

Page 106

1   particularly to any supervisor at AB?
2       MR. FTHENAKIS:  Objection to the form.
3       DR. FLOWERS:  Join.
4       MR. WILSON:  That's fair.
5       Q.  Let's go back to the beginning.  Did you ever                03:22
6   disclose any of the inventions on pages MAC 31
7   through 35 of your lab notebook in writing to any
8   supervisor of yours at AB?
9       A.  What were the pages again?
10      Q.  31 to 35.                                                    03:22
11      A.  I don't have a specific recollection of that.
12      Q.  Do you have any reason to think that you did?
13      A.  I have no reason to think that I did because
14  I considered them totally separate from my work at
15  AB.                                                                  03:23
16      Q.  Did you ever ask for consent from any of your
17  supervisors at AB to apply for patent applications on
18  the inventions you describe in pages MAC 31 through
19  MAC 35 of your notebook?
20      A.  So, why would I ask for consent for something                03:23
21  that's outside the scope of the work?
22      Q.  Did you -- so is it your understanding, your
23  recollection, that you did not ask for consent to
24  apply for patents on these inventions?
25      A.  I don't recall asking for consent to file on                 03:23

SHARI MOSS & ASSOCIATES                              (415) 402-0004

**EXHIBIT 5**

Page 107

1  these inventions.
2  Q. And you believe that you had no duty to
3  disclose these inventions to your managers at AB,
4  right?  Your supervisor at AB?
5  A. Well, I understand -- I understand my duty                03:23
6  under the employee invention agreement if that's what
7  you're getting at.  I didn't consider these
8  inventions to be a part of the AB business.
9       And I wasn't trying to hide them.  I have a
10 general recollection of talking about these                   03:24
11 inventions with the people at AB as exemplified by
12 the signatures of Dr. Fung and Dr. Grossman.  But I
13 didn't -- I don't have any recollection of going to
14 my supervisors and showing them and talking about
15 them.                                                         03:24
16 Q. And that goes for the inventions described at
17 MAC 31 to 35 as well as the inventions described in
18 MAC 79 through 83, correct?
19 A. 73?
20 Q. 83.  I might have misspoken.  79 to 83.                    03:25
21 A. I believe that's the case.  I don't have any
22 specific recollection of discussing these with
23 supervisors.
24 Q. Am I understanding you correctly that you're
25 not saying that you satisfied obligations under the           03:25

SHARI MOSS & ASSOCIATES                    (415) 402-0004

**EXHIBIT 5**

b8d025a6-4c2c-4881-8a37-dec0587cbf84

Page 114

1   discussions.  I had -- I didn't try to hide the
2   inventions at all.
3           So does that answer your question?
4       Q.  Do you believe that you -- your discussions
5   with Steve Fung and Paul Grossman satisfied your duty          03:43
6   to disclose the inventions to AB under your Employee
7   Invention Agreement?
8       A.  I don't know if it satisfied it.  I believe
9   it did at the time.
10      Q.  You believe it did at the time or you didn't           03:43
11  believe it did at the time?  I'm a little confused.
12      A.  Well, the -- it just wasn't an issue in my
13  mind.  I didn't think of the agreement, for example,
14  when I was asking Paul to initial my notebook or
15  Dr. Fung.  What was in my mind was establishing a              03:43
16  conception date, corroboration of a conception date.
17      Q.  It wasn't your intention to be disclosing it
18  to AB under the agreement; you were just, as you
19  said, trying to establish the date?
20      A.  I would say that what was primarily in my              03:44
21  mind was establishing a conception date.
22      Q.  It wasn't in your mind that you were
23  disclosing this pursuant to your Employee Invention
24  Agreement; is that right?
25      A.  Well --                                                03:44

SHARI MOSS & ASSOCIATES                          (415) 402-0004

**EXHIBIT 5**

b8d025a6-4c2c-4881-8a37-dec0587cbf84

Page 115

1      MR. FTHENAKIS:  Objection as to form.
2      THE WITNESS:  I'm not saying one way or the
3  other.  It just was not something that I can recall
4  thinking of at the time of that event.
5      MR. WILSON:  Let's take a look at another                03:44
6  exhibit, which will be 28.
7      (Exhibit No. 28 was marked for identification.)
8      BY MR. WILSON:
9      Q.  We've marked as Exhibit 28 two pages from the
10  file history of Patent Application Serial 08/424663,      03:45
11  which became U.S. Patent 570341.  Do you recognize
12  these pages from the file history?
13      A.  No, I do not.
14      Q.  More specifically, let's take a look at
15  page 2 of this exhibit.  And you see there's a letter     03:45
16  from you to the patent office?
17      DR. FLOWERS:  Objection as to form.
18      THE WITNESS:  Yes.
19      BY MR. WILSON:
20      Q.  And that's your signature on the letter,          03:45
21  right?
22      A.  It appears to be, yes.
23      Q.  And this is something you filed with the
24  patent office in connection with your patent
25  application?                                              03:45

SHARI MOSS & ASSOCIATES                    (415 ) 402-0004

**EXHIBIT 5**

```
1    STATE OF CALIFORNIA)
2    COUNTY OF SAN MATEO)
3              I hereby certify that the witness in the
4    foregoing deposition, STEPHEN C. MACEVICZ, was by me
5    duly sworn to testify to the truth, the whole truth,
6    and nothing but the truth, in the within-entitled
7    cause; that said deposition was taken at the time and
8    place herein named; that the deposition is a true
9    record of the witness's testimony as reported by me,
10   a duly certified shorthand reporter and a
11   disinterested person, and was thereafter transcribed
12   into typewriting by computer.
13             I further certify that I am not interested in
14   the outcome of the said action, nor connected with,
15   nor related to any of the parties in said action, nor
16   to their respective counsel.
17             IN WITNESS WHEREOF, I have hereunto set my
18   hand this 11th day of December, 2007.
19
20
21                    _____
22                         KELLIE A. ZOLLARS, CSR
23                           STATE OF CALIFORNIA
24
25
                                                        184
```