1  IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
2        CITY AND COUNTY OF SAN FRANCISCO
3
4  APPLERA CORPORATION - APPLIED
   BIOSYSTEMS GROUP,
5
                    Plaintiff,
6
        vs.                              NO. CV 07-02845
7                                        WHA
   ILLUMINA, INC., SOLEXA, INC.
8  and STEPHEN C. MACEVICZ,
9                    Defendants.
10 -------------------------------/
11
12              Deposition of
13           FRANK L. OAKS, Ph.D.
14             July 22, 2008
15
16
17 Reported by
18 Deirdre F. Cram
19 C.S.R. 9339
20
21
22         SHARI MOSS & ASSOCIATES
          Certified Shorthand Reporters
23         877 Cowan Road, Suite A
            Burlingame, California
24              415-402-0004
                650-692-8900
25          FAX:  650-692-8909

1  technologies if they became available?
2     A.   Not that I'm aware of, and based on their
3  actions, especially subsequently, I would guess that
4  the answer is no.
5     Q.   Would those managers, in your view, have
6  considered any other method of sequencing to be
7  outside of ABI's business at the time?
8     A.   I'm not sure what you mean by outside of
9  their business.
10    Q.   Well, how would you describe the scope of
11 ABI's DNA sequencing business in the 1992 to 1995
12 time frame?
13    A.   To pursue Sanger sequencing to its limits.
14    Q.   To the exclusion of any other method of
15 sequencing?
16    A.   Effectively, yes.  I mean, that's what
17 occurred.  That's what we did.
18    Q.   Well, did you know Mike Hunkapiller, for
19 example?
20    A.   Yes.
21    Q.   Do you have any reason to think that Mike
22 Hunkapiller might have been interested in knowing
23 about other alternative methods of sequencing if
24 someone at ABI had thought about alternative
25 methods?

1    A.    I assume he would have been.
2    Q.    Why?
3    A.    To see if that path that was laid out that we
4    followed was significantly -- there was some other
5    path to go.
6    Q.    You think he might be interested in knowing
7    if there were other paths?
8    A.    I'm not sure it would have gotten much --
9    philosophically, yes.  Practically, I'm not sure.
10   The answer is yes, to be honest; but --
11   philosophically, in gross terms, yes.  Practically,
12   I wonder about that.
13   Q.    All right.  So it's something he might have
14   been interested in knowing about.  Whether he would
15   have actually done anything to pursue it is another
16   question.  Is that what you're saying?
17   A.    Yes.
18   Q.    Let me show you a copy of a patent which I'm
19   already certain you've never seen before, but it
20   can't hurt to ask.  This is a patent issued to the
21   inventors Paul Grossman, Steve Fung, Steve Menchen,
22   Sam Woo and Emily Winn-Deen, if I'm pronouncing that
23   correctly.
24            (Previously marked Exhibit 34 was shown
25             to the witness.)

1  I never heard anyone say that patents would only be
2  done across this very broad company with broad
3  number of interests if it was solely Sanger.  So
4  there were protein examples, for example.  Yes,
5  there certainly are things other than Sanger.
6      Q.  Did you ever have any reason to believe, in
7  the 1992 to 1995 time frame, that ABI would be
8  interested in pursuing patents only if they related
9  to Sanger sequencing?
10         THE WITNESS:  Sorry.  Can we read that back?
11         MR. WILSON:  Yeah, you can read that back.
12 It might have been too long.
13            (The record was read.)
14         THE WITNESS:  No.  At that time frame, ABI
15 had this broad business involved in multiple things,
16 so they certainly would have patented things outside
17 of Sanger sequencing.
18 BY MR. WILSON:
19     Q.  And it would have been interested in
20 developing as broad a portfolio as possible within
21 the resource constraints, I assume; right?
22     A.  Yes.
23         THE WITNESS:  When we get do a good break
24 point, could we have like a five-minute break?
25         MR. WILSON:  This is probably as good as I

```
 1                    REPORTER'S CERTIFICATE
 2
 3             I, the undersigned, a Certified Shorthand
 4   Reporter of the State of California, do hereby
 5   certify:
 6             That the foregoing proceedings were taken
 7   before me at the time and place herein set forth;
 8   that any witnesses in the foregoing proceedings,
 9   prior to testifying, were placed under oath; that a
10   verbatim record of the proceedings was made by me
11   using machine shorthand which was thereafter
12   transcribed under my direction; further, that the
13   foregoing is an accurate transcription thereof.
14             I further certify that I am neither
15   financially interested in the action nor a relative
16   or employee of any attorney of any of the parties.
17             IN WITNESS WHEREOF, I have this date
18   subscribed my name.
19
20   Dated:  July 31, 2008
21
22
23                         _____
                           DEIRDRE F. CRAM, RPR
24                         CSR No. 9339
25
```

**EXHIBIT 7**