KEVIN M. FLOWERS (admitted *pro hac vice*)
THOMAS I. ROSS (admitted *pro hac vice*)
JEFFREY H. DEAN (admitted *pro hac vice*)
JOHN R. LABBE (admitted *pro hac vice*)
CULLEN N. PENDLETON (admitted *pro hac vice*)
MARK H. IZRAELEWICZ (admitted *pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606-6357
(312) 474-6300 (telephone)
(312) 474-0448 (facsimile)
E-Mail: kflowers@marshallip.com
E-Mail: tross@marshallip.com
E-Mail: jdean@marshallip.com
E-Mail: jlabbe@marshallip.com
E-Mail: cpendleton@marshallip.com
E-Mail: mizraelewicz@marshallip.com

Counsel for Defendants
ILLUMINA, INC., SOLEXA, INC.,
and STEPHEN C. MACEVICZ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| APPLERA CORPORATION—APPLIED BIOSYSTEMS GROUP, a Delaware corporation, <br><br> Plaintiff/Counterdefendant, <br><br> - vs. - <br><br> ILLUMINA, INC., a Delaware corporation, SOLEXA, INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual, <br><br> Defendants/Counterclaimants. | Case No. 07-CV-02845 WHA <br><br> Honorable William H. Alsup <br><br> **SOLEXA'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT** <br><br> Date:   August 21, 2008 <br> Time:   8:00 a.m. <br> Place:  Courtroom 9, 19th Floor |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ...................................................................................................... 1

    A.    Summary judgment is justified regarding infringement of claim 1 of
        the '119 patent ........................................................................................... 1

        1.    Application of the Doctrine of Equivalents would not "vitiate"
            the phosphoramidate bond claim limitation ...................................... 2

        2.    Application of the Doctrine of Equivalents would not render
            claim 1 of the '119 patent invalid ..................................................... 4

        3.    Solexa is not precluded from asserting equivalents to claim 1
            of the '119 patent .............................................................................. 6

        4.    The phosphorothiolate bond in AB's probes is equivalent to
            the phosphoramidate bond recited in claim 1 of the '119 patent ....... 7

    B.    Summary judgment of infringement of claim 1 of the '341 patent by
        the "one-base-encoding" version of the SOLiD System is justified ............. 9

    C.    Summary judgment of infringement of claim 1 of the '597 patent is
        justified ..................................................................................................... 11

    D.    AB's affirmative defenses do not preclude summary judgment of
        infringement in Solexa's favor ................................................................. 15

III.    CONCLUSION ................................................................................................ 15

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*3M Innovative Props. Co. v. Avery Dennison Corp.,*
4
    350 F.3d 1365 (Fed. Cir. 2003)..............................................................................3

5
*Abraxis Bioscience, Inc. v. Mayne Pharma Inc.,*
    467 F.3d 1370 (Fed. Cir. 2006)..............................................................................2

6
*Baxter Diagnostics, Inc. v. AVL Scientific Corp.,*
7
    924 F. Supp. 994 (C.D. Cal. 1996)..............................................................12, 13

8
*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,*
    469 F.3d 1005 (Fed. Cir. 2006)..............................................................................2

9
*Embrex, Inc. v. Serv. Eng'g Corp.,*
10
    216 F.3d 1343 (Fed. Cir. 2000)......................................................................12, 14

11
*Freedman Seating Co. v. Am. Seating Co.,*
    420 F.3d 1350 (Fed. Cir. 2005)..............................................................................2

12
*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,*
13
    336 U.S. 271 (1949)................................................................................................6

14
*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,*
    339 U.S. 605 (1950)......................................................................................6, 7, 8

15
*Hollymatic Corp. v. Framarx Corp.,*
16
    1996 U.S. Dist. LEXIS 17712 (W.D. Mich. Oct. 9, 1996)...............................12

17
*Johnston v. IVAC Corp.,*
    885 F.2d 1574 (Fed. Cir. 1989)............................................................................10

18
*Linde Air Prods. Co. v Graver Tank & Mfg. Co.,*
19
    86 F Supp 191 (D. Ind. 1947) ...............................................................................6

20
*Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH,*
    139 F.3d 877 (Fed. Cir. 1998)...............................................................................5

21
*Mycogen Plant Sci., Inc. v. Monsanto Co.,*
22
    261 F.3d 1345 (Fed. Cir. 2001)..............................................................................3

23
*Outlast Techs., Inc. v. Frisby Techs., Inc.,*
    128 Fed. Appx. 122 (Fed. Cir. 2005) ....................................................................3

24
*Pall Corp. v. Micron Separations,*
25
    66 F.3d 1211 (Fed. Cir. 1995)................................................................................5

26
*Purdue Pharma L.P. v. Faulding Inc.,*
    230 F.3d 1320 (Fed. Cir. 2000)..............................................................................5

27
*Roche Prods. v. Bolar Pharmaceutical Co.,*
28
    733 F.2d 858 (Fed. Cir. 1984)..............................................................................12

**SOLEXA'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT; CASE NO: 07-CV-02845 WHA**

1

*Tanabe Seiyaku Co. v. United States Int'l Trade Comm'n,*
    109 F.3d 726 (Fed. Cir. 1997)...........................................................................................8

2

*Toro Co. v. White Consol. Indus.,*
    266 F.3d 1367 (Fed. Cir. 2001)..........................................................................................6

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **I.    INTRODUCTION**

2          In its motion, Solexa presented substantial evidence that the probes used in the one-base-

3    and two-base-encoding versions of the SOLiD System satisfy all limitations of claim 1 of the

4    '119 patent, either literally or under the Doctrine of Equivalents. In its Opposition, AB offers only

5    legally and factually flawed arguments regarding "vitiation" of a claim limitation, flawed and be-

6    latedly-disclosed arguments regarding prior art, and legally irrelevant arguments regarding

7    equivalence of the phosphoramidate and phosphorothiolate linkers. None of AB's arguments pre-

8    cludes summary judgment.

9          Because there is no factual dispute regarding where AB's primers hybridize in AB's one-

10   base-encoding SOLiD System, the Court can grant summary judgment of literal infringement of

11   claim 1 of the '341 patent if it construes the term "target polynucleotide" to encompass known

12   sequences such as AB's "adapter." Even if the Court declines to do so, AB has failed to raise a

13   legitimate issue of material fact that could preclude summary judgment for this claim under the

14   Doctrine of Equivalents.

15         Finally, AB does not dispute that its one-base-encoding SOLiD System literally satisfies

16   every limitation of claim 1 of the '597 patent. AB instead argues that its infringement should be

17   disregarded as "de minimis" and that its "affirmative defenses" preclude summary judgment. Be-

18   cause neither position has any legal merit, summary judgment should be granted.

19   **II.    ARGUMENT**

20         **A.    Summary judgment is justified regarding infringement of claim 1 of the '119
               patent**

21

22         Because the parties agree that the probes used in the one-base- and two-base-encoding

23   versions of the SOLiD System literally satisfy all limitations of claim 1 of the '119 patent except

24   for the phosphoramidate bond limitation,[1] the only remaining issue for the Court to resolve is

25   whether the phosphorothiolate bond in AB's probes is equivalent to the phosphoramidate bond

26   _____

27         [1] AB's probes contain a sulfur atom (which produces a chemical bond known as a "phos-
     phorothiolate") in place of the "N" (nitrogen) atom recited in Claim 1 (which produces a chemical
28   bond known as a "phosphoramidate").

shown in claim 1 under the Doctrine of Equivalents. As discussed below, none of the three grounds AB raises in opposing Solexa's motion has any merit, so the Court should grant summary judgment that AB's probes infringe this claim.

### 1.    Application of the Doctrine of Equivalents would not "vitiate" the phosphoramidate bond claim limitation

First, AB argues that applying the Doctrine of Equivalents to claim 1 is impermissible because it would "vitiate a claim limitation." According to AB, if the Court thinks that the structure shown in claim 1 is "simple," was "specifically and narrowly claimed," and that "variations were foreseeable," then the vitiation doctrine should bar application of the Doctrine of Equivalents.[2] The Court should reject AB's argument as both legally and factually incorrect.

As Solexa explained in its Opposition to AB's Motion for Summary Judgment,[3] substitution of another atom for the atom specifically recited in a structural claim limitation does not necessarily "vitiate" the limitation. Nor, contrary to AB's implication, is there a three-factor test for vitiation. Rather, a structural claim limitation is only vitiated when, after "consider[ing] the totality of the circumstances,"[4] a court decides the accused structure cannot possibly satisfy the limitation, either literally or under the Doctrine of Equivalents.[5] Indeed, the Federal Circuit has expressly rejected AB's argument that the Doctrine of Equivalents is unavailable whenever a patentee claimed "narrowly" but "could have used" broader language.[6]

---

[2] If this were the law, AB's test would bar application of the Doctrine of Equivalents for any specifically named chemical structure if any variation was foreseeable, because, according to AB's logic, any named chemical structure is, by definition, both "simple" and "specifically and narrowly claimed." This cannot be correct.

[3] Because AB's Opposition essentially repeats the arguments AB made in its own Motion for Summary Judgment of Non-Infringement (Docket No. 207 at 20-24), in the interest of brevity, Solexa incorporates by reference its responses to those same arguments as set out in its Opposition to AB's Motion (Docket No. 213 at 20-25).

[4] *Freedman Seating Co. v. Am. Seating Co*., 420 F.3d 1350, 1359 (Fed. Cir. 2005).

[5] *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 469 F.3d 1005, 1018-19 (Fed. Cir. 2006).

[6] *See*, *e.g.*, *Abraxis Bioscience, Inc. v. Mayne Pharma Inc*., 467 F.3d 1370, 1379, 1381 (Fed. Cir. 2006) (rejecting argument that, because "the patentees chose to use [a] restrictive term . . . in claiming their invention, rather than broader terms," they were precluded from asserting equivalents as a matter of law).

**SOLEXA'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT; CASE NO: 07-CV-02845 WHA**

1        The real question, then, is whether any statement made during prosecution of the '119

2    patent (or any other circumstance) prevents this Court from applying the Doctrine of Equivalents.

3    None of AB's three arguments in this regard has merit. First, AB argues that Solexa is somehow

4    barred from asserting any equivalents to the phosphoramidate structure because Macevicz's attor-

5    ney, Vincent Powers, stated that this limitation in claim 1 was enabled. AB does not offer either

6    reasoning or case law to support its novel proposition that an applicant's statement and an Exam-

7    iner's agreement that a claim is enabled can somehow foreclose application of the Doctrine of

8    Equivalents.[7] AB's second argument, that "the Examiner allowed claim 1 [of the '119 patent] be-

9    cause it was limited to 'the unique [phosphoramidate] linkage,'"[8] is objectively baseless because

10   the Examiner made no such statement[9] and because the claim was allowed on entirely different

11   grounds.[10] AB's final argument, that any "foreseeable variations" of Macevicz's inventions can-

12

13

---

14       [7] Although claim scope may be limited where an applicant acquiesces to an examiner's de-

15   mand to limit claim scope based on enablement, *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 261
     F.3d 1345, 1350 (Fed. Cir. 2001) (holding patentee was barred from asserting Doctrine of

16   Equivalents where it "acquiesced in the examiner's proposal to cancel all claims except those
     specifically [demonstrated to be enabled]"), this doctrine has no application here because Mace-

17   vicz, through attorney Powers, did not acquiesce to any such limitation, but rather challenged the

18   enablement rejection, forcing the Examiner to withdraw the rejection. *See* Docket No. 212-7 (De-
     cember 12, 1997 Office Action) at 2 (rejecting claim for lack of enablement of the phosphorami-

19   date linker), Docket No. 212-8 (May 12, 1998 Amendment) at 4 (challenging enablement rejec-
     tion) and Docket No. 215-14 (August 3, 1998 Office Action) at 2 (stating "[r]ejections and/or ob-

20   jections not reiterated from the previous office action are hereby withdrawn" and failing to repeat

21   the enablement rejection).

22       [8] AB Opposition (Docket No. 216) at 5.

23       [9] As discussed in Solexa's Opposition (Docket No. 213) at 24, the Examiner merely said that
     the claim "appears to be allowable" because of the phosphoramidate bond limitation. Whether

24   made by an examiner or an applicant, an equivocal statement such as this is an insufficient legal
     basis for limiting a claim's scope. *See, e.g., Outlast Techs., Inc. v. Frisby Techs., Inc.*, 128 Fed.

25   Appx. 122, 126 (Fed. Cir. 2005) ("[A]mbiguous statements in the prosecution history are not suf-
     ficient to surrender claim scope.").

26       [10] *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1373-1374 (Fed. Cir.

27   2003) ("An applicant's silence in response to an examiner's characterization of a claim does not
     reflect the applicant's clear and unmistakable acquiescence to that characterization if the claim is

28   eventually allowed on grounds unrelated to the examiner's unrebutted characterization.").

---

**SOLEXA'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF
INFRINGEMENT; CASE NO: 07-CV-02845 WHA**

not be covered by the Doctrine of Equivalents, is both legally and factually flawed for the reasons stated in Solexa's Opposition, which will not be repeated here.[11]

> **2.    Application of the Doctrine of Equivalents would not render claim 1 of the '119 patent invalid**

AB argues that application of the Doctrine of Equivalents is impermissible because it would render claim 1 invalid for several reasons, none of which have merit.

AB first argues that allowing equivalents to the phosphoramidate bond would "remove the distinction relied on by the Examiner to distinguish the prior art, including the Beaton patent." AB's assertion is factually incorrect: the presence of the phosphoramidate bond was not the basis for allowance of the claim. To the contrary, the Examiner rejected the claim over the "Levina" reference, which disclosed an oligonucleotide probe containing a phosphoramidate bond,[12] and only allowed the claim after it was amended to include additional limitations.[13]

AB argues that finding AB's phosphorothiolate bond equivalent to the recited phosphoramidate bond would render the claim invalid "in light of other prior art references disclosing phosphorothiolate linkages, such as the Carr patent . . . ."[14] AB's argument is procedurally impermissible and, in any case, is without merit.

First, as a procedural matter, AB cannot rely on the Carr patent as a basis to argue claim 1 is invalid because AB failed to identify this reference during fact discovery, particularly in its invalidity contentions for the '119 patent[15] (or in any of its experts' reports, or in its motion for summary judgment of non-infringement). AB's failure to disclose this reference as required under the Federal Rules of Civil Procedure[16] and this Court's discovery Orders is inexcusable and has

---

[11] *See* Solexa's Opposition (Docket No. 213) at 24-25.

[12] Docket No. 215-14 at 2-3.

[13] Pendleton Decl., Exh. 12 (Amendment to Appl'n Ser. No. 08/872,446 ("'446 Appl'n") (Nov. 3, 1998)) at 2-3 and Exh. 13 (Notice of Allowability for '446 Appl'n (Jan. 22, 1999)) at 2.

[14] Although AB asserts there are "other prior art references disclosing phosphorothiolate linkages," it cites only the Carr patent.

[15] Pendleton Decl., Exh. 14 (AB's Final Invalidity Contentions) at 13.

[16] Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless

1    irrevocably prejudiced Solexa, which was unable to depose AB's experts or other witnesses re-

2    garding this undisclosed reference or to offer testimony about it from its own experts. The Court

3    should disregard the Carr patent and prohibit AB from making any argument or offering any tes-

4    timony regarding it (or any other late-disclosed reference).

5         Second, even if the Court were to consider the Carr Patent, claim 1 is presumed to be

6    valid, and AB's argument falls far short of satisfying its burden to prove invalidity by clear-and-

7    convincing evidence.[17] AB does not state how the Carr patent would have rendered claim 1 un-

8    patentable; it does not attempt to prove how it satisfies any legal standard for anticipation, obvi-

9    ousness, or any other ground for invalidating a patent claim, much less come forward with clear-

10   and-convincing evidence of any such invalidity. Consequently, its argument can be rejected.[18]

11        Finally, AB argues that allowing application of the Doctrine of Equivalents would invali-

12   date claim 1 for lack of written description. AB's position has no legal basis. The case on which

13   AB relies, *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320 (Fed. Cir. 2000), is inapposite:

14   although in that case the Federal Circuit affirmed the district court's invalidation of a claim for

15   lack of written description, it did not do so on the basis that an alleged equivalent lacked written

16   description. Because application of the Doctrine of Equivalents does not require the inventor to

17   have foreseen and/or have described the alleged equivalent in the specification,[19] failure of the

18

19   _____

20   the failure was substantially justified or is harmless.").

21   [17] *See, e.g.*, *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881 (Fed.
     Cir. 1998).

22

23   [18] Furthermore, contrary to AB's assertion, even if the Carr patent disclosed oligonucleotide
     probes containing a phosphorothiolate bond, which is far from apparent based on the citations in
     AB's Opposition, it would not necessarily render the '119 patent invalid, any more than the ex-

24   press disclosure of an oligonucleotide containing a phosphoramidate bond in the Levina reference
     cited by the Examiner rendered claim 1 unpatentable.

25

26   [19] *Pall Corp. v. Micron Separations*, 66 F.3d 1211, 1220 (Fed. Cir. 1995) (rejecting argument
     that "the Doctrine of Equivalents can be invoked only for subject matter that is disclosed and en-

27   abled in the patent specification but not claimed" and stating that "[i]t is not controlling whether
     the inventor foresaw and described this potential equivalent at the time the patent application was

28   filed").

**SOLEXA'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF
INFRINGEMENT; CASE NO: 07-CV-02845 WHA**

specification to describe a particular equivalent would not render the patent invalid for lack of written description.

>        **3.        Solexa is not precluded from asserting equivalents to claim 1 of the '119 patent**

AB's analysis of the Supreme Court's decision in *Graver Tank*[20] is incorrect, and its criticisms of Solexa's analysis of that case are unjustified. In *Graver Tank*, the Supreme Court held that analysis under the Doctrine of Equivalents requires consideration of the "purpose" and "function" of an element in a claim.[21] The question, however, is <u>what</u> "purpose" and <u>what</u> "function" are <u>required by the claims</u> and are therefore relevant to the equivalents inquiry.

In the composition claims at issue in *Graver Tank*,[22] two claims (18 and 20) used the functional language "[a] composition for electric welding" and recited that the compositions were "substantially free from substances capable of evolving gases under welding conditions,"[23] and the two other claims (22 and 23) recited a "[a] finely-divided unbonded fusible electric welding composition" containing the recited composition. It was <u>only</u> because of the presence of such functional language in the claims that the Supreme Court considered similarities between the methods in which the accused and claimed compounds were used, their operation in those methods, and the result of their use in those methods to be relevant to the equivalents analysis.[24] And as the Federal Circuit has oft-held, it is improper to import functional limitations from the specification into a claim, "particularly when the claim recites only purely structural limitations."[25]

---

[20] *Graver Tank & Mfg. Co. v. Linde Air Prods. Co*., 339 U.S. 605 (1950).

[21] *Id*. at 610.

[22] *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co*., 336 U.S. 271, 272 (1949), and *Linde Air Prods. Co. v Graver Tank & Mfg. Co*., 86 F Supp 191, 199 (D. Ind. 1947). The Jones patent-at-issue in *Graver Tank* is attached hereto as Exhibit 1 to the Declaration of Cullen N. Pendleton ("Pendleton Decl.").

[23] Pendleton Decl., Exh. 1 (Jones patent) at col. 6, line 57 to col. 7, line 3.

[24] AB's assertion that *Graver Tank* "was not about whether one element could be substituted for another element" is incorrect. *Graver Tank*, 339 U.S. at 611 ("The question which thus emerges is whether the substitution of the manganese which is not an alkaline earth metal for the magnesium which is [precludes application of the Doctrine of Equivalents].").

[25] *Toro Co. v. White Consol. Indus*., 266 F.3d 1367, 1371 (Fed. Cir. 2001) (citations omitted).

**SOLEXA'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT; CASE NO: 07-CV-02845 WHA**

1    Under the proper legal standard, therefore, AB's argument regarding alleged differences

2    between "the manner and conditions" of the cleavage of the accused and recited bonds is legally

3    irrelevant. Unlike the claimed compositions at issue in *Graver Tank*, claim 1 of the '119 patent

4    recites a composition-of-matter having only structural limitations; it does not recite a process or

5    method of using them, as AB itself admits.[26] Because claim 1 does not recite limitations regarding

6    cleavage conditions or use of the recited probe in any particular method of DNA sequencing,

7    AB's insistence that alleged differences in these unclaimed properties are "central and substan-

8    tial" to the equivalents analysis is simply wrong.

9        **4.    The phosphorothiolate bond in AB's probes is equivalent to the phos-**
10                    **phoramidate bond recited in claim 1 of the '119 patent**

11       When the inquiry is properly focused on the legally relevant function, way, and result

12   (namely, that of the bond recited in the claim), rather than the way in which probes containing the

13   recited bond might perform an unrecited function or operate in an unrecited process, there is no

14   genuine factual dispute that the accused phosphorothiolate bond and the recited phosphoramidate

15   bond are equivalent. Solexa has come forward with ample evidence to support this conclusion. As

16   Dr. Backman stated in his expert report, both bonds function to "join two blocks of nucleotides

17   with a chemically scissile bond" by "interposing a chemically reactive heteroatom or heteroa-

18   tomic moiety between a 5′ phosphate and the 3′ position of a deoxyribose sugar" in order to "pro-

19   vide an incipient 5′ phosphate group that can be exposed upon cleavage of the scissile bond in the

20   oligonucleotide."[27] Dr. Backman also discusses in detail how both the accused and recited bonds

21

22

23      [26] When it suits its rhetorical purpose, AB admits that "the '119 patent claims . . . are [di-
24   rected] . . . solely to probes of a particular structure," (Docket No. 216 at n.4), rather than to, for
     example, methods of sequencing with those probes, yet almost in the same breath insists that the
     Court conduct its infringement analysis as if probes reciting limitations regarding the manner of
25   cleavage or methods of sequencing using these probes were claimed in the '119 patent. *See also*
26   Docket No. 215-13 (Metzker Dep. Tr.) at 95:6-96:16 (admitting claim 1 of the '119 does not re-
     quire cleavage of the claimed probes). AB cannot have it both ways.

27      [27] Docket No. 214-2 (Backman Expert Report on Infringement) at ¶ 113; *see also* Docket No.
28   75-9 ('119 patent) at col. 9, lines 32-54, col. 10, lines 16-40, and col. 17, lines 1-6.

**SOLEXA'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT; CASE NO: 07-CV-02845 WHA**

1    perform this function in the same way to achieve the same result.[28] His analysis is not only unre-

2    futed, AB's witnesses admitted that it is true.[29]

3        AB has not and cannot create a genuine issue of <u>material</u> fact precluding summary judg-

4    ment by offering argument about <u>legally irrelevant</u> facts.[30] The <u>only</u> difference AB alleges be-

5    tween the recited and accused bonds relates to a function that is admittedly not relevant to in-

6    fringement (AB's own expert, Dr. Metzker, admitted that "whether you . . . actually cleave [the

7    claimed probe] or not, I think, is not really an issue. It just contains a cleavable linker.")[31] Ex-

8    actly: the claimed and accused bonds are both "cleavable linkers" that perform their function in

9    the same way to achieve the same result in the context of the claimed structure. That these struc-

10   tures might have different suitabilities when used in specific methods for sequencing DNA is le-

11   gally irrelevant to infringement of this composition-of-matter claim that neither recites nor re-

12   quires such functions, and so cannot preclude summary judgment of infringement.[32]

13

14

_____

15   [28] Docket No. 214-2 (Backman Expert Report on Infringement) at ¶¶ 114-116.

16   [29] Docket No. 206-5 at 70:10-71:8; 78:23-79:1; 84:11-85:21 (admitting that function of the
     phosphorothiolate bond is to join the 3′ and 5′ portions of the probe together with a chemically
17   scissile bond by interposing the heteratom S (sulfur) in place of the normal O (oxygen) atom) and
     84:23-86:14 (admitting that result of the phosphorothiolate bond is a bond that can be cleaved to
18   regenerate an extendable end); Docket No. 215-13 (Metzker Dep. Tr.) at 93:8-25 (admitting that
     the S and N atoms perform their function in the same way) and 184:23-25 (admitting that
19   "whether . . . in the method you actually cleave it or not, I think, is not really at issue. It just con-
     tains a cleavable linker").

20
     [30] Furthermore, even crediting AB's witnesses' arguments about legally irrelevant facts does
21   not preclude summary judgment because equivalence "does not require complete identity for
     every purpose and in every respect. In determining equivalents, things . . . for most purposes dif-
22   ferent may sometimes be equivalents." *Graver Tank*, 339 U.S. at 610.

23   [31] Docket No. 215-13 (Metzker Dep. Tr.) at 184:15-25.

24   [32] AB incorrectly cites *Tanabe Seiyaku Co. v. United States Int'l Trade Comm'n*, 109 F.3d
     726, 733-34 (Fed. Cir. 1997), in support of the proposition that "substantial differences" exist
25   where an accused substitute produces "better results" than the claimed substance. In *Tanabe*, the
     Federal Circuit actually affirmed the lower court's limitation on the scope of equivalents because
26   the patentee "argued [to the PTO] that its process was patentable . . . because its five specific
     base-solvent combinations gave unexpectedly better results" and told foreign patent offices "that
27   its 'specific base-solvent combinations' distinguish[ed] its process from the prior art . . . ." *Id*. at
     733. AB has not pointed to any such arguments by Macevicz.
28

**SOLEXA'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF
INFRINGEMENT; CASE NO: 07-CV-02845 WHA**

**B.    Summary judgment of infringement of claim 1 of the '341 patent by the "one-base-encoding" version of the SOLiD System is justified**

The Court should resolve the issue of literal infringement of the "target polynucleotide" limitation of claim 1 of the '341 patent by issuing a claim construction order that construes the term to encompass known sequences, such as AB's "adapter." Although the Court included statements regarding this limitation in its Claim Construction Order, it should take stock of the substantial legal and factual bases discussed in Solexa's Opposition[33] and Dr. Backman's expert report[34] before issuing a binding construction.

Because AB admits that its primers (the "initializing oligonucleotides" recited in claim 1 of the '341 patent) hybridize to a binding region in the SOLiD System, the Court can immediately enter summary judgment that the one-base-encoding version of the SOLiD System literally infringed this limitation under the construction proposed by Solexa.[35] Alternatively, if the Court construes "target polynucleotide" so as to exclude known sequences, such as a binding region, it can nevertheless grant Solexa's motion for summary judgment that the one-base-encoding version of the SOLiD System infringed claim 1 of the '341 patent under the Doctrine of Equivalents.[36]

AB argues that Solexa is precluded from asserting equivalents to the "target polynucleo-tide" limitation because of alleged prosecution history estoppel and the "dedication disclosure rule." Neither argument has merit.

---

[33] Docket No. 213 at 13-17.

[34] Docket No. 214-2 at ¶¶ 128-139.

[35] In its Opposition (at 18-20), AB goes on at length as to why the two-base-encoding version of its SOLiD System should not be found to infringe the '341 or '597 patents. AB's inclusion of such arguments in its Opposition brief was improper because Solexa did not move for summary judgment that the two-base-encoding system infringed those patents. If AB wanted an extension of the 25-page-limit provided in L.R. 7-4(b) for its own motion, it was required to seek relief from the Court pursuant to L.R. 7-11 prior to the due date for its motion. Because AB failed to do so, the Court should not consider any of the arguments regarding non-infringement by the two-base-encoding SOLiD System on pp. 18-20 of AB's Opposition.

[36] *Id.* at ¶ 142.

1   AB's arguments regarding alleged "prosecution history estoppel" repeat those in its Mo-

2   tion; in the interest of brevity, Solexa will not repeat its responses set out in its Opposition.[37]

3   As for its new "dedication disclosure" argument regarding claim 1 of the '341 patent, AB

4   should be foreclosed from relying upon this argument because it never disclosed this defense to

5   Solexa during discovery in this case.

6   In any event, in his expert report, Dr. Backman explained why, even under a construction

7   of "target polynucleotide" that excludes known sequences such as a binding region, hybridization

8   to the binding region satisfies the claim limitation under the Doctrine of Equivalents. At his depo-

9   sition, Dr. Backman also testified that alternatives exist to the use of a binding region for provid-

10  ing a starting point for extension of the primer.[38] In response to this evidence, AB offered only

11  attorney argument and statements from AB's expert that only partially address Dr. Backman's

12  arguments. Neither creates a material issue of fact justifying denial of Solexa's motion.

13  AB's attorney argument that having a "known starting point" for sequencing is a "critical

14  and substantial difference" between hybridizing to a binding region and to a target polynucleotide

15  (if the latter is construed to exclude the former) does not create a genuine issue of material fact

16  because attorney argument is not evidence.[39] In addition, even if it were accepted, this argument

17  does not contradict Dr. Backman's testimony that partially sequencing a target polynucleotide

18  (which results in having a "known starting point") is an equivalent. AB offers no actual evidence

19  that one "known starting point" is demonstrably superior to another.

20  Dr. Metzker's report also does not establish a material issue of fact precluding summary

21  judgment because, at best, his report takes issue with only part of Dr. Backman's argument re-

22  garding the Doctrine of Equivalents: specifically, whether hybridization of a primer to an *un-

23  known portion* of a target polynucleotide is equivalent to using a separate, known binding region

24  attached to one end of the target polynucleotide. As stated above, Dr. Backman has and will tes-

25  [37] Docket No. 213 at 18-20

26  [38] Pendleton Decl., Exh. 3 (Backman Dep. Tr.) at 72:2-73:14 and 76:2-21.

27  [39] *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1581 (Fed. Cir. 1989) ("Attorneys' argument is no

28  substitute for evidence.").

**SOLEXA'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT; CASE NO: 07-CV-02845 WHA**

1    tify that, for example, hybridization of a primer to a *known portion* of the target polynucleotide is

2    functionally equivalent to hybridizing it to a known portion of a binding region,[40] because, e.g.,

3    the target polynucleotide could be partially sequenced using alternative sequencing techniques

4    (such as Sanger sequencing), and primers could be designed that are complementary to these se-

5    quences of the target polynucleotide, allowing the rest of the sequence to be obtained by the

6    methods claimed in the patents-in-suit. Dr. Quackenbush also testified that this technique, known

7    as "primer walking," was well-known and frequently employed by those of ordinary skill in the

8    art.[41]

9          Dr. Metzker never addresses Dr. Backman's argument that the target polynucleotide could

10   be partially sequenced using known techniques so that an initializing oligonucleotide could be

11   designed and then used in the Macevicz method, and AB's attorney argument does not satisfy its

12   burden of coming forward with evidence to establish a genuine issue of material fact precluding

13   summary judgment. Because AB has failed to acknowledge, much less refute, Dr. Backman's ar-

14   gument, summary judgment of infringement under the Doctrine of Equivalents is appropriate.

15         **C.     Summary judgment of infringement of claim 1 of the '597 patent is justified**

16         AB offers no evidence whatsoever to contradict Solexa's evidence that the use of the one-

17   base-encoding version of the SOLiD System by AB's predecessor, Agencourt Personal Genomics

18   ("APG"), infringed claim 1 of the '597 patent. Instead, AB only offers the purely legal argument

19   that its infringement should be excused as "*de minimis*" infringement. AB's argument fails to de-

20   feat Solexa's motion for summary judgment.

21         AB alleges that the one-base-encoding version of the SOLiD system "never progressed

22   beyond proof of concept and was never sold or offered to the public."[42] Even accepting these as-

23   sertions as true for the purpose of the instant motion, AB's infringement was not *de minimis*.

24

25         [40] Pendleton Decl., Exh. 3 (Backman Dep. Tr.) at 72:2-73:14 and 76:2-21; Docket No. 214-2

26   at ¶¶ 139 and 142.

27         [41] Pendleton Decl., Exh. 4 (Quackenbush Dep. Tr.) at 52:8-56:2.

28         [42] Docket No. 216 at 17.

**SOLEXA'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT; CASE NO: 07-CV-02845 WHA**

1    The Federal Circuit "has construed both the experimental use and *de minimis* exceptions

2 very narrowly," including in the very case cited by AB.[43] AB's assertion that it never sold the

3 one-base-encoding version of the SOLiD System, even if true, is immaterial because "[i]t is well-

4 established, in particular, that the use of a patented invention, without either manufacture or sale,

5 is actionable,"[44] and "[t]he so-called *de minimis* exception . . . exists to excuse only those limited

6 manufactures and usages which are definitely non-commercial in nature or which do not take ad-

7 vantage of the teachings of the patent."[45]

8    There can be no factual dispute that AB's use of the one-base-encoding SOLiD System

9 for sequencing DNA was not a *de minimis* use. Use of the system for any commercial purpose,

10 including "demonstrat[ing] the usefulness of the methods performed by [the accused] machines"

11 means the use was not *de minimis*, whether or not sales occurred.[46] Indeed, in the very cases cited

12 by AB, the courts found no such exception even where the accused infringer did far less use than

13 what AB has already admitted. For example, the plaintiff in the *Baxter Diagnostics* case[47] cited

14 by AB argued that the *de minimis* defense applied because its "manufacture of a single[-layer]

15 breadboard was insignificant in amount and because it terminated its experimentation with the

16 breadboard at the *de minimis* stage." The district court disagreed, holding that:

17    experimentation with the single-layer breadboard surpassed the *de minimis* stage
when Baxter had a cognizable commercial purpose for the experimentation. . . .
18    The fact that Baxter never actually marketed the breadboard does not change the
fact that it developed the device in furtherance of a commercial purpose, not to
19    gratify its philosophical taste or curiosity.[48]

20    The plaintiff's use in *Baxter Diagnostics* was not *de minimis* because it "used design con-

21 cepts and other experimental data to construct the breadboard for its double-layer sensor and

22

23    [43] *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1349 (Fed. Cir. 2000).

24    [44] *Roche Prods. v. Bolar Pharmaceutical Co.*, 733 F.2d 858, 861 (Fed. Cir. 1984).

25    [45] *Hollymatic Corp. v. Framarx Corp.*, 1996 U.S. Dist. LEXIS 17712, *12 (W.D. Mich. Oct. 9, 1996).

26    [46] *Embrex*, 216 F.3d at 1349 (affirming denial of JMOL on infringement).

27    [47] *Baxter Diagnostics, Inc. v. AVL Scientific Corp.*, 924 F. Supp. 994, 1016 (C.D. Cal. 1996).

28    [48] *Id.*

SOLEXA'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF
INFRINGEMENT; CASE NO: 07-CV-02845 WHA

1   commercial . . . instrument. It did not terminate its experimentation at the *de minimis* state if it

2   employed data from the single-layer breadboard to make its commercial instrument."[49]

3        The facts here admit of no dispute precluding summary judgment: AB made multiple one-

4   base-encoding versions of the SOLiD System and used them to sequence DNA in furtherance of

5   its commercial purpose of developing its two-base-encoding instrument,[50] not "to gratify philoso-

6   phical taste or curiosity." The use of the one-base-encoding instruments not only provided "data .

7   . . to make its commercial instruments" (which alone is sufficient to preclude application of the *de*

8   *minimis* exception under the holding in *Baxter Diagnostics*), the very same instruments are still

9   being used to perform sequencing in the two-base-encoding configuration.[51]

10       At all times, AB's work was avowedly commercial in nature, and therefore does not fall

11  under any *de minimis* or "experimental use" exception. AB not only used its work on the one-

12  base-encoding system to secure money for its business from the National Human Genome Re-

13  search Institute,[52] one of AB's stated goals in its grant application was to "[d]evelop an instru-

14  ment capable of supporting an in-house commercial resequencing service . . . ."[53] AB's use of the

15  one-base-encoding instrument was prolonged and costly: although AB began work on the system

16  as early as September 2004[54] and began ordering one-base-encoding oligonucleotides in 2005,[55] it

17  was still spending significant sums of money to order batches of one-base-encoding oligonucleo-

18  tide probes in late January 2006,[56] and had a small fortune in these probes in its laboratory stocks

19

20  [49] *Id.*

21  [50] Pendleton Decl., Exh. 2 (AB 30(b)(6) Dep. Tr.) at 34:17-36:2 (admitting AB made and used
    at least two machines, code-named "Flo" and "Amy," to perform DNA sequencing in furtherance
22  of its commercial goals).

23  [51] Pendleton Decl., Exh. 2 (AB 30(b)(6) Dep. Tr.) at 34:17-37:22.

24  [52] *Id.* at 150:15-151:16.

    [53] Pendleton Decl., Exh. 5 (NHGRI Progress Report) at AB00144357 and AB00144396-405.
25
    [54] Pendleton Decl., Exh. 2 (AB 30(b)(6) Dep. Tr.) at 150:24-152:13.
26
    [55] Pendleton Decl., Exh. 6 at AB00147319 (*e.g.*, "PO" (purchase order) nos. 14401, 14518,
27  14672, 14776, 15048, 15075, and 15178).

28  [56] *Id.* at AB00147319-20 (*e.g.*, PO nos. 15283, part of 15294, and 15386) and Docket No.
    206-5 at 156:2-13.

**SOLEXA'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF
INFRINGEMENT; CASE NO: 07-CV-02845 WHA**

at least as late as the end of March 2006.[57] Indeed, the one-base-encoding system was still in active use in both February[58] and April 2006[59] to "demonstrate the usefulness of the methods performed by [the accused] machines" to AB during the "due diligence" period preceding AB's acquisition of APG.[60] This is the very same purpose that the Federal Circuit held was "expressly commercial" in *Embrex*.[61]

AB attempts to portray the practice of the one-base-encoding and two-base-encoding versions of the SOLiD System by APG as "trivial" during the period of APG's development of the SOLiD System. It was not. APG's developmental work lead AB to pay APG $120 million for the SOLID technology in mid-2006, when it cost APG but $5-10 million to develop SOLiD.[62] Use of the patented methods, even for developmental purposes, constituted infringement under 35 U.S.C. § 271(a). Illumina is seeking $15 million as a reasonable royalty for a "developmental use" license to APG (which permits technology access for product development). It is separate from the later commercial license under which AB would be expected to pay a 15% royalty per each SOLiD System sale.[63]

---

[57] Pendleton Decl., Exh. 2 (AB 30(b)(6) Dep. Tr.) at 143:17-146:6 and Pendleton Decl., Exh. 7 at AB00136587-91.

[58] Pendleton Decl., Exh. 2 (AB 30(b)(6) Dep. Tr.) at 162:5-164:12 and Exh. 9 at AB00276277 ("Produce images for 1-base encoding base caller (8-10) cycles").

[59] Pendleton Decl., Exh. 8 at AB00276286 (showing "1- and 2-base encoding validation-DONE" and "1-base, Target: single 17 bases-DONE") and Exh. 2 (AB 30(b)(6) Dep. Tr.) at 164:13-166:6 (explaining these tasks were completed in April 2006).

[60] Due diligence for AB's acquisition of Agencourt Personal Genomics (code-named "Project Garnet") began in March 2006 and continued until APG was acquired in July 2006. *Id.* at 148:2-14.

[61] *Embrex*, 216 F.3d at 1349.

[62] Pendleton Decl., Exh. 10 (Cox Dep. Tr.) at 63:4-64:9.

[63] Pendleton Decl., Exh. 11 (Siuta Dep. Tr.) at 49:20-50:6; 62:6-22; 65:3-4; and 98:1-21.

---

**SOLEXA'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT; CASE NO: 07-CV-02845 WHA**

### D.   AB's affirmative defenses do not preclude summary judgment of infringement in Solexa's favor

AB's discussion of its ownership defenses[64] is irrelevant to Solexa's instant motion for partial summary judgment on select issues of infringement. AB's affirmative ownership defenses depend on the outcome of its state-law claims, which the Court has refused to decide by summary judgment, and Rule 56(d) expressly allows the Court to adjudicate less than the whole action on a motion for summary judgment.[65] This Court recognized that partial summary judgment limited to infringement may be warranted when it ordered that "each side will have one more summary judgment motion, limited to 25 pages, limited to the issues of infringement and invalidity."[66]

Indeed, the very same paragraph of the treatise that AB quotes[67] regarding summary judgment explains Rule 56(d) as follows:

> Of course, if the case involves other defenses that raise no material issues of fact they may be the subject of a partial summary adjudication in plaintiff's favor in accordance with the procedure prescribed in Rule 56(d). In this way, even though the action is not terminated, the summary-judgment motion will have proven useful in advancing the litigation toward its ultimate disposition.[68]

In this instance, Solexa seeks partial summary judgment regarding AB's noninfringement defense. If the Court grants Solexa's motion for partial summary judgment, AB's ownership claims will remain for trial (in addition to issues of infringement not raised in Solexa's motion), but the issues for trial will be simplified. Accordingly, AB's ownership arguments cannot serve as a basis for denying Solexa's motion for partial summary judgment.

## III.   CONCLUSION

For at least the reasons stated above, AB has failed to raise a genuine issue as to any material fact and Solexa's motion for partial summary judgment of infringement should be granted.

---

[64] AB's Opp. at 20-24.

[65] Fed. R. Civ. P. 56(d).

[66] Docket No. 180 at 3.

[67] AB's Opp. at 20.

[68] 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2734, at 256-59 (3d ed. 1998).

1

2       DATED: August 7, 2008

3                                          _Cullen Pendleton_
                                           _____
4                                          KEVIN M. FLOWERS (admitted *pro hac vice*)
                                           THOMAS I. ROSS (admitted *pro hac vice*)
5                                          JEFFREY H. DEAN (admitted *pro hac vice*)
                                           JOHN R. LABBE (admitted *pro hac vice*)
6                                          CULLEN N. PENDLETON (admitted *pro hac vice*)
                                           MARK H. IZRAELEWICZ (admitted *pro hac vice*)
7                                          MARSHALL, GERSTEIN & BORUN LLP
                                           6300 Sears Tower
8                                          233 South Wacker Drive
                                           Chicago, Illinois 60606-6357
9                                          (312) 474-6300 (telephone)
                                           (312) 474-0448 (facsimile)
10                                         E-Mail: kflowers@marshallip.com
                                           E-Mail: tross@marshallip.com
11                                         E-Mail: jdean@marshallip.com
                                           E-Mail: jlabbe@marshallip.com
12                                         E-Mail: cpendleton@marshallip.com
                                           E-Mail: mizraelewicz@marshallip.com
13

14                                         Counsel for Defendants
                                           ILLUMINA, INC., SOLEXA, INC.,
15                                         and STEPHEN C. MACEVICZ
16

17

18

19

20

21

22

23

24

25

26

27

28

**SOLEXA'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF
INFRINGEMENT; CASE NO: 07-CV-02845 WHA**