# Exhibit 4

# Deposition of
# JOHN QUACKENBUSH, PhD

**Date:** July 1, 2008
**Volume:** 1

**Case:** APPLERA v. ILLUMINA

SHARI MOSS & ASSOCIATES
Phone: (650) 692-8900  (415) 402-0004
Fax: (650) 692-8909
Email: sharimoss@sharimoss.com
Internet: www.iptranscripts.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

```
--------------------------- x
APPLERA CORPORATION -
APPLIED BIOSYSTEMS GROUP,
a Delaware corporation,

        Plaintiff,

v.                                    Case Number
                                      C07 02845 WHA
ILLUMINA, INC, a Delaware
corporation, SOLEXA, INC.,
a Delaware corporation,
and STEPHEN C. MACEVICZ,
an individual,

        Defendants.
--------------------------- x
```

DEPOSITION OF JOHN QUACKENBUSH, Ph.D., a

witness called by and on behalf of the

Plaintiff, taken pursuant to the applicable

provisions of the Federal Rules of Civil

Procedure, before Dana Welch, CSR, Registered

Professional Reporter, Certified Realtime

Reporter, and Notary Public, in and for the

Commonwealth of Massachusetts, at Regus

Center, 60 State Street, Suite 700, Boston,

Massachusetts, on July 1, 2008, commencing at

8:59 a.m.

SHARI MOSS & ASSOCIATES   (650) 692-8900

```
 1   APPEARANCES:

 2   For the Plaintiff:

 3         MORRISON & FOERSTER LLP

 4         12531 High Bluff Drive, Suite 100

 5         San Diego, California  92130-2040

 6         858.720.5100  Fax:  858.720.5125

 7         scomer@mofo.com

 8         By:  Steven E. Comer, Esq.

 9

10   For the Defendants:

11         MARSHALL, GERSTEIN & BORUN LLP

12          233 South Wacker Drive

13          6300 Sears Tower

14          Chicago, IL 60606-6357

15          312.474.6300  Fax: 312.474.0448

16          mizraelewicz@marshallip.com

17          By:  Mark Izraelewicz, Esq.

18

19

20

21   Also Present:  George Dobrentey, Videographer

22

23

24

25
```

```
 1                     I N D E X

 2   WITNESS:

 3     JOHN QUACKENBUSH, Ph.D.

 4

 5   EXAMINATION:                                    PAGE:

 6     BY MR. COMER                                    5

 7   EXHIBITS MARKED:

 8    NO.   DESCRIPTION                              PAGE:

 9     Exhibit No. 510, Expert Rebuttal Statement     5

10     of John E. Quackenbush, Ph.D.

11     Exhibit No. 511, U.S. Patent Number            5

12     4,883,750

13

14

15

16   Exhibits appended to transcript.

17

18

19

20

21

22

23

24

25
```

1                P R O C E E D I N G S
2         THE VIDEOGRAPHER:  Good morning.  We are
3     recording and are now on the record.  Today's
4     date is July 1st, 2008 and the time is
5     8:59 a.m.  My name is George Dobrentey.  I'm a
6     legal videographer for Budd Legal Video.
7         This is the deposition of John Quackenbush
8     in the matter of Applera Corporation versus
9     Illumina, Incorporated, in the U.S. District
10    Court for the Northern District of California,
11    San Francisco Division, case number C07 02845.
12        This deposition is being taken at the
13    Regus Center in Boston, Massachusetts.  The
14    court reporter is Dana Welch.
15        Counsel will state their appearances and
16    the court reporter will administer the oath.
17        MR. COMER:  Steve Comer for Applied
18    Biosystems.
19        MR IZRAELEWICZ:  Mark Izraelewicz for
20    defendants.
21             JOHN QUACKENBUSH, Ph.D.,
22  having been satisfactorily identified by the
23  production of his driver's license, and duly sworn
24  by the Notary Public, was examined and testified as
25  follows:

```
 1          in this context?
 2     BY MR. COMER:
 3          Q.   Are you familiar with the term "binding
 4     region" as it's used in the '341 patent?
 5          A.   Can you point me to the definition here?
 6          Q.   Take a look at column 4 --
 7          A.   Okay.
 8          Q.   -- starting at about line 46.  It says,
 9     "Template 20 comprising a polynucleotide 50 of
10     unknown sequence and a binding region 40 is
11     attached to solid phase support 10."
12          Do you see that?
13          A.   Yes.  And this, if you look above, refers
14     to figure 1.
15          Q.   Okay.
16          A.   So figure 1 is here.  And the template 50
17     comprise --
18          Q.   The template --
19          A.   -- "the template 20 comprising a
20     polynucleotide 50 of unknown sequence and binding
21     region 40."
22          So here we have 20, which represents the
23     target polynucleotide sequence referred to here --
24     or sorry -- it doesn't say target polynucleotide.
25     It says a polynucleotide, not target.
```

1         "So template 20 comprising a
2    polynucleotide of unknown sequence and a binding
3    region 40."  And so down on the bottom in fact in
4    figure 1 you can see that 20 is decomposed into two
5    regions:  50, which is a polynucleotide of unknown
6    sequence, and 40, a binding region.
7         Q.  Do you know -- well, what is the binding
8    region in 40?
9         A.  So DNA sequencing methodologies in the
10   early '90s were largely being debated in the
11   community as to what the best approach would be to
12   sequencing the genome.
13        Some people advocated a strategy known as
14   "primer walking."  And in primer walking what one
15   would do is sequence -- design a priming sequence
16   which would initialize sequencing reactions.  And
17   that would bind to a specific region of the genome.
18   And then DNA sequence would be collected and
19   extended from that priming region.  And based on
20   analysis of that sequence, a second DNA primer
21   would be designed and that process would be
22   iterated. So one would literally take large steps
23   across the genome.
24        And at the time, sequencing reads were
25   probably about 350 bases in length, so one would

1  step essentially 250 to 300 bases in each
2  sequencing read, along one strand of the DNA and
3  then back along the other.
4        An alternative approach, which was the
5  approach which was largely used for sequencing the
6  genome, was an approach in which DNA was cloned
7  into a bacterial vector.
8        So in a bacteria, the genome of the
9  bacteria itself comprises most of the DNA.  In
10 E. coli, which is the bacteria that was used as the
11 host for most human DNA for sequencing, that
12 bacterial genome is about 4.8 million bases in
13 length.
14       But in bacteria, there are a number of
15 extra chromosomal elements called plasmids.  And
16 DNA sequencing technology and cloning technology
17 largely arose out of co-opting those plasmids to
18 replicate DNA.
19       So what one would do is one would take
20 human DNA, shear it into smaller fragments using
21 physical, chemical or enzymatic means, and then
22 clone it, insert it into a bacterial plasmid, and
23 then reintroduce that plasmid into a bacteria.  And
24 that bacteria would then be responsible for
25 replicating the DNA, making many, many copies of

1    that small region.
2            One would then extract that bacterial
3    plasmid DNA, which is very easy to get, purify it,
4    and use that as a template for sequencing.
5            And the advantage of that approach is that
6    any one of those human fragments -- and you'd have
7    billions of human fragments -- if you wanted to
8    sequence the whole human genome, each one would be
9    cloned into the same bacteria.  So rather than
10   designing new priming sites across the genome, what
11   one would simply do is initialize that sequencing
12   from that known priming site.
13           And so I believe what they're trying to
14   capture, what Macevicz is trying to capture in
15   figure 1 of the '341 patent, is that approach to
16   sequencing, in which a piece of DNA might be cloned
17   into a bacterial vector or a viral vector, such as
18   M13, or might have what we refer to as an adapter
19   sequence attached to it, to introduce a universal
20   priming site to initialize the sequencing reaction.
21           So if we go back to this description, the
22   template 20 is comprising a polynucleotide of
23   unknown sequence, so that would in this case be the
24   human sequence which is cloned in, and a binding
25   region, and that binding region would be a sequence

1    which was introduced simply to facilitate the
2    sequencing process.
3         Q.   Would you consider that binding region to
4    be part of the target?
5         A.   So --
6              MR. IZRAELEWICZ:   Objection.  Vague and
7         ambiguous.
8              THE WITNESS:   -- if we read this
9         description of figure 1, what we're told here
10        is that the template comprises a
11        polynucleotide of unknown sequence in this
12        binding region.  And so this binding region
13        would initialize sequencing of the
14        polynucleotide of unknown sequence.
15   BY MR. COMER:
16        Q.   So in the part that you just read, so the
17   template comprises a polynucleotide of unknown
18   sequence, right?
19        A.   That -- the -- what this says is yes, the
20   template comprises a polynucleotide of unknown
21   sequence.
22        Q.   And the binding region 40 --
23        A.   Yes.
24        Q.   -- is that also part of the template?
25        A.   Well, it says the template comprises the

1    polynucleotide of unknown sequence and a binding
2    region.  So that would suggest to me that in fact
3    that template is comprised of both those elements.
4        Q.  So the way Macevicz uses the term "target
5    polynucleotide," in your view, does it include the
6    binding region?
7            MR. IZRAELEWICZ:  Objection.  Vague and
8        ambiguous.
9            THE WITNESS:  So if we refer back to
10       claim 1, claim 1 describes a method for
11       determining a sequence of nucleotides in a
12       target polynucleotide, a method comprising the
13       following steps.  And if we refer back to
14       figure 1, what we're told is the template
15       which is used for DNA sequence comprises the
16       polynucleotide and this binding region.
17   BY MR. COMER:
18       Q.  Okay.  So that the template is made up of
19   the binding region and the target polynucleotide;
20   is that correct?
21       A.  Well, according to what's in column 4, the
22   template comprises a polynucleotide of unknown
23   sequence and a binding region.  And that's what's
24   shown in figure 1.
25       Q.  So the -- the target sequence is what's

Page 58

1      shown by 50 in figure 1; is that right?
2              MR. IZRAELEWICZ:  Objection.
3              THE WITNESS:  Well, according to the
4        figure legend, which is in column 4, the
5        template 20, which is that entire stretch of
6        DNA, all right, which starts from that ball
7        which represents what's described here in
8        column 4 as a solid support, 20 is the
9        template and it's comprised of the
10       polynucleotide 50, which is this portion on
11       the right-hand side of the figure to the right
12       of the dotted line, and the binding region,
13       which is to the left of that dotted line.
14   BY MR. COMER:
15       Q.  Okay.  Now, on figure 1, so it has -- 10,
16   item 10, that's the bead, right?
17       A.  Well, according to the legend here, it's
18   attached to a solid phase support.  So it doesn't
19   specify exactly what that support is here.  I
20   believe there are other places in this patent which
21   describe a number of different supports that can be
22   used.  But in the figure here, there's no
23   specification as to what precisely that solid
24   support is.
25       Q.  Okay.  10 is a solid support then?