```
 1                  UNITED STATES DISTRICT COURT

 2                 NORTHERN DISTRICT OF CALIFORNIA

 3                    SAN FRANCISCO DIVISION

 4       ---------------------------------------x

 5    APPLERA CORPORATION - APPLIED

 6    BIOSYSTEMS GROUP, a Delaware

 7    corporation,

 8                          Plaintiff/

 9                          Counterdefendant,

10        -against-                   Civil Action No.

11    ILLUMINA, INC., a Delaware      07-CV-02845 WHA

12    corporation, SOLEXA, INC., a

13    Delaware corporation, and

14    STEPHEN C. MACEVICZ, an individual,

15                          Defendants/

16                          Counterclaimants.

17       ---------------------------------------x

18

19                    VIDEOTAPED DEPOSITION OF:

20                    GERALD J. SIUTA, Ph.D.

21                    Tuesday, June 10, 2008

22                    New York, New York

23

24

25    Reported in stenotype by:

      Rich Germosen, CCR, CRCR, RPR, CRR, CLR
```

1          A.      Because it's twenty-five divided

2     by five hundred twenty-five.

3          Q.      So whatever that comes out to be

4     you consider that a small percentage?

5          A.      It's less than ten percent.

6          Q.      Do you have any opinion on the

7     date of the hypothetical negotiation?

8          A.      Yes.  Two different ones.  For the

9     one base and two based would be September of 2005

10    and that would be APG and for on -- that's for

11    the development.  And then June for 2007 for AB

12    selling the SOLiD instrument as well as the

13    consumables.

14         Q.      So your opinion is that there

15    would be two hypothetical negotiations?

16         A.      Yes.

17         Q.      What is that opinion based on?

18         A.      The fact that APG at the time is

19    just developing and would want to continue

20    developing to get that potential product to a

21    point of being commercializable and the second

22    date being when it's actually commercialized.

23         Q.      Why wouldn't the hypothetical

24    negotiation have taken place when the patents

25    issued?

Page 70

1    infringement?

2            A.    I -- I guess if you talk in terms

3    of first infringement, the first has to do with

4    using and the second is the actual selling of the

5    products.

6            Q.    Okay.

7                  So actual selling of the products

8    is a second or subsequent infringement, not the

9    first infringement?

10           A.    Yes.

11           Q.    Is that right?

12           A.    Yes.

13           Q.    Is there any economic basis for

14   your opinion that there would be two hypothetical

15   negotiations?

16           A.    Yes, the first because in a

17   development there would not be any running

18   royalties on sales because there are no

19   commercial sales.  And the second, the June '07

20   would be the infringement strictly based upon

21   sales.

22           Q.    So is it your opinion that

23   Agencourt would have paid fifteen million dollars

24   in September 2005 and then started a new

25   negotiation twenty-two months later?

 1          A.      Yes.

 2          Q.      And is it your opinion that

 3    Agencourt would have paid fifteen million dollars

 4    just to test the patented technology?

 5          A.      To continue to work on the

 6    patented technology.

 7          Q.      So you're saying that Agencourt

 8    would have paid fifteen million dollars without

 9    receiving any rights to use the technology

10    commercially?

11          A.      Yes.

12          Q.      Why would Agencourt have paid

13    fifteen million dollars without any rights to use

14    the patented technology commercially?

15          A.      Because if they didn't they would

16    not be able to continue using it and --

17          Q.      Why would they want to continue

18    using it if they didn't have the right to

19    commercialize it?

20          A.      To get to the point where they

21    actually had a product that they could sell and

22    then negotiate the second phase of the agreement

23    at that particular time.

24          Q.      So your opinion is that Agencourt

25    wanted to use the technology so it could develop

1    September 2005?

2              A.     I'm not sure I understand that.

3              Q.     You have two hypothetical

4    negotiations in your expert report?

5              A.     Okay.

6              Q.     Is that right?

7              A.     Yes.

8              Q.     And one is in September 2005 and

9    the other is in July 2007, is that right?

10             A.     Right.

11             Q.     If we assume that there should be

12   only one hypothetical negotiation in September

13   2005, do you have any opinion on the appropriate

14   damages in this case?

15             A.     No.

16             Q.     If we assume that there is only

17   one hypothetical negotiation in July 2007, do you

18   have any opinion on the appropriate damages in

19   this case?

20             A.     No, because I did not consider

21   only one hypothetical negotiation.

22             Q.     So you have no opinion on the

23   damages that are warranted in this case if there

24   is only one hypothetical negotiation?

25             A.     No.  I -- I clarify that.  The

1    2000 -- I have created I believe it's Section 5,

2    5 and 6 which would be the hypothetical

3    negotiation occurring in June of 2007 which is

4    strictly on the sales of the SOLiD and the

5    consumables.

6          Q.    Can you refer me to the specific

7    page number that you're discussing?

8          A.    Yes.  Page 29.  Section 5 is the

9    damages for sale of the SOLiD analyzer and the

10   ligation sequencing products and then 6 is for

11   simply for the probe itself or just the probe and

12   6 is on Page 39.

13         Q.    Okay.

14               So what is your opinion as to the

15   appropriate damages if there is only one

16   hypothetical negotiation in 2007?

17         A.    Again, I didn't do simply the one

18   because one -- I didn't look at simply if there

19   was only one.

20         Q.    Okay.

21               So Sections 5 and 6 would not

22   provide an independent opinion --

23         A.    No.

24         Q.    -- on --

25         A.    No, no.

1    Q.    I'm sorry, let me finish the

2  question.

3    A.    I'm sorry.

4    Q.    So Sections 5 and 6 would not

5  provide your opinion on the appropriate damages

6  if there is only one hypothetical negotiation in

7  that, when that takes place in 2007?

8    A.    Right.

9    Q.    And you have no opinion on --

10    A.    No.

11    Q.    -- what the appropriate damages --

12    A.    No.

13    Q.    -- would be in that case?

14    A.    Because I didn't -- that's not

15  what I considered.

16    Q.    Do you know if Agencourt saw the

17  patents when it was developing it's next

18  generation technology?

19    A.    I don't know that.

20    Q.    Would it matter to your opinion if

21  Agencourt never saw the patents until after its

22  technology was largely developed?

23    A.    If Agencourt?

24    Q.    Do you want me to repeat the

25  question?

**EXHIBIT 5**

```
1                      C E R T I F I C A T E
2        STATE OF  New Jersey  )
                               )  :ss.
3        COUNTY OF _____ )
4                      I, RICH GERMOSEN, a Certified Court
5        Reporter, (License No. XI01847), Certified Realtime
6        Court Reporter-NJ, (License No. XR00168), NCRA
7        Registered Professional Reporter, NCRA Certified
8        Realtime Reporter, Certified LiveNote Reporter, and
9        Notary Public within and for the States of New York
10       and New Jersey, do hereby certify:
11                     That  GERALD SIUTA, PhD , the witness
12       whose deposition is hereinbefore set forth, having
13       been duly sworn by a Notary Public of the States of
14       New York and New Jersey, and that such deposition is
15       a true record of the testimony of said witness.
16                     I further certify that I am not related
17       to any of the parties to this action by blood or
18       marriage, and that I am in no way interested in the
19       outcome of this matter.
20                     IN WITNESS WHEREOF, I have hereunto set
21       my hand this 19th day of    JUNE      2008.
22
23                          _____
24       RICH GERMOSEN, CCR, CRCR, RPR, CRR, CLR
         LICENSE NO. XI01847
25       LICENSE NO. XR00168
```

**EXHIBIT 5**