THOMAS I. ROSS (admitted *pro hac vice*)
KEVIN M. FLOWERS (admitted *pro hac vice*)
JEFFREY H. DEAN (admitted *pro hac vice*)
JOHN R. LABBE (admitted *pro hac vice*)
CULLEN N. PENDLETON (admitted *pro hac vice*)
MARK H. IZRAELEWICZ (admitted *pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606-6357
(312) 474-6300 (telephone)
(312) 474-0448 (facsimile)
E-Mail: kflowers@marshallip.com
E-Mail: tross@marshallip.com
E-Mail: jdean@marshallip.com
E-Mail: jlabbe@marshallip.com
E-Mail: cpendleton@marshallip.com
E-Mail: mizraelewicz@marshallip.com

Counsel for Defendants
ILLUMINA, INC., SOLEXA, INC.,
and STEPHEN C. MACEVICZ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| APPLERA CORPORATION—APPLIED BIOSYSTEMS GROUP, a Delaware corporation, <br><br> Plaintiff/Counterdefendant, <br><br> v. <br><br> ILLUMINA, INC., a Delaware corporation, SOLEXA, INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual, <br><br> Defendants/Counterclaimants. | Case No. 07-CV-02845 WHA <br><br> Judge William H. Alsup <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1 TO EXCLUDE TESTIMONY RE INFRINGEMENT DAMAGES BY 1-BASE ENCODING PROTOTYPE** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

To account for alternative outcomes in the jury verdict on infringement in this case involving multiple patents and multiple infringers, Dr. Siuta's Expert Report On Infringement Damages, served May 30, 2008, presented three scenarios for patent infringement damages. Now, accounting for this Court's August 22, 2008, Order[1] granting in part AB's motion for summary judgment, two of these scenarios continue to apply for the infringement case going to trial. Since the remaining two damages scenarios presented by Dr. Siuta in his Report are not unreasonable, the jury should be allowed to hear Dr. Siuta's testimony. The statement AB cites from Dr. Siuta's deposition certainly does not refute his Report; and therefore AB's Motion In Limine No. 1 should be denied.

## II.    BACKGROUND

This patent infringement action involves three patents owned by Solexa: '341, '597, and '119. As demonstrated in the recent briefing on the parties' cross motions for summary judgment, AB is charged with infringement of the patents-in-suit based on its commercialization of a "two-base encoding" version of a so-called SOLiD System technology, commencing July 2007. However, a further aspect of this patent infringement case is that an independent research company, Agencourt Personal Genomics ("APG"), separately developed the SOLiD System technology. APG was not a commercial entity but did make and use a "one-base encoding" version, as well as a "two-base encoding" version, of the SOLiD technology, commencing in 2005 and up to at least April 2006. AB acquired APG in July 2006 in order to then commercialize some version of the SOLiD System.

Both entities, AB and APG, are contended by Solexa to be liable for infringement of the patents; however, their alleged infringing activities are of a different nature and occurred at different times. Also, the '119 patent is directed to an oligonucleotide probe which APG is charged

---

[1] Docket No. 232.

to have infringed with its "one-base encoding" and "two-base encoding" versions and AB infringes by virtue of sale of its "two-base" version.[2]

Dr. Siuta's Expert Report made three analyses for reasonable royalty infringement damages.

1.    APG's development of the SOLiD System involved making and using the "one-base" version and the "two-base" version, such that APG would require a royalty-bearing license under the patents, even though APG was not producing or selling a commercial product. Dr. Siuta concluded that APG would require a technology access/developmental use license (which would not extend to commercial sales, but would allow for a further commercial license to be later negotiated with a commercializing entity).[3]

2.    AB's commercialization of the SOLiD technology into a commercial product was the "two-base" version. AB's sales activity would require a commercial product license in which a royalty rate would be applied to the sale of the pertaining equipment.[4]

_____

[2] In its motion brief, AB states that "a one-base encoding prototype…was used only once by Agencourt Personal Genomics." No authority for that statement is given. However, Solexa has recently noted evidence showing that APG constructed multiple "one-base encoding" machines, used them continuously from mid-2005 up to at least April 2006, and obtained a large inventory of "one-base" probes. Solexa's Reply In Support Of Its Motion For Partial Summary Judgment Of Infringement (Docket No. 221) at pp.13-14.

[3] "Since APG admittedly began operating the one-base version and the two-base version of the SOLiD system starting from September 2005, this is the time that I consider appropriate for the parties to have conducted their "hypothetical negotiation" for a use license under the subject Solexa patents. At this time, APG was not commercializing the SOLiD technology; the system was still under product development. At this time, APG is in need of a license under the Solexa patents in order to continue product development with the goal of producing and selling a commercial product for the NGS market and to avoid litigation…

At this point in time, and because APG was not a manufacturer-seller, the license APG needed would have been a technology access/developmental use license." Expert Report Of Gerald Siuta On Infringement Damages at pp. 18-19.

[4] "Development of the SOLiD technology into a commercial product offering was taken over by AB upon acquiring APG. AB began commercially selling the two-base SOLiD Analyzer and the ligation sequencing products in June 2007. At this time, AB is in need of a license under the Solexa patents to sell these commercial products for the NGS market and avoid litigation. AB would have been willing and expecting to obtain a commercial product license upon acquiring APG by July 2006; however, the patent law says that the "hypothetical negotiation" takes place at the start of unlicensed infringement, which here is the June 2007 commencement of AB's infring-

1    3.    Under the '119 probe patent, if taken alone, Solexa would be entitled to a reason-

2    able royalty based upon AB's sales of its "two-base" SOLiD sequencing probe kit.[5]

3    The Court's Order found that AB was not infringing the '341 and '597 patents by making,

4    using, or selling its commercial "two-base" version of the SOLiD System.  Hence, the case pro-

5    ceeding to trial will be directed to APG's making and using the "one-base" version of the SOLiD

6    System, including use of the "one-base" version of the probes; APG's making and use of the

7    "two-base" version of the probes; and AB's making, using, and selling its "two-base" probes.  All

8    of the patents are at issue in the case for infringement against APG.  Only the '119 patent remains

9    at issue in the case for infringement against AB.

10    **III.    ARGUMENT**

11    As the Court knows, reasonable royalty damages are determined on the basis of a hypo-

12    thetical negotiation between a willing licensor and a willing licensee, in which it is assumed that

13    the subject patents are valid and infringed.  *See Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538,

14    1554 (Fed. Cir. 1995).  The relevant time frame for the negotiation would be "the time infringe-

15    ment commenced."  *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996).

16    As to APG, the date of hypothetical negotiation would be not later than September 2005.  Dr. Si-

17    uta is opining that APG's hypothetical negotiation would be for a developmental use license un-

18    der all of the patents.  Certainly, all of the patents are at issue in Solexa's infringement case

19    against APG.[6]  It is not unreasonable for Dr. Siuta to opine at trial that APG would have been in-

20    terested in a developmental use license (but not a commercial sale license, since APG was not a

21    commercial entity) covering all possible versions of its SOLiD System by September 2005.  By

22    _____

23    ing sale activity.  The issue for analysis is what this commercial sale license royalty should be…

    Under either the '341 or '597 system patents, with or without the '119 probe patent, Illu-
24    mina/Solexa is entitled to a reasonable royalty based upon AB sales of its SOLiD system prod-
    ucts."  Expert Report Of Gerald Siuta On Infringement Damages at pp. 29 and 52.

25    [5] "Under the '119 probe patent alone, Illumina/Solexa is entitled to a reasonable royalty based
26    upon AB's sales of its SOLiD Sequencing Probes Kit (P/N 4392147)."  Expert Report Of Gerald
    Siuta On Infringement Damages at p. 53.

27    [6] The "one-base encoding" is certainly at issue; and the "two-base" aspect is also involved by
28    virtue of the need for a '119 patent license.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1**
**CASE NO. 07-CV-02845 WHA**

1   September 2005, there is no evidence that APG would have known that the "two-base" version of

2   the SOLiD technology did not infringe the '341 and '597 patents, as this Court's Order recently

3   found.  This scenario comports with scenario 1 presented in the Siuta Report.

4          Remaining for trial as concerns AB is the charge of infringement concerning AB's sale of

5   its "two-base" oligonucleotide probes for its commercial SOLiD System under the '119 patent.

6   Siuta's Report provides a separate damages analysis directed to this situation in scenario 3.  There

7   is no reason Dr. Siuta should not be allowed to present evidence of damages pertaining to this al-

8   leged infringement.

9   **IV.    CONCLUSION**

10          The Court should permit Solexa's expert, Dr. Siuta, to testify regarding the remaining pat-

11  ent infringement damages issues in the case, namely, APG's alleged infringement of the '341,

12  '597, and '119 patents and AB's alleged infringement of the '119 patent.

13

14  Dated: August 28, 2008                    /s/ John R. Labbé
                                               THOMAS I. ROSS (admitted *pro hac vice*)
15                                             KEVIN M. FLOWERS (admitted *pro hac vice*)
                                               JEFFREY H. DEAN (admitted *pro hac vice*)
16                                             JOHN R. LABBE (admitted *pro hac vice*)
                                               CULLEN N. PENDLETON (admitted *pro hac vice*)
17                                             MARK H. IZRAELEWICZ (admitted *pro hac vice*)
                                               MARSHALL, GERSTEIN & BORUN LLP
18                                             6300 Sears Tower
                                               233 South Wacker Drive
19                                             Chicago, Illinois 60606-6357
                                               (312) 474-6300 (telephone)
20                                             (312) 474-0448 (facsimile)
                                               E-Mail: kflowers@marshallip.com
21                                             E-Mail: tross@marshallip.com
                                               E-Mail: jdean@marshallip.com
22                                             E-Mail: jlabbe@marshallip.com
                                               E-Mail: cpendleton@marshallip.com
23                                             E-Mail: mizraelewicz@marshallip.com
24
                                               Counsel for Defendants
25                                             ILLUMINA, INC., SOLEXA, INC.,
26                                             and STEPHEN C. MACEVICZ
27
28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1
CASE NO. 07-CV-02845 WHA

4