1   BRYAN WILSON (CA SBN 138842)
    ERIC C. PAI (CA SBN 247604)
2   MORRISON & FOERSTER LLP
    755 Page Mill Road
3   Palo Alto, California 94304-1018
    Telephone: 650.813.5600
4   Facsimile: 650.494.0792
    E-Mail: BWilson@mofo.com;
5   EPai@mofo.com

6   DAVID C. DOYLE (CA SBN 70690)
    STEVEN E. COMER (CA SBN 154384)
7   BRIAN M. KRAMER (CA SBN 212107)
    MORRISON & FOERSTER LLP
8   12531 High Bluff Drive, Suite 100
    San Diego, California 92130-2040
9   Telephone: 858.720.5100
    Facsimile: 858.720.5125
10  E-Mail: DDoyle@mofo.com;
        SComer@mofo.com;
11      BMKramer@mofo.com

12  Attorneys for Plaintiff
    APPLERA CORPORATION – APPLIED
13  BIOSYSTEMS GROUP

    KEVIN M. FLOWERS (*pro hac vice*)
    THOMAS I. ROSS (*pro hac vice*)
    JEFFREY H. DEAN (*pro hac vice*)
    JOHN R. LABBÉ (*pro hac vice*)
    CULLEN N. PENDLETON (*pro hac vice*)
    MARK H. IZRAELEWICZ (*pro hac vice*)
    MARSHALL, GERSTEIN & BORUN LLP
    6300 Sears Tower
    233 South Wacker Drive
    Chicago, IL 60606-6357
    Telephone: 312.474.6300
    Facsimile: 312.474.0448
    Email: kflowers@marshallip.com
        tross@marshallip.com
        jdean@marshallip.com
        jlabbe@marshallip.com
        cpendleton@marshallip.com
        mizraelewicz@marshallip.com

    Attorneys for Defendants
    ILLUMINA, INC., SOLEXA, INC., AND
        STEPHEN C. MACEVICZ

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ILLUMINA, INC., a Delaware corporation, SOLEXA, INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual,<br><br>Defendants. | Case No.   C07 02845 WHA<br><br>**JOINT [PROPOSED] FINAL PRETRIAL ORDER**<br><br>Date:     September 29, 2008<br>Time:     7:30 a.m.<br>Place:    Courtroom 9, 19th Floor<br>Judge:    William H. Alsup |

## I.    CLAIMS AND DEFENSES WHICH REMAIN TO BE DECIDED

### AB's Statement:

This case involves issues of patent ownership, infringement, invalidity, unenforceability, and contract disputes.  Defendant Stephen Macevicz is the named inventor of the three patents-in-suit, U.S. Patent Numbers 5,750,341; 5,969,119; and 6,306,597 (separately, the "'341 Patent," "the '119 Patent," and 'the '597 Patent," and collectively, "the Macevicz patents.").  At the time he invented the underlying invention and filed the patent application leading to the three patents, Macevicz was employed by Plaintiff Applied Biosystems, Inc. ("AB").  Macevicz left AB and later purported to assign his then-pending patent application to his next employer, Lynx Therapeutics.  Lynx Therapeutics later purported to transfer the patents to Spectragen, Inc., which transferred them back to Lynx Therapeutics, which then purported to transfer them to Defendant Solexa, Inc., which is now owned by Defendant Illumina, Inc.

AB filed this case against the three Defendants.  It alleges that Stephen Macevicz was obligated to disclose his invention to AB and to assign it to the company.  AB's claims against Defendants are based on allegations of breach of contract, interference with contract, breach of fiduciary duty, constructive fraud, and conversion.  AB alleges specifically that Dr. Macevicz entered into an Employee Invention Agreement (or "Invention Agreement") with AB when he worked for AB.  AB further alleges that Dr. Macevicz applied for patents on inventions while he was employed by AB as its Chief Patent Counsel and that he was obligated to assign the inventions to AB under the terms of his Invention Agreement.  AB alleges that as successors to Lynx Therapeutics, Solexa and Illumina are liable for aiding and abetting Macevicz's wrongdoing.  AB seeks actual damages, punitive damages, a declaration that it is the true owner of the Macevicz patents, and appropriate injunctive relief to quiet title to the patents, including foreign counterpart patents and pending foreign counterpart patent applications.

AB's complaint also includes a declaratory judgment action against Illumina that AB's SOLiD System DNA sequencing platform and a one-base encoding prototype do not infringe the Macevicz patents and that the Macevicz patents are invalid and unenforceable, among other reasons, due to inequitable conduct.  On its declaratory judgment claims, AB seeks a declaration

1   of noninfringement for all accused products, invalidity of all asserted claims of the Macevicz

2   patents, and unenforceability of the Macevicz patents.

3        Solexa, Illumina, and Macevicz (collectively, "Illumina") contend that Dr. Macevicz did

4   not have an obligation to assign the Macevicz patents to AB under the terms of the Invention

5   Agreement.  Defendants also contend that AB's lawsuit was not filed within the time set by law

6   and is therefore barred by the statute of limitations.  Illumina further contends that even if Dr.

7   Macevicz breached his Invention Agreement with AB, Illumina was a bona fide purchaser for

8   value of his inventions because it paid Macevicz value for his inventions and did not know about

9   his duty to assign his inventions to AB.

10        Illumina filed counterclaims alleging that AB infringes the Macevicz patents by using and

11   selling the SOLiD System and the probes used in the SOLiD System, and a one-base encoding

12   prototype and the probes used in that prototype.  The products that are alleged to infringe are:

13        &bull;     The SOLiD System (two-base encoding)

14        &bull;     The SOLiD System Probes (two-base encoding)

15        &bull;     The one-base-encoding prototype

16        &bull;     The one-base-encoding prototype probes

17        The Court granted AB's motion for summary judgment of noninfringement regarding the

18   '341 and '597 patents.  The summary judgment order eliminates all infringement allegations as to

19   the '341 patent and the allegations that the SOLiD System infringes the '597 patent.  The only

20   patent issues remaining are whether the one-base encoding prototype infringed the '597 patent

21   and whether the probes used in both accused systems infringe the '119 patent.

22        The Court has ordered that the jury shall be told that the trial will be in two phases.  (Dckt.

23   No. 181.)  The first phase will be all non-patent issues on the complaint (and defenses).  The jury

24   will then render a verdict.  If necessary, the case then will proceed promptly with the same jury to

25   the patent issues (and defenses).  "Unless and until necessary, the jury will not be told how the

26   verdict in phase one will impact phase two."  (*Id.*)  Thus, the issues to remain decided in the two

27   phases are as follows:

28

**A.    Phase One – Non-Patent Claims and Defenses**

The following issues will be tried to the jury in Phase One.

1.    Did Dr. Macevicz breach the Invention Agreement?

2.    Did Illumina intentionally cause Dr. Macevicz to breach the Invention Agreement?

3.    Did Dr. Macevicz breach his fiduciary duty to AB?

4.    Did Illumina aid and abet Dr. Macevicz's breach of his fiduciary duty to AB?

5.    Was Illumina's conduct related to Macevicz's breach of fiduciary duty malicious, oppressive, or fraudulent?

6.    Did Dr. Macevicz commit constructive fraud?

7.    Did Illumina aid and abet Dr. Macevicz's constructive fraud?

8.    Was Illumina's conduct related to its constructive fraud malicious, oppressive, or fraudulent?

9.    Did defendants wrongfully exercise control over the Macevicz patents?

10.    Are any of AB's claims barred by the statute of limitations?

11.    What are AB's damages?

**B.    Issues to be Decided Before Proceeding to Phase Two**

Whether the Phase Two trial goes forward will depend upon what findings are made and what remedies are fashioned following the Phase One trial.

If the Court determines after the Phase One trial that AB has an ownership interest in the Macevicz patents, it is AB's belief that Illumina lacks standing to sue AB for patent infringement; and Illumina's patent law counterclaims would have to be dismissed.  Likewise, AB's declaratory judgment action based on the patents would have to be dismissed for a lack of case or controversy.

Additionally, for several of AB's affirmative defenses against Solexa's patent infringement counterclaims, the parties will already have presented evidence in Phase I sufficient to resolve these defenses.  If AB does not prevail on ownership and standing, AB's position is

1    that the Court should decide these affirmative defenses, consistent with the jury verdict in Phase I,

2    before proceeding to Phase II of the trial.  If any of these affirmative defenses is decided in AB's

3    favor, then AB believes that Phase II of the trial will be unnecessary and the action can be

4    concluded without wasting the jury or the Court's time:

5           1.      Are the Macevicz patents unenforceable against AB based on AB's

6    equitable rights to practice the claimed inventions?

7           2.      Are the Macevicz patents unenforceable against AB based on estoppel?

8           3.      Are the Macevicz patents unenforceable against AB based on unclean

9    hands?

10          **C.      Phase Two – Patent Claims and Defenses**

11          If Solexa can maintain its counterclaims against AB after the Phase One trial, the

12   following issues will be tried to the jury in Phase Two:

13          1.      Did the one-base encoding prototype literally infringe claim 1 of the '597

14   patent?

15          2.      Did the one-base encoding prototype infringe claim 1 of the '597 patent

16   under the doctrine of equivalents?

17          3.      Did the one-base-encoding prototype probes infringe the '119 patent under

18   the doctrine of equivalents?

19          4.      Do the two-base-encoded SOLiD System Probes infringe claim 1 of the

20   '119 patent under the doctrine of equivalents?

21          5.      Was Agencourt's infringement, if any, willful?

22          6.      Is AB's infringement, if any, willful?

23          7.      Is claim 1 of the '597 patent anticipated?

24          8.      Is claim 1 of the '597 patent obvious?

25          9.      Are the asserted claims of the '341 patent anticipated?

26          10.     Are the asserted claims of the '341 patent obvious?

27          11.     Is claim 1 of the '119 patent anticipated?

28          12.     Is claim 1 of the '119 patent obvious?

13.    Are the asserted claims of the '341, '597 and '119 patents invalid for lack of written description?

14.    Are the asserted claims of the '341 and '597 patent invalid for lack of enablement?

15.    Are the asserted claims of the '341 and '597 patents invalid due to indefiniteness?

16.    Are the Macevicz patents unenforceable due to inequitable conduct?

**Defendants' Statement:**

This case involves issues of patent ownership, infringement, invalidity, unenforceability, and contract disputes. One of the named defendants, Dr. Stephen C. Macevicz, is the named inventor on the three patents-in-suit, U.S. Patent Numbers 5,750,341; 5,969,119; and 6,306,597 (separately, "the '341 Patent," "the '119 Patent," and "the '597 Patent," and collectively, "the Macevicz patents"). At the time he conceived the inventions described in the Macevicz patents and at the time he filed the patent application ("the '663 application") describing those inventions, which ultimately led to his three patents, Dr. Macevicz was employed as a patent attorney by Plaintiff Applied Biosystems, Inc. ("AB"). A few months after filing the '663 application, Dr. Macevicz left AB. He assigned the '663 application to Lynx Therapeutics (which is now known as Solexa, Inc., and is a wholly-owned subsidiary of defendant Illumina, Inc.) and joined Lynx as its only patent attorney.

AB filed this case against the three defendants, Solexa, Illumina, and Macevicz (collectively, "Illumina"), on May 31, 2007. In its Complaint, AB alleged that Dr. Macevicz was obligated to disclose his inventions to AB and to assign them to AB. AB's claims against Defendants are based on allegations of breach of contract, interference with contract, breach of fiduciary duty, constructive fraud, and conversion. AB alleges specifically that Dr. Macevicz entered into an "Employee Invention Agreement" ("the Invention Agreement") with AB when he went to work for AB in 1992. AB further alleges that Dr. Macevicz applied for patents on inventions while he was employed by AB as its Chief Patent Counsel and that he was obligated to

1  assign the inventions to AB under the terms of the Invention Agreement. AB alleges that as
2  successors to Lynx Therapeutics, Solexa and Illumina are liable for aiding and abetting
3  Macevicz's wrongdoing.

4      AB's complaint also includes a declaratory judgment action against Illumina that the one-
5  base-encoding and two-base-encoding versions of AB's SOLiD System do not infringe the
6  Macevicz patents and that the Macevicz patents are invalid and unenforceable, among other
7  reasons, due to inequitable conduct.

8      Illumina contends that Dr. Macevicz did not have an obligation to assign the Macevicz
9  patents to AB under the terms of the Invention Agreement. Illumina also contends that AB's
10  lawsuit was not filed within the time set by law and is therefore barred by the applicable
11  California statutes of limitations. Illumina further contends that even if Dr. Macevicz breached
12  the Invention Agreement by failing to assign his inventions to AB, Illumina was a bona fide
13  purchaser for value of his inventions because it paid him value for his inventions and did not
14  know about his duty to assign his inventions to AB.

15      In response to AB's Complaint, Illumina filed counterclaims alleging that AB infringes
16  the Macevicz patents by using and/or inducing (and/or contributing to) the use of the "two-base-
17  encoding" versions of the SOLiD System by its customers, and by making, using and selling the
18  oligonucleotide probes used in the two-base-encoding versions of the SOLiD System. Illumina
19  also charged AB with infringement based on the use of a "one-base-encoding" version of the
20  SOLiD System (and the manufacture and use of the "one-base-encoding" version of the SOLiD
21  System oligonucleotide probes) by Agencourt Personal Genomics, a Massachusetts company that
22  AB acquired in 2006.

23      In its Order of August 22, 2008, the Court granted-in-part AB's motion for summary
24  judgment of noninfringement regarding the '341 and '597 patents. As discussed in its pending
25  Motion for Clarification (Docket No. 236), Illumina contends that the summary judgment order
26  did not resolve the question of whether the one-base-encoding version of the SOLiD System
27  infringed the '341 patent. Consequently, Illumina believes that whether the one-base-encoding
28  version of the SOLiD System infringed the '341 patent remains an issue for resolution at trial.

1    The Court has ordered that the jury shall be told that the trial will be in two phases
2    (Docket No. 181). In the first phase, the jury will resolve all non-patent issues raised in the
3    Complaint. The jury will then render a verdict. If necessary, the case then will proceed promptly
4    with the same jury to the patent issues. "Unless and until necessary, the jury will not be told how
5    the verdict in phase one will impact phase two." (*Id.*)

6    Thus, Defendants believe that the issues that remain to be decided in the two phases are as
7    follows:

8    **A.    Phase One – non-patent claims and defenses**

9    The following issues will be tried to the jury in Phase One:

10    1.    Did Dr. Macevicz breach the Invention Agreement?

11    2.    Did Illumina intentionally cause Dr. Macevicz to breach the Invention
12    Agreement?

13    3.    Did Dr. Macevicz breach a fiduciary duty to AB?

14    4.    Did Illumina aid and abet Dr. Macevicz's breach of a fiduciary duty to
15    AB?

16    5.    Was Illumina's conduct related to Macevicz's breach of a fiduciary duty
17    malicious, oppressive, or fraudulent?

18    6.    Did Dr. Macevicz commit constructive fraud?

19    7.    Did Illumina aid and abet Dr. Macevicz's constructive fraud?

20    8.    Was Illumina's conduct related to its constructive fraud malicious,
21    oppressive, or fraudulent?

22    9.    Did defendants wrongfully convert the Macevicz patents?

23    10.    Are any of AB's claims barred by the statutes of limitations?

24    11.    Was Illumina a bona fide purchaser for value of the Macevicz patents?

25    12.    What are AB's damages, if any?

26    **B.    Issues to be Decided Before Proceeding to Phase Two**

27    1.    Whether the Phase Two trial goes forward will depend upon what findings
28    are made and what remedies are fashioned following the Phase One trial. Illumina contends that if

1   AB does not prevail in Phase One, the trial should proceed immediately to Phase Two without an

2   intermediate Phase One "Part 2" proceeding that would only serve to give AB an undeserved

3   "second bite at the apple." Illumina believes that AB should present all of its defenses to

4   infringement as part of the Phase Two trial.

### C.    Phase Two – patent claims and defenses

6       If AB does not prevail in Phase One, Illumina believes that the following issues should be

7   tried to the jury in Phase Two:

8           1.    Did Agencourt's use of the one-base-encoding version of the SOLiD

9   System literally infringe claims 1, 2, 6, 7, 11, 12, 16, or 17 of the '341 patent? (Illumina believes

10  that the Court has not granted summary judgment with respect to infringement of the '341 patent

11  by the one-base-encoding version of the SOLiD System. This issue is currently before the Court

12  on Illumina's Motion for Clarification.)

13          2.    Did Agencourt's use of the one-base-encoding version of the SOLiD

14  System infringe claims 1, 2, 6, 7, 8, 11, 12, 16, 17, or 18 of the '341 patent under the Doctrine of

15  Equivalents? (Illumina believes that the Court has not granted summary judgment with respect to

16  infringement of the '341 patent by the one-base-encoding version of the SOLiD System. This

17  issue is currently before the Court on Illumina's Motion for Clarification.)

18          3.    Did Agencourt's use of the one-base-encoding version of the SOLiD

19  System literally infringe claim 1 of the '597 patent?

20          4.    Did Agencourt's use of the one-base-encoding version of the SOLiD

21  System infringe claim 1 of the '597 patent under the Doctrine of Equivalents?

22          5.    Did Agencourt's manufacture and use of the one-base-encoding version of

23  the SOLiD System Probes infringe the '119 patent under the Doctrine of Equivalents?

24          6.    Does AB's manufacture, use and sale of the oligonucleotide probes used in

25  the two-base-encoding versions of the SOLiD System infringe claim 1 of the '119 patent under

26  the Doctrine of Equivalents?

27          7.    Was Agencourt's infringement, if any, willful?

28          8.    Is AB's infringement, if any, willful?

9.        Are the asserted claims of the '341 patent anticipated?

10.      Are the asserted claims of the '341 patent obvious (Illumina believes this issue is a question of law to be decided by the Court)?

11.      Is claim 1 of the '597 patent anticipated?

12.      Is claim 1 of the '597 patent obvious (Illumina believes this issue is a question of law to be decided by the Court)?

13.      Is claim 1 of the '119 patent anticipated?

14.      Is claim 1 of the '119 patent obvious (Illumina believes this issue is a question of law to be decided by the Court)?

15.      Are the asserted claims of the '341, '597 and '119 patents invalid for lack of written description?

16.      Are the asserted claims of the '341 and '597 patent invalid for lack of enablement?

Illumina believes that the following issues should be tried to the bench in Phase Two:

1.        Are the asserted claims of the '341 and '597 patents invalid due to indefiniteness (Illumina believes that AB's contentions regarding indefiniteness were or should have been resolved during the claims construction process)?

2.        Are the Macevicz patents unenforceable due to inequitable conduct?

## II.    STATEMENT OF ALL RELIEF SOUGHT

### A.    Phase One

AB will ask the Court to award the following relief following the Phase One trial.

1.        Actual, incidental, and consequential damages from Illumina, together with interest, in an amount to be proven at trial;

2.        Punitive damages from Illumina according to proof;

3.        A declaration that AB is the true and proper owner of the Macevicz patents and any related applications and foreign counterparts;

4.      Injunctive relief, in the form of the imposition of a constructive trust and an order directing Macevicz and Illumina to, at a minimum:  (a) take all necessary steps to confirm and restore ownership of the Patents and all foreign counterpart patents and patent applications, including any patents or patent applications that may still be pending or may yet issue based on the Application, to AB, including a transfer of registration of Japanese Patent Application No. H08-531848 (Publication No. JP H11-503908) and Japanese Patent Application H19-185093 to AB; (b) cease all use of any information that they wrongfully took or received from AB, either directly or indirectly, (c) identify and return to AB any other information, patents, or inventions made by Macevicz while he was employed by AB that he has not previously disclosed and assigned to AB;

5.      An order for an accounting of all fees, royalties, or other compensation received by Illumina based on the Patents, and imposing a constructive trust over any such fees, royalties, or other compensation in favor of AB;

6.      A finding by the Court that this case is "exceptional" within the meaning of 35 U.S.C. § 285, entitling AB to an award of its reasonable attorneys' fees and expenses in this action; and

7.      An order of dismissal of Solexa's counterclaims for patent infringement for lack of standing.

8.      Any such additional and further relief the Court deems just and proper.

Illumina does not seek any relief in the Phase One trial.

### B.      Phase Two

AB will ask the Court to award the following relief following the Phase Two trial, if necessary.

1.      A declaration that the one-base encoding prototype did not infringe claim 1 of the '597 patent;

2.      A declaration that AB did not and does not infringe the '119 patent;

1       3.      A declaration that the asserted claims of the Macevicz patents are invalid

2 due to anticipation, obviousness, lack of written description, lack of enablement, and/or

3 indefiniteness;

4       4.      A declaration that the asserted claims of the Macevicz are unenforceable

5 due to inequitable conduct, estoppel, and/or unclean hands and that AB has equitable rights to

6 practice the inventions claimed in the Macevicz patents;

7       5.      A finding by the Court that this case is "exceptional" within the meaning of

8 35 U.S.C. § 285, entitling AB to an award of its reasonable attorneys' fees and expenses in this

9 action; and

10       6.      Any such additional and further relief the Court deems just and proper.

11

12      Illumina will ask the Court to award the following relief following the Phase Two trial:

13       1.      Damages in the amount of a reasonable royalty to compensate Illumina for

14 AB's infringement of the asserted claims of the three patents-in-suit.

15       2.      A permanent injunction enjoining AB from using the one-base-encoding

16 version of the SOLiD System and from using the one-base-encoding and two-base-encoding

17 versions of the SOLiD System oligonucleotide probes (and any other probes that infringe claim 1

18 of the '119 patent).

19       3.      Any such additional and further relief the Court deems just and proper.

20

21    **III.**    **STIPULATED FACTS**

22       1.      Applied Biosystems ("AB") was formerly an operating group of Applera

23 Corporation, a Delaware corporation with its principal place of business in Norwalk, Connecticut.

24 AB's principal place of business is in Foster City, California.  Since the filing of this action,

25 Applera Corporation was renamed Applied Biosystems Inc.

26       2.      Defendant Illumina, Inc. ("Illumina") is a Delaware Corporation with its

27 principal place of business in San Diego, California.  In 2005, Lynx Therapeutics, Inc. ("Lynx")

28 acquired Solexa, Inc. ("Solexa") and the combined companies of Lynx and Solexa became known

as Solexa.  Effective January 26, 2007, Illumina acquired Defendant Solexa, which is a Delaware

corporation with its principal place of business in Hayward, California.

3.    Defendant Stephen C. Macevicz is, and at all relevant times was, a

resident of Santa Clara County, California.

4.    The parties agreed and stipulated that AB's First Cause of Action

("Breach of Contract; Against Macevicz"), Second Cause of Action ("Interference With Contract;

Against All Defendants"), Fifth Cause of Action ("Conversion; Against All Defendants"), Sixth

Cause of Action ("Imposition of Constructive Trust; Against All Defendants"), and Seventh

Cause of Action ("Unfair Competition; Against Solexa and Illumina") shall be treated as if they

were filed by AB on December 26, 2006.

5.    Macevicz became employed full-time as a patent attorney for AB in 1992.

6.    Macevicz signed an Employee Invention Agreement with AB on May 4,

1992.

7.    On April 17, 1995, Macevicz was employed by AB and filed U.S. Patent

Application No. 08/424,663 (the "Application") with the U.S. Patent and Trademark Office

("PTO") in his own name.

8.    Macevicz conceived of and developed the underlying inventions in the

Application during the time he was employed by AB.

9.    The Application led to three U.S. Patents that issued after Macevicz left

AB: U.S. Patent No. 5,750,341 ("the '341 Patent"), U.S. Patent No. 5,969,119 ("the '119

Patent"), and U.S. Patent No. 6,306,597 ("the '597 Patent") (collectively, the "Patents").

10.    A PCT application and several foreign patents and patent applications

claim priority to Macevicz's Application.

11.    Lynx knew that Macevicz was employed as a patent attorney by AB prior

to working for Lynx.

12.    Solexa filed its counterclaims alleging infringement of the Patents by AB

on August 12, 2007.

13.    The '341 Patent issued on May 12, 1998.

14.    The '119 Patent issued on October 19, 1999.

15.    The '597 Patent issued on October 23, 2001.

16.    Solexa does not seek any damages from AB based on lost profits.

17.    For purposes of the statutes of limitations, AB did not have constructive notice or inquiry notice of its claims against Defendants before February 2006.

18.    WO 95/04160 ("the Southern Reference") is a U.K. Patent Application issued to Edwin Southern and William Cummins.  The Southern Reference was filed on August 1, 1994 and published on February 9, 1995.

19.    AB's probes do not literally infringe claim 1 of the '119 patent because the probes used by AB contain a phosphorothiolate (S) linkage, rather than the phosphoramidate (NH) linkage recited in claim 1 of the '119 patent.

## IV.    LIST OF ALL FACTUAL ISSUES WHICH REMAIN TO BE TRIED

### AB's Statement:

AB herein lists all factual issues which remain to be tried with the relevant elements for each cause of action, by count.

## PHASE ONE

A.    AB'S FIRST CAUSE OF ACTION (Breach of Contract; Against Macevicz)

1.    Did AB do all, or substantially all, of the significant things that the Invention Agreement required it to do?

2.    Did Dr. Macevicz fail to do what the Invention Agreement required him to do?

a.    Did Dr. Macevicz assign the inventions in the Macevicz patents to AB?

b.    Did Dr. Macevicz timely disclose the inventions in the Macevicz patents to AB?

3.    Was AB harmed by that failure?

**B.** AB'S SECOND CAUSE OF ACTION (Interference With Contract; Against All Defendants)

    **1.** Did Illumina know of the Invention Agreement?

    **2.** Did Illumina intend to cause Dr. Macevicz to breach the Invention Agreement?

    **3.** Did Illumina's conduct cause Dr. Macevicz to breach the Invention Agreement?

    **4.** Was AB harmed?

    **5.** Was Illumina's conduct a substantial factor in causing AB's harm?

**C.** AB'S THIRD CAUSE OF ACTION (Breach of Fiduciary Duty; Against All Defendants)

    **1.** Was Dr. Macevicz AB's fiduciary?

    **2.** Did Macevicz knowingly act against AB's interests, act on behalf of any party whose interests were adverse to AB, or take advantage of his acts relating to the interests of AB?

    **3.** Did AB did give written informed consent to Dr. Macevicz's conduct?

    **4.** Was AB harmed?

    **5.** Was Dr. Macevicz's conduct a substantial factor in causing AB's harm?

    **6.** Did Illumina aid and abet Dr. Macevicz's breach of his fiduciary duty to AB?

**D.** AB'S FOURTH CAUSE OF ACTION (Constructive Fraud; Against All Defendants)

With regard to Dr. Macevicz:

1.    Did Dr. Macevicz breach his fiduciary duty as AB's corporate agent by

    **a.**    failing to disclose his inventions to AB, or

    **b.**    applying for patents on the inventions in his own name, and purporting to assign the inventions, applications, and patents to Lynx; or

    **c.**    accepting an indemnity agreement with Lynx after applying for a patent on the inventions while he was still employed with AB; and

2.    Did AB suffered damages as a result of Dr. Macevicz's breach of duty?

With regard to Illumina:

3.    Was Illumina aware that:

    **a.**    Dr. Macevicz failed to disclose his inventions to AB; or

    **b.**    Dr. Macevicz applied for patents on the inventions in his own name, and purported to assign the inventions, applications, and patents to Lynx; or

    **c.**    Dr. Macevicz accepted an indemnity agreement with Lynx after applying for a patent on the inventions while he was still employed with AB;

    **d.**    and that these constituted a breach of his fiduciary duty to AB; and

4.    Did Illumina provide substantial assistance or encouragement to Dr. Macevicz to so act.

**E.**   **AB'S FIFTH CAUSE OF ACTION** (Conversion; Against All Defendants)

     **1.**   Did AB have a right to possess the inventions, applications, and patents that Dr. Macevicz failed to disclose and assign to AB?

     **2.**   Did Defendants intentionally prevent AB from having access to the inventions, applications, and patents for a significant period of time?

     **3.**   Did AB consent?

     **4.**   Was AB harmed?

     **5.**   Was Defendants' conduct a substantial factor in causing AB's harm?

**F.**   **AB'S SIXTH AND SEVENTH CAUSES OF ACTION**  (Imposition of Constructive Trust; Against All Defendants; Unfair Competition; Against Solexa and Illumina)

These causes of action can be decided by the Court after fact-finding on the other causes of action.

**G.**   **ILLUMINA'S SECOND AFFIRMATIVE DEFENSE** (Bona Fide Purchaser for Value)

     **1.**   Did Illumina purchase the Macevicz patents from Dr. Macevicz for value; and

     **2.**   Did Illumina not know, and should not have known, that Dr. Macevicz was not the rightful owner of the patents?

**H.**   **ILLUMINA'S SEVENTH AFFIRMATIVE DEFENSE / MACEVICZ'S SECOND AFFIRMATIVE DEFENSE** (Statute of Limitations)

     **1.**   Did AB discover that the claimed harm had occurred before the applicable statute of limitations date for each cause of action?

The following issues are to be decided by the Court before proceeding to Phase II:

I.    AB's SECOND AFFIRMATIVE DEFENSE (Ownership); AB's THIRD AFFIRMATIVE DEFENSE (Standing); AB's FOURTH AFFIRMATIVE DEFENSE (Rights to Practice); AB's SIXTH AFFIRMATIVE DEFENSE (Unclean Hands); AB's SEVENTH AFFIRMATIVE DEFENSE (Estoppel and Waiver)

    1.    Does Solexa own the Macevicz patents?

    2.    Does Solexa have standing to sue for infringement of the Macevicz patents?

    3.    Are the Macevicz patents unenforceable against AB based on AB's equitable rights to practice the claimed inventions?

    4.    Are the Macevicz patents unenforceable against AB based on unclean hands?

    5.    Are the Macevicz patents unenforceable against AB based on estoppel?

## PHASE TWO

A.    AB's EIGHTH CAUSE OF ACTION (Declaratory Judgment Regarding Infringement of '119 Patent and '597 Patent; Against All Defendants); SOLEXA'S SECOND AND THIRD CAUSES OF ACTION (Infringement of the '597 Patent and '119 Patent)

    1.    Did the one-base encoding prototype literally infringe claim 1 of the '597 patent?

    2.    Did the one-base encoding prototype infringe claim 1 of the '597 patent under the doctrine of equivalents?

    3.    Did the one-base-encoding prototype probes infringe the '119 patent under the doctrine of equivalents?

    4.    Do the two-base-encoding SOLiD System Probes infringe claim 1 of the '119 patent under the doctrine of equivalents?

    5.    Was Agencourt's infringement, if any, willful?

    6.    Is AB's infringement, if any, willful?

B.    AB's NINTH CAUSE OF ACTION (Declaratory Judgment Regarding Validity of '341 Patent, '119 Patent, and '597 Patent; Against All Defendants); AB'S NINTH, TENTH, AND ELEVENTH AFFIRMATIVE DEFENSES

    1.    Is claim 1 of the '597 patent anticipated?

    2.    Is claim 1 of the '597 patent obvious?

    3.    Are the asserted claims of the '341 patent anticipated?

**4.** Are the asserted claims of the '341 patent obvious?

**5.** Is claim 1 of the '119 patent anticipated?

**6.** Is claim 1 of the '119 patent obvious?

**7.** Are the asserted claims of the '119, '341 and '597 patents invalid for lack of written description?

**8.** Are the asserted claims of the '341 and '597 patent invalid for lack of enablement?

**9.** Are the asserted claims of the '341 and '597 patents invalid due to indefiniteness?

**C.** AB's TENTH CAUSE OF ACTION (Declaratory Judgment Regarding Enforceability of '341 Patent, '119 Patent, and '597 Patent; Against All Defendants); AB'S SIXTH AFFIRMATIVE DEFENSE (Unclean Hands); AB'S SEVENTH AFFIRMATIVE DEFENSE (Estoppel)

**1.** Are the Macevicz patents unenforceable due to inequitable conduct?

1    **Defendants' Statement:**

2    Illumina believes the following factual issues remain to be tried:

3    **PHASE ONE**

4        **A.**    AB'S FIRST CAUSE OF ACTION (Breach of Contract; Against
      Macevicz)

5

6            **1.**    Did Dr. Macevicz breach the written notice provision of paragraph
      7 of his Employee Invention Agreement with AB?

7

8            **2.**    If Dr. Macevicz breached the written notice provision of paragraph
      7, was AB harmed by that breach?

9            **3.**    Did Dr. Macevicz breach the assignment provision of paragraph 2
      of his Employee Invention Agreement with AB by failing to assign

10   the '663 application to AB?

11           **4.**    If Dr. Macevicz breached the assignment provision of paragraph 2,
      was AB harmed by that breach?

12

13           **5.**    Did Dr. Macevicz develop the inventions disclosed in the '663
      application entirely on his own time?

14           **6.**    Did Dr. Macevicz use any equipment, supplies, facility, or trade
      secret in the development of the inventions disclosed in the '663

15   application?

16           **7.**    Did Dr. Macevicz's inventions disclosed in the '663 application
      relate to AB's business or actual or demonstrably anticipated

17   research or development in 1995?

18           **8.**    Did Dr. Macevicz's inventions disclosed in the '663 application
      result from any work performed by Dr. Macevicz for AB?

19

20       **B.**    AB'S SECOND CAUSE OF ACTION (Interference With Contract;
      Against All Defendants)

21           **1.**    Did Illumina know of the Invention Agreement?

22           **2.**    Did Illumina intend to cause Dr. Macevicz to breach the Invention
      Agreement?

23

24           **3.**    Did Illumina's conduct cause Dr. Macevicz to breach the Invention
      Agreement?

25           **4.**    Was AB harmed?

26           **5.**    Was Illumina's conduct a substantial factor in causing AB's harm?

27       **C.**    AB'S THIRD CAUSE OF ACTION (Breach of Fiduciary Duty; Against
      All Defendants)

28

1          **1.**    Was Dr. Macevicz AB's fiduciary?

2          **2.**    Did Macevicz knowingly act against AB's interests, act on behalf of any party whose interests were adverse to AB, or take advantage of his acts relating to the interests of AB?

3

4          **3.**    Did AB give written informed consent to Dr. Macevicz's conduct?

5          **4.**    Was AB harmed?

6          **5.**    Was Dr. Macevicz's conduct a substantial factor in causing AB's harm?

7

8          **6.**    Did Illumina aid and abet Dr. Macevicz's breach of a fiduciary duty to AB?

9      **D.**    AB'S FOURTH CAUSE OF ACTION (Constructive Fraud; Against All Defendants)

10    With regard to Dr. Macevicz:

11

12          **1.**    Did Dr. Macevicz breach a fiduciary duty to AB?

13          **2.**    [Did Dr. Macevicz's breach of a fiduciary duty to AB mislead AB to its prejudice?][1]

14          **3.**    Did AB suffer damages as a result of Dr. Macevicz's breach of a fiduciary duty?

15

16    With regard to Illumina:

17          **4.**    Was Illumina aware that Dr. Macevicz's conduct constituted constructive fraud?

18          **5.**    Did Illumina provide substantial assistance or encouragement to Dr. Macevicz to so act?

19

20

21

22

23

24

25

26       [1] This element is disputed in the jury instructions. AB contends that this is not a required element of constructive fraud; Illumina contends that this is a required element of constructive fraud.

27

28

**E.**    AB'S FIFTH CAUSE OF ACTION (Conversion; Against All Defendants)

    **1.**    Did AB have [a right to possess] [ownership or possession of][2] the inventions, applications, and patents that Dr. Macevicz failed to disclose and assign to AB?

    **2.**    Did Defendants intentionally prevent AB from having access to the inventions, applications, and patents for a significant period of time?

    **3.**    Did AB consent?

    **4.**    Was AB harmed?

    **5.**    Was Defendants' conduct a substantial factor in causing AB's harm?

**F.**    AB'S SIXTH AND SEVENTH CAUSES OF ACTION (Imposition of Constructive Trust; Against All Defendants; Unfair Competition; Against Solexa and Illumina)

Illumina contends that a constructive trust is a remedy, not an independent cause of action, and that AB's Unfair Competition claim should be tried to the jury, if at all.

**G.**    ILLUMINA'S SECOND AFFIRMATIVE DEFENSE (Bona Fide Purchaser for Value)

    **1.**    Did Illumina purchase the Macevicz patents from Dr. Macevicz for value; and

    **2.**    Did Illumina know, or should it have known, that Dr. Macevicz was not the rightful owner of the patents?

**H.**    ILLUMINA'S SEVENTH AFFIRMATIVE DEFENSE / MACEVICZ'S SECOND AFFIRMATIVE DEFENSE (Statute of Limitations)

    **1.**    Did AB discover that the claimed harm had occurred before the applicable statute of limitations date for each cause of action?

    **2.**    [Did Dr. Macevicz's alleged wrongful acts or omissions occur before December 26, 2002, and after December 26, 2002, did Dr. Macevicz knowingly conceal the facts constituting any such wrongful act or omission?][3]

---

[2] The bracketed phrases reflect disputes in the jury instructions.

[3] This factual issue represents a disputed jury instruction regarding the applicable statute of limitations for claims against Dr. Macevicz. Illumina contends that this is a relevant factual issue for trial; AB contends that this is not a relevant factual issue for trial.

# PHASE TWO

**A.**    AB's EIGHTH CAUSE OF ACTION (Declaratory Judgment Regarding Infringement of '119 Patent and '597 Patent; Against All Defendants); SOLEXA'S FIRST, SECOND AND THIRD COUNTERCLAIMS (Infringement of the '341 Patent, '597 Patent and '119 Patent)

1.    Did Agencourt's use of the one-base-encoding version of the SOLiD System literally infringe claims 1, 2, 6, 7, 11, 12, 16, or 17 of the '341 patent? (Illumina believes that the Court has not granted summary judgment with respect to the one-base-encoding version of the SOLiD System. This issue is currently before the Court on Illumina's Motion for Clarification.)

2.    Did Agencourt's use of the one-base-encoding version of the SOLiD System infringe claims 1, 2, 6, 7, 8, 11, 12, 16, 17, or 18 of the '341 patent under the doctrine of equivalents? (Illumina believes that the Court has not granted summary judgment with respect to the one-base-encoding version of the SOLiD System. This issue is currently before the Court on Illumina's Motion for Clarification.)

3.    Did Agencourt's use of the one-base-encoding version of the SOLiD System literally infringe claim 1 of the '597 patent?

4.    Did the one-base-encoding version of the SOLiD System infringe claim 1 of the '597 patent under the Doctrine of Equivalents?

5.    Did Agencourt's manufacture and use of the one-base-encoding version of the SOLiD System probes infringe claim 1 of the '119 patent under the doctrine of equivalents?

6.    Does AB's manufacture, use and sale of the two-base-encoding SOLiD System Probes infringe claim 1 of the '119 patent under the doctrine of equivalents?

7.    Was Agencourt's infringement, if any, willful?

8.    Is AB's infringement, if any, willful?

**B.**    AB's NINTH CAUSE OF ACTION (Declaratory Judgment Regarding Validity of '341 Patent, '119 Patent, and '597 Patent; Against All Defendants); AB'S NINTH, TENTH, AND ELEVENTH AFFIRMATIVE DEFENSES

1.    Are the asserted claims of the '341 patent anticipated?

2.    Are the asserted claims of the '341 patent obvious?

3.    Is claim 1 of the '597 patent anticipated?

4.    Is claim 1 of the '597 patent obvious?

5.    Is claim 1 of the '119 patent anticipated?

1          **6.**      Is claim 1 of the '119 patent obvious?

2          **7.**      Are the asserted claims of the '119, '341 and '597 patents invalid
                        for lack of written description?
3
           **8.**      Are the asserted claims of the '341 and '597 patent invalid for lack
4                       of enablement?

5          **9.**      Are the asserted claims of the '341 and '597 patents invalid due to
                        indefiniteness? (Illumina believes that indefiniteness issues were or
6                       should have been resolved during the claim construction process,
                        and any remaining issues regarding indefiniteness should be
7                       resolved by the Court.)

8     **C.**     AB's TENTH CAUSE OF ACTION (Declaratory Judgment Regarding
                 Enforceability of '341 Patent, '119 Patent, and '597 Patent; Against All
9                Defendants); AB'S SIXTH AFFIRMATIVE DEFENSE (Unclean Hands);
                 AB'S SEVENTH AFFIRMATIVE DEFENSE (Estoppel)
10
           **1.**      Are the Macevicz patents unenforceable due to inequitable conduct
11                      (Illumina believes that this is an issue to be tried to the bench)?

12

13    **V.    JOINT EXHIBIT LIST**

14    Attached hereto as Exhibit A is the parties' joint exhibit list.

15    **VI.    WITNESS LISTS**

16    Attached hereto as Exhibit B is AB's witness list.  Attached hereto as Exhibit C is

17    Defendants' witness list.

18

19

20

21

22

23

24

25

26

27

28

1   Dated: August 29, 2008   MORRISON & FOERSTER LLP

2

3             By: /s/ Steven E. Comer

                Steven E. Comer

4

                Attorneys for Plaintiff

5                APPLERA CORPORATION -

                APPLIED BIOSYSTEMS GROUP

6

   Dated: August 29, 2008   MARSHALL GERSTEIN & BORUN LLP

7

8

             BY: /S/ John R. Labbé

9                JOHN R. LABBÉ

                Attorneys For Defendants

10               ILLUMINA, INC., SOLEXA, INC.

                AND STEPHEN C. MACEVICZ

11

12

13   I, Steven E. Comer, am the ECF User whose ID and password are being used to file this

**JOINT [PROPOSED] FINAL PRETRIAL ORDER**.  In compliance with General Order 45, X.B., I

14

hereby attest that John R. Labbé has concurred in this filing.

15

16

Dated:  August 29, 2008       /s/ Steven E. Comer

17                Steven E. Comer

18

19

20

21

22

23

24

25

26

27

28