THOMAS I. ROSS (admitted *pro hac vice*)
KEVIN M. FLOWERS (admitted *pro hac vice*)
JEFFREY H. DEAN (admitted *pro hac vice*)
MARK H. IZRAELEWICZ (admitted *pro hac vice*)
JOHN R. LABBE (admitted *pro hac vice*)
CULLEN N. PENDLETON (admitted *pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606-6357
(312) 474-6300 (telephone)
(312) 474-0448 (facsimile)
E-Mail: tross@marshallip.com
E-Mail: kflowers@marshallip.com
E-Mail: jdean@marshallip.com
E-Mail: mizraelewicz@marshallip.com
E-Mail: jlabbe@marshallip.com
E-Mail: cpendleton@marshallip.com

Counsel for Defendants
ILLUMINA, INC., SOLEXA, INC.,
and STEPHEN C. MACEVICZ

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLERA CORPORATION—APPLIED BIOSYSTEMS GROUP, a Delaware corporation, | Case No. 07-CV-02845 WHA |
| | Judge William H. Alsup |
| Plaintiff/counterdefendant, | **DEFENDANTS' WITNESS LIST** |
| - vs. - | Final Pretrial Conference: Sept. 8, 2008<br>Time: 2:00 P.M. |
| ILLUMINA, INC., a Delaware corporation, SOLEXA, INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual, | Trial: Sept. 29, 2008 |
| | Courtroom 9, 19th Floor |
| Defendants/counterclaimants. | |

**DEFENDANTS' WITNESS LIST**
**CASE NO: 07-CV-02845 WHA**

EXHIBIT C

Pursuant to paragraph 2(a)(vi) of the Guidelines for Trial and Final Pretrial Conference in Civil Jury Cases Before the Honorable William Alsup, the Defendants submit the following witness list:

**A.    Defendants' witnesses for ownership phase of trial**

    **1.    Stephen C. Macevicz, Ph.D.**

Dr. Stephen Macevicz is an individual defendant in this case. He is a patent attorney and the inventor of the patents-in-suit. Dr. Macevicz will testify about his conception, development, and reduction to practice of the inventions described and claimed in the patents-in-suit, including his preparation of U.S. patent application number 08/424,663 ("the '663 application"). He will testify about his educational background; his employment history before joining AB in 1992; his history as an individual inventor and his inventions; his employment as a patent attorney at AB from 1992 through July 1995 and the nature of his work (both for AB and Lynx) during that period; his Employee Invention Agreement with AB; the business and research and development at AB; his departure from AB in 1995; his decision to join Lynx Therapeutics, Inc. ("Lynx"); the indemnification agreement he received prior to joining Lynx ("the Indemnity Agreement"); and his assignment of the '663 Application to Lynx.

Because Dr. Macevicz is named as an individual defendant in this case, his own testimony is a critical part of his defense. Accordingly, Defendants do not believe that any part of Dr. Macevicz's testimony will be cumulative of the testimony of any other witness. No other witness can provide Dr. Macevicz's explanation of the facts in his own words, although Defendants may present testimony from additional witnesses to corroborate certain aspects of Dr. Macevicz's testimony.

    **2.    Frank Oaks, Ph.D.**

Dr. Frank Oaks is currently the Vice President for DNA Sequencing Services for Illumina. Dr. Oaks worked at AB from 1992 through 2006 in various capacities in research and development. Dr. Oaks will testify about his work at AB; AB's business and research

and development efforts with respect to DNA sequencing during the time of his employment at AB; AB's interest in next-generation DNA sequencing technologies; and AB's acquisition of Agencourt Personal Genomics in 2006.

Defendants do not expect Dr. Oaks's testimony to be cumulative of other testimony, although his testimony about AB's business and research and development from 1992-1995 may overlap with Dr. Macevicz's testimony. To the extent there is any overlap with Dr. Macevicz's testimony, Defendants believe that the additional testimony is needed to corroborate Dr. Macevicz's testimony.

### 3.  Sam Eletr, Ph.D.

Dr. Sam Eletr was one of the founders and the first president of AB. He later helped found Lynx and became its CEO and the chairman of its board of directors. Dr. Eletr will testify about Lynx's hiring of Dr. Macevicz in 1995; the Indemnity Agreement that Dr. Macevicz received prior to joining Lynx; Dr. Macevicz's assignment of the '663 Application to Lynx; the value Lynx paid Dr. Macevicz for his assignment of the '663 Application to Lynx; and AB's business and research and development from 1992-1995 (including Dr. Eletr's efforts to interest AB in alternatives to the Sanger method of DNA sequencing, particularly the technologies developed by Dr. Sydney Brenner).

Defendants do not expect Dr. Eletr's testimony to be cumulative of other testimony, although his testimony about Lynx's hiring of Dr. Macevicz, the assignment of the '663 Application, and AB's business and research and development may overlap with Dr. Macevicz's testimony. To the extent there is any overlap with Dr. Macevicz's testimony, Defendants believe that the additional testimony is needed to corroborate Dr. Macevicz's testimony.

### 4.  Sydney Brenner, Ph.D.

Dr. Sydney Brenner was a member of the board of directors of Lynx when Dr. Macevicz joined Lynx in 1995. Dr. Brenner will testify about Lynx's hiring of Dr. Macevicz in 1995 as a patent attorney; Dr. Macevicz's assignment of the '663 Application to Lynx; and his efforts to interest AB in alternative DNA sequencing technologies.

Because Dr. Brenner's testimony would be largely cumulative of Dr. Eletr's testimony, Defendants do not expect to call Dr. Brenner to testify unless Dr. Eletr is unable to testify at trial.

### 5.  James Kitch

James Kitch is a partner with the law firm Cooley Godward Kronish LLP. Mr. Kitch was on the board of directors of Lynx in 1995 when Lynx hired Dr. Macevicz. Defendants expect to call Mr. Kitch to testify about the nature of the Spectragen stock options that Dr. Macevicz received when he joined Lynx and about the Indemnity Agreement that Dr. Macevicz received prior to joining Lynx.

Defendants will not seek any testimony from Mr. Kitch that is cumulative of any other witness. To the extent that another witness is able to give this testimony, Defendants will not call Mr. Kitch to testify (Defendants are currently uncertain whether Dr. Eletr will be able to appear for trial, but if he does testify at trial, Mr. Kitch's testimony may be unnecessary.)

### 6.  Vincent Powers, Ph.D.

Dr. Vincent Powers is a patent attorney who worked with Dr. Macevicz in prosecuting patent applications for AB between 1992 and 1995, then was one of the patent attorneys who prosecuted the Macevicz patents between 1995 and 1999. Dr. Powers worked as a patent attorney at AB from 1999 through 2006. Defendants expect to call Dr. Powers to testify about his knowledge of Dr. Macevicz's employment with AB and Lynx and the prosecution and issuance of the Macevicz patents.

Because the focus of Dr. Powers's testimony will be his own knowledge of Dr. Macevicz's employment by AB and Lynx and the prosecution and issuance of the Macevicz patents, his testimony will not be cumulative of any other witness.

### 7.  Kathy San Roman

Ms. San Roman is a former employee of AB and the former Vice President of Human Resources and Administration of Illumina. She worked in human resources at Lynx at the time Dr. Macevicz joined Lynx. She will testify about Dr. Macevicz's employment

with Lynx, including the nature of the stock options he received when he joined Lynx and while employed by Lynx, and the Indemnity Agreement he received prior to joining Lynx.

Defendants will not seek any testimony from Ms. San Roman that is cumulative of any other witness. To the extent that another witness is able to give this testimony, Defendants will not call Ms. San Roman to testify (Defendants are currently uncertain whether Dr. Eletr will be able to appear for trial, but if he does testify at trial, Ms. San Roman's testimony may be unnecessary.)

### 8. John West

John West was employed in the DNA sequencing business at AB in various roles between 2001 and 2004. He left AB to join Solexa as CEO in 2004, where he continued (through the merger of Solexa with Lynx, and the acquisition of Solexa by Illumina) until February 2008. Mr. West will testify about the corporate history of Lynx, Solexa, and Illumina. He will also testify about AB's business and research and development efforts regarding next-generation sequencing technologies prior to its acquisition of Agencourt in 2006.

Defendants will not seek any testimony from Mr. West that is cumulative of any other witness. To the extent that another witness is able to give this testimony, Defendants will not call Mr. West to testify

### 9. Keith C. Backman, Ph.D.

Dr. Keith Backman is an expert witness retained by Defendants. In the ownership phase of the trial, Dr. Backman will offer expert testimony about the differences between DNA sequencing and other methods of DNA analysis, such as "genotyping," to rebut any expert testimony or other evidence offered by AB to suggest that such other methods constitute DNA sequencing. Dr. Backman will also testify about the differences between the inventions described and claimed in the patents-in-suit and other forms of DNA sequencing.

### 10. Paul Grossman, Ph.D.

Defendants may call Dr. Grossman to testify about his knowledge of Dr. Macevicz's

inventions and about AB's interest in next-generation sequencing technologies prior to AB's acquisition of Agencourt in 2006.

### B. Defendants' witnesses for patent infringement and validity phase of trial

#### 1. Keith C. Backman, Ph.D.

Dr. Backman will provide a tutorial regarding the structure of DNA, Sanger sequencing, and the inventions described and claimed in the patents-in-suit.

Dr. Backman will also offer testimony on every topic concerning the '119 patent as set out in his Expert Report on infringement. For example, Dr. Backman will testify regarding infringement of claim 1 of the '119 patent by the one-base-encoding and two-base-encoding oligonucleotide probes made, used, sold, and/or offered for sale by AB and/or Agencourt Personal Genomics, as set out in his Expert Report on infringement. Dr. Backman will testify concerning the limitations found in claim 1 of the '119 patent; that the AB probes literally satisfy every limitation of claim 1 of the '119 patent, with the exception of the phosphoramidate linker, which is satisfied under the doctrine of equivalents by the phosphorothiolate linker found in the AB probes; and that the phosphorothiolate linker performs substantially the same function in substantially the same way to achieve substantially the same result as the phosphoramidate linker recited in claim 1 of the '119 patent. Dr. Backman will testify concerning all of the specific one-base-encoding and two-base-encoding probes described in his report, their structure, and how each satisfies the claim limitations.

Dr. Backman will also offer testimony on every topic concerning the infringement of the asserted claims of the '341 and '597 patents by the "one-base-encoding" version of the SOLiD System as set out in his Expert Report on infringement. Dr. Backman will testify that each limitation of the asserted claims of the '341 and '597 patents is satisfied by the one-base-encoding version of the SOLiD System, either literally or under the Doctrine of Equivalents. Defendants reserve the right to amend this list of topics if the Court modifies its holdings in the October 22, 2008 Order regarding the parties' respective motions for

summary judgment.

Dr. Backman will also testify to rebut the arguments of Drs. Metzker and Sibson regarding whether the prior art anticipated or rendered any of the asserted claims of the patents-in-suit obvious, and whether any of the asserted claims of the patents-in-suit are invalid for any other reason asserted by Drs. Metzker and Sibson. Pursuant to the parties' stipulation, Dr. Backman will not offer testimony to rebut Drs. Metzker and Sibson regarding U.S. Patent Number 4,883,750 ("the Whiteley reference").

### 2.   John Quackenbush, Ph.D.

Dr. Quackenbush will testify to rebut the arguments of Drs. Metzker and Sibson on the issue of whether the prior art anticipated or rendered any of the asserted claims of the patents-in-suit obvious.  Dr. Quackenbush will only offer testimony to rebut the issues raised by Drs. Metzker and Sibson regarding the Whiteley reference, and other topics that are not cumulative of Dr. Backman's testimony.

### 3.   Gerald J. Siuta, Ph.D.

Dr. Siuta is an expert witness retained by Defendants. Dr. Siuta will testify about the appropriate measure of damages to compensate Solexa for infringement: a reasonable royalty. Dr. Siuta will explain the hypothetical negotiation scenario, including the conditions of a willing licensor and licensee and that the patents are assumed valid and infringed.  Dr. Siuta will also explain various methods for arriving at a reasonable royalty amount, his choice in this case to proceed based on the 25% Rule, and his assessment under the *Georgia-Pacific* factors.  As concerns the case for infringement due to Agencourt's practice of the one-base-encoding version of the SOLiD System, Dr. Siuta will testify that it would have been reasonable to expect Agencourt to negotiate for only a developmental-use license under the patents-in-suit, and to leave negotiation for a commercial-sale license to the entity purchasing the Agencourt technology for commercialization, AB.  Dr. Siuta will testify that the Agencourt developmental-use license would have been purchased for a lump-sum amount, akin to other actual license arrangements, and that the commercial-sale license to AB would have been limited to the '119 patent with a royalty rate applied to the

list prices for the SOLiD system's sequencing probe kits.

### 4. John Stuelpnagel, D.V.M.

Dr. Stuelpnagel is an employee of Illumina. Dr. Stuelpnagel will testify that the jury's damages award in the *Affymetrix v. Illumina* case amounted to a 15% royalty rate.

### 5. Gina Costa, Ph.D.

Dr. Costa is an employee of AB. Defendants may present testimony from Dr. Costa regarding the development and use of the SOLiD System and the one-base-encoding and two-base-encoding probes at Agencourt, and the relationship between Agencourt and AB.

### 6. Kevin McKernan, Ph.D.

Dr. McKernan is an employee of AB. Defendants may present testimony from Dr. McKernan regarding the development and use of the SOLiD System at Agencourt and the relationship between Agencourt and AB. Defendants may also present testimony from Dr. McKernan regarding the parties' offers to acquire the SOLiD System technology developed by Agencourt for commercialization.

### 7. Stephen C. Macevicz, Ph.D.

Dr. Macevicz will testify about his conception of the inventions described in the '663 application; how those inventions differ from the prior art; and his diligence in reducing those inventions to practice through his drafting of the '663 application.

## C. Enforceability Phase

### 1. Michael Sofocleous

Mr. Sofocleous is an expert witness retained by Defendants. If AB is permitted to offer the testimony of Dr. Scott Chambers, Mr. Sofocleous will offer expert testimony to rebut Dr. Chambers's testimony. Otherwise Defendants do not expect to call Mr. Sofocleous.

Mr. Sofocleous will offer expert testimony in rebuttal, as necessary, about the controlling legal standard for determining inequitable conduct in connection with applications for patents before the USPTO; the nature of the patent application examination procedure

in the USPTO; and the prior-art searching capability in the USPTO. He will testify that, absent proof of intentional deception or evidence showing motivation and inclination to deceive, the non-prior art information which Dr. Chambers contends that Dr. Macevicz should have disclosed to the USPTO would not have constituted "material" information.

### 2. Keith C. Backman, Ph.D.

Dr. Backman will offer expert testimony regarding the differences between the inventions described and claimed in the patents-in-suit and the disclosures of certain references that have been asserted as prior art by AB.

### 3. John Quackenbush, Ph.D.

Dr. Quackenbush will offer expert testimony regarding the differences between the inventions described and claimed in the patents-in-suit and the disclosure of the Whiteley reference.

### 4. Stephen C. Macevicz, Ph.D.

Dr. Macevicz may testify about his knowledge of certain references that have been asserted as prior art by AB; why he did or did not submit such references to the examiner during prosecution of the patents-in-suit; and his role in the prosecution of the patents-in-suit.

| | |
|---|---|
| Dated: August 29, 2008 | Respectfully submitted, |

    /s/    John R. Labbé
THOMAS I. ROSS (admitted *pro hac vice*)
KEVIN M. FLOWERS (admitted *pro hac vice*)
JEFFREY H. DEAN (admitted *pro hac vice*)
MARK H. IZRAELEWICZ (admitted *pro hac vice*)
JOHN R. LABBE (admitted *pro hac vice*)
CULLEN N. PENDLETON (admitted *pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606-6357
(312) 474-6300 (telephone)
(312) 474-0448 (facsimile)
E-Mail: tross@marshallip.com
E-Mail: kflowers@marshallip.com
E-Mail: jdean@marshallip.com
E-Mail: mizraelewicz@marshallip.com
E-Mail: jlabbe@marshallip.com
E-Mail: cpendleton@marshallip.com

Counsel for Defendants
ILLUMINA, INC., SOLEXA, INC.,
and STEPHEN C. MACEVICZ