THOMAS I. ROSS (*pro hac vice*)
KEVIN M. FLOWERS (*pro hac vice*)
JEFFREY H. DEAN (*pro hac vice*)
MARK H. IZRAELEWICZ (*pro hac vice*)
JOHN R. LABBE (*pro hac vice*)
CULLEN N. PENDLETON (*pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606-6357
(312) 474-6300 (telephone)
(312) 474-0448 (facsimile)
E-Mail: kflowers@marshallip.com
E-Mail: tross@marshallip.com
E-Mail: jdean@marshallip.com
E-Mail: mizraelewicz@marshallip.com
E-Mail: jlabbe@marshallip.com
E-Mail: cpendleton@marshallip.com

Counsel for Defendants
ILLUMINA, INC., SOLEXA, INC.,
and STEPHEN C. MACEVICZ

BRYAN WILSON (CA SBN 138842)
ERIC C. PAI (CA SBN 247604)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792
E-Mail: BWilson@mofo.com;
EPai@mofo.com

DAVID C. DOYLE (CA SBN 70690)
STEVEN E. COMER (CA SBN 154384)
BRIAN M. KRAMER (CA SBN 212107)
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, California 92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125
E-Mail: DDoyle@mofo.com
E-Mail: SComer@mofo.com
E-Mail: BMKramer@mofo.com

Counsel for Plaintiff
APPLERA CORPORATION – APPLIED
BIOSYSTEMS GROUP

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| APPLERA CORPORATION—APPLIED BIOSYSTEMS GROUP, a Delaware corporation, <br><br> Plaintiff/Counterdefendant, <br><br> - vs. - <br><br> ILLUMINA, INC., a Delaware corporation, SOLEXA, INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual, <br><br> Defendants/Counterclaimants. | Case No. 07-CV-02845 WHA <br><br> District Judge William H. Alsup |

## JOINT PROPOSED JURY INSTRUCTIONS

# TABLE OF CONTENTS

**STIPULATED INSTRUCTION NO. 1 RE**
WHAT IS A PATENT AND HOW IS IT OBTAINED ..................................... 1

**STIPULATED INSTRUCTION NO. 2 RE**
SUMMARY OF CONTENTIONS ...................................................... 3

**STIPULATED INSTRUCTION NO. 3 RE**
OUTLINE OF TRIAL ................................................................. 5

**STIPULATED INSTRUCTION NO. 4 RE**
SUMMARY OF CONTENTIONS ...................................................... 7

**STIPULATED INSTRUCTION NO. 5 RE**
INTERPRETATION OF CLAIMS ................................................... 8

**STIPULATED INSTRUCTION NO. 6 RE**
INFRINGEMENT – BURDEN OF PROOF ....................................... 10

**STIPULATED INSTRUCTION NO. 7 RE**
DIRECT INFRINGEMENT ......................................................... 11

**STIPULATED INSTRUCTION NO. 8 RE**
LITERAL INFRINGEMENT ....................................................... 12

**DISPUTED INSTRUCTION NO. 1 OFFERED BY SOLEXA RE**
INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS ............ 13

**DISPUTED INSTRUCTION NO. 1A OFFERED BY AB RE**
INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS ............. 15

**DISPUTED INSTRUCTION NO. 2 OFFERED BY SOLEXA RE**
LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS
(PROSECUTION HISTORY ESTOPPEL) ......................................... 17

**DISPUTED INSTRUCTION NO. 2A OFFERED BY AB RE**
LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS ...................... 18

**DISPUTED INSTRUCTION NO. 3 OFFERED BY SOLEXA RE**
DE MINIMIS INFRINGEMENT ................................................... 21

**DISPUTED INSTRUCTION NO. 3A OFFERED BY AB RE**
DE MINIMIS INFRINGEMENT ................................................... 22

**STIPULATED INSTRUCTION NO. 9 RE**
WILLFUL INFRINGEMENT ....................................................... 23

**STIPULATED INSTRUCTION NO. 10 RE**
INVALIDITY – BURDEN OF PROOF ............................................ 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STIPULATED INSTRUCTION NO. 11 RE**
      **WRITTEN DESCRIPTION REQUIREMENT** ................................................ **26**

**STIPULATED INSTRUCTION NO. 12 RE**
      **ENABLEMENT** ................................................ **27**

**STIPULATED INSTRUCTION NO. 13 RE**
      **DEFINITENESS** ................................................ **28**

**STIPULATED INSTRUCTION NO. 14 RE**
      **ANTICIPATION** ................................................ **29**

**STIPULATED INSTRUCTION NO. 15 RE**
      **STATUTORY BARS** ................................................ **31**

**STIPULATED INSTRUCTION NO. 16 RE**
      **OBVIOUSNESS** ................................................ **33**

**STIPULATED INSTRUCTION NO. 17 RE**
      **SCOPE AND CONTENT OF PRIOR ART** ................................................ **35**

**STIPULATED INSTRUCTION NO. 18 RE**
      **DIFFERENCES OVER THE PRIOR ART** ................................................ **37**

**STIPULATED INSTRUCTION NO. 19 RE**
      **LEVEL OF ORDINARY SKILL** ................................................ **38**

**DISPUTED INSTRUCTION NO. 4 OFFERED BY SOLEXA RE**
      **EQUITABLE ESTOPPEL** ................................................ **39**

**DISPUTED INSTRUCTION NO. 4A OFFERED BY AB RE**
      **ESTOPPEL** ................................................ **41**

**DISPUTED INSTRUCTION NO. 5 OFFERED BY SOLEXA RE**
      **UNCLEAN HANDS** ................................................ **42**

**DISPUTED INSTRUCTION NO. 5A OFFERED BY AB RE**
      **UNCLEAN HANDS** ................................................ **43**

**DISPUTED INSTRUCTION NO. 6 OFFERED BY SOLEXA RE**
      **INEQUITABLE CONDUCT** ................................................ **44**

**DISPUTED INSTRUCTION NO. 6A OFFERED BY AB RE**
      **INEQUITABLE CONDUCT** ................................................ **47**

**STIPULATED INSTRUCTION NO. 20 RE**
      **DAMAGES – BURDEN OF PROOF** ................................................ **50**

**STIPULATED INSTRUCTION NO. 21 RE**
      **REASONABLE ROYALTY – DEFINITION** ................................................ **51**

**DISPUTED INSTRUCTION NO. 7 OFFERED BY SOLEXA RE**
      **DATE OF COMMENCEMENT – PRODUCTS** ................................................ **52**

**DISPUTED INSTRUCTION NO. 7A OFFERED BY AB RE
DATE OF COMMENCEMENT – PRODUCTS**................................................**53**

**DISPUTED INSTRUCTION NO. 8 OFFERED BY SOLEXA RE
DAMAGES – REASONABLE ROYALTY – FACTORS TO CONSIDER**...**54**

**DISPUTED INSTRUCTION NO. 8A OFFERED BY AB RE
DAMAGES – REASONABLE ROYALTY – FACTORS TO CONSIDER**....**56**

# PRELIMINARY PATENT JURY INSTRUCTIONS

## STIPULATED INSTRUCTION NO. 1 RE
## WHAT IS A PATENT AND HOW IS IT OBTAINED

Now that the first part of the trial is complete, we shall proceed with the second part of the trial. While you have already formed opinions and considered evidence from the first part of trial, please set those opinions aside until all the evidence is in during the second part. You must continue to keep an open mind until you start your deliberations at the end of the case.

~~This case~~ The second phase involves a dispute relating to ~~a United States Patent~~ Solexa's claim that Applied Biosystems and its predecessor, Agencourt Personal Genomics, infringed the Macevicz patents, and Applied Biosystems's claim that the Macevicz patents are invalid and unenforceable. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). The process of obtaining a patent is called patent prosecution. A valid United States patent gives the patent owner ~~[for up to 20 years from the date the patent application was filed]~~ the right for 17 years from the date the patent issued to prevent others from making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patent holder's permission. A violation of the patent owner's rights is called infringement. The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO. The PTO is an agency of the federal government and employs trained examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as "prior art." The examiner also will review prior art if it is submitted to the PTO by the applicant. Prior art is defined by law, and I will give you at a later time specific instructions as to what

constitutes prior art.  However, in general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country.  The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of the prior art.  A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed."  This writing from the patent examiner is called an "office action."  If the examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims.  This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent.  The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history."  All of this material becomes available to the public no later than the date when the patent issues.

~~The~~ A patent granted by the PTO is presumed valid. However, the fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not have had available to it all the information that will be presented to you.  A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

**AUTHORITIES:**

Model Patent Jury Instructions for the Northern District of California, Instruction A.1 (October 9, 2007); 35 U.S.C. § 282 ("A patent shall be presumed valid."); *Applied Materials, Inc. v. Advanced Semi. Materials*, 98 F.3d 1563, 1569 (Fed. Cir. 1996)("The presumption of validity is based on the presumption of administrative correctness of actions of the agency charged with examination of patentability."); *Intervet America, Inc. v. Kee-Vet Laboratories, Inc.*, 887 F.2d 1050, 1054 (Fed. Cir. 1989)("The presumption of validity under 35 U.S.C. § 282 carries with it a presumption the examiner did his duty and knew what claims he was allowing."); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1358 (Fed. Cir. 1984) ("The first paragraph of section 282 declares that a patent shall be presumed valid and that the burden of establishing invalidity of a patent shall rest on a party asserting it."); *Intellectual Property Development, Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1319 (Fed. Cir. 2003) ("The claims of a patent are afforded a statutory presumption of validity.").

# STIPULATED INSTRUCTION NO. 2 RE
# SUMMARY OF CONTENTIONS[1]

To help you follow the evidence in this phase of the trial, I will now give you a summary of the positions of the parties.

The parties in the patent infringement phase of this case are Solexa and Applied Biosystems. The case involves the three United States patents issued to Dr. Macevicz that we have been referring to as "the Macevicz patents." These patents were transferred by Stephen Macevicz to Lynx Therapeutics, which transferred them to Solexa, Inc., which now owns the Macevicz patents. Illumina, Inc. now owns Solexa, Inc. The patents involved in this case are United States Patent Numbers 5,750,341; 5,969,119; and 6,306,597 which list Stephen Macevicz as the inventor. For convenience, the parties and I may often refer to these patents as the '341, '119, and '597 patents, these being the last three numbers of the patent numbers. The three patents are collectively referred to as "the Macevicz patents."

Solexa filed its claim of infringement against Applied Biosystems seeking money damages from Applied Biosystems for allegedly infringing the Macevicz patents by using and selling its one-base-encoding SOLiD System and the probes used in the SOLiD Systems. Applied Biosystems claims that it has not infringed the claims of the '341, '119, or '597 patents and that the claims of those patents are invalid and unenforceable. The '341, '119, or '597 patent are referred to as "the Macevicz patents."

Solexa alleges that the one-base encoding SOLiD System infringed claims 1, 2, 6, 7, 8, 11, 12, 16, 17, and 18 of the '341 patent and claim 1 of the '597 patent. The one-base encoding SOLiD System was used by Agencourt Personal Genomics, which we will refer to as "Agencourt." Agencourt first developed a one-base-encoding SOLiD System, and then developed a two-base-encoding SOLiD System. In July of 2006, Applied Biosystems purchased Agencourt.

The products that are alleged to infringe are:

- The one-base-encoding SOLiD System used at Agencourt

- The one-base-encoding SOLiD System Probes used at Agencourt

---

[1] Several proposed jury instructions refer to the Macevicz '341 patent. The Court granted Applied Biosystems' motion for summary judgment of noninfringement of the '341 patent. Solexa has filed a motion for clarification and reconsideration of that order. Depending on the resolution of the motion for clarification and reconsideration, the parties expect to agree on modifications to the instructions consistent with the Court's ruling. The parties will promptly provide the Court with any necessary revisions.

**JOINT PROPOSED JURY INSTRUCTIONS**
**CASE NO: 07-CV-02845 WHA**

1
2

- The two-base-encoding SOLiD System Probes used by both Agencourt and Applied Biosystems, and sold by Applied Biosystems

3
4
5

Solexa seeks money damages from Agencourt's use of the one-base-encoding SOLiD Systems and the one-base- and two-base-encoding SOLiD System Probes that Solexa argues are covered by the claims of the Macevicz patents. Solexa also seeks money damages to compensate it for Applied Biosystems's sales of its two-base-encoding SOLiD System Probes, which Solexa contends infringe the '119 patent.

6
7
8

Applied Biosystems denies that it has infringed any claims of the Macevicz patents and argues that <u>the asserted claims are invalid and unenforceable.  Applied Biosystems further contends that if Agencourt practiced the Macevicz inventions, Agencourt's use was excused because its was "de minimis."</u>

9
10
11
12
13
14
15

Your job will be to decide whether claims <u>1, 2, 6, 7, 8, 11, 12, 16, 17, and 18 of the '341 patent, claim 1 of the '597 patent, and claim 1 of the '119 patent, which are referred to as "the asserted claims,"</u> have been infringed and whether those claims are invalid <u>or unenforceable</u>.  If you decide that any <u>asserted</u> claim has been infringed and is not invalid or unenforceable, you will then need to decide any money damages to be awarded to Solexa to compensate it for the infringement.  You will also need to make a finding as to whether <u>Agencourt's</u> infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give.  I will take willfulness into account later.

16
17

It is my job as judge to determine the meaning of any claim language that needs interpretation.  You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid.

18

## **AUTHORITIES:**

19
20

Model Patent Jury Instructions for the Northern District of California, Instruction A.2 (October 9, 2007).

21
22
23
24
25
26
27
28

**JOINT PROPOSED JURY INSTRUCTIONS**
**CASE NO: 07-CV-02845 WHA**

1
2

**STIPULATED INSTRUCTION NO. 3 RE
OUTLINE OF TRIAL**

3
4

~~The~~ When the second phase of trial ~~will now begin. First~~ begins, each side may make an opening statement. An opening statement is not evidence. It is simply an outline

5

to help you understand what that party expects the evidence will show.

6

The presentation of evidence will then begin. There are two standards of proof that

7

you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether something is more likely true than not. On other issues you

8

must use a higher standard and decide whether it is highly probable that something is true.

9

Solexa will present its evidence on its contention that the asserted claims of the

10

Macevicz patents have been <u>infringed by Agencourt and Applied Biosystems</u> and continue to be infringed by Applied Biosystems and that <u>Agencourt's</u> infringement has

11

been ~~and continues to be~~ willful. To prove infringement of any claim, Solexa must persuade you that it is more likely than not that Applied Biosystems or its predecessor,

12

Agencourt, has infringed that claim. To persuade you that any infringement was willful,

13

Solexa must prove that it is highly probable that the infringement was willful.

14

Applied Biosystems will go next and present its evidence that the claims of the

15

Macevicz patents are invalid. To prove invalidity of any claim, Applied Biosystems must persuade you that it is highly probable that the claim is invalid. <u>Applied Biosystems will</u>

16

<u>also present its evidence that the Macevicz patents are unenforceable by Solexa either</u> <u>through "inequitable conduct," "estoppel," or "unclean hands." To prove unenforceability</u>

17

<u>of any patent by estoppel or unclean hands, Applied Biosystems must persuade you that it</u> <u>is more likely than not that the patents are unenforceable. To prove unenforceability by</u>

18

<u>Solexa through inequitable conduct, Applied Biosystems must persuade you that is</u> <u>highly probable that the patent was procured by inequitable conduct.</u> In addition to

19

presenting its evidence of invalidity <u>and unenforceability</u>, Applied Biosystems will put on

20

evidence responding to Solexa's infringement and willfulness contentions.

21

Illumina will then return and will put on evidence responding to Applied

22

Biosystems's contention that the claims of the Macevicz patents are invalid and unenforceable. ~~[Patent holder] will also have the option to put on what is referred to as~~

23

~~"rebuttal" evidence to any evidence offered by [alleged infringer] of non-infringement [or~~

24

~~lack of willfulness].~~

25

Finally, Applied Biosystems will have the option to put on "rebuttal" evidence to

26

any evidence offered by Illumina on the validity <u>and enforceability</u> of the claims of the Macevicz patents.

27

During the presentation of the evidence, the attorneys will be allowed brief

28

opportunities to explain what they believe the evidence has shown or what they believe

**JOINT PROPOSED JURY INSTRUCTIONS**
**CASE NO: 07-CV-2845 WHA**

1
2

upcoming evidence will show.  Such comments are not evidence and are being allowed solely for the purpose of helping you understand the evidence.

3
4

Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence comes in and wait for all the evidence before you make any decisions.  In other words, you should keep an open mind throughout the entire trial.

5
6
7

After the evidence has been presented, I will give you final instructions on the law that applies to the case and the attorneys will make closing arguments.  Closing arguments are not evidence.  After the instructions and closing arguments, you will then decide the case.

8

**AUTHORITIES:**

9
10
11
12
13
14
15
16
17
18
19

Model Patent Jury Instructions for the Northern District of California, Instruction A.5 (October 9, 2007); 35 U.S.C. § 282 ("A patent shall be presumed valid."); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1358 (Fed. Cir. 1984) ("The first paragraph of section 282 declares that a patent shall be presumed valid and that the burden of establishing invalidity of a patent shall rest on a party asserting it."); *State Contracting & Engineering Corp. v. Condotte America, Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003) ("A party seeking to establish that particular claims are invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence."); *Intellectual Property Development, Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1319 (Fed. Cir. 2003) ("The claims of a patent are afforded a statutory presumption of validity."); *Applied Materials, Inc. v. Advanced Semi. Materials*, 98 F.3d 1563, 1569 (Fed. Cir. 1996)("The presumption of validity is based on the presumption of administrative correctness of actions of the agency charged with examination of patentability."); *Intervet America, Inc. v. Kee-Vet Laboratories, Inc.*, 887 F.2d 1050, 1054 (Fed. Cir. 1989)("The presumption of validity under 35 U.S.C. § 282 carries with it a presumption the examiner did his duty and knew what claims he was allowing.").

20
21
22
23
24
25
26
27
28

**JOINT PROPOSED JURY INSTRUCTIONS**
**CASE NO: 07-CV-02845 WHA**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FINAL PATENT INFRINGEMENT JURY INSTRUCTIONS

### STIPULATED INSTRUCTION NO. 4 RE
### SUMMARY OF CONTENTIONS

I will first give you a summary of each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions.

As I previously told you, Solexa seeks money damages from Agencourt for allegedly infringing the Macevicz patents by using the one-base encoding SOLiD System and SOLiD System probes, and from Applied Biosystems for allegedly infringing the Macevicz patents by using and selling the probes used in the SOLiD Systems. Solexa contends that the one-base encoding SOLiD System is covered by claims 1, 2, 6, 7, 8, 11, 12, 16, 17, and 18 of the '341 patent and claim 1 of the '597 patent, and that the SOLiD System probes are covered by claim 1 of the '119 patent. These are the asserted claims of the Macevicz patents. The products that are alleged to infringe are:

- The one-base-encoding SOLiD System used at Agencourt

- The one-base-encoding SOLiD System Probes used at Agencourt

- The two-base-encoding SOLiD System Probes used by both Agencourt and Applied Biosystems, and sold by Applied Biosystems

Applied Biosystems denies that it has infringed the asserted claims of the Macevicz patents and argues that, in addition, the asserted claims of the Macevicz patents are invalid, and unenforceable. Applied Biosystems further contends that if Agencourt practiced the Macevicz inventions, Agencourt's use was excused because its was "de minimis."

Your job is to decide whether the asserted claims of the Macevicz patents have been infringed and whether those claims are invalid or unenforceable. If you decide that any asserted claim has been infringed and is not invalid or unenforceable, you will then need to decide any money damages to be awarded to Solexa to compensate it for the infringement. You will also need to make a finding as to whether Agencourt's infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

## AUTHORITIES:

Model Patent Jury Instructions for the Northern District of California, Instruction B.1 (October 9, 2007).

1
2

## STIPULATED INSTRUCTION NO. 5 RE INTERPRETATION OF CLAIMS[2]

3
4
5
6

    I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

7
8

    The following is list of the terms I have interpreted for you, and my interpretation of those terms:

9

| Claim Term | The Court's Interpretation |
| --- | --- |
| "initializing oligonucleotide probe" | "the oligonucleotide to which the first extension oligonucleotide probe is first ligated" |
| "ligating an extension oligonucleotide probe to said extendable probe terminus" | "forming a covalent bond between an extension oligonucleotide probe and the extendable probe terminus of either an initializing oligonucleotide or an extended oligonucleotide probe while hybridized to a target polynucleotide." |
| "extended oligonucleotide probe" | "an initializing oligonucleotide probe effectively extended by one or more nucleotides" |
| "identifying" | "within each cycle determining the identity of a base in the target polynucleotide." |

10
11
12
13
14
15
16
17
18
19
20
21
22
23

24
25
26
27
28

[2] Both parties proposed several claim constructions to the Court as part of the *Markman* claim construction process. In the Court's claim construction order (Dkt. No. 133), the Court provided its construction of six disputed terms. The Court's construction of those six terms are provided in this stipulated instruction. However, by agreeing to this instruction, the parties do not waive their right to appeal or otherwise object to the Court's construction of the subject terms. The parties further reserve the right to seek additional claim construction rulings of additional claim terms.

| Claim Term | The Court's Interpretation |
|---|---|
| "just-ligated extension probe" | "the extension oligonucleotide probe ligated to either the initializing oligonucleotide probe or an extended oligonucleotide probe in the present cycle of the method." |
| "repeating steps (b), (c) and (d) until a sequence of nucleotides in the target polynucleotide is determined" | This term has its plain and ordinary meaning. |

**AUTHORITIES:**

Model Patent Jury Instructions for the Northern District of California, Instruction B.2 (October 9, 2007); Federal Circuit Bar Assoc. Model Patent Jury Instructions (Exh. A), Instruction 2.3 (2007), Claim Construction Order, dated February 21, 2008 (Dkt. No. 133); *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-13 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir. 1998) (*en banc*); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (*en banc*).

1

2

**STIPULATED INSTRUCTION NO. 6 RE**
**INFRINGEMENT – BURDEN OF PROOF[3]**

3

4

5

6

I will now instruct you on the rules you must follow in deciding whether Solexa has proven that [Agencourt and/or ]Applied Biosystems has infringed one or more of the asserted claims of the Macevicz patents. To prove infringement of any claim, Solexa must persuade you that it is more likely than not that [Agencourt and/or ]Applied Biosystems has infringed that claim.

7

## AUTHORITIES:

8

9

10

Model Patent Jury Instructions for the Northern District of California, Instruction 3.1 (October 9, 2007); *Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005); *Seal-Flex, Inc. v. Athletic Track*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468-69 (Fed. Cir. 1993).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[3] Applied Biosystems objects to some of these instruction because they refer to both Applied Biosystems and Agencourt Personal Genomics.  Applied Biosystems instead proposes that the Instruction No. 2 include a sentence stating:  "Unless otherwise stated, references to "Applied Biosystems" refer to Applied Biosystems, Inc. and Agencourt Personal Genomics, a company it acquired in 2006."  Solexa contends that references to Agencourt are appropriate because its allegations relate to Agencourt's activity that occurred prior to Applied Biosystems purchase of Agencourt.
Instead of submitting disputed proposed jury instructions for every instruction containing only this common dispute, the parties have submitted instructions with brackets around the disputed references to "Agencourt," and will further address this issue in the parties' separate memoranda of law.

1
2

## STIPULATED INSTRUCTION NO. 7 RE
## DIRECT INFRINGEMENT

3
4

A patent's claims define what is covered by the patent. A product or method directly infringes a patent if it is covered by at least one claim of the patent.

5
6
7
8
9
10

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, [and I will instruct you later as to the meaning of the asserted patent claims] and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether [alleged direct infringer] has [made,] [used,] [sold,] [offered for sale or imported] [Agencourt and/or ]Applied Biosystems has made, used, or sold within the United States a product or method covered by a claim of the Macevicz patents. You, the jury, make this decision.

11
12
13
14
15
16

With one exception, you must consider each of the asserted claims of the patent individually, and decide whether [alleged direct infringer]'s [product] [method] infringes [Agencourt's and/or ]Applied Biosystems's products or methods infringe that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

17
18
19
20
21

There are two ways in which a patent claim may be directly infringed. A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents." The following instructions will provide more detail on these two types of direct infringement. [You should note, however, that what are called "means plus function" requirements in a claim are subject to different rules for deciding direct infringement. These separate rules apply to claims [ ]. I will describe these separate rules shortly.]

22

## AUTHORITIES:

23
24
25
26
27

Model Patent Jury Instructions for the Northern District of California, Instruction 3.2 (October 9, 2007); 35 U.S.C. § 271; *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 11 (Fed. Cir. 2005); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330-34 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993).

28

1
2

**STIPULATED INSTRUCTION NO. 8 RE
LITERAL INFRINGEMENT**

3

        To decide whether an [Agencourt and/or ]Applied Biosystems product or method
literally infringe a claim of the Macevicz patents, you must compare that product or

4

method with the patent claim and determine whether every requirement of the claim is
included in that product or method.  If so, [alleged infringer]'s [product] [method]

5

[Agencourt's and/or ]Applied Biosystems's product or method literally infringes that

6

claim.  If, however, [Agencourt's and/or ] Applied Biosystems's product or method does
not have every requirement in the patent claim, the product or method does not literally

7

infringe that claim.  You must decide literal infringement for each asserted claim

8

separately.

9

        ~~[If [alleged infringer's] [product] [method] does not itself include every~~

10

~~requirement in the patent claim, [alleged infringer] cannot be liable for infringement~~
~~merely because other parties supplied the missing elements, unless [accused infringer]~~

11

~~directed or controlled the acts by those parties.]~~

12

**AUTHORITIES:**

13

        Model Patent Jury Instructions for the Northern District of California, Instruction

14

3.3 (October 9, 2007); *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352-
53 (Fed. Cir. 2005); *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir.

15

2001); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996); *Cross Med.*
*Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293 (Fed. Cir. 2005); *On Demand*

16

*Machine Corp. v. Ingram Industries, Inc.*, 442 F.3d 1331 (Fed. Cir. 2006); *BMC Res., Inc.*

17

*v. Paymentech, L.P.*, 2007 U.S. App. LEXIS 22413 (Fed. Cir. 2007).

18
19
20
21
22
23
24
25
26
27
28

**JOINT PROPOSED JURY INSTRUCTIONS**
**CASE NO: 07-CV-02845 WHA**

                                    12

1
2

**DISPUTED INSTRUCTION NO. 1 OFFERED BY SOLEXA RE
INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

3

4

     If you decide that <u>Agencourt and/or Applied Biosystems's</u> product or method does not literally infringe an asserted patent claim, you must then decide whether that product or method infringes the asserted claim under what is called the "doctrine of equivalents."

5

6

7

8

9

10

     Under the doctrine of equivalents, the product or method can infringe an asserted patent claim if it includes parts or steps that are identical or equivalent to the requirements of the claim.  If the product or method is missing an identical or equivalent part or step to even one requirement of the asserted patent claim, the product or method cannot infringe the claim under the doctrine of equivalents.  Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product or method has either an identical or equivalent part or step to that individual claim requirement.

11

12

13

     A part or step of a product or method is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part or step and the requirement were not substantial as of the time of the alleged infringement.

14

15

16

     One way to decide whether any difference between a requirement of an asserted claim and a part or step of the product or method is not substantial is to consider whether, as of the time of the alleged infringement, the part or step of the product or method performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

17

18

19

20

21

22

23

     In deciding whether any difference between a claim requirement and the product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part or step with the claimed requirement. The known interchangeability between the claim requirement and the part or step of the product is not necessary to find infringement under the doctrine of equivalents. However, known interchangeability may support a conclusion that the difference between the part of and/or step performed by the product and the claim requirement is not substantial. The fact that a part and/or step of the product performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

24

25

26

27

     You may not use the doctrine of equivalents to find infringement if you find that <u>an Agencourt and/or Applied Biosystems</u> product or method is the same as what was in the prior art before the application for the Macevicz patents or what would have been obvious to persons of ordinary skill in the field in light of what was in the prior art.  A patent holder may not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent and Trademark Office.

28

1
2
3

     If Applied Biosystems has offered evidence sufficient to show that the accused product or method is in the prior art, the burden shifts to Solexa to prove that what it attempts to cover under the doctrine of equivalents is not in the prior art or would not have been obvious from the prior art.

4
5
6
7

     You may not use the doctrine of equivalents to find infringement if you find that the subject matter alleged to be equivalent to a requirement of the patent claim was described in the any of Macevicz patents but not covered by any of its claims.  The subject matter described but not claimed must be specific enough that one of ordinary skill in the art would understand that it was present in the patent.

8

## AUTHORITIES:

9
10
11
12
13

     Model Patent Jury Instructions for the Northern District of California, Instruction 3.4 (October 9, 2007); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1379-82 (Fed. Cir. 2006); *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005); *Johnson & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (*en banc*); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JOINT PROPOSED JURY INSTRUCTIONS**
**CASE NO: 07-CV-02845 WHA**

1

2

**DISPUTED INSTRUCTION NO. 1A OFFERED BY AB RE**
**INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

3

4

5

        If you decide that an Applied Biosystems product or method does not literally infringe an asserted patent claim, you must then decide whether that product or method infringes the asserted claim under what is called the "doctrine of equivalents."

6

7

8

9

10

        Under the doctrine of equivalents, the product or method can infringe an asserted patent claim if it includes parts or steps that are identical or equivalent to the requirements of the claim. If the product or method is missing an identical or equivalent part or step to even one requirement of the asserted patent claim, the product or method cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product or method has either an identical or equivalent part or step to that individual claim requirement.

11

12

13

        A part or step of a product or method is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part or step and the requirement were not substantial as of the time of the alleged infringement.

14

15

16

17

        One way to decide whether any difference between a requirement of an asserted claim and a part or step of the product or method is not substantial is to consider whether, as of the time of the alleged infringement, the part or step of the product or method performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

18

19

20

21

22

23

24

        In deciding whether any difference between a claim requirement and the product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part or step with the claimed requirement. The known interchangeability between the claim requirement and the part or step of the product is not necessary to find infringement under the doctrine of equivalents. However, known interchangeability may support a conclusion that the difference between the part of and/or step performed by the product and the claim requirement is not substantial. The fact that a part and/or step of the product performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

25

26

27

28

        You may not use the doctrine of equivalents to find infringement if you find that an Applied Biosystems product or method is the same as what was in the prior art before the application for the Macevicz patents or what would have been obvious to persons of ordinary skill in the field in light of what was in the prior art. A patent holder may not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent and Trademark Office.

**JOINT PROPOSED JURY INSTRUCTIONS**
**CASE NO: 07-CV-02845 WHA**

1
2
3

If Applied Biosystems has offered evidence sufficient to show that the broadened claim scope sought by Illumina would capture the prior art, the burden shifts to Illumina to prove that what it attempts to cover under the doctrine of equivalents is not in the prior art or would not have been obvious from the prior art.

4
5
6
7

You may not use the doctrine of equivalents to find infringement if you find that the subject matter alleged to be equivalent to a requirement of the patent claim was described in the any of Macevicz patents but not covered by any of its claims.  The subject matter described but not claimed must be specific enough that one of ordinary skill in the art would understand that it was present in the patent.

8

## AUTHORITIES:

9
10
11
12
13

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*,  467 F.3d 1370, 1379-82 (Fed. Cir. 2006); *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005); *Johnson & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (en banc); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994); *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677, 685 (Fed. Cir. 1990).

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JOINT PROPOSED JURY INSTRUCTIONS**
**CASE NO: 07-CV-2845 WHA**

1

2

3

**DISPUTED INSTRUCTION NO. 2 OFFERED BY SOLEXA RE
LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS
(PROSECUTION HISTORY ESTOPPEL)**

4

5

        If you find that Agencourt and/or Applied Biosystems infringed under the doctrine
of equivalents, you must consider the following limitations on the application of the
doctrine of equivalents.

6

Argument-based prosecution history estoppel:

7

8

9

        You may not find that a product or method infringes a claim under the doctrine of
equivalents if you find that, during the patent application process, the applicant for the
patent distinguished an unmet requirement from the allegedly "equivalent" alternative
aspect of that product or method.

10

Amendment-based prosecution history estoppel:

11

12

13

14

15

16

17

18

19

20

21

22

23

        Applied Biosystems has argued that Solexa cannot assert infringement under the
doctrine of equivalents due to statements Solexa made to the PTO in order to get the claim
allowed in the first place.  In order to find an Agencourt's and/or Applied Biosystems
product or method to be equivalent you must also make certain findings regarding the
statements Solexa made to the PTO in order to get the patent. Specifically, in order to find
equivalents, you must first also find one or more of the following: (1) the amendment that
is asserted by Applied Biosystems to limit the scope of equivalents substituted a broader
requirement for a narrower requirement or replaced a requirement of equal scope; (2) the
reason for making this amendment was not related to patentability; (3) a person having
ordinary skill in the field of technology of the patent at the time of the amendment would
not have foreseen the potential substitution of the allegedly "equivalent" alternative for the
unmet claim requirement; (4) the reason for the amendment is tangential or relates to
some issue other than the assertion of equivalence at issue; or (5) some other reason, such
as the shortcomings of language, prevented the applicant from using claim language that
included the allegedly "equivalent" alternative.  You may not find that the alternative
feature of accused one-base-encoding SOLiD System and SOLiD System probes is an
equivalent to an unmet requirement of a claim if that requirement was added to the claim
(or to any claim of the patent) by amendment during the prosecution of the applications
that led to issuance of the patent, unless you also find that at least one of these factors that
I have identified to you.

24

## AUTHORITIES:

25

26

27

28

        Federal Circuit Bar Association Model Patent Jury Instructions, No. 3.1d (January
2008); *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004)
(en banc); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, Ltd., 344 F.3d (Fed.
Cir. 2003) (en banc); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, Ltd., 344
F.3d (Fed. Cir. 2003) (en banc).

**JOINT PROPOSED JURY INSTRUCTIONS
CASE NO: 07-CV-02845 WHA**

1
2

**DISPUTED INSTRUCTION NO. 2A OFFERED BY AB RE
LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS**

3

Before considering infringement under the doctrine of equivalents, you must consider
several limitations on that doctrine.

4

5

Vitiation:

6
7
8
9

You may not determine that an alternative aspect of s product or method is
equivalent to an unmet requirement of a claim if a finding of infringement under
the doctrine of equivalents would effectively eliminate that requirement.
Specifically, the alleged equivalent cannot eliminate or ignore an element or
requirement of the claim.

10

Argument-based prosecution history estoppel:

11
12
13

You may not find that a product or method infringes a claim under the doctrine of
equivalents if you find that, during the patent application process, the applicant for
the patent distinguished an unmet requirement from the allegedly "equivalent"
alternative aspect of that product or method.

14

Amendment-based prosecution history estoppel:

15
16
17
18
19
20
21
22
23
24
25
26
27

Applied Biosystems has argued that Solexa cannot assert infringement under the
doctrine of equivalents due to statements Solexa made to the PTO in order to get
the claim allowed in the first place.  In order to find an Agencourt's and/or Applied
Biosystems product or method to be equivalent you must also make certain
findings regarding the statements Solexa made to the PTO in order to get the
patent.   Specifically, in order to find equivalents, you must first also find that
Solexa has met its burden of proving one or more of the following: (1) the
amendment that is asserted by Applied Biosystems to limit the scope of equivalents
substituted a broader requirement for a narrower requirement or replaced a
requirement of equal scope; (2) the reason for making this amendment was not
related to patentability; (3) a person having ordinary skill in the field of technology
of the patent at the time of the amendment would not have foreseen the potential
substitution of the allegedly "equivalent" alternative for the unmet claim
requirement; (4) the reason for the amendment is tangential or relates to some issue
other than the assertion of equivalence at issue; or (5) some other reason, such as
the shortcomings of language, prevented the applicant from using claim language
that included the allegedly "equivalent" alternative.  You may not find that the
alternative feature of an Agencourt and/or Applied Biosystems product or method
is an equivalent to an unmet requirement of a claim if that requirement was added
to the claim (or to any claim of the patent) by amendment during the prosecution of

28

1
2

the applications that led to issuance of the patent, unless you also find that at least one of these factors that I have identified to you.

3

Prior art:

4
5
6
7

The prior art may preclude a finding of infringement under the doctrine of equivalents. I will explain what "prior art" is but, generally speaking, "prior art" is things that were already known or done before the invention. In reaching your decisions in this case, you must use the definition of "prior art" that I provide to you.

8
9
10
11

To determine whether the prior art precludes a finding of infringement under the doctrine of equivalents you must first have in mind a "hypothetical claim" that would cover the accused allegedly equivalent [product or process] literally. The hypothetical claim is exactly the same as the claim at issue, except that the unmet claim requirements are broadened so that they would be met by the allegedly "equivalent" hypothetical claim.

12
13
14
15
16
17

Once you have this equivalent "hypothetical claim" in mind, you must decide whether this hypothetical claim would have been invalid for either anticipation or obviousness. I will instruct you later on how to determine if a claim is invalid for anticipation or obviousness. You should use these same rules to determine whether or not the "hypothetical claim" would be invalid for anticipation or obviousness. If you determine that the "hypothetical claim" would have been invalid for anticipation or obviousness, then you must find that there is no infringement of this particular claim under the doctrine of equivalents.

18
19
20
21

The Court has already considered some legal limitations on the doctrine of equivalents as applied to the Macevicz patents in this case. Because Illumina made certain claim changes or statements during the patent application process for the '341, '119, and '597 patents, the doctrine of equivalents analysis cannot be applied to the following requirements of the asserted claims:

22
23

In claim 1 of the '119 patent, the doctrine of equivalents cannot be applied to the requirement for "NH," which is also known as a phosphoramidate.

24
25

These requirements are shown in bold text in the context of the claims below:

26

'119 Patent

27
28

1. An oligonucleotide probe of the formula:
HO--(3')(B)j(5')--OP(=O)(O--)**NH**--(B)k-Bt* wherein:

1

• B is a nucleotide or an analog thereof;

2

• j is in the range of from 1 to 12;

• k is in the range of from 1 to 12, such that the sum of j and k is less than or equal

3

to 12;

4

• Bt* is a labeled, non-extendable chain-terminating moiety.

5

6

Unless each of these requirements is literally present within an Applied Biosystems
product or method, there can be no infringement of the claim.

7

8

**AUTHORITIES:**

9

The Federal Circuit Bar Association Model Patent Jury Instructions 3.1d (January

10

12, 2008); *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir.
2004) (en banc); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, Ltd., 344 F.3d

11

(Fed. Cir. 2003) (en banc); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d

12

1371, 1380 (Fed. Cir. 2001); *Honeywell Intl v. Hamilton Sundstrand Corp.*, 370 F.3d 1131
(Fed. Cir. 2004); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, Ltd., 344 F.3d

13

(Fed. Cir. 2003) (en banc); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320 (Fed. Cir.

14

1999); *Wilson Sporting Goods Co. v. D and Geoffrey & Assoc.*, 904 F.2d 676, 684 (Fed.
Cir. 1990); *PSC Computer Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1355-56

15

(Fed. Cir. 2004); *Johnson & Johnston Assocs., Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054
(Fed. Cir. 2002).

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

## DISPUTED INSTRUCTION NO. 3 OFFERED BY SOLEXA RE DE MINIMIS INFRINGEMENT

3

[Solexa contends than an instruction on "de minimis" infringement is inappropriate

4

because it is inconsistent with the facts of this case. However, we propose the following instruction should the Court decide to charge the jury on "de minimis" infringement]

5

6

Applied Biosystems asserts that Agencourt's use of the one-base-encoding SOLiD System falls within a narrow exception that excuses infringement where the infringing

7

activity was performed for non-commercial purposes, for amusement, to satisfy idle curiosity, or for strictly philosophical inquiry. This is referred to "de minimis"

8

infringement. Infringement of a patent in the furtherance of the development of a product

9

is for a commercial purpose even if the activity does not result in the sale of a commercial product.

10

Applied Biosystems has the burden of proving that it is more likely than not that

11

Agencourt's activity with regard to its one-base-encoding SOLiD System was performed for non-commercial purposes, for amusement, to satisfy idle curiosity, or for strictly

12

philosophical inquiry.

13

## AUTHORITIES:

14

*Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1349 (Fed. Cir. 2000)

15

(Recognizing the narrow "de minimis" defense to infringement where the infringing actions were "performed 'for amusement, to satisfy idle curiosity, or for strictly

16

philosophical inquiry.'") (quoting *Roche Prods., Inc. v. Bolar Pharm. Co.*, 733 F.2d 858,

17

863 (Fed. Cir. 1984)); *Baxter Diagnostics, Inc. v. AVL Scientific Corp.*, 924 F. Supp. 994, 1016 (C.D. Cal. 1996) (The accused development activity had a "cognizable commercial

18

purpose" even though the product was never actually marketed or sold.").

19
20
21
22
23
24
25
26
27
28

1
2

**DISPUTED INSTRUCTION NO. 3A OFFERED BY AB RE
DE MINIMIS INFRINGEMENT**

3

4

5

6

7

8

        Applied Biosystems contends that even if the one-base encoding prototype satisfied the claim limitations of claim 1 of the '597 patent, Agencourt's use of the one-base prototype was excused as "de minimis."  An act of infringement is "de minimis" if it does not have definite, cognizable, and substantial commercial purposes.  Applied Biosystems has the burden to prove not only that the manufacture or use of an infringing product was insignificant in amount but also that the alleged infringing activity terminated at the de minimis stage.  If you find that Agencourt's use of the one-base encoding prototype was de minimis, Applied Biosystems is not liable for infringement.

9

**<u>AUTHORITIES:</u>**

10

        *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1349 (Fed. Cir. 2000).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED JURY INSTRUCTIONS
CASE NO: 07-CV-02845 WHA**

22

# STIPULATED INSTRUCTION NO. 9 RE
# WILLFUL INFRINGEMENT

In this case, Solexa argues that Agencourt Personal Genomics ("Agencourt") willfully infringed the Macevicz patents.

To prove willful infringement, Solexa must first persuade you that the Agencourt infringed a valid and enforceable claim of the Macevicz patents. The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement, Solexa must persuade you by clear and convincing evidence that prior to the filing date of the complaint, Agencourt acted with reckless disregard of the claims of the Macevicz patents.

To demonstrate such "reckless disregard," Solexa must satisfy a two-part test.  The first part of the test is objective.  Solexa must persuade you that Agencourt acted despite an objectively high likelihood that its actions constituted infringement of a valid and enforceable patent.  The state of mind of Agencourt is not relevant to this inquiry.  You should focus on whether a reasonable person in the position of Agencourt, after learning of the patent, could have reasonably believed that it did not infringe or reasonably believed the patent was invalid or unenforceable.  If a reasonable person in the position of Agencourt could not have held such belief, then you need to consider the second part of the test.

The second part of the test does depend on the state of mind of Agencourt.  Solexa must persuade you that Agencourt actually knew, or it was so obvious that Agencourt should have known, that its actions constituted infringement of a valid and enforceable patent.

In deciding whether Agencourt acted with reckless disregard for Solexa's patent, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following:

(1)     Whether Agencourt acted in a manner consistent with the standards of commerce for its industry; and

(2)     Whether Agencourt intentionally copied a product of Solexa covered by the patent; and

(3)     Whether Agencourt relied on a legal opinion that was well-supported and believable and that advised the company (a) that the product did not infringe Solexa's patent; (b) that the patent was invalid; or (c) that the patent was unenforceable against the company.

1

## **AUTHORITIES:**

2

3      Model Patent Jury Instructions for the Northern District of California, Instruction
3.11 (October 9, 2007); 35 U.S.C. § 284; *In re Seagate Tech., LLC*, 497 F.3d 1360, 1376
4 (Fed. Cir. 2007); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383
F.3d 1337, 1345 (Fed. Cir. 2004) (*en banc*); *Crystal Semiconductor Corp. v. Tritech
5 Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v.
Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Read Corp. v. Portec, Inc.*, 970
6 F.2d 816 (Fed. Cir. 1992); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d
508, 510 (Fed. Cir. 1990).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**STIPULATED INSTRUCTION NO. 10 RE**
**INVALIDITY – BURDEN OF PROOF**

3

4

5

6

I will now instruct you on the rules you must follow in deciding whether Applied Biosystems has proven that the asserted claims of the Macevicz patents are invalid. Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. To prove invalidity of any patent claim, Applied Biosystems must persuade you that it is highly probable that the claim is invalid.

7

## AUTHORITIES:

8

9

10

Model Patent Jury Instructions for the Northern District of California, Instruction 4.1 (October 9, 2007); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED JURY INSTRUCTIONS**
**CASE NO: 07-CV-02845 WHA**

1

2

## STIPULATED INSTRUCTION NO. 11 RE
## WRITTEN DESCRIPTION REQUIREMENT

3

4

5

6

7

8

9

10

11

　　　Applied Biosystems can meet its burden of proving that a patent claim is invalid by showing that the patent does not contain an adequate written description of the claimed invention. The purpose of this written description requirement is to make sure that a patent describes the technology it seeks to claim as an invention and to demonstrate that the inventor was in possession of the invention at the time the application for the patent was filed, even though the claims may have been changed or new claims added since that time. The written description requirement is satisfied if a person of ordinary skill in the field reading the patent application as originally filed would recognize that the patent application described the invention as claimed, even though the description may not use the exact words found in the claim. A requirement in a claim need not be specifically disclosed in the patent application as originally filed if a person of ordinary skill would understand that the missing requirement is necessarily implied in the patent application as originally filed.

12

13

14

## AUTHORITIES:

15

16

17

18

19

20

　　　Model Patent Jury Instructions for the Northern District of California, Instruction 4.2a (October 9, 2007); 35 U.S.C. § 112(1) and (2); *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 968 (Fed. Cir. 2006); *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247 (Fed. Cir. 2004); *Purdue Pharma L.P. v. Faulding, Inc*., 230 F.3d 1320, 1323 (Fed. Cir. 2000); *Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *In re Alton*, 76 F.3d 1168, 1172 (Fed. Cir. 1996); *University of Rochester v. G.D. Searle & Co*., 358 F.3d 916, 926-928 (Fed. Cir. 2004).

21

22

23

24

25

26

27

28

1
2

# STIPULATED INSTRUCTION NO. 12 RE
# ENABLEMENT

3

4

5

Applied Biosystems can meet its burden of proving that a patent claim is invalid by showing that the patent does not contain a description of the claimed invention that is sufficiently full and clear to enable a person of ordinary skill in the field to make and use the invention.  This is known as the "enablement" requirement.

6

7

8

The patent may be enabling even though it does not expressly state some information if a person of ordinary skill in the field could make and use the invention without having to do excessive experimentation.  In determining whether excessive experimentation is required, you may consider the following factors:

9

the scope of the claimed invention;

10

the amount of guidance presented in the patent;

11

12

the amount of experimentation necessary;

13

the time and cost of any necessary experimentation;

14

how routine any necessary experimentation is in the field of [identify field] nucleic acid chemistry and DNA sequencing technologies;

15

16

whether the patent discloses specific working examples of the claimed invention;

17

the nature and predictability of the field; and

18

19

the level of ordinary skill in the field of [identify field] nucleic acid chemistry and DNA sequencing technologies.

20

21

The question of whether a patent is enabling is judged as of the date the original application for the patent was first filed.

22

## **AUTHORITIES:**

23

24

25

35 U.S.C. § 112(1); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003); *Union Pac. Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1345-46 (Fed. Cir. 2000); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

26

27

28

1
2

## STIPULATED INSTRUCTION NO. 13 RE
## DEFINITENESS

3
4
5
6

The patent laws have requirements for the way in which patent claims are written. Patent claims must be sufficiently clear that a person of ordinary skill in the field of the invention reading them is able to determine what the claims cover and what they do not cover. A person of ordinary skill is a person of average education and training in the field. If a patent claim does not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

7
8
9
10

The amount of detail required for a claim to be definite depends on the particular invention, the prior art and the description of the invention contained in the patent. A patent claim, when read along with the rest of the patent, must reasonably inform those skilled in the field of the invention what the patent claims cover. Simply because claim language may not be precise does not automatically mean that the claim is indefinite. The claim language need only be as precise as the subject matter permits.

11
12

Applied Biosystems contends that claim 1 of the '597 patent are invalid because the language of the claims is indefinite.

13
14
15

If you find that Applied Biosystems has proven that it is highly probable that claim 1 of the '597 patent is indefinite because a person of ordinary skill in the art would not understand what is, and what is not, covered by the claims, you must then find that those claims are invalid.

16

## AUTHORITIES:

17
18
19
20
21
22
23
24
25

Federal Circuit Bar Model Patent Jury Instructions, No. 10.5 (2005); *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1357 (Fed. Cir. 2001); *S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1367 (Fed. Cir. 2001); *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1376 (Fed. Cir. 2001); *Union Pac. Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684-692 (Fed. Cir. 2001); *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1378-80 (Fed. Cir. 2000); *Atmel Corp. v. Info Storage Devices, Inc.*, 198 F.3d 1374, 1378-82 (Fed. Cir. 1999); *Personalized Media Communications, L.L.C. v. Int'l Trade Comm'n*, 161 F.3d 696, 700 n5, 705 (Fed. Cir. 1998); *In re Dossel*, 115 F.3d 942 (Fed. Cir. 1997); *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1217 (Fed. Cir. 1995); *Eiselstein v. Frank*, 52 F.3d 1035, 1040-41 (Fed. Cir. 1995); *In re Donaldson Co.*, 16 F.3d 1189 (Fed. Cir. 1994); *N. Am. Vaccine, Inc. v. Am. Cynamid Co.*, 7 F.3d 1571, 1579-80 (Fed. Cir. 1993); *W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1280 (Fed. Cir. 1988); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1056 (Fed. Cir. 1988).

26
27
28

1

2

# STIPULATED INSTRUCTION NO. 14 RE
# ANTICIPATION

3

4

5

6

7

    A patent claim is invalid if the claimed invention is not new. For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, these previous devices, methods, publications or patents are called "prior art references." If a patent claim is not new we say it is "anticipated" by a prior art reference.

8

9

10

    The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of <u>nucleic acid chemistry and DNA sequencing technologies</u> looking at that one reference would be able to make and use the claimed invention.

11

12

    Here is a list of the ways that Applied Biosystems can show that the Macevicz patent claims were not new:

13

14

    – if the claimed invention was already publicly known or publicly used by others in the United States before the date of Dr. Macevicz's invention;

15

16

17

    – if the claimed invention was already patented or described in a printed publication anywhere in the world before the date of Dr. Macevicz's invention of his inventions.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

18

19

20

    – if the claimed invention was already made or performed by someone else in the United States before the date of Dr. Macevicz's invention of his inventions, if that other person had not abandoned the invention or kept it secret;

21

22

23

    – if the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before the date of Dr. Macevicz's invention of his inventions;

24

    – if Dr. Macevicz did not invent the claimed invention but instead learned of the claimed invention from someone else;

25

26

27

28

    – if Solexa and Applied Biosystems dispute who is a first inventor, the person who first conceived of the claimed invention and first reduced it to practice is the first inventor.  If one person conceived of the claimed invention first, but reduced to practice second, that person is the first inventor only if that person (a) began to reduce the claimed invention to practice before the other party conceived of it and

1    (b) continued to work diligently to reduce it to practice.  A claimed invention is
2    "reduced to practice" when it has been tested sufficiently to show that it will work
     for its intended purpose or when it is fully described in a filed patent application.

3
4    The date of the invention is presumed to be the filing date of the parent patent
     application.  For the Macevicz patents, the date of invention is presumed to be April 17,
5    1995.  The parties dispute whether Dr. Macevicz is entitled to claim an invention date
6    before April 17, 1995.  Since it is in dispute, you must determine a date of conception
     invention for the claimed invention.

7    Applied Biosystems asserts that an World Intellectual Property Organization
8    Publication that lists Edwin Southern and William Cummins as inventors (WO 95/04160)
     is prior art to the Macevicz patents.  Solexa disputes that the Southern reference qualifies
9    are prior art because Dr. Macevicz conceived of his invention before the publication date
10   of the Southern reference, February, 9, 1995.

11   Illumina bears the burden of production to establish that Macevicz (i) conceived of
     the claimed invention prior to Southern's publication date of February 9, 1995, and (ii)
12   exercised reasonable diligence in reducing the invention to practice during the period from
13   Southern's publication date (February 9, 1995) to the date Macevicz filed his patent
     application (April 17, 1995).  Conception is the mental part of an inventive act and is
14   proven when the invention is shown in its complete form by drawings, disclosure to
15   another, or other forms of evidence presented at trial.  To establish diligence, Illumina
     must provide specific details as to what work Macevicz did on the invention during the
16   critical period between February 9, 1995 and April 17, 1995.  In meeting its burden,
17   Illumina must comply with the corroboration requirement.  That means that Macevicz's
     testimony alone will not satisfy Illumina's burden.  Macevicz's testimony regarding his
18   activities must be corroborated by another person or by documents.  If Illumina is able to
19   meet its burden of production, the burden will then shift to Applied Biosystems to show
     that Macevicz was not reasonably diligent during the critical period.

20   **AUTHORITIES:**

21   Model Patent Jury Instructions for the Northern District of California, Instruction
22   4.3a1 (October 9, 2007); 35 U.S.C. § 102(a), (c), (e), (f) and (g); *Apotex U.S.A., Inc. v.
     Merck & Co*., 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Science, Inc. v.
23   Monsanto Co*., 243 F.3d 1316, 1330 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison
24   Co*., 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake*, 222 F.3d 1362, 1366-70
     (Fed. Cir. 2000); *Pannu v. Iolab Corp*., 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro
25   Lundia AB v. Baxter Healthcare Corp*., 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-
     Weston, Inc. v. McCain Foods, Ltd*., 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925
26   F.2d 1450 (Fed. Cir. 1985); *Ralston Purina Co. v. Far-Mar-Co, Inc*., 772 F.2d 1570, 1574
27   (Fed. Cir. 1985); *American Stock Exch., LLC v. Mopie*s, 250 F. Supp. 2d 323 (S.D.N.Y.
     2003); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981).

28

**JOINT PROPOSED JURY INSTRUCTIONS**
**CASE NO: 07-CV-02845 WHA**

# STIPULATED INSTRUCTION NO. 15 RE
## STATUTORY BARS

A patent claim is invalid if the patent application was not filed within the time required by law.  This is called a "statutory bar."  For a patent claim to be invalid by a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the patent application was filed.  Applied Biosystems can show that the patent application was not timely filed:

– if the claimed invention was already patented or described in a printed publication anywhere in the world before April 17, 1994.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

[ if the claimed invention was already being openly used in the United States before [insert date that is one year before application filing date] and that use was not primarily an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose;]

[ if a device or method using the claimed invention was sold or offered for sale in the United States, and that claimed invention was ready for patenting, before [insert date that is one year before application filing date].  [The claimed invention is not being [sold] [or] [offered for sale] if the [patent holder] shows that the [sale] [or] [offer for sale] was primarily experimental.]  [The claimed invention is ready for patenting if it was actually built, or if the inventor had prepared drawings or other descriptions of the claimed invention that were sufficiently detailed to enable a person of ordinary skill in the field to make and use the invention based on them.];]

[ if the [patent holder] had already obtained a patent on the claimed invention in a foreign country before filing the original U.S. application, and the foreign application was filed at least one year before the U.S. application.]

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference to one skilled in the field, or (3) must have been present in the reference, whether or not that was understood at the time.  The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the field of <u>nucleic acid chemistry and DNA sequencing technologies</u> looking at the reference to make and use the claimed invention.

## AUTHORITIES:

Model Patent Jury Instructions for the Northern District of California, Instruction 4.3a2 (October 9, 2007); 35 U.S.C. § 102(b) and (d); Pfaff v. Wells Elec. Inc., 525 U.S. 55

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(1998); *Schering Corp. v. Geneva Pharms.*, 339 F.2d 1273 (Fed Cir. 2003); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbot Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1150 (Fed. Cir. 1983).

1

2

## STIPULATED INSTRUCTION NO. 16 RE OBVIOUSNESS

3

4          Not all innovations are patentable. A patent claim is invalid if the claimed

5   invention would have been obvious to a person of ordinary skill in the field as of April 17,
1995. This means that even if all of the requirements of the claim cannot be found in a
single prior art reference that would anticipate the claim or constitute a statutory bar to

6   that claim, a person of ordinary skill in the field of <u>chemistry and DNA sequencing</u>
<u>technology</u> who knew about all this prior art would have come up with the claimed

7   invention.

8          However, a patent claim composed of several elements is not proved obvious

9   merely by demonstrating that each of its elements was independently known in the prior
art. In evaluating whether such a claim would have been obvious, you may consider

10  whether Applied Biosystems has identified a reason that would have prompted a person of
ordinary skill in the field to combine the elements or concepts from the prior art in the

11  same way as in the claimed invention. There is no single way to define the line between

12  true inventiveness on one hand (which is patentable) and the application of common sense
and ordinary skill to solve a problem on the other hand (which is not patentable). For

13  example, market forces or other design incentives may be what produced a change, rather

14  than true inventiveness. You may consider whether the change was merely the predictable
result of using prior art elements according to their known functions, or whether it was the

15  result of true inventiveness. You may also consider whether there is some teaching or
suggestion in the prior art to make the modification or combination of elements claimed in

16  the patent. However, you must be careful not to determine obviousness using the benefit

17  of hindsight; many true inventions might seem obvious after the fact. You should put
yourself in the position of a person of ordinary skill in the field at the time the claimed

18  invention was made and you should not consider what is known today or what is learned

19  from the teaching of the patent.

20          The ultimate conclusion of whether a claim is obvious should be based upon your

21  determination of several factual decisions. First, you must decide the level of ordinary
skill in the field that someone would have had at the time the claimed invention was

22  made. Second, you must decide the scope and content of the prior art. Third, you must
decide what difference, if any, existed between the claimed invention and the prior art.

23  Finally, you should consider any of the following factors that you find have been shown

24  by the evidence:

25          (1)     commercial success of a product due to the merits of the claimed invention;

26          (2)     a long-felt need for the solution provided by the claimed invention;

27          (3)      unsuccessful attempts by others to find the solution provided by the claimed
                    invention;

28

**JOINT PROPOSED JURY INSTRUCTIONS**
**CASE NO: 07-CV-02845 WHA**

33

(4)    copying of the claimed invention by others;

(5)    unexpected and superior results from the claimed invention;

(6)    acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention; and

(7)    other evidence tending to show nonobviousness.

(8)    independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

(9)    other evidence tending to show obviousness.

The presence of any of the above factors (1) through (7) may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made, and the presence of the above factors (8) or (9) may be considered by you as an indication that the claimed invention would have been obvious at such time. Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

**AUTHORITIES:**

Model Patent Jury Instructions for the Northern District of California, Instruction 4.3b (October 9, 2007); 35 U.S.C. § 103; *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727 (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000); *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 991 (Fed. Cir. 1988); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000 (Fed. Cir. 1986); *Pentec. Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 313 (Fed. Cir. 1985).

1

2

**STIPULATED INSTRUCTION NO. 17 RE
SCOPE AND CONTENT OF PRIOR ART**

3

4

5

    Solexa and Applied Biosystems disagree as to whether the below list of references
should be included in the prior art you use to decide the validity of the asserted claims <u>of
the Macevicz patents.  A list of additional references AB contends are prior art references
can be found in the glossary.</u>

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

- U.S. Patent No. 5,552,278 ("Brenner")
- World Intellectual Property Organization Publication No. 94/23064 ("Canard I")
- U.S. Patent No. 5,798,210 ("Canard II")
- World Intellectual Property Organization Publication No. 94/11530 ("Cantor I")
- U.S. Patent No. 5,503,980 ("Cantor II")
- U.S. Patent No. 7,070,927 ("Drmanac I")
- World Intellectual Property Organization Publication No. 95/09248 ("Drmanac II")
- U.S. Patent No. 5,800,994 ("Martinelli")
- Dearlove et al., "Sorted (cDNA) Restriction Fragments" ("Sibson I")
- Great Britain Patent Application No. 9401200.2 ("Sibson III")
- World Intellectual Property Organization Publication No. 95/20053 ("Sibson IV")
- U.S. Patent No. 6,348,313 ("Sibson V")
- World Intellectual Property Organization Publication No. 95/04160 ("Southern")

25

26

27

    In order to be considered as prior art to the Macevicz patents, these references must
be reasonably related to the claimed invention of that patent. A reference is reasonably
related if it is in the same field as the claimed invention or is from another field to which a
person of ordinary skill in the field would look to solve a known problem.

28

**JOINT PROPOSED JURY INSTRUCTIONS
CASE NO: 07-CV-02845 WHA**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AUTHORITIES:**

Model Patent Jury Instructions for the Northern District of California, Instruction 4.3bi (October 9, 2007); *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727 (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *Wang Labs. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993).

1

2

**STIPULATED INSTRUCTION NO. 18 RE
DIFFERENCES OVER THE PRIOR ART**

3

4

5

    In reaching your conclusion as to whether or not an asserted claim would have been obvious at the time the claimed invention was made, you should consider any difference or differences between the prior art references and the claimed requirements.

6

7

**AUTHORITIES:**

8

9

10

11

    Model Patent Jury Instructions for the Northern District of California, Instruction 4.3bii (October 9, 2007); *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343-45 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 935 (Fed. Cir. 1990).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED INSTRUCTION NO. 19 RE
LEVEL OF ORDINARY SKILL**

Several times, in my instructions, I have referred to a person of ordinary skill in the field of molecular biology and nucleic acid biochemistry. It is up to you to decide the level of ordinary skill in the field of molecular biology and nucleic acid biochemistry. You should consider all the evidence introduced at trial in making this decision, including:

      (1)     he levels of education and experience of persons working in the field;

      (2)     the types of problems encountered in the field; and

      (3)     the sophistication of the technology.

~~[Patent holder] contends that the level of ordinary skill in the field was [   ].
[Alleged infringer] contends that the level of ordinary skill in the field was [   ].~~

Solexa contends that the level of ordinary skill in the field was a research scientist having a Ph.D. (or perhaps an M.D.) and at least two years of postdoctoral research experience in the field of molecular biology and/or nucleic acid biochemistry and the like.

Applied Biosystems contends that the level of ordinary skill in the field was a person with graduate level training in molecular biology or biochemistry, or the like, and three to five years of experience with nucleic acid chemistry and DNA sequencing technologies.

**AUTHORITIES:**

Model Patent Jury Instructions for the Northern District of California, Instruction 4.3biii (October 9, 2007); *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991).

1
2

## DISPUTED INSTRUCTION NO. 4 OFFERED BY SOLEXA RE EQUITABLE ESTOPPEL

3

4

5

6

7

8

The owner of a patent may forfeit its right to any relief from an infringer where: 1) the patent holder has knowledge of the true facts about an issue but communicates something to the infringing party about that issue in a misleading way, 2) the infringer relies upon the misleading communication from the patent holder, and 3) the infringer will be significantly harmed if the patent holder is allowed to assert a claim relating to the issue that is inconsistent with the patent holder's prior misleading communication about the issue. This is referred to as an "equitable estoppel," and it is a defense that Applied Biosystems contends precludes any recovery by Solexa in this lawsuit, but only with regard to Applied Biosystems infringement.

9

10

11

12

13

14

Applied Biosystems contends that Solexa made a misleading communication about the existence of the Macevicz patent before Solexa filed this lawsuit. A communication may be made through written or spoken words, conduct, silence, or a combination of words, conduct, and silence. Conduct may include action or inaction. Whether in fact Solexa communicated with Applied Biosystems about the existence of the Macevicz patents prior to the filing of this lawsuit, and whether in fact that communication, if you find there to have been any, was misleading, are questions that must be answered by considering the facts and circumstances as they existed at the time and in the way that reasonably prudent businesspeople would have viewed them.

15

16

17

18

19

20

21

22

23

24

25

26

Significant harm to Applied Biosystems can be economic or evidentiary in form. Whether Applied Biosystems suffered evidentiary harm is a question that must be answered by evaluating whether Applied Biosystems will be unable to present a full and fair defense on the merit's of Solexa's infringement claims. Not being able to present a full and fair defense on the merits of Solexa's claims can occur due to the loss of important records, the death or impairment of an important witness(es), the unreliability of memories about important events because they occurred in the distant past, or other similar types of things. Whether Applied Biosystems suffered economic prejudice is a question that must be answered by evaluating whether Applied Biosystems changed its economic position in a significant way as a result of its reliance on any misleading communication from Solexa about existence of the Macevicz patents, and whether Applied Biosystems's losses as a result of any change in economic position could have been avoided if Solexa had not communicated with Applied Biosystems in a misleading way. Having to pay damages to Solexa if found to infringe on its patent does not amount to economic prejudice by itself; rather, Applied Biosystems's liability for infringement damages or any other economic losses that Applied Biosystems may incur if Solexa is allowed to proceed with its claim(s) must have been avoidable if Solexa had not communicated with Applied Biosystems in a misleading way.

27

28

It is important to remember, however, that the ultimate determination of whether an equitable estoppel should apply in this case is a question of fairness given all the facts and

1

2

3

4

circumstances. While you may not find that equitable estoppel applies if the evidence does not establish each of the three elements noted above -- misleading communication, reliance on the communication, and significant harm -- you may find that even though all of the elements have been proved, an equitable estoppel should not apply, in fairness, given all the facts and circumstances in this case.

5

6

7

Although the question of whether equitable estoppel applies in this case is one that I will decide, I will ask for your findings so that I can consider them in making that decision. You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

8

## **AUTHORITIES:**

9

10

11

Federal Circuit Bar Association Model Patent Jury Instructions, No. 5.3 (January 2008); 35 U.S.C. § 282; *A.C. Aukerman Co. v. R.L. Chaides Canstr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992)(en banc); *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770 (Fed. Cir. 1995).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

# DISPUTED INSTRUCTION NO. 4A OFFERED BY AB RE ESTOPPEL

3
4
5

Applied Biosystems claims as a defense that Stephen Macevicz and those claiming patent rights through him are barred from asserting that Applied Biosystems infringes the Macevicz patents because of Stephen Macevicz's misconduct.   To establish this defense, Applied Biosystems must prove all of the following:

6
7
8

(1)    That Stephen Macevicz made a representation of fact by words or conduct intending that Applied Biosystems should rely on it. This conduct may also include silence if Macevicz had a duty to speak and remained silent knowing that the circumstances required him to speak;

9
10

(2)    That Macevicz knew the facts;

11

(3)    That Applied Biosystems was ignorant of the true state of facts; and

12
13
14

(4)    That Applied Biosystems reasonably relied on Macevicz's representation to Applied Biosystems's injury.  Applied Biosystems's reliance must be reasonable in the sense that under the circumstances a reasonable person would have acted as Applied Biosystems did.

15
16

## AUTHORITIES:

17
18
19
20
21
22
23

California Forms of Jury Instructions § MB 300F.27 (2007); California Evid. Code § 623; *Robinson v. Fair Employment & Housing Com.* (1992) 2 Cal. 4th 226, 244-245, 5 Cal. Rptr. 2nd 782, 825 P.2d 767; *Lusardi Construction Co. v. Aubry* (1992) 1 Cal. 4th 976, 994, 4 Cal. Rptr. 2d 837, 824 P.2d 643; *Shaffer v. Debbas* (1993) 17 Cal. App. 4th 33, 43, 21 Cal. Rptr. 110; *Lundeen Coatings Corp. v. Department of Water & Power* (1991) 232 Cal. App. 3d 816, 829, 283 Cal. Rptr. 551; *Security Environmental Systems, Inc. v. South Coast Air Quality Management Dist.* (1991) 229 Cal. App. 3d 110, 128-129, 280 Cal. Rptr. 108; *Laks v. Coast Fed. Sav. & Loan Assn.* (1976) 60 Cal. App. 3d 885, 890-891, 131 Cal. Rptr. 836; *Miller v. Rau* (1963) 216 Cal. App. 2d 68, 79, 30 Cal. Rptr. 612; *Bettelheim v. Hagstrom Food Stores* (1952) 113 Cal. App. 2d 873, 879, 249 P. 2d 301; *C.I.T. Corporation v. Hawley* (1939) 34 Cal. App. 2d 66, 72, 93 P.2d 216.

24
25
26
27
28

1

2

### DISPUTED INSTRUCTION NO. 5 OFFERED BY SOLEXA RE UNCLEAN HANDS

3

4

5

6

The owner of a patent may be barred from enforcing the patent against an infringer where the owner of the patent acts or acted inequitably, unfairly, or deceitfully towards the infringer or the Court in a way that has immediate and necessary relation to the relief that the patent holder seeks in a lawsuit. This is referred to as "unclean hands," and it is a defense that Applied Biosystems contends precludes any recovery by Solexa against Applied Biosystems in this lawsuit.

7

8

9

10

There is no set formula for determining whether unclean hands applies in this lawsuit. Rather, you must consider and weigh all the facts and circumstances in view of the principles noted above to determine whether you believe that, on balance, Solexa acted in such an unconscionable way towards Applied Biosystems or the Court in the matters relating to the controversy between Solexa and Applied Biosystems that, in fairness, Solexa should be denied the relief it seeks in this lawsuit.

11

12

13

Although the question of whether Solexa's claims are barred by unclean hands is one that I will decide, I will ask for your findings so that I can consider them in making that decision. You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

14

15

### AUTHORITIES:

16

17

Federal Circuit Bar Association Model Patent Jury Instructions, No. 5.5 (January 2008); 35 U.S.C. § 282; *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240 (1933); *Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369 (Fed. Cir. 2001).

18

19

20

21

22

23

24

25

26

27

28

1
2

**DISPUTED INSTRUCTION NO. 5A OFFERED BY AB RE UNCLEAN HANDS**

3
4
5

Applied Biosystems claims as a defense that Stephen Macevicz's misconduct precludes enforcement of the Macevicz patents by Macevicz and those who claim title through him. To establish this defense, Applied Biosystems must prove that Macevicz's conduct was unconscionable and resulted in prejudice to Applied Biosystems.

6
7
8

Macevicz's misconduct must be intimately connected with Solexa's claims of patent infringement and of such a prejudicial nature that it would be unfair to allow Solexa to rely on the Macevicz patents. If that is established by Applied Biosystems, then Solexa is barred from claiming patent infringement.

9

## AUTHORITIES:

10
11
12
13

California Forms of Jury Instructions § MB 300F.29 (2007); *Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal. App. 4th 612, 618-623, 12 Cal. Rptr. 2d 741; *Soon v. Beckman* (1965) 234 Cal. App. 2d 33, 36, 44 Cal. Rptr. 190; *Fibreboard Paper Products Corp. v. East Bay Union of Machinists* (1964) 227 Cal. App. 2d 675, 728, 39 Cal. Rptr. 64.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2

## DISPUTED INSTRUCTION NO. 6 OFFERED BY SOLEXA RE INEQUITABLE CONDUCT

3
4
5
6
7
8
9
10
11

Every applicant for a patent has a duty of candor and good faith in its dealing with the United States Patent and Trademark Office and with the Examiner handling the application.  This duty of candor is important because the examiner has limited resources.  The examiner may have less information available to them than an applicant may have from which to determine whether an invention is sufficiently different from that which already exists to warrant a patent.  The examiner also has a limited amount of time to spend determining whether the invention claimed in any particular application meets the requirements for a patent.  To prevent patents from issuing on inventions that are not sufficiently different from that which already exists, anyone involved in a substantial way in the examination of an application is required to be truthful and honest in all of their dealings with the Patent and Trademark Office and to disclose all information in their possession which a reasonable examiner may consider to be material to the examination of the application.

12
13
14
15
16

When a person involved in the prosecution of an application fails to comply with the duty of candor and good faith, and does so with an intent to deceive the Patent and Trademark Office, he or she may commit what is called "inequitable conduct."  When inequitable conduct occurs during the examination of an application, any patent that issues from that application may be rendered unenforceable as a matter of fairness.  This means that despite the existence of the patent, the patent holder may not prevent others from using the invention covered by the patent and may not collect damages from those who use the invention that is covered by the patent.

17
18
19
20
21

Because a finding of inequitable conduct completely extinguishes a patent holder's right to prevent others from using an invention, the burden of proving inequitable conduct is high.  An alleged infringer must establish that inequitable conduct occurred during the examination of a patent with evidence by clear and convincing evidence.  That is, based on the evidence presented to you in this case you must have a clear conviction that inequitable conduct occurred in connection with the Macevicz patents in order for them to be considered unenforceable.

22
23
24

In this case, AB contends that Dr. Macevicz failed to disclose material information ~~or made materially false and misleading statements~~ to the Patent and Trademark Office during the examination of the patents, and did so with an intent to deceive the examiner into issuing the patents.

25
26
27
28

I will now explain to you what "materiality" and "intent to mislead" mean. I will then explain to you how any materiality and intent that you may find must be balanced in order to determine whether, given all the facts and circumstances, inequitable conduct occurred in this case as AB contends.

**Materiality**

In considering materiality, you first must determine whether or not information was withheld from or false or misleading statements were made to the Patent and Trademark Office during the examination of the patents. If you find that Dr. Macevicz, his representatives, or others involved in a substantial way with the examination of the application withheld information from or made false or misleading statements to the Patent Trademark Office during the examination of the patents, you must then determine whether or not the withheld information or false or misleading statements were "material."

[Information or statements is (are) material if there is a substantial likelihood that a reasonable examiner would have considered it important in deciding whether to allow an application to issue as a patent.]]

Information or statements are material if they establish, either alone or in combination with other information or statements, that the invention sought to be patented more likely than not failed to satisfy one or more of the requirements for obtaining a patent. Examples of such requirements would include that the invention be new, useful, and non-obvious, among others. Information or statements also are material if they refute or are inconsistent with a position that the applicant for a patent took when opposing an argument made by the examiner that the invention was not patentable or when making an argument to the examiner that the invention was patentable.

Information that is cumulative of, or in other words, adds little to or has no more bearing on the examination of an application than information the examiner already had, is not material. Information that discloses a more complete combination of the relevant features of the invention sought to be patented may be highly material. This is true even if those features were before the examiner in other, less complete references.

I will now discuss the concept of "intent to mislead."

**Intent to Mislead**

In order for inequitable conduct to have occurred Applied Biosystems must establish that any failure to disclose material information or false or misleading statements was done with an intent to deceive the examiner. If the failure to disclose material information or false or misleading statements occurred through negligence, oversight, carelessness, or an error in judgment, even if it was grossly negligent, then there was no intent to deceive and there is no inequitable conduct.

Intent may be shown through direct evidence, such as documents or testimony about one's intent to deceive. Intent also may be shown through indirect evidence, or in other words, it may be inferred from conduct. For example, you may infer an intent to mislead from acts substantially certain to accomplish a result, or a combination of conduct

**JOINT PROPOSED JURY INSTRUCTIONS**
**CASE NO: 07-CV-2845 WHA**

1
2
3

and statements. However, you are not required to infer intent. Any inference of intent will necessarily depend upon the totality of the circumstances as you find them to have been, including the nature and level of any culpable conduct you may find and the absence or presence of affirmative evidence of good faith on Macevicz's part.

4
5

**Balancing of Materiality and Intent**

6
7
8
9
10
11
12
13

If you find that AB has proved that material information was withheld ~~or materially misleading statements were made~~ and, further, that these acts or omissions were done with an intent to mislead the examiner, you must then weigh the degree of materiality and the degree of intent to determine whether, on balance, the evidence clearly and convincingly establishes that the patent holder or other relevant persons committed inequitable conduct and the patents should in fairness be declared unenforceable. When performing this balancing, the higher the level of materiality of the withheld information or the false and misleading statements, the lower the level of intent that is required to establish inequitable conduct, and vice versa. Materiality and intent to deceive are separate issues: proof of materiality does not give rise to an inference of intent to deceive, and proof of an intent to deceive does not give rise to an inference of materiality. There must be evidence that establishes materiality and there must be evidence that establishes an intent to deceive. If evidence of either, or both, is missing, there can be no inequitable conduct.

14
15
16

Although the question of whether there has been inequitable conduct is one that I will decide, I will ask for your findings so that I can consider them in making my decision. You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

17
18

**<u>AUTHORITIES:</u>**

19
20
21
22
23

Federal Circuit Bar Association Model Patent Jury Instructions, No. 5.1 (January 2008); 35 U.S.C. § 282; *Digital Control Incorporated and Merlin Technology Inc., v. The Charles Machine Works*, No. 05-1128 (Fed. Cir. 2006); *Ferring B. V, et al. v. Barr Laboratories, Inc.*, No. 05-1284 (Fed. Cir. Feb. 15, 2006); *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1363 (Fed. Cir. 2003); *Upjohn Co. v. Mova Pharmaceutical Corp.*, 225 F.3d 1306 (Fed. Cir. 2000); *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565 (Fed. Cir. 1991); *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867 (Fed. Cir. 1988).

24
25
26
27
28

**JOINT PROPOSED JURY INSTRUCTIONS**
**CASE NO: 07-CV-02845 WHA**

1

2

**DISPUTED INSTRUCTION NO. 6A OFFERED BY AB RE
INEQUITABLE CONDUCT**

3

4

5

6

7

8

9

10

11

Every applicant for a patent has a duty of candor and good faith in its dealing with the United States Patent and Trademark Office and with the Examiner handling the application.  This duty of candor is important because the examiner has limited resources.  The examiner may have less information available to them than an applicant may have from which to determine whether an invention is sufficiently different from that which already exists to warrant a patent.  The examiner also has a limited amount of time to spend determining whether the invention claimed in any particular application meets the requirements for a patent.  To prevent patents from issuing on inventions that are not sufficiently different from that which already exists, anyone involved in a substantial way in the examination of an application is required to be truthful and honest in all of their dealings with the Patent and Trademark Office and to disclose all information in their possession which a reasonable examiner may consider to be material to the examination of the application.

12

13

14

15

16

17

When a person involved in the prosecution of an application fails to comply with the duty of candor and good faith, and does so with an intent to deceive the Patent and Trademark Office, he or she may commit what is called "inequitable conduct."  When inequitable conduct occurs during the examination of an application, any patent that issues from that application may be rendered unenforceable as a matter of fairness.  This means that despite the existence of the patent, the patent holder may not prevent others from using the invention covered by the patent and may not collect damages from those who use the invention that is covered by the patent.

18

19

20

21

Because a finding of inequitable conduct completely extinguishes a patent holder's right to prevent others from using an invention, the burden of proving inequitable conduct is high.  An alleged infringer must establish that inequitable conduct occurred during the examination of a patent with evidence by clear and convincing evidence.  That is, based on the evidence presented to you in this case you must have a clear conviction that inequitable conduct occurred in connection with the Macevicz patents in order for them to be considered unenforceable.

22

23

24

25

26

In this case, AB contends that Dr. Macevicz failed to disclose material information and/or made materially false and misleading statements to the Patent and Trademark Office during the examination of the patents, and did so with an intent to deceive the examiner into issuing the patents. Specifically, AB contends that Dr. Macevicz (1) misrepresented his status as a "small entity," (2) failed to disclose his obligations to assign his invention to AB, and (3) failed to disclose the Whiteley and Landegren references to the Patent and Trademark Office during prosecution.

27

28

**JOINT PROPOSED JURY INSTRUCTIONS
CASE NO: 07-CV-02845 WHA**

47

I will now explain to you what "materiality" and "intent to mislead" mean. I will then explain to you how any materiality and intent that you may find must be balanced in order to determine whether, given all the facts and circumstances, inequitable conduct occurred in this case as AB contends.

**Materiality**

In considering materiality, you first must determine whether or not information was withheld from or false or misleading statements were made to the Patent and Trademark Office during the examination of the patents. If you find that Dr. Macevicz, his representatives, or others involved in a substantial way with the examination of the application withheld information from or made false or misleading statements to the Patent Trademark Office during the examination of the patents, you must then determine whether or not the withheld information or false or misleading statements were "material."

[Information or statements is (are) material if there is a substantial likelihood that a reasonable examiner would have considered it important in deciding whether to allow an application to issue as a patent.]]

Information or statements are material if they establish, either alone or in combination with other information or statements, that the invention sought to be patented more likely than not failed to satisfy one or more of the requirements for obtaining a patent. Examples of such requirements would include that the invention be new, useful, and non-obvious. Information or statements also are material if they refute or are inconsistent with a position that the applicant for a patent took when opposing an argument made by the examiner that the invention was not patentable or when making an argument to the examiner that the invention was patentable.

Information that is cumulative of, or in other words, adds little to or has no more bearing on the examination of an application than information the examiner already had, is not material. Information that discloses a more complete combination of the relevant features of the invention sought to be patented may be highly material. This is true even if those features were before the examiner in other, less complete references.

I will now discuss the concept of "intent to mislead."

**Intent to Mislead**

In order for inequitable conduct to have occurred Applied Biosystems must establish that any failure to disclose material information or false or misleading statements was done with an intent to deceive the examiner. If the failure to disclose material information or false or misleading statements occurred through negligence, oversight,

**JOINT PROPOSED JURY INSTRUCTIONS**
**CASE NO: 07-CV-02845 WHA**

carelessness, or an error in judgment, even if it was grossly negligent, then there was no intent to deceive and there is no inequitable conduct.

Intent may be shown through direct evidence, such as documents or testimony about one's intent to deceive. Intent also may be shown through indirect evidence, or in other words, it may be inferred from conduct. For example, you may infer an intent to mislead from acts substantially certain to accomplish a result, or a combination of conduct and statements. However, you are not required to infer intent. Any inference of intent will necessarily depend upon the totality of the circumstances as you find them to have been, including the nature and level of any culpable conduct you may find and the absence or presence of affirmative evidence of good faith on Macevicz's part.

**Balancing of Materiality and Intent**

If you find that AB has proved that material information was withheld or materially misleading statements were made and, further, that these acts or omissions were done with an intent to mislead the examiner, you must then weigh the degree of materiality and the degree of intent to determine whether, on balance, the evidence clearly and convincingly establishes that the patent holder or other relevant persons committed inequitable conduct and the patents should in fairness be declared unenforceable. When performing this balancing, the higher the level of materiality of the withheld information or the false and misleading statements, the lower the level of intent that is required to establish inequitable conduct, and vice versa. Materiality and intent to deceive are separate issues: proof of materiality does not give rise to an inference of intent to deceive, and proof of an intent to deceive does not give rise to an inference of materiality. There must be evidence that establishes materiality and there must be evidence that establishes an intent to deceive. If evidence of either, or both, is missing, there can be no inequitable conduct.

Although the question of whether there has been inequitable conduct is one that I will decide, I will ask for your findings so that I can consider them in making my decision. You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

**<u>AUTHORITIES:</u>**

Federal Circuit Bar Association Model Instructions 01/2008; 35 U.S.C. § 282; *Digital Control Incorporated and Merlin Technology Inc., v. The Charles Machine Works*, No. 05-1128 (Fed. Cir. 2006); *Ferring B. V, et al. v. Barr Laboratories, Inc*., No. 05-1284 (Fed. Cir. Feb. 15, 2006); *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1363 (Fed. Cir. 2003); *Upjohn Co. v. Mova Pharmaceutical Corp*., 225 F.3d 1306 (Fed. Cir. 2000); *Scripps Clinic & Research Found. v. Genentech, Inc*., 927 F.2d 1565 (Fed. Cir. 1991); *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc*., 863 F.2d 867 (Fed. Cir. 1988).

1
2

## STIPULATED INSTRUCTION NO. 20 RE
## DAMAGES – BURDEN OF PROOF

3
4
5
6

   I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that Applied Biosystems infringed any valid and enforceable claim of the Macevicz patents, you must then determine the amount of money damages to be awarded to Solexa to compensate it for the infringement.

7
8
9
10

   The amount of those damages must be adequate to compensate Solexa for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

11
12
13

   Solexa has the burden to persuade you of the amount of its damages. You should award only those damages that Solexa more likely than not suffered. While Solexa is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Solexa is not entitled to damages that are remote or speculative.

14
15
16

## AUTHORITIES:

17
18
19

   Model Patent Jury Instructions for the Northern District of California, Instruction 5.1 (October 9, 2007); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*).

20
21
22
23
24
25
26
27
28

1

2

**STIPULATED INSTRUCTION NO. 21 RE**
**REASONABLE ROYALTY – DEFINITION**

3

4

5

6

7

8

9

10

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention. A "reasonable royalty" is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place at the time when the infringing ~~sales~~ activity first began. In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations. However, you must assume that both parties believed the patent was valid and infringed. In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

11

12

13

~~In this trial, you have heard evidence of things that happened after the infringing~~ ~~sales first began.  That evidence can be considered only to the extent that [add appropriate~~ ~~limitations on consideration of later occurring events].~~   You may not limit or increase the royalty based on the actual profits [Agencourt or] Applied Biosystems made.

14

15

**AUTHORITIES:**

16

17

18

19

Model Patent Jury Instructions for the Northern District of California, Instruction 5.7 (October 9, 2007); *Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

20

21

22

23

24

25

26

27

28

1
2

**DISPUTED INSTRUCTION NO. 7 OFFERED BY SOLEXA RE
DATE OF COMMENCEMENT – PRODUCTS**

3

~~Damages that [patent holder] may be awarded by you commence on the date that~~
~~[alleged infringer] has both infringed and been notified of the [   ] patent:  [use those that~~

4

~~apply to this case]~~

5

~~[  [Patent holder] and [alleged infringer] agree that date was [insert date];]~~

6
7

~~[  Since [patent holder] sells a product that includes the claimed invention but has~~
~~not marked that product with the patent number, you must determine the date that [alleged~~

8

~~infringer] received actual written notice of the [   ] patent and the specific product alleged~~
~~to infringe;]~~

9
10

~~[  Since [patent holder] [marks the product] or [does not sell a product covered by~~
~~the patent], then damages begin without the requirement for actual notice under the~~

11

~~following circumstances~~

12
13

<u>Because</u> the Macevicz patents were granted before the <u>alleged</u> infringing activity
began, <u>you should assume the hypothetical negotiations take place as of the dates you
determine that Agencourt's and Applied Biosystems's</u> infringement began.; or

14

~~If the [  ] patent was granted after the infringing activity began as determined by~~

15

~~you, damages should be calculated as of [date patent issued].~~

16

**<u>AUTHORITIES:</u>**

17
18
19
20

Model Patent Jury Instructions for the Northern District of California, Instruction
5.8 (October 9, 2007); 35 U.S.C. § 287; *Crystal Semiconductor Corp. v. Tritech
Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*,
138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1108-09
(Fed. Cir. 1996); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed.
Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987).

21
22
23
24
25
26
27
28

1

2

**DISPUTED INSTRUCTION NO. 7A OFFERED BY AB RE
DATE OF COMMENCEMENT – PRODUCTS**

3

4

Applied Biosystems contends that this instruction should not be given.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**DISPUTED INSTRUCTION NO. 8 OFFERED BY SOLEXA RE
DAMAGES – REASONABLE ROYALTY – FACTORS TO CONSIDER**

3

4

In determining the reasonable royalty, you may consider real-world facts including the following to the extent they are helpful to you:

5

6

1.    Any royalties received by Solexa for the licensing of the Macevicz patents, proving or tending to prove an established royalty;

7

2.    The rates paid by Agencourt and Applied Biosystems to license other patents comparable to the Macevicz patents;

8

9

10

3.    The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the system may be sold;

11

12

13

4.    Solexa's established policy and marketing program to maintain its right to exclude others from using the patented inventions by not licensing others to use the inventions, or by granting licenses under special conditions designed to preserve that exclusivity;

14

15

5.    The commercial relationship between the Solexa, Agencourt and Applied Biosystems, such as whether or not they are competitors in the same territory in the same line of business;

16

17

18

6.    The effect of selling the patented system in promoting sales of other products of the licensee; the existing value of the inventions to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales;

19

7.    The duration of the patents and the term of the license;

20

21

8.    The established profitability of the products made under the patents; their commercial success; and their current popularity;

22

23

9.    The utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for achieving similar results;

24

25

10.    The nature of the patented inventions; the character of the commercial embodiments of them as owned and produced by the licensor; and the benefits to those who have used the invention;

26

27

11.    The extent to which Agencourt and Applied Biosystems have made use of the inventions; and any evidence that shows the value of that use;

28

**JOINT PROPOSED JURY INSTRUCTIONS
CASE NO: 07-CV-02845 WHA**

54

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the inventions or analogous inventions;

13. The portion of the profit that arises from the patented inventions themselves as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer;

14. The opinion testimony of qualified experts;

15. The amount that a licensor (such as Solexa) and a licensee (such as Agencourt and Applied Biosystems) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to use the patented inventions—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license; and

16. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

During the trial, these factors were sometimes referred to as the *Georgia-Pacific* factors. It is up to you to decide how much weight to give to any of these factors.

## **AUTHORITIES:**

"Final Charge To The Jury" No. 36 [Docket No. 968] in *Therasense, Inc. v. Becton, Dickinson and Company*, Case No. 3:04-cv-02123 WHA (N.D. Cal.); AIPLA Model Patent Jury Instructions, No. 12.16 (2008); *Monsanto Co. v. McFarling*, 488 F.3d 973 (Fed. Cir. 2007); *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579- 81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898-900 (Fed. Cir. 1986); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd sub nom.*, *Georgia Pacific Corp. v. United States Plywood Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).

**JOINT PROPOSED JURY INSTRUCTIONS**
**CASE NO: 07-CV-2845 WHA**

1

2

**DISPUTED INSTRUCTION NO. 8A OFFERED BY AB RE
DAMAGES – REASONABLE ROYALTY – FACTORS TO CONSIDER**

3

4

    In determining the reasonable royalty, you may consider real-world facts including the following to the extent they are helpful to you:

5

6

7

    1.    Any royalties received by Solexa for the licensing of the Macevicz patents, proving or tending to prove an established royalty;

8

    2.    The rates paid by Agencourt to license other patents comparable to the Macevicz patents;

9

10

11

    3.    The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the system may be sold;

12

13

14

    4.    Solexa's established policy and marketing program to maintain its right to exclude others from using the patented inventions by not licensing others to use the inventions, or by granting licenses under special conditions designed to preserve that exclusivity;

15

16

    5.    The commercial relationship between Solexa and Agencourt, such as whether or not they are competitors in the same territory in the same line of business;

17

18

19

    6.    The effect of selling the patented system in promoting sales of other products of the licensee; the existing value of the inventions to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales;

20

    7.    The duration of the patents and the term of the license;

21

22

    8.    The established profitability of the products made under the patents; their commercial success; and their current popularity;

23

24

    9.    The utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for achieving similar results;

25

26

    10.    The nature of the patented inventions; the character of the commercial embodiments of them as owned and produced by the licensor; and the benefits to those who have used the invention;

27

28

    11.    The extent to which Agencourt has made use of the inventions; and any evidence that shows the value of that use;

**JOINT PROPOSED JURY INSTRUCTIONS
CASE NO: 07-CV-02845 WHA**

56

1

2          12.     The portion of the profit or of the selling price that may be customary in the

3    particular business or in comparable businesses to allow for the use of the inventions or
     analogous inventions;

4          13.     The portion of the profit that arises from the patented inventions themselves
5    as opposed to profit arising from unpatented features, such as the manufacturing process,

6    business risks, or significant features or improvements added by the accused infringer;

7          14.     The opinion testimony of qualified experts;

8          15.     The amount that a licensor (such as Solexa) and a licensee (such as
9    Agencourt) would have agreed upon (at the time the infringement began) if both sides had

10   been reasonably and voluntarily trying to reach an agreement; that is, the amount which a
     prudent licensee—who desired, as a business proposition, to obtain a license to use the

11   patented inventions—would have been willing to pay as a royalty and yet be able to make

12   a reasonable profit and which amount would have been acceptable by a patentee who was
     willing to grant a license; and

13         16.     Any other economic factor that a normally prudent business person would,
14   under similar circumstances, take into consideration in negotiating the hypothetical

15   license.

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATED JURY INSTRUCTION NO. 26**
**GLOSSARY**

Abstract: A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

Amendment: A patent applicant's change to one or more claims or to the specification either in response to an office action taken by a Patent Examiner or independently by the patent applicant during the patent application examination process.

Anticipation: A situation in which a claimed invention describes an earlier invention and, therefore, is not considered new and is not entitled to be patented.

Assignment: A transfer of patent rights to another called an "assignee" who upon transfer becomes the owner of the rights assigned.

Best Mode: The best way the inventor actually knew to make or use the invention at the time of the patent application. If the applicant had a best mode as of the time the application was first filed, it must be set forth in the patent specification.

Claim: Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims may be independent or dependent. An independent claim stands alone. A dependent claim does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

Conception: The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.

Continuation Application: A patent application filed during the examination process of an earlier application which has the same disclosure as the original application and does not include anything which would constitute new matter if inserted in the original application.

Continuation-In-Part (C-I-P) Application: A patent application filed during the application process of an earlier application which repeats some or all of the earlier application and adds matter not disclosed in the earlier application to support the addition of new patent claims.

Drawings: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

Elements: The required parts of a device or the required steps of a method. A device or method infringes a patent if it contains each and every requirement of a patent claim.

Embodiment: A product or method that contains the claimed invention.

Enablement: A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention. The specification of the patent must contain such an enabling description.

Examination: Procedure before the U.S. Patent and Trademark Office whereby a Patent Examiner reviews the filed patent application to determine if the claimed invention is patentable.

Filing Date: Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

Infringement: Violation of a patent occurring when someone makes, uses or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent. ~~Infringement may be direct, by inducement, or contributory. Direct infringement is making, using or selling the patented invention without permission. Inducing infringement is intentionally causing another to directly infringe a patent. Contributory infringement is offering to sell or selling an item that is a significant part of the invention, so that the buyer directly infringes the patent. To be a contributory infringer one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common object suitable for non-infringing uses.~~

Limitation: A required part of an invention set forth in a patent claim. A limitation is a requirement of the invention. The word "limitation" is often used interchangeably with the word "requirement."

Nonobviousness: One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field of the invention at the time of the earlier of the filing date of the patent application or the date of invention.

Office Action: A written communication from the Patent Examiner to the patent applicant in the course of the application examination process.

Patent: A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using or selling an invention for a term of ~~20 years from the date the patent application was filed (or~~ 17 years from the date the patent issued. When the patent expires, the right to make, use or sell the invention is dedicated to the public. The patent has three parts, which are a specification, drawings and claims. The patent is granted after examination by the U.S. Patent and Trademark Office

of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

Patent and Trademark Office (PTO): An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

Prior Art: Previously known subject matter in the field of a claimed invention for which a patent is being sought. It includes issued patents, publications, and knowledge deemed to be publicly available such as trade skills, trade practices and the like.

Applied Biosystems contends that the following references, in addition to the references listed in Instruction No. 11, are prior art:

1. Mag et al., Tetrahedron Letters 33(48):7319-7322 (1992) ("Mag")

2. U.S. Patent No. 5,430,708 (Filed July 6, 1992, Issued April 4, 1995) ("Brennan")

3. U.S. Patent No. 4,883,750 (Filed December 13, 1984, Issued November 28, 1989 to Norman M. Whiteley et al.) ("Whiteley")

4. U.S. Patent No. 4,988,617 (Filed March 25, 1988, Issued January 29, 1991 to Ulf Landegren and Leroy Hood) ("Landegren")

5. WO 91/06678 (Filed October 26, 1990, Published May 16, 1991) ("Tsien")

6. Canard & Sarfati, DNA Sequencing Using Fluorescent Chain Terminators Reversibly Tagged in 3', Genome Mapping & Sequencing Abstracts, May 11-15, 1994, pp. 295 ("Canard II")

7. Metzker et al., Progress of BASS (Base Addition Sequencing Scheme) as a Novel DNA Sequencing Approach, Genome Mapping & Sequencing Abstracts, May 12-16, 1993, pp. 164 ("Metzker I")

8. Metzker et al., Stop-Start DNA Synthesis in the Base Addition Sequencing Scheme (BASS), Genome Mapping & Sequencing Abstracts, May 11-15, 1994, pp. 170 ("Metzker II")

9. Rosenthal & Brenner, DNA Sequencing by Sequential Addition of Tagged Nucleotides, Genome Mapping & Sequencing Abstracts, May 12-16, 1993, pp. 222 ("Rosenthal")

10. Crkvenjakov et al., Miniaturization of Sequencing by Hybridization (SBH): A Novel Method for Genome Sequencing, Human Genome Contractors/Grantee Workshop Abstracts, Santa Fe, New Mexico on November 3-4, 1989 ("Crkvenjakov")

11. Drmanac & Crkvenjakov, Scientia Yugoslavica, 16(1-2):97-107 (1990) ("Drmanac III")

12.    GB 2 236 852 (United Kingdom) filed on September 25, 1989, application published on April 17, 1991; resulting patent published April 6, 1994.  ("Carr")

13.    GB 9315847.5 (Filed July 30, 1993) (Edwin Southern and William Cummins) ("Southern II")

14.    U.S. Patent No. 5,770,367 (Filed February 5, 1996, with a priority date of July 30, 1993,  Issued June 23, 1998 to Edwin Southern and William Cummins) ("Southern III")

Prosecution History: The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

Reads On: A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

Reduction to Practice: The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose.

Requirement: A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

Royalty: A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use or sell the claimed invention.

Specification: The specification is a required part of a patent application and an issued patent. It is a written description of the invention and of the manner and process of making and using the claimed invention.


**AUTHORITIES:**

Model Patent Jury Instructions for the Northern District of California, Appendix C.1 (October 9, 2007).

**JOINT PROPOSED JURY INSTRUCTIONS**
**CASE NO: 07-CV-2845 WHA**

61

1

2      Dated: August 29, 2008              MORRISON & FOERSTER LLP

3

4                                          By: /s/Steven E. Comer

5                                              Steven E. Comer

6                                              Attorneys for Plaintiff
                                               APPLERA CORPORATION -
7                                              APPLIED BIOSYSTEMS GROUP

8      Dated: August 29, 2008              MARSHALL GERSTEIN & BORUN LLP

9

10                                         By: /s/ John R. Labbé

11                                             John R. Labbé
                                               Attorneys for Defendants
12                                             ILLUMINA, INC., SOLEXA, INC.
                                               AND STEPHEN C. MACEVICZ

13

14

15         I, John R. Labbé, am the ECF User whose ID and password are being used to file this

16   JOINT PROPOSED JURY INSTRUCTIONS.  In compliance with General Order 45, X.B., I
     hereby attest that Steven E. Comer has concurred in this filing.

17
       Dated: August 29, 2008                  /s/ John R. Labbé
18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED JURY INSTRUCTIONS**
**CASE NO: 07-CV-02845 WHA**