1  BRYAN WILSON (CA SBN 138842)
   ERIC C. PAI (CA SBN 247604)
2  MORRISON & FOERSTER LLP
   755 Page Mill Road
3  Palo Alto, California 94304-1018
   Telephone: 650.813.5600
4  Facsimile: 650.494.0792
   E-Mail: BWilson@mofo.com; EPai@mofo.com
5
   DAVID C. DOYLE (CA SBN 70690)
6  STEVEN E. COMER (CA SBN 154384)
   BRIAN M. KRAMER (CA SBN 212107)
7  MORRISON & FOERSTER LLP
   12531 High Bluff Drive, Suite 100
8  San Diego, California  92130-2040
   Telephone: 858.720.5100
9  Facsimile: 858.720.5125
   E-Mail: DDoyle@mofo.com; SComer@mofo.com;
10 BMKramer@mofo.com

11 Attorneys for Plaintiff
   APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP
12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                       SAN FRANCISCO DIVISION

16

17 APPLERA CORPORATION – APPLIED           Case No.    C07 02845 WHA
   BIOSYSTEMS GROUP, a Delaware corporation,
18                                          **MEMORANDUM OF LAW IN**
                   Plaintiff,               **SUPPORT OF APPLERA**
19                                          **CORPORATION – APPLIED**
                                            **BIOSYSTEMS GROUP'S**
           v.                               **DISPUTED JURY**
20                                          **INSTRUCTIONS FOR PHASE II**
   ILLUMINA, INC., a Delaware corporation,  **OF TRIAL**
21 SOLEXA, INC., a Delaware corporation, and
   STEPHEN C. MACEVICZ, an individual,
22                                          Trial Date:  September 29, 2008
                   Defendants.             Time:        7:30 a.m.
23                                          Place:       Courtroom 9, 19th Floor
                                            Judge:       William H. Alsup
24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

I.   GENERAL OBJECTIONS ................................................................................. 1

II.  AB'S OBJECTIONS TO SPECIFIC INSTRUCTIONS ..................................... 2

    A.    DISPUTED JURY INSTRUCTION 1:  LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS ......................................................... 2

          1.    AB's Proposed Preamble Correctly States That Limitations on the Doctrine of Equivalents Must Be Considered Before Reaching a Finding of Infringement .............................................................. 4

          2.    Claim Vitiation is a Consideration When Applying the Doctrine of Equivalents .................................................................. 5

          3.    Prior Art Serves as a Limitation on the Doctrine of Equivalents ................ 5

    B.    DISPUTED JURY INSTRUCTION 2:  DE MINIMIS INFRINGEMENT .......... 8

    C.    DISPUTED INSTRUCTION 3:  ESTOPPEL ...................................... 10

    D.    DISPUTED CLAIM CONSTRUCTION 4:  UNCLEAN HANDS..................... 12

    E.    DISPUTED JURY INSTRUCTION 5:  INEQUITABLE CONDUCT............... 13

    F.    DISPUTED JURY INSTRUCTION 6:   DATE OF COMMENCEMENT – PRODUCTS.................................................................................. 17

    G.    DISPUTED JURY INSTRUCTION 7:  DAMAGES – REASONABLE ROYALTY – FACTORS TO CONSIDER ......................................... 18

Applied Biosystems ("AB") submits this Memorandum of Law in support of the following disputed jury instructions for Phase II of trial.

## I.     GENERAL OBJECTIONS

Two general objections will likely be resolved through the parties' separately-briefed motions in limine and Solexa's motion for reconsideration.  First, AB objects to Instructions 6, 7, 8, 9, and 22 to the extent that they unnecessarily and inconsistently refer to both Applied Biosystems and Agencourt Personal Genomics.  AB instead proposes that Instruction No. 2 include a sentence stating:  "Unless otherwise stated, references to "Applied Biosystems" refer to Applied Biosystems, Inc. and Agencourt Personal Genomics, a company it acquired in 2006." Agencourt Personal Genomics is not a party to this case.  The instructions' inconsistent references to "Agencourt and/or Applied Biosystems" or "Agencourt and Applied Biosystems," "Agencourt," or "Applied Biosystems" are confusing.

Solexa seeks these inconsistent references to support its legally incorrect damages theory that there would have been two hypothetical negotiations for calculating damages in this case. (*See* AB's Motion in Limine No. 3 (Docket No. 243) and Solexa's Opposition (Docket No. 266).) The parties are in general agreement that if the Court grants AB's Motion in Limine No. 3, then the bracketed references to either Agencourt Personal Genomics or Applied Biosystems in instructions x, y, and z can be deleted.

The second general objection involves Solexa's pending motion for reconsideration.  The parties are in general agreement that if the Court denies Solexa's motion for leave to file a motion or denies any allowed motion, then references to infringement by AB of the '341 patent should be deleted.

Several of the proposed instructions will be affected by the Court's rulings related to the above two objections.  Rather than submitting competing instructions for each affected instruction, AB respectfully requests that the parties be allowed to provide the Court an updated set of instructions with stipulated changes in light of the Court's rulings.

## II.    AB'S OBJECTIONS TO SPECIFIC INSTRUCTIONS

### A.    DISPUTED JURY INSTRUCTION 1:  LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS

**AB's Desired Language**:  Before considering infringement under the doctrine of equivalents, you must consider several limitations on that doctrine.

Vitiation:

> You may not determine that an alternative aspect of s product or method is equivalent to an unmet requirement of a claim if a finding of infringement under the doctrine of equivalents would effectively eliminate that requirement.   Specifically, the alleged equivalent cannot eliminate or ignore an element or requirement of the claim.

> [The parties agree on the instructions for argument-based prosecution history estoppel and amendment-based prosecution history estoppel]

Prior art:

> The prior art may preclude a finding of infringement under the doctrine of equivalents.  I will explain what "prior art" is but, generally speaking, "prior art" is things that were already known or done before the invention.  In reaching your decisions in this case, you must use the definition of "prior art" that I provide to you.

> To determine whether the prior art precludes a finding of infringement under the doctrine of equivalents you must first have in mind a "hypothetical claim" that would cover the accused allegedly equivalent [product or process] literally. The hypothetical claim is exactly the same as the claim at issue, except that the unmet claim requirements are broadened so that they would be met by the allegedly "equivalent" hypothetical claim.

> Once you have this equivalent "hypothetical claim" in mind, you must decide whether this hypothetical claim would have been invalid for either anticipation or obviousness. I will instruct you later on how to determine if a claim is invalid for anticipation or obviousness. You should use these same rules to determine whether or not the "hypothetical claim" would be invalid for anticipation or obviousness. If you determine that the "hypothetical claim" would have been invalid for anticipation or obviousness, then you must find that there is no infringement of this particular claim under the doctrine of equivalents.

The Court has already considered some legal limitations on the doctrine of equivalents as applied to the Macevicz patents in this case.  Because Illumina made certain claim changes or statements during the patent application process for the '341, '119, and '597 patents, the doctrine of equivalents analysis cannot be applied to the following requirements of the asserted claims:

> In claim 1 of the '119 patent, the doctrine of equivalents cannot be applied to the requirement for "NH," which is also known as a phosphoramidate.

1  These requirements are shown in bold text in the context of the claims below:

2      '119 Patent

3      1. An oligonucleotide probe of the formula:

4      HO--(3')(B)j(5')--OP(=O)(O--)**NH**--(B)k-Bt*

5      wherein:

6      B is a nucleotide or an analog thereof;

       j is in the range of from 1 to 12;

7      k is in the range of from 1 to 12, such that the sum of j and k is less than or equal to 12;

8      Bt* is a labeled, non-extendable chain-terminating moiety.

9

10  Unless each of these requirements is literally present within an Applied Biosystems product or method, there can be no infringement of the claim.

11

12  **Authorities:**

13      Model Patent Jury Instructions for the Northern District of California, Instruction B.3
14      (October 9, 2007); The Federal Circuit Bar Association Model Patent Jury Instructions
        3.1d (January 12, 2008); *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d
15      1131 (Fed. Cir. 2004) (en banc); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
        Ltd., 344 F.3d 1359 (Fed. Cir. 2003) (en banc); *Interactive Pictures Corp. v. Infinite
16      Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001); *Al-Site Corp. v. VSI Int'l, Inc.*, 174
        F.3d 1308, 1320 (Fed. Cir. 1999); *Wilson Sporting Goods Co. v. D and Geoffrey &
17      Assoc.*, 904 F.2d 676, 684 (Fed. Cir. 1990); *PSC Computer Prods., Inc. v. Foxconn Int'l,
        Inc.*, 355 F.3d 1353, 1355-56 (Fed. Cir. 2004); *Johnson & Johnston Assocs., Inc. v. R.E.
18      Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002).

19

20      AB submits that this entire instruction is unnecessary because the limitation on the

21  doctrine of equivalents is a legal issue for the Court to decide before allowing the jury to consider

22  infringement under the doctrine of equivalents.  To the extent the Court asks the jury to assist the

23  Court, AB submits this proposed instruction, which is modeled after the Northern District Model

24  Rule and is supplemented with additional language from the Federal Circuit Bar Association

25  Model Patent Jury Instructions.  ("Fed. Cir. Model Instructions.")  The Northern District Model

26  Rule contemplates that the Court will rule before charging the jury whether the doctrine of

27  equivalents is available for any particular claim limitation.  AB requests that the Court instruct the

28

1   jury that the phosphoramidate requirement in claim 1 of the '119 patent is not entitled to claim

2   scope that would encompass AB's phophorothiolate linkage.

3        AB's proposed instruction contains a preamble and four well-established limitations on

4   the doctrine of equivalents.  Solexa's proposed construction contains a different, legally incorrect

5   preamble, and two of the five limitations on the doctrine of equivalents.  Thus, the issues for the

6   Court are (1) which, if either, of the preambles is correct; (2) whether claim vitiation is a

7   limitation on the doctrine of equivalents; and (3) whether the prior art is a limitation on the

8   doctrine of equivalents.

9            **1.    AB's Proposed Preamble Correctly States That Limitations on
               the Doctrine of Equivalents Must Be Considered <u>Before</u>**
10             **Reaching a Finding of Infringement.**

11       AB proposes that the instruction begin "Before considering infringement under the

12   doctrine of equivalents, you must consider several limitations on that doctrine."  AB's proposed

13   instruction then goes on to list the limitations.  Solexa's proposed preamble states "If you find

14   that Agencourt and/or Applied Biosystems infringed under the doctrine of equivalents, you must

15   consider the following limitations. . . ."  Solexa's proposed language is wrong as a matter of law.

16   The limitations on the doctrine of equivalents affect whether the patentee is entitled to a

17   broadened claim scope in the first instance.  It does not curtail an already-broadened claim scope.

18   *See e.g., Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1320 (Fed. Cir.

19   2003):

20              It is true that an accused device may infringe under the doctrine of
                equivalents if each element performs substantially the same
21              function, in substantially the same way, to achieve substantially the
                same result.  However, this court <u>must first determine</u> whether the
22              scope of the doctrine of equivalents, as applied to the claim
                limitations of limitation [b], has been narrowed by the legal
23              doctrine of prosecution history estoppel or proscribed by the "all
                elements" rule.
24

25   (internal citations omitted) (emphasis added).  <u>Before</u> finding infringement under the doctrine of

26   equivalents, the court must consider the limitations on the doctrine of equivalents.  In this case, if

27   prosecution history estoppel or other limitations on the doctrine of equivalents limits the claim

28   scope of the claimed phosphoramidate linkage, there is no infringement in the first instance.

**2.      Claim Vitiation is a Consideration When Applying the Doctrine of Equivalents.**

The Court recently recognized that claim vitiation or the "All Elements Rule" ("All Limitations Rule") can be a limitation on the doctrine of equivalents.  (8/22/08 Summ. J. Order at 19-20, Docket No. 232.)  AB's proposed instruction on this issue is a straightforward recitation of the case law.  For example, the Federal Circuit has noted:

> Under the all elements rule, there can be no infringement under the doctrine of equivalents if even one limitation of a claim or its equivalent is not present in the accused device.  Such a determination must be premised upon a proper claim construction. Thus, if a court determines that a finding of infringement under the doctrine of equivalents "would entirely vitiate a particular claimed element," then the court should rule that there is no infringement under the doctrine of equivalents.

*Lockheed Martin* 324 F.3d at 1321 (Fed. Cir. 2003).

**3.      Prior Art Serves as a Limitation on the Doctrine of Equivalents.**

AB's proposed instruction relating to how the prior art limits the doctrine of equivalents is a straightforward explanation of the law set forth in *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677 (Fed. Cir. 1990) and other cases.  For example, the Federal Circuit in *Wilson Sporting Goods* noted:

> [A] patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims.  The doctrine of equivalents exists to prevent a fraud on a patent, *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950), not to give a patentee something which he could not lawfully have obtained from the PTO had he tried.  Thus, since prior art always limits what an inventor could have claimed, it limits the range of permissible equivalents of a claim.

*Id.* at 684.

The "prior art" limitation on the doctrine of equivalents is at issue in this case with regard to the phosphoramidate limitation in the '119 patent.  The parties briefly addressed this issue in their cross motions for summary judgment regarding infringement of the '119 patent.  In naturally-occurring strands of DNA, each nucleotide is linked to its neighbor by a linker that has an oxygen atom (O) at one end and is called a "phosphodiester."  Claim 1 of the '119 patent

requires a modified oligonucleotide probe in which this oxygen atom is replaced with a <u>nitrogen</u>

atom (N) and <u>hydrogen</u> atom (H); this linker is called a "phosphoramidate."  Illumina concedes

that the probes used in the SOLiD System do not literally infringe because they contain a <u>sulfur</u>

atom (S) instead of the claimed nitrogen-hydrogen linkage; this linker is called a

"phosphorothiolate."  (Illumina's Mot. at 8, Docket No. 203.)  The three different linkages (along

with the prior art Beaton patent linkage) are illustrated below.



The "prior art" limitation to the doctrine of equivalents is particularly pertinent with

regard to the Beaton patent.  As the Examiner noted during prosecution, Macevicz chose to draft

claim 1 of the '119 patent narrowly and specifically with a phosphoramidate linkage limitation.

In fact, the Examiner specifically allowed claim 1 because it was limited to "the unique

internucleotide linkage comprising an N atom in place of a 5' most bridging O atom."  The

Examiner distinguished the claimed invention from the Beaton patent (U.S. Patent No.

5,625,050), which described a probe in which the oxygen atom is replaced with a carbon (C)

atom.  The Examiner stated:

> Claim 18 {which issued as claim 1 of the '119 patent} appears to be
> allowable over the prior art because of the unique internucleotide
> linkage comprising a N atom in place of a 5' most bridging O atom
> in an internucleotide linkage.  The examiner is unaware of a
> reference that teaches such a construct.  The closest prior art
> discovered against this claim is Beaton et al. [U.S. Patent no.
> 5,525,050 {sic} (1997)].  Beaton et al. teaches oligos wherein the 5'
> most bridging O atom in an internucleotide linkage is replaced by a
> C atom.

(Comer Decl. ISO AB's MSJ, Ex. F at 4, Docket No. 212 (square brackets in original, curly brackets added); Declaration of Michael L. Metzker, Ph.D. in Support of AB's Opposition ("Metzker Opp. Decl.") ¶¶ 9-13, Ex. A at Col. 3:20-24; 4:7-16, 22-26, 32-36, 48-60; 5:22-24, 29-33, 48-49, 65-67; 6:1-7:33; 15:25-30, Docket No. 218.)

Applying the "prior art" limitation on the doctrine of equivalents, the Federal Circuit has held that a patentee is not entitled to a scope of equivalents that would have rendered the claim invalid. *See, e.g., K-2 Corp. v. Salomon S.A.,* 191 F.3d 1356, 1366-67 (Fed. Cir. 1999). Ignoring the nitrogen-hydrogen linkage limitation of claim 1 would remove the distinction relied on by the Examiner to distinguish the prior art, including the Beaton patent. It would also result in invalidity in light of other prior art references disclosing phosphorothiolate linkages, such as the Carr patent (GB 2,236,852), which discloses an oligonucleotide probe with the exact same sulfur atom substitution as in the probes used in the SOLiD System. (Metzker Opp. Decl. ¶¶ 14-15, Ex. E at 14:13-14, 18:2-10, 19:16-21, 20:6-15, 20:23-27, 22:11-26.) The Court should reject Illumina's invitation to redraft the claim now to grant claim scope that Macevicz did not, and could not, obtain during prosecution. *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.,* 904 F.2d 677, 684 (Fed. Cir. 1990) ("[S]ince prior art always limits what an inventor could have claimed, it limits the range of permissible equivalents of a claim.").

1

## B. DISPUTED JURY INSTRUCTION 2: *DE MINIMIS* INFRINGEMENT

2

3

**AB's Desired Language:**  Applied Biosystems contends that even if the one-base encoding prototype satisfied the claim limitations of claim 1 of the '597 patent, Agencourt's use of the one-base prototype was excused as "de minimis."  An act of infringement is "de minimis" if it does not have definite, cognizable, and substantial commercial purposes.  Applied Biosystems has the burden to prove not only that the manufacture or use of an infringing product was insignificant in amount but also that the alleged infringing activity terminated at the de minimis stage.  If you find that Agencourt's use of the one-base encoding prototype was de minimis, Applied Biosystems is not liable for infringement.

4

5

6

7

8

9

**Authorities:**

10

*Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1349 (Fed. Cir. 2000); *Baxter Diagnostics, Inc. v. AVL Scientific Corp.*, 924 F. Supp. 994, 1016, *modified on other grounds*, 954 F. Supp. 199 (C.D. Cal. 1996)

11

12

13    An instruction on *de minimis* use is appropriate here because AB's use of the one-base

14    encoding prototype machine at Agencourt Personal Genomics was used for internal research and

15    never marketed or sold to the public.  In *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1349

16    (Fed. Cir. 2000) and *Roche Prods., Inc. v. Bolar Pharm. Co.,* 733 F.2d 858, 863 (Fed. Cir. 1984),

17    the Federal Circuit recognized the *de minimis* use exception to patent infringement.  AB's

18    instruction tracks the language in both cases, which noted that activity by the accused infringer

19    does not constitute *de minimis* use if it "has definite, cognizable, and not insubstantial commercial

20    purposes."  *Embrex*, 216 F.3d at 1349.   AB's proposed instruction reverses the double negative

21    and instructs the jury that a use is *de minimis* if it does not have a definite, cognizable, and

22    substantial commercial purpose.  That is consistent with other cases addressing the *de minimis*

23    exception.  *See Baxter Diagnostics, Inc. v. AVL Scientific Corp.*, 924 F. Supp. 994, 1016,

24    *modified on other grounds*, 954 F. Supp. 199 (C.D. Cal. 1996) (*de minimis* infringement exists

25    where the manufacture or sale is insignificant in amount and where alleged infringing activity is

26    terminated at the *de minimis* stage); *Maxon Premix Burner Co. v. Eclipse Fuel Eng'g Co.*, 471

27    F.2d 308, 317 (7th Cir. 1972) (holding that manufacture and sale of a single experimental

28    prototype would be excused as *de minimis* activity).

1    Illumina's proposed instruction confuses the experimental use exception with the *de*

2    *minimis* use exception.  AB is not asserting the experimental use exception.  Illumina's recitation

3    of the "for amusement, to satisfy idle curiosity, or for strictly philosophical inquiry" factors is

4    referring to the experimental use exception, which is distinguishable from the *de minimis* use

5    exception.  *Embrex*, 216 F.3d at 1349.  Because AB is asserting *de minimis* use rather than

6    experimental use, Solexa's proposed instruction should not be accepted.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## C.    DISPUTED INSTRUCTION 3:  ESTOPPEL

2

3

**AB's Desired Language:**  Applied Biosystems claims as a defense that Stephen Macevicz and those claiming patent rights through him are barred from asserting that Applied Biosystems infringes the Macevicz patents because of Stephen Macevicz's misconduct.

4

5

To establish this defense, Applied Biosystems must prove all of the following:

6

7

(1)    That Stephen Macevicz made a representation of fact by words or conduct intending that Applied Biosystems should rely on it. This conduct may also include silence if Macevicz had a duty to speak and remained silent knowing that the circumstances required him to speak;

8

9

(2)    That Macevicz knew the facts;

10

11

(3)    That Applied Biosystems was ignorant of the true state of facts; and

12

(4)    That Applied Biosystems reasonably relied on Macevicz's representation to Applied Biosystems's injury.  Applied Biosystems's reliance must be reasonable in the sense that under the circumstances a reasonable person would have acted as Applied Biosystems did.

13

14

**Authorities:**

15

16

California Forms of Jury Instructions § MB 300F.27 (2007); California Evid. Code § 623; *Robinson v. Fair Employment & Housing Com.* (1992) 2 Cal. 4th 226, 244-245, 5 Cal. Rptr. 2nd 782, 825 P.2d 767; *Lusardi Construction Co. v. Aubry* (1992) 1 Cal. 4th 976, 994, 4 Cal. Rptr. 2d 837, 824 P.2d 643; *Shaffer v. Debbas* (1993) 17 Cal. App. 4th 33, 43, 21 Cal. Rptr. 110; *Lundeen Coatings Corp. v. Department of Water & Power* (1991) 232 Cal. App. 3d 816, 829, 283 Cal. Rptr. 551; *Security Environmental Systems, Inc. v. South Coast Air Quality Management Dist.* (1991) 229 Cal. App. 3d 110, 128-129, 280 Cal. Rptr. 108; *Laks v. Coast Fed. Sav. & Loan Assn.* (1976) 60 Cal. App. 3d 885, 890-891, 131 Cal. Rptr. 836; *Miller v. Rau* (1963) 216 Cal. App. 2d 68, 79, 30 Cal. Rptr. 612; *Bettelheim v. Hagstrom Food Stores* (1952) 113 Cal. App. 2d 873, 879, 249 P. 2d 301; *C.I.T. Corporation v. Hawley* (1939) 34 Cal. App. 2d 66, 72, 93 P.2d 216.

17

18

19

20

21

22

23

AB can prove estoppel under California state law a number of ways.  For example,

24

applying the above elements, AB can prove that (1) Stephen Macevicz had the duty to speak

25

under the terms of his invention agreement and to disclose any inventions, even if he had no

26

obligation to assign his inventions to AB; (2) Stephen Macevicz knew that he had an obligation to

27

disclose his inventions to AB; (3) AB was ignorant of the fact that Macevicz was concealing his

28

invention from AB; and (4) AB reasonably relied on Macevicz's silence as a sign that he had no

1    invention rights that should have been considered by AB at the time, and AB was injured by

2    Macevicz's conduct in the form of being subject to a patent infringement suit years later after

3    having independently developed technology supposedly covered by the Macevicz patents.  If AB

4    proves those facts at trial, Macevicz, and those who have since obtained rights to the invention

5    through Macevicz, are estopped under California law from asserting rights to the invention.  It is

6    a classic case of state law estoppel.  It makes no difference that the act being estopped involves

7    federal patent rights.  *See Bd. of Trs. v. Roche Molecular Sys.*, 487 F. Supp. 2d 1099, 1114 n.6

8    (N.D. Cal. 2007) ("California, rather than federal, law controls the question of equitable

9    estoppel.") *cf. Rhone-Poulenc Agro v. Dekalb Genetics Corp.*, 284 F.3d 1323, 1328 (Fed. Cir.

10   2002) ("In general, the Supreme Court and this court have turned to state law to determine

11   whether there is contractual 'authority' to practice the invention of a patent. Thus, the

12   interpretation of contracts for rights under patents is generally governed by state law.") (citations

13   omitted).  Accordingly, AB proposes that the jury be given a state law jury instruction on

14   estoppel.  AB's proposed construction tracks the California Forms of Jury Instructions § MB

15   300F.27 (2007) on estoppel.

16       Solexa is proposing a jury instruction for a defense that AB is not asserting – federal

17   common law equitable estoppel based on the behavior of Solexa, Inc.  AB objects to this

18   instruction because it pretends that AB is asserting a defense that it has not making.  For example,

19   Solexa's proposed jury instruction states "Applied Biosystems contends that Solexa made a

20   misleading communication about the existence of the Macevicz patent before Solexa filed this

21   lawsuit."  AB does not make that contention.  AB is not seeking the application of federal

22   common law to this issue.  The Court should instruct the jury consistent with the claim that AB is

23   making.

24

25

26

27

28

1

## D.     DISPUTED CLAIM CONSTRUCTION 4:  UNCLEAN HANDS

2

3

**AB's Desired Language:**  Applied Biosystems claims as a defense that Stephen Macevicz's misconduct precludes enforcement of the Macevicz patents by Macevicz and those who claim title through him.  To establish this defense, Applied Biosystems must prove that Macevicz's conduct was unconscionable and resulted in prejudice to Applied Biosystems.

4

5

6

Macevicz's misconduct must be intimately connected with Solexa's claims of patent infringement and of such a prejudicial nature that it would be unfair to allow Solexa to rely on the Macevicz patents.  If that is established by Applied Biosystems, then Solexa is barred from claiming patent infringement.

7

8

9

**Authorities:**

10

California Forms of Jury Instructions § MB 300F.29 (2007); *Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal. App. 4th 612, 618-623, 12 Cal. Rptr. 2d 741; *Soon v. Beckman* (1965) 234 Cal. App. 2d 33, 36, 44 Cal. Rptr. 190; *Fibreboard Paper Products Corp. v. East Bay Union of Machinists* (1964) 227 Cal. App. 2d 675, 728, 39 Cal. Rptr. 64.

11

12

13

14

Like the previous instruction, AB contends that the "misconduct" leading to the unclean hands defense is based on state law causes of action – breach of contract, breach of fiduciary duty, conversion, etc.  Accordingly, a state law instruction on unclean hands is appropriate.

15

16

17

Solexa's proposed instruction refers to the unclean hands of the patent owner.  Here, AB is alleging that the unclean hands belong to Stephen Macevicz, who passes title through to Solexa.  Illumina's instruction incorrectly requires that Solexa be the bad actor for the defense to apply.

18

19

20

21

22

23

24

25

26

27

28

E.    **DISPUTED JURY INSTRUCTION 5:  INEQUITABLE CONDUCT**

**AB's Desired Language (underlined):**  In this case, AB contends that Dr. Macevicz failed to disclose material information and/or made materially false and misleading statements to the Patent and Trademark Office during the examination of the patents, and did so with intent to deceive the examiner into issuing the patents. <u>Specifically, AB contends that Dr. Macevicz (1) misrepresented his status as a "small entity," (2) failed to disclose his obligations to assign his invention to AB, and (3) failed to disclose the Whiteley and Landegren references to the Patent and Trademark Office during prosecution.</u>

**Authorities:**

Federal Circuit Bar Association Model Instructions 01/2008; 35 U.S.C. § 282; *Digital Control Inc.., v. Charles Machine Works*, 437 F.3d 1309 (Fed. Cir. 2006); *Ferring B. V. v. Barr Labs., Inc.*, 437 F.3d 1181 (Fed. Cir. 2006); *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1363 (Fed. Cir. 2003); *Upjohn Co. v. Mova Pharmaceutical Corp.*, 225 F.3d 1306 (Fed. Cir. 2000); *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565 (Fed. Cir. 1991); *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867 (Fed. Cir. 1988).

Solexa's only objection to underlined text in the first paragraph above is its claim that AB did not properly assert inequitable conduct in the operative complaint.  While the Court denied AB's motion for leave to file a Second Amended Complaint, which added new inequitable conduct defenses, the three defenses remaining in AB's inequitable conduct case -- (1) the failure to disclose the Whiteley and Landegren references to the Patent and Trademark Office during prosecution; (2) Macevicz's failure to disclose to the PTO his obligations to assign his invention to AB; and (3) Macevicz's misrepresentation to the PTO of his status as a "small entity" – were properly disclosed by AB's First Amended Complaint, which remains the operative pleading in this case.

AB filed its First Amended Complaint on November 8, 2007, pursuant to a stipulation. All three grounds for inequitable conduct were adequately pleaded in the First Amended Complaint.  Count Ten of the Complaint includes Paragraphs 63-69 and is entitled "Declaratory Judgment Regarding Enforceability of '341 Patent, '119 Patent, and '597 Patent."  Paragraph 63 incorporates by reference all earlier paragraphs.  Paragraph 66 expressly states that the three

1    patents-in-suit are unenforceable due to inequitable conduct.  There should be no dispute that AB

2    alleged inequitable generally in its complaint.

3          The factual background for each of the three defenses is set forth in the complaint.  The

4    failure to disclose the Whiteley and Landegren references is set forth in Paragraphs 67 and 68.

5    Macevicz's failure to tell the PTO of his obligation to assign the Macevicz patents to AB and his

6    misrepresentation to the PTO of his status as a "small entity" are sufficiently detailed in

7    Paragraphs 10-16.  Those paragraphs set forth, in detail, the misconduct that forms the basis for

8    AB's second and third inequitable conduct defenses.  For example, Paragraph 13 notes that

9    Macevicz filed the patents "in his own name," as opposed to filing them in the name of AB,

10   which would have triggered an obligation to file the patents as a "large entity" as opposed to a

11   "small entity."

12          10.    Macevicz is the former Chief Patent Counsel for AB.  While
13   he was employed by AB, and without the knowledge or consent of
AB, Macevicz applied for patents on inventions that he was
14   obligated to assign to AB.  Under the terms of his employment with
AB, he held these inventions, applications, and patents in trust for
15   AB.  Immediately after he left AB, however, and before the patents
were issued, Macevicz went to work for Lynx and purported to
16   assign the patents to Lynx.

17          11.    AB brought the State Court Action to recover the patents
because Macevicz had no right to assign the applications to Lynx,
18   and Lynx had no right to accept the assignments.  The State Court
Action has since been voluntarily dismissed without prejudice, such
19   that all claims may be resolved in this action.

20          12.    In Spring, 1992, Macevicz accepted an offer to become
patent counsel for AB.  On May 4, 1992, as a condition of his
21   employment by AB, Macevicz signed an Employee Invention
Agreement ("Invention Agreement") with AB.  In the Invention
22   Agreement, Macevicz promised to disclose to AB, to hold in trust
for the sole right and benefit of AB, and to assign to AB any
23   inventions that he might make while employed by AB.  The only
exception was for inventions that Macevicz could prove were
24   developed entirely on his own time, were developed without the use
of company resources, and did not relate to the actual or anticipated
25   business of AB or result from work performed by him for AB.
Macevicz further promised that if he made any inventions that he
26   believed fell within this exception, he would disclose those
inventions to AB and provide evidence to substantiate his belief
that the inventions fell within the exception.

27

28          13.    On April 17, 1995, while he was still working for AB,
Macevicz filed United States Patent Application No. 08/424,663

("the Application") with the United States Patent and Trademark Office. He filed the Application in his own name. The Application described and covered inventions that were owned by AB pursuant to the Invention Agreement. Macevicz did not disclose the Application, nor did he make any other disclosure required by the Invention Agreement, to AB.

14.    Macevicz's Application led to at least three U.S. patents that issued after he left AB: U.S. Patent No. 5,750,341 ("the '341 Patent"), U.S. Patent No. 5,969,119 ("the '119 Patent), and U.S. Patent No. 6,306,597 (the '597 Patent) (collectively, "the Patents"). Copies of the '341 Patent, '119 Patent, and '597 Patent are attached to this Complaint as Exhibits A-C, respectively. AB did not learn about the Application or the Patents until in or around February 2006.

15.    A PCT application and several foreign patents and patent applications also claim priority to Macevicz's Application, including but not limited to PCT Application PCT/US96/05245, European Patent Application Publication No. EP 0871646, Canadian Patent No. 2,218,017, Australian Patent No. 754991, Australian Patent No. 718937, Japanese Patent Application No. H08-531848 (Publication No. JP H11-503908), and Japanese Patent Application H19-185093 ("the Foreign Patents and Applications").

16.    Very soon after he left AB, Macevicz went to work for Lynx. On information and belief, Macevicz purported to assign the Application and the Patents to Lynx, and Lynx purported to accept the assignments, even though they were already assigned to AB under the Invention Agreement. AB was unaware of the purported assignment to Lynx, and was unaware of the Application or the Patents, until in or around February 2006.

(First Amended Complaint at 3-5, Docket No. 46.)

The above paragraphs put Solexa on notice of any facts it needed to investigate AB's allegations of inequitable conduct, which were later explained in more detail in the Expert Report of Scott Chambers, Ph.D.

AB expects Solexa to argue that AB is barred from asserting an inequitable conduct defense because the Court denied AB's motion for leave to file a Second Amended Complaint. AB filed a motion for leave to file its Second Amended Complaint on April 8, 2008. The main purpose of the Second Amended Complaint was to add a claim for damages against Stephen Macevicz. But AB also added new inequitable conduct claims to that complaint, including:

- Macevicz's failure to inform the PTO that identical claims in a pending application were rejected by another Examiner in the pending examination

1         •   Solexa's failure to pay maintenance fees as a large entity.

2

3        AB also added a paragraph making more explicit that its inequitable conduct allegations

4 included the behavior detailed in the complaint regarding Macevicz's misconduct hiding his

5 inventions from AB and assigning them to Lynx Therapeutics. (Docket No. 185-3 at 12 ¶ 66

6 ("Each of the '341, '119, and '597 Patents are void and unenforceable by Solexa due to

7 inequitable conduct in their prosecution before the United States Patent and Trademark Office

8 (the "PTO"), based on the conduct described above, and as more particularly alleged below.").)

9 The Court denied AB's motion for leave to amend, holding that it was untimely. (Docket No. No.

10 196.) AB has not pursued the new inequitable conduct theories.

11        The Court's denial of AB's motion for leave to file a Second Amended Complaint meant

12 that AB could not assert the inequitable conduct defenses asserted for the first time in the Second

13 Amended Complaint. It did not mean that AB could not assert inequitable conduct defenses that

14 were already properly supported by the First Amended Complaint. Solexa has known about

15 Macevicz's alleged misconduct underlying AB's inequitable conduct defenses from the very

16 beginning of this case. It submitted an expert report rebutting AB's inequitable conduct

17 allegations In June 2008. Solexa did not file a motion in limine to exclude these defenses.

18 Because they were timely raised by AB, they should not be precluded.

1

2

### F.    DISPUTED JURY INSTRUCTION 6:
### DATE OF COMMENCEMENT – PRODUCTS

3

**AB's Desired Language:**  None.

4

The previous instruction for "Reasonable Royalty" adequately notes that a "'reasonable

5

royalty' is the payment that would have resulted from a negotiation between a patent holder and

6

the infringer <u>taking place at the time when the infringing activity first began</u>."  A separate

7

instruction on when the hypothetical negotiation takes place will only highlight Solexa's flawed

8

damages theory that is subject to AB's Motion in Limine No. 3, which is described in more detail

9

in the next disputed construction.  AB assumes that if the Court grants its motion in limine,

10

Solexa will drop its request for inclusion of this instruction.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### G. DISPUTED JURY INSTRUCTION 7: DAMAGES – REASONABLE ROYALTY – FACTORS TO CONSIDER

**AB's Desired Instruction:** In determining the reasonable royalty, you may consider real-world facts including the following to the extent they are helpful to you:

1.    Any royalties received by Solexa for the licensing of the Macevicz patents, proving or tending to prove an established royalty;

2.    The rates paid by Agencourt to license other patents comparable to the Macevicz patents;

3.    The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the system may be sold;

4.    Solexa's established policy and marketing program to maintain its right to exclude others from using the patented inventions by not licensing others to use the inventions, or by granting licenses under special conditions designed to preserve that exclusivity;

5.    The commercial relationship between Solexa and Agencourt, such as whether or not they are competitors in the same territory in the same line of business;

6.    The effect of selling the patented system in promoting sales of other products of the licensee; the existing value of the inventions to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales;

7.    The duration of the patents and the term of the license;

8.    The established profitability of the products made under the patents; their commercial success; and their current popularity;

9.    The utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for achieving similar results;

10.    The nature of the patented inventions; the character of the commercial embodiments of them as owned and produced by the licensor; and the benefits to those who have used the invention;

11.    The extent to which Agencourt has made use of the inventions; and any evidence that shows the value of that use;

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the inventions or analogous inventions;

13.    The portion of the profit that arises from the patented inventions themselves as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer;

14.    The opinion testimony of qualified experts;

15.    The amount that a licensor (such as Solexa) and a licensee (such as Agencourt) would have agreed upon (at the time the infringement began) if both sides had been reasonably

1    and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who

2    desired, as a business proposition, to obtain a license to use the patented inventions—would have
     been willing to pay as a royalty and yet be able to make a reasonable profit and which amount

3    would have been acceptable by a patentee who was willing to grant a license; and

4    16.    Any other economic factor that a normally prudent business person would, under
     similar circumstances, take into consideration in negotiating the hypothetical license.

5
6        The instruction should reflect that the "hypothetical negotiation" took place when

7    infringement began, which necessarily means that the hypothetical negotiation took place

8    between Agencourt Personal Genomics and Solexa, not between Applied Biosystems and

9    Agencourt.  Thus, paragraphs 2, 5, 11, and 15 should delete any reference to Applied Biosystems

10   because it is contrary to law.

11       AB expects that the dispute over this instruction will be resolved with the Court's decision

12   on AB's Motion in Limine 3 to exclude references to two hypothetical negotiations – one

13   between Agencourt and Solexa and another one between AB and Solexa.  A "'reasonable royalty'

14   contemplates a hypothetical negotiation between the patentee and the infringer *at a time before*

15   *the infringement began*.'"  *Riles v. Shell Exploration & Prod.*, 298 F.3d 1302, 1311 (Fed. Cir.

16   2002) (emphasis added).  Solexa's proposed jury instruction violates this tenet, however, by

17   suggesting a first negotiation by Agencourt and a second negotiation two years later by AB.  It is

18   undisputed that to the extent there is any infringement in this case, it began at Agencourt.

19       The Federal Circuit ruled in *Wang Lab., Inc. v. Toshiba Corp.*, 993 F.2d 858 (Fed. Cir.

20   1993) that it is reversible error to move the date of a hypothetical negotiation from the date of

21   first infringement.  *Wang*, 993 F.2d at 870.  In *Wang*, the district court did just that when it moved

22   the hypothetical negotiation from the date of first infringement (April 1987), to the date when

23   Wang first gave notice of its patent and its right to collect damages first began (January 1990).

24   *Id*. at 869-70.  The Federal Circuit reversed, holding that in "choosing the January 1990 date, the

25   district court failed to follow our precedent."  *Id*. at 870.  The case was remanded for the trial

26   court to determine damages based on a hypothetical negotiation on the date of first infringement.

27   *Id*.

28

1  In *Integra*, the alleged infringing acts were a series of experiments conducted between

2  1994 and 1998.  *Integra Lifesciences I, Ltd. v. Merck KGaA,* 331 F.3d 860, 870 (Fed. Cir. 2003),

3  *vacated and remanded on other grounds*, 545 U.S. 193 (2005).  The trial court did not set the date

4  of the hypothetical negotiation in 1994 because it determined that the 1994 experiments did not

5  constitute infringement.  *Id*.  The Federal Circuit found that some of the 1994 experiments could

6  constitute infringement.  *Id*.  It therefore remanded for a determination by the trial court of

7  whether or not the earlier experiments were infringing acts, and with instructions to move the date

8  of the hypothetical negotiation back to 1994 if they were.  *Id*.

9  Similarly, in *Unisplay*, the Federal Circuit reversed a jury damages award based on expert

10  testimony of a royalty rate from a hypothetical negotiation that occurred *after* the date of first

11  infringement.  *Unisplay, S.A. v. Am. Elec. Sign Co.,* 69 F.3d 512, 518 (Fed. Cir. 1995).  In doing

12  so, the Federal Circuit stated that "[a] reasonable royalty determination for purposes of making a

13  damages evaluation must relate to the time infringement occurred, and not be an after-the-fact

14  assessment."  *Id*. (citations omitted); *see also Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d

15  1568, 1575 (Fed. Cir. 1988) (hypothetical negotiation methodology "speaks of negotiations as of

16  the time infringement began."); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079

17  (Fed. Cir. 1983) ("[t]he key element in setting a reasonable royalty  . . . is the necessity for return

18  to the date when the infringement began.").

19  Because the hypothetical negotiation, if any, took place between Agencourt and Solexa,

20  all references to Applied Biosystems should be omitted from this instruction.

21

22  Dated: August 29, 2008          MORRISON & FOERSTER LLP

23

24                                                By:  ___/s/  David C. Doyle_____

25                                                       David C. Doyle

26                                                Attorneys for Plaintiff
                                                   APPLERA CORPORATION -
                                                   APPLIED BIOSYSTEMS GROUP

27

28