BRYAN WILSON (CA SBN 138842)
ERIC C. PAI (CA SBN 247604)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792
E-Mail: BWilson@mofo.com; EPai@mofo.com

DAVID C. DOYLE (CA SBN 70690)
STEVEN E. COMER (CA SBN 154384)
BRIAN M. KRAMER (CA SBN 212107)
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, California 92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125
E-Mail: DDoyle@mofo.com; SComer@mofo.com;
BMKramer@mofo.com

Attorneys for Plaintiff
APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ILLUMINA, INC., a Delaware corporation, SOLEXA, INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual,<br><br>Defendants. | Case No.   C07 02845 WHA<br><br>**APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT OF NONINFRINGEMENT OF '119 PATENT**<br><br>Trial Date: September 29, 2008<br>Time:       7:30 a.m.<br>Place:      Courtroom 9, 19th Floor<br>Judge:      William H. Alsup |

# NOTICE OF MOTION AND MOTION

TO ALL DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, as soon as this matter may be heard by the Court, Plaintiff Applied Biosystems Inc., by and through its counsel, will move and hereby does move, pursuant to Civil Local Rule 7-9, for leave to file a motion for reconsideration of the denial of its motion for summary judgment of noninfringement as to claim 1 of U.S. Patent No. 5,969,119 (the "'119 patent"). AB respectfully requests that the Court also set a briefing schedule that will allow for a decision on this issue before phase II of trial commences.

This motion is based on the accompanying Memorandum of Points and Authorities, the Declaration of Steven E. Comer in Support of AB's Motion for Leave to File Motion for Reconsideration of Summary Judgment of Noninfringement of '119 Patent ("Comer Decl."), and the exhibit attached thereto, and on all of the documents and records on file in this action and all matters judicially noticeable.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Plaintiff Applied Biosystems Inc. ("AB") respectfully requests that the Court reconsider, prior to Phase II of trial, whether Defendants ("Illumina") are barred from claiming infringement of claim 1 of the '119 patent under the doctrine of equivalents. The Court reserved judgment on this issue because of ambiguities in the Federal Circuit's decisions on claim vitiation and to wait for a more developed record. Two weeks later, on September 8, 2008, the Federal Circuit issued a decision in *Carnegie Mellon University v. Hoffmann-La Roche* that resolves any ambiguity and establishes that the claim language alone bars Illumina from seeking infringement under the doctrine of equivalents:

> We agree with Roche and the district court that a finding that *Taq* is an equivalent of *E. coli* would essentially render the "bacterial source [is] *E. coli*" claim limitation meaningless, and would thus vitiate that limitation of the claims. Indeed, in drafting the claims, the patentees specifically chose to limit claim 4 to a recombinant plasmid where the bacterial source is *E. coli*. Appellants cannot now argue that any bacterial source, including *Taq*, would infringe that claim. Accordingly, summary judgment of noninfringement was appropriate.

*Carnegie Mellon University v. Hoffmann-La Roche, Inc.*, Nos. 2007-1266 & 2007-1267, slip op. at 24 (Fed. Cir. Sept. 8, 2008) (copy attached to Comer Decl. filed herewith).

### II.  DISCUSSION

#### A.  Illumina's Assertion of the Doctrine of Equivalents Should be Reconsidered in Light of the Federal Circuit's Recent Decision in *Carnegie Mellon*.

Claim 1 of the '119 patent is limited to a probe containing a "NH" (phosphoramidate) linkage. (Comer MSJ Decl. Ex. B, Docket No. 212-3.) Illumina concedes that AB's probes do not literally infringe this claim because they contain a different linkage, called a phosphorothiolate. (Illumina's Motion for Summary Judgment, Docket No. 203, at 8.) AB filed a motion for summary judgment that the probes used in its systems also do not infringe claim 1 of the '119 patent under the doctrine of equivalents. (AB's July 17, 2008 motion for summary judgment; Docket No. 207.) AB argued that Illumina is barred from seeking infringement under the doctrine of equivalents because extending the claim to cover a phosphorothiolate would

vitiate the phosphoramidate limitation, and because it is undisputed that the phosphorothiolate linkage is cleaved under different and preferable conditions than the claimed phosphoramidate linkage.

The Court denied AB's motion as to the '119 patent. (Docket No. 232 at 20.) The Court noted that the Federal Circuit decisions on the issue of vitiation "seem to blow hot and cold." (*Id.* (citing *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420 (Fed. Cir. 1997) and *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309 (Fed. Cir. 1998)).) The Court further noted that the totality of the circumstances must be considered, and the specific record presented on summary judgment was "too undeveloped to be confident on this issue." (*Id.*) Accordingly, the Court denied summary judgment of noninfringement of claim 1 of the '119 patent without prejudice to a later motion *in limine* at trial.

Two weeks after the Court issued its Order, the Federal Circuit issued its decision in *Carnegie Mellon*. This decision clarifies the law on claim vitiation and establishes that in a case such as this, the issue can be decided based on the claim language alone, without further factual development. It therefore supports reconsideration of whether Illumina is barred as a matter of law from pursuing its infringement of claim 1 of the '119 patent under the doctrine of equivalents. This decision could not have been raised earlier because it was issued two weeks after the Court's August 22, 2008 Order. (Docket No. 232.) The decision therefore presents grounds for reconsideration under Civil Local Rule 7-9(b)(1) and (2).[1]

---

[1] Civil Local Rule 7-9(b) provides that a party seeking leave of court to file a motion for reconsideration must show:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

AB'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION
Case No. C07 02845 WHA
sd-441369

3

### B. The Federal Circuit in *Carnegie Mellon* Barred the Patentee from Arguing that a Claim Limited to a Plasmid Derived from *E. coli* Extends to a Plasmid Derived from *Taq*.

The Federal Circuit's decision in *Carnegie Mellon* establishes that when the patentee chooses to limit a claim to one specific species, he cannot argue under the doctrine of equivalents that the claim extends to a different species.

The patents in *Carnegie Mellon* relate to taking a DNA sequence that encodes for the production of DNA polymerase (an enzyme that assists in DNA replication) and making that sequence into a plasmid (a ring of DNA) that is inserted into a host bacterium that then creates copies of the DNA plasmid as it grows and divides. Claim 1 of the '745 patent broadly claimed a plasmid containing DNA that codes for polymerase where that DNA sequence is derived from any bacterial source:

> 1. A recombinant plasmid containing a DNA coding sequence for the expression of DNA polymerase activity, wherein said DNA coding sequence is derived from <u>a source that encodes a bacterial DNA Polymerase</u>, said source not containing an amber mutation affecting expression of said DNA polymerase activity, such that when said plasmid is transformed into a bacterial host system the host system can grow and divide thereby replicating said plasmid.

*Carnegie Mellon*, slip op. at 22 (emphasis added by Federal Circuit). Claim 4 more narrowly claimed a plasmid containing DNA that codes for polymerase where that DNA sequence is derived from one specific bacterial source, *E. coli*:

> 4. The recombinant plasmid of claim 3 wherein the bacterial host system and <u>the bacterial source are each E. coli</u>; and wherein the Nick-translation activity includes polymerase and 5'-3' exonuclease activities.

*Id.* (emphasis added by Federal Circuit). The accused product used a plasmid containing DNA that codes for polymerase, but the DNA sequence was derived from a different bacterial source, *Thermus aquaticus* ("*Taq*").

The U.S. District Court for the Northern District of California (the Honorable Susan Illston) granted Roche's motion for summary judgment that claims 1-3 (among other claims) are invalid for lack of written description. *Id*. at 7-8. The Court also granted summary judgment of noninfringement of claims 4-11 (among other claims) under the doctrine of equivalents. *Id*. at 8.

On appeal, Carnegie Mellon argued that "the substitution of *Taq* for *E. coli* was an insubstantial and unimportant change that resulted in an infringing equivalent." *Id*. at 23.  Roche responded that Carnegie Mellon's infringement theory would vitiate the *E. coli* claim limitation, and that the differences between *Taq* and *E. coli* are not insubstantial.  *Id.*

The Federal Circuit reiterated that "the 'all limitations rule' restricts the doctrine of equivalents by preventing its application when doing so would vitiate a claim limitation." *Id.* (citing *Warner Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29 (1997)).[2]  It also reiterated the rule that in determining whether a finding of infringement under the doctrine of equivalents would vitiate a claim limitation, the court must consider "the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless." *Id.* (citing *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1359 (Fed. Cir. 2005)).

But the Federal Circuit concluded, based on the choice of claim language alone, that the claim limitation requiring that the DNA source be *E. coli* cannot be extended to a product in which the DNA source is *Taq*.  The court held that because the patentee specifically chose to limit claim 4 to a recombinant plasmid where the bacterial source is *E. coli* it "cannot now argue that any bacterial source, including *Taq*, would infringe that claim."  Specifically, the court held:

> We agree with Roche and the district court that a finding that *Taq* is an equivalent of *E. coli* would essentially render the "bacterial source [is] *E. coli*" claim limitation meaningless, and would thus vitiate that limitation of the claims.  Indeed, in drafting the claims, the patentees specifically chose to limit claim 4 to a recombinant plasmid where the bacterial source is *E. coli*.  Appellants cannot now argue that any bacterial source, including *Taq*, would infringe that claim.  Accordingly, summary judgment of noninfringement was appropriate.

*Id.* at 24.

---

[2] Some Federal Circuit decisions call the "all limitations rule" the "all elements rule."  *See, e.g., Cooper Cameron Corp. v. Kvaerner Oilfield Prods.*, 291 F.3d 1317, 1320-21 (Fed. Cir 2002) (noting that the "all elements rule" is "more preferably" called the "all limitations rule").

### C. Illumina is Barred from Arguing that a Claim Limited to a Probe Containing a Phosphoramidate Linkage Extends to a Probe Containing a Phosphorothiolate Linkage.

Macevicz similarly chose to limit claim 1 of the '119 to a single linkage. The clarity and deliberateness of that choice is established by the claims in his related, and earlier-issued '341 patent.[3] In claim 7 of the '341 patent, Macevicz broadly claimed the use of a probe containing any "chemically scissile internucleosidic linkage:"

> 7. The method of claim 2 wherein said step of regenerating includes cleaving <u>a chemically scissile internucleosidic linkage</u> in said extended oligonucleotide probe.

('341 Patent, Comer MSJ Decl. Ex. A, Docket No. 212-2.) In claim 8 of the '341 patent, Macevicz expressly limited the claim to one specific chemically scissile internucleosidic linkage — a phosphoramidate:

> 8. The method of claim 7 <u>wherein said chemically scissile internucleosidic linkage is a phosphoramidate</u>.

(*Id.*)

Claims 7 and 8 prove indisputably that Macevicz used the term "chemically scissile internucleosidic linkage" to claim an entire class of linkages, and expressly defined a phosphoramidate linkage as one specific linkage within that class. Subsequently, in the later-issued '119 patent, he chose the latter, narrow limitation. He specifically chose to limit claim 1 to a probe containing a phosphoramidate linkage, not the broader class of "chemically scissile internucleosidic linkage" Illumina now seeks to cover through the doctrine of equivalents. Illumina cannot now argue that any chemically scissile internucleosidic linkage, including phosphorothiolate, would infringe that claim. As in *Carnegie Mellon*, a finding that a phosphorothiolate linkage is the equivalent of a phosphoramidate linkage would essentially

---

[3] The '341 patent issued on May 12, 1998. ('341 Patent, Comer MSJ Decl. Ex. A, Docket No. 212-2.) The '119 patent did not issue until 17 months later, on October 19, 1999. (*Id.* Ex. B, Docket No. 212-3.) Macevicz filed responses to office actions in the '119 prosecution on May 12, 1998 and November 3, 1998. (Comer MSJ Decl. Ex. G, Docket No. 212-8; Comer MSJ Reply Decl. Ex. 3, Docket No. 226-4.)

render the phosphoramidate claim limitation meaningless, and would thus vitiate that limitation. Accordingly, summary judgment of noninfringement is appropriate.

### D. Vitiation is Established by the Current Record.

Although AB's phosphorothiolate linkage has significant advantages over Macevicz's phosphoramidate linkage (*see* AB's Trial Brief Re: (1) AB Does Not Infringe The '119 Patent Under The Doctrine Of Equivalents As A Matter Of Law; (2) Equitable Defenses To Infringement Counterclaims; Docket No. 272 at 1-14), summary judgment of noninfringement is appropriate without considering those advantages. In *Carnegie Mellon*, the Federal Circuit noted that although Kary Mullis won the Nobel Prize for discovering the use of *Taq* DNA polymerase, the advantages of *Taq* played no part in its decision. "While we reach our decision irrespective of those facts, we readily can see why appellants have attempted to broaden the scope of their claims beyond the *E. coli* species disclosed." *Carnegie Mellon,* slip op. at 24 n.4. Thus, on the basis of the claim language alone, AB is entitled to summary judgment.

## III. CONCLUSION

AB respectfully requests permission to file a motion for reconsideration of the denial of its motion of summary judgment of noninfringement of claim 1 of the '119 patent. AB further requests that the Court set a briefing schedule that will allow for a decision before phase II of trial commences.

Dated: September 11, 2008    MORRISON & FOERSTER LLP

By: /s/ Steven E. Comer
Steven E. Comer

Attorneys for Plaintiff
APPLERA CORPORATION -
APPLIED BIOSYSTEMS GROUP