# Exhibit 2

KEVIN M. FLOWERS (admitted *pro hac vice*)
THOMAS I. ROSS (admitted *pro hac vice*)
JEFFREY H. DEAN (admitted *pro hac vice*)
JOHN R. LABBE (admitted *pro hac vice*)
CULLEN N. PENDLETON (admitted *pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606-6357
(312) 474-6300 (telephone)
(312) 474-0448 (facsimile)
E-Mail: kflowers@marshallip.com
E-Mail: tross@marshallip.com
E-Mail: jdean@marshallip.com
E-Mail: jlabbe@marshallip.com
E-Mail: cpendleton@marshallip.com

Counsel for Defendants
ILLUMINA, INC., SOLEXA, INC.,
and STEPHEN C. MACEVICZ

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| APPLERA CORPORATION—APPLIED BIOSYSTEMS GROUP, a Delaware corporation,<br><br>Plaintiff/Counterdefendant,<br><br>- vs. -<br><br>ILLUMINA, INC., a Delaware corporation, SOLEXA, INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual,<br><br>Defendants/Counterclaimants. | Case No. 07-CV-02845 WHA<br><br>District Judge William H. Alsup<br><br>**SOLEXA, INC.'S RESPONSES AND OBJECTIONS TO APPLERA CORPORATION - APPLIED BIOSYSTEMS GROUP'S SECOND SET OF INTERROGATORIES TO SOLEXA, INC. [NOS. 4-5]** |

PROPOUNDING PARTY:    Applera Corporation – Applied Biosystems Group

RESPONDING PARTY:    Solexa, Inc.

SET NUMBER:    Two

**SOLEXA'S RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES**

Pursuant to Fed. R. Civ. P. 33, Solexa, Inc. ("Solexa") responds to Applera Corporation - Applied Biosystems Group's Second Set of Interrogatories to Solexa, Inc. [Nos. 4-5] as follows:

**GENERAL OBJECTIONS**

1.  Solexa objects to each interrogatory, and to each definition and instruction, to the extent that it calls for the disclosure of information that is protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable law, rule, privilege, or immunity.

2.  Solexa objects to each interrogatory, and to each definition and instruction, to the extent that it calls for the disclosure of information that contains the confidential information of a third party, or the joint confidential information of Solexa and a third party, until Solexa has requested and received the consent of the affected third party to the disclosure of such information, or the matter has been resolved by a court of competent jurisdiction, or Solexa has otherwise exhausted all applicable procedures under any protective order entered in this case.

3.  Solexa objects to each interrogatory, and to each definition and instruction, to the extent that it imposes obligations beyond or inconsistent with the requirements of the Federal Rules of Civil Procedure, the local rules of the U.S. District Court for the Northern District of California, or orders entered by the Court in this case.

4.  Solexa objects to each interrogatory, and to each definition and instruction, to the extent that it seeks to combine in a single interrogatory what otherwise should be asked in separate interrogatories.

5.  Solexa objects to each interrogatory, and to each definition and instruction, to the extent that it seeks the disclosure of information not within Solexa's possession, custody, or control.

6.  With respect to responsive information that is protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other applicable

privilege or immunity, Solexa objects to listing on a privilege log, or otherwise identifying, privileged communications between Solexa and its counsel that occurred subsequent to the commencement of this litigation.

7. These responses are made solely for the purpose of this action. Each response is subject to all objections as to competence, relevance, materiality, propriety, inadmissibility, and any and all other objections and grounds that would require the exclusion of any statement herein if the questions were asked, or any statements contained herein were made by, a witness present and testifying in court, all of which objections and grounds are reserved and may be interposed at the time of trial.

8. Except for explicit facts admitted herein, no incidental or implied admissions are intended hereby. The fact that Solexa has answered any interrogatory herein should not be taken as an admission that Solexa accepts or admits the existence of any facts set forth or assumed by such interrogatory, or that such response constitutes admissible evidence. The fact that Solexa has answered part of, or all of, any question is not intended to be a waiver by Solexa of all or any part of any objection to any interrogatory herein..

**SOLEXA'S RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES**

# RESPONSES TO INTERROGATORIES

**Interrogatory No. 4:**

Describe in detail the complete factual basis for Your contention that the asserted claims of the Patents are not invalid and void based on AB's Preliminary Invalidity Contentions and the prior art references produced therewith pursuant to Patent Local Rule 3-4(b), including identification of all documents, facts, and other evidence or information upon which You may rely in support of Your contention, each person on whose testimony You may rely in support of Your contention, and the nature of that information and/or testimony.

**RESPONSE**

In addition to its General Objections, Solexa objects to this interrogatory as a premature and improper attempt to circumvent the Court-ordered schedule for the exchange of expert reports. Although this interrogatory uses the term "complete factual basis," it appears to seek a response that requires expert opinion testimony. Expert opinion witnesses, testimony, and documents on which Solexa may rely will be identified in accordance with the Court-ordered schedule for the exchange of expert reports. To the extent this interrogatory seeks only the identification of currently contemplated fact witnesses, testimony, and documents on which Solexa may rely, AB is referred to Solexa's Rule 26(a) Disclosure(s), which are incorporated herein by reference, to the references cited by AB in its Preliminary Invalidity Contentions, and to the prosecution histories of the patents-at-issue.

The asserted claims in the patents-at-issue are presumed valid, and AB bears the burden to overcome that presumption of validity by clear-and-convincing evidence, which it has not done.

The references identified in AB's Preliminary Invalidity Contentions as "Cantor I," "Cantor II," "Cantor III," "Canard," "Brenner," "Drmanac I," "Drmanac II," and "Martinelli" do not qualify as prior art under 35 U.S.C. § 102 for at least the following reasons.

Cantor I (WO 94/11530), which on its face suggests it was published on May 26, 1994, does not qualify as prior art under 35 U.S.C. §§ 102(a) because it was not published

"before the invention by the applicant."[1] Dr. Macevicz conceived the claimed inventions at least as early as May 26, 1994, the putative publication date of Cantor I. Cantor I does not qualify as prior art under 35 U.S.C. § 102(e) because an international application published by the World Intellectual Property Organization under the Patent Cooperation Treaty that was filed prior to November 29, 2000 cannot be relied on as prior art under 35 U.S.C. § 102(e).[2]

Cantor II (U.S. Patent No. 5,503,980), which states that it was filed on October 17, 1994 and issued on April 2, 1996, does not qualify as prior art under 35 U.S.C. §§ 102(a) or 102(e) because it was not filed or published "before the invention by the applicant."[3] Dr. Macevicz conceived the claimed inventions at least as early as October 17, 1994, the filing date of Cantor II.

Cantor III (U.S. Patent No. 6,007,987), which states that it was filed on October 16, 1996 and issued on December 28, 1999, does not qualify as prior art under 35 U.S.C. §§ 102(a), 102(b), or 102(e) because it was filed more than one year after the filing date of the '663 Application.

Canard (WO 94/23064), which on its face suggests it was published on October 13, 1994, does not qualify as prior art under 35 U.S.C. § 102(a) because it was not published "before the invention by the applicant."[4] Dr. Macevicz conceived the claimed inventions at least as early as October 13, 1994, the putative publication date of Canard. Canard does not qualify as prior art under 35 U.S.C. § 102(e) because an international application published by the World Intellectual Property Organization under the Patent Cooperation Treaty that was filed prior to November 29, 2000 cannot be relied on as prior art under 35 U.S.C. § 102(e).[5] Even under the current version of 35 U.S.C. § 102(e), a patent

---

[1] *See* 35 U.S.C. § 102(a).
[2] *See* M.P.E.P. § 706.02(a).
[3] *See* 35 U.S.C. §§ 102(a) and 102(e).
[4] 35 U.S.C. § 102(a).
[5] *See* M.P.E.P. § 706.02(a).

-4-

**SOLEXA'S RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES**

publication published under the Patent Cooperation Treaty must have been published in the English language, and Canard is a French-language publication.

Brenner (U.S. Patent No. 5,552,278), which states that it was filed on July 25, 1994 and issued on September 3, 1996, does not qualify as prior art under 35 U.S.C. §§ 102(a) or 102(e) because it was not filed or published "before the invention by the applicant."[6] Dr. Macevicz's '663 Application was filed on April 17, 1995, before the issue date of Brenner, and Dr. Macevicz conceived the claimed inventions at least as early as July 25, 1994, the filing date of Brenner.

Drmanac I (U.S. Patent No. 7,070,927), which states that it was filed on February 5, 2002 and issued on July 4, 2006, does not qualify as prior art under 35 U.S.C. §§ 102(a), 102(b), or 102(e) because it was filed more than six years after the filing date of the '663 Application.

Drmanac II (WO 95/09248), which on its face suggests it was filed on September 27, 1994 and that it was published on April 6, 1995, does not qualify as prior art under 35 U.S.C. §§ 102(a) because it was not published "before the invention by the applicant."[7] Dr. Macevicz conceived the claimed inventions at least as early as April 6, 1995, the putative publication date of Drmanac II. Drmanac II does not qualify as prior art under 35 U.S.C. § 102(e) because an international application published by the World Intellectual Property Organization under the Patent Cooperation Treaty that was filed prior to November 29, 2000 cannot be relied on as prior art under 35 U.S.C. § 102(e).[8] Drmanac II was filed on September 27, 1994, and is therefore unavailable as a prior art reference under 35 U.S.C. § 102(e).

Martinelli (U.S. Patent No. 5,800,994), which states that it was filed on July 24, 1996 and issued on September 1, 1998, does not qualify as prior art under 35 U.S.C. §§ 102(a), 102(b), or 102(e) because it was filed more than one year after the filing date of

---

[6] *See* 35 U.S.C. §§ 102(a) and 102(e).
[7] *See* 35 U.S.C. § 102(a).
[8] *See* M.P.E.P. § 706.02(a).

-5-

**SOLEXA'S RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES**

the '663 Application.

A number of the references cited in AB's Preliminary Invalidity Contentions were cited in the Macevicz patents (e.g., Brennan (U.S. Patent No. 5,403,708),[9] Tsien (WO 91/06678),[10] Cantor II (U.S. Patent No. 5,503,980),[11] and Canard (WO 94/23064)[12]), and were considered by the examiner during the prosecution of the Macevicz patents. "When the party asserting invalidity relies on references that were considered during examination or reexamination, that party 'bears the added burden of overcoming the deference that is due to a qualified government agency presumed to have done its job.'"[13]

As stated above, and pursuant to the Case Management Order entered in this case, Solexa's rebuttal expert report(s) regarding validity, to be served by June 13, 2008, will provide a detailed analysis of the prior-art references referred to in AB's Preliminary Invalidity Contentions, including why each reference cited as an anticipatory reference does not anticipate any of the claims-at-issue, and why the cited combinations of references did not render any of the claims-at-issue obvious as of the date(s) that Dr. Macevicz made his inventions, to the extent such issues are discussed in AB's expert report(s) regarding validity (due to be served by May 30, 2008).

Subject to and without waiving any of its objections, Solexa further responds that none of the references cited in AB's Preliminary Invalidity Contentions anticipated or rendered the asserted claims obvious, for at least the following reasons:

Landegren (U.S. Patent No. 4,988,617)

Landegren does not provide "a probe-target duplex comprising an initializing oligonucleotide probe hybridized to a target polynucleotide, said probe having an extendable probe terminus" as recited in claim 1 of the '341 patent. Landegren discusses a

---

[9] *See* '341 patent at p. 1.
[10] *See id.* at col. 10, lines 33-34.
[11] *See id.* at p. 1.
[12] *See id.* at col. 10, line 29.
[13] *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.,* 491 F.3d 1342, 1362 (Fed. Cir. 2007) (quoting *Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1560 (Fed. Cir. 1986)).

-6-

**SOLEXA'S RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES**

1  "target probe" and an "adjacent probe" which together hybridize onto a "test substance."[14]
2  The "target probe" and "adjacent probe" discussed in Landegren do not have "an
3  extendable probe terminus," and consequently, Landegren does not disclose "an
4  initializing oligonucleotide probe hybridized to a target polynucleotide, said probe having
5  an extendable probe terminus."

6      Landegren does not disclose "identifying, in the extended duplex, at least one
7  nucleotide in the target polynucleotide" because Landegren only identifies whether a
8  successful ligation has occurred after the ligated "target probe" and "adjacent probe" are
9  isolated.[15]

10      Landegren does not disclose "generating an extendable probe terminus on the
11  extended probe." Landegren does not disclose the use of probes that are capable of being
12  extended (*i.e.*, subject to an additional ligation step). AB's citation of claim 8 of
13  Landegren as disclosing "generating an extendable probe terminus" is unavailing. Claim 8
14  of Landegren, which depends on claim 1, merely recites using a new "target probe" and
15  "adjacent probe" to interrogate another position on a "test substance." Notably, step (d) in
16  claim 1 of Landegren, which is incorporated into claim 8 by dependency, recites
17  "separating said test substance and linked probe product," which necessarily means that
18  the "second oligonucleotide probe" recited in claim 8 is not being ligated to the "linked
19  probe product" generated in claim 1. Thus, Landegren does not disclose "generating an
20  extendable probe terminus on the extended probe."

21      Furthermore, as stated above, Landegren does not disclose "repeating steps (b), (c)
22  and (d) until a sequence of nucleotides in the target polynucleotide is determined." Step
23  (e) of claim 1 in the '341 patent recites repeating steps (b) ("ligating…"), (c)
24  ("identifying…") and (d) ("generating…") in sequential order. Landegren does not
25  disclose performing the recited steps in the order recited in claim 1, and does not disclose
26  the recited step of "repeating steps (b), (c) and (d) until a sequence of nucleotides in the

---
27  [14] *See* Fig. 1 of Landegren.
28  [15] *See* Fig. 1 of Landegren; col. 2, lines 2, lines 55-59.

-7-

**SOLEXA'S RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES**

target polynucleotide is determined."

With regard to claim 1 of the '597 patent, for the reasons stated above, Landegren does not disclose "extending an initializing oligonucleotide along the polynucleotide by ligating an oligonucleotide probe thereto to form an extended duplex." Also for the reasons stated above, Landegren does not disclose "identifying one or more nucleotides of the polynucleotide," and "repeating steps (a) and (b)" as recited in claim 1.

Each of the steps recited in claim 1 of the '597 patent must be performed in the order set forth in claim 1 of the '597 patent, and repeated in the order set forth in claim 1 (*i.e.*, "repeating steps (a) and (b)"). Landegren does not disclose a method comprising the steps recited in claim of the '597 patent performed in the order set forth in claim 1.

Whiteley (U.S. Patent No. 4,883,750)

Whiteley, like Landegren, does not disclose "identifying, in the extended duplex, at least one nucleotide in the target polynucleotide" because Whiteley only identifies whether a successful ligation has occurred after the ligated "contiguous probe" and "diagnostic probe" are "disassociated" from the target sequence, isolated, and then detected.[16]

Whiteley does not disclose "generating an extendable probe terminus on the extended probe." Whiteley does not disclose the use of probes that are capable of being extended (*i.e.*, subject to an additional ligation step). AB's citation of column 6, lines 58-59 of Whiteley is unavailing. That portion of Whiteley merely states that a "contiguous probe" and a "diagnostic probe" are contained in the kit, and one of the probes "is terminated in a manner that permits ligation to the other probe." This does not disclose probes that can be regenerated after a ligation step has taken place, and does not disclose "generating an extendable probe terminus."

Whiteley does not disclose "repeating steps (b), (c) and (d) until a sequence of nucleotides in the target polynucleotide is determined." The recited steps are performed in

---

[16] *See* Whiteley at col. 3, lines 54 – col. 4, line 5.

-8-

the order set forth in claim 1 of the '341 patent. Step (e) of claim 1 recites repeating steps (b) ("ligating…"), (c) ("identifying…") and (d) ("generating…"), in sequential order. Whiteley does not disclose performing the steps in the order recited in claim 1, and does not disclose "repeating steps (b), (c) and (d) until a sequence of nucleotides in the target polynucleotide is determined."

With regard to claim 1 of the '597 patent, for the reasons stated above, Whiteley does not disclose "extending an initializing oligonucleotide along the polynucleotide by ligating an oligonucleotide probe thereto to form an extended duplex." Also for the reasons stated above, Whiteley does not disclose "identifying one or more nucleotides of the polynucleotide," and "repeating steps (a) and (b)" as recited in claim 1.

Each of the steps recited in claim 1 of the '597 patent must be performed in the order recited in claim 1 of the '597 patent, and repeated in the order recited in claim 1 (i.e., "repeating steps (a) and (b)"). Whiteley does not disclose a method comprising the steps recited in claim of the '597 patent performed in the order recited in claim 1.

Martinelli, Drmanac I, and Drmanac II

AB cites Martinelli (U.S. Patent No. 5,800,994), Drmanac I (U.S. Patent No. 7,070,927), and Drmanac II (WO 95/09248) as anticipating claim 1 of the '597 patent. As noted above, these references do not qualify as prior art to the Macevicz patents, which each enjoy the priority benefit of the '663 Application (filed on April 17, 1995).

Magg *et al.* (*Tetrahedron Letters*, 33(48):7319-22 (1992))

Magg does not disclose a species that anticipates the genus recited in claim 1 of the '119 patent. The oligonucleotide structure recited in claim 1 includes a group "Bt*" that is "a labeled, non-extendable chain-terminating moiety." No such moiety is disclosed as part of the structures discussed in Magg.

AB cites a number of references in combination with Landegren, Whiteley, and/or Brennan (U.S. Patent No. 5,403,708) as part of its argument that the asserted claims are invalid for obviousness. However, AB's arguments on obviousness are conclusory and do

-9-

**SOLEXA'S RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES**

not address the knowledge of a person of ordinary skill in the art at the time Dr. Macevicz made his inventions, whether one of ordinary skill in the art would have been motivated to combine the cited references, and even the nature of the relevant art. Consequently, AB's Preliminary Invalidity Contentions fail to state AB's position with enough specificity to allow Solexa to provide a meaningful response.

However, as stated above, Landegren and Whiteley do not disclose numerous elements of the methods claimed in the '341 and '597 patents. And, as will be more fully set forth in Solexa's rebuttal expert report(s), at the time Dr. Macevicz made his inventions, one of ordinary skill in the art would not have been motivated to combine either Landegren or Whiteley with any of the references cited in AB's Preliminary Invalidity Contentions in a manner that would have rendered the asserted claims obvious.

With regard to claim 1 of the '119 patent, AB cites a single reference, Magg, and does not offer any other reference to be combined with Magg. Solexa interprets AB's failure to offer a second reference for use in an obvious analysis as a waiver of any argument at trial (or in AB's expert report(s)) as to the obviousness of claim 1 of the '119 patent based on any such combination.

To the extent that AB has alleged in its Preliminary Invalidity Contentions that any claim-at-issue is invalid due to indefiniteness, Solexa believes that such issues were (expressly or implicitly) addressed and resolved in the parties' briefing and oral arguments regarding claim construction and in the Court's Claim Construction Order, and Solexa incorporates its claim construction briefs and oral arguments and the Court's Claim Construction Order[17] herein by reference. In any event, support in the specification to rebut AB's indefiniteness arguments can be found at, *e.g.*, Col. 4, line 35 - Col. 5, line 12; Col. 6, lines 8-33; Col. 11, line 35-39; Col. 3, lines 7-9; Col. 5, lines 10-12; Col. 6, lines 8-10; Col. 7, lines 17-41; Col. 11, lines 35-39; Col. 14, lines 12-40; Examples 1 & 2, including Col. 14, lines 55-65; Col. 16, lines 28-45; Col. 18, lines 1-10; Col. 6, lines 6-8;

---

[17] Dkt. Nos. 82, 93, and 100.

-10-

**SOLEXA'S RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES**

Col. 8, lines 56-61; Col. 9, lines 32-47; Col. 10, lines 58-63; Col. 11, lines 9-15; Col. 11, lines 39-43; Col. 14, lines 62-65; Col. 16, lines 40-44; and Col. 18, lines 13-16.

In its Preliminary Invalidity Contentions, AB states that the claims of the '341 and '597 patents are invalid due to lack of enablement.[18] In regard to the conclusory statements concerning non-enablement of the claims in the '341 patent, Solexa disputes AB's contention that step (e) requires that all extension oligonucleotides must be ligated to the first initializing oligonucleotide, for at least the reasons stated in Solexa's briefs regarding claim construction (which are incorporated herein by reference). Solexa also disputes AB's implicit contention that all enabling support for a claim must be present in the patent specification itself.

In regard to AB's conclusory statements concerning non-enablement of the claims in the '597 patent, Solexa disputes AB's contentions that the specification's disclosure requires that multiple oligonucleotides must be ligated to the first initializing oligonucleotide probe, that step (c) of the claims requires that additional oligonucleotides probes must be ligated to the first initializing oligonucleotide probe, and that the claims do not require that the extended duplex must be extended by one or more additional oligonucleotides probes.

As stated above, this interrogatory seeks information that is properly the subject of expert opinion testimony. To the extent that AB's expert report(s) regarding validity, to be served on May 30, 2008, provide a detailed discussion meant to support the conclusory statements in AB's Preliminary Invalidity Contentions regarding non-enablement of the claims of the '341 and/or '597 patents, Solexa's rebuttal expert report(s) regarding validity, to be served by June 13, 2008, will provide a detailed response thereto.

In its Preliminary Invalidity Contentions, AB states that "[t]he '597 Patent . . . fails to convey to one of ordinary skill in the art that the named inventors [sic] were [sic] in possession of the claimed subject matter at the time the specification was filed."[19] AB

---
[18] AB's Preliminary Invalidity Contentions at 12-13.
[19] AB's Preliminary Invalidity Contentions at 13.

-11-

SOLEXA'S RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

does not provide any factual or legal grounds to support this wholly conclusory statement. Consequently, Solexa is not obligated to (and indeed cannot) respond to this statement in response to this interrogatory.

**Interrogatory No. 5:**

Describe in detail the complete factual basis for Your contention that the Patents are not unenforceable based on the inequitable conduct allegations made by AB in this litigation, including but not limited to the inequitable conduct allegations in AB's complaint, reply to Solexa's counterclaims, and Preliminary Invalidity Contentions, including identification of all documents, facts, and other evidence or information upon which You may rely in support of Your contention, each person on whose testimony You may rely in support of Your contention, and the nature of that information and/or testimony.

**RESPONSE**

In addition to its General Objections, Solexa objects to this interrogatory to the extent it is seeking "factual" information which is properly the subject of expert testimony, as a premature and improper attempt to circumvent the Court-ordered schedule for the exchange of expert reports. In accordance with the Case Management Order entered in this case, AB will provide its expert report(s) regarding validity and enforceability by May 30, 2008. Solexa will provide its rebuttal expert report(s) regarding validity and enforceability by June 13, 2008. To the extent this interrogatory seeks the identification of currently contemplated fact witnesses, testimony, and documents, AB is referred to Solexa's Rule 26(a) Disclosures, which are incorporated herein by reference.

Solexa objects to this request as overbroad and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks responses to any and all "inequitable conduct allegations made by AB in this litigation." Inequitable conduct allegations are grounded in fraud, and the allegations of fraud underlying an inequitable conduct allegation must be pled with particularity in accordance with Rule 9(b).[20] Consequently, the allegations in AB's First Amended Complaint and in AB's Reply to Solexa's Counterclaims to First Amended Complaint are the only triable inequitable

---

[20] *See* Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (allegations of fraud must be pled with particularity).

-12-

**SOLEXA'S RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES**

conduct allegations in this case.[21] Accordingly, and without waiving any objections, Solexa's response to this interrogatory addresses only the inequitable conduct allegations set forth in AB's First Amended Complaint and in AB's Reply to Solexa's Counterclaims to First Amended Complaint.[22]

In order to prove that the Macevicz patents are unenforceable due to inequitable conduct, AB must show that Dr. Macevicz or his legal representative, with intent to mislead or deceive the Patent Office, failed to disclose to the Patent Office non-cumulative information known to Dr. Macevicz or his legal representative to be material to then-pending claims, or submitted materially false information to the Patent Office in arguing for the patentability of a claim.[23] AB must prove threshold levels of both materiality and intent by clear and convincing evidence.[24]

AB's First Amended Complaint and AB's Reply to Solexa's Counterclaims to First Amended Complaint identified only two bases on which AB alleges that the Macevicz patents are unenforceable for inequitable conduct: (1) failure to disclose U.S. Patent No. 4,988,617 ("Landegren")[25]; and (2) failure to disclose U.S. Patent No. 4,883,750 ("Whiteley").[26]

Landegren and Whiteley were not material to the prosecution of the claims pending at any given time because neither reference discloses methods of sequencing nucleic acids as recited in the claims of the '341 and '597 patents, or compositions recited in the claims of the '119 patent, nor renders such methods or compositions obvious given the

---

[21] Dkt. No. 44-2 at ¶¶ 66-69 and Dkt. No. 70 at ¶¶ 44-47.

[22] In the event that AB were to be granted leave to amend its First Amended Complaint to include additional inequitable conduct allegations and does so, Solexa will supplement its response to this interrogatory to address the new allegations of inequitable conduct.

[23] *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1330-31 (Fed. Cir. 2004); 37 C.F.R. § 1.56.

[24] *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995); *J.P. Stevens & Co. v. Lex Tex, Ltd.*, 747 F.2d 1553, 1559 (Fed. Cir. 1984).

[25] Dkt. No. 70 at ¶ 45.

[26] *Id.*

-13-

SOLEXA'S RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

differences between such methods and compositions and the assays and compositions discussed in Landegren and Whiteley. As stated above, this interrogatory seeks information that is properly the subject of expert opinion testimony. Solexa's rebuttal expert report(s) regarding validity and enforceability, to be served by June 13, 2008, will provide a detailed analysis of Landegren and Whiteley, including why neither reference was material to the claims pending at any given time.

An otherwise material reference is not material for the purposes of inequitable conduct if it is merely cumulative of information already before the Patent Office.[27] In addition to the references cited in the specification of the Macevicz patents and during prosecution thereof, the patent examiner conducted a search for prior art using Chemical Abstracts Service (Columbus, OH), and those search results were reviewed and considered by the examiner.[28] The information in Landegren and Whiteley was not material to any then-pending claim because it was cumulative of the information in the references considered by the examiner during prosecution of the Macevicz patents. As stated above, this interrogatory seeks information that is properly the subject of expert opinion testimony. Solexa's rebuttal expert report(s) regarding validity and enforceability, to be served by June 13, 2008, will provide a detailed analysis of the art considered by the examiner during the prosecution of the Macevicz patents, including why the information in Landegren and Whiteley was cumulative of the information disclosed in those references.

Intent to deceive cannot be inferred solely from the fact that information was not disclosed—there must be a factual basis for a finding of deceptive intent.[29] Nor can intent to deceive be inferred from materiality, which is "a separate and essential component of

---

[27] *Molins PLC*, 48 F.3d at 1179 (citing *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1582 (Fed. Cir. 1991)).

[28] *See* ILL000352-606.

[29] *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996) (quoting *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867 (Fed. Cir. 1988).

-14-

**SOLEXA'S RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES**

1  inequitable conduct."[30] The threshold levels of materiality and intent must be shown
2  before a Court can balance materiality and intent "with a greater showing of one factor
3  allowing a lesser showing of the other."[31] AB has not offered any factual basis to support
4  its allegation that Dr. Macevicz intended to deceive the Patent Office by not disclosing
5  Landegren and/or Whiteley. If and when it does so, Solexa may supplement its response
6  to this interrogatory. As stated above, this interrogatory seeks information that is properly
7  the subject of expert opinion testimony. Solexa's rebuttal expert report(s) regarding
8  enforceability, to be served by June 13, 2008, will provide a detailed analysis of why AB
9  has failed to establish intent to deceive or mislead the Patent Office.

DATED: April 28, 2008

_/s/ John Platt_____
KEVIN M. FLOWERS (admitted *pro hac vice*)
THOMAS I. ROSS (admitted *pro hac vice*)
JEFFREY H. DEAN (admitted *pro hac vice*)
JOHN R. LABBE (admitted *pro hac vice*)
CULLEN N. PENDLETON (admitted *pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606-6357
(312) 474-6300 (telephone)
(312) 474-0448 (facsimile)
E-Mail: kflowers@marshallip.com
E-Mail: tross@marshallip.com
E-Mail: jdean@marshallip.com
E-Mail: jlabbe@marshallip.com
E-Mail: cpendleton@marshallip.com

Counsel for Defendants
ILLUMINA, INC., SOLEXA, INC.,
and STEPHEN C. MACEVICZ

---

[30] *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 552 (Fed. Cir.1990); *see also M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*, 439 F.3d 1335, 1340-41 (Fed. Cir. 2006).

[31] *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 693 (Fed. Cir. 2001).

-15-

**SOLEXA'S RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES**

# PROOF OF SERVICE

I am an attorney, and on April 28, 2008, I caused

**SOLEXA, INC.'S RESPONSES AND OBJECTIONS TO APPLERA CORPORATION - APPLIED BIOSYSTEMS GROUP'S SECOND SET OF INTERROGATORIES TO SOLEXA, INC. [NOS. 4-5]**

to be served via electronic mail by electronically mailing a true and correct copy through Marshall, Gerstein & Borun LLP's electronic mail system to the e-mail addresses set forth below, and via First Class U.S. Mail, postage prepaid, deposited at 233 South Wacker Drive, Chicago, Illinois upon:

**COUNSEL FOR PLAINTIFF:**

BRYAN WILSON
DARA TABESH
ERIC C. PAI
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304-1018
E-Mail: BWilson@mofo.com
E-Mail: DTabesh@mofo.com
E-Mail: EPai@mofo.com

DAVID C. DOYLE
STEVEN E. COMER
BRIAN M. KRAMER
ANDERS T. AANNESTAD
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130-2040
E-Mail: DDoyle@mofo.com
E-Mail: SComer@mofo.com
E-Mail: BMKramer@mofo.com
E-Mail: AAannestad@mofo.com

KURTIS MacFERRIN
APPLERA CORPORATION –
  APPLIED BIOSYSTEMS GROUP
850 Lincoln Centre Drive
Foster City, CA 94404
E-Mail: Kurtis.MacFerrin@appliedbiosystems.com

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Chicago, Illinois, this 28th day of April, 2008.

_____
Mark H. Izraelewicz