BRYAN WILSON (CA SBN 138842)
ERIC C. PAI (CA SBN 247604)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792
E-Mail: BWilson@mofo.com; EPai@mofo.com

DAVID C. DOYLE (CA SBN 70690)
STEVEN E. COMER (CA SBN 154384)
BRIAN M. KRAMER (CA SBN 212107)
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, California 92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125
E-Mail: DDoyle@mofo.com; SComer@mofo.com;
BMKramer@mofo.com

Attorneys for Plaintiff
APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ILLUMINA, INC., a Delaware corporation, SOLEXA, INC., a Delaware corporation, and STEPHEN C. MACEVICZ, an individual,<br><br>Defendants. | Case No.   C07 02845 WHA<br><br>**REPLY IN SUPPORT OF APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT OF NONINFRINGEMENT OF '119 PATENT**<br><br>Trial Date: September 29, 2008<br>Time:      7:30 a.m.<br>Place:     Courtroom 9, 19th Floor<br>Judge:     William H. Alsup |

## I. INTRODUCTION

Whether the new *Carnegie Mellon* decision is a "material difference in fact or law," a "change of law," or merely a remarkably on point case explaining the legal limitations on the doctrine of equivalents, the Court may decide the limitations on the doctrine of equivalents now. The Local Rule for motions for reconsideration (Civil L.R. 7-9) cross references Federal Rule of Civil Procedure 54(b), which notes that all non-final decisions (*e.g.*, an order denying summary judgment) "may be revised at any time before the entry of a judgment. . . ." Fed. R. Civ. P. 54(b). The Supreme Court has expressly urged district courts to decide "the various legal limitations on the application of the doctrine of equivalents" before sending a case to a jury:

> Where the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment. If there has been a reluctance to do so by some courts due to unfamiliarity with the subject matter, we are confident that the Federal Circuit can remedy the problem. Of course, the various legal limitations on the application of the doctrine of equivalents are to be determined by the court, either on a pretrial motion for partial summary judgment or on a motion for judgment as a matter of law at the close of the evidence and after the jury verdict. Thus, under the particular facts of a case, if prosecution history estoppel would apply or if a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further material issue for the jury to resolve. . . .

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997) (citations omitted). AB's motion asks this Court, in light of the clarity provided by *Carnegie Mellon*, to apply legal limitations on the doctrine of equivalents.

Solexa cites no authority precluding the Court from addressing this issue. The Court denied without prejudice AB's motion for summary judgment under the doctrine of equivalents in part because Federal Circuit law was unclear. (Dckt. No. 232 at 20.) *Carnegie Mellon* clarifies how the Court should limit the doctrine of equivalents in this analogous case; and it confirms that a trial is not necessary to recognize that Solexa's proposed range of equivalents is foreclosed.

## II. THE FEDERAL CIRCUIT'S DECISION TO LIMIT THE DOCTRINE OF EQUIVALENTS IS BASED ON THE CLAIM LANGUAGE.

The Federal Circuit's decision in *Carnegie Mellon* establishes that when the patentee chooses to limit a claim to one, specific species, he cannot argue under the doctrine of equivalents that the claim extends to a different species. The Federal Circuit held that because the patentee in that case specifically chose to limit claim 4 to a plasmid in which the bacterial source is *E. coli* it "cannot now argue that any bacterial source, including *Taq*, would infringe that claim."

### A. Solexa's Sole Argument is that the Federal Circuit's Decision to Limit Equivalents Depends on its Invalidity Ruling on a Different Claim.

Solexa argues that the Federal Circuit did not base its decision on the claim language. Solexa's non-sequitur argument is that the Federal Circuit had already held that claim 1, which claimed a broader class, was invalid for lack of written description, and "that is not the case here." Solexa suggests that the Federal Circuit's decision to limit the range of equivalents depends on its decision on written description. The Federal Circuit, however, said no such thing. The "written description" section of the Federal Circuit's opinion addresses claims 1, 2, 3, and 23 of the '745 patent. *Carnegie Mellon*, slip op. at 13. The "noninfringement" section addresses the claims that were not at issue in the "written description" section – claims 4, 5, and 7 of the '745 patent – which were not challenged as lacking written description. *Id.* at 22. The written description holding had no bearing on the noninfringement analysis.

The Federal Circuit's discussion of noninfringement based on claim vitiation refers only to the claim language. It said that claim 1 of the '745 patent broadly claimed a plasmid containing DNA that codes for polymerase where that DNA is derived from any bacterial source ("wherein said DNA coding sequence is derived from <u>a source that encodes a bacterial DNA Polymerase</u>"). *Carnegie Mellon*, slip op. at 22 (emphasis added by Federal Circuit). It then said that the claim at issue, dependent claim 4, more narrowly claimed a plasmid containing DNA that codes for polymerase where that DNA is derived from one specific bacterial source, *E. coli* ("wherein the bacterial host system and <u>the bacterial source are each *E. coli*</u>"). *Id.* (emphasis added by Federal Circuit). It held that because the patentee chose to limit claim 4 to a plasmid

where the bacterial source is *E. coli* it "cannot now argue that any bacterial source, including *Taq*, would infringe that claim." *Id*. at 24.  The Federal Circuit's decision was plainly based on the patentee's choice of claim language.

Nowhere does the Federal Circuit's discussion of vitiation mention, let alone rely on, its ruling on written description.  *See id*. at 22-24.  Solexa cites no rationale or authority for its illogical proposition that would result – that the range of equivalents available under claim 4 would be expanded if claim 1 had an adequate written description.

      **B.**    **Solexa Does Not Dispute the Application of *Carnegie Mellon* to this Case.**

Other than its illogical argument that the Federal Circuit's decision on vitiation derived from its ruling on written description, Solexa does not respond to AB's analysis of that case or its application here.

Like the patentee in *Carnegie Mellon*, Macevicz specifically chose to limit claim 1 of the '119 patent to a single linkage.  The deliberateness of that choice is established by the claims in his related, and earlier-issued '341 patent.  In claim 7 of the '341 patent, Macevicz broadly claimed the use of a probe containing any "chemically scissile internucleosidic linkage." ('341 patent, Comer MSJ Decl. Ex. A, Dckt. No. 212-2 at col. 22:44-45.)  In claim 8 of the '341 patent, he expressly limited the claim to one specific linkage: "wherein said chemically scissile internucleosidic linkage is a phosphoramidate." (*Id*. at col. 22:46-47.)  In the claim at issue, claim 1 of the '119 patent, he chose the narrower limitation, specifying the chemical formula for phosphoramidate.  ('119 patent, Comer MSJ Decl. Ex. B, Dckt. No. 212-3 at col. 21:31.)  Thus, Solexa cannot now argue that any chemically scissile internucleosidic linkage, including phosphorothiolate, would infringe that claim.[1]  As in *Carnegie Mellon*, a finding that

---

[1] Solexa's expert, Dr. Backman, argued that the claim should be expanded under the doctrine of equivalents to "any chemically scissile internucleosidic linkage." (Backman Depo., Dckt. No. 215-4 at 37:4-8 ("Q.  Do you think that the claim covers any chemically scissile internucleosidic linkage?  A.  That's a question of law.  But in my technical opinion, it would look to me that it would.").)

Reply ISO Motion for Recon. of  MSJ Re Noninfringement of '119 Patent    2
Case No. C07 02845 WHA
sd-442163

phosphorothiolate linkage is the equivalent of a phosphoramidate linkage would essentially render the phosphoramidate claim limitation meaningless, and would thus vitiate that limitation.

Also, just as the court in *Carnegie Mellon* did not consider the differences between polymerase derived from *E. coli* and polymerase derived from *Taq* (*id*. at 24 n.4), this Court need not consider the differences between the claimed linkage and the accused linkage.  Solexa did not even address this crucial point.  Its failure to address this argument is a waiver.  *See* Summary Judgment Order, Dckt. No. 232 at 19 n.6 (citing *USA Petroleum Co. v. Atlantic Richfield Co.*, 13 F.3d 1276, 1284 (9th Cir. 2004) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.") (quoting *Vaughner v. Pulito*, 804 F.2d 873, 878 n.2 (5th Cir. 1986))).

### III.  CONCLUSION

There is no doctrine of equivalents issue for the jury in this case because the legal limitations on the reach of the doctrine of equivalents, which must be decided by the Court, preclude it.  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997).

Dated: September 19, 2008                MORRISON & FOERSTER LLP

By:  _____/s/_____
  Steven E. Comer

Attorneys for Plaintiff
APPLERA CORPORATION -
APPLIED BIOSYSTEMS GROUP

Reply ISO Motion for Recon. of MSJ Re Noninfringement of '119 Patent
Case No. C07 02845 WHA
sd-442163

3