# United States Court of Appeals for the Federal Circuit

2009-1253, -1260

APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP,

Plaintiff-Appellant,

v.

ILLUMINA, INC. and STEPHEN C. MACEVICZ,

Defendants-Appellees,

and

SOLEXA, INC.,

Defendant-Cross Appellant.

# Judgment

ON APPEAL from the    United States District Court for the Northern District of California

in CASE NO(S).    07-CV-02845 WHA

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

### AFFIRMED

ENTERED BY ORDER OF THE COURT

DATED MAR 2 5 2010

Jan Horbaly, Clerk

ISSUED AS A MANDATE: MAY 0 3 2010

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

By _____ Date: 5/3/10

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1253, -1260

APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP,

Plaintiff-Appellant,

v.

ILLUMINA, INC. and STEPHEN C. MACEVICZ,

Defendants-Appellees,

and

SOLEXA, INC.,

Defendant-Cross Appellant.

Edward R. Reines, Weil, Gotshal & Manges LLP, of Redwood Shores, California, argued for plaintiff-appellant. With him on the brief was Sonal N. Mehta. Of counsel on the brief was Kurtis D. MacFerrin, Life Technologies Corporation, of Foster City, California.

Kevin M. Flowers, Marshall, Gerstein & Borun LLP, of Chicago, Illinois, argued for defendants-appellees and defendant-cross appellant. With him on the brief were Thomas I. Ross, Mark H. Izraelewicz, John R. Labbe, and Cullen N. Pendleton.

Appealed from: United States District Court for the Northern District of California

Judge William H. Alsup

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1253, -1260

APPLERA CORPORATION – APPLIED BIOSYSTEMS GROUP,

Plaintiff-Appellant,

v.

ILLUMINA, INC. and STEPHEN C. MACEVICZ,

Defendants-Appellees,

and

SOLEXA, INC.,

Defendant-Cross Appellant.

Appeals from the United States District Court for the Northern District of California in case no. 07-CV-02845, Judge William H. Alsup.

DECIDED: March 25, 2010

Before LOURIE, GAJARSA, and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Applera Corp. – Applied Biosystems Group (Applera) appeals the United States District Court for the Northern District of California's denial of its motions for judgment as a matter of law or, alternatively, for a new trial on ownership of U.S. Patent Nos. 5,740,341 (the '341 patent), 5,969,119 (the '119 patent), and 6,306,597 (the '597 patent). Applera also appeals the district court's order denying its motions for judgment as a matter of law or, alternatively, for a new trial on validity of the '119

patent. Solexa, Inc., the assignee of the patents-in-suit, cross-appeals the court's judgment, pursuant to summary judgment, that certain of Applera's accused products did not infringe claim 1 of the '597 patent, and the court's order, entered pursuant to stipulation by the parties, that under the court's claim construction claim 1 of the '597 patent was invalid. For the reasons discussed below, we affirm.

BACKGROUND

The district court set forth the background of this case and described the technology at issue in Applera Corp. – Applied Biosystems Group v. Illumina, Inc., No. 07-2845, 2008 WL 501391, at **1-3 (N.D. Cal. Feb. 21, 2008). We therefore confine ourselves to those facts relevant to the resolution of this appeal.

Dr. Stephen Macevicz, the sole inventor listed on the patents-in-suit, is a patent attorney with a Ph.D. in biophysics. While working as in-house counsel at DNAX Research Institute, Dr. Macevicz developed a method for sequencing DNA that uses the hybridization of mixed oligonucleotide probes to target strands of DNA. He received U.S. Patent No. 5,002,867 (the '867 patent) on this invention in 1991.

In 1992, Dr. Macevicz began working as in-house patent counsel at Applera. When he joined Applera, Dr. Macevicz signed an Employee Invention Agreement (EIA) requiring him to assign to Applera any inventions that he developed during his employment at Applera unless certain conditions were met. At that time, he offered to sell Applera his '867 patent, but Applera declined the offer. Ownership rights to the '867 patent are not at issue here.

In 1993, Dr. Macevicz agreed to prosecute a patent application for Dr. Sydney Brenner, a subsequent Nobel Prize winner not affiliated with Applera. At that time,

Dr. Macevicz was still employed by Applera, however, Applera permitted its patent attorneys to take on outside work. Dr. Macevicz prosecuted Dr. Brenner's patent application on his own time, not as part of his responsibilities for Applera. Dr. Brenner's invention related to a new method of sequencing DNA based on repeated rounds of ligation and cleavage of oligonucleotide probes. See U.S. Patent No. 5,552,278 ("DNA Sequencing by Stepwise Ligation and Cleavage").

In 1994, while continuing to work for Applera, Dr. Macevicz developed a method of sequencing DNA that, similar to Dr. Brenner's method, used repeated rounds of ligation and cleavage of oligonucleotide probes. Dr. Macevicz described his inventions in a personal laboratory notebook and used his home computer to prepare a patent application. This application eventually led to the patents-in-suit. Dr. Macevicz did not tell Applera about his inventions or his patent application.

In 1995, Dr. Macevicz left Applera and joined Lynx Therapeutics (Solexa)[1] as Vice President of Intellectual Property. Solexa was interested in developing Dr. Brenner's ligation-and-cleavage DNA sequencing technique and hired Dr. Macevicz in part because of his role prosecuting Dr. Brenner's patent. Solexa acquired Dr. Brenner's patent as well as the patents-in-suit. Solexa approached Applera about the opportunity to develop a product based on Dr. Brenner's ligation-and-cleavage technology. At that time, Applera marketed a DNA analyzer based on "Sanger" sequencing technology—technology developed in the 1970s. Applera declined the

---

[1] In 2005, Lynx Therapeutics acquired Solexa, Inc. and the company became known as Solexa. In 2007, Illumina acquired Solexa. For simplicity, Lynx and Illumina are referred to herein as Solexa.

opportunity to develop Dr. Brenner's technology, reasoning that it was "far too expensive" and "complex" and thus not a "viable commercial product" for Applera.

In 2006, Applera acquired Agencourt Personal Genomics (Agencourt), a company that developed a ligation-and-cleavage type next-generation DNA sequencing technology. Applera then developed its SOLiD™ System DNA sequencing instruments, which are the focus of Solexa's infringement contentions.

Applera filed the present declaratory judgment action against Dr. Macevicz and Solexa, raising issues of ownership, noninfringement, and invalidity of the patents-in-suit. The court and the parties narrowed the issues eventually presented to the jury. See, e.g., Applera, 2008 WL 501391 (construing claim terms); Applera Corp. – Applied Biosystems Group v. Illumina, Inc., No. 07-2845 (N.D. Cal. Aug. 22, 2008) (granting summary judgment that certain of Applera's products did not infringe the '341 and '597 patents); Joint Stipulation and Order Regarding Infringement and Invalidity of the '597 Patent, Applera, No. 07-2845, D.I. 402 (N.D. Cal. filed Jan. 26, 2009). The court conducted a two-phase jury trial. In Phase I, the jury returned a verdict for Dr. Macevicz and Solexa on patent ownership. In Phase II, the jury determined that claim 1 of the '119 patent was not invalid for obviousness but that it was not infringed. The court denied the parties' post-trial motions challenging the jury verdict.

Applera appeals with respect to ownership and the validity of the '119 patent. Solexa cross-appeals the court's order concerning invalidity and its judgment of partial noninfringement of the '597 patent. We have jurisdiction pursuant to 28 U.S.C. § 1295(a).

## DISCUSSION

We apply the law of the regional circuit when reviewing the denial of a motion for JMOL or for a new trial. Z4 Techs., Inc. v. Microsoft Corp., 507 F.3d 1340, 1346-47 (Fed. Cir. 2007). "In the Ninth Circuit, the court of appeals reviews a district court's denial of a motion for JMOL de novo. The test is whether the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury. A jury's verdict must be upheld if supported by substantial evidence." Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 563 F.3d 1358, 1370 (Fed. Cir. 2009) (internal citations omitted). "In the Ninth Circuit, the denial of a motion for a new trial is reviewed for an abuse of discretion." Id. at 1371.

### I. Ownership

Applera asserts that the jury improperly determined that Dr. Macevicz could keep his inventions under his employment contract, the EIA. The EIA required Dr. Macevicz to assign to Applera any patent rights for inventions developed during his employment at Applera unless:

(1) the invention was developed entirely on his own time;

(2) "no equipment, supplies, facility, or trade secret of the Company was used in its development;" and

(3) "(i) it does not relate to the business or actual or demonstrably anticipated research or development of the Company, or (ii) it does not result from any work performed by [him] for the Company."

Following trial, the jury indicated by special verdict that Dr. Macevicz's inventions meet these three exception criteria.

Applera moved for JMOL or, in the alternative, for a new trial. The district court concluded that ample evidence supported the jury's verdict and noted that

Applera presented inconsistent trial themes. The court further determined that the jury's verdict was not so far against the weight of the evidence as to warrant a new trial. The court noted that it allowed Applera to put in undisclosed evidence and to pursue a last-minute theory based on Dr. Macevicz's notebook and "the supposed filching of company files." Applera Corp. – Applied Biosystems Group v. Illumina, Inc., No. 07-2845, slip op. at 4 (N.D. Cal. Mar. 6, 2009) (denial of JMOL). It concluded that "[h]aving lost fair and square, the losing side must simply accept the jury's verdict and move on." Id. at 4. Thus, the district court denied Applera's motions.

We agree with the district court that substantial evidence supports the jury's determination that Dr. Macevicz's inventions meet all three exception criteria. The first criterion is not in dispute; Dr. Macevicz offered unrefuted testimony that he made his invention at home on his own time.

The second criterion concerns whether Dr. Macevicz used any Applera equipment, supplies, facility, or trade secret in the development of his inventions. Dr. Macevicz's inventions existed only on paper—he did not perform any laboratory work, and he detailed his inventions in a laboratory notebook that he purchased himself. Thus, the only dispute concerns whether Dr. Macevicz used any of Applera's trade secrets. Applera points out that in his role as a patent attorney at Applera, Dr. Macevicz learned of a confidential ligation reaction developed by Dr. Steven Fung, an Applera scientist, and Dr. Macevicz referred to Dr. Fung's ligation reaction in his notebook. But Dr. Macevicz's patents do not disclose or rely on Dr. Fung's reaction. And Dr. Macevicz explained to the jury that Dr. Fung's ligation

reaction was not part of his inventions; it merely represented one way to carry out his inventions. His notebook also describes an additional (nonconfidential) method of making a phosphoramidate linkage. When asked what Dr. Fung's work on phosphoramidate formation had to do with his conception, Dr. Macevicz testified: "It didn't have anything to do with the conception. The conception was the cyclical reactions. The two examples on the page [showing two ways to carry out ligation] are just two ways to carry out the concept." Dr. Macevicz further testified that his inventions originated from his earlier work on sequencing by hybridization and ideas that he obtained working on Dr. Brenner's patent application—not because of any work he performed at Applera. In light of Dr. Macevicz's testimony, we conclude that substantial evidence supports the jury's determination that Dr. Macevicz's inventions met the second criterion of the EIA.

The third criterion focuses on whether Dr. Macevicz's inventions (1) relate to Applera's business or (2) result from work performed by Dr. Macevicz for Applera. Dr. Macevicz argues that the plain language of the EIA requires that his inventions satisfy only one of these two criteria. Applera argues that Dr. Macevicz's inventions must satisfy both criteria, citing Cubic Corp. v. Marty, 185 Cal. App. 3d 438 (1986), for support. Contract interpretation is a matter of state law, Regents of the Univ. of N. M. v. Knight, 321 F.3d 1111, 1118 (Fed. Cir. 2003), that we review de novo, Republic Sav. Bank, F.S.B. v. United States, 584 F.3d 1369, 1373 (Fed. Cir. 2009).

In 1986, the California Court of Appeal construed a similar provision in § 2870 of the California Labor Code. Cubic, 185 Cal. App. 3d 438. The then-existing text of § 2870 read:

> Any provision in an employment agreement which provides that an employee shall assign or offer to assign any of his or her rights in an invention to his or her employer shall not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and which was developed entirely on the employee's own time, and
>
> (a) which does not relate
>
> (1) to the business of the employer or
>
> (2) to the employer's actual or demonstrably anticipated research or development, or
>
> (b) which does not result from any work performed by the employee for the employer.
>
> Any provision which purports to apply to such an invention is to that extent against the public policy of this state and is to that extent void and unenforceable.

Cal. Lab. Code § 2870 (West 1979). In Cubic, the appellant argued that where the other conditions of the statute were met, he need only satisfy condition (a) or (b)— but not both—to render the assignment provision unenforceable. Cubic, 185 Cal. App. 3d at 452. The court disagreed. It reasoned that under the appellant's reading of the statute, "the language relating to the scope of the employer's business becomes irrelevant; so long as the invention did not result from work the employee performed for the employer (and § 2870's other conditions are met), the invention belongs to the employee, the scope of the employer's business being irrelevant." Id. Thus, the court concluded that unless both condition (a) and (b) were met, § 2870 would not render the agreement unenforceable.[2] Id.

Applera argues that we should construe the EIA to require that Dr. Macevicz satisfy both conditions because it "availed itself of precisely the rights contemplated

---

[2] Notably, the California legislature amended § 2870 in 1986 following the Cubic decision. The statute now clearly requires that an invention meet both criteria to render an agreement unenforceable. Cal. Lab. Code § 2870 (West 1986).

2009-1253, -1260                     8

by the California Labor Code." As an initial matter, we note that § 2870 does not confer any rights on employers—it protects employees by rendering assignment agreements unenforceable to the extent they exceed permissible limits. Moreover, the assignment provision of the EIA does not incorporate § 2870 by reference. Tr. of Oral Arg. at 3:32-40, Applera, No. 09-1253, -1260 (Fed. Cir. Feb. 2, 2010). Thus, Applera did not "avail itself" of any rights envisioned by this statute.

We are not persuaded that the California Supreme Court would construe the EIA contrary to its plain language. Under the plain language of the EIA, to retain his invention Dr. Macevicz need only show that his invention (1) does not relate to the business or actual or demonstrably anticipated research or development of Applera or (2) does not result from any work performed by Dr. Macevicz for Applera. California law requires us to construe contractual obligations "most strongly against the party who caused the uncertainty to exist." Cal. Civ. Code § 1654. Here, Applera drafted the EIA. We cannot agree with Applera that the California Supreme Court would rewrite the EIA changing the "or" to an "and" in this case.

We agree with the district court that there is substantial evidence that Dr. Macevicz's invention did not result from any work performed by Dr. Macevicz for Applera. Applera argues that Dr. Macevicz's invention resulted "at least in part" from "his work as a patent attorney and day-to-day close collaboration with [Applera] scientists." Dr. Macevicz explained to the jury that "nothing at [Applera] contributed to [his] conception." And as noted above, he testified that the inventions-in-suit originated from his work at DNAX and his work on Dr. Brenner's patent application. Applera also argues that "without his job as a patent attorney for [Applera], Dr.

Macevicz would never have had the idea for his techniques in the first place." Applera relies in part on Dr. Macevicz's acknowledgement that his general interest in DNA sequencing started after he began working part-time as outside patent counsel for Applera, which occurred in 1985. Notably, Dr. Macevicz acknowledged that his interest in this area started after he began working for Applera—not as a result of his work for Applera. In fact, Dr. Macevicz testified that his initial interest in sequencing-by-hybridization (described in the '867 patent) originated from his work as a patent attorney at DNAX. Dr. Macevicz obtained a patent on his early sequencing-by-hybridization invention in 1991, and he did not sign the EIA with Applera until 1992. Dr. Macevicz's testimony provides ample support for the jury's verdict. Because we conclude that substantial evidence supports the conclusion that Dr. Macevicz's invention did not result from any work he performed for Applera, we need not address whether Dr. Macevicz's invention met the alternative condition that his work did not relate to Applera's business.

As substantial evidence supports the jury's verdict that all three conditions of the EIA were met, we affirm the district court's denial of Applera's motion for JMOL. In light of the evidence, we also conclude that the district court did not abuse its discretion in denying Applera's motion for a new trial.

II.   Nonobviousness

The jury determined that Applera failed to prove by clear and convincing evidence that claim 1 of the '119 patent would have been obvious. We review the jury's conclusion on obviousness de novo and its underlying factual findings for substantial evidence. Cordis Corp. v. Boston Sci. Corp., 561 F.3d 1319, 1332 (Fed. Cir. 2009).

Claim 1 reads:

> 1. An oligonucleotide probe of the formula:
> $$HO-(3')(B)j(5')-OP(=O)(O-)NH-(B)k-Bt^*$$
> wherein:
>> B is a nucleotide or an analog thereof;
>>
>> j is in the range of from 1 to 12;
>>
>> k is in the range of from 1 to 12, such that the sum of j and k is less than or equal to 12;
>>
>> Bt* is a labeled, nonextendable chain terminating moiety.

The parties agree that an article by Mathias Mag et al., "Synthesis and Selective Cleavage of an Oligonucleotide Containing a Bridged Non-Chiral Internucleotide 3-Phosphoramidate Linkage," Tetrahedron Letters, 23(48): 7319-22 (1992) (Mag), discloses an oligonucleotide of the type disclosed in the claim, except Mag's oligonucleotide lacked the label on the chain terminating moiety, represented by an asterisk (*) in the claim. Mag discloses the synthesis of an oligonucleotide with a phosphoramidate linkage and teaches that the phosphoramidate bond could be selectively cleaved (i.e., the phosphoramidate bond could be cleaved while leaving the other internucleotide linkages in tact). The last sentence of Mag refers to a potential application of the oligonucleotides: "The incorporation of a P-N linkage into a specific position of an ODN (primer) and the subsequent chemical cleavage can be applied for the nicking and manipulation of DNA, e.g., in a DNA probe based affinity assay." Mag at 7322.

The parties also agree that labeled oligonucleotides were generally known in the art and, in particular, disclosed in U.S. Patent No. 5,403,708 (Brennan). Thus the only disputed issue is whether one skilled in the art would have combined a label

with the oligonucleotide disclosed in Mag. At trial, Applera presented the motivation-to-combine issue as a credibility battle between the experts:

> [T]his question of invalidity comes down to a question of who you should believe? Dr. Backman [Solexa's expert] . . . . Or Dr. Metzker [Applera's expert] . . . . It's Backman and Metzker.
>
> And that's why we have jury trials, because this is what juries are really good at, sizing up people.

J.A. 22456. Applera's expert testified that it was "very common" to label probes and that it would have been obvious to combine the label in Brennan with the probe in Mag. Solexa's expert testified that prior to Dr. Macevicz's invention, one skilled in the art would not have had any reason to make a probe that was both cleavable (as disclosed in Mag) and labeled (as disclosed in Brennan). The jury apparently found the testimony of Solexa's expert more credible. We will not disturb its verdict.

### III.   Claim Construction

We review claim construction de novo. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1455-56 (Fed. Cir. 1998) (en banc). The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art in question at the time of the invention. Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id. at 1313.

Solexa argues that the district court improperly construed certain terms of claim 1 of the '597 patent. Claim 1 of the '597 patent reads:

2009-1253, -1260                                12

> 1. A method for identifying a sequence of nucleotides in a polynucleotide, the method comprising the steps of:
>
> (a) <u>extending an initializing oligonucleotide along the polynucleotide by ligating an oligonucleotide probe thereto to form an extended duplex</u>;
>
> (b) <u>identifying</u> one or more nucleotides of the polynucleotide; and
>
> (c) <u>repeating steps (a) and (b) until the sequence of nucleotides is determined</u>.

Solexa challenges the district court's construction of each step.

The construction of step (a) centers on whether each oligonucleotide probe must be ligated to an initializing nucleotide during repetition of the cycle or whether the oligonucleotide probe can be ligated to an extended duplex (an initializing probe that has already been extended by an oligonucleotide probe). Solexa argues for the former construction. The district court determined that "step (a) includes an <u>extension</u> process, whereby, with each repetition, an additional probe is added to what is already there, so that the chain gets longer and longer." Applera, No. 07-2845, D.I. 383, at 7 (N.D. Cal. Jan. 22, 2009) (Supplemental Claim Construction Order). The court further explained that "step (a) includes a scenario where the initializing oligonucleotide is originally attached to the polynucleotide and thereafter an ever-extending chain of probes is ligated thereto to form an ever-extending duplex, all beginning with the same initializing oligonucleotide." Id. Solexa argues that step (a) requires ligating a probe to an initializing nucleotide—not an extended duplex—and therefore during each repetition of the cycle, a new initializing nucleotide must be laid down along the polynucleotide.

The specification describes the invention as "repeated cycles of duplex extension." '597 patent col.3 l.2. It further discloses that:

> such extension starts from a duplex formed between an initializing oligonucleotide and the template. The initializing oligonucleotide is extended in an initial extension cycle by ligating an oligonucleotide probe to its end to form an extended duplex. <u>The extended duplex is then repeatedly extended by subsequent cycles of ligation</u>.

Id. col.3 ll.3-9 (emphasis added). Thus, once an extended duplex is formed, it "is further extended in subsequent cycles." Id. col.3 ll.15-16. This description of the invention is echoed throughout the specification, which repeatedly describes regenerating an extendable end on the extended duplex to allow for successive cycles of ligation. See, e.g., id. col.8 l.55-col.9 l.55 (describing the regeneration extendable termini on extended duplexes to allow for successive cycles of ligation); id. col.10 l.33-col.11 l.11 (describing schemes for extending an initializing nucleotide or an extended duplex); id. col.16 ll.26-28 (stating that at the end of Example 1, the extendable duplexes have regenerated 3'-hydroxyls and are ready for the next cycle of ligation/extension/cleavage). We agree with the district court that step (a) includes repeated cycles of extension of extended duplexes.

The district court determined that the term "identifying one or more nucleotides" in step (b) "requires that at least one nucleotide be identified during step (b), that is, its identity as an A, G, C, or T must be determined." Supplemental Claim Construction Order at 7. The court also determined that step (c) requires that each identification step occur "within each cycle" (i.e., it is not sufficient to repeatedly add oligonucleotide probes and then perform one identification step at the end). Applera, No. 07-2845, D.I. 133, at 16 (N.D. Cal. Feb. 21, 2008) (Claim Construction Order). Solexa argues that the term comprising "permits an accused method to include additional steps beyond those expressly recited in the claims." In simple terms, claim 1 requires that one extend, identify, and repeat. Under Solexa's proposed

construction, the word "comprising" indicates that one could systematically skip the identification step during each cycle, and so long as one or more nucleotides were identified at the end of the process, that would satisfy the claim limitations. "'Comprising' is not a weasel word with which to abrogate claim limitations." Dippin' Dots, Inc. v. Mosey, 476 F.3d 1337, 1343 (Fed. Cir. 2007) (citation omitted). Here, the claims require repeating the extend and identify steps until a sequence of nucleotides is determined. This repetition is described in the specification, which states that "[i]n one aspect, the invention calls for repeated steps of ligating and identifying of oligonucleotide probes." '597 patent col.8 ll.57-58. The specification further explains that "the ligation of multiple probes to the same extended duplex in the same step would usually introduce identification problems." Id. at col.8 ll.59-60. The specification does not describe any way in which one could ligate multiple probes to the same extended duplex and later identify a sequence of nucleotides. Therefore, we agree with the district court that step (b) requires the identification of one or more nucleotides during each cycle. In other words, in order to repeat steps (a) and (b), one must actually perform step (b).

The district court construed step (c) as "conditional, meaning that there is no need for repetition if the sequence of the polynucleotide has been fully determined in the first cycle." Solexa argues that this construction is inconsistent with arguments made during the prosecution history. During prosecution, the applicant distinguished the invention from a prior art reference by noting that "[t]he reference does not teach 'repeating steps (a) and (b) until the sequence of nucleotides is determined, as recited in the present claim. Because the prior art method identifies only a single

nucleotide, not a sequence of nucleotides, there would be no need for such repetition." Contrary to Solexa's argument, this statement does not require one to repeat steps (a) and (b) even when the polynucleotide has been determined in the first cycle (indeed, it states that the cycle is repeated "<u>until</u> the sequence of nucleotides is determined"). The distinguishing feature of the invention is that it taught a method for identifying a sequence of nucleotides, rather than a method for identifying a single nucleotide. Using the method of claim 1, a sequence of nucleotides may be identified after only one cycle using parallel reactions employing different initializing nucleotides, each out of register by one nucleotide. See '597 patent col.3 ll.19-36, ex. 1. Thus, we reject Solexa's argument based on the prosecution history. We construe step (c), as the district court did, to have its plain and ordinary meaning. To meet the limitations of claim 1, one must repeat steps (a) and (b) <u>until</u> the sequence of nucleotides is determined. There is no need for repetition once the sequence of the polynucleotide has been fully determined.

Because the district court properly construed the terms of claim 1 of the '597 patent, we affirm the court's judgment of noninfringement with respect to Applera's accused products, and the court's order, entered pursuant to stipulation, concerning invalidity.

## CONCLUSION

For the foregoing reasons, we affirm all of the appealed orders and judgments.

2009-1253, -1260    16

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

By _____ Date: 5/3/10